UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                          :

In re                                 :           **Chapter 11**

WONDERWORK, INC.,           :           Case No. _16 - 13607_

           Debtor.           :
------------------------------------------------------------ X

## DECLARATION OF BRIAN MULLANEY
## CO-FOUNDER AND CEO OF WONDERWORK, INC.,
## IN SUPPORT OF CHAPTER 11 PETITION AND
## FIRST DAY PLEADINGS

       I, Brian Mullaney, under penalty of perjury, hereby declare that the following is true to the best of my knowledge, information, and belief:

       1.      I am the Co-Founder and CEO of WonderWork, Inc., formerly known as Surgery for the Poor, Inc. ("*WonderWork*" or the "*Debtor*"), a not-for-profit corporation organized pursuant to § 101 of the General Corporation Law of the State of Delaware, which is exempt from federal taxes under section 501(c)(3) of the Internal Revenue Code. As Co-Founder and CEO, I am responsible for overseeing the operations of the Debtor in administration, community programs, development, finance, and marketing/communications, as well as the hiring and supervision of staff directors and/or senior managers in the aforementioned program and support areas.

       2.      I joined the Debtor in 2011 as Co-Founder/CEO, after serving more than 10 years as Co-Founder/President of Smile Train, Inc., the world's largest cleft charity. I have more than 25 years of executive experience in non-profit board relations, fundraising, marketing, and management, through positions I have held, such as Director, President and CEO. I have helped raise more than $1 billion for charities and helped provide more than 1 million surgeries

in 90 of the world's poorest countries. I am familiar with the Debtor's day-to-day operations, business affairs, and books and records.

3.      On the date hereof (the "*Petition Date*"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in this Court. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made, and no statutory committee has been appointed or designated, in this chapter 11 case.

4.      In connection with its chapter 11 case, the Debtor has requested certain relief in "first day" motions and applications (collectively, the "*First Day Pleadings*"), filed concurrently herewith. A list of the First Day Pleadings is attached hereto as **Exhibit A**. As set forth below, I believe that approval of the relief requested in the First Day Pleadings will minimize disruptions to the Debtor's operations and permit an effective transition into chapter 11, thereby preserving and maximizing the value of the Debtor's estate and facilitating the successful administration of the Debtor's chapter 11 case.

5.      This Declaration is submitted pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "*Local Bankruptcy Rules*"), and I am authorized to submit it on behalf of the Debtor. No one individual at the Debtor has personal knowledge of all of the facts set forth in this Declaration. All facts set forth herein are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtor's

management and staff. If called upon to testify, I would testify to the facts set forth herein on that basis.

6.    This Declaration is divided into four parts. Part I provides background information with respect to the Debtor's corporate history, operations and cash management system. Part II describes the circumstances leading to the commencement of the Debtor's chapter 11 case. Part III addresses the relief sought by the Debtor in the First Day Pleadings. Part IV provides an overview of **Exhibits E** through **P** attached hereto, which in turn set forth certain additional information about the Debtor, as required by Local Bankruptcy Rule 1007-2(a) and (b).

## I.
## DESCRIPTION OF THE DEBTOR'S CORPORATE HISTORY, OPERATIONS AND CASH MANAGEMENT SYSTEM

### A.    The Debtor's Corporate History and Operations

7.    The Debtor was founded in November 2010 to help provide life-changing surgeries for children and adults who are blind, severely burned or crippled with clubfoot. Instead of sending American doctors on missions, WonderWork empowers local doctors through financial aid, free training and free equipment. WonderWork has 61 partners in 42 countries worldwide and is working to provide more than 130,000 surgeries for children and adults this year. A copy of the Debtor's certificate of incorporation is annexed hereto as **Exhibit B**. A copy of the Debtor's by-laws is attached as **Exhibit C**.

### B.    The Debtor's Cash Management System

8.    As described more fully below, the Debtor maintains four noninterest-bearing accounts held by HSBC Bank, N.A. (the "*HSBC Accounts*"), four noninterest bearing accounts held by PayPal (the "*PayPal Accounts*"), and a money market account at Vanguard managed by the Debtor (the "*Vanguard Account*" and collectively with the HSBC Accounts and

PayPal Accounts, the "*Bank Accounts*").[1] All of the funds in the Bank Accounts were restrained following the confirmation of the Arbitration Award (as defined below).

9. WonderWork maintains a separate bank account at HSBC Bank, N.A. for each of the following causes for which it solicits funds: (i) blindness (the "*20/20/20 Program*"); (ii) burns (the "*BurnRescue Program*"); and (iii) clubfoot (the "*FirstStep Program*"). In addition, because Wonderwork also receives donations via PayPal, it maintains separate PayPal-linked accounts for each of the 20/20/20 Program, BurnRescue Program and FirstStep Program. As of December 28, 2016, the balances in the two blindness bank accounts totaled $662,425, the balances in the two burns bank accounts totaled $303,894, and the balances in the two clubfoot bank accounts totaled $343,835.

10. WonderWork also maintains an additional HSBC account (the "*HSBC 9896 Account*") and PayPal account (the "*PayPal 1060 Account*"). All checks payable are written from this account only and are then charged to the relevant program account. As of December 28, 2016, the balances in these two general accounts totaled $518,520.

11. WonderWork receives funds via its websites, checks or credit cards. Regardless of how donations are made, WonderWork tracks the purpose(s) for which all funds are received as follows.

12. In the case of donations made online at www.20x20x20.org, 1ststep.org or www.burnrescue.org, donations are paid to WonderWork's PayPal-linked blindness account, clubfoot or burn account, respectively. In the case of donations made online at WonderWork's website located at www.wonderwork.org, these donations are paid to the PayPal 1060 Account.

---

[1] A substantial portion of the funds held by the Debtor are purpose restricted funds, which can only be used in accordance with the respective donor's instructions or intent (the "*Restricted Funds*").

7889481.8

13.    Responding to direct mail campaigns for a specific cause, donors make their checks out to "20/20/20" (blindness), "BurnRescue" (burns) or "FirstStep" (clubfoot). The checks are sent in bar-coded envelopes to Direct Mail Processors, Inc., WonderWork's caging company. The caging company then deposits the funds into the WonderWork bank account related to that particular cause. Donors may also write in their credit card numbers rather than sending checks, in which case the caging company will process the payments via the PayPal account linked to that cause.

14.    If donations are received in support of WonderWork's activities, but do not specify a particular cause, the same process is followed, except those funds are deposited into the HSBC 9896 Account or PayPal 1060 Account.

15.    WonderWork also maintains an investment account with Vanguard. WonderWork uses this account to deposit funds, including Restricted Funds, that are not ready to be spent, so WonderWork may earn income and appreciation on these assets until it is ready to spend them in accordance with the respective donor's intent. As of December 26, 2016, the balance in this investment account was approximately $18.2 million. Transfers to and from the Vanguard Account are regularly tracked and reconciled in WonderWork's annual financial statements.

16.    During its chapter 11 case, the Debtor will not withdraw or use any Restricted Funds without further order of this Court in consultation with and on notice to the New York State Attorney General.

17.    Also, as of the Petition Date, the Debtor has non-endowment loans (the "*Impact Loans*") outstanding in an aggregate amount of approximately $9,531,667, including approximately $7,954,166 owed to the Thompson Family Foundation.

18.    As of the date hereof, the Debtor estimates that it has total liabilities, including the Arbitration Award (as defined below), of approximately $26.6 million, and total total assets, including Restricted Funds, of approximately $21.2 million. A copy of the Debtor's most recent audited annual financial statement is attached hereto as **Exhibit D**.

## II.
## CIRCUMSTANCES LEADING TO THE DEBTOR'S
## CHAPTER 11 CASE

19.    The Debtor's current dilemma is largely the result of its long-running litigation with Help Me See, Inc. ("*HMS*"). The Debtor was very successful in raising donations and using them to fund large numbers of life-saving surgeries a year. This year, the Debtor was on track to help provide over 130,000 free surgeries in 42 of the world's poorest countries. This includes restoring the eyesight of more than 120,000 blind children and adults.

20.    The dispute with HMS relates to an agreement between HMS and the Debtor (the "*Agreement*"). Following HMS's termination of the Agreement and its refusal to pay the severance required thereunder, the Debtor commenced an arbitration. Ultimately, the arbitrator issued an award in favor of HMS, initially in the amount of $8,342,314.68, plus interest, and attorneys' fees (the "*Preliminary Arbitration Award*"). On December 21, 2016, the Arbitrator issued a final award, totaling $13,198.431.85, exclusive of interest but inclusive of attorneys' fees and arbitration costs (the "*Final Arbitration Award*" and with the Preliminary Arbitration Award, the "*Arbitration Award*"). The Final Arbitration Award, inclusive of interest through November 29, 2016 and attorneys' fees and costs, totals almost $16 million.

21.    Enforcement of the Arbitration Award would, for all intents and purposes, put the Debtor out of business. The Debtor has many outstanding grants to fund as well as an ongoing program of grant proposals in furtherance of its mission. Enforcing the Arbitration

6

Award would deprive the Debtor of all its unrestricted cash, and render the Debtor unable to repay any of its other obligations including employee salaries, utilities and loan obligations.

22.    On December 2, 2016, the Preliminary Arbitration Award was confirmed by the New York Supreme Court in the amount of $11,124.170.78, inclusive of interest through November 29, 2016 and costs and disbursements of the New York Supreme Court. The Debtor is currently appealing confirmation of the Arbitration Award on the grounds that it violates well-established New York State public policy requiring gifts to a charity to be used for the purposes specified by the donor. Deviation from such purposes is prohibited without either donor consent or a proceeding in New York Supreme Court, with notice and the opportunity to be heard by the donor and the New York State Attorney General.

23.    Because a substantial portion of its assets are Restricted Funds, and thus can only be used in accordance with the intent and instructions of the respective donors, the Debtor was financially unable to post a bond for the judgment. The Debtor's request for a discretionary stay was not immediately granted, but was referred to a panel for consideration in early 2017. Because WonderWork's application for an interim stay was not granted, WonderWork has been forced to file this petition to allow it to continue its business and protect its assets from seizure while it pursues its appellate remedies in state court.

### III.
### THE DEBTOR'S FIRST DAY PLEADINGS

24.    In order to enable the Debtor to minimize the adverse effects of the commencement of this chapter 11 case on its ongoing operations, promote a smooth transition into chapter 11, and facilitate the sale of its assets, the Debtor has requested the authority to maintain the Debtor's existing bank accounts and business forms. Receiving Court approval of

78894S1.8

this motion is essential to giving the Debtor an opportunity to efficiently and effectively administer its chapter 11 case for the benefit of all the Debtor's stakeholders.

      25.    I have reviewed the motion listed on Exhibit A. The facts stated therein and herein are true and correct to the best of my knowledge, information, and belief, and I believe that the relief sought in the motion is necessary to enable the Debtor to operate in chapter 11 with minimal disruption to its operations.

**IV.**
**OVERVIEW OF EXHIBITS SETTING FORTH**
**INFORMATION ABOUT THE DEBTOR PURSUANT TO**
**LOCAL BANKRUPTCY RULE 1007-2(A)-(B)**

      26.    Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which I have provided in the exhibits attached hereto as **Exhibits E** through **P**.[2] Specifically, these exhibits contain the following information with respect to the Debtor:

- Pursuant to Local Bankruptcy Rule 1007-2(a)(3), **Exhibit E** provides information with respect to any committee organized prior to the order of relief.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(4), **Exhibit F** provides information with respect to the holders of the 20 largest unsecured claims against the Debtor, excluding insiders.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(5), **Exhibit G** provides information with respect to the holders of the 5 largest secured claims against the Debtor.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(6), **Exhibit H** provides a summary of the Debtor's assets and liabilities.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(7), **Exhibit I** provides information on the Debtor's outstanding publicly held securities.

---

[2] The information contained in the Exhibits attached to this Declaration shall not constitute an admission of liability by, nor is it binding on, the Debtor. The Debtor reserves all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge the priority, nature, amount or status of any such claim or debt. The descriptions of the collateral securing the underlying obligations are intended only as brief summaries. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

7889481.8

- Pursuant to Local Bankruptcy Rule 1007-2(a)(8), **Exhibit J** provides information on the Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents or secured creditor or agent for any such entity.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(9), **Exhibit K** provides information on the property or premises owned, leased or held under other arrangement from which the Debtor operates its business.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(10), **Exhibit L** lists the locations of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(11), **Exhibit M** lists the nature and present status of each action or proceeding, pending or threatened against the Debtor or its properties where a judgment against the Debtor or a seizure of its property may be imminent.

- Pursuant to Local Bankruptcy Rule 1007-2(a)(12), **Exhibit N** provides the names of the individuals who comprise the Debtor's existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

- Pursuant to Local Bankruptcy Rules 1007-2(b)(1)-(2)(A) and (C), **Exhibit O** provides the estimated amount of weekly payroll to the Debtor's employees (not including officers and directors) and the estimated amount to be paid to officers, directors, and financial and business consultants retained by the Debtor, for the 30-day period following the Petition Date.

- Pursuant to Local Bankruptcy Rules 1007-2(b)(3), **Exhibit P** provides a schedule of cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30-day period following the Petition Date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

9

Executed on December 28, 2016

By: _____

Name:  Brian Mullaney

Title:  Co-Founder and Chief Executive Officer

7889481.8

## Exhibit A

## List of First Day Pleadings

1. Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Business Forms and Existing Bank Accounts; (II) Extending Time to Comply with 11 U.S.C. § 345(b); and (III) Granting Related Relief.

<u>Exhibit B</u>

**WonderWork, Inc. Certificate of Incorporation**

# Delaware

PAGE   1

### The First State

 

    *I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "SURGERY FOR THE
POOR, INC.", FILED IN THIS OFFICE ON THE SEVENTH DAY OF MARCH,
A.D. 2011, AT 10 O'CLOCK A.M.*

    *A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.*

 

 

Jeffrey W. Bullock, Secretary of State

**4949958   8100**

AUTHENTICATION: 8605939

**110268316**

DATE: 03-07-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 10:00 AM 03/07/2011*
*FILED 10:00 AM 03/07/2011*
*SRV 110268316 - 4949958 FILE*

STATE OF DELAWARE
CERTIFICATE OF INCORPORATION
OF
Surgery for the Poor, Inc.
A Non-Stock Corporation

The undersigned, for the purpose of forming a non-stock corporation pursuant to §101 of the General Corporation Law of the State of Delaware hereby certifies as follows:

FIRST:   The name of the Corporation is Surgery for the Poor, Inc.

SECOND:   The address of the registered office of the Corporation is 3411 Silverside Road, Rodney Building #104, County of New Castle, City of Wilmington, Delaware 19810. The name of the registered agent of the Corporation at that address is Corporate Creations Network, Inc.

THIRD:   The Corporation shall be operated exclusively for charitable and educational purposes within the meaning of 501(c)(3) of the Internal Revenue Code of 1986, as now in effect or as may hereafter by amended ("the Code"). The purposes for which the Corporation is formed are to provide treatment, surgery, and related assistance to children in developing countries suffering from disease, illness, or malady, including but not necessarily limited to blindness, cleft palate, club foot, hydrocephalus, and burns; and to further support and educate doctors and the public on potential treatments and surgical techniques, as well as creating general awareness of these maladies and available treatments.

The Corporation shall be a nonprofit corporation and may engage in all lawful activities for which nonprofit corporations may be organized under the General Corporation Law of Delaware and shall further be authorized to engage in other charitable and educational activities consistent with an organization exempt from Federal Income Taxation under §501(c)(3) of the Internal Revenue Code, including provision of assistance and funds to other § 501(c)(3) organizations.

In furtherance thereof, the Corporation may receive property by gift, devise or bequest, invest or reinvest the same, and apply the income and principal thereof, as the Board of Directors may from time to time determine, either directly or through contributions to any charitable organization or organizations, exclusively for charitable and educations purposes, and engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

FOURTH:   The Corporation shall not have authority to issue capital stock.

FIFTH:   The Corporation shall not have members.

1

SIXTH:   The name and mailing address of the incorporator who is to serve as the initial director until the first annual meeting of the Board of Directors or until her successor is elected and qualifies is as follows:

Doris Rieke
300 W. 20th Street
Suite 300
Kansas City, Missouri 64108

SEVENTH:   No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article THIRD hereof.  No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in political campaigns on behalf of any candidate for public office.  Notwithstanding any other provision of these articles, this Corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of its exempt purposes or not permitted to be carried on by a corporation contribution to which are deductible under section 170 (c)(2) of the Internal Revenue Code.

EIGHTH   Upon dissolution of the Corporation, the Board of Directors shall, after paying or making provisions for payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation by distributing those assets exclusively for public charitable use and purposes as shall at the time qualify as exempt from taxation under 501(c)(3) of the Internal Revenue Code and as other than a private foundation under Section 509 (a) of the Internal Revenue Code, as the Board of Directors shall determine.  Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction for the county in which the principal office of the Corporation is then located, exclusively for charitable and educational purposes or to such organization or organizations as said court shall determine which are organized and operated exclusively for charitable and educational purposes.

IN WITNESS WHEREOF, the undersigned incorporator has executed these Articles of Incorporation on this 4th day of March, 2011.

Doris Rieke, Incorporator

2

**Division of Corporations**
401 Federal Street – Suite 4
**Dover, DE 19901**
,Phone# (302)739-3073·
Fax# (302)739-3812

**Certificate of Amendment for Non-Stock**

Dear Sir or Madam:

Enclosed please find a form for a Certificate of Amendment to be filed in accordance with the General Corporation Law of the State of Delaware. The fee to file the Certificate is a minimum of $194.00. If your document is more than 1 page, you must submit $9.00 for each additional page. You will receive a stamped "Filed" copy of your submitted document. A certified copy may be requested for an additional. $50.00. Expedited services are available. Please contact our office concerning these fees.

Please make your check payable to the "Delaware Secretary of State". For the convenience of processing your order in timely manner, please include a cover letter with your name, address and telephone/fax number to enable us to contact you if necessary. Please make sure you thoroughly complete all information requested on this form. It is important that the execution be legible, we request that you print or type your name under the signature line.

Thank you for choosing Delaware as your corporate home. Should you require further assistance in this or any other matter, please don't hesitate to call us at (302) 739-3073.

Sincerely,

Department of State
Division of Corporations

encl.
rev. 07/04

# STATE OF DELAWARE
## CERTIFICATE OF AMENDMENT
## (A CORPORATION WITHOUT CAPITAL STOCK)

The corporation, Surgery for the Poor, Inc.                          ,
organized and existing under the laws of the State of Delaware, hereby certifies as
follows:

(1) That at a meeting a vote of the members of the governing body was taken
for and against the amendment to the Certificate of Incorporation, said Amendment being
as follows: see attached amended Article First, amending the
name of the corporation; and Article Third amending
the purpose of the corporation.

(2) That said amendment was duly adopted in accordance with the provisions of
Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said corporation has caused this certificate to be
signed this 13 day of April , A.D. 20 17.

By: _____
            Authorized Officer

Name: BRIAN MULLANEY
            Print or Type

**Articles of Amendment**
**Articles of Incorporation**
**Surgery for the Poor, Inc.**
**p.2**

Articles First and Third of the Articles of Incorporation are hereby amended as follows:

FIRST:    The name of the Corporation is WonderWork, Inc.

THIRD:  The Corporation shall be operated exclusively for charitable and educational purposes within the meaning of 501(c)(3) of the Internal Revenue Code of 1986, as now in effect or as may hereafter by amended ("the Code").  The purposes for which the Corporation is formed are to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries, suffering from disease, illness, or disability, including but not necessarily limited to blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as to educate doctors and the public on potential treatments and surgical techniques, and creating general awareness of these disabilities and available treatments.

        The Corporation shall be a nonprofit corporation and may engage in all lawful activities for which nonprofit corporations may be organized under the General Corporation Law of Delaware and shall further be authorized to engage in other charitable and educational activities consistent with an organization exempt from Federal Income Taxation under §501(c)(3) of the Internal Revenue Code, including provision of assistance and funds to other § 501(c)(3) organizations.

        In furtherance thereof, the Corporation may receive property by gift, devise or bequest, invest or reinvest the same, and apply the income and principal thereof, as the Board of Directors may from time to time determine, either directly or through contributions to any charitable organization or organizations, exclusively for charitable and educations purposes, and engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

<u>**Exhibit C**</u>

**WonderWork, Inc. By-Laws**

AMENDED AND RESTATED BYLAWS
OF
WONDERWORK, INC.

(F/K/A SURGERY FOR THE POOR, INC.)

(A Delaware Not-for-profit Corporation)


### ARTICLE I: Name

The name of this corporation is WonderWork, Inc. (hereinafter referred to as "the Corporation") and it was originally formed and known as Surgery for the Poor, Inc. Its current legal name is and shall remain WonderWork, Inc., unless and until further amended.

### ARTICLE II: Purposes and Limitations

The Corporation's purposes shall be as set forth in its Certificate of Incorporation.

### ARTICLE III: Registered Office

The address of the registered office of the Corporation is 3411 Silverside Road Rodney Building #104, City of Wilmington, County of New Castle, State of Delaware 19810. The name of the registered agent of the Corporation at that address is Corporate Creations Network, Inc. The Corporation may have other offices at such other places within or without the State as shall be determined by the Board of Directors.

### ARTICLE IV: Members

As provided in the Articles of Incorporation of the Corporation, the Corporation shall not have members.

### ARTICLE V: Board of Directors

**Section 1.    General Powers.**  The affairs of the Corporation shall be managed by its Board of Directors. It shall be the Board of Directors' duty to carry out the objectives and purposes of the Corporation, and to this end, the Board of Directors may exercise all powers of the Corporation. The Board of Directors shall be subject to the restrictions and obligations set forth by law and in the Corporation's Articles of Incorporation and these Bylaws.

**Section 2. Legal Responsibilities of Board.**  Directors shall meet certain standards of conduct and attention in carrying out their responsibilities to the Corporation. These standards include the duties of care, loyalty and obedience, as defined under Delaware law and the common law.

**Section 3. Composition, Election, Term, and Qualifications.**  The number of Directors

shall be not less than three (3). Directors shall be elected at the annual meeting by the then present Board of Directors from nominees solicited by the Board of Directors. Provided, however, that additional Board members may be appointed or elected at any time by vote of a majority of the members of the Board of Directors at a regular or special meeting at which a quorum is present. Each Director shall hold office for three (3) year, staggered terms. Directors, other than Co-Founder, Brian Mullaney, so long as he remains the President/Chief Executive Officer (CEO) of the Corporation, shall be limited to two consecutive terms of service as Directors, after which they must sit out for at least one (1) term (not less than three (3) years). There shall be no limit on the number of non-consecutive terms that any Director may serve. The terms of Directors may be staggered, so as to not all expire at the same time, to the extent and as determined by the Board of Directors. To this end, the term(s) of one (1) or more Directors may be extended or abbreviated, to the extent and as determined by the Board of Directors. Directors shall be at least (21) years of age.

Section 4.    **Annual and Regular Meetings.** Not less than two regularly scheduled meetings of the Board of Directors shall be held each year at such time and place designated by the Board of Directors. Notice of such meetings shall be provided at least thirty (30) days in advance of the annual or any other regular meeting of the Board of Directors. The Chairman of the Board will preside at all meetings for the Board of Directors. If there be no Chairman or in his or her absence, the President will preside, and if there be no President or in his or her absence, any other Director chosen by the Board of Directors shall preside.

Section 5.    **Special Meetings.** Special meetings of the Board of Directors may be called by or at the request of the President or any two (2) Directors then in office. Notice of any special meeting shall be required and said notice shall be provided no less than ten (10) days in advance of the date of the meeting and shall specify the purpose of such meeting. The requirement for furnishing notice of a meeting may be waived by any director who signs a Waiver of Notice before or after the meeting or who attends the meeting without protesting the lack of notice to him.

Section 6.    **Quorum.** A majority of the Board of Directors in office shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, provided, that if less than a majority of the Directors are present at said meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

Section 7.    **Manner of Acting.** The act of a majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, except as otherwise provided by law, by the Corporation's Articles of Incorporation, or by these Bylaws. Each Director shall have one (1) vote on all matters submitted to a vote of the Board of Directors.

Section 8.    **Teleconferencing.** Any person participating in a meeting of the Board of Directors may participate by means of conference telephone or by any means of communication by which all persons participating in the meeting are able to hear one another and otherwise fully participate in the meeting. Such participation shall constitute presence in person at the meeting.

2

**Section 9.      Action by Unanimous Written Consent.** Any action required to be taken at a meeting of the Board of Directors or any action which may be taken at a meeting of the Board of Directors may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed by all of the Directors entitled to vote with respect to the subject matter thereof.

**Section 10.   Proxy Voting.** Any Director may authorize another Director to vote on the Director's behalf. Such authorization shall be signed by the respective Director. Provided, however, such authorization may be returned without a written signature and submitted by other means of electronic transmission if it can be reasonably determined that the vote was authorized, such as by validating the Director's birth date, or other unique identifier.

**Section 11.      Minutes and Parliamentary Procedure.** Full minutes of each meeting of the Board of Directors shall be recorded by the Secretary containing results of the deliberations of the Board of Directors. The minutes shall be submitted to the Board of Directors for approval at the subsequent meeting of the Board of Directors. All meetings of the Board of Directors shall be conducted in accordance with the latest edition of Robert's Rules of Order, to the extent that such parliamentary procedures are not inconsistent with these Bylaws, the Corporation's Articles of Incorporation, the N-PCL, or rules adopted by the Board of Directors for its own governance.

**Section 12.      Removal or Resignation of Directors.** (a) Any Director may be removed or suspended from office at any time by the affirmative vote of a majority of the members of the Board of Directors. Such removal or suspension shall be at the sole discretion of a majority of the Board of Directors, subject to vote as set forth, herein.

(b)     Any Director may resign at any time by giving written notice to an Officer of the Corporation or to the Chairman. Such resignation shall take effect at the time specified in such notice, or, if no time is specified, at the time such resignation is tendered.

**Section 13.      Committees.** Whenever the Board of Directors shall consist of more than three persons, the Board of Directors may designate from their number, an Executive Committee and other standing committees. Such committees shall have such authority as the Board of Directors may delegate, except to the extent prohibited by law.

## ARTICLE VI: Officers

**Section 1.      Definition of Officers.** The Officers of the Corporation shall be a Chairman of the Board of Directors, a Vice-President (optional), a President, a Secretary and a Treasurer.   The Board of Directors may elect such other Officers as it shall deem necessary and proper. All Officers shall be members of the Board of Directors by virtue of their office, unless otherwise determined by the Board of Directors. The offices of President and Secretary shall not be held by the same person.

3

**Section 2.     Election, Term and Qualifications.**  The Officers of the Corporation shall be elected by the Board of Directors by the affirmative vote of a majority of the Board of Directors present at any meeting at which a quorum is present.  Each Officer shall hold office until such time as they resign or until such time as a majority of the Board determines to hold an election for such position during the annual meeting or at any regular or special meeting.  Officers may serve no more than two (2) consecutive terms other than the President/CEO, who shall have no limit on the number of terms, consecutive or otherwise, that he/she may serve.  The terms of Officers may be staggered, so as to not all expire at the same time, to the extent and as determined by the Board of Directors.

**Section 3.     Removal or Resignation of Officers.**  (a)   Any Officer may be removed from office at any time by the affirmative vote of a majority of the members of the Board of Directors present at a meeting at which a quorum is present, whenever in their judgment the best interests of the Corporation would be served thereby.

(b)     Any Officer may resign at any time by giving written notice to the President, Secretary, Treasurer, or to the Board of Directors.  Such resignation shall take effect at the time specified in such notice, or, if no time is specified, at the time such resignation is tendered.

**Section 4.     Vacancies.**  A vacancy in any office may be filled at any time by the Board of Directors for the unexpired portion of the term.

**Section 5.     Chairman of the Board.**  The Chairman of the Board of Directors shall preside at all meetings of the Board of Directors and shall have such powers and perform such duties as, from time to time, may be assigned to him or by her by the Board of Directors.

**Section 6.     President.**  The President shall be the Chief Executive Officer of the Corporation and shall in general supervise and have charge of all of the affairs of the Corporation, pursuant to the direction and oversight of the Board of Directors.

**Section 7.     Vice-President.**  Should the corporation choose to elect one or more Vice-Presidents, each Vice-President, shall have such powers and shall perform such duties as shall be assigned by the President after discussion with the Board of Directors.  During the absence or disability of the President of the Corporation, the Vice-President shall perform such duties as may be prescribed by the Board of Directors from time to time.

**Section 8.     Treasurer.**  The Treasurer shall have charge and custody of and be responsible for all funds and securities of the Corporation, and in general perform all duties incident to the office of treasurer and such other duties as from time to time may be assigned to him or her by the President or the Board of Directors.  The Treasurer shall, when duly authorized by the Board of Directors, sign and execute contracts in the name of the Corporation when countersigned by the President; he or she may also sign checks, drafts, notes and order for the payment of money, which shall have been duly authorized by the Board of Directors and, where required, counter-signed by the President.  Emergency expenditures over a threshold established by resolution of the Board must be approved by the President with the consent of one Officer in addition to the Treasurer.

4

**Section 9.    Secretary.** The Secretary shall record and keep the minutes of the meetings of the Board, see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law, be the custodian of the corporate records, and in general perform all duties incident to the office of secretary and such other duties as from time to time may be assigned to him/her by the President or the Board of Directors.

## ARTICLE VII:  Committees

**Section 1.    Committees of the Board of Directors.** The Board of Directors, by resolution adopted by the majority of the entire board, shall from time to time, as appropriate, establish committees of the Board of Directors as the Directors determine may be necessary, including, but not limited to, an: (a) Executive Committee, (b) Nominating Committee, (c) Finance Committee, (d) Investment Committee,(e) Compensation Committee, and (f) Audit Committee.

**Section 2. Election Term of Office, etc.** Committees shall consist of members of the Board of Directors. Committee members shall be elected at the Annual Meeting of the Board of Directors or any meeting thereafter. Committee members shall be elected in the same manner as Officers of the Corporation.  The designation of any such committee and the delegation thereto shall not alone relieve any Director of the duties owed to the corporation as prescribed by law.

**Section 3.  Procedure.** A majority of the members of each Committee shall constitute a quorum for the transaction of business. Minutes of the committee meeting shall be kept and circulated to the full Board of Directors prior to the next meeting of the Board of Directors.

**Section 4.  Executive Committee.** The Board of Directors may create an Executive Committee, which shall have and exercise the authority of the Board in the management of the Corporation between meetings of the board of Directors as set forth in the N-PCL.  The Executive Committee shall include the Officers of the Corporation.

**Section 5.  Special Committeee and Task Forces.** The Chairman of the Board shall have the right to appoint Special Committees/Task forces, with the consent of the Board of Directors.  Special committees of the Board shall have only the powers specifically delegated by the Board of Directors as set forth in the Resolution authorizing the Committee.

## ARTICLE VIII: Finances

**Section 1.    Fiscal Year.** The fiscal year of the Corporation shall be such period established by the Board of Directors.

**Section 2.    Contracts.** The Board of Directors may authorize any Officer or Officers, agent or agents of the Corporation, in addition to the Officers so authorized by these Bylaws, to enter into any contract or execute or deliver any instrument in the name of and on behalf of the Corporation.  Such authority may be general or confined to specific instances.

5

**Section 3.      Checks and Drafts.** All checks, drafts or other orders for the payment of money, notes or other evidence of indebtedness issued in the name of the Corporation, shall be signed by such Officer or Officers, or agent or agents of the Corporation, and in such manner, as shall be determined by resolution of the Board of Directors.

**Section 4.      Deposits.** All funds of the Corporation shall be deposited to the credit of the Corporation in such banks, trust companies, or other depositories as the Board of Directors may select.

## ARTICLE IX: Books and Records

The Corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of the Board of Directors and committees having any of the authority of the Board of Directors.

## ARTICLE X: Indemnification and Insurance

**Section 1. Indemnification.** The Corporation shall indemnify its Directors, Officers, committee members, and employees to the fullest extent permitted under Delaware and/or New York law.

**Section 2. Insurance.** The Corporation shall purchase liability insurance for the indemnity specified above to the fullest extent as determined from time to time by the Board of Directors.

## ARTICLE XI: Amendments

The power to adopt, amend or repeal the Articles of Incorporation or these Bylaws shall rest with, and may be executed by, the Board of Directors only through a majority vote of all of the members of the Board of Directors.

## ARTICLE XII: Governing Law

All questions with respect to the construction of these Bylaws shall be determined in accordance with the applicable provisions of the laws of the State of Delaware.

*These are the current Restated and Amended Bylaws of WonderWork, Inc., adopted by the Board of Directors on the following date:* ___March 8, 2016___

Attest, Secretary

6

## Exhibit D

**Audited Financials June 30, 2015 and 2014**



**WONDERWORK, INC.**

Financial Statements

June 30, 2015 and 2014

(With Independent Auditors' Report Thereon)



KPMG LLP
345 Park Avenue
New York, NY 10154-0102

**Independent Auditors' Report**

The Board of Directors
WonderWork, Inc.:

We have audited the accompanying financial statements of WonderWork, Inc. (WonderWork), which comprise the balance sheets as of June 30, 2015 and 2014, and the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

*Management's Responsibility for the Financial Statements*

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

*Auditors' Responsibility*

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the organization's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the organization's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Opinion*

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of WonderWork, Inc. as of June 30, 2015 and 2014, and the changes in its net assets and its cash flows for the years then ended, in accordance with U.S. generally accepted accounting principles.

KPMG LLP

May 23, 2016

KPMG LLP is a Delaware limited liability partnership,
the U.S. member firm of KPMG International Cooperative
("KPMG International"), a Swiss entity

**WONDERWORK, INC.**

Balance Sheets

June 30, 2015 and 2014

| Assets | | 2015 | 2014 |
|---|---|---|---|
| Cash and cash equivalents | $ | 1,090,118 | 873,961 |
| Contributions receivable (note 3) | | 201,876 | 370,116 |
| Prepaid expenses and other assets | | 45,625 | 45,625 |
| Investments (note 4) | | 13,150,125 | 14,066,815 |
| Property and equipment, net | | 57,338 | 88,926 |
| Total assets | $ | 14,545,082 | 15,445,443 |
| **Liabilities and Net Assets** | | | |
| Liabilities: | | | |
| Accounts payable and accrued expenses | $ | 233,693 | 1,167,916 |
| Loans payable (note 7) | | 9,602,417 | 9,518,750 |
| Total liabilities | | 9,836,110 | 10,686,666 |
| Net assets: | | | |
| Unrestricted | | 211,918 | 2,376,415 |
| Temporarily restricted (note 6) | | 4,497,054 | 2,382,362 |
| Total net assets | | 4,708,972 | 4,758,777 |
| Total liabilities and net assets | $ | 14,545,082 | 15,445,443 |

See accompanying notes to financial statements.

**WONDERWORK, INC.**

Statements of Activities

Years ended June 30, 2015 and 2014

|  |  | 2015 | 2014 |
|---|---|---|---|
| Change in unrestricted net assets: | | | |
| Operating activities: | | | |
| Revenues: | | | |
| Contributions | $ | 3,958,954 | 5,582,853 |
| In-kind contributions (note 10) | | 1,522,112 | 1,882,441 |
| Investment (loss) gain | | (153,782) | 1,878,168 |
| Other | | 2,059 | 26,130 |
| Net assets released from restrictions (note 6) | | 6,322,623 | 6,069,458 |
| Total revenues | | 11,651,966 | 15,439,050 |
| Expenses (note 9): | | | |
| Program: | | | |
| Surgical treatments and related activities, and information and health education (note 10) | | 10,379,077 | 9,762,437 |
| Management and general | | 562,209 | 286,751 |
| Fund-raising | | 2,875,177 | 4,619,803 |
| Total expenses | | 13,816,463 | 14,668,991 |
| (Deficiency) excess of operating revenues over operating expenses | | (2,164,497) | 770,059 |
| Nonoperating activities: | | | |
| Grant and other liability write-off (note 8) | | — | 733,000 |
| (Decrease) increase in unrestricted net assets | | (2,164,497) | 1,503,059 |
| Change in temporarily restricted net assets: | | | |
| Contributions | | 8,437,315 | 6,596,814 |
| Net assets released from restrictions (note 6) | | (6,322,623) | (6,069,458) |
| Increase in temporarily restricted net assets | | 2,114,692 | 527,356 |
| Change in net assets | | (49,805) | 2,030,415 |
| Net assets at beginning of year | | 4,758,777 | 2,728,362 |
| Net assets at end of year | $ | 4,708,972 | 4,758,777 |

See accompanying notes to financial statements.

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2015

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | Supporting services | | | |
| Grants | $ 1,992,500 | — | — | — | 1,992,500 |
| In-kind services (note 10) | 1,522,112 | — | — | — | 1,522,112 |
| Salaries and related expenses | 1,149,731 | 99,607 | 368,216 | 467,823 | 1,617,554 |
| Professional and consulting fees | 562,420 | 77,437 | 89,981 | 167,418 | 729,838 |
| Occupancy | 150,555 | 8,453 | 36,980 | 45,433 | 195,988 |
| Office supplies and services | 165,890 | 9,314 | 40,747 | 50,061 | 215,951 |
| Printing, publications, and postage (note 9) | 4,499,272 | 277,847 | 2,222,376 | 2,500,223 | 6,999,495 |
| Depreciation | 32,866 | 1,846 | 8,073 | 9,919 | 42,785 |
| Travel and other miscellaneous | 303,731 | 87,705 | 108,804 | 196,509 | 500,240 |
| Total expenses | $ 10,379,077 | 562,209 | 2,875,177 | 3,437,386 | 13,816,463 |

See accompanying notes to financial statements.

4

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2014

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | | Supporting services | | |
| Grants | $ 1,543,055 | — | — | — | 1,543,055 |
| In-kind services (note 10) | 1,882,441 | — | — | — | 1,882,441 |
| Salaries and related expenses | 1,322,576 | 74,252 | 324,855 | 399,107 | 1,721,683 |
| Professional and consulting fees | 759,085 | 131,944 | 199,203 | 331,147 | 1,090,232 |
| Occupancy | 143,670 | 8,066 | 35,289 | 43,355 | 187,025 |
| Office supplies and services | 142,991 | 8,028 | 35,122 | 43,150 | 186,141 |
| Printing, publications, and postage (note 9) | 3,717,856 | --- | 3,939,353 | 3,939,353 | 7,657,209 |
| Depreciation | 34,173 | 1,919 | 8,394 | 10,313 | 44,486 |
| Travel and other miscellaneous | 216,590 | 62,542 | 77,587 | 140,129 | 356,719 |
| Total expenses | $ 9,762,437 | 286,751 | 4,619,803 | 4,906,554 | 14,668,991 |

See accompanying notes to financial statements.

**WONDERWORK, INC.**

Statements of Cash Flows

Years ended June 30, 2015 and 2014

|  |  | 2015 | 2014 |
|---|---|---|---|
| Cash flows from operating activities: |  |  |  |
| Change in net assets | $ | (49,805) | 2,030,415 |
| Adjustments to reconcile change in net assets to net cash used in operating activities: |  |  |  |
| Depreciation and amortization |  | 42,785 | 44,486 |
| Forgiveness of debt |  | (300,000) | (100,000) |
| Investment loss (gain) |  | 153,782 | (1,878,168) |
| Changes in operating assets and liabilities: |  |  |  |
| Contributions receivables |  | 168,240 | 200,040 |
| Accounts payable and accrued expenses |  | (934,223) | (68,744) |
| Interest payable |  | 183,667 | 118,750 |
| Grants and other amounts payable to Help Me See |  | — | (733,000) |
| Net cash used in operating activities |  | (735,554) | (386,221) |
| Cash flows from investing activities: |  |  |  |
| Purchases of property and equipment |  | (11,197) | (1,822) |
| Sales of investments |  | 13,925,803 | 508,836 |
| Purchases of investments |  | (13,162,895) | (6,265,858) |
| Net cash provided by (used in) investing activities |  | 751,711 | (5,758,844) |
| Cash flows from financing activities: |  |  |  |
| Loans payable |  | 200,000 | 5,840,797 |
| Net cash provided by financing activities |  | 200,000 | 5,840,797 |
| Net increase (decrease) in cash and cash equivalents |  | 216,157 | (304,268) |
| Cash and cash equivalents, beginning of year |  | 873,961 | 1,178,229 |
| Cash and cash equivalents, end of year | $ | 1,090,118 | 873,961 |

See accompanying notes to financial statements.

6

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

**(1)    Description of Organization**

WonderWork, Inc. (the Organization or WonderWork) is a not-for-profit organization, which was incorporated in 2011 to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries suffering from disease, illness, or disability, including, but not necessarily limited to, blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as creating general awareness of these disabilities and available treatments.

**(2)    Summary of Significant Accounting Policies**

*(a)    Basis of Presentation*

The Organization's financial statements have been prepared on the accrual basis of accounting in accordance with U.S. generally accepted accounting principles. Net assets and the changes therein are classified and reported as follows:

Unrestricted – Net assets that are not subject to donor-imposed restrictions.

Temporarily Restricted – Net assets subject to donor-imposed restrictions that will be met by actions of the Organization and/or the passage of time.

Revenues are reported as increases in unrestricted net assets unless their use is limited by explicit donor-imposed restrictions or by law. Expenses are reported as decreases in net assets.

*(b)    Fair Value*

Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability (an exit price) in the principal or most advantageous market for the asset or liability in an orderly transaction between market participants on the measurement date. The three levels of the fair value hierarchy are as follows:

- Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that a reporting entity has the ability to access at the measurement date.

- Level 2 inputs are inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly.

- Level 3 inputs are unobservable inputs for the asset or liability.

*(c)    Accounting Estimates*

The preparation of the financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingencies at the date of the financial statements and revenues and expenses recognized during the reporting period. Significant estimates made in the preparation of the financial statements include determining the net realizable value of contributions, valuation of in-kind contributions, and functional expense allocations. Actual results could differ from those estimates.

7    (Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

(d) *Cash and Cash Equivalents*

The Organization considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents. The Organization maintains cash and cash equivalents in major financial institutions. Cash held by a financial institution that exceeds the Federal Deposit Insurance Corporation (FDIC) limits exposes the Organization to a concentration of credit risk.

(e) *Investments*

Investments are reported at fair value based upon quoted market prices.

(f) *Contributions*

Contributions, including unconditional promises to give (pledges), are recognized as revenue upon receipt and are considered to be unrestricted unless received with donor stipulations that limit their use through either purpose or time restrictions. Contributions with donor stipulations that limit their use are considered to be temporarily restricted until the donor restrictions expire, that is, when a time restriction ends or purpose restriction is fulfilled. Upon the expiration of donor stipulations, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the accompanying statements of activities as net assets released from restrictions. Contributions expected to be received after one year are discounted at a risk-adjusted rate of return.

(g) *Contributions In-Kind*

Contributions in-kind include donated services and materials related to the treatments sponsored by WonderWork. These contributions are recorded at fair value on the date of donation and are recognizable as they either create or enhance assets that are not financial in nature or provided by individuals with specialized skills that would need to be purchased if the services had not been donated.

(h) *Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation and amortization. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets ranging from 3 to 5 years. Leasehold improvements are amortized on a straight-line basis over the lesser of their useful lives or the term of the lease.

(i) *Income Taxes*

WonderWork recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. Income generated from activities unrelated to the WonderWork's exempt purpose is subject to tax under Internal Revenue Code Section 511. WonderWork utilizes a threshold of more likely than not for recognition and derecognition of tax positions taken or expected to be taken in a tax return. WonderWork did not recognize any unrelated business income tax liability for the years ended June 30, 2015 and 2014.

8

(Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

**(3) Contributions and Contributions Receivable**

Contributions receivable are scheduled to be collected as follows at June 30, 2015 and 2014:

|  | 2015 | 2014 |
|---|---|---|
| Amount due in one year or less | $ 201,876 | 200,000 |
| Amount due in 2 to 5 years | — | 197,711 |
| Less discount to present value at 2.4% | — | (27,595) |
|  | $ 201,876 | 370,116 |

Contributions receivable is from one donor at June 30, 2015 and 2014. Approximately 20% of contributions were received from 5 donors in 2015 and 35% of contributions were received from two donors in 2014.

**(4) Investments**

The following presents the Organization's investments measured at fair value as of June 30, 2015 and 2014. These all represent Level 1 investments in the fair value hierarchy.

|  | 2015 | 2014 |
|---|---|---|
| Vanguard total world stock | $ — | 14,055,540 |
| Vanguard total stock market | 13,147,354 | — |
| Other | 2,771 | 11,275 |
| Total investments | $ 13,150,125 | 14,066,815 |

**(5) Commitments**

The Organization has a lease agreement for the rental of its office in New York expiring in 2016. Approximate future minimum annual rentals related to this lease are $137,000.

Rent expense for the years ended June 30, 2015 and 2014 amounted to approximately $196,000 and $187,000, respectively.

**(6) Temporarily Restricted Net Assets**

Temporarily restricted net assets are available for the following as of June 30, 2015 and 2014:

|  | 2015 | 2014 |
|---|---|---|
| Blindness | $ 1,093,040 | — |
| Burns | 1,334,093 | 958,278 |
| Clubfoot | 1,900,380 | 1,053,968 |
| Time | 169,541 | 370,116 |
|  | $ 4,497,054 | 2,382,362 |

9

(Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

Net assets were released from restrictions during the year ended June 30, 2015 and 2014 by incurring expenses or the passage of time as follows:

|  | 2015 | 2014 |
|---|---|---|
| Blindness | $ 5,249,556 | 4,271,517 |
| Burns | 536,174 | 614,320 |
| Clubfoot | 336,318 | 983,281 |
| Hydrocephalus | — | 300 |
| Time | 200,575 | 200,040 |
|  | $ 6,322,623 | 6,069,458 |

(7)   **Loans Payable**

In fiscal 2013, the Organization received an unsecured impact loan commitment of $7,500,000 from a foundation to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by the foundation are scheduled to be repaid after 5 years at the rate of 2% per annum. As of June 30, 2013, WonderWork had drawn down $2,500,000 of this loan. In 2014 the remaining $5,000,000 was drawn down under the loan.

In fiscal 2014, the Organization received unsecured impact loan commitments of $2,000,000 from several foundations to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by these foundations are scheduled to be repaid after 5 years at the rate of 2% per annum.

In fiscal 2015, the Organization received an additional unsecured impact loan commitment of $200,000 from a foundation at the same terms and for the same purpose as the fiscal 2014 loans, to be repaid after 5 years at the rate of 2%.

As of June 30, 2015 and 2014, WonderWork had drawn down a total of $9,300,000 and $9,400,000 of these loans, respectively. Interest on the loans is not due until repayment. Accrued interest expense of $302,417 and $118,750 at June 30, 2015 and 2014, respectively, were recognized on these loans.

In 2015 and 2014, $300,000 and $100,000, respectively, of these loans were forgiven and recognized as contribution revenue in the accompanying statement of activities.

The aggregate amount of principal due on loans payable at June 30, 2015 is as follows:

| 2018 | $ 7,500,000 |
|---|---|
| 2019 | 1,600,000 |
| 2020 | 200,000 |
|  | $ 9,300,000 |

(Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

Pursuant to the loan agreements, Wonderwork met its loan covenants as of June 30, 2015, which consisted of maintaining assets in excess of $1.5 million and maintaining expenditures of 50% or more of all public donations on program service activities.

**(8)    Payable to HelpMeSee**

In August, 2011, WonderWork entered into a partnership agreement with HelpMeSee, another blindness charity and 501(c)(3), to work together to solve the problem of cataract blindness. This agreement provided that WonderWork would support HelpMeSee with program grants that WonderWork would pay to HelpMeSee, including an annual grant equal to the amount of the largest grant WonderWork made to a blindness partner from unrestricted funds that year, and a $2,000,000 program grant payable at the end of the 5 year agreement. (If the agreement was terminated before 5 years, this grant would be pro-rated.) This agreement provided that HelpMeSee would help WonderWork through payments of $166,667 per month to help pay for a portion of the expenses WonderWork incurred as part of this agreement. HelpMeSee terminated this agreement in the 12th month (August 2012) and currently the two organizations are in arbitration. The liability recorded at the termination of the agreement has been reversed as management believes the liability will not be paid.

**(9)    Allocation of Joint Costs**

In 2015 and 2014, Wonderwork conducted activities, principally direct mailings, that included fundraising appeals as well as program components. The joint costs incurred were allocated as follows:

|  | | 2015 | 2014 |
|---|---|---|---|
| Program services | $ | 4,499,272 | 3,717,856 |
| Management and general | | 277,847 | — |
| Fund-raising | | 2,222,376 | 3,939,353 |
| Total | $ | 6,999,495 | 7,657,209 |

**(10)    Contributions In-Kind**

In fiscal year 2015, in-kind contributions consisted of donated professional services, overhead for medical and surgical staff and facilities, medical surgical supplies, medications, and outreach from surgical partners. The amount that hospitals donate toward the overall cost needed to provide the surgeries was $434,486. Additionally, there was an in-kind donation of consulting services of $1,087,626 for an overall review of global programs to provide strategic direction by looking at population, poverty, disease burden, physician density and current hospital/partner locations. They used data provided by WonderWork partners to develop a detailed geo-spatial mapping representing over 100,000 patient locations. Further analysis was done for hospital/partner targeting, location-based patient targeting and data visualization for hospitals.

In fiscal year 2014, in-kind contributions consisted of donated professional services, overhead for medical and surgical staff and facilities, medical surgical supplies, medications and outreach from surgical partners. The amount that hospitals donate toward the overall cost needed to provide the surgeries was $1,882,441.

11                                                                                          (Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

**(11) Subsequent Events**

In connection with the preparation of the financial statements, the Organization evaluated subsequent events after the balance sheet date of June 30, 2015 through May 23, 2016, which was the date the financial statements were available to be issued.

On February 19, 2016, the Organization signed a lease agreement for the rental of office space beginning April 1, 2016, as the previous lease had expired on March 31, 2016. Approximate minimum annual rentals related to this lease are as follows for the years ended subsequent to June 30, 2015.

| | |
|---|---|
| 2016 | $ 23,394 |
| 2017 | 94,279 |
| 2018 | 97,107 |
| 2019 | 100,020 |
| 2020 | 103,021 |
| 2021 | 52,661 |

During fiscal 2016, $200,000 of impact loans were forgiven and will be recorded as contribution revenue in 2016.

12

**Exhibit E**

**Committees**

No creditors' committee has been formed prior to the order for relief in this chapter 11 case.

## Exhibit F

### List of Creditors Holding 20 Largest Unsecured Claims

The following is a list of the holders of the 20 largest unsecured claims against the Debtor, as of December 23, 2016, excluding claims of insiders as defined in 11 U.S.C. §101.

| | Name of Creditor and Contact Information | Nature of Claim | Amount of Claim | C/U/D/PS |
|---|---|---|---|---|
| 1. | Help Me See, Inc. | Arbitration Award | $15,981,187.95 | Contingent, Unliquidated, Disputed |
| 2. | Thompson Family Foundation c/o Mr. William S. Thompson 610 Newport Center Dr., Ste 1220 Newport Beach, CA 92660 | Loans Payable | $7,954,166.67 | |
| 3. | Bill and Ann Ziff Foundation 350 Park Avenue, 4th Floor New York, NY 10022 Attn: Spencer Lehv | Loans Payable | $845,500.00 | |
| 4. | Meadowlark Foundation c/o Amy Seagroatt, Ayco Company, LP P.O. Box 860 Saratoga Springs, NY 12866-0860 | Loans Payable | $524,833.33 | |
| 5. | Adams & Co Real Estate, LLC 411 Fifth Avenue New York, NY 10016 | Lease Liability | $448,621.00 | |
| 6. | Joseph Mullaney 512 River Road Westport, MA 02790 | Loans Payable | $110,750.00 | |
| 7. | Detter Family Foundation Attention: Iris F. Detter, President 11519 Aerie Lane Naples, FL 34120 | Loans Payable | $106,833.33 | |
| 8. | CDR Fundraising Group | Accounts Payable and Contract Liability | $81,250.00 | |

|  | Name of Creditor and Contact Information | Nature of Claim | Amount of Claim | C/U/D/PS |
|---|---|---|---|---|
| 9. | Sadguru Netra Chikitsalaya | Grants Payable | $75,000.00 | |
| 10. | The Raphael and Diana Vinoly Foundation<br>c/o Funaro & Co<br>350 Fifth Avenue, 41st Floor<br>New York, NY 10118 | Loans Payable | $60,083.33 | |
| 11. | Vivekananda Mission Asram | Grants Payable | $60,000.00 | |
| 12. | Ispahani Islamia Eye Institute & Hospital | Grants Payable | $40,000.00 | |
| 13. | Siliguri Greater Lions Eye Hospital | Accounts Payable | $37,500.00 | |
| 14. | Log-On<br>520 8th Ave<br>New York, NY 10018 | Accounts Payable | $30,070.75 | |
| 15. | Dr. Shroff's Charity Eye Hospital | Grants Payable | $30,000.00 | |
| 16. | Tejas Eye Hospital | Grants Payable | $30,000.00 | |
| 17. | Drashti Netralaya | Grants Payable | $27,500.00 | |
| 18. | Lumbini Eye Institute | Grants Payable | $20,000.00 | |
| 19. | Gombai Netralaya | Grants Payable | $17,500.00 | |
| 20. | Color Tree Group | Grants Payable | $16,825.21. | |

17

<u>**Exhibit G**</u>

**List of Creditors Holding 5 Largest Secured Claims**

The Debtor has no secured creditors.

### Exhibit H

#### Summary of Assets and Liabilities

Below is a summary of the Debtor's assets and liabilities as of December, 2016.

| Assets | December, 2016 |
|---|---|
| Cash and cash equivalents | $1,828,675.47 |
| Contributions receivable | $1,042,500.00 |
| Prepaid expenses and other assets | $56,625.12 |
| Investments – uninvested cash in an investment account | $18,274,060.41 |
| Property and equipment, net | $58,159.60 |
| Total Assets | $21,260,020.60[3] |
| **Liabilities** | |
| Accounts payable and accrued expenses | $1,151,782.85 |
| Loans payable | $9,531,666.67 |
| Arbitration Award | $15,980,287.95[4] |
| Total Liabilities | $26,663,737.47 |

[3] A substantial portion of the assets held by the Debtor are purpose restricted funds, which can only be used in accordance with the respective donor's instructions or intent.
[4] The Arbitration Award includes attorneys' fees and interest through November 29, 2016.

## Exhibit I

### Publicly Held Securities

The Debtor is a not-for-profit corporation. Accordingly, there are no shares of stock, debentures, or other securities of the Debtor that are publicly held.

## Exhibit J

**Debtor's Property Not in the Debtor's Possession**

The Debtor is unaware of any of its property that is in the possession of a custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, other than the funds currently held at the accounts listed below.

| Account Name / Description | Bank Name | Last Four Digits of Account No. |
|---|---|---|
| HSBC WW | HSBC Bank, N.A. | 9896 |
| HSBC 20/20/20 | HSBC Bank, N.A. | 4089 |
| HSBC BurnRescue | HSBC Bank, N.A. | 4512 |
| HSBC FirstStep | HSBC Bank, N.A. | 4679 |
| PayPal WonderWork | PayPal | 1060 |
| PayPal 20/20/20 | PayPal | 1061 |
| PayPal BurnRescue | PayPal | 1062 |
| PayPal FirstStep | PayPal | 1064 |
| Vanguard Invest. | Vanguard | 9446 |

## <u>Exhibit K</u>

### Leased and Owned Property

The Debtor leases office space for its headquarters at 411 Fifth Avenue, Suite 702, New York, NY 10016.

## Exhibit L

### Location of Substantial Assets and Books and Records

The Debtor's books and records are located at 411 Fifth Avenue, Suite 702, New York, NY 10016. The Debtor's assets are largely held in the accounts listed on Exhibit J. The Debtor does not hold any assets outside the territorial limits of the United States.

<u>**Exhibit M**</u>

**Litigation**

The following is a list of actions or proceedings, pending or threatened, against the Debtor or its properties where a judgment against the Debtor or a seizure of its property may be imminent:

| | |
|---|---|
| 1. | *Help Me See, Inc. v. WonderWork, Inc. f/k/a Surgery for the Poor, Inc.*, (Index No. 655667/2016), pending in the Appellate Division of the State of New York, First Department |
| 2. | *Help Me See, Inc. v. HSBC Bank USA, N.A.*, (Index No. 656580/206) pending in the Supreme Court of the State of New York, New York Court |
| 3. | *Help Me See, Inc. v. WonderWork, Inc. f/k/a Surgery for the Poor, Inc.*, (Index No. 2016-11716) pending in the Court of Common Pleas of Chester County, Pennsylvania, Civil Division. |

### Exhibit N

### Senior Management

The following provides the names of the individuals who comprise the Debtor's existing senior management, and a brief summary of their relevant responsibilities and experience, and tenure with the Debtor.

| | |
|---|---|
| Brian Mullaney, Co-Founder/CEO | Brian Mullaney is Founder/CEO and a director of WonderWork. WW will restore the eyesight of 130,000+ blind children and adults, help thousands of crippled children walk for the first time and provide reconstructive surgery for hundreds of severely burned children this year. WW operates in 40 of the world's poorest countries thanks to the support of 150,000+ donors from 80+ countries. Previously, Mullaney co-founded and served for 10 years as President of Smile Train, the world's largest cleft charity which has raised $1.4 billion and helped provide 1.2 million free surgeries. When Mullaney ran it, The New York Times said Smile Train is likely "one of the most productive charities, dollar-per-deed, in the world." |
| Hana Fuchs, CFO | Hana Fuchs has more than 35 years of finance and audit experience in both the non-profit and for-profit world. Before joining WonderWork's founding team, she was an integral member of the team that created and built Smile Train into the world's largest cleft charity. She served as VP of Finance and Administration of Smile Train and helped manage one of America's most respected and popular charities. Prior to Smile Train, she worked at Avon Products for more than 20 years and then at Sesame Workshop, as Vice President and Corporate Controller. |
| DeLois Greenwood, Chief Programs Officer | DeLois Greenwood has been helping provide surgical care for poor children in developing countries for almost 30 years. She is part of WonderWork's founding team and over the past 6 years has overseen its program development and has helped to deliver life-changing surgeries to children and adults who are blind, crippled with clubfoot or severely burned. Prior to WonderWork, Delois spent 10 years at Smile Train where she served as Vice President.  In this role, she managed a global staff and a network of over 1,000 partner hospitals in 80 countries, delivering over 100,000 surgeries a year. Working closely with the Medical Advisory Board, she oversaw the development of a global electronic medical records system and implemented safety and quality protocols that assured the delivery of safe, life-changing surgery. |
| Karen Lazarus, Director Strategic Projects | Karen Lazarus served as part of the founding team that launched WonderWork, and helped to get its programs off the ground.  She helps to oversee the major donor development efforts, managing both donor and prospect relationships, and works closely with Brian Mullaney, WonderWork's Co-Founder/CEO to carry out his vision. She served as a part of the team that created and transformed Smile Train into the world's largest cleft organization, and over a 10-year period helped nurture its growth. She also served as Brian Mullaney's right hand and assisted in developing worldwide marketing and fundraising activities to further the charity's mission of delivering safe, quality cleft care. |
| Janet Huang, Director Marketing | Janet Huang has been with WonderWork since 2013, overseeing its direct mail program by managing all acquisition and retention campaigns. She also oversees WonderWork's database administration and donor relations. Janet has over 13 years of experience in marketing and product management. With a diverse industry background, Janet has worked in publishing, advertising, entertainment and small entrepreneurial ventures. Janet is a graduate of New York University. |

## Exhibit O

### Payroll

The following provides the estimated amount of monthly payroll to the Debtor's employees (not including officers and directors), and the estimated amount to be paid to officers, directors, and financial and business consultants retained by the Debtor, for the 30-day period following the filing of the Debtor's chapter 11 petition.

| | |
|---|---|
| **Payments to Employees (Not Including Officers and Directors)** | $30,452.08 |
| **Payments to Officers and Directors** | $61,250.00 |
| **Payments to Financial and Business Consultants** | $2,500.00 |

## Exhibit P

### Schedule of Cash Receipts and Disbursements,
### Net Cash Gain or Loss, Unpaid Obligations and Receivables

The following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| Cash Receipts | $490,000.00 |
| Cash Disbursements | $143,207.63 |
| Net Cash Gain/(Loss) | $346,792.37 |
| Unpaid Obligations | $10,925,872.52 |
| Unpaid Receivables | $1,042,500.00 |

7889481.8