**Hearing Date and Time: February 16, 2017 at 10:00 a.m. (EDT)**
**Objection Deadline:  February 9, 2017 at 2:00 p.m. (EDT)**

Benjamin Mintz
Vincent Sama
Catherine Schumacher
Peta Gordon
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone:  (212) 836-8000
Fax:  (212) 836-8689


*Counsel for Help Me See, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| WONDERWORK, INC., | Case No. 16-13607 (SMB) |
| Debtor. | |

**MOTION OF HELP ME SEE, INC.**
**FOR AN ORDER DIRECTING PRODUCTION OF DOCUMENTS**
**AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

TO THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE:

1.      By this motion (the "Motion"), Help Me See, Inc. ("HelpMeSee"), creditor and party-in-interest in the above-captioned case, by and through its undersigned counsel, respectfully moves for the issuance and entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and directing examination of WonderWork, Inc. ("WonderWork" or "Debtor") including (i) the production of the documents specified in the document requests annexed hereto as Exhibit A, and (ii) the examination by deposition testimony of certain representatives or agents of Debtor, including

CEO Brian Mullaney ("Mullaney"), CFO Hana Fuchs ("Fuchs"), and such other individuals, including members of Debtor's Board of Directors, as may be identified following review of the document production, regarding the topics set forth in Exhibit B. In support of this Motion, HelpMeSee respectfully states as follows:

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408, 1409 and 1410. The basis for the relief sought herein is Bankruptcy Rule 2004.

## BACKGROUND

3.      HelpMeSee is Debtor's largest creditor and a 501(c)(3) charity whose mission is to eliminate cataract blindness worldwide. On August 31, 2011, HelpMeSee entered into an agreement with Debtor pursuant to which Debtor agreed that it would create, manage, and monitor various fundraising and marketing programs for HelpMeSee in exchange for a $2 million per year fee (the "Agreement"). Declaration of Benjamin Mintz, dated January 27, 2017 (the "Mintz Decl."), Ex. A, Agreement at 1. The Agreement provided that any disputes between the parties would be submitted to arbitration through the American Arbitration Association (the "AAA"). *Id.* at 16-17.

4.      HelpMeSee terminated the Agreement for cause effective August 17, 2012. Mintz Decl., Ex. B, Arbitration Final Award dated December 21, 2016 ("Final Award") at ¶ 120. On March 21, 2013, Debtor filed a Demand for Arbitration with the AAA, seeking $1,333,333.28 in damages based on its assertion that HelpMeSee terminated the Agreement without cause, plus costs and attorneys' fees. On May 9, 2013, HelpMeSee counterclaimed for

breach of contract, breach of fiduciary duty, fraudulent inducement, copyright infringement and an accounting, and sought damages, both compensatory and punitive, as well as an injunction, costs and attorneys' fees. *Id.* at ¶ 90.

5.      On June 1, 2013, the parties mutually selected AAA Arbitrator John H. Wilkinson, Esq., as their sole neutral arbitrator (the "<u>Arbitrator</u>"). Hearings commenced on March 4, 2014 and were completed, more than two years later, on March 11, 2016. *Id.* The Arbitrator heard testimony from 16 live witnesses during the arbitration's 49 hearing days, received into evidence over one thousand exhibits, and reviewed hundreds of pages of pre and post hearing briefing.

6.      On October 13, 2016, the Arbitrator issued a partial final award (the "<u>Partial Final Award</u>"),[1] which rejected Debtor's arguments and found Debtor to be in substantial breach of its Agreement with HelpMeSee (Mintz Decl., Ex. B, at ¶¶ 91-95) having breached most of the provisions in the Agreement (*see id.* at ¶¶ 91-93; 101-111), in clear breach of its fiduciary duty to HelpMeSee (*id.* at ¶¶ 96-100), and liable for conversion[2] (*id.* at 113). The Arbitrator ordered Debtor to "immediately" pay HelpMeSee $8,342,314.68 in damages equal to all amounts raised by Debtor during the Agreement term plus interest. *Id.* at ¶¶ 123-124; 137. In addition, due to Debtor's extensive and ongoing discovery abuses, including its repeated refusal to turn over clearly responsive documents, as well as the fact that both parties' interjected the issue of fees and costs into the arbitration, the Arbitrator awarded HelpMeSee reasonable costs and attorneys' fees incurred in connection with the arbitration, but provided that the amount would be subject of a separate award. *Id.* at ¶¶ 130-33. On December 21, 2016, the Arbitrator issued a Final Award, which in addition to the $8,342,314.68 in compensatory damages plus interest, awarded

---

[1] The Partial Final Award and Final Award are identical except for the addition of attorneys' fees and costs in the Final Award.

[2] The Arbitrator did not award damages for conversion solely because they were duplicative of the damages already awarded. *Id.* at ¶ 113.

$4,706,553.18 in attorneys' fees plus interest, and $149,563.99 in arbitration costs. *Id.* at ¶ 137. Today the award amounts to over $16 million.

7.    On November 29, 2016, the Supreme Court of the State of New York confirmed the Partial Final Award and denied Debtor's cross motion to vacate the Partial Final Award. During the hearing on the motions, Debtor argued that the Partial Final Award should be vacated on policy grounds primarily because some of its funds were purportedly "restricted" and, as evidence of those alleged restrictions, presented new affidavits from donors signed a few days prior to the hearing, which, in fact, stated just the opposite – that the donations were unrestricted.[3]  Mintz. Decl., Ex. C.

8.    On December 2, 2016, judgment was entered against Debtor in the amount of $11,124,170.78 with respect to the Partial Final Award, inclusive of pre-judgment interest and costs and disbursements (the "Judgment").  Mintz Decl., Ex. D.  On the same day, Debtor filed a notice of appeal.  Debtor also filed a motion for stay of judgment pending appeal on December 8, 2016, and moved for interim emergency relief, which was denied.  Shortly after the Judgment was entered, HelpMeSee took steps to execute, including restraining Debtor's assets.  During this time, Debtor provided responses to a questionnaire that HelpMeSee served in connection with an information subpoena in which Debtor provided information regarding its accounts and financials, but made no mention of any restricted funds.  Mintz Decl., Ex. E.

---

[3] *See, e.g.*, Mintz Decl., Ex. C, Affidavit of William E. Conway, Jr. ¶ 8 (". . . Bedford Falls intended its donation was intended as a gift to WonderWork, to be distributed as WonderWork determined was necessary and advisable in accomplishing its charitable mission . . .").

### A.    Filing of Bankruptcy Proceeding

9.    On December 29, 2016 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code.  Debtor acknowledged that it filed for bankruptcy protection to avoid immediate payment of the Judgment because it contends, among other issues, that it lacks sufficient unrestricted funds to satisfy the Judgment in full.  Although HelpMeSee's motion for the appointment of a trustee is pending [Dkt. No. 16], Debtor's management is currently operating its business and managing its property as debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in this case.

10.    In his First Day Declaration, Mullaney represented that a "substantial portion" of Debtor's assets are purportedly "restricted" and therefore unavailable to general unsecured creditors, but provided no specificity or support.  Declaration of Brian Mullaney Co-Founder and CEO of the Debtor, Inc., First Day Pleadings (the "First Day Declaration") at ¶ 23 [Dkt. No. 2]. Accordingly, the U.S. Trustee requested and the Court directed Debtor to provide a schedule of restricted assets by January 12, 2017, with a copy to HelpMeSee.  *See* Mintz Decl., Ex. F, Transcript of Proceedings at 25:22-26:13; 21:20-25 (Jan. 5, 2017).  To date, Debtor has failed to provide any such schedule and the only evidence of any alleged restrictions that HelpMeSee possesses are the affidavits from donors submitted in opposition to the HelpMeSee's motion to confirm the Partial Final Award that actually state that the funds are unrestricted.[4]

11.    On January 12, 2017, Debtor filed its Schedules A/B, D, E/F, G, H (together, the "Schedules") [Dkt. No. 12] and its Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (the "Statement of Financial Affairs") [Dkt. No. 13].   Those documents raise

---

[4] Counsel for Debtor has advised counsel for HelpMeSee that preparation of the restricted assets schedule is subject to the completion of an audit, and accordingly Debtor will not be in a position to provide the schedule for a few months.

additional questions about Debtor's financial condition and, among other issues, contradict the

Debtor's prior representations to this Court.  For instance, it is impossible to ascertain the status

of insider payments based on Debtor's disclosures.  In Exhibit O to the First Day Declaration,

Debtor indicated that its "Payments to Officers and Directors" over a one month period are

$61,250, but in response to Question 30 to its Statement of Financial Affairs states that there

have been no insider payments for the past year and does not list any transfers to any members of

Debtor's management team, including Mullaney and Fuchs, in the 90 days preceding the filing.

*See* Statement of Financial Affairs, "Attachment to Statement of Financial Affairs, Part 2

Transfers to Creditors Within 90 Days of Filing" [Dkt. No. 13].  Mullaney also informed the

Court at the January 5, 2017 hearing that he has not drawn a salary since October 2015, (Mintz

Decl., Ex. F, at 13:6-7), but neither Mullaney nor any other of Debtors' Officers or Directors

appear on any schedule as creditors as they should if they have in fact deferred salary.  *See*

Schedules E/F [Dkt. No. 12].

12.    Debtor is also unclear as to what payments were paid to outsiders.  For instance,

in its Application for Approval of Employment of Attorney, Debtor indicated that it paid its

current bankruptcy counsel, Carter Ledyard, $254,454.36 for its work in opposing the

confirmation of the Partial Final Award during the preference period, (Application For Approval

of Employment of Attorney, at ¶ 11 [Dkt. No. 3]), but does not list Carter Ledyard on its list of

90 day transfers.  *See* Statement of Financial Affairs, "Attachment to Statement of Financial

Affairs, Part 2 Transfers to Creditors Within 90 Days of Filing" [Dkt. No. 13].  Equally troubling

is the fact that Debtor may be paying certain creditors without adequate disclosures.  Nine of the

purported twenty largest creditors listed on Exhibit F to the First Day Declaration, designated as

9

"Grants Payable," with claims totaling $337,500 are not included on Schedules E/F,[5] which supposedly lists all unsecured creditors.

13.     Debtor's disclosures are also incomplete.  Debtor refuses to answer Question 9 to its Statement of Financial Affairs regarding charitable contributions under the pretense of it being a charitable organization and directs the reader to Debtor's "informational tax returns" for information regarding grants (Statement of Financial Affairs, "Attachment to Statement of Financial Affairs Part 4" [Dkt. No. 13]), but its last publicly available document only goes through June 30, 2015.  Debtor's ability to secrete assets overseas as "donations" or "grants" while insolvent is clearly of paramount concern to its creditors.  Finally, while Debtor fails to provide its Officer and Director Information as required in response to Question 28 of its Statement of Financial Affairs, it states in response to Question 29 that certain individuals, including Ravi Kant and Richard Steele, are no longer Officers or Directors of Debtor, but both of their names still appeared on Debtor's website as current members of the Board of Directors at the time the Schedules were filed (and were not removed until after HelpMeSee raised the issue in its motion for the appointment of a trustee).

## RELIEF REQUESTED

14.     By this Motion, HelpMeSee seeks the entry of an order authorizing and directing a Rule 2004 examination of Debtor to allow HelpMeSee to obtain the production of documents and depositions from Debtor concerning, among other things: (1) Debtor's financial condition; (2) the nature and extent of "restricted" funds; (3) the terms of Debtor's loans; (4) the nature of any grants offered by Debtor; and (5) Debtor's employee compensation and agreements.  HelpMeSee reserves its right to serve supplemental and additional document requests.

---

[5] The "creditors" are: Sadguru Netra Chikitsalaya; Vivekananda Mission Asram; Ispahani Islamia Eye Institute & Hospital; Siliguri Greater Lions Eye Hospital; Dr. Shroff's Charity Eye Hospital; Tejas Eye Hospital; Drashti Netralaya; Lumbini Eye Institute; and Gombai Netralaya.

## BASIS FOR RELIEF

15.    Bankruptcy Rule 2004 provides in relevant part that the Court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." *See* Fed. R. Bankr. P. 2004(b).  The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies in the sound discretion of the Bankruptcy Court. *See, e.g.*, *In re Millennium Lab Holdings, LLC*, No. 15-12284, 2016 WL 7048599, at *9 (Bankr. D. Del. Dec. 2, 2016).

16.    "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts and to come into possession of it that the rights of creditors may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)); *see also In re Madison Williams and Co., LLC*, No. 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014).  Examinations under Bankruptcy Rule 2004 may include within their scope, *inter alia*: any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter which may affect the administration of a debtor's estate. *See* Fed. R. Bankr. P. 2004(b). Furthermore, because the purpose of Bankruptcy Rule 2004 is to aid in the discovery of assets, "[a]ny third party who has a relationship with the debtor may be made subject to a [Bankruptcy] Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)); *see also In re Ecam Pub., Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) (third parties may be subject to examination if they have knowledge of the debtor's affairs).  Finally, Rule 2004 may be used to ascertain whether the debtor has a viable

claim for relief against a third party or to unearth a fraud. *See, e.g.*, *In re Recoton Corp.*, 307 B.R. at 755-56 (Rule 2004's purpose is to allow "the Committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims."); *In re Ecam Pub., Inc.*, 131 B.R. at 560 (Bankruptcy Rule 2004 is intended to be used "to determine whether there are grounds to bring an action to recover property of the estate."); *see also In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011) ("[A] large latitude of inquiry should be allowed . . . for the purpose of . . . unearthing frauds.").

17.    The information sought by HelpMeSee, Debtor's largest creditor, is clearly within the proper scope of a Rule 2004 examination and is narrowly tailored in its scope.  One focus of HelpMeSee's Rule 2004 examination is to determine the location and nature of Debtor's assets, particularly due to the inconsistent and misleading disclosures by Debtor to date, which may materially impact HelpMeSee's ultimate recovery.  Although Debtor has repeatedly asserted that its funds are "restricted" and therefore unavailable to HelpMeSee and other unsecured creditors, Debtor has never produced any evidence corroborating its allegation.  Indeed, all evidence to date indicates just the opposite – that the funds are unrestricted.  As this Court and U.S. Trustee implicitly recognized in directing the Debtor to produce a schedule (an order that the Debtor has ignored), general unsecured creditors, including HelpMeSee, have a right to understand and independently verify Debtor's claims as to the nature and amount of allegedly restricted funds. Debtor also contends that the majority of its non-HelpMeSee unsecured debt is in the form of debt from certain "impact loans," but HelpMeSee has questions regarding the terms and nature of these loans, including whether they are best characterized as donations rather than loans. Should these loans be recast as donations, Debtor has ample funds to repay its creditors including HelpMeSee in full.

18.     As noted above, Debtor's Schedules include a number of inconsistencies and omissions regarding which HelpMeSee intends to seek clarity.  In addition, HelpMeSee seeks information regarding the nature and scope of Debtor's operations and "grant" processes.

19.     Finally, based on the Arbitrator's detailed findings, which include findings of breach of fiduciary duty and conversion, it appears that the Debtor may have claims against current management, and in particular Mullaney, as well as the directors for breach of fiduciary duty, mismanagement, and indemnification.   HelpMeSee also seeks information to evaluate potential preferences, fraudulent conveyances, and insider payments.  HelpMeSee has a right to seek to maximize the estate by investigating those claims.  Notably, the discovery sought here relates to the financial condition of the Debtor and potential claims that the Debtor may have, and does not bear on HelpMeSee's separate motion for the appointment of a trustee, which is scheduled to be heard prior to the date by which Debtor will be required to produce responsive documents.  Therefore it is appropriate to proceed pursuant to Rule 2004.

20.     Based on the foregoing, the requested Rule 2004 examination relief is justified and warranted.  HelpMeSee therefore requests that this Court enter an order, substantially in the form annexed hereto as Exhibit C, (i) directing production for examination and copying at the offices of Arnold & Porter Kaye Scholer LLP (Attn: Benjamin Mintz, Esq.) all documents in Debtor's custody or control described in the document requests attached hereto as Exhibit A, (ii) directing representatives or agents of Debtor, including CEO Brian Mullaney, CFO Hana Fuchs, and such other individuals, including members of Debtor's Board of Directors, as may be identified following review of the document production, to appear for deposition by HelpMeSee on the topics attached hereto as Exhibit B, and (iii)  granting such other and further relief as may be just and proper.

13

## SATISFACTION OF LOCAL RULE 9013-1

21.     The Motion specifies the applicable rules and statutory authorities upon which the relief requested herein is predicated and the legal authorities that support the relief request. HelpMeSee therefore submits that the Motion satisfies the requirements of Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

22.     HelpMeSee has provided notice of this Motion to: (a) counsel for Debtor; (b) the Office of the United States Trustee; and (c) all parties that have filed notices of appearance in the Chapter 11 Case.   In light of the relief requested, HelpMeSee submits that such notice is reasonable and proper and that no further notice is necessary.

## NO PRIOR REQUEST

23.     No prior request for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

24.    For all of the foregoing reasons, HelpMeSee respectfully requests that this Court

enter an order, substantially in the form attached hereto as Exhibit C, granting the relief

requested herein and such other and further relief as the Court deems just and equitable.


Dated: January 27, 2017
       New York, New York

                                    Respectfully submitted,

                                    /s/ Benjamin Mintz
                                    Benjamin Mintz

                                    ARNOLD & PORTER KAYE SCHOLER LLP
                                    250 West 55th Street
                                    New York, New York 10019-9710
                                    Telephone:  (212) 836-8000
                                    Fax:  (212) 836-8689
                                    benjamin.mintz@apks.com

                                    *Counsel for Help Me See, Inc.*

**Exhibit A**

**Document Requests**

Benjamin Mintz
Vincent Sama
Catherine Schumacher
Peta Gordon
ARNOLD & PORTER KAYE SCHOLER, LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:  (212) 836-8000
Facsimile: (212) 836-6550

*Counsel for Help Me See, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| WONDERWORK, INC., | Case No. 16-13607 (SMB) |
| Debtor. | |

**HELP ME SEE INC.'S FIRST SET OF REQUESTS**
**FOR THE PRODUCTION OF DOCUMENTS BY WONDERWORK, INC.**

Pursuant to Bankruptcy Rule 2004, Help Me See, Inc. ("HelpMeSee") requests that

WonderWork, Inc. ("Debtor") produce any and all documents and things specified herein that

are in Debtor's possession, custody, or control, on or before March 16, 2017 at the offices of

Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019-9710.

<u>**INSTRUCTIONS**</u>

1.    Each document request calls for the production of each responsive

document in Debtor's possession, custody, or control, including each document in the

possession, custody, or control of Debtor's officers, directors, employees, agents,

representatives, and any other person acting on Debtor's behalf.

2.    Each Request should be answered separately, fully, and in writing.

3.      Produce all documents and things as they are kept in the ordinary course of business, including with all staples and clips attached and with all associated file folders, dividers and labels.

4.      If any documents are withheld from production on grounds of privilege or immunity, identify each such document by specifying: (i) the date of the document; (ii) the identity of all persons who prepared or signed the document; (iii) the identity of all persons designated as addressees; (iv) the identity of all persons who received any copy of the document; (v) the type of document (*e.g.*, memorandum, report, letter, etc.); (vi) the subject matter of the document; and (vii) the basis for withholding the document.

5.      If any document requested herein has been destroyed, discarded or otherwise disposed of, identify the document by providing the following information: the type of document; the date of the document; the name of each person who prepared it; each person who signed it; and each person to whom it was directed, circulated or distributed.  Also, identify each person who authorized the destruction or other disposition of the document, each person who destroyed or otherwise disposed of the document, and provide the date of and reason for the destruction or other disposition of the document.

6.      No document request or subpart hereof shall be construed as a limitation on any other document request hereof.

7.      Each document furnished in response to these requests shall be identified by the name of the person from whose files that document was taken and the file from which the document was taken.

2

8.     Each document is to be produced in its entirety, even if only a portion of the document relates to the identified subject matter. Where copies of otherwise identical documents bear additional notations, produce all non-identical copies in their entirety.

9.     The following requests are deemed to be continuing. If at any time Debtor or its counsel obtain additional documents responsive to these document requests, or in any way inconsistent with that which previously has been produced to HelpMeSee, prompt production and supplementation of these documents is required.

10.     Unless otherwise stated, terms and definitions defined in the Southern District of New York Local Civil Rule 26.3 are incorporated by reference.

## DEFINITIONS

1.     "Debtor" or "WonderWork" refers to WonderWork, Inc. f/k/a/Surgery For The Poor, Inc. and includes aliases 20x20x20, First Step or 1stStep, and Burn Rescue.

2.     "Chapter 11 Proceeding" refers to the case identified as *In re WonderWork, Inc.*, Case No. 16-13607, in the United States Bankruptcy Court for the Southern District of New York, commenced on December 29, 2016 before Judge Stuart M. Bernstein.

3.     "Lender" or "Lenders" refers to an individual, foundation, or entity who has provided Debtor with any type of loan.

4.     "Mullaney" refers to Debtor's co-founder and Chief Executive Officer Brian Mullaney.

5.     "Petition Date" refers to December 29, 2016, the date Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.     "Restricted Funds" refer to any funds that Debtor claims to be unavailable to satisfy the claims of the general unsecured creditors.

3

7.      "Senior Management" refers to Debtor's senior management, which is comprised of Brian Mullaney, CEO; Hana Fuchs, CFO; DeLois Greenwood, Chief Programs Officer; Karen Lazarus, Director Strategic Projects; and Janet Huang, Director Marketing.

8.      The term "including" means including, but not limited to.

9.      Each person or entity, including all parties and non-parties, referred to herein includes (without limitation) each of its predecessors, successors, or assigns and their past or present parent companies, subsidiaries, affiliates, officers, directors, employees and agents and anyone acting or purporting to act on behalf of any of them.

## DOCUMENT REQUESTS

1.      All of Debtor's financial records, including its general ledgers, donations and contributions received, cash receipts and disbursements, and payroll ledger.

2.      All of Debtor's account statements, including bank accounts, credit cards, PayPal, and investment accounts.

3.      All documents concerning Debtor's future expenditures and any prepared budgets.

4.      A current balance sheet, including Debtor's assets and liabilities.

5.      All documents concerning any transfers of money or other assets from Debtor to, or for the benefit of, Senior Management or any current or former members of Debtor's Board of Directors, including, Ravi Kant, Ted Dysart, Sabrina Clark, James Poehling, Richard Steele, Steven Levitt, John J. Coneys, Clark Kokich, Steven Rappaport, Richard Price, or Mark Atkinson.

6.      All communications between or among Debtor and Senior Management or any current or former members of Debtor's Board of Directors, including Ravi Kant, Ted Dysart,

4

Sabrina Clark, James Poehling, Richard Steele, Steven Levitt, John J. Coneys, Clark Kokich,

Steven Rappaport, Richard Price, or Mark Atkinson, concerning the transfer of funds or assets

whether domestic or offshore from one year prior to the Petition Date.

       7.     All documents relating to the payment of fees to any vendor, including

law firms, within the 90-day period prior to the Petition Date.

       8.     All documents concerning Restricted Funds, including:

    a.  Documents concerning the method by which Debtor received the Restricted Funds, including web donations, direct mail donations, and direct donations;

    b.  Documents concerning any internal transfers of Restricted Funds between or among Debtor's accounts, including its bank, PayPal, and investment accounts;

    c.  Documents concerning any external transfers of Restricted Funds, including grants, program expenses, fundraising expenses, and payroll;

    d.  All reports tracking the use, expenditure, or investment of Restricted Funds;

    e.  Documents concerning any interest accrued on Restricted Funds.

       9.     All documents concerning Debtor's unrestricted funds, including:

    a.  Documents concerning the method by which Debtor received the unrestricted funds, including web donations, direct mail donations, and direct donations;

5

    b.  Documents concerning any internal transfers of unrestricted funds between or among Debtor's accounts, including its bank, PayPal, and investment accounts;

    c.  Documents concerning any external transfers of unrestricted funds, including grants, program expenses, fundraising expenses, and payroll;

    d.  All reports tracking the use, expenditure, or investment of unrestricted funds;

    e.  Documents concerning any interest accrued on unrestricted funds.

10.    All documents and communications concerning any donor-imposed restriction or covenant, including any written instructions, gift instruments, letters, and checks.

11.    All documents concerning any grants offered or made by Debtor, whether foreign or domestic, outstanding or paid in part or full, including grant letters, terms and conditions, amounts, and purpose of such grants.

12.    All documents and communications concerning how grants are spent or used by grantees, including letters, reports, and patient or surgery tracking systems.

13.    All documents and communications concerning any loan, including any "impact" or margin loan, made to Debtor from any entity, whether outstanding or paid in full, including loan agreements, amendments, schedules, reports, amounts drawn down, amounts repaid, amounts forgiven, and interest accrued.

14.    All documents and communications with Lenders.

15.    All documents and communications with Debtor's Board of Directors.

16.    Debtor's Board of Director meeting minutes and resolutions.

6

17.    Documents concerning the salaries or compensation of Debtor's Senior Management, including documents concerning deferrals and terms or conditions of such deferrals.

18.    IRS Form W-2s of Debtor's Senior Management.

19.    All documents concerning any employment agreements Debtor has entered into with any of its employees, including Senior Management.

20.    All documents concerning expenses submitted for reimbursement by Debtor's Senior Management, including receipts, bank or credit card statements, amounts, internal submission forms and approvals, and documents concerning the nature or purpose of the expenses.

## Exhibit B

### Deposition Topics

1. Debtor's assets including its Restricted Funds and unrestricted funds, including what qualifies as Restricted Funds, what evidence Debtor maintains of donor imposed-restrictions, and how Restricted Funds are managed and tracked both internally among Debtor's accounts and when they are transferred externally to persons other than Debtor.

2. Methods by which Debtor solicits and receives donations of Restricted Funds and unrestricted funds.

3. The nature and terms of Debtor's loans and whether any portion of those loans have been repaid or forgiven.

4. The compensation of Debtor's Senior Management, including Mullaney's alleged decision not to receive salary, whether Mullaney's salary is or has been deferred and the practices used to defer his salary, and whether the salary of any other members of Senior Management or Debtor's employees has been foregone or deferred.

5. Debtor's system for reviewing, approving, and reimbursing expenses and the nature and purpose of the reimbursed expenses.

6. All grants or contributions Debtor has offered or paid, including the use, amount, nature, and purpose of such grants.

7. Debtor's Directors' knowledge and involvement in Debtor's activities.

8. Debtor's IT infrastructure, including, information regarding the search, collection, and production of documents in response to this Rule 2004 request.

**<u>Exhibit C</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| WONDERWORK, INC., | Case No. 16-13607 (SMB) |
| Debtor. | |

## ORDER DIRECTING PRODUCTION OF DOCUMENTS
## AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004

Upon the Motion, dated January 27, 2017, of Help Me See, Inc. ("HelpMeSee") for entry

of an order requiring the production of documents from WonderWork, Inc. ("Debtor")

responsive to the requests set forth on Exhibit A to the Motion, and requiring certain

representatives and agents of Debtor to submit to deposition(s) on the topics set forth on Exhibit

B to the Motion; and it appearing that the Court has jurisdiction over this matter; and it appearing

that notice of the Motion as set forth therein is sufficient, and that no other or further notice need

be provided; and it further appearing that the relief requested in the Motion is in the best interest

of WonderWork, its estate and creditors; and upon all of the proceedings had before the Court;

and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that Debtor is directed to provide to HelpMeSee in accordance with Rule

2004 of the Bankruptcy Rules: (i) all documents responsive to the requests set forth on Exhibit A

to the Motion, within thirty (30) days of entry of this Order (unless otherwise agreed), and

(ii) any additional documents reasonably required by HelpMeSee upon subsequent request by

HelpMeSee; and it is further

ORDERED that HelpMeSee is authorized, but not directed, to serve deposition notices upon and to depose one or more representatives or agents of Debtor, including Brian Mullaney, Hana Fuchs, and such other individuals, including members of Debtor's Board of Directors, as may be identified following review of the document production (collectively, the "Potential Deponents"), on the topics set forth on Exhibit B to the Motion, and the Potential Deponents shall be required to appear for deposition on a date and time agreed to by HelpMeSee and WonderWork but no later than **April 6, 2017**; and it is further

ORDERED that this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  New York, New York
       _____, 2017

_____
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

2