Aaron R. Cahn
Leonardo Trivigno
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Telephone:  (212) 738-3200
Facsimile:   (212) 738-3232
Email:        cahn@clm.com
                   trivigno@clm.com

*Proposed Counsel to the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
                                                           :    **Chapter 11**
                                                           :
**In re**                                                  :    **Case No. 16-13607 (SMB)**
                                                           :
**WONDERWORK, INC.,**                                      :    Re: Docket No. 27
                                                           :
        **Debtor.**                                        :    Hearing Deadline: February 16, 2017 at 10:00 a.m.
                                                           :
                                                           :    Objection Deadline: February 9, 2017 at 4:00 p.m.
---------------------------------------------------------- X

### DEBTOR'S OPPOSITION TO MOTION OF HELP ME SEE, INC. FOR AN ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004

WonderWork, Inc. ("***WonderWork***") by and through its undersigned proposed attorneys, submit this opposition to the Help Me See, Inc.'s ("***HMS***") *Motion for an Order Directing Production of Documents and Examination Pursuant to Bankruptcy Rule 2004* (Dkt. No. 27) (the "***Motion***"). In opposition to the Motion, WonderWork states as follows:

#### PRELIMINARY STATEMENT

1. As will be made clear in WonderWork's response to HMS's motion to appoint a trustee (Dkt. No. 16), HMS is on a mission to destroy WonderWork by any means possible. The

Motion is just HMS's latest attempt to diminish the Debtor's prospects of reorganization by driving up litigation costs and overwhelming WonderWork's full-time staff of seven people with excessively broad and exceedingly onerous discovery requests.[1]

2.  The Motion seeks an order directing the production of 20 categories of documents and a potentially unlimited number of depositions. Of the twenty proposed document requests, eighteen have no date limitation. *See* Motion, Ex. A, Requests Nos. 1-5, 8-20. Moreover, sixteen of these requests seek "all documents" or "all communications" relating to extremely broad categories of information. *See id.* Requests Nos. 1-3, 5-15, 19-20. For example, HMS seeks "all documents concerning" restricted funds and "all documents concerning" unrestricted funds. *See id.* Requests Nos. 8 and 9. Together these two requests encompass "all documents concerning" *any* funds held by WonderWork. If the Motion is granted, it is unclear what documents would *not* be subject to production.[2]

3.  The request for depositions are equally, excessively broad. In addition to the depositions of Brian Mullaney, the Debtor's CEO, and Hana Fuchs, the Debtor's CFO, the Motion seeks depositions of "such other individuals, including members of the Debtor's Board of Directors, as may be identified following review of document production." *See* Motion, ¶ 1. Thus, the Motion would permit HMS to take an *unlimited* number of depositions of anyone "identified" in any of WonderWork's documents or emails. And in light of the all-encompassing

---

[1] In its quest to destroy WonderWork, HMS has incurred over $6 million in legal fees. Moreover, in addition to this Motion and the motion to appoint a Chapter 11 trustee, WonderWork has recently learned that HMS may have contacted WonderWork's donors and lenders, possibly in an effort to sabotage WonderWork's fundraising ability. WonderWork is considering how best to proceed, including seeking Rule 2004 discovery to discern whether it may have any claims against HMS relating to this conduct.

[2] HMS also seeks documents, such as impact lender loan documents, that are protected by confidentiality provisions. WonderWork has no objections to producing loan documents (with an appropriate scope and time limitation), provided the respective impact lender consents to such production as required by the relevant agreement.

scope of the document requests, the universe of potential deponents is likely to include anyone who has any connection whatsoever to WonderWork, including its donors. Further, the proposed deposition topics are as unduly broad as the document requests. *See, e.g.*, Motion, Ex. B, Deposition Topic No. 1 (information regarding the "Debtor's assets including its Restricted Funds and unrestricted funds . . . .").

4. Nowhere does HMS justify the scope of the requested discovery, nor does it even attempt to explain why it needs such discovery now. Wonderwork has, in fact, attempted to respond to HMS's informal requests for information insofar as has been practical, but there are no issues before the court in this one-month old case that justify HMS in demanding any of the information which is sought in the Motion.

5. HMS's motivation, however, is clear. Responding to such onerous discovery would consume all or substantially all of the time and energy of WonderWork's full-time staff. In addition to incurring substantial additional litigation costs, WonderWork would be unable to attend to, much less focus on, soliciting donations – the life blood of its operations. The Debtor's inability to properly fundraise would seriously, if not fatally, jeopardize the likelihood of a successful reorganization and increase the risk that WonderWork will be forced to liquidate.

6. As this Court recognized in January, Federal Rule of Bankruptcy Procedure ("***Rule***") 2004 does not provide creditors with unlimited access to the type of exceedingly broad discovery that HMS seeks. *See In re SunEdison, Inc.*, No. 16-10992 (SMB), 2017 WL 187558 (Bankr. S.D.N.Y. Jan. 18, 2017). Accordingly, and for the reasons set forth below, the Motion

should be denied, or in the alternative, if the Court finds that "good cause" exists, it should direct the parties to work together to substantially narrow the proposed discovery requests.[3]

## JURISDICTION

7.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

8.  Rule 2004 provides in relevant part that the Court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). In chapter 11 cases, the examination may extend to matters relating "to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan . . . ." *Id.* "The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *In re SunEdison*, 2017 WL 187558, at *4; *see also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 gives the Court "significant" discretion).

9.  In evaluating a request to conduct a Rule 2004 examination, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991), *accord In re Coffee Cupboard,*

---

[3] To the extent the Motion is granted, WonderWork reserves all rights to seek a protective order prior to any production of documents to protect confidential information, such as WonderWork's donor lists, that may be subject to production.

4

*Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991). Indeed, "[w]hile the scope of Rule 2004 examination is very broad, it is not limitless." *In re SunEdison*, 2017 WL 187558, at *4 (quoting *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989)).

10. While Rule 2004 has been compared in the past to a "fishing expedition," more recent decisions – including by this Court – have recognized that, due to the ever-increasing cost of discovery and the burdens it places on debtors, the discovery permitted by Rule 2004 must embody a "spirit of proportionality" that is "consistent with the historic concerns regarding the burden on the producing party." *Id.* at 5 (quotation marks and citation omitted). As such, Rule 2004 discovery "should not be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *Id.* at 4 (quoting *In re Fearn*, 96 B.R. at 138).

**I. HMS Has Not Established Good Cause for Discovery, and Thus The Motion Should Be Denied**

11. HMS asserts three bases for its Rule 2004 discovery requests. First, it asserts that it has "a right to understand and independently verify" the nature and amount of the Debtor's restricted funds. Motion, ¶ 17. Second, HMS points to alleged "inconsistencies" in the Debtor's schedules. *Id.* at ¶ 18. Finally, HMS seeks discovery to evaluate any potential claims against current management. None of these bases establish the "good cause" required for Rule 2004 discovery. *Id.* at ¶ 19. Accordingly, the Motion should be denied.

*i. Discovery Regarding Restricted Funds Is Premature and Unwarranted*

12. At the Debtor's First Day Hearing on January 5, 2017, the U.S. Trustee requested information concerning the Debtor's restricted funds, and counsel for WonderWork stated that he would provide the requested information on January 12. Subsequent to that hearing, WonderWork and the U.S. Trustee conferred and agreed that rather than provide unaudited

information on January 12, WonderWork would seek to retain an auditor and provide audited information promptly after the completion of an audit.

13. As HMS acknowledges, it was informed of WonderWork's agreement with the U.S. Trustee. *See* Motion, ¶ 10 n.4. Nevertheless, in its Motion, HMS attempts to cast the lack of production on January 12 as a "failure" by the Debtor entitling HMS to virtually unlimited discovery. *See id.* at ¶ 10. HMS is wrong on both counts.[4]

14. First, notwithstanding HMS's suggestions to the contrary, there is nothing even remotely improper regarding WonderWork's designation of certain funds as restricted. It is required by law. New York's Not-for-Profit Corporation Law ("N-PCL") provides that a not-for-profit "*shall* apply" charitable donations "to the purposes specified in the gift instrument" and for "reasonable and proper" costs for administering the gift. N-PCL § 513(b) (emphasis supplied). Furthermore, the laws governing charitable solicitation in New York require that charities use the funds raised from the public via a solicitation only for the purposes outlined in the solicitations. *See* EXECUTIVE LAW § 174-b(4). New York courts have also made clear that restricted funds are not available to satisfy the claims of general creditors. *Matter of Friends for Long Island's Heritage*, 80 A.D.3d 223, 234–35 (2d Dep't 2010) ("We find that New York's long-standing policy honoring donors' restrictions on the use of the property they donate has

---

[4] HMS also bemoans the fact that the Debtor has yet to produce evidence in support of its assertions concerning its restricted funds. Motion, ¶ 17. This complaint rings hollow. First, this case is just one month old. Second, it ignores the voluminous discovery exchanged during the arbitration, as well as the documents filed in connection with the New York State Supreme Court proceeding and the subsequent appeal. *See, e.g.*, Affidavit of Hana Fuchs sworn to on November 11, 2016 and filed in *Help Me See, Inc. v. WonderWork, Inc.* (New York State, New York County Supreme Court Index No. 655667/2016) [Dkt. No. 20]. The Motion makes no exception for these documents and instead requires WonderWork to review and produce documents that HMS already has in its possession, which further evidences the true motivation of the Motion – the continuation of HMS's campaign to destroy WonderWork.

6

greater weight than the claims of creditors. To hold otherwise would be to sanction a gap in the protection of the donors' expressed limitations.").

15. Second, WonderWork did not "fail" to provide any information. As set forth above, it reached an agreement with the U.S. Trustee regarding the deadline to submit information concerning its restricted funds.

16. Third, HMS cannot establish – as it must – that it is entitled to discovery now. The balance of the parties' competing interests – namely, HMS's immediate desire for information concerning the Debtor's restricted funds versus the estate's interest in preserving estate assets and in allowing the Debtor to focus on fund-raising – heavily favors the Debtor, particularly here where WonderWork seeks to retain an auditor and intends to provide the parties with audited information upon receipt. *See In re SunEdison*, 2017 WL 187558, at *4–5. To the extent that HMS believes it needs documents in the interim, WonderWork remains willing to provide documents in response to reasonably-tailored requests on an informal basis. Seeking discovery now is premature and, in light of the unduly broad requests, particularly unwarranted.

    i. *The Debtor's Schedules Do Not Provide a Basis for the Exceedingly Broad Discovery Sought by the Motion*

17. HMS lists five alleged deficiencies in the Debtor's Schedules that HMS believes entitles it to every document in WonderWork's offices and the right to take unlimited depositions. As set forth below, the alleged "deficiencies" are easily reconciled and thus do not properly provide the "good cause" required to obtain Rule 2004 discovery.[5]

- o <u>Mr. Mullaney's Salary:</u> HMS asserts that it needs the requested discovery to understand Mr. Mullaney's salary. Motion, ¶¶ 11, 18. Pursuant to an employment agreement effective as of January 1, 2016, Mr. Mullaney earns an annual salary of $475,000 payable in equal semi-monthly installments, or as otherwise agreed to by Mr. Mullaney. Mr. Mullaney may also receive an annual bonus of up to $250,000. As Mr. Mullaney represented to the Court on January 5, 2017, he has

---

[5] As set forth herein, WonderWork is willing to cooperate with HMS to address its concerns.

7

not taken a salary since 2015 and has not been paid anything for 2016. Exhibit O to the First Day Declaration listed $61,250 as the amount of the "Payments to Officers and Directors" because it was the Debtor's pre-petition practice to set aside the semi-monthly amounts payable to Mr. Mullaney on its books and records. The Debtor will amend Schedule E/F to include amounts owed to Mr. Mullaney.

- o Omission of Grantees from SOFA: HMS alleges it needs the requested discovery to understand the Debtor's "troubling" failure to include grantees on the Debtor's Statement of Financial Affairs ("*SOFA*"). Motion, ¶ 12. The Debtor has no legal obligation to donate funds to grantees. As such, they are not creditors, have no claims against the estate and were properly omitted from the SOFA. *See, e.g., In re 375 Park Avenue Assocs., Inc.*, 182 B.R. 690, 693–95 (Bankr. S.D.N.Y. 1995) (absent consideration or detrimental reliance, pledges to donate money are unilateral contracts that do not give rise to claims against the estate). On the Petition Date, the Debtor included grantees on the list of its twenty largest creditors out of an abundance of caution.

- o Reference to Tax Returns on SOFA: HMS alleges it needs the requested discovery to understand the Debtor's grant-making because the Debtor's response to SOFA Question 9 refers to publicly filed tax returns that "only goes through June 30, 2015." Motion, ¶ 13. The fact that the Debtor's grants are publicly available suggests that HMS has no need for discovery with respect to the Debtor's grant-making activities at least through June 30, 2015. Nevertheless, HMS seeks these documents dating back to WonderWork's formation. *See, e.g., id.*, Ex. A, Request No. 8. To address HMS's concern, the Debtor will provide HMS with a list of all of its grants from July 1, 2015 to the Petition Date.[6]

- o Payment to Carter Ledyard: HMS alleges it needs the requested discovery to understand amounts paid to proposed counsel for the Debtors, Carter Ledyard & Milburn LLP. Motion, ¶ 12. As fully disclosed in the Debtor's Application to Employ Carter Ledyard & Milburn LLP, prior to the Petition Date, Carter Ledyard was paid $254,454.36 for its work in opposing confirmation of the Partial Final Award, seeking to vacate the Partial Final Award and moving to stay enforcement of the order confirming the Partial Final Award. *See* Dkt. No. 3, ¶ 11. The Debtor will amend the SOFA to reflect this payment.[7]

---

[6] The fact that HMS would go so far as to characterize grants provided by WonderWork to restore sight to impoverished children in Third World countries as an attempt to "secrete assets overseas" (*see* Motion, ¶ 13) is yet further evidence of HMS's animus against WonderWork.

[7] In addition to disclosing the amounts paid to Carter Ledyard in filings with this Court (Dkt. No. 3, ¶ 11), WonderWork also disclosed its payment to Carter Ledyard in response to HMS's information subpoena. Mintz Decl., Ex. E, at 4. In light of these explicit disclosures, any insinuation that WonderWork attempted to conceal this payment is ludicrous.

8

7913630.5

- List of Officers and Directors on Website: HMS alleges it needs the requested discovery to understand whether Ravi Kant and Richard Steele are current Board Members (as previously reflected on the Debtor's website) or no longer Board Members (as reflected on the Debtor's SOFA). Motion, ¶ 13. Ravi Kant and Richard Steele are no longer Board Members, which is now accurately reflected on the Debtor's website.

18. None of these alleged deficiencies in the Debtor's schedules justify *any* Rule 2004 discovery, much less the virtually limitless discovery sought by HMS. To the extent that HMS desires documentation supporting the Debtor's responses above, the Debtor is willing to work with HMS to provide such documentation on an informal basis.

> ii. *HMS's Unsubstantiated Belief in Purported Claims Against Current Management Cannot Establish the Requisite "Good Cause"*

19. Relying solely on the arbitration award, HMS argues it needs discovery to investigate potential claims against current management. Motion, ¶ 19. This argument lacks any merit and must fail.

20. The arbitration award – which is riddled with factual errors – concerns a contractual dispute between HMS and the Debtor, and focused on the Debtor's actions from the effective date of the agreement (August 2011) to its termination (August 2012).[8] The breach of fiduciary duty and conversion claims referenced by HMS (*see* Motion, ¶ 19) relate to the arbitrator's findings with respect to that agreement and HMS's claims that WonderWork retained funds that were intended by the donors for HMS.[9] The arbitrator's findings have nothing whatsoever to do with management's conduct vis-à-vis the Debtor.

---

[8] The Debtor will detail the award's factual errors and deficiencies in its opposition to the motion to appoint a Chapter 11 trustee.

[9] The basis for WonderWork's pending appeal is that the determination regarding donor intent as a matter of law cannot be made in private arbitration and in the absence of (i) notice to the donors and the New York Attorney General, and (ii) an opportunity to be heard. Any factual finding made by the arbitrator on this issue is rebutted by affidavits and letters from the donors that reiterate their respective intent to donate to WonderWork and not to HMS. *See* Mintz Decl., Ex. C.

9

21. HMS fails to cite any portion of the arbitration award that mentions, much less discusses, potential torts committed by current management *against* the Debtor.[10] Moreover, HMS would not be able to rely upon any discussion of issues that were not essential to the award. *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir 2003) (Under either federal law or New York State law, "for a judgment to be preclusive, the issue in question must have been actually decided, and its determination must have been essential to the judgment."). As such, the arbitration award cannot serve as a basis for the broad discovery sought by HMS.

## II. In the Alternative, the Discovery Requests Should Be Substantially Narrowed

22. Even if this Court believes that HMS has established cause for Rule 2004 discovery, the discovery requests are exceedingly broad and should be substantially narrowed.

23. With respect to document requests, eighteen of the twenty document requests contain no date limitation and would thus require WonderWork to search and review every hard-copy and electronic document and communication since its inception in 2011. *See* Motion, Ex. A, Requests Nos. 1-5, 8-20. Moreover, sixteen of the requests seek "all documents concerning" or "all communications concerning" broad categories of information. *See id.* Requests Nos. 1-3, 5-15, 19-20. In light of the scope of these requests – and particularly Requests Nos. 8 and 9 seeking all documents concerning restricted and unrestricted funds – it is not clear what document would be exempt from production. As such, these requests are overly broad, unduly burdensome, beyond the scope of Rule 2004 and improper. *See In re SunEdison*, 2017 WL

---

[10] Moreover, the large majority of the requests seek information primarily concerning the Debtor's restricted and unrestricted funds or the Debtor's fundraising activity and not to any potential claims against current management. *See, e.g.*, Motion, Ex. A, Requests Nos. 1-4, 7-14, 17-19; *id.* Ex. B, Deposition Topic Nos. 1-4, 6, 8). While HMS also argues it needs discovery to investigate potential preference or insider payments, as reflected on the Debtor's SOFA, there are no such payments. *See* Dkt. No. 13, Question 30, at 13.

187558, at *7 (denying Rule 2004 discovery motion seeking "all documents" because, among other things, the requests "could conceivably cover every document and communication that exists").

24. With respect to depositions, the Motion seeks authority to conduct unlimited examinations of anyone "identified" in the document production – a universe of potentially tens of thousands of people, including major and minor donors and impact lenders. Moreover, the proposed deposition topics are drafted so broadly as to be virtually meaningless. *See, e.g.*, Motion, Ex. B, Deposition Topic No. 1 (information concerning "Debtor's assets including its Restricted Funds and unrestricted funds . . . ."). Allowing HMS to take unlimited depositions of anyone on virtually any topic would clearly violate Rule 2004's spirit of proportionality and would be particularly unwarranted here where HMS has evidenced a personal animus against WonderWork and a desire to force WonderWork into liquidation.

25. Accordingly, the Debtor respectfully requests that, if this Court finds that "good cause" exists, prior to granting leave to HMS to serve any discovery, the parties should be required to negotiate in good faith to substantially tailor the document requests and deposition topics, and substantially limit the number of potential depositions.

7913630.5

Dated: February 9, 2017
      New York, New York

                        CARTER LEDYARD & MILBURN LLP

                        */s/ Aaron R. Cahn*
                        Aaron R. Cahn
                        Leonardo Trivigno
                        2 Wall Street
                        New York, New York 10005
                        Telephone:   (212) 732-3200
                        Facsimile:    (212) 732-3232
                        Email:         cahn@clm.com
                                              trivigno@clm.com

                        *Proposed Counsel to the Debtor*
                        *and Debtor in Possession*

7913630.5