**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WONDERWORK, INC.,<br><br>            Debtor. | Chapter 11<br><br>Case No. 16-13607 (MKV) |

**HELP ME SEE, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF
ITS MOTION FOR THE ENTRY OF AN ORDER
<u>DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     Debtor Is Collaterally Estopped From Relitigating The Award's Findings ........... 2

    II.    The Arbitrator's Findings in the Award Reflect Mullaney's Inappropriate,
            Dishonest, and Fraudulent Conduct Rendering Him Unfit to Operate
            Debtor ............................................................................................................................... 6

    III.   Smile Train Was Directly At Issue In The Arbitration .......................................... 9

    IV.   Even if Collateral Estoppel Did Not Apply, Debtor Fails to Present Any
            Admissible Evidence In Support of its Allegations ............................................... 11

    V.    The Appointment of a Chapter 11 Trustee is Required Under Both Section
            1104(a)(1) and Section 1104(a)(2) ............................................................................ 12

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Aerofoil Techs. AG v. Mission Point Capital*,
   140 A.D.3d 663 (N.Y. App. Div. 2016) ...................................................................................3

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
   117 F.3d 674 (2d Cir. 1997) .....................................................................................................5

*BDO Seidman LLP v. Strategic Res. Corp.*,
   70 A.D.3d 556 (N.Y. App. Div. 2010) ..............................................................................2, 3, 5

*Bernard v. Proskauer Rose, LLP*,
   87 A.D.3d 412 (N.Y. App. Div. 2011) ..................................................................................2, 3

*Casey v. Country-Wide Ins. Co.*,
   240 A.D.2d 232, 233 (N.Y. App. Div. 1997) ...........................................................................2

*DiSorbo v. Hoy*,
   343 F.3d 172 (2d Cir. 2003) .....................................................................................................2

*Hudson v. Merrill Lynch & Co., Inc.*,
   138 A.D.3d 511 (N.Y. App. Div. 2016) ...................................................................................3

*In re Ancona*,
   No. 14-10532, 2016 WL 7868696 (Bankr. S.D.N.Y. Nov. 30, 2016) ....................................13

*In re Ashley River Consulting, LLC*,
   No. 14-13406/07, 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) .........................12, 13

*In re Ridgemour Meyer Props., LLC*,
   413 B.R. 101 (SMB) (Bankr. S.D.N.Y. 2008) .................................................................12, 13

*In re Shiver*,
   396 B.R. 110 (Bankr. S.D.N.Y. 2008) .....................................................................................2

*In re Soundview Elite Ltd.*,
   543 B.R. 78 (Bankr. S.D.N.Y. 2016) .....................................................................................11

*Malloy v. Trombley*,
   50 N.Y.2d 46 (1980) .................................................................................................................4

*One Beacon Ins. Co. v. Elite Ins. Agency*,
   No. 06 Civ. 4150, 2007 WL 541967 (S.D.N.Y. Feb. 16, 2007) ...............................................4

*Postlewaite v. McGraw Hill, Inc.*,
    333 F.3d 42 (2d Cir. 2003)...................................................................................4, 5

*Waverly Mews Corp. v. Waverly Stores Assocs.*,
    294 A.D.2d 130 (N.Y. App. Div. 2002) .................................................................5

**Statutes**

11 U.S.C. § 1104(a)(1).....................................................................................................12

11 U.S.C. § 1104(a)(2).....................................................................................................13

**Rules**

AAA Rule 58 .....................................................................................................................8

Fed. R. Civ. Proc. 56(c)(4) ..............................................................................................12

**Other Authorities**

Charity Watch (Feb. 2, 2017),
    https://www.charitywatch.org/charitywatch-hot-topic/donor-alert-16-million-
    award-against-wonderwork-may-force-it-to-cease-operations/71..........................14

7 Collier on Bankruptcy § 1104.02 (16th ed. 2016)................................................13

Help Me See, Inc. ("HelpMeSee"), by and through its undersigned attorneys, submits this reply brief in further support of its motion for entry of an order directing the appointment of a Chapter 11 trustee in the above-captioned Chapter 11 case in accordance with sections 105(a) and 1104(a) of title 11 of the United States Code and Rule 2007.1 of the Federal Rules of Bankruptcy Procedure (the "Motion").

**PRELIMINARY STATEMENT**

1.   Despite the inflated rhetoric and unfounded accusations contained in the opposition of WonderWork, Inc. ("WonderWork" or "Debtor") (the "Opposition") [Dkt. No. 62], the fact remains that Debtor commenced arbitration against HelpMeSee and lost before an independent, neutral fact finder on a fully developed record. Neither the instant motion nor the arbitration was commenced because of any personal "vendetta" on the part of HelpMeSee. Rather, after HelpMeSee terminated a fundraising agreement (the "Agreement") for cause, WonderWork insisted on dragging HelpMeSee into arbitration seeking over $1 million in damages and, after unnecessarily prolonging the arbitration by refusing to cooperate with discovery, found itself liable for $16 million in breach of contract and fiduciary duty damages, attorneys' fees and costs.

2.   Relying exclusively on inadmissible hearsay, WonderWork now asks this Court to relitigate the entire 49-day arbitration (as well as several other matters) to see if this Court will reach alternate findings. Not only is WonderWork's proposed rehashing of a 3-year arbitration process improper and a gross waste of estate assets, but it is wholly unnecessary to decide the sole issue before this Court: whether a Chapter 11 trustee should be appointed after an independent, neutral fact finder on a fully developed factual record issued a final and binding 60-

1

16-13607-mkv    Doc 70    Filed 03/03/17    Entered 03/03/17 16:06:55    Main Document
Pg 6 of 19

page award (the "<u>Award</u>")[1] finding that WonderWork and its CEO, Brian Mullaney, had repeatedly engaged in inappropriate, fraudulent, and dishonest conduct, which the arbitrator described as "reprehensible." Principles of collateral estoppel make clear that the answer to that question is yes. Furthermore, to the extent the Court determines that collateral estoppel does not apply, HelpMeSee is prepared to provide sufficient evidence in support of its Motion.

## ARGUMENT

**I.   DEBTOR IS COLLATERALLY ESTOPPED FROM RELITIGATING THE AWARD'S FINDINGS**

3.   Debtor acknowledges that prior arbitration awards are given preclusive effect in subsequent judicial actions under New York law.[2] *Bernard v. Proskauer Rose, LLP*, 87 A.D.3d 412, 415 (N.Y. App. Div. 2011). Under the doctrine of collateral estoppel or issue preclusion, a party is precluded "from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . ." *BDO Seidman LLP v. Strategic Res. Corp.*, 70 A.D.3d 556, 560 (N.Y. App. Div. 2010) (citing *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984)). The issues entitled to preclusive effect are those that are "material" to

---

[1]   The Award refers to both the "Partial Final Award" dated October 13, 2016 and the "Final Award" dated December 21, 2016 (which is attached to the Declaration of Benjamin Mintz In Support of Help Me See, Inc.'s Motion For the Entry of an Order Directing the Appointment of a Chapter 11 Trustee [Dkt. No. 17] as Exhibit A). The Partial and the Final Awards are identical, except that in the Final Award the arbitrator set forth the monetary value of the fees and costs that HelpMeSee would recover. HelpMeSee confirmed the Partial Award before Justice Ostrager in New York Supreme Court on November 29, 2016, but has not yet moved to confirm the Final Award due to the automatic stay. Arbitration awards are final and binding even if not confirmed. *Casey v. Country-Wide Ins. Co.*, 240 A.D.2d 232, 233 (N.Y. App. Div. 1997).

[2]   The collateral estoppel law of the state where the judgment was entered applies in a subsequent proceeding. *In re Shiver*, 396 B.R. 110, 117-19 (Bankr. S.D.N.Y. 2008). Furthermore, the fact that WonderWork is appealing the Award is irrelevant to the analysis. "Under New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'" *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (interpreting New York law) (internal citations omitted). Moreover, Debtor's primary argument on appeal is that the Award must be reversed as a matter of New York public policy regarding donor funds and does not address the findings and issues raised in this Motion.

2

the prior proceeding and "essential to the decision rendered therein." *See id.* at 560 (citing *Ryan*, 62 N.Y.2d at 500).

4.     This collateral estoppel effect applies to strictly factual questions in addition to ultimate conclusions. *See Hudson v. Merrill Lynch & Co., Inc.*, 138 A.D.3d 511, 515 (N.Y. App. Div. 2016); *Bernard*, 87 A.D.3d at 415-16 (affirming lower court's reliance on underlying factual findings in support of arbitrator's findings that plaintiff's "dilatory conduct," "self-dealing," and "misappropriation of [employer's] financial information constituted breaches of his fiduciary and contractual duties"); *see also Advanced Aerofoil Techs. AG v. Mission Point Capital*, 140 A.D.3d 663, 664 (N.Y. App. Div. 2016) (affirming lower court decision determining "that the doctrine of collateral estopped bars plaintiff from litigating two factual issues that were determined in a prior arbitration proceeding commenced by plaintiff, namely, whether any of plaintiff's confidential information was misappropriated and whether [a nonparty] was its direct competitor").[3] It is irrelevant for collateral estoppel purposes whether the arbitrator's prior findings were erroneous. *See BDO Seidman*, 70 A.D.3d at 560 (citing *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978) ("The policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided.")). Debtor therefore is precluded from relitigating in this Court any issues clearly raised in the arbitration and decided against it, without regard to whether or not those findings were erroneous (and, as HelpMeSee can prove again, they are not).

---

[3] Debtor attempts to sidestep this well-settled law by claiming that the only "essential" finding in the entire 60-page Award was half a sentence at the end of paragraph 123 of the Award. Debtor Opp. at 6-7. Debtor cites neither facts nor law supporting its absurdly narrow reading of collateral estoppel—nor could it.

3

5.  Debtor argues however that, if the decision is comprised of multiple "alternate holdings," that there can be no issue preclusion. That is not the law. Alternate holdings or findings are given preclusive effect provided that the underlying decision provides evidence of "thorough and careful deliberation" and it is clear that the prior decision-maker fully considered the issue. *One Beacon Ins. Co. v. Elite Ins. Agency*, No. 06 Civ. 4150, 2007 WL 541967, at *4-5 (S.D.N.Y. Feb. 16, 2007) (applying New York law) (collateral estoppel applied to all three of the judge's alternate grounds for decision when judge gave thorough and careful deliberation to plaintiff's aggressively pursued argument in prior bench trial where he questioned plaintiff's underwriter, concluded his testimony was not credible, and supported his decision with two cases); *see also Malloy v. Trombley*, 50 N.Y.2d 46, 52 (1980) (holding collateral estoppel effect of alternate grounds where the decision provided "significant internal evidence of the thorough and careful deliberation by that court, both in its consideration of the proof introduced and of the applicable law, and the determination made"). Consequently, even if there are alternate grounds set forth in the Award, all of the issues "material" to the prior proceeding and "essential to the decision rendered therein" have collateral estoppel effect provided that the Award provides evidence of thorough and careful deliberation and it is clear that the arbitrator fully considered each of the issues.

6.  Debtor's two cases are off-point. Both cases deal with awards in which the arbitrator's conclusory statement of decision made it impossible to ascertain whether the arbitrator reached a decision on the merits as opposed to on account of an affirmative defense or some other ground, such that the party seeking to invoke preclusion had no way of showing with clarity or certainty what issue was determined by the prior judgement. *See Postlewaite v. McGraw Hill, Inc.*, 333 F.3d 42, 49 (2d Cir. 2003) (when the award could have been rendered on

4

the merits or in response to a waiver defense, the award "did not state the ground of the arbitrators' decision," and collateral estoppel held not to apply); *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 678 (2d Cir. 1997) (when the arbitrator's one-sentence denial of the claim gave no reason for his decision and it was unclear whether defendant prevailed on the merits or on account of an affirmative defense or some other reason, defendants were required to submit the entire arbitration record to the court on remand to permit the court to ascertain whether the entire record "demonstrates that the only conclusion a fair-minded jury could reach is that the arbitrator denied [plaintiff's] claim on the merits"). There can be no dispute that here, in his detailed 60-page opinion, the arbitrator set forth his thorough and careful deliberation on each issue raised below effecting both the findings of fact and legal analysis and conclusions, in marked contrast to the rulings in *Postlewaite* and *BBS Norwalk*, which did not include any factual findings or legal analysis in support of the underlying decisions whatsoever. Debtor therefore is collaterally estopped from relitigating those issues again before this Court as a matter of law.[4]

---

[4] Moreover, Debtor unquestionably had a full and fair opportunity to litigate issues discussed in in the arbitration. Debtor and HelpMeSee agreed to be bound by arbitration; Debtor presented hundreds of exhibits and eight witnesses, and vigorously contested HelpMeSee's claims in written and oral oppositions to discovery motions and a 143-page post-hearing brief and 71-page reply; and, with HelpMeSee, Debtor requested that the arbitrator issue a reasoned award, which the arbitrator did, stating that the Award was made "in full settlement of all claims and counterclaims submitted in this arbitration." Award ¶ 137.E; *BDO Seidman*, 70 A.D.3d at 561 (finding party unquestionably had full and fair opportunity to litigate matter in arbitration where it requested with opposing party "that the arbitrators issue a reasoned award . . . [and it] had every opportunity to present evidence and arguments"); *Waverly Mews Corp. v. Waverly Stores Assocs.*, 294 A.D.2d 130, 131-32 (N.Y. App. Div. 2002) (finding arbitrator's decision had collateral estoppel effect when the parties agreed to be bound by the arbitrator's decision on the litigated issues and the award was made in full settlement of all claims submitted by the parties).

5

16-13607-mkv    Doc 70    Filed 03/03/17    Entered 03/03/17 16:06:55    Main Document
                                    Pg 10 of 19

II.  **THE ARBITRATOR'S FINDINGS IN THE AWARD REFLECT MULLANEY'S INAPPROPRIATE, DISHONEST, AND FRAUDULENT CONDUCT RENDERING HIM UNFIT TO OPERATE DEBTOR**

7.  As laid out in the Award in detail, the arbitrator found Mullaney to have repeatedly engaged in dishonest, fraudulent, and reprehensible behavior towards HelpMeSee, found Debtor liable for breach of contract and breach of fiduciary duty, and awarded HelpMeSee attorneys' fees and costs as a discovery sanction for Mullaney's bad faith conduct during discovery in the arbitration.[5] The arbitrator specifically evaluated and decided each of the issues and underlying facts that HelpMeSee relies on in support of its Motion in the course of his 60-page Award, and delineated a host of wrongful, deceitful and fraudulent conduct by Mullaney, which plainly mandates the appointment of a trustee. Debtor tries to ignore these damning findings by failing to acknowledge HelpMeSee's breach of fiduciary duty claim and limiting HelpMeSee's breach of contract claim to a convoluted argument that the arbitrator somehow erroneously determined issues of donor intent in connection with the compensatory damage award. The Award cannot be circumscribed in this manner.

8.  The arbitrator based his ruling that Debtor breached the Agreement, among other factors, on his finding that, while Debtor contractually promised to "use its best efforts to solicit Smile Train donors for HelpMeSee," Mullaney instead utilized its "access to HelpMeSee to convince donors, including Smile Train's major donors, to contribute to [Debtor]." Award ¶ 92. Thus, while Mullaney misled HelpMeSee into believing that he was talking to his contacts to solicit funds for HelpMeSee, Mullaney instead was telling the donors about Debtor's purported

---

[5]  While the Award is unambiguous as to what the arbitrator decided, HelpMeSee is happy to submit the entire arbitration record (testimony, exhibits, and oral and written submission of counsel) should the Court request it. *See* Debtor Opp. at 5. Debtor's claims that the arbitrator disregarded certain evidence (*see, e.g.*, Debtor Opp. at 14, 20) are belied by the extensive record.

6

blindness work; or "simply stated, therefore, Mullaney was acting though [Debtor] to take HelpMeSee's money, while exploiting HelpMeSee to raise money to pursue his own personal interests" in violation of the Agreement's "clear and unambiguous" provisions. Award ¶¶ 92-93. In addition, through Mullaney's fraudulent actions, Debtor breached almost every other material provision of the Agreement, including sections 3.3, 5.3(a), 2.7, 7.2. *See* Award ¶¶ 101-109.[6] These findings clearly evidence dishonest and fraudulent conduct.

9. The arbitrator also found that, as a result of Mullaney's months-long sell, in which he "regaled HelpMeSee . . . of his unique expertise in charitable fundraising," HelpMeSee "placed a heightened degree of faith and trust in [Debtor] and, in particular, Mullaney, whom it believed to be a fundraising superstar and genius." Award ¶ 98. Mullaney represented "time and again to HelpMeSee that [Mullaney] was fundraising [major donors] on HelpMeSee's behalf when, in fact, he was fundraising" on Debtor's behalf; "took credit" for HelpMeSee's blindness work in the course of that fundraising; and provided HelpMeSee's donors with Debtor's business plan and encouraged them to donate to Debtor instead, which they did. Award ¶ 99. As a result, the arbitrator found [Debtor] to be "in clear breach of a fiduciary duty to HelpMeSee." Award ¶ 100. These findings directly reflect Mullaney's duplicity both with respect to HelpMeSee and his donors, and support a finding that Mullaney was fraudulent and dishonest.

---

[6] The arbitrator's finding that Debtor violated sections 3.3 and 7.2 of the Agreement when Mullaney refused to accede to HelpMeSee's audit demand after being caught red-handed misappropriating the intellectual property of HelpMeSee partner, Mercy Ships, included factual findings regarding Mullaney's actions vis-a-vis Mercy Ships which further evidence his unfitness to run a public charity. *See* Award ¶¶ 81-88; 101-103. These findings included that, when first confronted with his clear misappropriation of Mercy Ships photos, Mullaney tried to "avoid the issue by claiming that he 'just checked' and 'we didn't use any [Mercy Ships] photos in any of our WonderWork brochures," later acknowledged that he used the photos, and then "falsely" claimed that WonderWork had not raised any money with the photos, when in fact it had. Award ¶¶ 86-87. Mullaney then promised to cease using the photos, but continued to use them on "multiple occasions." Award ¶ 88.

7

10. The arbitrator also held that HelpMeSee was entitled to compensatory damages because "throughout the term of the Agreement, [Debtor] secretly competed against HelpMeSee and used HelpMeSee's work and accomplishments to convince Mullaney's contacts (most of whom he knew from Smile Train) to write large checks to [Debtor]" (Award ¶ 123), in violation of Debtor's contractual and fiduciary duties. The damages include all of the amounts that WonderWork raised during the Agreement term from Mullaney's contacts using HelpMeSee's work, business plan, or concepts, or $8,128,348.00, and was amply supported by the evidentiary record in the arbitration, including letters that Debtor produced that showed that Mullaney repeatedly told all of its major donors about Debtor's purported "blindness" work when the only actual work that Debtor was doing for blindness was collecting $166,666 per month to fundraise for the blindness charity HelpMeSee. Award ¶¶ 93; 99. The arbitrator further found that, "Mullaney also covertly courted HelpMeSee's few major donors in an effort to convince them to give to [Debtor] instead of HelpMeSee. As a result, rather than donating to the organization that actually provided charitable services, donors were misled into giving it to [Debtor]," once again evidencing conduct warranting the appointment of a trustee. Award ¶ 123.

11. The arbitrator also awarded HelpMeSee its reasonable fees and costs in connection with the arbitration, both because the parties requested fees and costs and as a discovery sanction under AAA Rule 58, which provides that the arbitrator "may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator." Award ¶131.[7] While WonderWork contends that the

---

[7] After dragging HelpMeSee into arbitration and then refusing to produce documents thereby drawing out the proceeding, WonderWork trumpets the size of HelpMeSee's legal fees as if they somehow undermine the credibility of the Award. However, in awarding those fees, the arbitrator found that HelpMeSee's legal fees were reasonable in light of the protracted nature of the case, which was due to WonderWork's actions. Yet again, WonderWork is collaterally estopped from contesting that finding.

8

arbitrator's "assessment that Mr. Mullaney was not 'credible' is not an essential element of any finding," that is specifically belied by the Award, which provides that HelpMeSee is entitled to attorneys' fees and costs based expressly on four enumerated factual findings. As the arbitrator explained, his order to pay costs and fees "results from the following findings:

1. HelpMeSee is clearly the prevailing party in this arbitration.

2. As described above, [Debtor] declined to comply with discovery orders from the beginning to the end of this arbitration, with the result that the conduct of the arbitration was decidedly less efficient and cost-effective than would otherwise have been the case.

3. Mullaney was not a credible witness.

4. While punitive damages are not being awarded here, the conduct of [Debtor] and Mullaney was nonetheless reprehensible."

Award ¶ 132. These findings of credibility and reprehensible conduct were indisputably essential to the Award and the Court must give collateral estoppel effect to these findings, which alone mandates the appointment of a trustee.[8]

### III. SMILE TRAIN WAS DIRECTLY AT ISSUE IN THE ARBITRATION

12. In an attempt to deflect attention away from Mullaney's shocking conduct, Debtor argues that evidence relating to Mullaney's malfeasance at Smile Train was an "unnecessary discussion" in the Award, but issues relating to Smile Train were central to HelpMeSee's claims for two reasons. First, the Agreement itself had multiple provisions related to Smile Train,

---

[8] WonderWork incorrectly claims that its discovery "issues" arose due to HelpMeSee seeking discovery on Smile Train and that "there was no finding in the Award that any critical, identifiable documents relating were wrongfully concealed." Debtor Opp. at 26. That is simply false. The discovery disputes arose because WonderWork refused to produce information relating to donations it received during the Agreement term, including its communications with donors that showed that it was using HelpMeSee's work and mission to fundraise for itself in violation of the Agreement. In other words, having brought the arbitration under false pretenses of a without-cause breach, WonderWork resisted producing the very documents that evidenced its malfeasance towards HelpMeSee. There can be no dispute that these documents were directly relevant to the claims at issue.

9

including Section 5.3,[9] which placed an affirmative disclosure requirement upon Debtor regarding Smile Train's activities. Second, HelpMeSee's counterclaims also included a fraudulent inducement claim that Mullaney lied to HelpMeSee about the circumstances regarding his termination from Smile Train and the various legal disputes he was embroiled in as a result of his actions at Smile Train and that, had HelpMeSee been told the truth about Mullaney's history, it would not have been induced to enter into the Agreement.[10] Thus, despite Debtor's protestations to the contrary, there was nothing improper about the arbitrator's receipt of evidence relating to Mullaney's history at Smile Train because these facts were directly relevant to HelpMeSee's claims in the arbitration.

13.  In addition, the facts that form the predicate basis of the arbitrator's finding that Debtor violated Section 5.3 of the Agreement constitute additional bad acts that warrant the appointment of a trustee. Award ¶ 106. Thus, in ruling that Debtor breached Section 5.3, the arbitrator specifically found that Mullaney's engaged in "unauthorized use of Smile Train's proprietary donor information to fundraise for [Debtor] as well as to denigrate Smile Train to its donors," which is clearly unconscionable conduct. *Id.* In addition, the Arbitrator found that Mullaney provided "undercover, extensive support to the opposition to the Smile

---

[9] Section 5.3(a)(ii) of the Agreement provides that: "At the Option of the Company, and its sole discretion, and at any time during the Term, this Agreement shall terminate upon thirty (30) days' written notice of termination from the Board to the Manager, without prejudice to any other rights or remedies which may be available to the Parties, if . . . any fact, circumstance or event arises that is related to or involves Mr. Charles Wang, Smile Train and/or his or their Representatives that impairs or that, in the Company's good faith discretion, could impair the ability of the Manager (or any of the Manager Personnel) from devoting its (or their) full time, attention and/or abilities to the performance of its (or their) obligations under this Agreement (including, publication of potentially adverse publicity involving the Manager and/or any Manager Personnel or the commencement of any proceeding or action)." Section 5.3(b) provides: "If any of the events specified in Sections 5.3(a)(ii) or 5.3(a)(iii) shall occur, the Manager shall give prompt written notice thereof to the Board."

[10] The arbitrator declined to rule on the fraudulent inducement claim given his election to award damages on HelpMeSee's breach of contract and breach of fiduciary duty claims. Award ¶¶ 114-116.

10

Train/Operation Smile merger," which included leaking confidential Smile Train documents to the New York Times. Award ¶¶ 36-41; 106. Yet again, these findings, which are preclusive on Debtor, provide additional support for the appointment of a trustee because they evidence fraud and dishonesty. In addition, upon reading the entire Award, one can reach no conclusion other than that Mullaney has engaged in a decades-long pattern of abusing the various charities he has purported to serve, and has repeatedly engaged in fraudulent and dishonest conduct, again highlighting the need to appoint an independent fiduciary.

### IV. EVEN IF COLLATERAL ESTOPPEL DID NOT APPLY, DEBTOR FAILS TO PRESENT ANY ADMISSIBLE EVIDENCE IN SUPPORT OF ITS ALLEGATIONS

14. Mullaney is unfit to run a public charity due to his prior history of fundamentally fraudulent and dishonest conduct with respect to HelpMeSee and Smile Train as established by the Award, which Debtor is precluded from relitigating as set forth above.[11] However, even if Debtor were permitted to introduce evidence to rebut these findings, Debtor has as yet failed to provide any admissible evidence with respect to its allegations, instead relying on declarations and online articles that are all inadmissible hearsay. *See, e.g., In re Soundview Elite Ltd.*, 543 B.R. 78, 104-05 (Bankr. S.D.N.Y. 2016) (affidavit from accounting expert obtained by debtor when it was debtor-in-possession was not admissible under any exception to hearsay rule); *see also* FED. R. CIV. PROC. 56(c)(4)) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). While

---

[11] While the complete history of Mullaney's malfeasance at Smile Train was not raised as part of HelpMeSee's initial Motion, Debtor concedes that it is directly relevant by placing affidavits relating to conduct that far exceeds the scope of acts raised in the Motion. HelpMeSee feels that there is sufficient evidence in the Award to warrant the appointment of a trustee without an evidentiary hearing into these issues, but is willing to put on evidence of additional acts of fraud, dishonesty, incompetence, or gross mismanagement if the Court believes that would be helpful in determining this Motion.

11

WonderWork claims that it cannot produce any direct evidence because of the confidentiality order entered in the arbitration, this argument is a red herring. Any alleged documents that would absolve WonderWork are documents in WonderWork's files, not HelpMeSee's, and therefore are not subject to the confidentiality order and, in addition HelpMeSee has no objection to their disclosure if an evidentiary hearing is necessary.

15. Moreover, much of the inadmissible evidence that Debtor puts forth in these hearsay affidavits contains false statements or was received from declarants who were previously discredited. For example, during the arbitration, Mark Atkinson admitted that his witness statement submitted to the UK court in the Smile Train UK litigation contained false statements, and that it was drafted by Mullaney. The witness statement Atkinson submitted in the UK proceeding concerns the same topics as Atkinson's Declaration in support of Debtor's Opposition. Similarly, the Tiwary Statement (attached to Cahn Decl. as Ex. M [Dkt. No. 61-13]), which the arbitrator admitted over HelpMeSee's objection, is classic hearsay that was shown during the arbitration to be, at a minimum, unreliable and possibly fabricated.

V. **THE APPOINTMENT OF A CHAPTER 11 TRUSTEE IS REQUIRED UNDER BOTH SECTION 1104(A)(1) AND SECTION 1104(A)(2)**

16. As set forth above, HelpMeSee has put forth more than sufficient evidence of Debtor's management's, and specifically Mullaney's, fraud, dishonesty, incompetence and gross mismanagement and therefore the appointment of a Chapter 11 trustee for cause is mandated pursuant to Section 1104(a)(1) and consistent with prior decisions of this Court. *See In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 110-12 (SMB) (Bankr. S.D.N.Y. 2008) (mandating appointment of trustee under §1104(a)(1) where debtor's principal secretly executed deeds without authority and then hid that fact from movant thereby violating his fiduciary duties to movant by secretly transferring the assets); *In re Ashley River Consulting, LLC*, No. 14-

12

13406/07, 2015 WL 1540941, at *9-11 (Bankr. S.D.N.Y. Mar. 31, 2015) (granting motion for trustee where debtor's current management was found guilty of fraud, gross, wanton, and willful misconduct, and diverting and commingling funds, such that arbitrator awarded over $2 million in punitive damages).[12]

17. In addition, there is substantial evidence to support the appointment of a trustee under Section 1104(a)(2). Where, as here, the principal of the debtor is not trustworthy and cannot be expected to investigate debtor's transactions, and if appropriate, sue for recovery, an independent trustee better serves the interests of the creditors. *In re Ridgemour Meyer*, 413 B.R. at 113-14 (finding that debtor's principal was not a trustworthy fiduciary and court could not expect him to investigate and possible sue to recover transfers); *see also In re Ashley River*, 2015 WL 1540941, at *11-12 (appointment of trustee was in best interest of creditors because based on debtor's prior fraud and misconduct, debtor was not trustworthy and did not deserve the confidence of the creditors). While Debtor blithely dismisses the notion of Debtor having claims against management or the Board, the fact remains that as a result of Mullaney's actions and his and the Board's decisions, Debtor faces a $16 million judgment for breach of contract and breach of fiduciary duty. At a minimum this cries out for an investigation of potential claims of the

---

[12] Perhaps realizing that the Award alone sets forth clear and convincing evidence that a Chapter 11 trustee is appropriate, WonderWork attempts to argue that pre-petition conduct is not relevant to this determination. That argument is frivolous. The statute itself makes clear that the Court may consider both pre and post-petition conduct in determining whether to appoint a trustee. *See* 11 U.S.C. § 1104(a) ("At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee — (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, **either before or after the commencement of the case** . . . )) (emphasis added); *see also In re Ancona*, No. 14-10532, 2016 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016) ("A court may consider both pre-and post-petition misconduct of the current management when making a determination of whether 'cause' exists under section 1104(a)."); 7 COLLIER ON BANKRUPTCY § 1104.02, n.31 (16th ed. 2016) ("[C]ourts are not limited to reviewing management's post-bankruptcy conduct and may consider prepetition activity.").

13

estate particularly against Mullaney. The Debtor's dismissiveness highlights the need for a trustee.

18.     Indeed, Debtor's Opposition is further evidence that an independent trustee is necessary. Debtor's vitriolic (albeit inaccurate) rendition of the arbitration evidences the bad blood between the parties as a result of a half-decade long dispute, and Debtor's markedly conflicting version of events as compared to those found in the Award, at a minimum, raises significant questions regarding Debtor's management's trustworthiness. Moreover, while Debtor appears to conflate its corporate identity with that of its CEO, and claims that Mullaney's continued stewardship is necessary to permit Debtor to continue its alleged charitable works, Debtor misleads the Court with respect to Debtor's record under Mullaney's management. Debtor is no model charity. Rather, Debtor's primary business is sending direct market mail (75 million pieces to date according to Mullaney) and raising funds to continue that enterprise, while historically spending very little on programs, which has resulted in it receiving an **"F" grade** from Charity Watch since 2013.[13] Debtor, its estate, its creditors, and the desperately poor and disabled people that it purports to serve will all be better served if Debtor's affairs are placed in the hands of independent, honest, and competent management, who has the expertise to carry out Debtor's charitable mission.

---

[13] *See Donor Alert: $16 Million Award Against WonderWork May Force It to Cease Operations*, CHARITY WATCH (Feb. 2, 2017), https://www.charitywatch.org/charitywatch-hot-topic/donor-alert-16-million-award-against-wonderwork-may-force-it-to-cease-operations/71.

## CONCLUSION

WHEREFORE, HelpMeSee requests that the Court enters an order: (i) directing the appointment of a Chapter 11 Trustee; and (ii) granting it such other and further legal and equitable relief to which it may be entitled.

Dated: March 3, 2017
      New York, New York

    Respectfully submitted,

    /s/ Benjamin Mintz
    Benjamin Mintz
    Vincent Sama
    Catherine Schumacher
    Peta Gordon

    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, New York 10019-9710
    Telephone: (212) 836-8000
    Fax: (212) 836-8689
    benjamin.mintz@apks.com
    vincent.sama@apks.com
    catherine.schumacher@apks.com
    peta.gordon@apks.com