DLA PIPER LLP (US)
Richard A. Chesley (*pro hac vice* admission pending)
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
richard.chesley@dlapiper.com
rachel.albanese@dlapiper.com

*Counsel to BDO USA, LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WONDERWORK, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 16-13607 (MKV) |

**STATEMENT OF BDO USA, LLP REGARDING DEBTOR'S RESPONSE**
**TO ORDER TO SHOW CAUSE DATED SEPTEMBER 25, 2017**

BDO USA, LLP ("BDO"), by and through its undersigned counsel, DLA Piper LLP (US), submits this *Statement of BDO USA, LLP* (the "Statement") *Regarding Debtor's Response to Order to Show Cause Dated September 25, 2017* (ECF No. 250, the "Response"). In support of the Statement, BDO respectfully represents as follows:

**PRELIMINARY STATEMENT**

In response to the Court's *Order to Show Cause* (ECF No. 249, the "Order"), WonderWork, Inc. (the "Debtor"), through its counsel, has taken the highly unorthodox step of laying blame for the audit delay solely at the feet of BDO, the auditor that it retained to replace its existing auditor and the auditor that it continues to engage today. And, while the Order was in

no way directed at BDO, because the Debtor littered its Response with half-truths and misstatements, BDO has no alternative but to file this Statement.

In order to directly address the Order, the issue that must be addressed is what is the cause of the delay in issuing its audit report (the "Audit Report") on the 2016 Financial Statements of the Debtor.[1] As the Court well knows, the issuance of an audit report requires BDO to conduct an audit in accordance with generally accepted auditing standards (typically referred to as "GAAS"). GAAS requires specific and detailed information (which the standards refer to as competent evidential matter), which is exactly what BDO has been seeking since it was retained.[2] While the Debtor's Response indicates that it may not appreciate the type of competent evidential matter and analysis required by BDO to complete the audit in accordance with professional standards, the Debtor's Audit Committee certainly does. Within the past ten days the Audit Committee has retained additional personnel to assist BDO in obtaining the information necessary to complete the audit, as evidenced by an email from the Audit Committee Chairman of the Debtor to the BDO Assurance Partner:

> "As discussed this morning, WonderWork has hired Tom Dufek and Steve O'Donnell, at the request of the Audit Committee, for temporary assistance in resolving the outstanding and unresolved matters as set forth in your letter of September 1, 2017. You are authorized to engage directly with them on all matters pertaining to the audit."[3]

---

[1] The "Financial Statements" are comprised of the Debtor's statement of financial position as of June 30, 2016, and the related statements of activities, functional expenses and cash flows for the year then ended, and related footnotes.

[2] Specifically, GAAS requires the auditor, in this case BDO, to obtain sufficient competent evidential matter to satisfy key assertions (existence, completeness, accuracy, valuation and financial statement disclosure) regarding, among other things, the Debtor's assets, liabilities, revenues and expenses reflected in the Financial Statements.

[3] *See Declaration of Ritesh Lall in Support of Statement of BDO USA, LLC Regarding Debtor's Response to Order to Show Cause Dated September 25, 2017* (the "Lall Declaration"), Ex. 1 (Email from John J. Coneys, WonderWork Audit Committee Chairman, to Ritesh Lall, BDO Assurance Partner and Audit Director, dated Sept. 29, 2017, 10:41 AM). The Lall Declaration is attached as Exhibit A hereto.

It is indeed unfortunate that the Debtor has chosen to use the Response as a tool to place all blame for the delay in the issuance of the Audit Report on BDO, while the facts suggest otherwise. Nonetheless, BDO stands ready and willing to complete the task for which it was retained, and finally, with the assistance of the Audit Committee and financial professionals that were recently hired, there now appears to be a path to have this accomplished.

## BACKGROUND

1. On December 29, 2016, the Debtor commenced the above-captioned chapter 11 case.

2. In February 2017, the Debtor was informed that its prior auditor KPMG would not be performing an audit of the Debtor's 2016 Financial Statements.[4] The Debtor ultimately selected BDO to conduct the fiscal year 2016 audit.

3. BDO began the engagement process on April 4, 2017, which included, among other things, engaging in client acceptance procedures to understand the Debtor and its business and determine the specific audit procedures to perform. On April 19, 2017, BDO commenced fieldwork at the Debtor's office in furtherance of those efforts.

4. On April 25, 2017, the Debtor filed an application to retain BDO as auditor and tax advisor, effective as of April 4, 2017 [ECF No. 112] (the "Application"). The Debtor retained BDO to audit the Debtor's Financial Statements and serve as tax advisor to the Debtor. The Court entered an order approving the Application on May 24, 2017 [ECF No. 151] (the "Retention Order").

---

[4] *See Declaration of Hana Fuchs in Support of Debtor's Response to Order to Show Cause Dated September 25, 2017* [ECF No. 252] (the "Fuchs Declaration") ¶ 4.

3

5. BDO continued to conduct the audit, which included numerous discussions and requests for information with the Debtor in May 2017. As a result of the ongoing audit procedures, BDO identified certain transactions that appeared to be inappropriately recorded under the principles that govern the Debtor's Financial Statements (typically referred to as generally accepted accounting principles, or "GAAP") or were unsupported by documentary evidence, and which illustrated "material weaknesses," and "significant deficiencies" in the Debtor's internal controls (the "<u>Transactions</u>"). As dictated by applicable professional standards, these findings required BDO to undertake significant out-of-scope work to obtain a more complete understanding of the Transactions, including performing related audit procedures for the existence, completeness, accuracy, valuation and proper financial disclosure of the account balances in connection with the Transactions. The numerous open issues related to the Transactions, which have a substantial impact on the audit, needed to be addressed by competent personnel in order for BDO to complete the audit as required by professional standards.

6. As described below, beginning in May 2017 and continuing through October 2017, the BDO team repeatedly communicated its concerns about the Transactions to the Debtors' Board of Directors, Audit Committee Chairman, Ms. Fuchs as CFO and the Debtor's bankruptcy counsel. BDO was specifically asked by the Audit Committee Chairman not to communicate its concerns formally in writing, but only through discussion, which would give the Debtor time to address these concerns.[5] In accordance with the Audit Committee Chairman's request, BDO continued to communicate with the Debtor by conversation and email and BDO continued to assess its concerns based upon the Debtor's responses to these communications.

---

[5] *See* Lall Decl. ¶ 11.

Ultimately, in conformance with professional standards, it became necessary for BDO to formally document the unresolved issues.

7. On September 1, 2017, BDO sent a detailed letter (the "September 1 Letter") to John J. Coneys, Audit Committee Chairman, Steve Rappaport, Board Chairman, and Brian Mullaney, Co-Founder and Chief Executive Officer of the Debtor, the purpose of which was to provide a comprehensive communication regarding the issues related to the Transactions that represented obstacles to BDO being able to complete the audit in compliance with applicable professional standards.[6]

8. In the September 1 Letter, BDO outlined the issues presented in the Transactions and their impact on the audit, explaining that it would be inappropriate to continue with the audit unless the Debtor's Audit Committee initiated a review of the Transactions and provided responses that addressed BDO's concerns.

9. Rather than receiving a response from the Audit Committee or any of the Debtor's financial personnel, on September 19, 2017, BDO received an inadequate and substantially unresponsive letter from counsel to the Debtor (the "WW Letter").[7]

10. On September 29, 2017, BDO indicated to the Audit Committee Chair during a telephone call that the WW Letter had not moved anything along with respect to the Transactions. BDO sent a formal response to the WW Letter on October 4, 2017.[8]

---

[6] The September 1 Letter is attached as Exhibit 33 to the Fuchs Declaration and, at BDO's request, was provided to the Court for *in camera* review.

[7] The WW Letter is attached as Exhibit 34 to the Fuchs Declaration and was provided to the Court for *in camera* review.

[8] On October 4, 2017, BDO formally advised Mr. Coneys, Mr. Rappaport and Mr. Mullaney that the WW Letter from the Debtor's counsel ostensibly in response to the issues communicated in the September 1 Letter was substantially unresponsive and the open issues remained substantially unresolved (the "October 4 Letter"). BDO explained in the October 4 Letter that, without additional competent evidential material and analysis from the Debtor that fully and appropriately addresses and resolves the issues stated in the Letter, BDO would be unable to complete

5

11. On September 25, 2017, the Court entered the Order, scheduling a hearing on the Order to Show Cause for October 12, 2017. While the Debtor and its counsel focused on crafting the story that would become its Response, BDO and the Debtor's Audit Committee continued to work on a process to allow for the completion of the audit.

12. In this spirit, on September 29, 2017, Mr. Coneys, the Audit Committee Chairman, emailed Mr. Lall, the BDO Assurance Partner:

> "As discussed this morning, WonderWork has hired Tom Dufek and Steve O'Donnell, at the request of the Audit Committee, for temporary assistance in resolving the outstanding and unresolved matters as set forth in your letter of September 1, 2017. You are authorized to engage directly with them on all matters pertaining to the audit."[9]

13. On the same day, BDO had a conference call with Mr. Coneys and Mr. Dufek, and Mr. Dufek contacted BDO to schedule a meeting for the following week.[10]

14. On October 5, 2017, BDO met with Mr. Dufek and Mr. O'Donnell to discuss responses to the issues identified in the September 1 Letter.[11] BDO informed Mr. Dufek and Mr. O'Donnell that the timing and content of any report issued by BDO would depend on BDO's assessment of the audit in totality and not on the resolution of any one specific item in the September 1 Letter.[12] Mr. Dufek and Mr. O'Donnell agreed to speak with the Debtor to try to provide BDO with the additional information it needs.[13]

---

the audit in accordance with professional standards and issue an unqualified Audit Report on the related Financial Statements of the Debtor. The October 4 Letter is attached as part of Exhibit 13 to the *Declaration of Pamela A. Mann in Support of Debtor's Response to Order to Show Cause Dated September 25, 2017* [ECF No. 251] (the "Mann Declaration") and, at BDO's request, was provided to the Court for *in camera* review.

[9] *See* Lall Decl., Ex. 1.

[10] *See* Lall Decl. ¶ 16.

[11] *Id.* ¶ 19.

[12] *Id.*

[13] *Id.*

15. As BDO has reiterated to the Debtor and its counsel numerous times, as evidenced by the facts set forth above, BDO has been, and continues to be, ready, willing, able and focused on working with the Debtor to complete the audit.

**STATEMENT**

16. As stated, the purpose of this Statement is to clarify for the Court certain key facts that the Debtor misstated and/or mischaracterized in its Response.

- **The Debtor, while cooperative, did not provide BDO with all of the competent evidential matter that it needs to complete the audit.**

17. As an initial matter, much of the information provided to BDO was through the Debtor's lawyers, which is highly unusual for an audit situation. Generally, lawyers are not accountants and are not able to provide the sufficient competent evidential matter required by BDO to satisfy to its professional requirements for issuing the Audit Report. Yet, BDO was directed to work through the Debtor's lawyers, which created inefficiencies and information gaps that ultimately could not be resolved and resulted in the September 1 Letter.[14] Apparently recognizing this, on September 29, 2017, the Debtor's Audit Committee Chairman hired Mr. Dufek and Mr. O'Donnell to provide the type of information that BDO needs to complete its work and issue the audit.[15]

18. It cannot be overlooked that BDO is not the only professional lacking competent information from the Debtor. Letters filed on the docket by the court-appointed examiner state that he too has been unable to obtain sufficient information in response to his requests.[16]

---

[14] *See* Lall Decl. ¶¶ 6, 11 & 12.

[15] *See* Lall Decl., Ex. 1.

[16] *See* Letter to Hon. Mary Kay Vyskocil Regarding Request for Extension of Time to File Examiner's Final Report, dated July 27, 2017 [ECF No. 211]; Letter to Hon. Mary Kay Vyskocil Regarding Request for Extension of Time to File Examiner's Final Report, dated Sept. 20, 2017 [ECF No. 246].

- **BDO is not able to commit to a completion date for the audit due to the Debtor's inability to resolve the open items to BDO's satisfaction.**

19. In the Response, the Debtor complains that BDO would not commit to a precise date for completion of the audit. As described in detail in this Statement, it simply is not possible for BDO to propose a completion timeline until the Debtor provides sufficient competent evidential matter that appropriately and fully addresses and resolves those issues described in the September 1 Letter in accordance with applicable professional standards.

20. Moreover, for certain financial statement entries, the Debtor's current position is not compliant with GAAP.[17] Unless and until the Debtor agrees to account for those items in accordance with GAAP, applicable professional standards will not allow an auditor to issue an opinion.[18]

- **BDO appropriately decreased its work given the lack of useful information provided by the Debtor.**

21. The Debtor takes great pains to criticize BDO for not dedicating adequate resources to completing the audit. Of course, BDO could not dedicate those resources without the information critical for the audit. BDO is optimistic that it will be able to ramp up its efforts after receiving information and analyses which BDO expects will be provided by Mr. Dufek and Mr. O'Donnell and already has begun working toward that end.

- **BDO did not keep identifying new open items to the Debtor.**

22. The open items identified by BDO generally were the same throughout the engagement. These generally included in-kind valuation, loan liabilities (including loan forgiveness debt), functional expense and joint costs allocation, accrual of bonus for CEO Brian

---

[17] *See* Lall Decl. ¶¶ 7 & 10.

[18] *Id.* ¶ 10.

8

Mullaney, fiscal years 2015 and 2016 recording of contributions related net assets as well as the release of restricted net assets, and going concern and financial statements presentation, as well as the effect of any of these changes on the overall net assets and results presented in prior years.

23. At every turn, Debtor's counsel and CFO Ms. Fuchs consistently provided information that was not sufficient competent evidential matter in accordance with applicable professional standards. Apparently for this very reason, Debtor's Board of Directors hired Mr. Dufek and Mr. O'Donnell to provide "temporary assistance in resolving the outstanding and unresolved matters as set forth in [the September 1 Letter]."[19] Accordingly, Mr. Coneys authorized BDO "to engage directly with them on all matters pertaining to the audit."[20]

- **BDO did not make "mistakes" in its calculations or assumptions.**

24. The Debtor's examples of BDO's alleged mistakes and miscalculations are petty, inaccurate attempts to denigrate BDO's professionals. For instance, the Debtor did not discuss important aspects of the Chief Executive Officer's compensation with BDO until August 2017, and only then after BDO requested the Debtor's "entire pre-petition filing." Because this issue could have a material impact on the audit, BDO was required to reopen issues that previously had been addressed.

## CONCLUSION

25. While certainly not the subject of the Order, the Debtor attempts to use the Response to begin an assault on BDO's fees in this matter, which at present are not even before the Court.[21] The Debtor argues in the Response that BDO failed to provide advance notice of

---

[19] *See* Lall Decl., Ex. 1.

[20] *Id.*

[21] While the Debtor attached BDO's draft fee statements to the Mann Declaration as an exhibit, BDO has not filed them as it was waiting for authorization from the Chairman of the Audit Committee, which was recently provided. BDO will shortly be filing its initial Fee Application and will certainly address any issues with its fees at that time.

out-of-scope work under its engagement proposal. Yet, the amended engagement letter (the "Engagement Letter") and the Retention Order do not require such notice. More critically, BDO was, at all times, forthcoming with the Debtor about the necessity of out-of-scope work on this engagement. Beginning in mid-May, BDO repeatedly communicated to the Debtor's Audit Committee Chairman and the CFO that additional, out-of-scope work would be required in order for BDO to issue the audit in accordance with applicable professional standards.[22]

26. It is commonplace in the accounting industry that circumstances requiring additional, out-of-scope work may arise when conducting audits. As BDO pointed out to the Debtors in the "Additional Billings" section of the Engagement Letter, some of these "common circumstances include: changing auditing (scope) []; incorrect accounting applications or errors in your records; restatements; failure to furnish accurate and complete information to us on a timely basis; and unforeseen events . . ."[23]

27. The Application (which was filed by the Debtor) and the Retention Order both address out-of-scope work, or "Additional Accounting Services." Any charges for such Additional Accounting Services shall be "made at BDO's agreed upon and customary hourly rates"[24] and are subject to applicable Court review.[25]

28. While difficult to reconcile the Debtor's argument that BDO on one hand failed to dedicate adequate resources to the audit, and on the other that BDO performed too much work, the work performed by BDO was undertaken toward the ultimate goal of completing the audit in compliance with applicable professional standards (GAAS) and issuing the Audit Report on

---

[22] *See* Lall Decl. ¶ 8.

[23] *See* Appl., Ex. 1.

[24] *See* Appl. ¶ 13.

[25] *See* Retention Order ¶ 4.

whether the Financial Statements of the Debtor are in accordance with generally accepted accounting principles (GAAP).

29. In the end, as a matter of practice and integrity, BDO strictly adheres to each provision of the Code of Professional Conduct (the "Code") in each and every engagement undertaken by BDO. This matter is no different. In diligently performing services for the Debtor since its retention in April 2017, BDO scrupulously has followed the requirements of the Code, including the applicable audit standard of "due professional care." BDO remains ready, willing and able to complete the audit for the Debtor in compliance with these standards.

Dated: October 9, 2017
      New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Rachel Ehrlich Albanese
Richard A. Chesley (*pro hac vice* admission pending)
Rachel Ehrlich Albanese
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
richard.chesley@dlapiper.com
rachel.albanese@dlapiper.com

*Counsel to BDO USA, LLP*

# EXHIBIT A

**Declaration of Ritesh Lall**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WONDERWORK, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 16-13607 (MKV) |

### DECLARATION OF RITESH LALL IN SUPPORT OF STATEMENT OF BDO USA, LLP REGARDING DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE DATED SEPTEMBER 25, 2017

I, Ritesh Lall, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that:

1. I am an Assurance Partner in the Nonprofit & Employee Benefit Plan Practices at BDO USA, LLP ("BDO")[1] and Audit Partner with respect to the WonderWork, Inc. (the "Debtor") engagement. I submit this declaration in support of *BDO's Statement* (the "Statement") *Regarding the Debtor's Response to the Court's Order to Show Cause Dated September 25, 2017* (ECF No. 250, the "Response") filed contemporaneously herewith. Unless otherwise stated, I have personal knowledge of the facts set forth herein.

2. I have more than 18 years of experience auditing nonprofit organizations, international NGOs, employee benefit plans, and low-income housing tax credit entities, as well as working with nonprofit organizations. My experience includes planning, performing and supervising a wide range of financial statement audits, reviewing systems for compliance with various governmental agencies, and interfacing regularly with audit committees and management, providing both governance insight and commentary on adequacy of the client's accounting function.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Statement.

3. In its Response to the Court's *Order to Show Cause* (ECF No. 249, the "Order"), the Debtor unfairly and unreasonably blames BDO for the audit delay. Although the Order was in no way directed at BDO, BDO is filing the Statement to respond to the many half-truths and misstatements contained in the Debtor's Response.

4. In February 2017, after the Debtor was informed that its prior auditor KPMG would not be performing an audit of the Debtor's 2016 Financial Statements, the Debtor selected BDO to conduct the fiscal year 2016 audit.

5. BDO began the engagement process on April 4, 2017, which included, among other things, engaging in client acceptance procedures to understand the Debtor and its business and determine the specific audit procedures to perform. On April 19, 2017, BDO commenced fieldwork at the Debtor's office in furtherance of those efforts. The Debtor's Application to retain BDO as auditor and tax advisor to the Debtor, effective as of April 4, 2017, was approved by the Court on May 24, 2017.

6. BDO continued to conduct the audit, which included numerous discussions and requests for information with the Debtor in May 2017. Much of the information provided to BDO throughout the engagement was through the Debtor's lawyers, which is highly unusual for an audit situation. Generally, lawyers are not accountants and are not able to provide the sufficient competent evidential matter required by BDO to satisfy to its professional requirements for issuing the Audit Report. BDO was directed to work through the Debtor's lawyers, which created inefficiencies and information gaps that, to date, have not been resolved.

7. As a result of the ongoing audit procedures, BDO identified certain transactions that appeared to be inappropriately recorded under the principles that govern the Debtor's Financial Statements (typically referred to as generally accepted accounting principles, or

"GAAP") or were unsupported by documentary evidence, and which illustrated "material weaknesses," and "significant deficiencies" in the Debtor's internal controls (the "Transactions").

8. As dictated by applicable professional standards, and as repeatedly communicated to the Debtor's Audit Committee Chairman and the CFO, these findings required BDO to undertake significant out-of-scope work to obtain a more complete understanding of the Transactions, including performing related audit procedures for the existence, completeness, accuracy, valuation, and proper financial disclosures of the account balances in connection with the Transactions. The numerous open issues related to the Transactions, which have a substantial impact on the audit, needed to be addressed by competent Debtor personnel in order for BDO to complete the audit as required by professional standards.

9. Beginning in May 2017 and continuing through October 2017, I and the other members of the BDO team repeatedly communicated our concerns about the Transactions to the Debtors' Board of Directors, Audit Committee Chairman, Ms. Fuchs as CFO and the Debtor's bankruptcy counsel.

10. Our concerns with the Transactions, as reflected in the open items identified by BDO, generally remained the same through the engagement. These generally included in-kind valuation, loan liabilities (including loan forgiveness debt), functional expense and joint costs allocation, accrual of bonus for CEO Brian Mullaney, fiscal years 2015 and 2016 recording of contributions related net assets as well as the release of restricted net assets, and going concern and financial statements presentation, as well as the effect of any of these changes on the overall net assets and results presented in prior years. Debtor's counsel and CFO Ms. Fuchs consistently provided information that was not sufficient competent evidential matter from an accounting

perspective. As such, BDO has not been able to commit to a completion date for the Audit Report due to the Debtor's inability to resolve the open items to BDO's satisfaction, which are consistent with, and required by, professional standards of the industry. This includes the requirement that for certain financial statement entries, the Debtor's position must be compliant with GAAP. Unless and until the Debtor agrees to account for those items in accordance with GAAP, applicable professional standards will not allow an auditor to issue an opinion.

11. During the engagement, BDO was specifically asked by the Audit Committee Chairman not to communicate its concerns formally in writing, but only through discussion, which would give the Debtor time to address these concerns. In accordance with the Audit Committee Chairman's request, BDO continued to communicate with the Debtor by conversation and email and BDO continued to assess its concerns based upon the Debtor's responses to these communications. Ultimately, in conformance with professional standards, it became necessary for BDO to formally document the unresolved issues.

12. On September 1, 2017, BDO sent a detailed letter (the "September 1 Letter") to John J. Coneys, Audit Committee Chairman, Steve Rappaport, Board Chairman, and Brian Mullaney, Co-Founder and Chief Executive Officer of the Debtor, the purpose of which was to provide a comprehensive communication regarding the issues related to the Transactions that represented obstacles to BDO being able to complete the audit in compliance with applicable professional standards.[2]

13. In the September 1 Letter, BDO outlined the issues presented in the Transactions and their impact on the audit, explaining that it would be inappropriate to continue with the audit

---

[2] The September 1 Letter is attached as Exhibit 33 to the Fuchs Declaration and, at BDO's request, was provided to the Court for *in camera* review.

unless the Debtor's Audit Committee initiated a review of the Transactions and provided responses that addressed BDO's concerns.

14. Rather than receiving a response from the Audit Committee or any of the Debtor's financial personnel, on September 19, 2017, BDO received an inadequate and substantially unresponsive letter from counsel to the Debtor (the "<u>WW Letter</u>").[3]

15. Throughout the engagement, BDO has had a continuing dialogue with the Debtor's Board of Directors and the Audit Committee Chairman. Apparently recognizing the inefficiencies of the process to date, Mr. Coneys, the Audit Committee Chairman, emailed me on September 29, 2017:

> "As discussed this morning, WonderWork has hired Tom Dufek and Steve O'Donnell, at the request of the Audit Committee, for temporary assistance in resolving the outstanding and unresolved matters as set forth in your letter of September 1, 2017. You are authorized to engage directly with them on all matters pertaining to the audit."[4]

Neither of the Debtor's declarants is copied on the email from the Audit Committee Chairman.

16. On the same day, BDO had a conference call with Mr. Coneys and Mr. Dufek, and Mr. Dufek contacted BDO to schedule a meeting for the following week.

17. Also on September 29, 2017, BDO indicated to the Audit Committee Chair during a telephone call that the WW Letter had not moved anything along with respect to the Transactions.

18. On October 4, 2017, BDO formally advised Mr. Coneys, Mr. Rappaport and Mr. Mullaney that the WW Letter from Debtor's counsel ostensibly in response to the issues raised in the September 1 Letter was substantially unresponsive and the open issues remained

---

[3] The WW Letter is attached as Exhibit 34 to the Fuchs Declaration and was provided to the Court for *in camera* review.

[4] *See* Email from John J. Coneys, WonderWork Audit Committee Chairman, to Ritesh Lall, BDO Assurance Partner, dated September 29, 2017 at 10:41 AM, attached hereto as <u>Exhibit 1</u>.

substantially unresolved (the "October 4 Letter").[5] BDO explained in the October 4 Letter that, without additional competent evidential material and analysis from the Debtor that fully and appropriately addresses and resolves the issues stated in the Letter, BDO would be unable to complete the audit in accordance with professional standards and issue an unqualified Audit Report on the related Financial Statements of the Debtor.

19. On October 5, 2017, I, along with other members of the BDO team, met with Mr. Dufek and Mr. O'Donnell to discuss responses to the issues identified in the September 1 Letter. We informed Mr. Dufek and Mr. O'Donnell that the timing and content of any report issued by BDO would depend on BDO's assessment of the audit in totality and not on the resolution of any one specific item in the September 1 Letter. Mr. Dufek and Mr. O'Donnell agreed to speak with the Debtor to try to provide BDO with the additional information it needs.

20. The Debtor recently has taken appropriate steps to assist BDO in completing the audit. BDO expects that Mr. Dufek and Mr. O'Donnell will assist BDO and the Debtor in making significant progress toward resolving the open items.

*[Remainder of page intentionally left blank]*

---

[5] The October 4 Letter is attached as part of Exhibit 13 to the *Declaration of Pamela A. Mann in Support of the Debtor's Response to Order to Show Cause Dated September 25, 2017* [ECF No. 251] and, at BDO's request, was provided to the Court for *in camera* review.

21.     BDO has been, and continues to be, ready, willing, able and focused on working with the Debtor to complete the audit.

Executed on October 9, 2017 in New York, New York

*Ritesh Lall*

Ritesh Lall, CPA, CGMA

# EXHIBIT 1

-----Original Message-----
From: John Coneys [mailto:jjconeys@gmail.com]
Sent: Friday, September 29, 2017 10:41 AM
To: Ritesh Lall <rlall@bdo.com>; Michele Salituro <msalituro@bdo.com>; Adam Cole <ACole@bdo.com>
Cc: Steven Rappaport <snr@rzcapital.com>; Brian Mullaney <brian@wonderwork.org>; tndufek@cfoforaday.com
Subject: WonderWork Audit Assistance

Attention: This email was sent from someone outside of BDO USA. Always use caution when opening attachments or clicking links from unknown senders or when receiving unexpected emails.

Ritesh and team,

As discussed this morning, WonderWork has hired Tom Dufek and Steve O'Donnell, at the request of the Audit Committee, for temporary assistance in resolving the outstanding and unresolved matters as set forth in your letter of September 1, 2017. You are authorized to engage directly with them on all matters pertaining to the audit.

Thank you,

J. J. Coneys
WonderWork Audit Committee Chair

Sent from my iPad

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

IMPORTANT NOTICES

The contents of this email and any attachments to it may contain privileged and confidential information from BDO USA, LLP. This information is only for the viewing or use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of, or the taking of any action in reliance upon, the information contained in this e-mail, or any of the attachments to this e-mail, is strictly prohibited and that this e-mail and all of the attachments to this e-mail, if any, must be immediately returned to BDO USA, LLP or destroyed and, in either case, this e-mail and all attachments to this e-mail must be immediately deleted from your computer without making any copies hereof. If you have received this e-mail in error, please notify BDO USA, LLP by e-mail immediately.