# EXHIBIT 101

**From:** Hana Fuchs
**Sent:** Friday, October 31, 2014 11:24 AM
**To:** Brian Mullaney
**Subject:** RE: From Jeff Weiss
**Attachments:** BMullaney contract certificate $3.660 million.pdf

The Help Me See policy was $6million which we converted ▮▮▮▮▮▮▮ (remember we needed Mohan to sign it) and we added a second policy for $1.5 million to come up with the $7.5 million needed in the Impact Loan agreement.
I do not have copies of the other 2 policies-I only have a copy of the US Life contract certificate ($3.660 million).
Forgot to mention that Jeff was extremely rude and hung up on me. He probably will not take my call....
Thanks H

---

**From:** Brian Mullaney
**Sent:** Friday, October 31, 2014 10:54 AM
**To:** Hana Fuchs
**Subject:** Re: From Jeff Weiss
**Importance:** High

Hmmm.

Can you please send me a summary of all insurance policies we have?

I was under the impression that we had one for me at $4,000,000 for my wife and family and one for ▮▮▮▮▮▮ – which was the policy we had for Ueltschi and w converted it and made it bigger for ▮▮▮▮▮▮.

I don't want to talk to that dope. May I give him permission to speak to you? It is NOT a personal policy as WonderWork is paying for it.

Thanks


B.


P.S. Now word from Esther?


**Brian Mullaney**
Co-Founder/CEO
WonderWork


Watch two blind sisters see their mom for the first time!
More than 1,850,000 people have watched this heart-warming video over the past few weeks!

420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

---

**From:** Hana Fuchs <hana@wonderwork.org>

**Date:** Friday, October 31, 2014 at 10:43 AM
**To:** brian mullaney <brian@wonderwork.org>
**Subject:** RE: From Jeff Weiss

Hi Brian,

Just got off the phone with Jeff.
He won't talk to me about your personal insurance- he said that he needs about 20 minutes with you.

These are not the ████████ insurance policies (that was the last e-mail I sent).
Sorry…
Hana

---

**From:** Brian Mullaney
**Sent:** Friday, October 31, 2014 9:47 AM
**To:** Hana Fuchs
**Subject:** FW: From Jeff Weiss

Hi Hana,

Please take a look at this.

One of these policies I believe it supposed to benefit ████████ as part of or Impact Loan. Please read the loan and see how much is required.

He is trying to get me to switch to Metropolitan Life but I do not really understand why I would do this now instead of consider it when the premiums go up in 8 years and 17 years. Can't I convert later on if I want to?

Thanks,

Brian


**Brian Mullaney**
Co-Founder/CEO
WonderWork

Watch two blind sisters see their mom for the first time!
More than 1,850,000 people have watched this heart-warming video over the past few weeks!

420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

---

**From:** Sharon Goldman <srgoldman@theweissgroup.org>
**Date:** Tuesday, October 21, 2014 at 11:48 AM
**To:** brian mullaney <brian@wonderwork.org>
**Subject:** From Jeff Weiss

WW_EMAILS0011606-2

Re:     Updated Insurance Portfolio

Brian:

Good morning.

Pursuant to my conversation with Hana Fuchs, I would like to review your personal insurance and have you consider options to extend the number of years of coverage.

You currently have the following personal policies through The Weiss Group:

1.  a $3,660,000 United States Life 20 year level term policy issued 11/03/02 with an annual premium of $3,735.00.  You are the owner of this policy.  Kristen is the primary beneficiary.  The contingent beneficiaries are ███████████████ equally.  There are eight (8) more years of guaranteed level premiums (to your age 63) before the premium becomes <u>prohibitively</u> <u>expensive</u>.

2.  a $4,000,000 Metropolitan Life 20 year level term policy issued 11/04/11 with a semi-annual premium of 6,629.77.  You are the owner of this policy.  Kristen is the primary beneficiary.  The contingent beneficiaries are ███████████████ equally.  There are seventeen (17) more years of guaranteed level premiums (to your age 72) before the premium becomes <u>prohibitively</u> <u>expensive</u>.

Both of your aforementioned policies have a feature that states ***without any medical evidence of insurability required***, you can convert (exchange) part or all of your term insurance to a permanent policy (that is offered by the carrier) that lasts longer that will cover Kristen, ███████████████ for a longer period of time.

The United States Life policy you can convert to is an interest sensitive product and is not guaranteed as they do not gave a guaranteed product in their portfolio.

Metropolitan Life has a universal life policy with secondary guarantees that does not accrue cash value and is a term like equivalent that you can convert to.  Below please find options for your review:

Option A     convert $1,000,000 of your $4,000,000 policy to a universal life policy with secondary guarantees paying a semi-annual premium of $5,270.45 to your age 95 and have the policy guaranteed to your age 95.

Option B     convert $2,000,000 of your $4,000,000 policy to a universal life policy with secondary guarantees paying a semi-annual premium of $10,497.79 to your age 95 and have the policy guaranteed to your age 95.

In both aforementioned scenario's as long as the premium is paid on time, the premium, the number of years to pay the premium and the death benefit are guaranteed to your age 95 regardless of interest rates, mortality or investment results of Metropolitan Life.

If you have any questions upon your review of this material, please do not hesitate to contact me.

Sincerely,

For Jeff

Sharon

Sharon Goldman, Assistant to Jeffrey S. Weiss

WW_EMAILS0011606-3

The Weiss Group
200 Park Avenue - 32nd Fl.
New York, NY 10166
212-922-9100
212-922-9195 - Fax
srgoldman@theweissgroup.org

IRS Circular Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that Tax advice contained in this communication (including, unless otherwise provided, any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax – related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matter (s) addressed herein.

This communication (including any attachments) is solely intended for the recipient (s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication.

# EXHIBIT 102

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Friday, May 01, 2015 6:00 PM
**To:** Hana Fuchs
**Subject:** Re: Form 990

let's review these policies. I am going to cancel one of mine I think and save some money. b

Brian Mullaney
Co-Founder/CEO

WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
Almost 3,000,000 people have watched this heart-warming video over the past few months!



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**

---

**From:** Hana Fuchs
**Date:** Friday, May 1, 2015 at 2:55 PM
**To:** brian mullaney
**Subject:** RE: Form 990

I've attached the invoices for the Met Life $7.5 million which total $9,669 plus $2,949 ten year guaranteed term
The others are 2 policies – one from Met Life $4million semi-annual payment of $4,629.77 and the other is US Life
$3,660,000 annual payment of $3,735.
I am looking for copies of the policies.
Hana

---

**From:** Brian Mullaney
**Sent:** Friday, May 01, 2015 1:53 PM
**To:** Hana Fuchs
**Subject:** Re: Form 990

My life insurance policies are for $3.5 million and $4 million.

███████ life insurance is for $7.5 million.

How can my policy cost $17,0000 and his costs $12,000.

I think there may be a mistake here.


B.

WW_EMAILS0011568-1

**Brian Mullaney**
Co-Founder/CEO

WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
Almost 3,000,000 people have watched this heart-warming video over the past few months!



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**

---

**From:** Hana Fuchs
**Date:** Friday, May 1, 2015 at 12:34 PM
**To:** brian mullaney
**Subject:** RE: Form 990

Hi Brian,
The benefits are for the calendar year 2013 per 990-
I've attached the spreadsheet with the details for the insurance payments in 2 atabs.
Let me know if you have any questions.
Thanks, Hana

| Calendar year 2013 | |
|---|---|
| Health | 22,373.28 |
| Dental | 1,800.60 |
| Disability | 1,575.72 |
| life | 16,994.54 |
| | 42,744.14 |

---

**From:** Brian Mullaney
**Sent:** Friday, May 01, 2015 12:10 PM
**To:** Hana Fuchs
**Subject:** Re: Form 990

Please send me hw you arrive at $43,000 in benefits for me! Please. Thanks b.

**Brian Mullaney**
Co-Founder/CEO

WW_EMAILS0011568-2

WonderWork
420 Fifth Avenue, 27th Floor
New York, NY  10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
Almost  3,000,000 people have watched this heart-warming video over the past few months!



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**

---

**From:** Hana Fuchs
**Date:** Friday, May 1, 2015 at 11:10 AM
**To:** brian mullaney
**Subject:** Form 990

Hi Brian,
Didn't get a chance to mention to you that the 990 will be changed to reflect reduction in your benefits (less the ███████ life insurance policy of $12,618)
Hana

# EXHIBIT 103



**GREATAMERICAN®**

INSURANCE COMPANIES

580 WALNUT STREET, CINCINNATI, OHIO 45202

---

**DECLARATIONS for Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy**

---

Insurance is afforded by the company indicated below: (Each a capital stock corporation)

☒ Great American Insurance Company

☐ American National Fire Insurance Company          Other _____

Policy Number:    EPP4919871                    Policy Form Number:        D9100NY

---

Item 1.  Name of **Organization**:          WONDERWORK, INC.

Mailing Address:              411 FIFTH AVENUE, SUITE 702

City, State, Zip Code:        NEW YORK, NY 10016

Attn:                        Executive Director/President

Item 2.  **Policy Period**: From _____10/3/2016_____ To _____10/3/2017_____
                                    *(Month, Day, Year)*              *(Month, Day, Year)*
            (Both dates at 12:01 a.m. Standard Time at the address of the **Organization** as stated in Item 1)

Item 3.  Limit of Liability:
            Refer to D9800

Item 4.  Retention:
            $15,000              Each **Claim**

Item 5.  Premium:
                $14,140

Item 6.  Endorsements Attached:
            D9501          D9505          D9507-NY      D9523          D9715-2NY      D9718-7NY      D9800 (4)
            DTCOV          IL7324

Item 7.  Notices:  All notices required to be given to the **Insurer** under this Policy shall be addressed to:
            *Great American Insurance Companies*
            *Executive Liability Division*
            *P.O. Box 66943*
            *Chicago, Illinois 60666*

Item 8.  Initial Coverage Date:          10/3/2013

These Declarations along with the completed and signed Proposal Form and Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy, shall constitute the contract between the **Insureds** and the **Insurer**.

**Countersignature Not Required**

_____          _____
        *(Authorized Representative)*                          *(Countersignature Date)*

---

**D 9102A (12/03)**                                                                                **Page 1 of 2**

WON-EX 043056

## New York Declarations Page
## Attachment

Notice:      Except to such extent as may be provided herein, the coverage provided by this policy is limited to liability for only those claims that are first made against the insureds during the Policy Period and reported in writing to the Insurer pursuant to the terms herein. Please read the policy carefully and discuss the coverage thereunder with your agent or broker.

Notice:      The Limit of Liability available to pay judgments or settlements may be reduced by amounts incurred by the Insured for legal defenses pursuant to Section V.C. Amounts incurred for Legal Defense by the Insured shall be applied against the retention amount. Amounts incurred by the Insurer pursuant to the Duty to Defend are in addition to the Limit of Liability and are not applied against the retention amount.

Notice:      While the Insurer does assume the duty to defend, the Insured may opt out of this provision and appoint its own defense counsel pursuant to Section V.C. If the Insured elects to opt out of the duty to defend, the Insurer will advance Costs of Defense pursuant to a written undertaking, which provides that the Insured shall repay any amounts that fall outside of coverage.

WON-EX 043057



## PRIOR AND PENDING LITIGATION EXCLUSION
## ON EXCESS LIMIT OF LIABILITY

With respects to the Limit of Liability $ ___1,000,000___ excess of $ ___1,000,000___, it is understood and agreed that this Policy does not apply to any **Claim** made against an **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

    1)    any prior and/or pending civil or criminal proceeding initiated against any **Insured** as of ___10/03/2016___; or

    2)    any **Wrongful Act(s)** or any fact, circumstance, situation, transaction, casualty, event or decision underlying or alleged in such proceeding, regardless of the legal theory upon which such **Claim** is predicated.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured:  WONDERWORK, INC.

Policy Period:  10/3/2016 to Policy Expiration       Policy Number:  4919871

Countersigned by: _____      Endorsement Effective Date:  10/3/2016
               *Authorized Representative*

Form D 9501 (01/97)              Endorsement Number: 1

WON-EX 043058



NON-PROFIT ORGANIZATION
EXECUTIVE PROTECTION AND
EMPLOYMENT PRACTICES LIABILITY
INSURANCE POLICY

## MEDICAL MALPRACTICE EXCLUSION

It is understood and agreed that this Policy does not apply to any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

any medical or professional malpractice including but not limited to the rendering or failure to render any medical service(s).

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: WONDERWORK, INC.

Policy Period: 10/3/2016 to Policy Expiration

Policy Number: 4919871

Countersigned by: _____
                        *Authorized Representative*

Endorsement Effective Date: 10/3/2016

Form D 9505 (01/97)

Endorsement Number: 2

WON-EX 043059



## DISCRIMINATION EXCLUSION

It is understood and agreed that this Policy does not apply to any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

any actual or alleged discrimination, including but not limited to discrimination based upon race, color, creed, religion, sex, national origin, age or sexual orientation; however, this exclusion shall not apply to any **Claim** for an **Employment Practices Wrongful Act**.

Note: **Employment Practices Wrongful Act** coverage is only provided if the alleged or actual act is based on disparate impact or vicarious liability.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: WONDERWORK, INC.

Policy Period: 10/3/2016 to Policy Expiration      Policy Number: 4919871

Countersigned by: _____      Endorsement Effective Date: 10/3/2016
            *Authorized Representative*

Form D 9507-NY (11/03)      Endorsement Number: 3

WON-EX 043060



## PEER REVIEW, CREDENTIALING AND DISCIPLINARY EXCLUSION

It is understood and agreed that this Policy does not apply to any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

any process, function or activity involving:

     1) peer review;  or

     2) credentials certification, designation, license, award, rating or similar judgement;  or

     3) discipline;

provided, however, that this exclusion shall not apply to any **Claim** brought by or on behalf of any past, present or prospective **Insured Person** for an **Employment Practices Wrongful Act**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured:  WONDERWORK, INC.

Policy Period:  10/3/2016 to Policy Expiration

Policy Number:  4919871

Countersigned by:  _____
                        *Authorized Representative*

Endorsement Effective Date:   10/3/2016

WON-EX 043061



## AMENDMENT TO SECTION V

It is understood and agreed that Section V of the Policy is hereby amended as follows:

Section V. C. is deleted and replaced with the following:

    C.   **Costs of Defense** incurred by the **Insurer** shall be in addition to the Limit of Liability, and such **Costs of Defense** shall be subject to the Retention amount.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: WONDERWORK, INC.

Policy Period: 10/3/2016 to Policy Expiration        Policy Number: 4919871

Countersigned by: _____     Endorsement Effective Date: 10/3/2016
*Authorized Representative*

WON-EX 043062



## AMENDMENT TO SECTION VIII

It is understood and agreed that Section VIII of the Policy is hereby amended as follows:

**Section VIII. Elite Coverage Amendments  <u>O</u>.**

It is understood and agreed that the following changes are made to the Policy:

1. Section III.C. of the Policy is amended with the addition of the following:

   **C.** **"Insured Persons"** shall also mean the lawful spouses, estates, heirs, legal representatives or assigns of any **Insured Persons** in the event of their death, incapacity or bankruptcy, of such **Insured Persons** but only for **Claims** arising out of any actual or alleged **Wrongful Act(s)** of any **Insured Persons**.

2. Section III. D. of the Policy is deleted and replaced with the following wording:

   **D.** **"Subsidiary"** shall mean: (1) any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the **Organization** controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity; (2) any similar not-for-profit organization which was subsequently created or acquired by the **Organization** after the inception date of this Policy, if the entity's total assets do not exceed twenty-five percent (25%) of the total consolidated assets of the **Organization** as of the inception date of this Policy; or (3) any other entity added as a **Subsidiary** by written endorsement to this Policy.  Coverage shall apply to a **Subsidiary** only for **Wrongful Acts** committed during the time such entity so qualified as a **Subsidiary**.

3. Section III.E. of the Policy is amended with the addition of the following:

   **E.** **"Wrongful Act"** shall also mean any matter claimed against any **Insured Persons** solely by reason of their status with the **Organization**.

---

Insured:   WONDERWORK, INC.

Policy Period:   10/3/2016 to Policy Expiration

Policy Number:  4919871

Countersigned by: _____
<em>Authorized Representative</em>

Endorsement Effective Date:   10/3/2016

Form D 9718-7NY  (05/08)

Endorsement Number:  6

Page 1 of 3

WON-EX 043063


## AMENDMENT TO SECTION VIII

4. Section IV.L. is hereby deleted and replaced with the following:

   **L.** brought about or contributed to by: (1) any **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled; or (2) the fraudulent or dishonest acts of any **Insured**; provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred; and the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion;

5. Section IV.F. is hereby deleted and replaced with the following:

   **F.** for any actual or alleged violation of the Employment Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provision of any statutory or common law;

6. Section VI. is deleted and replaced with the following:

   **A.** No **Insured** shall admit liability, offer to settle, or incur **Costs of Defense** in connection with any **Claim** without the **Insurer's** prior written consent. Any **Costs of Defense** incurred and/or settlements agreed to prior to the **Insurer's** consent thereto shall not be covered hereunder.

   **B.** The **Insurer** has the right to investigate and settle any **Claim**, as it deems expedient, however, the **Insureds** shall have the right to consent to any settlement, which consent shall not be unreasonably withheld. In the event the **Insurer** recommends a settlement and the **Insured** unreasonably refuses to consent thereto, the **Insurer's** liability for such **Claim** is limited to:

   > the amount in excess of the Retention which the **Insurer** would have contributed to the settlement had the **Insured** consented to settlement,

   > the **Costs of Defense** covered by the Policy and incurred prior to the date of such refusal to settle, seventy percent (70%) of any additional covered **Loss** incurred subsequent to such refusal and subject to the Limit of Liability and,

   > seventy percent (70%) of any additional covered **Costs of Defense** incurred subsequent to such refusal up to a maximum of $500,000. Such additional **Costs of Defense** shall be in addition to the Limit of Liability.

WON-EX 043064


## AMENDMENT TO SECTION VIII

7.  It is understood and agreed that Section VII.A. is deleted and replaced with the following:

    A. The **Insureds** shall, as a condition precedent of their rights under this Policy, give the **Insurer** notice in writing of any **Claim** made, as soon as practicable from the date the Chairman, President, Executive Director, Chief Financial Officer, General Counsel or equivalent has knowledge of the **Claim.**

8.  It is understood and agreed that Section VIII. is amended by the addition of the following:

    VIII. P. Territory
    The insurance provided by this Policy applies to **Wrongful Acts** anywhere in the world, provided that a **Claim** is brought against the **Insured** within the United States of America, its territories or possessions or Canada.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

WON-EX 043065



## AMENDMENT TO DECLARATIONS PAGE

It is understood and agreed that Item 3. of the Declarations is hereby amended to read as follows:

Item 3. Limit of Liability:

$ _____2,000,000_____ Aggregate Limit of Liability for each **Policy Year** for all **Claims** other than **Employment Practices Wrongful Act Claims.**

$ _____2,000,000_____ Aggregate Limit of Liability for each **Policy Year** for **Employment Practices Wrongful Act Claims**.

Provided, however, in no event shall any one **Claim** be payable under both Limits of Liability.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: WONDERWORK, INC.

Policy Period: 10/3/2016 to Policy Expiration          Policy Number: 4919871

Countersigned by: _____          Endorsement Effective Date: 10/3/2016
                   *Authorized Representative*

Form D 9800(4)                    (01/97)          Endorsement Number:    7

WON-EX 043066



## TERRORISM COVERAGE ENDORSEMENT
## CAP ON LOSS FROM CERTIFIED ACTS

Subject to all terms and conditions of this Policy, including any follow-form provisions, this Policy is amended by the addition of the following:

**CERTIFIED ACTS OF TERRORISM COVERAGE**

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year in the aggregate and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rate allocation in accordance with procedures established by the Secretary of the Treasury.

> It is understood and agreed that the Premium section of the Declarations is amended by the addition of the following:
>
> Terrorism Premium:  $ _0.00_
>
> The Policyholder Disclosure Offer of Terrorism Coverage is attached to and is to be considered as incorporated in and constituting a part of this Policy.

This endorsement does not extend any additional coverage or otherwise change the terms and conditions of any coverage under this Policy.

Insured:  WONDERWORK, INC.

Policy Period:  10/3/2016 to Policy Expiration          Policy Number:  4919871

Countersigned by: _____          Endorsement Effective Date:  10/3/2016
                                    *Authorized Representative*

WON-EX 043067



## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

Insured:   WONDERWORK, INC.

Policy Period:   10/3/2016 to Policy Expiration

Policy Number:   4919871

Countersigned by: _____
                              *Authorized Representative*

Endorsement Effective Date:   10/3/2016

IL 73 24  (Ed. 08/12)

Endorsement:   9

Page 1 of 1

WON-EX 043068



## POLICYHOLDER DISCLOSURE
## OFFER OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is dependent upon the calendar year and is shown in the Table below.

| Year | Federal Share |
|------|---------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 | 80% |

The Terrorism Risk Insurance Act, as amended in 2015, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism. The policy's other provisions will still apply to such an act.

**Terrorism coverage** for acts of terrorism that are certified under the federal program as an act of terrorism is included for no additional premium. Nonetheless, if you would like to reject such Terrorism coverage, please provide Great American written confirmation of such, and an exclusion will be attached to your policy.

# Non-Profit Organization Executive

WON-EX 043069



# Protection and Employment Practices Liability Insurance Policy

THIS IS A CLAIMS MADE POLICY. UPON TERMINATION OF COVERAGE FOR ANY REASON, A SIXTY (60) DAY AUTOMATIC DISCOVERY PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM AN ADDITIONAL THREE YEAR DISCOVERY PERIOD CAN BE PURCHASED. EXCEPT TO SUCH EXTENT AS MAY BE PROVIDED HEREIN, THE COVERAGE PROVIDED BY THIS POLICY IS LIMITED TO LIABILITY FOR THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD, THE AUTOMATIC DISCOVERY PERIOD, ANY APPLICABLE DISCOVERY PERIOD OR ANY RENEWAL. HOWEVER, MORE THAN ONE CLAIM INVOLVING THE SAME WRONGFUL ACT OR RELATED WRONGFUL ACTS OF ONE OR MORE INSUREDS SHALL BE CONSIDERED A SINGLE CLAIM, AND ONLY ONE RETENTION SHALL BE APPLICABLE TO SUCH SINGLE CLAIM. ALL SUCH CLAIMS, CONSTITUTING A SINGLE CLAIM SHALL BE DEEMED TO HAVE BEEN MADE ON THE EARLIER OF THE FOLLOWING DATES (1) THE EARLIEST DATE ON WHICH ANY SUCH CLAIM WAS FIRST MADE; OR (2) THE EARLIEST DATE ON WHICH ANY SUCH WRONGFUL ACT OR RELATED WRONGFUL ACT WAS REPORTED UNDER THIS POLICY OR ANY OTHER POLICY PROVIDING SIMILAR COVERAGE.

THERE IS NO COVERGE FOR INCIDENTS THAT TOOK PLACE PRIOR TO THE RETROACTIVE DATE. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE AUTOMATIC DISCOVERY PERIOD, OR IF PURCHASED, THE ADDITIONAL DISCOVERY PERIOD, WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT PROVIDED BY ANOTHER INSURER. DURING THE FIRST SEVERAL YEARS OF A CLAIMS MADE RELATIONSHIP, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the company shown in the Declarations (a stock insurance company, hereinafter called the **Insurer**), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the **Insured** and **Insurer** agree:

## Section I. Insuring Agreement

If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against an **Insured** for a **Wrongful Act**, including an **Employment Practices Wrongful Act**, the **Insurer** shall pay on their behalf **Loss** and **Costs of Defense** resulting from such **Claim**. The **Insurer** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

## Section II. Discovery Period

A. If either the **Organization** or the **Insurer** cancels or does not renew this Policy, or if the **Organization** or **Insurer** offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, or any change in coverage less favorable to the **Insured**, the **Organization** shall be entitled to acquire an additional reporting period for **Claims** first made against an **Insured** as set forth below, but only with respect to **Wrongful Acts** committed prior to the end of the **Policy Period**. This additional reporting period shall be referred to as the **Discovery Period.**

B. If either the **Organization** or the **Insurer** cancels or does not renew this Policy, or if the **Organization** or **Insurer** offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, an increase in Retention, an addition of an exclusion, or any change in coverage less favorable to the **Insured**, it is understood and agreed that the **Discovery Period** shall be the period of sixty (60) days from the end of the **Policy Period**, and there shall be no additional charge. This sixty (60) day period shall be referred to as the **Automatic Discovery Period.** If prior to the end of the **Automatic Discovery Period** the **Organization** pays the **Insurer** an additional amount equal to one hundred fifty percent (150%) of the annual premium of this Policy, the term of the **Discovery Period** shall be extended for an additional thirty-six (36) months from the end of the **Automatic Discovery Period.**

C. The **Insurer** will provide written notice to the **Organization** of the **Automatic Discovery Period** and the availability of, the premium for, and the importance of purchasing, the **Discovery Period** within thirty (30) days after the **Termination of Coverage**. This provision shall not apply where the claims-made relationship has continued for less than one (1) year and the **Insurer** is canceling the Policy for non-payment of premium.

D. The right to purchase the **Discovery Period** will terminate unless written notice is given to the **Insurer** within sixty (60) days from the **Termination of Coverage**, or within thirty (30) days after the mailing or delivery of the notice provided by the **Insurer** under Section C, above, whichever is greater, together with full payment of the premium for the **Discovery Period**. If such notice and premium payment are not so given to the **Insurer,** the **Organization** will not be able to exercise the right to purchase the **Discovery Period**. The premium charged for the **Discovery Period** shall be based upon the rates in effect on the date this Policy was issued or last renewed.

In the event the **Organization** is in liquidation or bankruptcy, or permanently ceases operation, and if the **Organization** or its designated trustee, although entitled to, does not purchase the **Discovery Period**, any **Insured Persons** who request the **Discovery Period** within one hundred twenty (120) days of the **Termination of Coverage** may purchase the **Discovery Period**, as provided in Section B, above.

E. A person employed or otherwise affiliated with the **Organization** and covered by this Policy during such affiliation shall continue to be covered under this Policy and any **Discovery Period** after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

F. Upon **Termination of Coverage**, any return premium due the **Insured** shall be applied to the premium for the **Discovery Period** if the **Insured** elects to purchase such coverage. Where the premium is due to the **Insurer**, any payment received by the **Insurer** from the **Insured** as payment for the **Discovery Period** shall be first applied to any premium due for the Policy.

G. In the event similar insurance to that provided by this Policy is in force during the **Discovery Period**, the coverage afforded during the **Discovery Period** shall be excess over any such valid and collectible insurance.

H. Where a claims-made relationship has continued for at least three (3) years, the Policy's annual aggregate Limit of Liability for the **Discovery Period**, shall be equal to one hundred percent (100%) of the Policy's annual aggregate Limit of Liability.

Where a claims-made relationship has continued for less than three (3) years, the Policy's annual Limit of Liability for the **Discovery Period**, shall be at least equal to the greater of:

1) the amount of coverage remaining in the Policy's annual aggregate Limit of Liability; or
2) fifty percent (50%) of the Policy's annual aggregate Limit of Liability.

## Section III. Definitions

A. **"Organization"** shall mean the entity named in Item 1 of the Declarations.

B. **"Insured"** shall mean the **Organization** and any **Subsidiary** and all **Insured Persons**.

C. **"Insured Persons"** shall mean all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the **Organization** or its **Subsidiaries**, including any executive board members and committee members whether salaried or not.

D. **"Subsidiary"** shall mean any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the **Organization** has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity, or any other entity added as a **Subsidiary** by written endorsement to this Policy. Coverage shall apply to a **Subsidiary** only for **Wrongful Acts** committed during the time such entity so qualified as a **Subsidiary.**

E. **"Wrongful Act"** shall mean any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty, or **Employment Practices Wrongful Act** by the **Organization**, and/or a **Subsidiary**, and/or any **Insured Persons** acting in their capacity with the **Organization** or a **Subsidiary**.

F. **"Employment Practices Wrongful Act"** shall mean any actual or alleged:

(1) wrongful termination of employment, or demotion of or failure or refusal to hire or promote, any person, but only to the extent such actual or alleged wrongful termination is based on disparate impact or any actual or alleged vicarious liability;

(2) discrimination or sexual harassment adversely affecting any employee of, or applicant for employment with, the **Organization**, but only to the extent such actual or alleged discrimination or sexual harassment is based on disparate impact or any actual or alleged vicarious liability; and

WON-EX 043071

(3) retaliatory treatment against an employee of the **Organization** or **Subsidiary** on account of such employee's exercise or attempted exercise of his or her rights under law, but only to the extent such actual or alleged retaliatory treatment is based on disparate impact or any actual or alleged vicarious liability.

G. **"Loss"** shall mean settlements and judgments, provided always, however, **Loss** shall not include taxes, criminal or civil fines or penalties imposed by law, punitive or exemplary damages, or the amount of any multiple damage award which is in excess of the damage award which was so multiplied, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

H. **"Costs of Defense"** shall mean any reasonable and necessary legal fees and expenses incurred in defense of any **Claim** and appeals therefrom, and cost of attachment or similar bonds (but without any obligation on the part of the **Insurer** to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include: (1) salaries, wages, overhead or benefit expenses associated with any **Insured**; and (2) any amounts incurred in defense of any **Claim** which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty.

I. **"Policy Year"** shall mean the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the **Policy Period**; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period. Any **Discovery Period** or **Automatic Discovery Period** shall be considered part of and not in addition to the last **Policy Year**.

J. **"Policy Period"** shall mean the period from the inception of this Policy to the Policy expiration date stated in Item 2 of the Declarations or its earlier termination, if any.

K. **"Claim"** shall mean: (1) any proceeding initiated against an **Insured**, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured**, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a **Wrongful Act.**

L. **"Related Wrongful Acts"** shall mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

M **"Termination of Coverage"** means, whether made by the **Insurer** or the **Insured** at any time: (1) cancellation or nonrenewal of the Policy; or (2) a decrease in limits, a reduction in coverage, increased deductible or self-insured retention, new exclusion, or any other change less favorable to the **Insured.**

## Section IV. Exclusions

This Policy does not apply to any **Claim** made against any **Insured**:

A. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving, any willful violation of any statute, rule or law committed by or with the knowledge or consent of any **Insured**, however, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion;

B. if any **Loss** or **Costs of Defense** resulting from any **Claim** is insured under any other policies, this Policy shall apply only to the extent such **Loss** or **Costs of Defense** exceeds the amount paid under such other valid and collectible insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over this Policy;

C. during any **Discovery Period**, automatic or otherwise, based on, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any **Wrongful Act** actually or allegedly occurring on or after the **Termination of coverage**;

D. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

(1) any **Wrongful Act** or any fact, circumstance or situation which is the subject of any notice given by any **Insured** during the **Policy Period** or any extension thereof of any prior policy providing coverage similar to that provided herein, or which has been the subject of any **Claim** made prior to the effective date of this Policy; or

(2) any prior and/or pending civil, criminal, administrative or investigative proceeding initiated against any **Insured** as of the date stated in Item 8 of the Declarations;

E. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving: (1) bodily injury, sickness, disease or death of any person, assault, or battery; or (2) damage to or destruction of any tangible property, including the loss of use thereof; (3) negligent hiring, retention or supervision; or (4) mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander; provided, however, that parts (3) and (4) of this exclusion shall not apply to any **Claim** brought by or on behalf of any past, present or prospective **Insured Person** for an **Employment Practices Wrongful Act**;

F. based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provision of any statutory or common law;

G. for any wrongful act of an **Insured Person** in their capacity as a director, officer or employee of an entity other than the **Organization** or a **Subsidiary**, even if directed or requested to serve such other entity, except where this Policy has been specifically endorsed to provide such extension of coverage;

H. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination or irritant of any kind;

I. by, or for the benefit of, or at the behest of the **Organization** or a **Subsidiary** or any entity which controls, is controlled by, or is under common control with the **Organization** or a **Subsidiary**, or any person or entity which succeeds to the interest of the **Organization** or a **Subsidiary**;

J. for any actual or alleged liability of any **Insured** under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement;

K. for any obligation of the **Organization** or a **Subsidiary** to modify any building or property in order to affect compliance with municipal, state or federal law;

L. brought about or contributed to in fact by any **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled, however, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion;

## Section V. Limit of Liability

A. The **Insurer** shall be liable to pay one hundred percent (100%) of **Loss** in excess of the Retention stated in Item 4 of the Declarations. The **Insurer's** maximum Limit of Liability for the aggregate amount of **Loss** resulting from all **Claims** deemed to have been made in a **Policy Year** shall be the amount shown in Item 3 of the Declarations.

WON-EX 043072

**B.** More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**. All such **Claims**, constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

**C.** **Costs of Defense** incurred by the **Insurer** shall be in addition to the Limit of Liability, and such **Costs of Defense** shall not be subject to the Retention amount.

**D.** With respect to all **Claims** deemed to have been made in a **Policy Year**, should the Limit of Liability be exhausted by payment of **Loss** resulting from one or more of such **Claims**, the **Insurer's** duty to defend shall cease and any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished and the **Insurer** shall have no further obligations hereunder of any kind or nature.

**E.** **(1)** If the **Insurer** concludes that, based on **Claims** which have been reported to the **Insurer** and to which this Policy may apply, the Policy's Limit of Liability is likely to be exhausted by the payment of **Loss**, the **Insurer** will notify the **Organization**, in writing, to that effect.

**(2)** When the Limit of Liability set forth in Item 3. of the Declarations has actually been exhausted by the payment of **Loss**:

**(a)** The **Insurer** will notify the **Organization**, in writing, as soon as practicable, that:

**(i)** The Limit of Liability has actually been exhausted; and

**(ii)** The **Insurer's** duty to pay on behalf of the **Insured(s)** all **Loss** which the **Insured(s)** shall be legally obligated to pay as a result of **Claims** has ceased.

**(b)** The **Insurer** will initiate and cooperate in the transfer of control to any appropriate **Insured** all **Claims** subject to that Limit of Liability and which were reported to the **Insurer** prior to the exhaustion of the Limit of Liability. The **Insured** must cooperate in the transfer of control of these **Claims**.

The **Insurer** agrees to take such steps as it deems appropriate to avoid a default in, or to continue the defense of, such **Claims** until the transfer is completed, provided the appropriate **Insured** is cooperating in completing such transfer.

The **Insurer** will take no action whatsoever with respect to any **Claim** that would have been subject to the Limit of Liability had it not been exhausted, if the **Claim** is reported to the **Insurer** after the Limit of Liability is exhausted.

**(c)** The **Organization** and any other **Insured** involved in a **Claim** subject to the Limit of Liability, must arrange for the defense of any **Claim** within such time period as agreed to between the **Insurer** and the **Insured**. Absent such agreement, arrangements for the defense of such **Claim** must be made as soon as practicable.

**(3)** The **Insured** will reimburse the **Insurer** for expenses the **Insurer** incurs in taking those steps deemed appropriate by the **Insurer** in accordance with Section E. (2)(b) above.

The duty of the **Insured** to reimburse the **Insurer** will begin on:

**(a)** The date the applicable Limit of Liability is exhausted, if the **Insurer** sent notice in accordance with Section E. (1) above; or

**(b)** The date the **Insurer** sent notice in accordance with Section E.(2)(a) above, if the **Insurer** did not send notice in accordance with Section E. (1) above.

**(4)** The exhaustion of the Limit of Liability by the payment of **Loss**, and the resulting end of the **Insurer's** duty to pay on behalf of the **Insureds**, will not be affected by the **Insurer's** failure to comply with any of the provisions of this Policy.

**F.** It is agreed that to the extent that this Policy of insurance could result in indemnifying the **Insured Persons** in instances where they may not otherwise be indemnified by the **Organization** under the provisions of the Not-For-Profit Corporation Law:

(a) an individual retention amount of $100 will apply to each such **Insured Person,** however, in no event shall the aggregate retention amount for all insured persons exceed $1,000.

Should the aggregate retention amount exceed $1,000, the amount chargeable to each **Insured Person** individually shall be calculated by dividing $1,000 by the total individual retention amount. In no event, however, shall the amount chargeable to each **Insured Person** be less than $75.00, and

(b) the first $1,000,000 of the Limit of Liability afforded by this Policy shall only apply to 99.9% of **Loss** and the remaining .1% shall be uninsured and borne by such **Insured Persons.**

**Section VI. Costs of Defense and Settlements**

**A.** No **Insured** shall admit liability, offer to settle, or incur **Costs of Defense** in connection with any **Claim** without the **Insurer's** prior written consent. Any **Costs of Defense** incurred and/or settlements agreed to prior to the **Insurer's** consent thereto shall not be covered hereunder.

**B.** The **Insurer** has the right to investigate and settle any **Claim**, as it deems expedient. In the event the **Insurer** recommends a settlement and the **Insured** refuses to consent thereto, the **Insurer** shall be released from any obligation to further defend such **Claim**. Subject to the Limit of Liability, the **Insurer's** liability for such **Claim** is limited to the amount in excess of the Retention which the **Insurer** would have contributed to the settlement had the **Insured** consented to settlement, plus **Costs of Defense** covered by the Policy incurred prior to the date of such refusal to settle.

**Section VII. Notice of Claim**

**A.** The **Insureds** shall, as a condition precedent of their rights under this Policy, give the **Insurer** notice in writing of any **Claim** made, as soon as practicable. Provided, however, that failure by the **Insureds** to give notice will not invalidate any coverage that would otherwise have been available if the **Insureds** show that (1) it was not reasonably possible to do so and (2) notice was given as soon as reasonably possible. Notice given during any applicable Discovery Period, as described in Section II. above will be deemed notice during the **Policy Period**.

**B.** If during the **Policy Period** or **Discovery Period** the **Insured** first becomes aware of a specific **Wrongful Act**, and if the **Insured** gives written notice to the **Insurer** as soon as practicable of (1) the specific **Wrongful Act**; (2) the injury or damage which has or may result therefrom; and (3) the circumstances by which the **Insured** first became aware thereof; then any **Claim** arising out of such **Wrongful Act** which is subsequently made against the **Insured** and not otherwise excluded by the terms of the Policy shall be deemed to have been made at the time the **Insurer** received such written notice from the **Insured.**

**C.** In addition to furnishing the notice as provided in Section VII A. or B. the **Insured** shall, as soon as practicable, furnish the **Insurer** with copies of reports, investigations, pleadings and other papers in connection therewith.

**D.** Notice to the **Insurer** as provided in Section VII A. or B. shall be given to: (1) Great American Insurance Company, Executive Liability Division, P.O. Box 66943, Chicago, Illinois, 60666 or (2) any authorized agent of the **Insurer** within the State of New York.

WON-EX 043073

E. Written notice given by or on behalf of the **Insureds** or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the **Insurer** in this State shall be deemed notice to the **Insurer**.

## Section VIII. General Conditions

A. Payment of Judgment

If the **Insurer** does not pay any judgment covered by the terms of this Policy within thirty (30) days after the serving of notice of entry of judgment upon the **Insureds** or their attorney and upon the **Insurer**, then, except during a stay or limited stay of execution against the **Insured** on such judgment, an action may be maintained against the **Insurer** under the Policy for the amount of such judgment not exceeding this applicable Limit of Liability under the Policy. Nothing in this paragraph is intended, however, nor shall it be construed, to obligate the **Insurer** to make any payment it would not otherwise be obligated to make under the terms, conditions, limitations and endorsements of this Policy, or to pay any **Loss** in excess of the then available Limit of Liability under this Policy.

B. Bankruptcy/Insolvency

The insolvency or bankruptcy of the **Insureds**, or the insolvency of their estates, shall not release the **Insurer** from the payment of damages for injury sustained or **Loss** or **Costs of Defense** occasioned during the life of and within the coverage of this Policy.

C. **Claim** Information

Upon written request by the **Organization** or such **Insured's** authorized agent or broker, the **Insurer** shall mail or deliver the following information for the time the Policy was in effect within twenty (20) days of such request:

(1) information on closed **Claims**, including the date and description of the **Claim**, and any payments;

(2) information on open **Claims**, including date and description of the **Claim**, and amounts of any payments; and

(3) information on notice of any **Wrongful Acts**, including date and description of such notice.

D. Conformity of Law

To the extent that any of the terms, conditions or limitations of this Policy, including any endorsement, may be inconsistent with applicable New York law or regulations, the provisions of New York law will prevail.

E. Cancellation

(1) During the first sixty (60) days this Policy is initially in effect, except for the reasons for cancellation set forth in paragraph (2) of this section, no cancellation shall become effective until twenty (20) days after written notice is mailed or delivered to the **Organization** at the mailing address shown in the Policy and to its authorized agent or broker.

(2) After this Policy has been in effect for sixty (60) days or on or after the effective date if such Policy is a renewal, no notice of cancellation shall become effective until sixty (60) days, or fifteen (15) days for non payment of premium, after written notice is mailed or delivered to the **Organization** and to its authorized agent or broker, and such cancellation is based on one or more of the following reasons:

(a) non payment of premium;

(b) conviction of a crime arising out of acts increasing the hazard insured against;

(c) discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a **Claim** thereunder;

(d) after issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period.**

(e) a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the insurer would jeopardize that insurers solvency or be hazardous to the interests of policyholders of the **Insurer**, its creditors or the public;

(f) a determination by the New York Superintendent that continuation of this Policy would violate, or would place the **Insurer** in violation of, any provision of the New York Insurance Code.

After this Policy has been in effect for sixty (60) days or on or after the effective date if the Policy is a renewal, no premium increase for the term of the Policy shall be made to become effective unless due to and commensurate with insured value added, subsequent to issuance or the last renewal date, pursuant to the Policy or at the **Insured's** request or, in lieu of cancellation, where such increase is based upon Section (2) (d) of Section E. Cancellation.

(3) This Policy may be cancelled by the **Organization** at any time by written notice to the **Insurer**. Upon cancellation, the **Insurer** shall retain the customary short rate portion of the premium

F. Nonrenewal

(1) If the **Insurer** elects not to renew this Policy, or conditions its renewal upon a change in the Limit of Liability, change in type of coverage, reduction of coverage, increased retention, the addition of any exclusion or an increase in premium in excess of ten percent (10%), then the **Insurer** shall mail or deliver written notice of the refusal to renew or the conditional renewal to the **Organization** at the mailing address shown on the Policy and to the **Organization's** authorized agent at least sixty (60) days but not more than one hundred and twenty (120) days in advance of the Policy's expiration date. The notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the **Insurer** does not provide notice of nonrenewal or conditional renewal as provided in the paragraph above, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Organization**, during this sixty (60) day period, has replaced the coverage or elects to cancel. The Limit of Liability of the expiring Policy will be increased in proportion to the Policy extension provided for in this provision.

(2) If the **Insurer** provides notice of nonrenewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another **Policy Period**, at the lower of the current rates or the prior period's rates, unless the **Organization**, during the additional **Policy Period**, has replaced the coverage or elects to cancel. The Limit of Liability of the expiring Policy will be increased in proportion to the Policy extension provided for in this provision.

(3) The **Insurer** will not send the **Organization** notice of nonrenewal or conditional renewal if the **Organization**, the **Insured Persons**, their authorized agent or another insurer of the **Insureds** mails or delivers notice that the Policy has been replaced or is no longer desired.

WON-EX 043074

**(4)** If the **Insureds** elect to accept the terms, conditions and rates of the conditional renewal notice, a new aggregate Limit of Liability shall become effective as of the inception date of renewal, subject to regulations promulgated by the New York Superintendent of Insurance.

**G.** Proposal Form

(1) Representations

It is agreed that the particulars and statements contained in Proposal Forms submitted to the **Insurer** (and any material submitted therewith) are the representations of the **Insured.** It is understood that this Policy is issued in reliance upon such representations, which are to be considered as incorporated in and constituting part of this Policy. It is further understood and agreed that any misrepresentations contained in the Proposal Form (or any material submitted therewith) which, if known by the Insurer, would have led the **Insurer** to refuse to enter into the contract, shall be deemed material and void this Policy as to the Organization, its Subsidiaries and those Insured Persons making such statement or having knowledge of its untruth.

(2) Severability

This Policy shall not be voided or rescinded and coverage shall not be excluded as a result of any untrue statement in the Proposal Form, except as to the **Organization**, its **Subsidiaries** and those **Insured Persons** making such statement or having knowledge of its untruth.

**H.** Action Against the **Insurer**

**(1)** No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insured's** obligation to pay shall have been determined by an adjudication against the **Insured** or by written agreement of the **Insured**, claimant and the **Insurer**.

**(2)** No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against any **Insured** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

**I.** Conversion to Run-Off Coverage

If prior to the end of the **Policy Period**, another organization acquires substantially all of the assets of the **Organization**, or the **Organization** merges into another organization, or the **Organization** ceases to qualify as a not-for-profit organization under the Internal Revenue Code (such events hereinafter referred to as **Transaction**), then:

**(1)** the **Organization** must give written notice of such **Transaction** to the **Insurer** within thirty (30) days after the effective date of such **Transaction**, and provide the **Insurer** with such information as the **Insurer** may deem necessary; and

**(2)** this Policy, including the **Discovery Period** if elected, shall apply, but only with respect to any **Wrongful Act** committed prior to the effective date of such **Transaction**.

**J.** Subrogation

In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured** and the **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured**.

**K.** Assignment

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**L.** Entire Agreement

By acceptance of this Policy, the **Insured** and the **Insurer** agree that this Policy (including the Proposal Forms submitted to the **Insurer** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

**M.** **Organization** Represents **Insured**

By acceptance of this Policy, the **Organization** shall be designated to act on behalf of the **Insureds** for all purposes including, but not limited to, giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**N.** Representative of the **Insurer**

**Great American Insurance Companies, Executive Liability Division, Post Office Box 66943, Chicago, Illinois 60666** shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence.

---

**In witness whereof** the **Insurer** has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the **Insurer**.

**GREAT AMERICAN INSURANCE COMPANIES**

*President*

*Secretary*

WON-EX 043075