# EXHIBIT 104

**From:** John McKenna jmckenna@arcxs.com;
**Sent:** Monday, October 31, 2016 3:53 PM
**To:** Algarin, Debra dalgarin@mma-ne.com; Adams, Marcia MAdams@mma-ne.com;
**CC:** Danielle Mascia dmascia@arcxs.com;
**Subject:** Wonderwork, Inc. G28173040 001
**Attachments:** 2016 Policy Wonderwork, Inc..pdf;

We are good on all subjectivities, Side A Policy now attached as well, and we will have the Side A Invoice to you shortly.

Sincerely,
John J. McKenna Jr.
ARC Excess & Surplus, LLC
113 South Service Road
Jericho, NY 11753
P: (516) 408-5708
F: (516) 408-5780
jmckenna@arcxs.com



1133 Avenue of the Americas
New York, NY 10036

212-827-3820    tel

danielle.cirillo@acegroup.com
www.chubb.com

**Danielle Cirillo**
Executive Underwriter

October 24, 2016

ARC EXCESS & SURPLUS LLC
113 SOUTH SERVICE ROAD
JERICHO, NY 11753

RE: **Insured:**        **Wonderwork, Inc.**
　　Coverage:        CODA Premier Directors and Officers Liability Excess DIC Policy
　　Policy No:        G28173040 001
　　**Company Paper:**  **Westchester Fire Insurance Company**
　　Policy Form:      Declarations PF-41159 (10/13); Policy PF-41158 (10/013)
　　Policy Period:    10/03/2016  to 10/03/2017

Dear John,

We are pleased to enclose the captioned policy.

As producer of record, you are responsible for collecting and filing all necessary surplus lines taxes, fees and documentation in accordance with state surplus lines laws and/or regulations, if applicable.

Also, as a reminder, all claim notices under this policy should be provided in writing to the following address:

Westchester Specialty Group
Attention: Financial Lines Claims Unit
PO Box 5119
Scranton, PA  18505-0549

We have reviewed the policy and trust you will find it to be in order. Should you have any questions or concerns, please advise us promptly.

Thank you for working with us on the placement of this risk. We appreciate your support and look forward to working with you in the future.

Regards,

Danielle Cirillo
Executive Underwriter
Westchester, A Chubb Company

*One of the Chubb Group of Insurance Companies*

WON-EX 043021



**Westchester Fire Insurance Company**

This Policy is issued by the stock insurance company listed above.

THIS POLICY IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS.

TERMS THAT APPEAR IN CAPITAL LETTERS HAVE SPECIAL MEANING. PLEASE REFER TO CLAUSE 2, DEFINITIONS.

| | |
|---|---|
| Policy No. DOX G28173040 001 | |
| Item I. | Company: Wonderwork, Inc.<br>Principal Address: 411 5TH AVE.<br>New York, NY 10016 |
| Item II. | POLICY PERIOD:<br>From 12:01 a.m. 10/03/2016   To 12:01 a.m. 10/03/2017<br>(Standard time at the address shown in Item I) |
| Item III. | A. Limit of Liability:                              $2,000,000<br>Aggregate Limit of Liability for all LOSS paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD.<br><br>B. FIRST REINSTATED LIMIT OF LIABILITY:    $ 0         (in the aggregate)<br><br>C. SECOND REINSTATED LIMIT OF LIABILITY: $ 0         (in the aggregate)<br><br>Maximum Limit of Liability under<br>III.A, III.B and III.C combined         $ 2,000,000<br><br>The limits of liability in Items III.A, III.B and III.C are separate and independent. Please refer to Clause 4 of this POLICY for the details on how the reinstatements operate. |

WON-EX 043022

| Item IV. | CODA Access Fund: | $ 25,000 |
| | Public Relations Fund: | $ 25,000 |
| | Enforcement Fund: | $ 25,000 |
| | The amount stated for the CODA Access Fund is in addition to the Limit of Liability and any applicable reinstatements set forth in Item III above and the maximum amount the INSURER shall pay for such CODA Access Fund. | |
| | The Public Relations Fund and Enforcement Fund are sublimits that are part of, and not in addition to, the Limit of Liability and any applicable reinstatements set forth in Item III above. | |
| Item V. | POLICY Premium: | $10,000 |
| | DISCOVERY PERIOD Premium: | 100% of POLICY Premium |
| Item VI. | Notice to COMPANY: | |
| | Any notice to the COMPANY or, except in accordance with Clause 16 (Authority) of this POLICY, to the INSUREDS, shall be given or made to the individual listed above, if any, or otherwise to the individual designated in the APPLICATION, if any, or otherwise to the signer of the APPLICATION, and shall be given or made in accordance with Clause 15 (Notice) of this POLICY. | |
| Item VII. | Notice to INSURER: | |
| | Any notice to be given or payment to be made to the INSURER under this POLICY shall be given or made in accordance with Clause 15 (Notice) of this POLICY to: | |

Item VII.

A.      Notice of CLAIM or WRONGFUL ACT:

Chubb
P.O. Box 5105
Scranton, PA 18505-0518
Fax: 877-746-4641
Toll Free: 1.800.421.2471
Email address for submitting Management Liability Claims,
ACEClaimsFirstNotice@chubb.com
Email address for all other correspondence,
ApolloProRiskACEIncoming@chubb.com

B.      All payments or other notices:

Chubb, Financial Lines
Attention: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York, NY 10036

ANY EMAIL NOTICE OF CLAIMS TO THE INSURER SHALL BE VALID ONLY IF SENT TO THE EMAIL ADDRESS LISTED ABOVE AND VERIFIED BY A RETURN RECEIPT FROM SUCH EMAIL ADDRESS.

INFORMATION SUBMITTED TO THE INSURER WHICH IS NOT PROPERLY ADDRESSED TO THE CLAIMS DEPARTMENT SHALL NOT CONSTITUTE A VALID NOTICE OF CLAIM.

WON-EX 043023

| Item VIII. | Schedule of Underlying Directors' and Officers' insurance: | | | | |
|---|---|---|---|---|---|
| | Carrier | Policy No. | Policy Period | Limits | Attachment |
| Primary Policy | Great American Insurance Company | EPP4919871 | 10/03/16-10/03/17 | $2,000,000 | Primary |
| Excess Policies | | | | | |

IN WITNESS WHEREOF, the INSURER has caused this POLICY to be countersigned by a duly authorized representative of the INSURER.

DATE: _____

JOHN J. LUPICA, President
Authorized Representative

WON-EX 043024

# CODA Premier® Directors and Officers Liability Excess DIC Policy

TABLE OF CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | Insuring Clause | 1 |
| 2. | Definitions | 2 |
| 3. | Conduct Exclusion | 7 |
| 4. | Limits Of Liability | 7 |
| 5. | Alternative Dispute Resolution | 8 |
| 6. | Assistance, Cooperation And Consent | 8 |
| 7. | Renewal | 9 |
| 8. | Cancellation | 9 |
| 9. | Changes And Assignments | 10 |
| 10. | Advancement Of DEFENSE COSTS | 10 |
| 11. | Currency | 10 |
| 12. | Headings | 10 |
| 13. | INSUREDS' Reporting Duties | 10 |
| 14. | Other Insurance | 11 |
| 15. | Notice | 12 |
| 16. | Authority | 12 |
| 17. | Non-Rescission | 12 |
| 18. | Spousal Liability | 12 |
| 19. | Subrogation | 12 |
| 20. | Acquisition, Creation Or Disposition Of A SUBSIDIARY | 13 |
| 21. | DISCOVERY PERIOD | 13 |
| 22. | Bankruptcy | 14 |
| 23. | Appeals | 14 |
| 24. | Territory | 14 |
| 25. | Severability | 14 |
| 26. | Liberalization | 15 |
| 27. | State Amendatory Inconsistency | 15 |

WON-EX 043025



# CODA Premier®
# Directors and Officers Liability
# Excess DIC Policy

Subject to all terms, definitions, conditions, exclusions and limitations of this POLICY, the COMPANY, the INSUREDS, and the INSURER agree as follows:

1. INSURING CLAUSE

    (a) The INSURER shall pay on behalf of the INSUREDS any and all NON-INDEMNIFIABLE LOSS that the INSUREDS become legally obligated to pay by reason of any CLAIM first made against the INSUREDS during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, for any WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the end of the POLICY PERIOD by the INSUREDS, but only if:

        1. the insurer(s) of the UNDERLYING INSURANCE:

            i. refuses to indemnify the INSUREDS as required under the terms of the UNDERLYING INSURANCE; or

            ii. fails to indemnify the INSUREDS within 60 days after the INSUREDS request such indemnification; or

            iii. is financially unable to indemnify the INSUREDS; or

            iv. rescinds, voids or cancels, or attempts to rescind, void or cancel, the UNDERLYING INSURANCE; or

            v. as a result of a liquidation or reorganization proceeding commenced by or against the COMPANY pursuant to the U.S. Bankruptcy Code, as amended, or any similar federal, state, foreign or common law ("Code"), fails or refuses to indemnify the INSUREDS because the proceeds of such UNDERLYING INSURANCE are subject to the automatic stay or similar payment prohibition under the Code; or

        2. according to the terms and conditions of the UNDERLYING INSURANCE, the insurer(s) of the UNDERLYING INSURANCE is not liable for such portion of the LOSS; or

        3. the limit(s) of liability or any applicable sublimit(s) of liability of the UNDERLYING INSURANCE has been exhausted by reason of:

            i. the insurer(s) of the UNDERLYING INSURANCE, the INSUREDS or any other party paying thereunder the full amount of such underlying limit(s) of liability or sublimit(s); or

            ii. a provision in the UNDERLYING INSURANCE which exhausts or reduces the limit of liability in the UNDERLYING INSURANCE by reason of any amount paid or payable under another policy issued by the insurer(s) of the UNDERLYING INSURANCE or a subsidiary, associate, affiliate or parent of the insurer(s) of the UNDERLYING INSURANCE.

    (b) In the event any UNDERLYING INSURANCE affords broader coverage for an INSURED than is afforded under this POLICY, then notwithstanding anything in this POLICY to the contrary, except:

        Clause 4 (Limits Of Liability), Clause 6 (Assistance, Cooperation And Consent), Clause 8 (Cancellation), Clause 15 (Notice), Clause 16 (Authority), Clause 27 (State Amendatory Inconsistency), and any endorsement to this POLICY,

    this POLICY is amended to follow and be subject to the terms and conditions of such UNDERLYING INSURANCE only in respect of and to the extent of such broader coverage for the INSURED; provided this POLICY shall not cover any claim against the COMPANY or any amounts indemnified, advanced or paid by the COMPANY.

WON-EX 043026

(c) In addition to the Limit of Liability and any applicable reinstatement(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, CODA Access Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS who are directors of the COMPANY to defend against efforts by other INSUREDS or third parties to seize or attach this POLICY, or otherwise enjoin the INSUREDS who are directors of the COMPANY from gaining access to the limits of liability provided by this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("CODA Access Fund").

(d) As part of and not in addition to the Limit of Liability and any applicable reinstatements(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Public Relations Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS in connection with using a public relations firm to mitigate the adverse effects to the reputation of an INSURED from (i) an EXTRADITION PROCEEDING against such INSURED, if such EXTRADITION PROCEEDING is covered under this POLICY, or (ii) any negative public statement regarding such INSURED by any ENFORCEMENT AUTHORITY relating to or arising out of a CLAIM covered under this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Public Relations Fund").

(e) As part of and not in addition to the Limit of Liability and any applicable reinstatements(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Enforcement Fund, for reasonable costs, charges, fees and expenses (including but not limited to a premium for a bond) incurred by INSUREDS:

1. to oppose any efforts by any ENFORCEMENT AUTHORITY to seize or otherwise enjoin the personal assets or real property of an INSURED in connection with a CLAIM covered under this POLICY, or to revoke, overturn or set aside a court order in or relating to a CLAIM covered under this POLICY which in any way impairs the use of such assets or property; or

2. to seek the release of an INSURED from any arrest, detainment or incarceration by an ENFORCEMENT AUTHORITY in or relating to a CLAIM covered under this POLICY,

if such costs, charges, fees and expenses relate to a WRONGFUL ACT by such INSURED and are not otherwise covered under this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Enforcement Fund").

2. DEFINITIONS

(a) "APPLICATION" shall mean:

1. All underwriting data submitted by the COMPANY or the INSUREDS to the INSURER during the 12 months preceding inception of this POLICY; and

2. all publicly available documents filed by the COMPANY with the U.S. Securities and Exchange Commission during the 12 months preceding inception of this POLICY.

All such applications and materials are deemed attached to and incorporated into this POLICY.

(b) "CLAIM" shall mean:

1. any written demand, or any civil, criminal, arbitration, judicial, administrative, or regulatory proceeding, for monetary damages or non-monetary or injunctive relief, or any investigation, including a Wells Notice, against any INSURED for a WRONGFUL ACT, including any appeal therefrom;

2. an EXTRADITION PROCEEDING;

3. the arrest, detainment or incarceration for more than 24 hours of any INSURED by an ENFORCEMENT AUTHORITY in connection with a WRONGFUL ACT, if reported to the INSURER at the option of the INSURED(S) pursuant to Clause 13(c) (INSUREDS' Reporting Duties);

WON-EX 043027

4. a written notice, as described in Clause 13(b) (INSUREDS' Reporting Duties), to the INSURER by the INSUREDS and/or the COMPANY describing circumstances that may reasonably be expected to give rise to a CLAIM, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(b) (INSUREDS' Reporting Duties);

5. a PRELIMINARY INVESTIGATION, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties); and

6. any written demand that an INSURED toll or waive a statute of limitations or other defense based on timeliness with respect to a potential or threatened claim against the INSURED for a WRONGFUL ACT, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties).

(c) "COMPANY" shall mean:

1. the company named in Item I of the Declarations;

2. any company that, prior to the inception of the POLICY PERIOD, merged into or consolidated with the company named in Item I of the Declarations and was not the surviving entity;

3. any SUBSIDIARY;

4. any SUBSIDIARY if covered in accordance with Clause 20(a) (Acquisition, Creation Or Disposition Of A SUBSIDIARY) below;

5. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more organizations described in 1 through 4 above; and

6. any organization described in 1 through 5 above as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

(d) "DEFENSE COSTS" shall mean that portion of LOSS consisting of reasonable costs, charges, fees (including but not limited to legal fees and experts' fees) and expenses incurred in the defense, investigation or appeal of a CLAIM, whether or not such CLAIM is ultimately settled or adjudicated, including but not limited to:

1. defending or appealing an EXTRADITION PROCEEDING;

2. the premium for appeal, attachment or similar bonds, including a bail bond if such is available for an EXTRADITION PROCEEDING in the country at issue, but the INSURER shall be under no obligation to provide a bond;

3. reasonable fees and expenses incurred by the INSUREDS to defend or investigate a CLAIM pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections;

4. reasonable fees and expenses incurred by the INSUREDS at the INSURER'S request to assist the INSURER in investigating the CLAIM; and

5. costs assessed against the INSUREDS.

In no event shall DEFENSE COSTS include wages, salaries, fees, benefits or office expenses of INSUREDS or employees of the COMPANY.

(e) "DISCOVERY PERIOD" shall mean the continuation of the reporting period of this POLICY for the time periods set forth in Clause 21(a)-(c) (Extended Discovery Period, Insolvency Discovery Period and FORMER INSURED Discovery Period) in respect of any CLAIMS first made against an INSURED during such extended reporting period after the end of the POLICY PERIOD, but only if such CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD.

(f) "DOMESTIC PARTNER" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the COMPANY.

WON-EX 043028

(g) "ENFORCEMENT AUTHORITY" shall mean any law enforcement or other governmental enforcement official or authority, or the enforcement unit of any self-regulatory organization.

(h) "EXTRADITION PROCEEDING" shall mean any formal process by which an INSURED located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer a WRONGFUL ACT.

(i) "FORMER INSURED" shall mean a director or officer of the company named in Item I of the Declarations who, prior to the expiration of the POLICY PERIOD, has ceased to hold any position as an INSURED.

(j) "INDEPENDENT DIRECTORS" shall mean one or more past, present or future directors or MANAGERS of the COMPANY who are not and have never been an officer or employee of any COMPANY.

(k) "INSUREDS" shall mean one or more of the following:

1. all natural persons who were, now are, or shall be:

   i. duly elected or appointed directors (including shadow and de facto directors), trustees, governors, officers, management committee members, MANAGERS, in-house general counsel, or comptrollers of the COMPANY;

   ii. serving as a representative of an entity that serves as a director of the COMPANY;

   iii. prospective directors of the COMPANY named as such in any listing particulars, prospectus or similar offering document;

   iv. defined as insureds, insured persons, outside entity directors or outside entity insured persons or the equivalent in the UNDERLYING INSURANCE;

   v. directors of investor relations, directors of human resources, risk managers or other managers serving in a functionally equivalent or comparable position with the COMPANY; or

   vi. with respect to any COMPANY chartered outside the United States, natural person(s) serving in a position with such COMPANY which is functionally equivalent or comparable to any position described in i through v above;

2. all other natural persons not described in 1 above who were, now are, or shall be full-time or part-time, seasonal or temporary employees of the COMPANY, provided coverage for such other persons shall apply only if and while:

   i. the COMPANY agrees to advance DEFENSE COSTS and indemnify such other persons with respect to the CLAIM to the same extent as the COMPANY agrees to advance DEFENSE COSTS for and indemnify the persons described in 1 above; or

   ii. the CLAIM is:

   (A) by securities holders of the COMPANY in their capacity as such, including without limitation any shareholder derivative or securities class action lawsuit; or

   (B) made and continuously maintained against a person described in 1 above;

3. all natural persons who were, now are, or shall be serving as directors, officers, trustees, governors, or the equivalent thereof, for any OUTSIDE ENTITY if:

   i. such activity is part of their duties regularly assigned by the COMPANY; or

   ii. such activity is at the specific direction or request of the COMPANY; or

   iii. such persons are a member of a class of persons so directed to serve by the COMPANY; and

4. the estates, heirs, legal representatives or assigns of deceased INSUREDS and the legal representatives or assigns of INSUREDS in the event of their incompetency, insolvency or bankruptcy.

(l) "INSURER" shall mean the insurance company indicated in the Declarations.

WON-EX 043029

(m) "LOSS" shall mean any and all amounts that the INSUREDS are legally obligated to pay by reason of a CLAIM made against the INSUREDS for any WRONGFUL ACT, and shall include but not be limited to:

1.  compensatory, exemplary, punitive and multiple damages, judgments, settlements, pre-judgment and post-judgment interest;

2.  DEFENSE COSTS;

3.  reasonable costs, charges, fees and expenses (including the premium or origination fee for a loan or bond) solely to facilitate the return of amounts incurred and required to be repaid by the chief executive officer or chief financial officer of the company named in Item I of the Declarations pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or any INSURED pursuant to Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections. Such amounts do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such persons pursuant to such Section 304(a) or Sections 210 or 954;

4.  reasonable costs, charges, fees and expenses incurred in connection with the CODA Access Fund, the Public Relations Fund and the Enforcement Fund as set forth in Clause 1(c) – (e) respectively; and

5.  U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS.

Provided, however, LOSS shall not include:

i.  taxes, other than:

(A) taxes imposed upon a COMPANY for which the INSUREDS are legally liable solely by reason of the COMPANY's insolvency, or

(B) taxes, including national insurance contributions, imposed upon an INSURED solely by reason of the INSURER's payment of LOSS incurred by such INSURED;

ii.  fines or penalties imposed by law, other than:

(A) punitive, exemplary, or multiple damages. The insurability of punitive, exemplary and multiple damages shall be governed by the law of the applicable jurisdiction that most favors coverage for such punitive, exemplary and multiple damages. If the INSUREDS present to the INSURER a written opinion from legal counsel that such punitive, exemplary or multiple damages are insurable under such applicable law, the INSURER shall not challenge that determination; and

(B) civil fines or penalties assessed against an INSURED for a violation of any federal, state, local or foreign law, if such violation is neither intentional nor willful, including without limitation any such violation of the Foreign Corrupt Practices Act at 15 U.S.C. § 78dd-2(g)(2)(B) or 15 U.S.C. § 78ff(c)(2)(B), any similar provisions of the United Kingdom Bribery Act 2010, and the United States Federal Food, Drug and Cosmetic Act.

Subparagraphs (i) and (ii) immediately above shall not apply to DEFENSE COSTS.

iii.  matters that may be deemed uninsurable under the law pursuant to which this POLICY shall be construed. The INSURER shall not assert that any LOSS incurred by an INSURED is uninsurable due to the INSURED's actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933 or state equivalents thereof, as amended.

(n) "MANAGERS" shall mean any one or more natural persons who were, now are or shall be:

1.  managers, members of the board of managers or functionally equivalent or comparable executives of a COMPANY that is a limited liability company; or

2.  general partners, managing partners or functionally equivalent or comparable executives of a COMPANY that is a partnership;

including without limitation any such natural persons serving in a management position in such limited

WON-EX 043030

liability company or partnership in accordance with such organization's operating agreement or partnership agreement.

(o) "NON-INDEMNIFIABLE LOSS" shall mean LOSS for which the COMPANY or, with respect to INSUREDS described in Clause 2(k)(3) above, the OUTSIDE ENTITY, refuses to indemnify or advance DEFENSE COSTS or other LOSS as required or permitted, or is financially unable to indemnify, or fails to indemnify within 60 days after the INSUREDS request such indemnification; and the INSUREDS comply with Clause 19 (Subrogation) below.

(p) "OUTSIDE ENTITY" shall mean any not-for-profit or for-profit organization.

(q) "POLICY" shall mean this insurance policy, including the APPLICATION, the Declarations, and any endorsements hereto issued by the INSURER.

(r) "POLICY PERIOD" shall mean the period of time stated in Item II of the Declarations. If this POLICY is cancelled in accordance with Clause 8(b) (Cancellation) below, the POLICY PERIOD shall end upon the effective date of such cancellation.

(s) "PRELIMINARY INVESTIGATION" shall mean a request or demand for an INSURED to appear at a meeting, deposition or interview, or produce documents, relating to the business of the COMPANY, whether or not a WRONGFUL ACT is alleged, where such request or demand is:

1. by any ENFORCEMENT AUTHORITY; or

2. by or on behalf of the COMPANY, the COMPANY'S board of directors (or similar management body), or any committee of the COMPANY'S board of directors (or similar management body) arising out of a request or demand set forth in 1 immediately above; or which is part of the COMPANY'S investigation and evaluation of a SHAREHOLDER DERIVATIVE DEMAND. For the purpose of this subparagraph 2, a SHAREHOLDER DERIVATIVE DEMAND means a written demand on the board of directors (or similar management body) by one or more shareholders of the COMPANY to assert a CLAIM on behalf of the COMPANY against one or more INSUREDS for a WRONGFUL ACT.

PRELIMINARY INVESTIGATION shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity conducted in the normal review or compliance process of the COMPANY by an ENFORCEMENT AUTHORITY.

(t) "SUBSIDIARY" shall mean any entity which the company named in Item I of the Declarations and/or one or more other SUBSIDIARIES, directly or indirectly, in any combination:

1. owns interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the board of directors if such entity is a corporation, the management committee members or members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity; or

2. has the right, pursuant to written contract or the by-laws, charter, operating agreement, partnership agreement or similar documents of a COMPANY, to elect, appoint or designate a majority of the board of directors if such entity is a corporation, the management committee members or the members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity,

on or before the inception date of the POLICY; provided, however, a partnership shall be a SUBSIDIARY only if such partnership is specifically included as a SUBSIDIARY by an endorsement to this POLICY and such partnership agrees to indemnify its INSUREDS to the fullest extent permitted by law.

(u) "UNDERLYING INSURANCE" shall mean the directors and officers liability insurance policies scheduled in Item VIII of the Declarations.

(v) "U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS" shall mean DEFENSE COSTS incurred by an INSURED that result solely from the investigation, adjustment, defense and/or appeal of a claim against a COMPANY for a violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar statute in any jurisdiction.

WON-EX 043031

(w) "WRONGFUL ACT" shall mean:

1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the INSUREDS while acting, individually or collectively, in their capacities as INSUREDS, or

2. any other matter claimed against them by reason of their serving in such capacities, provided this subparagraph 2 shall not apply with respect to any INSUREDS of a COMPANY that is a partnership.

All such errors, misstatements, misleading statements, acts, omissions, neglects or breaches of duty actually or allegedly caused, committed, or attempted by or claimed against one or more of the INSUREDS arising out of or relating to the same or series of related facts, circumstances, situations, transactions or events shall be deemed to be a single WRONGFUL ACT.

3. CONDUCT EXCLUSION

(a) The INSURER shall not be liable to make any payment for LOSS in connection with that portion of any CLAIM based upon or attributable to the INSUREDS having:

1. gained any personal financial profit or financial remuneration to which they were not legally entitled, or

2. committed any deliberate fraud or deliberate criminal act,

if a final and non-appealable adjudication in an underlying proceeding (which shall not include a proceeding brought by or against the INSURER) adverse to such INSUREDS establishes that such INSUREDS gained any such personal financial profit or financial remuneration, or committed such deliberate fraud or deliberate criminal act. However, this exclusion shall not apply to DEFENSE COSTS, INDEPENDENT DIRECTORS, any employment-related CLAIM or, with respect to subparagraph 1 immediately above, any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

(b) For purposes of this exclusion, "final and non-appealable adjudication" means when:

1. the last court, tribunal, executive, legislative or regulatory agency, body or entity with jurisdiction over the CLAIM denies any further appeal, recourse or other relief from any adverse finding, judgment or decree; or

2. the INSURED has waived or abandoned all rights of appeal from any adverse finding, judgment or decree with respect to the CLAIM; or

3. the time for filing, asserting or pleading any appeal from any adverse finding, judgment or decree has lapsed or is otherwise exhausted.

(c) Any fact pertaining to or any act, omission, knowledge, intent or WRONGFUL ACT of any INSURED or the COMPANY shall not be imputed to any other INSURED for the purpose of determining the application of this exclusion.

(d) For acts or omissions which are deemed to be a criminal violation in a jurisdiction outside of the United States and such acts or omissions would not be deemed to be a criminal violation if such acts or omissions took place in a jurisdiction inside of the United States, the imposition of a criminal sanction or fine in such jurisdiction outside the United States will not, by itself, be conclusive proof that a deliberate fraudulent or deliberate criminal act occurred for purposes of this exclusion.

4. LIMITS OF LIABILITY

The maximum aggregate liability of the INSURER under this POLICY for all LOSS arising out of each CLAIM and all CLAIMS first made during the POLICY PERIOD and, if elected, the DISCOVERY PERIOD shall be the Limit of Liability set forth in Item III of the Declarations, subject to the following:

(a) In the event the Limit of Liability of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated in the amount set forth in Item III of the Declarations, FIRST REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by INSUREDS as defined in Clause 2(k)(1), Definitions. Such FIRST REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or any other CLAIM based upon, arising out of or

WON-EX 043032

related in any way to such CLAIM, and such FIRST REINSTATED LIMIT OF LIABILITY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability.

(b) In the event the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated a second time in the amount set forth in Item III of the Declarations, SECOND REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by duly elected or appointed directors (including shadow and de facto directors) of the company named in Item I of the Declarations. Such SECOND REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY or any other CLAIM based upon, arising out of or related in any way to such CLAIMS, and such SECOND REINSTATED LIMIT OF LIABILITY of this POLICY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability.

(c) Upon exhaustion of the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, for the POLICY PERIOD by reason of payment of LOSS by the INSURER, the INSURER shall have no further obligations or liabilities under this POLICY with respect to such applicable limit (or sublimit) of liability for the POLICY PERIOD.

(d) With respect to exhaustion for purposes of the FIRST REINSTATED LIMIT OF LIABILITY and the SECOND REINSTATED LIMIT OF LIABILITY, the limits of liability under any UNDERLYING INSURANCE and any insurance policies excess of this POLICY shall be reduced or exhausted by payments by an insurer, an INSURED and/or a third party.

(e) DEFENSE COSTS shall be part of and not in addition to the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, as stated in Items III and IV of the Declarations, and payment by the INSURER of DEFENSE COSTS shall reduce such applicable limit of liability for the POLICY PERIOD.

(f) Multiple demands, suits or proceedings arising out of the same WRONGFUL ACT shall be deemed to be a single CLAIM, which shall be treated as a CLAIM first made during the policy period in which the first of such multiple demands, suits or proceedings is made against any INSURED or in which notice of circumstances relating thereto is first given in accordance with Clause 13(b) (INSUREDS' Reporting Duties) below, whichever occurs first.

5. ALTERNATIVE DISPUTE RESOLUTION

Only if requested by the INSUREDS, the INSURER shall submit any dispute, controversy or claim arising out of or relating to this POLICY or the breach, termination or invalidity thereof to non-binding mediation and/or to non-binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot agree on the arbitration rules and procedures, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules. The arbitration panel shall consist of one arbitrator selected by the INSUREDS, one arbitrator selected by the INSURER, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

In the event that the INSUREDS prevail in an arbitration proceeding, then the INSURER shall pay to such INSUREDS the attorneys' fees, expert fees and other necessary out of pocket costs and expenses reasonably incurred by the such INSUREDS in the arbitration proceeding and shall pay the fees and expenses of the arbitration panel, such payment to be in addition to and not part of any applicable Limit Of Liability under this POLICY. In the event the INSURER prevails in an arbitration proceeding, then such fees and expenses of the INSURER and the arbitration panel shall be paid as may be ordered by the arbitration panel within its sole discretion.

6. ASSISTANCE, COOPERATION AND CONSENT

The INSUREDS shall provide to the INSURER all information, assistance and cooperation which the INSURER may reasonably request, and the INSUREDS shall use diligence and prudence in the investigation,

WON-EX 043033

defense, negotiation of settlement and settlement of any CLAIM. In the event of a CLAIM, the INSUREDS shall do nothing that could prejudice the INSURER'S position or its potential or actual rights of recovery with respect to such CLAIM.

The INSURER has no duty to defend any CLAIM and shall not be called upon to assume charge of the investigation, settlement or defense of any CLAIM. However, the INSURER shall have the right, but not the duty, and shall be given the opportunity to fully and effectively associate with the INSUREDS, and shall be consulted in advance, regarding the control, investigation, defense, negotiation of settlement and settlement of any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY.

The INSUREDS shall not offer to settle or settle, assume any obligation, admit any liability or stipulate to any judgment with respect to any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY without the INSURER'S prior written consent, which shall not be unreasonably withheld or delayed. The INSURER shall not be liable for or as a result of any offer to settle, settlement, assumed obligation, admission of liability or stipulated judgment to which it has not given its prior written consent.

The INSURER is entitled to pay LOSS as it becomes due and payable by the INSUREDS, without considering the potential for other future LOSS.

The failure of any INSURED or the COMPANY to comply with his or her obligations under this Clause shall not impair the rights of any other INSURED under this POLICY.

The INSURER shall fulfill its obligations in accordance with the terms and conditions of this POLICY notwithstanding the issuance of any insurance by another member of the Chubb.

7. RENEWAL

Except in the event this POLICY is cancelled in whole or in part in accordance with Clause 8 (Cancellation) below, on the expiration date of this POLICY, upon delivery of the renewal application or submission and payment of the premium, this POLICY shall be renewed to a date one year beyond the expiration date of this POLICY, unless written notice is given by the INSURER to the COMPANY, or by the COMPANY to the INSURER, that such POLICY extension is not desired. Such written notice must be given at least 30 days prior to the expiration date of this POLICY.

The premium charged on renewal of this POLICY shall be determined by the underwriting guidelines and rating plan of the INSURER in force at such expiration date. If during the POLICY PERIOD the INSURER announces amendments to this standard policy form, which amendments are generally applicable to all similar policies issued by the INSURER, such amendments shall be applicable to any applicable renewal.

8. CANCELLATION

This POLICY shall not be subject to cancellation except as follows:

(a) In the event during the POLICY PERIOD:

1. the company named in Item I of the Declarations shall merge into or consolidate with another organization in which the company named in Item I of the Declarations is not the surviving entity, or

2. any person or entity or group of persons and/or entities acting in concert shall acquire securities or voting rights which results in ownership or voting control by such person or entity or group of persons or entities of more than 50% of the outstanding securities representing the present right to vote for election of directors or MANAGERS or functionally equivalent or comparable executives of the company named in Item I of the Declarations,

this POLICY shall remain in force until the later of:

i. the termination of the POLICY PERIOD, or

ii. any subsequent date to which the INSURER may agree by endorsement,

but only with respect to CLAIMS for WRONGFUL ACTS actually or allegedly taking place before the effective date of said merger, consolidation or acquisition. If the POLICY remains in force beyond the

WON-EX 043034

period of time stated in Item II of the Declarations by reason of this Clause 8(a), the Limit of Liability for such extension is part of and not in addition to the Limit of Liability applicable to the POLICY PERIOD. All premiums paid or due at the time of said merger, consolidation or acquisition shall be fully earned and in no respect refundable.

(b) This POLICY may be cancelled by the INSURER for nonpayment of premium by sending notice, in accordance with Clause 15 (Notice) below, to the company named in Item I of the Declarations stating when, not less than 10 days thereafter, the cancellation shall be effective. The effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. All premiums paid or due for this POLICY shall be fully earned at the time of said end of the POLICY PERIOD.

(c) If this POLICY is terminated by the company identified in Item I of the Declarations, the INSURER shall refund the premium computed at the customary short rate. If this POLICY is terminated by the INSURER, the INSURER shall refund the unearned premium computed pro rata. However, this POLICY may be cancelled by the company named in Item I of the Declarations because of a downgrade of the financial strength rating of the INSURER of this POLICY, as established by A.M. Best, below A-, within 30 days of such downgrade. In such event, the INSURER shall:

    1. refund the unearned premium computed pro rata, if the INSUREDS have not, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY; or

    2. refund the unearned premium computed at the customary short rate, if the INSUREDS have, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY.

9. CHANGES AND ASSIGNMENTS

The terms and conditions of this POLICY shall not be waived or changed, nor shall an assignment of interest under this POLICY be binding, except by an endorsement to this POLICY issued by the INSURER.

10. ADVANCEMENT OF DEFENSE COSTS

Except in those instances when the INSURER has denied liability for the CLAIM because of the application of one or more coverage issues, if the COMPANY fails, refuses or is financially or legally unable to advance DEFENSE COSTS, and if the insurer(s) of the UNDERLYING INSURANCE fails or refuses to advance such costs as described in Clause 1(a) (Insuring Clause) above, the INSURER shall, upon request and if proper documentation accompanies the request, advance on behalf of the INSUREDS, or any of them, such DEFENSE COSTS on a current basis, but no later than 60 days after the receipt by the INSURER of such properly documented DEFENSE COSTS invoices. In the event that the INSURER so advances DEFENSE COSTS and it is finally established that the INSURER has no liability hereunder for such DEFENSE COSTS, the INSUREDS on whose behalf such advances have been made and the COMPANY, to the fullest extent legally permitted, agree to repay to the INSURER, severally according to their respective interests, all such advanced DEFENSE COSTS.

11. CURRENCY

All premium, limits, retentions, and other amounts referenced in this POLICY are expressed, and all LOSS is payable, in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of LOSS under this POLICY is stated in a currency other than United States of America dollars, payment under this POLICY shall be made in United States of America dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of LOSS is due, respectively, or if not published on such date, the next date of publication of *The Wall Street Journal*.

12. HEADINGS

The descriptions in the headings and sub-headings of this POLICY are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

13. INSUREDS' REPORTING DUTIES

(a) The INSUREDS and/or the COMPANY shall give written notice to the INSURER of any of the following as

WON-EX 043035

soon as practicable after the in-house general counsel or risk manager of the company named in Item I of the Declarations first learns thereof:

1. any CLAIM described in Clause 2(b)(1) or (2), Definitions, above;

2. any event described in Clause 8(a) (Cancellation) above;

3. any material change in the terms or conditions of the UNDERLYING INSURANCE occurring during the POLICY PERIOD or the DISCOVERY PERIOD (if elected pursuant to Clause 21 below); or

4. any nonrenewal or cancellation of the UNDERLYING INSURANCE occurring during the POLICY PERIOD or the DISCOVERY PERIOD (if elected pursuant to Clause 21 below).

If the INSUREDS and/or the COMPANY fail to provide notice of any such CLAIM to the INSURER as specified in 1 immediately above, the INSURER shall not be entitled to deny coverage for the CLAIM based solely upon late notice unless the INSURER can demonstrate its interests were materially prejudiced by reason of such late notice.

If the INSURED provides notice of events specified in subparts 3 and 4 above, any additional premium reasonably required by the INSURER as a result of such events shall be paid as soon as practicable after notice of such additional premium by the INSURER.

(b) If, during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, but in no event later than 60 days after the termination of the POLICY PERIOD, or if elected the DISCOVERY PERIOD, the INSUREDS first become aware of any circumstances that may reasonably be expected to give rise to a CLAIM described in Clause 2(b)(1) or (2) above being made against the INSUREDS, as set forth in Clause 2(b)(4), and if the INSUREDS or the COMPANY give written notice to the INSURER of such circumstances and the reasons for anticipating such a CLAIM, with particulars as to dates and persons involved, the nature of the WRONGFUL ACT, the alleged injury, the names of the claimants, and the manner in which the INSUREDS or the COMPANY first became aware of the circumstances; then such notice of circumstances shall be a CLAIM under this POLICY and any LOSS incurred by an INSURED solely in connection with his or her response to such circumstances shall be covered, subject to the other terms, conditions and limitations of this POLICY. Any other CLAIM which arises out of such circumstances shall be deemed to have been first made at the time such written notice of circumstances was received by the INSURER. However, if the INSUREDS elect not to report such circumstances, then any subsequent CLAIM which arises out of the circumstances shall be subject to the reporting requirements set forth in 13(a) above, and coverage for such subsequent CLAIM will not be denied because of the INSUREDS' failure to report the circumstances pursuant to this Clause 13(b).

(c) Any arrest, detainment or incarceration, PRELIMINARY INVESTIGATION, or demand described in subparts 3, 5 or 6 of Clause 2(b), Definitions, shall be a CLAIM under this POLICY only if during the POLICY PERIOD, the COMPANY or the INSUREDS, in their sole option, report such circumstance, PRELIMINARY INVESTIGATION, or demand to the INSURER as a CLAIM.

(d) No coverage is afforded for any LOSS incurred in connection with any circumstance, PRELIMINARY INVESTIGATION, or demand described in Clause 2(b)(3), (4), (5) or (6), Definitions, prior to the time written notice as described in (b) or (c) above is given to the INSURER.

(e) The time when a CLAIM shall be made for purposes of determining the application of Clause 1 (Insuring Clause) above shall be (i) with respect to a CLAIM described in Clause 2(b)(1), (2), (3) and (6) above, the date on which the CLAIM is first made against the INSURED, and (ii) with respect to a CLAIM described in Clause 2(b)(4) and (5) above, the date on which notice of such CLAIM is given to the INSURER.

## 14. OTHER INSURANCE

If any LOSS covered under this POLICY is covered under any other valid and collectible insurance, then this POLICY shall cover the LOSS, subject to its terms and conditions, only to the extent that the amount of the LOSS is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is UNDERLYING INSURANCE or is written only as specific excess insurance over the Limit of Liability provided by this POLICY. Such insurance as is provided by this POLICY shall apply as primary to any personal "umbrella" excess liability insurance purchased by an INSURED.

WON-EX 043036

If LOSS covered under this POLICY is also covered under but not paid by such other valid and collectible insurance, this POLICY will respond on behalf of the INSUREDS without regard to such other insurance, subject to the terms, conditions and limitations of this POLICY and without prejudice to the INSURER's right to recover LOSS paid under this POLICY from the issuers of such other insurance.

15. NOTICE

All notices under any provision of this POLICY shall be in writing and given by prepaid express courier or email properly addressed to the appropriate party at the respective addresses as shown in Items VI and VII of the Declarations, and notice so given shall be deemed to be received and effective upon actual receipt thereof by the party or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal. Notice to the INSURER of any CLAIM shall be directed to the attention of the INSURER's claims department. All other notices to the INSURER shall be directed to the attention of the INSURER's underwriting department.

16. AUTHORITY

By acceptance of this POLICY, the company named in Item I of the Declarations and the INSUREDS agree that the INSURER may treat the company named in Item I of the Declarations as the authorized representative of INSUREDS with respect to all matters under this POLICY, including, but not limited to, the giving and receiving of notice of CLAIM or cancellation or desire not to extend the POLICY or election of the DISCOVERY PERIOD, the payment of premiums, the receiving of LOSS payments and any return premiums that may become due under this POLICY, the requesting, receiving, and acceptance of any endorsement to this POLICY, and the submission of a dispute to arbitration.

The INSUREDS agree that said company shall represent them but, for purposes of the investigation, defense, settlement, or appeal of any CLAIM, all similarly situated INSUREDS who are named as defendants in the CLAIM may, upon notice to the INSURER, replace said company with another agent to represent them with respect to the CLAIM, including giving and receiving of notice of CLAIM and other correspondence, the receiving of LOSS payments, and the submission of a dispute to arbitration.

17. NON-RESCISSION

Coverage under this POLICY shall not be rescinded or voided by the INSURER in whole or in part for any reason.

18. SPOUSAL LIABILITY

If a CLAIM against an INSURED includes a claim against the INSURED's lawful spouse or DOMESTIC PARTNER solely by reason of (a) such spouse's or DOMESTIC PARTNER's status as a spouse or DOMESTIC PARTNER of the INSURED; or (b) such spouse's or DOMESTIC PARTNER's ownership interest in property which the claimant seeks as recovery for alleged WRONGFUL ACTS of the INSURED, all loss which such spouse or DOMESTIC PARTNER becomes legally obligated to pay by reason of such CLAIM shall be treated for purposes of this POLICY as LOSS which the INSURED becomes legally obligated to pay by reason of the CLAIM made against the INSURED. Such spousal or DOMESTIC PARTNER loss shall be covered under this POLICY only if and to the extent such loss would be covered if incurred by the INSURED.

The coverage extension afforded by this Clause 18 does not apply to the extent such CLAIM alleges a wrongful act or omission by the INSURED's spouse or DOMESTIC PARTNER.

19. SUBROGATION

(a) Inasmuch as this POLICY is excess insurance, the INSUREDS' right of recovery against any person or organization cannot be exclusively subrogated to the INSURER. It therefore is understood and agreed that in case of any payment hereunder, the INSURER will act in concert with all other interests concerned (including the INSUREDS'), in the exercise of such rights of recovery. The apportioning of any amounts that may be so recovered shall follow the principle that any interest (including the INSUREDS') that has paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by it; the INSURER is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the INSUREDS') of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned (including the INSUREDS'), in the proportion of their

WON-EX 043037

respective recoveries as finally settled. If there should be no recovery in proceedings instituted solely on the initiative of the INSURER, the expenses thereof shall be borne by the INSURER.

(b) The INSUREDS shall execute all papers reasonably required and shall take all reasonable actions that may be necessary to secure the rights of the INSURER, including the execution of such documents necessary to enable the INSURER effectively to bring suit in the name of the INSUREDS, including but not limited to an action against the COMPANY or the insurer(s) of the UNDERLYING INSURANCE for nonpayment of indemnity due and owing to the INSUREDS by the COMPANY or the insurer(s), respectively.

(c) In no event shall the INSURER exercise its right of subrogation against an INSURED unless and to the extent Clause 3, Conduct Exclusion, applies to such INSURED.

(d) Payment by the INSURER under Insuring Clause 1(a)(1)(v) above ("Bankruptcy Payment") is not intended to be a payment in satisfaction of the obligations under the UNDERLYING INSURANCE, but, rather, an advance of funds subject to repayment as provided in this Clause 19. Subject to reinstatement pursuant to subparagraph (e) immediately below, all Bankruptcy Payments shall reduce and/or exhaust the limits of liability of this POLICY to the same extent as any payment of LOSS by the INSURER to the INSUREDS hereunder. In the event of any Bankruptcy Payment, INSUREDS hereby assign to the INSURER all their rights under the UNDERLYING INSURANCE to obtain payment of the amounts of the Bankruptcy Payment.

(e) Any recoveries by the INSURER pursuant to this Clause 19 of LOSS paid under this POLICY shall be the sole property of the INSURER, but an amount equal to the amount of such recoveries, minus all costs incurred by the INSURER to obtain such recoveries, shall reinstate, in such amount and as of the date each recovery is received by the INSURER, the limits of liability of this POLICY that were eroded or exhausted by such payment.

20. ACQUISITION, CREATION OR DISPOSITION OF A SUBSIDIARY

(a) If, during the POLICY PERIOD, the COMPANY acquires interests in or rights with respect to another organization, or creates another organization, which as a result of such acquisition or creation becomes a SUBSIDIARY, or acquires any organization by merger into or consolidation with the COMPANY, and if, as a result of such acquisition or creation, such organization's INSUREDS are included as insureds under the primary policy of UNDERLYING INSURANCE, then such organization's insureds shall also be included as INSUREDS under this POLICY but only with respect to CLAIMS for WRONGFUL ACTS taking place after such acquisition or creation, unless the INSURER agrees to provide coverage by endorsement for WRONGFUL ACTS taking place prior to such acquisition or creation.

(b) Coverage shall not apply to directors, MANAGERS, officers and employees of any subsidiary, including a SUBSIDIARY as defined in Clause 2 (Definitions) above, for CLAIMS for WRONGFUL ACTS actually or allegedly taking place subsequent to the date that the SUBSIDIARY ceases to be a SUBSIDIARY.

21. DISCOVERY PERIOD

(a) If the INSURER or the company identified in Item I of the Declarations elects not to renew this POLICY, then the company identified in Item I of the Declarations and the INSUREDS shall have the right, upon payment of an additional premium set forth in Item V of the Declarations, to a continuation of the reporting period of this POLICY in respect of any CLAIMS first made against an INSURED during the one-year period after the end of the POLICY PERIOD, but only if the CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD ("Extended Discovery Period"). Such CLAIMS shall be deemed to have been made during the POLICY PERIOD, provided that notification of each such CLAIM is in accordance with Clause 13 (INSURED's Reporting Duties) above. The right to elect the Extended Discovery Period shall terminate, however, unless written notice of such election together with the additional premium is received by the INSURER within 60 days after the end of the POLICY PERIOD. Any premium paid for the Extended Discovery Period is not refundable.

(b) If nonrenewal of this POLICY follows the commencement during the POLICY PERIOD of a liquidation or reorganization proceeding described in Clause 22 below, then any DISCOVERY PERIOD elected by the COMPANY or the INSUREDS shall be six years from the date of such nonrenewal ("Insolvency Discovery Period") for CLAIMS first made during such Insolvency Discovery Period based on WRONGFUL ACTS

WON-EX 043038

alleged to have occurred prior to such nonrenewal. No additional premium shall be required for the Insolvency Discovery Period.

(c) In the event the COMPANY does not renew this POLICY, FORMER INSUREDS shall receive, instead of the DISCOVERY PERIOD set forth in paragraph (a) or (b) above, a discovery period of unlimited duration from the effective date of such nonrenewal ("FORMER INSURED Discovery Period") for CLAIMS first made against the FORMER INSURED during such FORMER INSURED Discovery Period based on WRONGFUL ACTS alleged to have occurred prior to such nonrenewal. No additional premium shall be required for the FORMER INSURED Discovery Period. The FORMER INSURED Discovery Period shall not apply to any INSURED who ceased to serve as an INSURED on account of an event described in Clause 8(a)1 or Clause 8(a)2.

(d) The offer by the INSURER of renewal at a premium different from the premiums for the expiring POLICY PERIOD shall not constitute an election by the INSURER not to renew this POLICY.

(e) The Limit of Liability provided during any DISCOVERY PERIOD is part of and not in addition to the Limit of Liability provided during the POLICY PERIOD, and there shall be no separate or additional Limit of Liability for the DISCOVERY PERIOD.

## 22. BANKRUPTCY

In the event a liquidation or reorganization proceeding is commenced by or against the COMPANY or any INSURED, pursuant to the United States Bankruptcy Code, as amended, or any similar state, local, or foreign law, such proceeding shall not relieve the INSURER of its obligations nor deprive the INSURER of its rights or defenses under this POLICY. In the event of such liquidation or reorganization proceeding the COMPANY and the INSUREDS hereby: (i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts by the INSURER, the COMPANY or any INSURED to obtain relief from any such stay or payment prohibition.

In the event the COMPANY becomes a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country and the aggregate LOSS due under this POLICY exceeds the remaining available Limit of Liability, the INSURER shall:

(a) first pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the COMPANY becoming a debtor-in–possession or such equivalent status, then

(b) with respect to whatever remaining amount of the Limit of Liability is available after payment under (a) above, pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted after the COMPANY became a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country.

## 23. APPEALS

In the event the INSUREDS or the insurer(s) of the UNDERLYING INSURANCE elect not to appeal a judgment, the INSURER may elect to make such appeal at its own expense, and shall be liable for any increased award, taxable costs and disbursements and any additional interest incidental to such appeal, to the extent such payments are not covered by other valid and collectible insurance.

## 24. TERRITORY

This POLICY shall apply to any WRONGFUL ACT taking place, LOSS incurred or CLAIM made against any INSURED anywhere in the world.

## 25. SEVERABILITY

The APPLICATION for coverage shall be construed as a separate APPLICATION for coverage by each INSURED. With respect to the declarations and statements contained in such APPLICATION for coverage, no statement in the APPLICATION or knowledge possessed by any one INSURED shall be imputed to any other INSURED for the purpose of determining the availability of coverage with respect to CLAIMS made against any other INSURED. Any fact pertaining to, or any act, omission, knowledge, or intent of any INSURED or COMPANY shall not be imputed to any other INSURED with respect to coverage under this POLICY.

WON-EX 043039

26. LIBERALIZATION

Where legally permissible, for LOSS from that portion of any CLAIM maintained in a FOREIGN JURISDICTION or to which the law of a FOREIGN JURISDICTION is applied, the INSURER shall apply to such CLAIM those terms and conditions (and related provisions) of the FOREIGN POLICY in such FOREIGN JURISDICTION that are more favorable to such INSURED than the terms and conditions of this POLICY. However, this paragraph shall not apply to any provision of this POLICY or the FOREIGN POLICY addressing limits of liability (primary, excess or sublimits), other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made coverage provisions, arbitration and any endorsement to this POLICY that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

For the purpose of this Clause:

FOREIGN JURISDICTION means any jurisdiction, other than the United States or any of its territories or possessions.

FOREIGN POLICY means the INSURER'S or any other member company of the Chubb Group of Companies' ("Chubb") standard directors' and officers' liability policy (including all mandatory endorsements, if any) approved by Chubb to be sold within a FOREIGN JURISDICTION that provides difference-in-conditions coverage for non-indemnifiable loss of a natural person insured substantially similar to the coverage afforded under this POLICY. If more than one such policy exists, then "FOREIGN POLICY" means the standard policy most recently registered in the local language of the FOREIGN JURISDICTION, or if no such policy has been registered, then the policy most recently registered in that FOREIGN JURISDICTION.

27. STATE AMENDATORY INCONSISTENCY

If there is an inconsistency between a state amendatory endorsement attached to this POLICY and any other term or condition of this POLICY, the INSURER shall apply, where permitted by law, those terms and conditions either of such state amendatory endorsement or the POLICY form which are more favorable to the INSURED's coverage.

WON-EX 043040

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Wonderwork, Inc.** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DON** | **G28173040 001** | **10/03/2016 to 10/03/2017** | **10/03/2016** |
| Issued By (Name of Insurance Company) | | | |
| **Westchester Fire Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President
Authorized Representative

Chubb. Insured.™

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Wonderwork, Inc.** | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DON** | **G28173040 001** | **10/03/2016 to 10/03/2017** | **10/03/2016** |

| Issued By (Name of Insurance Company) |
|---|
| **Westchester Fire Insurance Company** |

### NEW YORK AMENDATORY
### (REGULATION 121 – CLAIMS MADE POLICY REQUIREMENTS)

It is agreed:

1. Except as otherwise provided in Subsection IX., Notice, and the first paragraph of Section VII., Limit of Liability, a **Prior Covered Claim** shall be deemed "first made" for purposes of this **Policy** when the **Insurer** first receives written notice of such **Claim** from an **Insured** or a third party. Accordingly, subject to the other terms and conditions of this **Policy** (including this Endorsement), this **Policy** shall apply to **Prior Covered Claims** for which notice is first received by the **Insurer** during the **Policy Period** or any applicable **Extended Reporting Period** even if such **Claim** was filed against, sent or delivered to, or received by, the **Insureds** prior to the **Policy Period**.

2. For purposes of this Endorsement, a **Prior Covered Claim** means any **Claim**:

   a. filed against, sent or delivered to, or received by, the **Insured** prior to the **Policy Period**;

   b. notice of which was first received by the **Insurer** during the **Policy Period** or any applicable **Extended Reporting Period**; and

   c. which would have been covered in whole or in part under a valid and collectible Directors & Officers Liability Policy or similar insurance policy issued to the **Named Insured** by the **Insurer** and in effect when such **Claim** was first filped against, sent or delivered to, or received by, the **Insureds** ("**Prior Policy**").

3. Coverage afforded under this **Policy** for any **Prior Covered Claim** shall be no broader than the coverage which would have been afforded under the **Prior Policy** if written notice of such **Claim** had been received by the **Insurer** or its affiliate during the **Policy Period** of the **Prior Policy**.

   The foregoing sentence may result in, but not be limited to: (a) reducing the Limit of Liability available under this **Policy** for such **Claim** to the remaining available Limit of Liability applicable to the **Prior Policy**, (b) increasing the applicable Retention amount to that Retention amount applicable to the **Prior Policy**, or (c) reducing or eliminating coverage pursuant to exclusions or other restrictions in the **Prior Policy** but not in this **Policy**.

4. No coverage shall be afforded under this **Policy** for a **Prior Covered Claim** if (i) there was no **Prior Policy** in effect at the time such **Claim** was first filed against, sent or delivered to, or received by the **Insured**, or (ii) the **Prior Policy** affords coverage for such **Claim** or would afford coverage for such **Claim** but for the exhaustion of the Limit of Liability under the **Prior Policy**.

5. The **Insurer's** maximum liability under this **Policy** for any **Prior Covered Claim** shall be part of and not in addition to the Limit of Liability set forth in Item 3 of the **Declarations** for this **Policy** otherwise applicable to such **Claim**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
Authorized Representative

WON-EX 043042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured **Wonderwork, Inc.** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol **DON** | Policy Number **G28173040 001** | Policy Period **10/03/2016 to 10/03/2017** | Effective Date of Endorsement **10/03/2016** |
| Issued By (Name of Insurance Company) **Westchester Fire Insurance Company** | | | |

### NEW YORK AMENDATORY
### (REGULATION 121 – Extended Reporting Period)

It is agreed that Section VI., **Extended Reporting Period**, is deleted in its entirety and replaced with the following:

**A.** If the **Insurer** or the **Named Insured** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), the **Named Insured** shall have the right to an **Extended Reporting Period** as follows:

   **1. Automatic Extended Reporting Period**

   Coverage as provided under this **Policy** shall automatically continue for a period of sixty (60) days following the effective date of such termination or nonrenewal, but only with respect to **Claims** for **Wrongful Acts** committed before the effective date of such termination or nonrenewal.

   **2. Optional Extended Reporting Period**

   The **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for the **Extended Reporting Period** of one (1) year following the effective date of such termination or nonrenewal, but only with respect to **Claims** first made during the **Optional Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. Within 30 days after termination of coverage, the **Insurer** will advise the Insured in writing of the **Automatic Extended Reporting Period** coverage and the availability of and premium for the **Optional Extended Reporting Period** (hereinafter **"Insurer's Notice"**). This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer** within sixty (60) days following the effective date of termination or nonrenewal or 30 days from the date of mailing or delivery of the **Insurer's Notice**. If the **Policy** is terminated for nonpayment of premium or fraud, the **Insurer** is not obligated to send an **Insurer's Notice** unless requested by the **Insured**. If the **Policy** has been in effect for less than one (1) year then, the **Insurer** is not required to provide either an **Automatic Extended Reporting Period** or an **Optional Extended Reporting Period** if the **Policy** is terminated for nonpayment of premium or fraud.

   **3.** The first sixty (60) days of the **Optional Extended Reporting Period**, if it becomes effective, shall run concurrently with the **Automatic Extended Reporting Period.**

**B.** The **Insurer** shall give the **Named Insured** notice of the premium due for the **Optional Extended Reporting Period** as soon as practicable following the date the **Named Insured** -gives such notice of such election and such premium shall be paid by the **Named Insured** to the **Insurer** within ten (10) days following the date of such notice by the **Insurer** of the premium due. The **Extended Reporting Period** is not cancelable and the entire premium for the **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

WON-EX 043043

C.  If the **Named Insured** is has been placed in liquidation or bankruptcy or permanently ceases operations and the entity or its designated trustee does not purchase **Optional Extended Reporting Period** coverage, then any **Insured Person** shall have the right, upon payment of the additional premium as described in Section B. above, to elect the **Optional Extended Reporting Period** just for such **Insured Person** by giving written notice of such election, to the **Insurer** within 120 days following the effective date of the **Policy**'s termination or non-renewal. Any coverage afforded under this **Policy** for such **Insured Person** during the **Optional Extended Reporting Period** shall be no broader than the coverage which would be applicable to such **Insured Person** under this **Policy** if all **Insureds** elected the **Optional Extended Reporting Period**.

D.  The Limit of Liability applicable to **Automatic Extended Reporting Period** and, if elected, the **Optional Extended Reporting Period**, shall be part of and not in addition to the Limit of Liability show in Item 3 of the Declarations for the immediately preceding **Policy Period**. The purchase of the **Optional Extended Reporting Period** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period, Automatic Extended Reporting Period** and the **Optional Extended Reporting Period,** combined.

All other terms and conditions remain unchanged.

_____
AUTHORIZED SIGNATURE

WON-EX 043044

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Wonderwork, Inc.** | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DON** | **G28173040 001** | **10/03/2016  to  10/03/2017** | **10/03/2016** |

| Issued By (Name of Insurance Company) |
|---|
| **Westchester Fire Insurance Company** |

### TERMINATION AND NONRENEWAL – NEW YORK

It is agreed that Section XVI., TERMINATION OF THE POLICY, is deleted in its entirety and replaced with the following:

XVI.    TERMINATION OF THE POLICY

A.   The first **Named Insured** shown in the Declarations may cancel this **Policy** by mailing or delivering to the **Insurer** written notice stating when the termination will be effective.

B.   Termination of **Policies** in Effect for 60 Days or Less

If this **Policy** has been in effect for 60 days or less, the **Insurer** may cancel this **Policy** by mailing or delivering a written notice to the first **Named Insured** at the address stated in the **Policy** and the Insured's broker or authorized agent, at least:

(1)   20 days before the effective date termination if the **Insurer** cancels for any reason other then for the reason set forth in paragraph 2 below:

(2)   15 days before the effective date of termination if the **Insurer** cancels for any of the following reasons:

(a)   Nonpayment of premium;

(b)   Conviction of a crime by any **Insured** arising out of acts increasing the hazard insured against;

(c)   Discovery of fraud or material misrepresentation in the obtaining of the **Policy** or in the presentation of a claim;

(d)   After issuance of the **Policy** or after the last renewal date, discovery of an act or omission, or a violation of any **Policy** condition, that substantially and materially increases the hazard insured against and which occurred subsequent to inception of the current **Policy Period**;

(e)   Material physical change in the property insured, occurring after issuance or last annual renewal anniversary dated of the **Policy**, which results in the property becoming uninsurable in accordance with the Insurer's objective, uniformly applied underwriting standards in effect at the time the **Policy** was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary dated of the **Policy**, which causes the risk of **Loss** to be substantially and materially increased beyond that contemplated at the time the **Policy** was issued or last renewed;

(f)   Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

WON-EX 043045

(g) A determination by the Superintendent that the continuation of the **Policy** would violate, or would place us in violation of, any provision of the Insurance Code; or

(h) Where the **Insurer** has reason to believe, in good faith and with sufficient cause, that there is a probable risk or danger that the insured will destroy, or permit to be destroyed, the insured property for the purposes of collecting the insurance proceeds, provided. A copy of this termination notice will be sent by the **Insurer** to the Insurance Department. If the **Insurer** cancels the **Policy** for this reason, the **Named Insured** may make a written request to the Insurance Department, within ten (10) days of receipt of this notice, to review the **Insurer's** decision.

C. Termination of **Policies** in Effect for More Than 60 Days

If this **Policy** has been in effect for more than 60 days, or is a renewal of a **Policy** the **Insurer** issued, the **Insurer** may cancel this **Policy,** only for the reasons listed in paragraph B (2) above, provided the **Insurer** provides written notice to the first **Named Insured** at least 15 days before the effective date of termination.

D. Prior to termination, the **Insurer** will notify the first **Named Insured**, by mailing or delivering to the first **Named Insured**, at the address shown in the **Policy**, and to the **Named Insured's** authorized broker or agent, written notice stating the reason for termination and when the termination will be effective.

E. If this **Policy** is terminated by the **Named Insured**, the **Insurer** shall refund the unearned premium computed at the short rate. If this **Policy** is terminated by the **Insurer**, the **Insurer** shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

F. If one of the reasons for termination in paragraph B (2) above exists, the **Insurer** may cancel this entire **Policy**, even if the reason for termination pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of the **Policy**.

G. **NONRENEWAL AND CONDITIONAL RENEWAL**

   1. **Nonrenewal**

      If the **Insurer** decides not to renew this **Policy**, the **Insurer** will send a notice as provided by paragraph G. 3 below.

   2. **Conditional Renewal**

      The **Insurer** will send a notice as set forth in paragraph G. 3 below, if the **Insurer** conditions its renewal of this Policy on one of the following terms or conditions:

      a. A change in the **Limits of Liability**,
      b. A change in the type of coverage,
      c. A reduction of coverage,
      d. An increased **Retention**,
      e. An addition of an Exclusion, or
      f. An increase in premiums in excess of 10%, except if the increase in premium is due to and commensurate with insured value added or increase exposure units; or as a result of experience rating, loss rating, retrospective rating or audit.

   3. **Notices of Nonrenewal and Conditional Renewal**

      a. If the **Insurer** decides not to renew this **Policy** or to conditionally renew this **Policy** as provided in paragraphs G.1 and G.2. above, the **Insurer** will mail or deliver written notice to the first **Named Insured** shown in the Declarations and the **Named Insureds'** broker or authorized agent at least sixty (60) days, but not more than one hundred and twenty (120) days before:

WON-EX 043046

i.   The expiration date of the **Policy**; or
ii.  The anniversary date if the **Policy** is a continuous policy.

b.  Notice will be mailed or delivered to the first **Named Insured's** mailing address listed in the **Policy**. If notice is mailed, proof of mailing will be sufficient proof of notice.

c.  The Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d.  If the **Insurer** violates any of the provisions of paragraphs G. 3 a. b. or c. above by sending an incomplete or late conditional renewal notice or a late nonrenewal notice:

i.   Coverage will remain in effect at the same terms and conditions of this **Policy** at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first **Named Insured**, during the 60 day period, has replaced the coverage or elects to cancel.

ii.  On or after the expiration date of this **Policy**, coverage will remain in effect at the same terms and conditions of this **Policy** for another **Policy Period**, at the lower of the current rates or the prior period's rates, unless the first **Named Insured**, during this additional policy period, has replaced the coverage or elects to cancel.

e.  The **Insurer** will not send the **Named Insured** notice of nonrenewal or conditional renewal if the **Named Insured**, its authorized agent or broker or another insurer of the **Named Insured** mails or delivers notice that the **Policy** has been replaced or is no longer desired.

4.  The aggregate limits of this **Policy** as shown in Item 3 of the Declarations will be increased in proportion to any policy extension provided in accordance with paragraph G.3.d.

All other terms and conditions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

WON-EX 043047

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured **Wonderwork, Inc.** | | Endorsement Number |
|---|---|---|
| Policy Symbol **DON** | Policy Number **G28173040 001** | Policy Period **10/03/2016 to 10/03/2017** | Effective Date of Endorsement **10/03/2016** |
| Issued By (Name of Insurance Company) **Westchester Fire Insurance Company** | | |

### New York Amendatory
### (Insurance Law Sec. 3420 Requirements)

It is agreed that the **Policy** is amended as follows:

1. Section IX, Notice, is amended by adding the following:

   - Notice given by or on behalf of the **Insured**, or written notice by or on behalf of an injured person or any other claimant, to any licensed agent of the **Insurer** in the State of New York, with particulars sufficient to identify the **Insured**, shall be deemed notice to the **Insurer**.

   - Failure to given any notice required to be given by this section within the time prescribed herein shall not invalidate any **Claim** made by the **Insured**, an injured person or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

   - Except as provided in the immediate paragraph above, failure to give any notice required to be given by this section within the time prescribed herein shall not invalidate any **Claim** made by the **Insured**, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the **Insurer**. However, notice of such **Claim** must be first made during the **Policy Period**, any renewal thereof, or any **Extended Reporting Period**.

2. Section XIX, Action Against the **Insurer** and Bankruptcy, is amended by adding the following:

   Notwithstanding anything in this section to the contrary, in the event a judgment against an **Insured** or such **Insured's** personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the **Policy** shall remain unsatisfied at the expiration of 30 days from the serving of notice of entry of judgment upon the attorney for the **Insured**, or upon the **Insured**, and upon the **Insurer**, then an action may, except during a stay or limited stay of execution against the **Insured** on such judgment, be maintained against the **Insurer** under the terms of the **Policy** for the amount of such judgment not exceeding the amount of the applicable limit of coverage under the **Policy**.

   With respect to an otherwise covered **Claim** arising out of death or personal injury of any natural person, if the **Insurer** disclaims liability or denies coverage based upon the failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the **Insurer**, in which the sole question is the **Insurer's** disclaimer or denial based on the failure to provide timely notice, unless within 60 days following such disclaimer or denial, the **Insured** or the **Insurer**: (A) initiates an action to declare the rights of the parties under this **Policy**; and (B) names the injured person or other claimant as a party to the action.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

WON-EX 043048

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>**Wonderwork, Inc.** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**DON** | Policy Number<br>**G28173040 001** | Policy Period<br>**10/03/2016 to 10/03/2017** | Effective Date of Endorsement<br>**10/03/2016** |
| Issued By (Name of Insurance Company)<br>**Westchester Fire Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or similar laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

Authorized Agent

WON-EX 043049

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>Wonderwork, Inc. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>DON | Policy Number<br>G28173040 001 | Policy Period<br>10/03/2016 **to** 10/03/2017 | Effective Date of Endorsement<br>10/03/2016 |
| Issued By (Name of Insurance Company)<br>Westchester Fire Insurance Company | | | |

## Cap On Losses From Certified Acts Of Terrorism

A. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WON-EX 043050



# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

WON-EX 043051

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0, and does not include any charges for the portion of losses covered by the United States government under the Act.

**I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE, AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.**

WON-EX 043052



# Important Notice - New York
## (To be attached to the Application and the Policy)

**PLEASE READ THE FOLLOWING CAREFULLY.**

1)  This **Policy** is written on a claims made and reported basis.  Except as otherwise provided within the **Policy**, this **Policy** covers only **Claims** first made against the **Insureds** and reported to the **Insurer** during the **Policy Period** or any **Extended Reported Period**.  Coverage under this **Policy** ceases upon the termination of this **Policy** and the **Automatic Extended Reporting Period**, unless the **Insured** purchases **Optional Extended Reporting Period** coverage.

2)  **Duty to Defend and Defense Costs.**

    The **Insurer** does not assume any duty to defend.  The Limits of Liability available to pay insured **Loss** shall be reduced by amounts incurred for **Defense Costs**.  Further note that amounts incurred for **Defense Costs** and **Loss** shall also be applied against the retention amount.  If the Limit of Liability is exhausted by payment of **Loss**, including amounts incurred for **Defense Costs**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished and the **Insured** shall be liable for any further **Defense Costs** and **Loss**

3)  **Extended Reporting Period –**  If the **Insurer** or the **Named Insured** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), the **Named Insured** shall have the right to an **Optional Extended Reporting Period,** as provided by endorsement to the Policy.

    The **Insured** shall be provided with an **Automatic Extended Reporting Period** of sixty (60) days following the effective date of such termination or nonrenewal.

    The **Named Insured** will also be given the right, upon payment of the additional premium, to purchase a continuation of the coverage granted by this **Policy** for the **Optional Extended Reporting Period** of one (1) year following the effective date of such termination or nonrenewal.

    A notice will be sent to the **Named Insured** within thirty (30) days of the date coverage is terminated.

    The premium charge for the **Optional Extended Reporting Period** will be quoted when a written request from the first **Named Insured** is received.

    Please be advised that gaps in your insurance protection my result upon the termination of this **Policy** or any **Extended Reporting Period**.

WON-EX 043053

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Wonderwork, Inc.** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **DON** | **G28173040 001** | **10/03/2016 to 10/03/2017** | **10/03/2016** |
| Issued By (Name of Insurance Company) | | | |
| **Westchester Fire Insurance Company** | | | |

## NEW YORK AMENDATORY
## (REGULATION 110 – COINSURANCE/RETENTION)

It is agreed that, notwithstanding anything to the contrary in the **Policy,** solely with respect to covered **Loss** under **Insuring Agreement A** for which the **Company** is not permitted or required to indemnify the **Insured Persons**:

1.  The **Insurer** shall be liable to pay (i) 0.5% of the first $1,000,000 of such covered **Loss**, and (ii) 100% of all other covered **Loss** under **Insuring Agreement A** excess of the applicable Retention, up to the applicable Limit of Liability set forth in Item 3 of the Declarations for this **Policy**.

2.  The applicable Retention amount for all such **Loss** incurred by each **Insured Person** arising from each **Claim** shall be the **Individual Retention Amount** set forth below, but the maximum **Retention Amount** for all such **Loss** incurred by all **Insured Persons** arising from each **Claim** shall not exceed the **Aggregate Retention Amount** set forth below:

    **Individual Retention Amount**: $ 5,000

    **Aggregate Retention Amount**: $ 50,000

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
Authorized Representative

WON-EX 043054



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887a (03/16)

WON-EX 043055

# EXHIBIT 105

NEW YORK FREE TRADE ZONE
NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

2100



A Member of the Tokio Marine Group

One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004
610.617.7900 • Fax 610.617.7940 • PHLY.com

10/17/2016

WonderWork, Inc.
Surgery for the Poor, Inc.
411 5th Ave Rm 702
New York, NY 10016-2237


**Re: PHUB559537**


Dear Valued Customer:


Thank you very much for choosing Philadelphia Indemnity Insurance Company for your insurance needs. Our first class customer service, national presence and A++ (Superior) A. M. Best financial strength rating have made us the selection by over 550,000 policyholders nationwide. I realize you have a choice in insurance companies and truly appreciate your business.

I wish you much success this year and look forward to building a mutually beneficial business partnership which will prosper for years to come. Welcome to PHLY and please visit PHLY.com to learn more about our Company!


Sincerely,


Robert D. O'Leary Jr.
President & CEO
Philadelphia Insurance Companies


RDO/sm

Philadelphia Consolidated Holding Corp. • Philadelphia Indemnity Insurance Company • Tokio Marine Specialty Insurance Co • Maguire Insurance Agency, Inc.

WON-EX 043154

# Enroll Today!

- Receive Invoices Electronically
- Pay Your Bills Online
- Set Up Recurring Payments
- Available 24/7
- Safe and Secure
- NO FEE!
- Environmentally Friendly

## Pay Your Bill Online

To pay your bills online you will need a User ID and Password to access our website. If you don't have a User ID please create one by visiting **https://www.PHLY.com/myphly/newuser.aspx**.

If you have a User ID, please login and click on *"Online Bill Pay"* and enter the necessary information to pay your bills.

Philadelphia Insurance Companies accepts electronic checks (a debit from your checking or savings account) as a method of payment. Please allow 2 to 3 business days for your payment to post to your account. This service is offered free of charge. Please note that credit card payments cannot be made online.

## Recurring Payment

Customers that receive their bill directly (and not from their agent) can sign up for recurring payment via automatic withdrawals from a checking, savings, or money market account for direct bill policies.

If you do not already have an account on **PHLY.com** you will need to create one by visiting **https://www.PHLY.com/myphly/newuser.aspx**. Once logged in please refer to *"Links for You"* and click the *"Recurring Payment Instructions"* to learn how to enroll. You can also click the *"Online Bill Pay"* tab on the left hand side to enroll in Recurring Payment.

### How to Create an Account on PHLY.com

1. Go to **https://www.PHLY.com/myphly/newuser.aspx**
2. Select the applicable BUTTON (insured or producer).
3. Complete the information on the page:
   - You will CREATE your own USER NAME and PASSWORD.
   - The password must be at least 7 characters and contain one number, one lower case letter, and one capital letter.
4. Click CONTINUE when done.
5. On the next page, complete the PASSWORD RESET QUESTION. If you ever forget your password, we will ask you this security question and you will enter the answer you have selected.
6. Once you have received the page that states: "CONTINUE TO MY PHLY," then you have successfully created the account.



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

Focus on the Things that Matter, We'll Handle the Risk!®



PHILADELPHIA
INSURANCE COMPANIES
A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# Philadelphia Indemnity Insurance Company

# Commercial
# Lines
# Policy

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

WON-EX 043156

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

President & CEO                                    Secretary

WON-EX 043157

# PHILADELPHIA INSURANCE COMPANIES PRIVACY POLICY NOTICE

### Philadelphia Indemnity Insurance Company

The Philadelphia Insurance Companies value your privacy and we are committed to protecting personal information that we collect during the course of our business relationship with you. The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information that we collect and how it may be used or disclosed. This does not reflect a change in the way we do business or handle your information.

**Information We Collect:**

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

**Information We Disclose:**

We will only disclose the information described above to our affiliates and non-affiliated third parties, as permitted by law, and when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker (producer);
- Parties who perform a business, professional or insurance functions for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, attorneys, other insurers or medical care providers who need information to investigate, defend or settle a claim involving you;
- Regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having a legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes. We do not disclose the personal information of persons who have ceased to be our customers.

**Protection of Information:**

The Philadelphia Insurance Companies maintain physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information.  We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

**Use of Cookies and Opt-Out:**

We may place electronic "cookies" in the browser files of your computer when you access our website. Cookies are text files placed on your computer to enable our systems to recognize your browser and so that we may tailor information on our website to your interests.  We or our third party service providers or business partners may place cookies on your computer's hard drive to enable us to match personal information that we maintain about you so that we are able to pre-populate on-line forms with your information.  We also use cookies to help us analyze traffic on our website to better understand your interests.   Although we do not use your non-public personal information for this purpose, you may opt-out of cookies and advertising features through one of the available options including but not limited to Ads Settings in Google.com or the Network Advertising Initiative (NAI) Consumer Opt-out.  Opting out does not mean you will no longer receive online advertising.  It does mean that companies from which you opted out will no longer customize ads based on your interests and web usage patterns using cookies.

**How to Contact Us:**  Philadelphia Insurance Companies, One Bala Plaza, Suite 100, Bala Cynwyd, PA  19004
Attention:   Chief Privacy Officer

WON-EX 043158

# Philadelphia Indemnity Insurance Company

## Form Schedule – Policy

**Policy Number:** PHUB559537

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| NYFTZ Notice | 0713 | New York Free Trade Zone Notice |
| Recurring Payment Flyer | 1212 | Recurring Payment Flyer |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| PP2015 | 0615 | Privacy Policy Notice |

WON-EX 043159

# COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY COMPARISON ADVISORY NOTICE TO POLICYHOLDERS – NEW YORK

This is a summary of the major changes to your policy form and endorsements. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The major areas within the policy and endorsements that broaden or reduce coverage, and other changes, are highlighted below. This notice does not reference every editorial change made in your policy. We have followed the policy sequence of provisions in setting out this material.

Not every form referenced herein may apply to your policy. You should review your Declarations to see what form(s) apply to your policy.

**PI-CXL-001 (09/12) – COMMERICAL UMBRELLA LIABILITY INSURANCE POLICY**

- **Coverage Form name changed to Commercial Umbrella Liability Policy from Commercial Excess Liability Policy**

**SECTION I – COVERAGES**
- **1. Insuring Agreement Additions:**
  - Knowledge of claim provisions
  - Personal and Advertising Injury clarification
- **2. Defense of Claims**
  - **a.** Clarified what is included in damages
  - **d. (2)** Added $2,000 cost of bail bonds
  - **d. (4)** Increased loss of earnings to $250 a day from $100 a day
  - **d. (5)** Clarified attorneys' fees and expenses are not considered part of court costs
  - **e.** We will not contribute to expenses of insured or underlying insurer if we join in their defense of a claim
  - **f.** Added conditions that apply if we defend an insured and an indemnitee
- **3. Exclusions**
  - Titles added for easier identification
  - **a. Expected or Intended Injury**: Added property damage exception
  - **b. Workers' Compensation and Similar Laws**: Amended to address only Workers' Compensation, disability, unemployment and other similar laws
  - **c. Employment Related Practices**: Updated and consolidated language; added reference to personal and advertising injury so that separate exclusion would not be necessary (former Exclusion **o.**)
  - **d. War**: Updated language, clarified by referring specifically to bodily injury, property damage and personal and advertising injury; added provision related to warlike action by a military force
  - **f. Contractual Liability**: Removed reference to personal and advertising injury, as these types of exclusions have been grouped together in Exclusion **i.**; added exceptions to the exclusion related to liability in the absence of a contract or agreement and liability assumed in an insured contract
  - **g. Aircraft or Watercraft**: Clarifies that the exclusion also applies to claims involving alleged negligent supervision and other employment activities; broadened the length of watercraft exception from 26' to 50'; added an exception to follow the underlying insurance; added an exception for non-owned aircraft that is chartered by, loaned to or hired by the insured with a paid crew

WON-EX 043160

- **h. Auto Coverages**: Clarified the auto liability exclusion by separating it from Exclusion **b.** and by stating that autos must be covered in the underlying insurance in order for there to be umbrella coverage; and incorporates any auto exclusions that   apply to the underlying auto.
- **i. Other Personal and Advertising Injury Exclusions**:
  - ✓  Updated language so that "personal and advertising injury" is not separated into "personal injury" or "advertising injury"
  - ✓   **(1) Knowing Violation of Rights of Another** – Added
  - ✓   **(8) Infringement of Copyright, Patent, Trademark or Trade Secret** – Added
  - ✓   **(9) Insureds in Media and Internet Type Businesses** – Added
  - ✓  **(10) Electronic Chatrooms or Bulletin Boards** – Added
  - ✓  **(11) Unauthorized Used of Another's Name or Product** – Added
- **j. Damage to Property:**
  - ✓  Language updated
  - ✓  **(1)** Added reference to costs or expenses incurred for repair, replacement, enhancement, restoration or maintenance of property
  - ✓  **(2)** Added premises sold, given away or abandoned; exception for premises that are your work and were never occupied, rented or held for rental
  - ✓  **(3)** Added property loaned to you
  - ✓  **(4)** Added personal property qualifier
  - ✓  **(5)** Added real property that is being worked on by contractors or subcontractors
  - ✓  **(6)** Added the part of any property that must be corrected due to your improper work; exception for property damage included in the "products-completed operations hazard"
  - ✓  Exception added for **(1)** and **(3)** through **(6)** for liability assumed under sidetrack agreements
- **o. Pollution:**
  - ✓  Language updated and tracks with typical primary policies
  - ✓  Exceptions for hostile fire and building heating/cooling/dehumidifying equipment
- **r. Nuclear Energy Liability**
  - ✓  Language updated
  - ✓  Definition of nuclear material added
- **s. Liquor Liability** – Added
- **t. Trade or Economic Sanctions** – Added
- **u. Electronic Data** – Added
- **v. Distribution of Material in Violation of Statutes** – Added

**SECTION II – WHO IS AN INSURED**
- **1.c.** – Added limited liability companies; and added reference to limited liability companies throughout the entire section where applicable
- **1.e.** – Added trusts and trustees
- **2.** – Added wholly owned subsidiaries
- **3.c. (1)** – Added volunteer workers or employees, except with respect to aircraft; the auto hazard; and bodily injury or personal and advertising injury:  to you, your partners/ members, other volunteer workers unless covered by underlying insurance, spouses, children, parents of siblings of the co-employee or volunteer worker; or arising out of the failure to provide professional health care services. Other exceptions involve property damage:  to property owned, occupied or used by; rented to, in the care custody or control of, or over which physical control is exercised by you, any employees, volunteers, any partners/members
- **3.c.(2)** – Qualified real estate manager to exclude those individuals who are your employees or volunteer workers.

**SECTION III – LIMITS OF INSURANCE**
- **1.(b)** – Qualified that the limit of insurance and the rules of the section apply regardless of, among the other factors previously listed, the number of vehicles involved

PI-CXL NOTICE NY 1 (09/15)

WON-EX 043161

- **2., 3., 4.** and **5.** – Changed terminology to be consistent with other areas of the form (i.e. used the phrase "sum of all "ultimate net loss"")
- **3.(a)** and **(b)** – Substituted the word "damages" for "liability"
- **6.** – Added provision to address non-concurrent policies and how limits of insurance are impacted

## SECTION IV – CONDITIONS
- **1. Appeals** – Updated language, specifying the types of costs that are considered costs related to our appeal (taxable costs, disbursements, and additional interest incidental to such appeal). Language was added related to judgments where we offer to pay our full share of a judgment and you or your underlying insurers elect to appeal it.
- **2. Bankruptcy** – Added **b.**, related to the bankruptcy of the underlying insurer.
- **5. Duties in the Event of Occurrence or Offense, Claim or Suit** – Changed notice requirement from prompt notice, to notice as soon as practicable. Provided clarification regarding when an occurrence is considered known to an insured (**a. (1)** through (**5**)).
- **8. Legal Action Against Us** – Added definition for an agreed settlement
- **9. Maintenance of / Changes to Underlying Insurance** – Title changed to include "Changes to." Updated language. Added clarifying statement that the umbrella does not expand in its scope of coverage if there is a mid-term expansion in the scope of coverage provided by the underlying policy.
- **10. Other Insurance** – Updated language; qualified that in addition to being excess over, this insurance will not contribute with other insurance, unless that other insurance is specifically written as excess; and added rights and duties to defend provisions when this insurance is excess and language that explains what we consider to be our share of the ultimate net loss.
- **11. Transfer of Rights of Recovery Against Others to Us** – Changed the title from **Our Right to Recover from Others**. Clarified by adding the statement that rights are transferred to us if we have paid a loss and an insured has rights to recover from another entity for that loss; added minor clarification as to how expenses would be apportioned; updated other language
- **12. Premium** – Changed "you" to the "first Named Insured" with respect to who has primary responsibility to pay the policy premium.
- **13. Premium Audit** – Removed provision that provides for a return premium in the event that the sum of advance and audit premium is greater than earned premium.
- **14. Representations or Fraud** – Added "or Fraud" to the title. Added the provision pertaining to the voiding of the policy in the event of fraud by you
- **17. When Loss is Payable** – Added
- **18. Transfer of Defense** – Added

## SECTION V – DEFINITIONS
- Combined the definition of "advertising injury" and "personal injury" into one definition for "personal and advertising injury"; and in conjunction with this change, the definition of "offense" was removed as it is no longer needed
- **1. Advertisement** – Definition added
- **4. Auto** – Updated the language to include land vehicles designed to travel on public roads including their attached machinery/equipment; and land vehicles that are subject to compulsory/financial responsibility/other motor vehicle insurance laws. Added clarifier that autos do not include mobile equipment
- **7. Coverage Territory** – Added provisions for personal and advertising injury that take place through the internet or similar electronic means
- **8. Employee** – Definition added
- **9. Executive Officer** – Definition added
- **11. Insured Contract** – Definition added
- **12. Leased Worker** – Definition added
- **13**. **Loading or Unloading** – Definition added

PI-CXL NOTICE NY 1 (09/15)

WON-EX 043162

- **14. Mobile Equipment** – Definition added
- **17. Pollutants** – Definition added
- **18. Products-completed operations hazard** – Added provision for completed work when there is work at more than one job site; and added an exception to the definition so as not to include bodily injury or property damage arising out of transporting property unless under certain conditions; or arising out of tools, uninstalled equipment or abandoned/unused materials
- **19. Property Damage** – Added clarifying language related to electronic data
- **20. Retained Limit** – Added a provision that states that the retained limit does not apply in situations where the loss would have been covered by the underlying policy but those limits have been exhausted.
- **21. Suit** – Updated language
- **22. Temporary Worker** – Definition added
- **23. Ultimate Net Loss** – Updated language
- **26. Volunteer worker** – Definition added

---

**PI-CXL-003 (09/12) – PROFESSIONAL LIABILITY FOLLOW FORM ENDORSEMENT**

**PI-CXL-003M (09/12) – BOAT DEALERS FOLLOW FORM ENDORSEMENT**

**PI-CXL-005 (09/12) – EMPLOYERS' LIABILITY (STOP GAP) FOLLOW FORM ENDORSEMENT**

**PI-CXL-009 (09/12) – AUTOMOBILE LIABILITY FOLLOW FORM ENDORSEMENT**

**PI-CXL-018 (09/12) – WATERCRAFT FOLLOW FORM ENDORSEMENT**

**PI-CXL-050 (09/12) – FOREIGN LIABILITY COVERAGE FOLLOW FORM ENDORSEMENT**

**PI-CXL-053 (09/12) – PESTICIDE APPLICATOR POLLUTION LIABILITY COVERAGE SUBLIMIT**

---

- These endorsements have all been revised so that they include the same general language related to following the same provisions, exclusions and limitations that are contained in the applicable underlying insurance. If there is a difference or conflict between the underlying insurance and the Umbrella, the Umbrella's provisions will apply.
- Where applicable, we have clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.

---

**PI-CXL-004 (09/12) – DIRECTORS AND OFFICERS LIABILITY EXCLUSION**
- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Amended the definition of "wrongful act" so that it aligns with the definition contained in the underlying insurance.

---

**PI-CXL-007 (09/12) – ABUSE OR MOLESTATION EXCLUSION**
- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- **2.** – Added any person for whom the insured has assumed liability
- **3.** – Added statement that any applicable coverage provided in the underlying insurance is excluded in the Umbrella.

---

**PI-CXL-011 (09/12) – DESIGNATED PREMISES OR PROJECT LIMITATION OF COVERAGE ENDORSEMENT**
- Updated language so that the separate terms "personal injury" and "advertising injury" are one term – "personal and advertising injury."

WON-EX 043163

**PI-CXL-012 (09/12) – DESIGNATED PROFESSIONAL SERVICES EXCLUSION**

- Amended to delete reference to specific activities, including instead a schedule that may be tailored to the individual risk situation, rather than having pre-determined language entered.

---

**PI-CXL-013 (09/12) – CONTRACTORS LIMITATION ENDORSEMENT**

- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Deleted Exclusion **j. Damage to Property** as an applicable exclusion under the Umbrella.
- Amended Exclusion **l. Damage to Your Work** to eliminate the exception to this exclusion that gives coverage back for damaged work or the work out of which the damage arises that was performed on your behalf by a subcontractor.

---

**PI-CXL-014 (09/12) – SUBSIDENCE EXCLUSION**

- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Removed redundant statement that underscores that the Umbrella will not respond to subsidence-related claims that reduce or exhaust the underlying aggregate limit.

---

**PI-CXL-015 (09/12) – ATHLETIC PARTICIPANTS AND OFFICIALS EXCLUSION**

- Changed the title from "Exclusion of Injuries to Athletic Participants and Officials."
- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Changed format to allow for the selection of either all persons practicing for, participating in, or officiating at an athletic contest or exhibition; or persons that can be specified in the endorsement.

---

**PI-CXL-016 (09/12) – WATERCRAFT EXCLUSION RE-STATED**

- Added the word "re-stated" to the title
- Amended this exclusion to tie directly back to the specific exclusion in the Umbrella that is modified. Exclusion **g. Aircraft or Watercraft** is then re-stated so that any exceptions to the watercraft portion of the exclusion are deleted.

---

**PI-CXL-019 (09/12) – TANNING DEVICES EXCLUSION**

- Changed the title from "Tanning Unit Exclusion"
- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Expanded on the term "tanning unit" to be more descriptive (including but not limited to sun lamps, tanning booths or tanning beds).

---

**PI-CXL-020 (09/12) – MARTIAL ARTS EXCLUSION**
**PI-CXL-051 (09/12) – KEY AND LOCK REPLACEMENT EXCLUSION**

- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.

---

**PI-CXL-021 (09/12) – TRAMPOLINE EXCLUSION**

- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Added clarification to what is meant by the term "trampoline" as it relates to this exclusion.

PI-CXL NOTICE NY 1 (09/15)

WON-EX 043164

**PI-CXL-022 NY (01/14) – NON-PROFIT DIRECTORS & OFFICERS LIABILITY CLAIMS MADE COVERAGE ENDORSEMENT – NEW YORK**

- Changed title from "Claims Made Endorsement Non-Profit Directors & Officers Liability Policy"
- Added prominent statement to identify the endorsement as providing coverage on a claims-made basis
- **3.** – Added prior and pending litigation exclusion
- **4.** – Added more specific language related to the conditions of the extended reporting period coverage

**PI-CXL-023 (09/12) – HEALTH & FITNESS PROFESSIONAL LIABILITY EXCLUSION**

- Changed title from "Health & Fitness Professional Liability Endorsement"
- Amended reference to "bodily injury," "property damage," "personal injury" or "advertising injury" to any liability, damage, loss, cost or expense.
- Qualified that the types of services excluded are professional services.

**PI-CXL-025 (09/12) – ABSOLUTE LIQUOR LIABILITY EXCLUSION**

- Changed title from "Liquor Liability Exclusion"
- Removed the exception to the exclusion that addresses insureds in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**PI-CXL-026 NY (06/14) – SPECIFIED UNDERLYING CLAIMS MADE COVERAGE ENDORSEMENT – NEW YORK**

- Changed title from "Claims Made Endorsement - New York Underlying Insurance Following Endorsement"
- Added prominent statement to identify the endorsement as providing coverage on a claims-made basis
- **3.** – Added prior and pending litigation exclusion
- **4.** – Added more specific language related to the conditions of the extended reporting period coverage

**PI-CXL-029 (09/12) – EMPLOYEE BENEFITS LIABILITY FOLLOW FORM ENDORSEMENT**

- Changed title from "Employees Benefits Liability Limitation and ERISA Exclusion"
- Revised to include language related to following the same provisions, exclusions and limitations that are contained in the applicable underlying insurance. If there is a difference or conflict between the underlying insurance and the Umbrella, the Umbrella's provisions will apply.
- Clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.
- Removed language (explanation of Employee Benefits Liability coverage, Definitions and Exclusions) that is more adequately addressed in the applicable underlying insurance.

**PI-CXL-034 (09/12) – DESIGNATED PRODUCTS EXCLUSION**

**PI-CXL-035 (09/12) – DESIGNATED WORK EXCLUSION**

**PI-CXL-038 (09/12) – DESIGNATED OPERATIONS EXCLUSION**

- Amended reference to "bodily injury," "property damage," "personal injury" or "advertising injury" to any liability, damage, loss, cost or expense.

**PI-CXL-037 (09/12) – SEXUAL OR PHYSICAL ABUSE OR MOLESTATION VICAROIUS LIABILITY FOLLOW FORM ENDORSEMENT**

- Changed title from "Follow Form Endorsement – Sexual Abuse or Molestation"
- Revised to include language related to following the same provisions, exclusions and limitations that are contained in the applicable underlying insurance. If there is a difference or conflict between the underlying insurance and the Umbrella, the Umbrella's provisions will apply.

PI-CXL NOTICE NY 1 (09/15)

WON-EX 043165

- Clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.

**PI-CXL-039 (01/15) – CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**
- Updated language to comply with the requirements of the federal Terrorism Risk Insurance Reauthorization Act of 2015

**PI-CXL-040 (01/15) – EXCLUSION OF CERTIFIED ACTS OF TERRORISM**
- Updated language to comply with the requirements of the federal Terrorism Risk Insurance Reauthorization Act of 2015
- Updated the definitions of "any injury or damage" and "certified act of terrorism."

**PI-CXL-041 NY (09/13) – GENERAL LIABILITY FOLLOW FORM ENDORSEMENT**
- Clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.

**PI-CXL-042 (04/13) – LIQUOR LIABILITY COVERAGE SUBLIMIT**
- Changed title from "Liquor Liability Coverage Form"
- Updated language to Each Common Cause vs. Each Occurrence
- Clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.

**PI-CXL-046 (09/12) – FAILURE TO SUPPLY EXCLUSION**
- Amended reference to "bodily injury" or "property damage" to any liability, damage, loss, cost or expense.

**PI-CXL-047 (04/13) – MEDICAL PROFESSIONAL LIABILITY EXCLUSION**
- Extended reference related to any liability, to also include reference to damage, loss, cost or expense.
- Deleted exception to the exclusion related to psychiatrists.

**PI-CXL-048 (04/13) – MEDICAL PROFESSIONAL LIABILITY COVERAGE SUB-LIMIT**
- Deleted exception to the exclusion related to psychiatrists.
- Revised to include language related to following the same provisions, exclusions and limitations that are contained in the applicable underlying insurance. If there is a difference or conflict between the underlying insurance and the Umbrella, the Umbrella's provisions will apply.
- Clarified that no per location or per project aggregate limit of insurance contained in the underlying insurance will be extended into the Umbrella.

**PI-CXL-055 (09/12) – TITLE ERRORS AND OMISSIONS EXCLUSION**
**PI-CXL-056 (09/12) – TRUTH IN LENDING EXCLUSION**
**PI-CXL-059 (09/12) – VIOLENT EVENT RESPONSE EXCLUSION**
- Extended reference related to any loss, cost or expense, to also include reference to liability and damage.

PI-CXL NOTICE NY 1 (09/15)

WON-EX 043166

**PI-VF-029 NY (01/14) – VOLUNTEER FIRE DEPARTMENT AMENDATORY ENDORSEMENT**

- Changed title to include the word "Endorsement"
- **II. A.** – Removed, as this provision is now contained in the Commercial Umbrella Liability Coverage Form (PI-CXL-001)
- **B.1.** and **2.** – Added language that acknowledges that volunteer fire department and volunteer ambulance companies are subject to New York workers' compensation, disability and other similar laws

WON-EX 043167

POLICY NUMBER: **PHUB559537**



**PHILADELPHIA INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY DECLARATIONS

| | |
|---|---|
| **Philadelphia Indemnity Insurance Company** | 100412<br>Marsh & McLennan Agency LLC (Northeas<br>565 5th Ave  Fl 5<br>New York, NY 10017<br><br>(212)867-0070 |

NAMED INSURED:   WonderWork, Inc.
                 Surgery for the Poor, Inc.

MAILING ADDRESS: 411 5th Ave Rm 702
                 New York, NY 10016-2237

POLICY PERIOD:  FROM _____10/03/2016_____ TO _____10/03/2017_____ AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT<br>(LIABILITY COVERAGE) | $   2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $   2,000,000 | Any one person or organization |
| PRODUCTS COMPLETED OPERATIONS AGGREGATE LIMIT | | $   2,000,000 |
| GENERAL AGGREGATE LIMIT (LIABILITY COVERAGE) (except with respect to Auto Liability and Products Completed Operations) | | $   2,000,000 |

| RETAINED LIMIT | |
|---|---|
| RETAINED LIMIT: | $      10,000 |

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043168

POLICY NUMBER: PHUB559537

| PREMIUM | |
|---|---|
| PREMIUM SUBTOTAL | $ 1,425.00 |
| STATE TAXES | $ Not Applicable |
| PREMIUM TOTAL (including State Taxes) | $ 1,425.00 |

| AUDIT PERIOD: | ☒ NOT APPLICABLE | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|---|

## DESCRIPTION OF BUSINESS

FORM OF BUSINESS:
NON PROFIT ORGANIZATION

BUSINESS DESCRIPTION:
Non-Profit Umbrella

## ENDORSEMENTS ATTACHED TO THIS POLICY

SEE ATTACHED SCHEDULE

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043169

POLICY NUMBER: PHUB559537

| SCHEDULE OF UNDERLYING INSURANCE |
|---|

**Employers' Liability**

**UMBRELLA COVERAGE FOR WORKERS COMPENSATION AND EMPLOYERS' LIABILITY IS NOT APPLICABLE IN SITUATIONS WHERE AN EMPLOYEE IS SUBJECT TO THE NEW YORK WORKERS COMPENSATION LAW**

Company: _____

Policy Number: _____

Policy Period: _____

Minimum Applicable Limits

Bodily injury by accident     $ _____ Each Accident

Bodily injury by disease     $ _____ Each Employee

Bodily injury by disease     $ _____ Policy Limit

---

**Commercial General Liability**     ☒ Occurrence     ☐ Claims-Made

Company:     Philadelphia Indemnity Insurance Company

Policy Number:     PHPK1562471

Policy Period:     10/03/2016     10/03/2017

Retroactive Date: Not Applicable

Minimum Applicable Limits:

General Aggregate     $    2,000,000

Products-Completed Operations Aggregate     $    2,000,000

Personal And Advertising Injury     $    1,000,000

Each Occurrence     $    1,000,000

---

**Commercial Auto Liability**

Company:     Philadelphia Indemnity Insurance Company

Policy Number:     PHPK1562471

Policy Period:     10/03/2016     10/03/2017

Minimum Applicable Limits

Garage Aggregate Limit For Other Than Autos (if applicable)     $    Not Applicable

Each Accident     $    1,000,000

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043170

POLICY NUMBER: PHUB559537

---

**Professional Liability**      ☐ Occurrence      ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____ $ _____

_____ $ _____

---

**Employee Benefits Liability**      ☐ Occurrence      ☒ Claims-Made

Company: Philadelphia Indemnity Insurance Company

Policy Number: PHPK1562471

Policy Period: 10/03/2016     10/03/2017

Retroactive Date: 10/03/2011

Minimum Applicable Limits

Each Claim          $      1,000,000

Aggregate           $      1,000,000

---

**Abuse or Molestation**      ☐ Occurrence      ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____ $ _____

_____ $ _____

---

**Directors & Officers Liability**      ☐ Occurrence      ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____ $ _____

_____ $ _____

WON-EX 043171

POLICY NUMBER: PHUB559537

---

**Liquor Liability**          ☐ Occurrence          ☐ Claims-Made
Company: _____
Policy Number: _____
Policy Period: _____
Retroactive Date: _____
Minimum Applicable Limits
_____ $ _____
_____ $ _____

---

**Watercraft Liability**          ☐ Occurrence          ☐ Claims-Made
Company: _____
Policy Number: _____
Policy Period: _____
Retroactive Date: _____
Minimum Applicable Limits
_____ $ _____
_____ $ _____

---

**Other Coverages Not Included in Above**          ☐ Occurrence          ☐ Claims-Made
_____
Company: _____
Policy Number: _____
Policy Period: _____
Retroactive Date: _____
Minimum Applicable Limits
_____ $ _____
_____ $ _____

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043172

POLICY NUMBER: PHUB559537

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President                         Secretary

WON-EX 043173

# Philadelphia Indemnity Insurance Company

## Form Schedule – Umbrella Liability

**Policy Number:** PHUB559537

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| PI-CXL NOTICE NY 1 | 0915 | Umbrella Advisory Notice To Policyholders - New York |
| PI-CXL-002 NY | 0914 | Commercial Umbrella Liability Ins Policy Declarations |
| PI-CXL-001 | 0912 | Commercial Umbrella Liability Insurance Policy |
| PI-CXL-004 | 0912 | Directors And Officers Liability Exclusion |
| PI-CXL-006 | 0912 | Employers Liability (Stop Gap) Exclusion |
| PI-CXL-007 | 0912 | Abuse Or Molestation Exclusion |
| PI-CXL-009 | 0912 | Automobile Liability Follow Form Endorsement |
| PI-CXL-014 | 0912 | Subsidence Exclusion |
| PI-CXL-016 | 0912 | Watercraft Exclusion Re-Stated |
| PI-CXL-025 | 0912 | Absolute Liquor Liability Exclusion |
| PI-CXL-029 | 0912 | Employee Benefits Liability Follow Form Endorsement |
| PI-CXL-039 | 0115 | Cap On Losses From Certified Acts Of Terrorism |
| PI-CXL-054 | 0912 | Non-Owned Watercraft Amendment |
| PI-CXL-069 | 0912 | Punitive Or Exemplary Damages Exclusion |
| PI-CXL-NY 1 | 0913 | New York Changes - Cancellation And Nonrenewal |
| PI-CXL-NY 2 | 0913 | NY Changes - Transfer Of Duties When A Limit Of Ins |
| PI-CXL-NY 3 | 0614 | New York Changes |
| PI-CXL-NY-CM Addendum | 0614 | New York Application And Declaration Page Addendum |
| PI-UMTER-DN | 0115 | Disclosure Notice Of Terrorism Ins Cov Rejection Opt |

WON-EX 043174

# COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

This policy has been issued in reliance upon the statement in the Declarations made a part hereof and in the application submitted for this insurance. Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Other words and phrases in this policy that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS**.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

**Bodily Injury and Property Damage**

**a.** This insurance applies to "bodily injury" or "property damage" only if:

**(1)** The "bodily injury" or "property damage" arising out of an "occurrence" takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**b.** "Bodily injury" or "property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence"

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043175

or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**Personal and Advertising Injury**

This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Defense of Claims or Suits and Supplementary Payments**

**a.** We will have the right and duty to defend the insured against any "suit" seeking damages which are payable under **COVERAGES A** or **B** including damages wholly or partly within the "retained limit," but which are not payable by a policy of "underlying insurance," or any other available insurance because:

**(1)** Such damages are not covered; or

**(2)** The "underlying insurance" has been exhausted by the payment of claims.

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**b.** We may investigate and settle any claim or "suit" in **a.** above at our discretion.

**c.** Our right and duty in **a.** above ends when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

**d.** We will pay, with respect to any claims or "suits" we defend in **a.** above:

**(1)** All expense we incur.

**(2)** Up to $2000 for cost of bail bonds (including bonds for related traffic violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**(3)** The premium for appeal bonds and bonds to release attachments, but only for bond amounts within the "applicable limit of insurance." We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If

WON-EX 043176

we make an offer to pay the "applicable limit of insurance," we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

**(a)** Paid, or offered to pay; or

**(b)** Deposited in court;

The part of the judgment that is within the "applicable limit of insurance."

These payments will not reduce the limits of insurance.

**e.** We will have no duty to defend the insured against any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits," we will pay all expenses we incur, but we will not contribute to the expenses of the insured or the "underlying insurer."

**f.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**(1)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(2)** This insurance applies to such liability assumed by the insured;

**(3)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(4)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(5)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(6)** The indemnitee:

**(a)** Agrees in writing to:

**(i)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(ii)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(iii)** Notify any other insurer whose coverage is available to the indemnitee; and

**(iv)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(b)** Provides us with written authorization to:

**(i)** Obtain records and other information related to the "suit"; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043177

**(ii)** Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **3. Exclusions**, **f.(2)** below, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the "applicable limit of insurance" in the payment of judgments or settlements or the conditions set forth above or the terms of the agreement described in Paragraph **f.(6)** above.

## 3. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**c. Employment Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment related practices, policies, acts or omissions such as discrimination, criticism, self-defamation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or malicious prosecution directed at that person

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before, during or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

WON-EX 043178

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**d. War**

"Bodily injury," "property damage" or "personal and advertising injury" however caused arising, directly or indirectly out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Rebellion, revolution, insurrection, usurped power or action taken by governmental authority in hindering or defending against any of these.

**e. E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.) and any amendments thereto or any similar federal, state, or local statute.

**f. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

   **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**g. Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned, or operated by; or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

This exclusion does not apply to:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043179

**(1)** Watercraft while ashore on premises you own or rent;

**(2)** Watercraft you do not own that is:

    **(a)** Less than 50 feet long; and

    **(b)** Not being used to carry persons or property for a charge.

**(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**(4)** The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage." Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

**(5)** Aircraft that is:

    **(a)** Chartered by, loaned to, or hired by you with paid crew; and

    **(b)** Not owned by any insured.

**h. Auto Coverages**

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not an "auto" covered by "underlying insurance"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payment coverage; or uninsured or underinsured motorist law.

In addition, any other auto liability exclusions contained in the applicable "underlying insurance" shown in the Schedule of Underlying shall apply.

**i. Other Personal and Advertising Injury Exclusions**

"Personal and advertising injury":

**(1) Knowing Violation of Rights of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**(2) Material Published with Knowledge of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior to Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal and advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043180

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement.

**(6) Breach of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**(7) Quality or Performance of Goods – Failure to Conform to Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**(8) Wrong Description of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**(9) Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement in your "advertisement" of copyright, trade dress or slogan.

**(10) Insureds in Media and Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **16. a.**, **b.** and **c.** under **SECTION V – DEFINITIONS**.

For the purpose of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043181

which the insured exercises control.

**(12) Unauthorized Use of Another's Name or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**j.  Damage to Property**

"Property damage" to property:

**(1)** You own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

WON-EX 043182

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Pollution**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fume, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or

WON-EX 043183

processed as waste by or for:

 **(i)** Any insured; or

 **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

 **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as a part of the operations being performed by such insured, contractor or subcontractor;

 **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

 **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(e)** At or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**p. Discrimination**

Any liability arising from discrimination:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043184

**(1)** Suffered or allegedly suffered by any person based upon, but not limited to, color, creed, gender, race, national origin, age, handicap, illness, religion or sexual preference; or

**(2)** Due to unfair trade practices.

**q. Asbestos**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of the "asbestos hazard."

We shall have no obligation under this policy:

**(1)** To investigate, settle or defend any claim or "suit" against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the "asbestos hazard"; or

**(2)** To pay, contribute to, or indemnify another for any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or "suit" or any injury or damage, or in complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion:

"Asbestos hazard" means:

    **(a)** An actual exposure or threat of exposure to the harmful properties of "asbestos"; or

    **(b)** The presence of "asbestos" in any place, whether or not within a building or structure.

"Asbestos" means the mineral in any form, including but not limited to fibers or dust.

**r. Nuclear Energy Liability**

Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under such policy but for its termination upon exhaustion of its limit of liability;

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof, with any person or organization; or

**(3)** Resulting from the "hazardous properties" of "nuclear material", if:

    **(a)** The "nuclear material"

        **(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of an insured; or

        **(ii)** Has been discharged or dispersed therefrom;

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043185

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property threat.

As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material," or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(i)** separating the isotopes of uranium or plutonium; **(ii)** processing or utilizing "spent fuel"; or **(iii)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043186

    **s. Liquor Liability**

    "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    **(1)** Causing or contributing to the intoxication of any person;

    **(2)** The furnishing or alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

    **t. Trade or Economic Sanctions**

    To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

    **u. Electronic Data**

    Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

    As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

    This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage." Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance," unless otherwise directed by this insurance.

    **v. Distribution of Material in Violation of Statutes**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

    **(3)** Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of materials or information.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043187

business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Any subsidiary you wholly own, either directly or indirectly, at the inception of our policy.

**3.** Each of the following is also an insured:

    **a.** With respect to the "auto hazard":

        **(1)** Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and

        **(2)** Any of your "executive officers," directors, partners, "employees" or stockholders, operating an "auto" you do not own, hire or borrow while it is being used in your business.

    None of the following is an insured under **(1)** or **(2)** above:

        **(a)** Any person employed by or engaged in the duties of an auto sales agency, repair shop, service station, storage garage or public parking place that you do not operate.

        **(b)** The owner or lessee of any "auto" hired by or for you or loaned to you and any agent or employee of such lessee.

    **b.** With respect to aircraft:

    Anyone using an aircraft chartered with crew by you or on your behalf and anyone legally responsible for its use except:

        **(1)** The owner or crew of the aircraft or any person operating such aircraft;

        **(2)** Any manufacturer of the aircraft or any of its parts;

        **(3)** Any sales, service or repair company;

        **(4)** Any airport or hangar operator; or any "employee" of **(2)**, **(3)** or **(4)**.

    **c.** Except with respect to aircraft and the "auto hazard":

        **(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your

WON-EX 043188

managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

    **(i)** To you, to your partners or members (if you are a partnership or joint venture), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business unless insurance for such liability is afforded by the "underlying insurance";

    **(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above;

    **(iii)** For which there is any obligation to share damage with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above; or

    **(iv)** Arising out of his or her providing or failing to provide professional health care services.

**(b)** "Property damage" to property:

    **(i)** Owned, occupied or used by;

    **(ii)** Rented to, in the care custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

    **(a)** With respect to liability arising out of the maintenance or use of that property; and

    **(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**d.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043189

**(3)** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**e.** Any person or organization for whom you agreed in writing to provide this insurance for operations you perform or facilities you own or use. This insurance is subject to your "applicable underlying limits" for such operations or facilities.

**f.** Any other person or organization insured under any policy of the "underlying insurance." This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The limits of insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought, or number of vehicles involved; or

**(c)** Persons or organizations making claims or bringing "suits."

**2.** The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

**3.** The General Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A and Coverage B except:

**(a)** Damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

**(b)** Damages because of "bodily injury" and "property damage" included in the "auto hazard."

**4.** Subject to **3.** above, the most we will pay under Coverage B for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization shall be an amount equal to the Each Occurrence Limit.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence."

**6.** If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Umbrella Liability policy, the "applicable underlying limit" will only be reduced or exhausted by payments for:

**a.** "Bodily injury" or "property damage" which occurs during the policy period of this policy.

**b.** "Personal and advertising injury" for offenses that are committed during the policy period of this policy.

WON-EX 043190

However, if any "underlying insurance" is written on a claims-made basis, the "applicable underlying limit" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this policy.

To determine the Limit of Insurance, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence."

The limits of insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

### 1. Appeals

If the insured or the "underlying insurer" elects not to appeal a judgment in excess of the "applicable underlying limit," we may elect to make such appeal, at our cost and expense.

If we so elect, we shall be liable in addition to the "applicable limit of insurance" for the:

**(a)** Taxable costs;

**(b)** Disbursements; and

**(c)** Additional interest incidental to such appeal;

but in no event will we be liable for damages in excess of the applicable aggregate Limit of Insurance.

If a judgment is rendered in excess of the limits of "underlying insurance" and we offer to pay our full share of such judgment, but you or your "underlying insurers" elect to appeal it, you, your "underlying insurers" or both will bear:

**(1)** The cost and duty of obtaining any appeal bond;

**(2)** The taxable costs, disbursements and additional interest incidental to such appeal; and

**(3)** Any increase in damages over the amount the matter could have been settled for after the verdict was entered and before the appeal was filed.

### 2. Bankruptcy

**a.** Bankruptcy of Insured

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this insurance.

**b.** Bankruptcy of Underlying Insurer

Bankruptcy of the "underlying insurer" will not relieve us of our obligations under this insurance.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043191

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer." This insurance will apply as if the "underlying insurance" were in full effect.

**3. Cancellation**

    **a.** The first Named Insured may cancel this insurance by mailing or delivering to us in advance, written notice of cancellation.

    **b.** We may cancel this insurance by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **e.** If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund will be pro rata, less 10% of the pro rata unearned premium. The cancellation will be effective even if we have not made or offered refund.

    **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. No change can be made in the terms of this insurance except with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

**5. Duties in the Event of Occurrence or Offense, Claim or Suit**

    **a.** You must see to it that we are notified as soon as practicable of any "occurrence" or any offense which may result in a claim under this insurance when the occurrence or offense is known to:

        **(1)** You, if you are an individual;

        **(2)** Your partner, if you are a partnership;

        **(3)** Your member, if you are a joint venture;

        **(4)** Your member or manager, if you are a limited liability company; or

        **(5)** Your officer or insurance manager, if you are an organization other than a partnership, joint venture or limited liability company.

    **b.** Notice should include:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043192

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence."

**c.** If a claim or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit."

**d.** The insured must:

    **(1)** Cooperate with the "underlying insurers";

    **(2)** Comply with the terms of the "underlying insurance";

    **(3)** Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "bodily injury," "property damage", or "personal and advertising injury" with respect to which insurance is provided under this or any policy of "underlying insurance."

    **(4)** When we believe that a claim may exceed the "underlying insurance," we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or offense. In such event, the insured must cooperate with us.

**6. Examination of your Books and Records**

We may examine and audit your books and records as they relate to this insurance:

**a.** At any time during the policy period;

**b.** Up to three years afterward; or

**c.** Within one year after final settlement of all claims under this insurance.

**7. Inspection and Surveys**

We have the right but are not obligated to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

    **(1)** Are safe or healthful; or

    **(2)** Comply with laws, regulations, codes or standards.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043193

8. **Legal Action Against Us**

No person or organization has a right under this insurance:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial. We will not be liable for damages that:

**(1)** Are not payable under the terms of this insurance; or

**(2)** Are in excess of the "applicable limit of insurance."

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. **Maintenance of / Changes to Underlying Insurance**

The "underlying insurance" listed in the Schedule of Underlying Insurance in the Declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlements or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect or if the limits or scope of coverage of any "underlying insurance" is changed.

10. **Other Insurance**

**a.** This insurance is excess over, and shall not contribute with any of the other insurance whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this policy.

When this insurance is excess, we will have no duty under this policy to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

11. **Transfer of Rights of Recovery Against Others to Us**

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043194

a. If any insured has rights to recover from any other person or organization all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair those rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Any such recovery shall be applied as follows:

   (1) First, any person or organization (including the insured) that has paid an amount in excess of the applicable limits of insurance of this policy will be reimbursed for the actual excess amount paid under this policy;

   (2) Then, we will be reimbursed up to the amount we have paid; and

   (3) Last, any insured or issuer of scheduled "underlying insurance" is entitled to claim the remainder, up to the amount that insured or issuer of scheduled "underlying insurance" has paid.

c. Expenses incurred in the exercise of such rights of recovery shall be apportioned among such persons or organizations, including the insured, in the same ratio as their respective recoveries are finally shared.

## 12. Premium

a. The first Named Insured has primary responsibility for the payment of all premiums and will be the payee for any return premiums.

b. If the premium is a flat charge, it is not subject to adjustment except as provided in **d.** below.

c. If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the Minimum Annual Premium.

d. Additional premium may become payable when coverage is provided for additional insureds; and Named Insureds under the provisions of **SECTION II – WHO IS AN INSURED**, Items **3. d.**, **e.**, and **f.**

## 13. Premium Audit

a. You must keep record of the information we need for premium computation and send us copies at such times as we may request;

b. At the close of each audit period we will compute the earned premium for that period; and

c. Audit premiums are due and payable on notice to you.

## 14. Representations or Fraud

By accepting this insurance, you agree:

a. The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this insurance in reliance upon your representations; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043195

    **d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**15. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**16. Transfer of your Rights and Duties Under this Insurance**

Your rights and duties under this insurance may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to:

    **a.** Your legal representative but only while acting within the scope of duties as your legal representative.

    **b.** Anyone having your rights and duties but only with respect to that property, until your legal representative is appointed.

**17. When Loss is Payable**

Coverage under this policy will not apply until the insured, or the insured's "underlying insurer" has paid or is obligated to pay the full amount of the "applicable underlying limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an insured obtained after an actual trial, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit."

**18. Transfer of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

    **a.** Notices that are published include material placed on the internet or on similar electronic means of communication.

    **b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043196

2. "Applicable limit of insurance" means the maximum amount we will pay as damages in accordance with **SECTION III – LIMITS OF INSURANCE**.

3. "Applicable underlying limit" means:

   **a.** If the policies of "underlying insurance" apply to the "occurrence" or offense, the greater of:

   **(1)** The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or

   **(2)** The "retained limit" shown in the Declarations; or

   **b.** If the policies of "underlying insurance" do not apply to the "occurrence" or offense, the amount stated in the Declarations as the "retained limit."

   The limits of insurance in any policy of "underlying insurance" will apply even if:

   **(a)** The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

   **(b)** The "underlying insurer" becomes bankrupt or insolvent.

4. "Auto" means:

   **a.** A land motor vehicle, trailer or semi-trailer designed for travel on public road, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment."

5. "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms of the auto policy of "underlying insurance," other than the limits of insurance of the auto policy of "underlying insurance."

6. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

7. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in **a.** above;

   **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

WON-EX 043197

    **(3)** "Personal and advertising injury" offenses that take place through the internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**8.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract agreement;

if such property can be restored to use by:

    **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **(2)** Your fulfilling the terms of the contract or agreement.

**11.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees," of any "auto." However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees."

    **g.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043198

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

**(3)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**12.** "Leased worker" mans a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**13.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**14.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c. or d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c. or d.** above maintained primarily for purposes other than

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043199

the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**15.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**17.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**18.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043200

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**19.** "Property damage" means:

  **(a)** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **(b)** Loss of use of tangible property that is not physically injured.   All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**20.** "Retained limit" is the amount stated in the Declarations as such.  If the policies of "underlying insurance" do not apply to the "occurrence" or offense, the insured shall retain this amount as self-insurance with respect to:

  **(a)** "Bodily injury" or "property damage" caused by each "occurrence"; or

  **(b)** "Personal and advertising injury" sustained by any one person or organization.

The "retained limit" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043201

**(a)** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance and includes:

   **a.** Any renewal or replacement of such policies; and

   **b.** Any other insurance available to the insured.

25. "Underlying insurer" means any insurer which provides any policy of insurance listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

26. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

27. "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   **(a)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(b)** The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

28. "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

WON-EX 043202

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, or performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

WON-EX 043203

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DIRECTORS AND OFFICERS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.  SECTION I – COVERAGES, 3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense arising from any "wrongful act" of any director or officer of the insured in the discharge or performance of their duties as such.

**B.  SECTION V – DEFINITIONS** is amended to include the following provision:

The definition of "wrongful act" is the same as the definition contained in the applicable "underlying insurance."

WON-EX 043204

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

# EMPLOYERS' LIABILITY (STOP GAP) EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability for "bodily injury," disability or shock, including death at any time resulting from any of these, and, if arising out of the foregoing mental anguish or mental injury sustained by:

1.  An "employee" of the insured arising out of and in the course of employment by the insured; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of **1.** above.

This exclusion applies:

    **a.**  Whether the insured may be liable as an employer or in any other capacity; and

    **b.**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

WON-EX 043205

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured;

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded by **1.** above; or

3. Any applicable coverage provided in the "underlying insurance."

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043206

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

## AUTOMOBILE LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES, 1.  Insuring Agreement** is amended to include the following:

This policy is intended to include coverage for liability arising out of the ownership, operation, maintenance, use, "loading or unloading" or entrustment to others of an "auto."

The auto liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by an endorsement to this policy.

To the extent such provisions differ or conflict, the provisions of this policy will apply.  However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."

WON-EX 043207

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense, whether direct or indirect, arising out of, caused by, resulting from, contributed to or aggravated by the subsidence of land, including any:  settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

WON-EX 043208

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WATERCRAFT EXCLUSION RE-STATED

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions**, **g. Aircraft or Watercraft** is deleted in its entirety and replaced with the following:

**g.  Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned, or operated by; or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

This exclusion does not apply to:

**(1)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft.

**(2)** The extent that valid "underlying insurance" for the aircraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage."  Coverage provided will follow the provision, exclusions and limitation of the "underlying insurance" unless otherwise directed by this insurance; or

**(3)** Aircraft that is:

**(a)** Chartered by, loaned to, or hired by you with paid crew; and

**(b)** Not owned by any insured.

WON-EX 043209

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABSOLUTE LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions**, **s. Liquor Liability** is deleted in its entirety and replaced with the following:

This insurance does not apply to any liability, damage, loss, cost or expense for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

WON-EX 043210

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFITS LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES, 1.  Insuring Agreement** is amended to include the following:

This policy is intended to include Employee Benefits Liability coverage.

The Employee Benefits Liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the "applicable underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by an endorsement to this policy.

To the extent such provisions differ or conflict, the provisions of this policy will apply.  However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."

Any per location or per project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

WON-EX 043211

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Includes copyright material of the Insurance Services Office Inc., used with its permission.

WON-EX 043212

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NON-OWNED WATERCRAFT AMENDMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions**, **g. Aircraft or Watercraft, (2)** is deleted in its entirety and replaced with the following:

**(2)** Watercraft you do not own that is:

**(a)** Less than 58 feet long; and

**(b)** Not being used to carry persons or property for a charge.

Includes copyrighted material of Insurance Services Office, Inc., with permission

WON-EX 043213

**<u>THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.</u>**

## PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to punitive or exemplary damages awarded against the insured.

© 2012 Philadelphia Consolidated Holding Corp.

WON-EX 043214

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**I.**   If you are an individual and you own an "auto" covered by "underlying insurance" that is predominantly used for nonbusiness purposes, the **Cancellation** Policy Condition is replaced by the following:

**Ending This Policy**

**A.   Cancellation**

**1.**   You may cancel the entire policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

**2.**   When this policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel the entire policy for any reason provided we mail you notice within this period. If we cancel for nonpayment of premium, we will:

**a.**   Mail you at least 15 days' notice; and

**b.**   Inform you of the amount due.

Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation. If we cancel for any other reason, we will mail you at least 20 days' notice.

**3.**   When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel it or any insurance deemed severable only for one or more of the following reasons:

**a.**   Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform you of the amount due. If we cancel for this reason, we will mail you at least 15 days' notice. Payment of premium will be considered on time if made within 15 days after we mail you notice of cancellation.

**b.**   Your driver's license or that of a driver who lives with you or customarily uses the "auto" covered by "underlying insurance" has been suspended or revoked during the policy period, other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the Vehicle and Traffic Law, or one or more administrative suspensions arising out of the same incident which has or have been terminated prior to the effective date of cancellation.  If we cancel for this reason, we will mail you at least 20 days' notice.

**c.**   We replace this policy with another one providing similar coverages and the same limits for an "auto" of the private passenger type covered by "underlying insurance."  The replacement policy will take effect when this policy is cancelled, and will end a year after this policy begins or on this policy's expiration date, whichever is earlier.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043215

    **d.** This policy has been written for a period of more than one year or without a fixed expiration date. We may cancel for this reason, subject to New York Laws, only at an anniversary of its original effective date. If we cancel for this reason, we will mail you at least 45 but not more than 60 days' notice.

    **e.** This policy was obtained through fraud or material misrepresentation. If we cancel for this reason, we will mail you at least 20 days' notice.

    **f.** Any insured made a fraudulent claim. If we cancel for this reason, we will mail you at least 20 days' notice.

    If one of the reasons listed in this Paragraph **3.** exists, we may cancel the entire policy.

   **4.** Instead of cancellation, we may condition continuation of this policy on a reduction of Liability Coverage or elimination of any other coverage. If we do this, we will mail you notice at least 20 days before the date of the change.

   **5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **6.** If this policy is cancelled, we will send you any premium refund due. The refund will be pro rata.

    However, when the premium is advanced under a premium finance agreement, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B. Nonrenewal**

   **1.** If this policy is written for a period of less than one year and we decide, subject to New York Laws, not to renew or continue it, or to condition renewal or continuation on a reduction of Liability Coverage or elimination of any other coverage, we will mail or deliver to you written notice at least 45 but not more than 60 days before the end of the policy period.

   **2.** We will have the right not to renew or continue a particular coverage, subject to New York Laws, only at the end of each 12-month period following the effective date of the first of the successive policy periods in which the coverage was provided.

   **3.** We do not have to mail notice of non-renewal if you, your agent or broker or another insurance company informs us in writing that you have replaced this policy or that you no longer want it.

**C. Mailing Of Notices**

    We will mail or deliver our notice of cancellation, reduction of limits, elimination of coverage or nonrenewal to the address shown on the policy. However, we may deliver any notice instead of mailing it. If notice is mailed, a United States Postal Service certificate of mailing will be sufficient proof of notice.

**II.** For all policies other than those specified in Section **I.** above, the **Cancellation** Policy Condition is completely replaced by the following:

**A.** Paragraphs **a.**, **b.**, **c.** and **e.** of the **Cancellation** Common Policy Condition are replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043216

**a.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**b. Cancellation Of Policies In Effect**

**(1) 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(a)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **(b)** below.

**(b)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(i)** Nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform you of the amount due;

**(ii)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(iii)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(iv)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(v)** Cancellation is required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

**(vi)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code;

**(vii)** Suspension or revocation during the required policy period of the driver's license of any person who continues to operate an "auto" covered by "underlying insurance" other than a suspension issued pursuant to Subdivision (1) of Section 510(b) of the Vehicle and Traffic Law or one or more administrative suspensions arising from the same incident which has or have been terminated prior to the effective date of cancellation; or

**(viii)** Cancellation of one or more of the underlying policies providing primary or intermediate coverage where:

a) Such cancellation is based upon Paragraphs **(i)** through **(vii)** of this subsection; and

b) Such policies are not replaced without lapse.

**(2) For More Than 60 Days**

WON-EX 043217

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **(1)(b)** above, provided:

    **(i)** We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

    **(ii)** If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

**c.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.
However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Policy Condition:

**g.** Regardless of the number of days this policy has been in effect, if:

    **(1)** This policy covers "autos" subject to the provisions of Section 370(a) and (b) of the New York Vehicle and Traffic Law; and

    **(2)** The Commissioner of the Department of Motor Vehicles deems this policy to be insufficient for any reason;

we may cancel this policy by giving you notice of such insufficiency 45 days before the effective date of cancellation to permit you to replace this policy.

**h.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**i.** Notice will include the reason for cancellation. We will mail or deliver our notice to the first Named Insured at the address shown in the policy and to the authorized agent or broker. However, we may deliver any notice instead of mailing it. Proof of mailing will be sufficient proof of notice.

**C.** The following Policy Conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy, we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

WON-EX 043218

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

We will send notice as provided in Paragraph **C.3.** below.

We may conditionally renew this policy subject to the requirements stipulated by the **Maintenance of / Changes to Underlying Insurance** policy condition. In the event of failure to comply with the aforementioned condition as of the expiration date of the policy, or 60 days after mailing or delivering the notice of conditional renewal, the conditional renewal shall be deemed to be an effective notice of nonrenewal.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 30 but not more than 120 days before:

   **(1)** The expiration date; or

   **(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

   **(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043219

    **(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

    **(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

  **f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**E.** The last sentence of **SECTION III – LIMITS OF INSURANCE** does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043220

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF
# DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**

The following additional policy condition is included:

**TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

    **(1)** General Aggregate Limit;

    **(2)** Personal and Advertising Injury Limit; or

    **(3)** Each Occurrence Limit;

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in Paragraph **a.** above has actually been used up in the payment of judgments or settlements:

    **(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

        **(a)** Such a limit has actually been used up; and

        **(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

    **(2)** If we have a duty to defend we will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits."

    We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

    We will take no action whatsoever with respect to any claim or "suit" seeking damages that would

    have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after

    that limit of insurance has been used up.

    **(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

Includes copyrighted material of Insurance Services Office, Inc. with permission.

WON-EX 043221

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with Paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with Paragraph **b.(1)** above, if we did not send notice in accordance with Paragraph **a.** above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

Includes copyrighted material of Insurance Services Office, Inc. with permission.

WON-EX 043222

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.** The following is added to Paragraph **2. Defense of Claims or Suits and Supplementary Insuring Agreement** of **SECTION I – COVERAGES**.  Any provision to the contrary is superseded.

When we have a duty to defend, we will defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

Additionally, should the total amount for which the claim or "suit" is adjusted exceed the "retained limit," then we shall have the right and duty to assume from the insured the defense and control of such claim or "suit."  This duty applies even if the allegations are groundless, false or fraudulent.

**B.** Only with respect to liability arising out of the ownership, maintenance or use of an "auto" covered by "underlying insurance," the following are added to **SECTION I – COVERAGES**, **2. Defense of Claims or Suits and Supplementary Payments** Paragraph **d.**:

    **(8)** We will pay all expenses incurred by an insured for first aid to others at the time of an "occurrence."

    **(9)** The cost of appeal bonds.

**C.** The following is added to Exclusion **3.c. Employment Related Practices**:

This exclusion does not apply to "bodily injury" arising out of discrimination based on disparate impact or vicarious liability.

**D.** The last sentence in Exclusion **3. h. Auto Coverages**, is deleted in its entirety.

**E.** **SECTION II – WHO IS AN INSURED**, Paragraph **d.** is deleted in its entirety and replaced by the following:

    **d.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar valid and collectible insurance available to that organization.  However:

        **(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

        **(2)** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

        **(3)** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**F.** **SECTION III – LIMITS OF INSURANCE**, Paragraph **6.** is replaced by the following:

    **6.** If there is "underlying insurance" with a policy period that is nonconcurrent with the policy period

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043223

of this Commercial Umbrella Liability policy, the "applicable underlying limit" will only be reduced or exhausted by the amount of judgments and settlements for:

    **a.** "Bodily injury" or "property damage" which occurs during the policy period of this policy.

    **b.** "Personal and advertising injury" for offenses that are committed during the policy period of this policy.

**G.** **SECTION IV – CONDITIONS** is revised as follows:

  **1.** The following is added to Paragraph **5. Duties in the Event of Occurrence, Offense, Claim or Suit**:

    **e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

  **2.** Paragraph **8. Legal Action Against Us** is replaced by the following:

    **Legal Action Against Us**

    **a.** Except as provided in Paragraph **b.**, no person or organization has a right under this insurance:

      **(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      **(2)** To sue us on this insurance unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

    **b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

    However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

      **(1)** Brings an action to declare the rights of the parties under the policy; and

      **(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

  **3.** Paragraph **9. Maintenance Of/Changes To Underlying Insurance** is replaced by the following:

    **Maintenance Of/Changes To Underlying Insurance**

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043224

The "underlying insurance" listed in the Schedule of "underlying insurance" in the Declarations shall remain in full effect throughout the policy period except for the exhaustion of the aggregate limit.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect or if the limits or scope of coverage of any "underlying insurance" is changed.

4. **Paragraph 13.b.** of the **Premium Audit** Condition is replaced by the following:

   **b.** At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy.  But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

5. Paragraph **14.d.** of the **Representations Or Fraud** Condition is replaced by the following:

   **d.** We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this policy.

   However, with respect to liability arising out of the ownership, maintenance, or use of "autos" covered by "underlying insurance," we will provide coverage to such insured for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages are otherwise covered under the policy.

6. Except as provided in Paragraph **3.** above, the **Examination Of Your Books And Records** Policy Condition continues to apply.

7. Paragraph **17. When Loss is Payable** is replaced by the following:

   **When Loss is Payable**

   Coverage under this policy shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "applicable underlying limit." Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a written agreement between the insured, claimant, and us.

   The first Named Insured will promptly reimburse us for any amount with the "retained limit."

8. The following provisions are added and supersede any provisions to the contrary:

   **a.** Failure to give notice to us as required under this policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043225

**b.** The insured's consent is required to settle claims within the insured's "retained limit," unless such consent is unreasonably withheld.

**H.** **SECTION V – DEFINITIONS** is revised as follows:

The "insured contract" definition is deleted in its entirety and replaced by the following:

"Insured contract" means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

**d.** Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**e.** An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

**f.** That part of any contract or agreement entered into, as part of your business, by you or any of your "employees." pertaining to the rental or lease of any "auto"; or

**g.** That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

**a.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver;

**b.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" covered by "underlying insurance" over a route or territory that person or organization is authorized to serve by public authority; or

**c.** Under which the insured assumes liability for injury or damage caused by the dumping, discharge or escape of:

**(1)** Irritants, pollutants or contaminants that are, or that are contained in, any property that is:

**(a)** Being moved from the place where such property or pollutants are accepted by the insured for movement into or onto the "auto" covered by "underlying insurance";

**(b)** Being transported or towed by the "auto" covered by "underlying insurance";

**(c)** Being moved from the "auto" covered by "underlying insurance" to the place where such property or "pollutants" arefinally delivered, disposed of or abandoned by the insured;

**(d)** Otherwise in the course of transit; or

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043226

**(e)** Being stored, disposed of, treated or processed in or upon the "auto" covered by "underlying insurance" other than fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for, or result from, the normal electrical, hydraulic or mechanical functioning of the "auto" covered by "underlying insurance" or its parts.

**(2)** Irritants, pollutants or contaminants not described in **(1)** above, unless:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto" covered by "underlying insurance"; and

**(b)** The discharge, dispersal, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Paragraph **13.**, "Loading or unloading," does not apply.

**I.** The following provision is added:

It is hereby understood and agreed that, notwithstanding anything in this policy to the contrary, with respect to such insurance as is afforded by this policy, the terms of this policy, as respects coverage for operations in the State of New York, must conform to the coverage requirements of the applicable insurance laws of the State of New York or the applicable regulations of the New York Department of Financial Services; provided, however, that the company's limits of insurance, as stated in this policy, are excess of the limits of any "underlying insurance" or self-insurance, as stated in the Declarations, or in any attached endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

WON-EX 043227

# NEW YORK APPLICATION AND DECLARATION PAGE ADDENDUM

## SCHEDULE

| Claims Made Coverage(s) |
| --- |
| |

THIS IS A CLAIMS MADE POLICY with respect to the coverage(s) shown above only.

**A.** This policy provides no coverage for claims arising out of incidents, occurrences, acts or omissions which took place prior to the retroactive date stated in the policy. The retroactive date cannot be changed by us during the term of a claims-made relationship and any extended reporting period.

**B.** This policy covers only claims actually made against the insured while the policy remains in effect and all coverages under this policy cease upon the termination of the policy, except for the automatic extended reporting period coverage, unless you purchase additional extended reporting period coverage.

**C. 1.** We will issue an endorsement providing an extended reporting period subject to the following conditions:

    **a.** A 60-day, (90 day if a public entity), automatic extended reporting period is provided without additional charge, but only for the coverage terminated. Within 30 days after coverage is terminated, we must advise you in writing of this right.

    **b.** Within 30 days after coverage is terminated, we must also advise you in writing of the availability of the premium for, and the importance of purchasing additional extended reporting period coverage of three years. (If termination is due to non-payment of premium or fraud on your part, we are not required to provide a premium quotation unless requested by you.) For the purpose of determining when the three-year period begins, the 60-day automatic reporting period is included. You have the greater of 60 days from the effective date of termination of coverage, or 30 days from the date of mailing or delivery of our advice, to submit written acceptance of the three-year extended reporting period coverage.

    **c.** If you choose not to purchase extended reporting period coverage on the claims-made "underlying insurance," coverage under this policy will be provided only on the basis as if such extended reporting period coverage were in effect.

**2. a.** When a claims-made relationship has continued for at least three years, and the policy contains an annual aggregate liability limit, the aggregate liability limit, if any, of the extended reporting period coverage will be equal to one hundred per cent (100%) of the policy's annual aggregate limit.

WON-EX 043228

**b.** When a claims-made relationship has continued for less than three years, and the policy contains an annual aggregate liability limit, the aggregate liability limit, if any, for the extended reporting period coverage will be at least equal to the greater of:

**(1)** The amount of coverage remaining in the policy's annual aggregate limit; or

**(2)** Fifty percent (50%) of the policy's annual aggregate liability limit.

**c.** When the policy has no aggregate liability limit, we will provide extended reporting period coverage without an aggregate liability limit.

**3.** When a claims-made relationship has continued for less than one year, items 1.b. and 2. will not apply upon termination of coverage for non-payment of premium or fraud.

**4.** The extended reporting period will not take effect unless the additional premium determined by us is paid when due. The premium for the extended reporting period will be fully earned when the extended reporting period endorsement takes effect. If that premium is paid when due, the endorsement may not be canceled.

**5. a.** During our claims-made relationship and any extended reporting period, a person employed or otherwise affiliated with you and covered by our claims-made policy during such affiliation, shall continue to be covered under this policy and any extended reporting period coverage after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

**b.** If we issue an excess limits claims-made policy to a corporation, partnership or other entity, we shall provide the required extended reporting period coverage upon termination of coverage to any person covered under this policy, if:

**(1)** Such entity has been placed in liquidation or bankruptcy or permanently ceases operations;

**(2)** The entity or its designated trustee does not purchase extended reporting period coverage;

**(3)** Such person requests the extended reporting coverage within one hundred twenty (120) days of the termination of coverage; and

**(4)** The coverage or risk is one of the following:

**(a)** Directors and Officers liability;

**(b)** Employee benefits liability;

**(c)** Errors and omissions liability; or

**(d)** Fiduciary liability

**c.** We shall have no obligation to provide any notice to any such person of the availability of such extended reporting period coverage.

**d.** We may charge the person for whom extended reporting period coverage is provided a premium commensurate with such coverage.

**6.** The extended reporting period endorsement will not:

WON-EX 043229

    **a.** Extend the policy period;

    **b.** Change the scope of coverage; or

    **c.** Reinstate or increase the limit of insurance except to the extent provided for in the extended reporting period endorsement we issue.

    It applies only to claims that occur before the end of the policy period.

  **7.** A claim first made during the extended reporting period will be deemed to have been made on the last day of the policy period or the cancellation date, whichever comes first.

**D.** Unless additional extended reporting period coverage is for an unlimited time period, potential coverage gaps may arise upon expiration of such extended reporting period.

**E.** Rates for claims made policies are normally lower in early years of a claims made relationship, as compared to occurrence policies, and increase with each renewal until the claims made relationship reaches maturity.

**F.** When this coverage is subject to audit, retrospective rating or experience rating, the premium stated in the Declarations for the extended reporting period may be the estimated premium. If there is a change in the premium for this coverage as a result of any change, in the nature or extent of the risk during the policy period, we will, at the time of such change, specify a revised premium for the extended reporting period coverage.

**G.** If you are changing from an occurrence policy to claims made coverage, New York State Department of Financial Services regulations require us to maintain in the policy file a signed acknowledgment of this addendum by the first named insured.


_____
Signature


_____
Title


_____
Date

WON-EX 043230



One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## PHILADELPHIA INSURANCE COMPANIES
## DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE REJECTION OPTION

Terrorism Premium (Certified Acts) $ _____0_____

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**We will issue (or have issued) your policy with terrorism coverage unless you decline by placing an "X" in the box below.**

**NOTE:** You will want to check with entities that have an interest in your organization as they may require that you maintain terrorism coverage (e.g. mortgagees).

| | I decline to purchase terrorism coverage. I understand that I will have no coverage for losses arising from 'certified' acts of terrorism, EXCEPT as noted above. |
|---|---|

WON-EX 043231

**You, as the Insured, have 30 days after receipt of this notice to consider the selection/rejection of "terrorism" coverage. After this 30 day period, any request for selection or rejection of terrorism coverage WILL NOT be honored.**

**REQUIRED IN GA – LIMITATION ON PAYMENT OF TERRORISM LOSSES** (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses):

The provisions of the Terrorism Risk Insurance Act, as amended, can limit our maximum liability for payment of losses from certified acts of terrorism.  That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in an annual period and individual insurer participation in payment of such losses.  If one or more certified acts of terrorism in an annual period causes the maximum liability for payment of losses from certified acts of terrorism to be reached, and we have satisfied our required level of payments under the law, then we will not pay for the portion of such losses above that maximum.  However, that is subject to possible change at that time, as Congress may, under the Act, determine that payments above the cap will be made.

NAMED INSURED:  _WonderWork, Inc._____

INSURED'S SIGNATURE: _____

DATE: _____

WON-EX 043232