MULLANEY
EXHIBIT 44

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Thursday, May 30, 2013 11:42 AM
**To:** Hudner, Jim
**CC:** Ted Dysart
**Subject:** Re: Introduction

EXHIBIT -44

Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
TransPerfect Legal

Hi Jim,

Thanks for the call yesterday.

I am sorry to make this more work than your usual assignment but the circumstances are very different.

I really do not feel that we will find any "traditional" or "aspirational" peer charities that are growing anywhere near as fast as we are or have the same caliber team. It is unfair and misleading to compare us to decades old charities that have stablized at whatever level of revenues when we are are growing at such a meteoric speed....I believe it is a waste of time for you to continue searching for peer charities or peer managements teams. You will not find them.

Most if not all the charities you have chosen are old, slow growing, stable, small, unimpressive, struggling, etc. in no respect are they a valid "peer" to WonderWork. Not even close.

WonderWork is growing much faster than Smile Train did which is our only really valid peer organization and our business plan is to create 5 Smile Trains, 5 $100,000,000+ a year in revenue non-profits. No one has ever attempted this much less accomplished it. We are off to an impressive start.

Year  Cash raised
2011 $150,000
2012 $8,000,000
2013 $15,000,000
2014 $30,000,000  - we do not have an approved budget for 2013 yet but this may very well be our target. Won't know this umber until our June board meeting. We cannot really do 5 year forecasts at this time because our history is short and it is impossible to accurately predict our growth outside of 12 months. Certainly are intent is to build a much larger organization than Smile Train.

In addition, doing a traditional comp review is not useful as it will be obsolete in a year when the size of the organization dramatically changes which brings up a very important point. My comp if it is tied to meteoric growth   - which I think/hope it should/will be – needs to be reviewed on a yearly basis because if for some reason our growth slows, my comp may or may not be fair and reasonable. This also applies to my staff who I am paying at or near Smile Train levels because we are growing even faster than Smile Train and will end up as much larger organization and in fact, we are creating and building 4 charities – not one: WonderWork, BurnRescue, 1st Step and 20/20/20.

Finally, I am unique – not a traditional, nonprofit executive in any way....

- I created Smile Train and increased revenues from $200,000 A YEAR TO $170,000,000 a year in less than a decade.
- I helped raised almost $1 billion for Smile Train.
- I helped create one of the most cost-efficient and productive charities in the world – according to the New York times  - with one of the lowest payrolls for a charity this size. Less than $4 million.
- I helped acquire 2.7 million donors.
- I created, produced and distributed a documentary about clefts that won an Oscar.
- I wrote a book for Smile Train which earned a $150,000 advance from Hyperion.
- I was the first foreigner to receive one of China's most prestigious awards called Soong Ching Ling Camphor Tree

WW_EMAILS0227453

Instead of using your traditional methodology for this assignment I would respectfully request that you explain to our board why a traditional approach is not feasible for this assignment and recommend another approach that will reflect the unique circumstances that we face today and will face over the next few years and that we make this assignment with your firm not a traditional one time review but a yearly review to ensure that the comp for me and my team is fair and reasonable for the growth and results we are delivering. This will protect the board, the charity and me and my team.

I realize this may involve more work on your part and more expense for us but I believe strongly this is the only practical and reasonable approach for a situation in where there are no peer charities and no comparable management team. And I realize this may jeopardize our schedule which is okay. I will discuss with Ted.

Please let me know what you think.

Thanks,

Brian

**Brian Mullaney**
Co-Founder/CEO
WonderWork     *(formerly Surgery For The Poor)*
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

**From:** <Hudner>, Jim <jim.hudner@pearlmeyer.com>
**Date:** Wednesday, May 22, 2013 7:26 AM
**To:** brian mullaney <brian@wonderwork.org>
**Subject:** RE: Introduction

Brian – Thanks for taking the time to speak with me yesterday. It was helpful context for me. You mentioned you had a document or two (strategic plan?) that you were going to forward along. If you could do so, that would be helpful.

Thanks

Jim

**Jim Hudner**
Managing Director

**Pearl Meyer & Partners**

WW_EMAILS0227453

**Comprehensive Compensation**
132 Turnpike Road, Suite 300
Southborough, MA 01772
508-460-9600 main, ext. 26-485 VoIP
508-630-1485 direct
508-460-9601 fax
jim.hudner@pearlmeyer.com
www.pearlmeyer.com

This email (and any attachments) was not intended or written to be used, and cannot be used, by you or any other person, for the purpose of (1) avoiding any penalties that may be imposed by the Internal Revenue Code, or (2) promoting, marketing or recommending to another party any transaction or other matter addressed herein, and the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

This is a transmission from Pearl Meyer & Partners, and may contain information that is privileged and confidential. Pearl Meyer & Partners assumes no responsibility for damages resulting from unauthorized access, disclosure or tampering, which could have occurred during transmission. If you have received this transmission in error, please destroy it and notify Pearl Meyer & Partners immediately at 212-644-2300.

**From:** Brian Mullaney [mailto:brian@wonderwork.org]
**Sent:** Monday, May 20, 2013 2:30 PM
**To:** Hudner, Jim
**Subject:** Re: Introduction

Hi Jim,

Nice to meet you.

Sure, how about 2:00 tomorrow?

B.


**Brian Mullaney**
Co-Founder/CEO
WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**

WW_EMAILS0227453

**From:** <Hudner>, Jim <jim.hudner@pearlmeyer.com>
**Date:** Monday, May 20, 2013 12:45 PM
**To:** Brian Mullaney <brian@wonderwork.org>
**Subject:** RE: Introduction


Brian – I look forward to speaking with you. Please let me know if you might have 20 – 30 minutes to speak during the following:

Tuesday – 10:00 – 4:00
Wednesday – 9:00 – 11:00

Thanks,


**Jim Hudner**
Managing Director

**Pearl Meyer & Partners**
**Comprehensive Compensation**
132 Turnpike Road, Suite 300
Southborough, MA 01772
508-460-9600 main, ext. 26-485 VoIP
508-630-1485 direct
508-460-9601 fax
jim.hudner@pearlmeyer.com
www.pearlmeyer.com

This email (and any attachments) was not intended or written to be used, and cannot be used, by you or any other person, for the purpose of (1) avoiding any penalties that may be imposed by the Internal Revenue Code, or (2) promoting, marketing or recommending to another party any transaction or other matter addressed herein, and the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

This is a transmission from Pearl Meyer & Partners, and may contain information that is privileged and confidential. Pearl Meyer & Partners assumes no responsibility for damages resulting from unauthorized access, disclosure or tampering, which could have occurred during transmission. If you have received this transmission in error, please destroy it and notify Pearl Meyer & Partners immediately at 212-644-2300.

**From:** Dysart, Ted [mailto:tdysart@heidrick.com]
**Sent:** Monday, May 20, 2013 12:21 PM
**To:** Brian Mullaney (brian@wonderwork.org)
**Cc:** Hudner, Jim
**Subject:** Introduction

Brian, meet Jim. Jim, meet Brian.

Brian, Jim is working with Pete on our engagement. We're trying to setup the peer groups for our compensation study. Jim and I thought it would be helpful for the two of you to chat. I leave it to the two of you to take it from here.

Ted.

**Theodore L. Dysart**
Vice Chairman

**Heidrick & Struggles**
233 S. Wacker Drive
Chicago, IL  60606
tel: +1 (312) 496-1860
mobile: +1 (312) 638-9243
asst: Jackie Cahill  +1 (312) 496-1751
**tdysart@heidrick.com**
follow me on twitter @tldysart or
Join me on LinkedIn
http://www.theodoredysart.com

WW_EMAILS0227453

MULLANEY
EXHIBIT 45

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Monday, June 10, 2013 9:51 AM
**To:** Dysart, Ted
**Subject:** Re: Pearl Meyer Study

Hi Ted,

Thanks.

I assume this is a DRAFT and I am allowed to give you feedback to correct some things and improve it.

Please omit slide 4 as it is inaccurate and misleading. I never formally requested this amount bonus. What I recommended is that we pay all of our Smile Train staff their former compensation as soon as we can afford it as they are a high performing team and these pay packages were all vetted and approved at Smile Train. These numbers reflect my pay package at Smile Train – which was reviewed by a compensation expert and approved – and since my performance at WonderWork is similar or even better, I thought same pay could be justified. He doesn't even mention this.

I don't think you need the A+ stuff, etc. and agree it is confusing.

I am okay with board deciding bonus annually on subjective judgement of performance.

I think that they should discuss that our senior management team is from Smile Train and note some of our/my accomplishments there....

Raised $750 million in less than 10 years, one of the fattest growing charities in history, well managed and well respected.

Shouldn't we note performance at WonderWork someplace too? While we explain peer groups don't help much we don't reference anything else.

How about WonderWork growth EXCEEDING Smile Train growth?

Year 1 $150,000
Year 2 $8,000,000
Year 3 $15,000,000
Year 4 $25,000,000?


How about discussing our compensation philosophy of having a much smaller headcount of more senior people (i.e. Higher salaries) resulting overall in a much lower payroll for the organization? If you compare headcount and total payroll costs for any of these 'peer' organizations, you will see that we are saving WonderWork MILLIONS of dollars. Shouldn't that at least be mentioned and or included?

WonderWork has 9 employees and we have raised $20,000,000+ in our first three years.


How about mentioning that I am wearing many hats – CEO, Chief Development Officer, Chief Marketing Officer, etc. and that I write and produce much of our direct mail?

Please let me know what changes/improvements can be made to this every important document before it is finalized – perhaps we discuss and final after the meeting also?

Thanks for your help,

Brian

EXHIBIT -45
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
**TransPerfect Legal**

**Brian Mullaney**
Co-Founder/CEO
WonderWork
420 Fifth Avenue, 27th Floor

New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org



Miracle surgeries for children.

**TIME** magazine named WonderWork "One of 10 Ideas That Can Change The World."

**From:** <Dysart>, Ted Dysart <tdysart@heidrick.com>
**Date:** Monday, June 10, 2013 8:52 AM
**To:** "jjconeys@gmail.com" <jjconeys@gmail.com>, "ravikant@tatamotors.com' <ravikant@tatamotors.com>
**Cc:** Brian Mullaney <brian@wonderwork.org>
**Subject:** Pearl Meyer Study

JJ, Ravi & Brian,

Attached is the work product from Pearl Meyer & Partners in advance of our board meeting on Thursday. Our partners from Pearl Meyer will dial in to the meeting on Thursday to take us through all of this and answer any questions we may have.

Brian, I will text you the password. JJ & Ravi, I will e-mail it to you in a separate e-mail.

Ted.

**Theodore L. Dysart**
Vice Chairman

**Heidrick & Struggles**
233 S. Wacker Drive
Chicago, IL 60606
tel: +1 (312) 496-1860
mobile: +1 (312) 638-9243
asst: Jackie Cahill  +1 (312) 496-1751
**tdysart@heidrick.com**
follow me on twitter @tldysart or
Join me on LinkedIn
http://www.theodoredysart.com

MULLANEY
EXHIBIT 46



*"A surgery that can change a child's life is one of the best investments anyone can make."* — Warren Buffett
WonderWork Supporter

Miracle surgeries for children.

*"...one of 10 ideas that will change the world."*
— TIME

BOARD OF DIRECTORS
& ADVISORY BOARD

Brian Mullaney
Co-Founder & CEO,
WonderWork

Steven D. Levitt
Author, Freakonomics

John (JJ) Coneys
Former Vice Chair, PwC

Ravi Kant
Former Vice Chair, Tata Motors

Clark Kokich
Executive Chairman, Merchex

Steven Rappaport
Partner, RZ Capital

Richard Steele
Principal, SYPartners

Richard Price
Chief Executive, Asia Pacific,
CBRE Global Investors

Mark Atkinson
Creative Director, Otto

Tamsen Ann Ziff
Chairman, Metropolitan Opera

Kenneth French
Tuck School at Dartmouth

Garrett Moran
President, Year Up

SUPPORTERS

Bryan Cranston
Actor

Christie Brinkley
Actor/Model

Howie Mandel
Comedian

Mariska Hargitay
Actor

Alex Trebek
Host of Jeopardy!

Bette Midler
Entertainer

Chris Meloni
Actor

Candice Bergen
Actor

Jane Kaczmarek
Actor

Sir Ben Kingsley
Actor


**BBB ACCREDITED CHARITY**
give.org

October 19, 2016

Dear Karen,

When you send your donation to a charity, do you ever wonder if it will make any difference?

Here's a true story that shows the impact of your donations to us.



Priya was 9 years old and completely blind when I took this picture of her. I happened to be visiting a partner hospital in Bihar, India the day she and her dad arrived after traveling 100 miles. Her father told me Priya lost her eyesight at the age of 3. He knew a surgery could restore her eyesight, but he could never afford it. He makes less than $1 a day.

For six years, he took Priya from hospital to hospital, begging them to help her. They said no. But one day, he saw an ad from one of our partner hospitals offering free eye surgery for the poor.



The surgery Priya waited six long years for took 15 minutes. Today, her vision is normal, she's back in school and looking forward to a normal, healthy and happy life.

Without your support, Priya would still be blind.

Without your support, 167,115 other children and adults we've helped so far would still be blind.

Unlike many charities that raise enormous amounts of money a year and have large surpluses of unused donations, we need each and every donation we can get. And the more donations we receive – the more surgeries we can provide. It is that simple.

Your support means the world to us.

And your donations are saving blind children and adults no one else will help.

With gratitude,

Brian Mullaney
Co-Founder
212-729-1855
brian@wonderwork.org

*PLEASE KNOW HOW MUCH WE APPRECIATE — AND NEED — YOUR HELP.*

P.S. I've included an envelope in case you have any feedback for us, suggestions, ideas, etc.

**100%** of all donations goes towards our free surgery programs.
A founding donor pays all admin and fundraising expenses.

411 Fifth Avenue, Suite 702, New York, NY 10016   T. 212.729.1855   WonderWork.org

EXHIBIT-46
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
TransPerfect Legal



FOREVER USA

Miracle surgeries for children
**wonder work**
411 Fifth Avenue, Suite 702
New York, NY 10016

Karen Lazarus
WonderWork
411 5th Ave
Ste 702
New York, NY 10016

100158287 CC035

Miracle surgeries for children
**wonder work**
411 Fifth Avenue, Suite 702
New York, NY 10016

Attn: Brian

**100%** of all donations goes
towards our free surgery programs.
A founding donor pays all admin
and fundraising expenses.

MULLANEY
EXHIBIT 47

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Monday, November 30, 2015 10:31 AM
**To:** Ravi Kant
**CC:** jjconeys@gmail.com
**Subject:** Re: Matters arising

Thanks Ravi.

Ted never told me that all of you discussed and agreed upon this course of action. I wish he had.

For the most part, Ted kept me in the dark on how he was handling this matter. I was really surprised to hear that he was hiring or had hired these labor lawyers in Chicago and very concerned about the cost and the optics. I wanted to make sure that you and JJ were on board with this because I was not. When I asked Ted he told me he assumed you were. Maybe you had agreed to hiring outside counsel but had not know who he planned to hire and how much they would charge.

Anyhow, if you and JJ feel that we should use outside counsel to handle this matter than that is what we will do. I am sure we can find some lawyers in New York that can handle this for a reasonable price.
I do recommend that we postpone this until we have some new board members. I have gone 4 years without an agreement, I can wait another few months. Our focus right now should be on strengthening our board.

I was disappointed to receive Ted's resignation letter and regret that he resigned and especially the way he did it. Over the past 20 years, I have worked with more than 30 members of the Smile Train and WonderWork Boards of directors, Board of Governors, Advisory Boards and Medical Advisory Boards. Ted is the first and only director I have ever had problems working with.

From the very beginning, Ted and I had very different views on just about every subject. I will send him a letter thanking him for all of his contributions and wish him well.

As we all agreed at our last meeting, I have approached and been in discussions with the new board prospects that were presented to the board. Overall, I have been getting a lot of very positive interest and enthusiasm about joining our board. By year's end, I would like to send you a short list of 5-6 candidates for our board that we can discuss and vote on at our February meeting.

This will allow 2 months - Jan - Feb - for you and JJ to do any due diligence you would like including meeting with and or speaking with any of these prospects. I know all of these candidates for many years and am very excited about their joining our board.

After they are nominated and voted on in February, these new directors can then attend our year-end June meeting. They will receive staggered terms so some will receive 1, 2 and 3 year terms.

Please let me know if you and JJ are okay with this plan.

If you want to have a phone call to discuss any of this please let me know and I'd be happy to arrange it.

Thank you for your help and support.


Brian


Brian Mullaney
Co-Founder/CEO

**EXHIBIT -47**
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
**TransPerfect Legal**

WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time! <https://www.wonderwork.org/>
More than 6,500,000 people have watched this heart-warming video so far. It was the #1 watched video on the
National Geographic website for 2014.

TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."

On 11/30/15, 1:24 AM, "Ravi Kant" <rkant644@gmail.com> wrote:

>Dear Brian,
>I regret to be responding late to your various mails as I have been travelling extensively overseas and in India.
>First I wish to tell you that the decision to refer to an outside counsel was a collective one of the independent
directors. This was in the interest of the individual and organisation following good practice of corporate
governance . We had hoped that you will take this in the right spirit.
>You have also referred to my comments in the board meeting. My view was that your personal time was
required more urgently and extensively for raising funds from high net worth individuals . Therefore you
needed to have a strong person to take care of direct mail which has been going downhill for sometime .
>With regards,
>Ravi
>
>Sent from my iPad

WW_EMAILS0251267-2

MULLANEY
EXHIBIT 48

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Monday, November 30, 2015 1:21 PM
**To:** DeLois Greenwood; Hana Fuchs; Karen Lazarus
**Subject:** ted dysart

Hi,

Yesterday I received quite a snarky resignation letter from Ted Dysart. He was unhappy because I strenuously objected to the fact that he went ahead and hired a Chicago law firm with two lawyers making $980 and $675 an hour to handle my employment contract. He had a call with Ravi and JJ which I guess gave him authority to do that although he never told me until after the fact.

I think he was also unhappy about 1. We put in place by-laws which make him leave the board in a year or two and 2. He couldn't come on the trip wit Bryan Cranston 3. I was proposing all these new board members.

Anyhow, I have five new board members that will be proposed and hopefully voted upon at our next board meeting in February. They are all very excited about joining our board and helping us.


B.


**Brian**
**Mullaney**
Co-Founder/CEO

WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
More than 6,500,000 people have watched this heart-warming video so far. It was the #1 watched video on the National Geographic website for 2014.



TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."

EXHIBIT -48
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
TransPerfect Legal

MULLANEY
EXHIBIT 49

**From:** Brian Mullaney [brian@wonderwork.org]
**Sent:** Wednesday, December 21, 2016 9:14 AM
**To:** Coneys, JJ
**Subject:** Re: Board update

Hi JJ,

First some good news.

Our lawyers are meeting with HMS lawyers today or tomorrow to discuss a settlement. Their lawyers said they think it would make sense. (bear in mind this may be another game.)

We are offering to pay the entire award - $8.3 million – over four years in the form of grants for cataract surgeries. A settlement would save them millions in legal fees and eliminate the risk of us just closing down and leaving them with close to nothing. Stay tuned.

I understand exactly what you are saying and I greatly appreciate your staying on the board to help with the transition.

But could you please wait just a little bit? There could not be a worse time than right now.

At a time where we really need our board to stand with us, it looks like everyone is jumping ship. First Dickie Steele resigned. Then Ravi Kant resigned. We haven't heard a word from Sabrina, our only female member, and she works with Dickie so I am sure she is about to resign. If we add you to those three it would be almost half our board resigning which would really hurt our chances of convincing a bankruptcy judge that we are a viable organization worth saving.

After all, if you own board members don't believe in us why should anyone else?

Can you please postpone your resignation for a 2-3 months?

We should have a resolution by then, one way or another.

1.  We may be able to reach a settlement.
2.  If no settlement is possible, we can enter Chapter 11 and come back out. Since we have $19 million in the bank, are having a robust, fall fundraising season, and have the willingness and ability to pay 100% of the award, I am confident we will come up with a plan that will get approved.
3.  If for whatever reason, dissolving the organization makes more sense, we can do that too quickly. We are a very simple organization with little debt and 99% liquid.

One way or another, you can resign in 2-3 months.

I am very grateful for all of your help, support and wise advice over the past four years.

If you could just hang on while we get past this crisis it would help us a lot.

Please consider it and call me later when you have a moment to discuss.

Thanks

b

**EXHIBIT -49**
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
**TransPerfect Legal**

**Brian Mullaney**
Co-Founder/CEO

WonderWork
411 Fifth Avenue, Suite 702 **NEW ADDRESS!**
New York, NY 10016
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
More than 15,000,000 people have watched this heart-warming video so far. It was the #1 watched video on the National Geographic website for more than a year.



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**

**From:** "Coneys, JJ" <JJ.Coneys@nexteraenergy.com>
**Date:** Wednesday, December 21, 2016 at 8:56 AM
**To:** Brian Mullaneyo <brian@wonderwork.org>
**Subject:** RE: Board update

Brian,

Making the bankruptcy filing this week seems like the prudent course of action. While it's unfortunate that we were not able to secure the services of the bankruptcy law firm you were hoping to get, CLM should be able to handle this for us.

We need to speak about the board, in particular my continued involvement. As you know, when my board term ended this past June 30th, I was concerned about the constraints my full-time job in Florida has put on me in carrying out my responsibilities as a WonderWork board member. I indicated to you then that I was reluctant to agree to another term but I ultimately agreed to stay on for one more year to ease the transition to a new slate of board members, thinking that my time commitment would be relatively light. With the HMS crisis unfolding, more time, not less, is needed for all board members to help you and the company weather this difficult storm. I have not been able to make that time commitment and do not envision being able to make it in the coming months. It is comforting to see that several of the new board members have stepped up to provide counsel and assistance to you as this has unfolded. But as WonderWork enters this next phase, the transition to the new board has taken place and the time is now right for me to stand down. The new board members are well positioned to carry on without my involvement and have effectively been doing so for the past two months. Put simply, if I am unable to carry out my responsibilities as board member to the best of my abilities, I should not continue to serve on the board. Accordingly, I am resigning from the board with immediate effect.

I am proud of my association with WonderWork and have greatly enjoyed working with you and your team. I will remain a staunch supporter of the WonderWork mission. But I also believe that you and the full board will be better served with board members who are able to invest the time and energy needed at this critical time.

I will call you to discuss this.

WW_EMAILS0238361-2

Regards,

J. J.

From: Brian Mullaney [mailto:brian@wonderwork.org]
Sent: Tuesday, December 20, 2016 10:20 AM
To: Brian Mullaney; Coneys, JJ; Steve Levitt; Clark Kokich; Steve Rappaport; sclark@sypartners.com; Richard Price; Mark Atkinson; mark atkinson; Poehling, James C.
Cc: Ashley Mull; Abreu, Maria
Subject: Board update

CAUTION - EXTERNAL EMAIL

Hi,

Here is the latest.

It turns out our new bankruptcy law firm is unable to help us. With our bank accounts being frozen we were unable to come up with the retainer they required.

Thus, we have returned to our original firm., CLM,, which had been preparing to file our papers for Chapter 11 Bankruptcy Reorganization last week. They graciously took us back.

They will file on our behalf either tomorrow or Thursday at the latest. This should free up our bank accounts and let us continue to operate. It will also prevent HSM from doing anything to harm us.

Please know that there is a risk that HMS will reject any plan that we propose and pressure the judge to close us down.

We have four months to come up with a compelling, credible plan that will show how we can pay HMS most if not all of their award over 3-4 years in the form of grants for cataract surgeries while still supporting our partners, paying back 100% of our impact loans, etc.

I am confident we can do this.

CLM is reaching out to HMS once again to see if they will engage in any settlement talks.

We are revising our PR holding statement to reflect the Chapter 11 filing and I will circulate shortly.

Any questions or concerns please let me know.

I would recommend our next board call be in early January with our lawyers to discuss our reorganization plan and what issues and options there are.

Until then, thank you for your help and support during this difficult time.

Merry Christmas.

Brian

**Brian Mullaney**

WW_EMAILS0238361-3

Co-Founder/CEO

WonderWork
411 Fifth Avenue, Suite 702 **NEW ADDRESS!**
New York, NY 10016
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

Watch two blind sisters see their mom for the first time!
More than 15,000,000 people have watched this heart-warming video so far. It was the #1 watched video on the
National Geographic website for more than a year.



**TIME magazine named WonderWork "One of 10 Ideas That Can Change The World."**
ne named WonderWork "One Of 10 Ideas That Can Change The World."

MULLANEY
EXHIBIT 50

| Patient ID number (Enter one patient ID number) | Patient Name | Age in years (Enter one age format only) | Gender (Enter "M" for male, "F" for female, "U" for unknown) | Diagnosis blindness (Enter one type of diagnosis from this list: "congenital cataract", "developmental cataract", "traumatic cataract", "age-related cataract", specify if other) | Date of diagnosis (YYYYMMDD) | Date of most recent surgery (YYYYMMDD) | Operated eye(s) (Enter "R" for right, enter "L" for left, enter "B" for bilateral) | Visual acuity scale (Enter visual acuity scale: "Snellen feet", "Snellen metric", "Decimal", "LogMAR", specify if other) | Visual acuity (Enter visual acuity scale selected) | Pre-operative: uncorrected right eye visual acuity (Enter uncorrected visual acuity in numeric format for visual acuity scale selected) | Pre-operative uncorrected left eye visual acuity (Enter uncorrected visual acuity in numeric format for visual acuity scale selected) | Post-operative uncorrected right eye visual acuity (Enter uncorrected visual acuity in numeric format for visual acuity scale selected) | Post-operative uncorrected left eye visual acuity (Enter uncorrected visual acuity in numeric format for visual acuity scale selected) | Presence of comorbidity or complication (Enter "1" if patient has comorbidity or complication) | Date of most recent post-operative visit (YYYYMMDD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 703475 | | 50 | M | age-related cataract | 14-Oct-15 | 13-Oct-15 | | Snellen fee | | k ft | 20/60 | 20/60 | 20/80 | | 3-Dec-15 |
| 439114 | | 90 | M | age-related cataract | 13-Sep-15 | 22-Sep-15 | L | Snellen fee | | 20/80 | 20/60 | 20/80 | | 5-Dec-15 |
| 473359 | | 55 | M | age-related cataract | 8-Oct-15 | 8-Oct-15 | R | Snellen fee | | 30 ft | 20/40 | 20/80 | 0 | 20-Nov-15 |
| 606084 | | 50 | F | age-related cataract | 8-Oct-15 | 8-Oct-15 | R | Snellen feet | | 20/200 | 20/80 | 20/80 | 1 | 12-Nov-15 |
| 62r207 | | 80 | F | age-related cataract | 9-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/80 | 20/100 | 20/80 | 1 | 10-Nov-15 |
| 696917 | | 60 | F | age-related cataract | 9-Oct-15 | 9-Oct-15 | R | Snellen feet | | 20/100 | 20/100 | 20/100 | | 30-Nov-15 |
| 706069 | | 69 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | PL+ | 20/200 | 20/200 | 20/100 | 1 | 20-Nov-15 |
| 706073 | | 69 | F | age-related cataract | 8-Oct-15 | 8-Oct-15 | R | Snellen feet | | infnt | 20/80 | 20/60 | 20/80 | | 20-Nov-15 |
| 706074 | | 80 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | L | Snellen feet | | 20/80 | 10 ft | 20/80 | | 30-Nov-15 |
| 706075 | | 75 | F | age-related cataract | 8-Oct-15 | 8-Oct-15 | L | Snellen feet | | 0.5 ft | 0.5 ft | 20/60 | 1 | 20-Nov-15 |
| 706077 | | 70 | F | age-related cataract | 8-Oct-15 | 8-Oct-15 | L | Snellen feet | | Snellen feet | PL+ | 2 ft | 20/80 | | 20-Nov-15 |
| 706082 | | 60 | F | age-related cataract | 8-Oct-15 | 8-Oct-15 | R | Snellen feet | | 20/80 | 20/60 | 20/80 | 0 | 20-Nov-15 |
| 706083 | | 55 | M | age-related cataract | 8-Oct-15 | 8-Oct-15 | R | Snellen feet | | 20/200 | 10 ft | 20/200 | 20/80 | | 20-Nov-15 |
| 706084 | | 60 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/80 | 10 ft | 1 | 20-Nov-15 |
| 706065 | | 70 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | L | Snellen feet | | 20/100 | 10 ft | 20/60 | 0 | 20-Nov-15 |
| 706091 | | 59 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/40 | 20/80 | | 20-Nov-15 |
| 706096 | | 65 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | L | Snellen feet | | 10 ft | 10 ft | 10 ft | | 20-Nov-15 |
| 706100 | | 59 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 2 ft | 20/200 | | 20-Nov-15 |
| 706101 | | 71 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 2 ft | 20/100 | 2 ft | 0 | 20-Nov-15 |
| 706802 | | 74 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/200 | 20/60 | 20/200 | 0 | 20-Nov-15 |
| 706803 | | 54 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/80 | 20/200 | 0 | 20-Nov-15 |
| 706104 | | 65 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | L | Snellen feet | | 30/100 | 20/200 | 20/80 | 0 | 20-Nov-15 |
| 706105 | | 45 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 20/200 | 10 ft | 20/40 | 10 ft | 0 | 20-Nov-15 |
| 706806 | | 63 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 20/80 | 20/80 | 20/80 | 0 | 20-Nov-15 |
| 706808 | | 60 | F | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 20/40 | 20/100 | | 20-Nov-15 |
| 706112 | | 75 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 20/100 | 60 ft | 20/100 | 20/100 | | 20-Nov-15 |
| 706913 | | 80 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 2 ft | 20/200 | | 20-Nov-15 |
| 706175 | | 64 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | L | Snellen feet | | 9 ft | 20/80 | 20/80 | 1 | 20-Nov-15 |
| 706809 | | 58 | M | age-related cataract | 8-Oct-15 | 9-Oct-15 | R | Snellen feet | | 10 ft | 30/60 | 20/80 | | 20-Nov-15 |
| 108214 | | 58 | M | age-related cataract | 19-Oct-15 | 27-Oct-15 | R | Snellen feet | | 7 ft | 20/200 | 20/80 | 0 | 10-Dec-15 |
| 705269 | | 58 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | | Snellen feet | | 10 ft | 10 ft | 10 ft | 0 | 18-Nov-15 |
| 706574 | | 90 | F | age-related cataract | 10-Oct-15 | 14-Oct-15 | L | Snellen feet | | 10 ft | 10 ft | 10 ft | 0 | 18-Nov-15 |
| 706724 | | 60 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/200 | 20/200 | 0 | 16-Nov-15 |
| 706726 | | 55 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/100 | 20/100 | 20/100 | 0 | 17-Nov-15 |
| 707029 | | 85 | F | age-related cataract | 12-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/200 | 20/200 | 20/200 | 20/80 | 0 | 19-Nov-15 |
| 707064 | | 79 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/80 | PL+ | 10 ft | | 31-Oct-15 |
| 707198 | | 72 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/80 | 20/200 | | 19-Oct-15 |
| 707198 | | 67 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/100 | 20/40 | 20/40 | | 18-Nov-15 |
| 707200 | | 50 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 30/100 | 20/80 | 20/80 | 0 | 17-Nov-15 |
| 707202 | | 60 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 2 ft | 20/40 | | 18-Nov-15 |
| 707204 | | 55 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/100 | 20/80 | 20/100 | 0 | 17-Nov-15 |
| 707205 | | 64 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/60 | 20/60 | 20/60 | | 17-Nov-15 |
| 707206 | | 85 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 2 ft | 20/200 | | 19-Nov-15 |
| 707207 | | 45 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/100 | 20/60 | 20/80 | | 16-Nov-15 |
| 707108 | | 60 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 2 ft | 20/200 | | 17-Nov-15 |
| 707210 | | 50 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/100 | 20/200 | 20/80 | | 17-Nov-15 |
| 707210 | | 65 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/80 | 20/40 | | 17-Nov-15 |
| 707211 | | 75 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/200 | 20/200 | 0 | 19-Nov-15 |
| 707212 | | 60 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/80 | PL+ | | 19-Nov-15 |
| 707214 | | 35 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | PL+ | 20/ft | 20/30 | 20/40 | 0 | 18-Nov-15 |
| 707215 | | 60 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/80 | 20/80 | 0 | 18-Nov-15 |
| 7-7216 | | 82 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/100 | 20/200 | 8 ft | 0 | 21-Oct-15 |
| 707217 | | 90 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/100 | 20/100 | | 19-Nov-15 |
| 107218 | | 65 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 2 ft | 20/200 | | 19-Nov-15 |
| 703119 | | 50 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 4 ft | 20/200 | 20/40 | | 26-Nov-15 |
| 707220 | | 60 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/80 | 20/80 | | 16-Nov-15 |
| 707222 | | 70 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/200 | 20/200 | 20/200 | | 17-Nov-15 |
| 707224 | | 65 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/200 | 20/200 | 20/200 | 0 | 18-Nov-15 |
| 707225 | | 46 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 7 ft | 5 ft | 7 ft | | 19-Nov-15 |
| 707227 | | 50 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 8 ft | 8 ft | | 19-Nov-15 |
| 707228 | | 60 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | PL+ | 20/40 | 20/100 | 20/40 | 0 | 19-Nov-15 |
| 707229 | | 65 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 9 ft | 20/60 | 20/60 | 9 ft | 0 | 21-Oct-15 |
| 707231 | | 72 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/200 | 20/80 | 20/200 | | 18-Nov-15 |
| 707233 | | 60 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 4 ft | 4 ft | | 19-Nov-15 |
| 707235 | | 50 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 20/80 | 20/80 | 20/80 | | 18-Nov-15 |
| 707236 | | 65 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen feet | | 20/60 | 2 ft | 20/100 | | 19-Nov-15 |
| 707240 | | 65 | M | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen feet | | 8 ft | 60 ft | 8 ft | | 17-Nov-15 |

**EXHIBIT -50**

Brian Mullaney

8/17/17

S. Anelle Santos, RPR, CSR

**TransPerfect Legal**

| ID | | Age | Sex | Diagnosis | Date | Date | Eye | Test | | | | | | Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 707241 | | 60 | F | age-related cataract | 10-Oct-15 | 14-Oct-15 | R | Snellen test | 20/200 | 20/200 | 20/80 | 20/200 | 0 | 15-Oct-15 |
| 707242 | | 70 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen test | PL+ | PL+ | 20/80 | PL+ | 1 | 19-Nov-15 |
| 707246 | | 70 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | R | Snellen test | 6 ft | 20/100 | 20/200 | 20/200 | 0 | 19-Nov-15 |
| 707247 | | 50 | F | age-related cataract | 13-Oct-15 | 14-Oct-15 | L | Snellen test | PL+ | PL+ | 20/80 | | 0 | 19-Nov-15 |
| 192181 | | 62 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/40 | 10 ft | 20/40 | 20/60 | 1 | 20-Oct-15 |
| 192283 | | 55 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 6 ft | 20/40 | 20/60 | 20/40 | 0 | 20-Oct-15 |
| 521561 | | 67 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/60 | | 20/60 | 20/60 | 0 | 20-Oct-15 |
| 546970 | | 65 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 12 ft | 20/80 | 20/60 | 20/80 | 0 | 20-Oct-15 |
| 560965 | | 70 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/60 | | 20/80 | 20/60 | 0 | 20-Oct-15 |
| 580337 | | 60 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/60 | 2 ft | 20/40 | 20/200 | 1 | 9-Nov-15 |
| 587144 | | 50 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 6 ft | 20/80 | 20/40 | 20/60 | 0 | 20-Oct-15 |
| 639631 | | 60 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/80 | 4 ft | 20/80 | 20/40 | 0 | 20-Oct-15 |
| 706100 | | 50 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | HM+ | 20/200 | 20/200 | 20/100 | 0 | 20-Oct-15 |
| 706101 | | 70 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/200 | 20/100 | 20/200 | 20/30 | 0 | 20-Oct-15 |
| 706102 | | 60 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 0.5 ft | 10 ft | 20/200 | 10 ft | 0 | 20-Oct-15 |
| 706103 | | 64 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | PL+ | 10 ft | 20/60 | 10 ft | 1 | 20-Oct-15 |
| 706104 | | 60 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 6 ft | 5 ft | 20/200 | 5 ft | 0 | 20-Oct-15 |
| 706105 | | 62 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/100 | 6 ft | 20/100 | 20/100 | 0 | 20-Oct-15 |
| 706106 | | 60 | F | age-related cataract | 18-Oct-15 | 20-Oct-15 | L | Snellen test | 6 ft | 10 ft | 20/200 | | 0 | 9-Nov-15 |
| 706107 | | 74 | M | age-related cataract | 18-Oct-15 | 02-Oct-15 | R | Snellen test | 6 ft | 20/60 | 20/60 | 20/60 | 0 | 20-Oct-15 |
| 706108 | | 60 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/100 | 20/60 | 20/40 | 20/60 | 0 | 20-Oct-15 |
| 706111 | | 56 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | HM+ | 10 ft | 20/100 | 15 ft | 0 | 20-Oct-15 |
| 706112 | | 54 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/60 | 20/60 | 20/40 | 20/60 | 0 | 20-Oct-15 |
| 706113 | | 70 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 6 ft | 4 ft | 20/60 | 4 ft | 0 | 20-Oct-15 |
| 706116 | | 52 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/100 | 20/60 | 20/60 | 20/60 | 0 | 20-Oct-15 |
| 706117 | | 66 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 15 ft | 20/100 | 20/100 | 20/100 | 1 | 5-Dec-15 |
| 706118 | | 50 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 6 ft | 6 ft | 6 ft | 20/60 | 0 | 18-Oct-15 |
| 706119 | | 72 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 15 ft | 20/60 | 20/60 | 20/60 | 1 | 19-Oct-15 |
| 706121 | | 60 | F | age-related cataract | 18-Oct-15 | 18-Oct-15 | R | Snellen test | 6 ft | 5 ft | 20/100 | 5 ft | 0 | 19-Oct-15 |
| 706122 | | 60 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 10 ft | 10 ft | 20/40 | 10 ft | 0 | 20-Oct-15 |
| 706123 | | 70 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 6 ft | HM+ | 6 ft | | 0 | 20-Oct-15 |
| 706125 | | 54 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/60 | 20/40 | 20/60 | 20/40 | 0 | 20-Oct-15 |
| 706126 | | 60 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 2 ft | 2 ft | 20/40 | 2 ft | 0 | 20-Oct-15 |
| 706127 | | 60 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 10 ft | 20 ft | 20/60 | 20 ft | 0 | 20-Oct-15 |
| 706128 | | 70 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/100 | PL+ | 20/100 | 20/80 | 0 | 20-Oct-15 |
| 706129 | | 70 | M | age-related cataract | 18-Oct-15 | 18-Oct-15 | L | Snellen test | 20/100 | 6 ft | 20/100 | 20/60 | 0 | 20-Oct-15 |
| 706130 | | 60 | F | age-related cataract | 18-Oct-15 | 18-Oct-15 | R | Snellen test | 6 ft | 10 ft | 20/200 | 10 ft | 0 | 20-Oct-15 |
| 706132 | | 70 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/80 | HM+ | 20/60 | 6 ft | 0 | 20-Oct-15 |
| 706884 | | 74 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/200 | 20/200 | 20/200 | 20/60 | 1 | 20-Oct-15 |
| 706885 | | 58 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 20-Oct-15 |
| 706888 | | 60 | F | age-related cataract | 18-Oct-15 | 18-Oct-15 | R | Snellen test | 2 ft | 20/100 | 20/80 | 20/600 | 0 | 20-Oct-15 |
| 706139 | | 70 | M | age-related cataract | 18-Oct-15 | 18-Oct-15 | R | Snellen test | HM+ | 6 ft | 20/60 | 6 ft | 0 | 20-Oct-15 |
| 706140 | | 68 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/100 | 20/60 | 20/60 | 20/60 | 0 | 20-Oct-15 |
| 706141 | | 65 | M | age-related cataract | 18-Oct-15 | 21-Oct-15 | R | Snellen test | 20/60 | 20/60 | 20/80 | 20/60 | 0 | 22-Oct-15 |
| 706143 | | 48 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/60 | HM+ | 20/60 | 20/40 | 0 | 20-Oct-15 |
| 706144 | | 63 | F | age-related cataract | 18-Oct-15 | 18-Oct-15 | L | Snellen test | 6 ft | 20/60 | 20/60 | | 0 | 20-Oct-15 |
| 706145 | | 57 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/30 | 10 ft | 20/30 | 20/30 | 0 | 21-Oct-15 |
| 706146 | | 52 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 10 ft | 20/100 | 20/60 | 20/60 | 0 | 20-Oct-15 |
| 706148 | | 55 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/60 | 20/100 | 20/80 | 20/100 | 1 | 27-Nov-15 |
| 706150 | | 45 | F | age-related cataract | 18-Oct-15 | 19-Oct-15 | L | Snellen test | 20/40 | HM+ | 20/40 | 20/60 | 0 | 20-Oct-15 |
| 706151 | | 65 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 6 ft | 20/60 | 20/60 | 20/80 | 0 | 20-Oct-15 |
| 706171 | | 60 | M | age-related cataract | 18-Oct-15 | 19-Oct-15 | R | Snellen test | 20/200 | 20/60 | 20/40 | 20/60 | 0 | 20-Oct-15 |
| 568031 | | 40 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/200 | 20/100 | 20/60 | 20/60 | 0 | 22-Oct-15 |
| 636511 | | 57 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | 20/100 | 20/60 | 20/60 | 20/60 | 0 | 22-Oct-15 |
| 705401 | | 60 | F | age-related cataract | 6-Oct-15 | 21-Oct-15 | R | Snellen test | 6 ft | 20/100 | | | 0 | 22-Oct-15 |
| 706905 | | 75 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 6 ft | 20/60 | 20/60 | 20/60 | 0 | 22-Oct-15 |
| 706606 | | 60 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | 6 ft | PL+ | 6 ft | 20/60 | 0 | 22-Oct-15 |
| 706610 | | 60 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | 20/200 | 20/100 | PL+ | 20/60 | 0 | 24-Oct-15 |
| 706617 | | 75 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/200 | 20/200 | 20/200 | 20/60 | 0 | 22-Oct-15 |
| 706614 | | 50 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | 20/60 | 20/60 | 20/60 | 20/60 | 0 | 1-Dec-15 |
| 706617 | | 60 | M | age-related cataract | 20-Oct-15 | 23-Oct-15 | L | Snellen test | 20/40 | HM+ | 20/40 | 20/40 | 0 | 24-Oct-15 |
| 706618 | | 65 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | HM+ | 20/60 | 20/60 | 20/60 | 0 | 21-Oct-15 |
| 706631 | | 88 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/200 | 20/90 | 20/90 | 20/80 | 1 | 22-Oct-15 |
| 706632 | | 65 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/60 | 10 ft | 20/200 | 20/60 | 0 | 22-Oct-15 |
| 706696 | | 55 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/60 | HM+ | 20/90 | 20/60 | 0 | 22-Oct-15 |
| 706697 | | 75 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | R | Snellen test | 6 ft | 6 ft | 20/40 | 6 ft | 0 | 22-Oct-15 |
| 706629 | | 90 | F | age-related cataract | 20-Oct-15 | 22-Oct-15 | L | Snellen test | 6 ft | 6 ft | 6 ft | 6 ft | 0 | 23-Oct-15 |
| 706630 | | 80 | F | age-related cataract | 20-Oct-15 | 22-Oct-15 | L | Snellen test | 20/60 | 6 ft | 20/60 | 20/60 | 0 | 23-Oct-15 |
| 706638 | | 65 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/60 | 20/100 | 20/100 | 20/60 | 0 | 22-Oct-15 |
| 706637 | | 60 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/200 | 4 ft | 20/60 | 20/60 | 0 | 22-Oct-15 |
| 706633 | | 54 | M | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/60 | 20/60 | 20/60 | 20/60 | 0 | 22-Oct-15 |
| 706634 | | 51 | F | age-related cataract | 20-Oct-15 | 23-Oct-15 | L | Snellen test | 20/100 | 20/100 | 20/100 | 20/60 | 0 | 22-Oct-15 |
| 706665 | | 55 | F | age-related cataract | 20-Oct-15 | 21-Oct-15 | L | Snellen test | 20/60 | 20/40 | 20/40 | 20/60 | 0 | 22-Oct-15 |

| ID | Age | Sex | Diagnosis | Date | Date | Eye | Test | | | | | | Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 713200 | 69 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 8 ft. | 4 ft. | 20/80 | 4 ft. | 0 | 24-Nov-15 |
| 713201 | 55 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 10 ft. | 8 ft. | 20/60 | | 0 | 24-Nov-15 |
| 713202 | 60 | F | age-related cataract | 16-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/100 | 1 ft. | 10/100 | 20/80 | 0 | 24-Nov-15 |
| 713203 | 70 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/100 | 20/100 | 20/80 | 20/100 | 0 | 17-Nov-15 |
| 713204 | 55 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | 20/100 | 20/80 | 20/100 | 0 | 24-Nov-15 |
| 713206 | 72 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/100 | 20/100 | 20/80 | 20/100 | 0 | 24-Nov-15 |
| 713207 | 75 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/200 | 20/200 | 20/40 | | 0 | 24-Nov-15 |
| 713208 | 50 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/200 | 20/50 | 20/40 | 20/200 | 0 | 24-Nov-15 |
| 713209 | 65 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/100 | NIH | 20/100 | 20/100 | | 24-Nov-15 |
| 713210 | 50 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/200 | 20/100 | 10 ft. | 10 ft. | 0 | 2-Dec-15 |
| 713211 | 50 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/30 | | 20/30 | 20/60 | 0 | 24-Nov-15 |
| 713212 | 83 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | 8 ft. | 20/80 | 20/80 | 0 | 24-Nov-15 |
| 713214 | 65 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/200 | 20/80 | 20/40 | 20/80 | 0 | 24-Nov-15 |
| 713215 | 64 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/100 | 2 ft. | 20/100 | 20/80 | 1 | 24-Nov-15 |
| 713216 | 73 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | NIH | 8 ft. | 20/100 | 8 ft. | 0 | 24-Nov-15 |
| 713217 | 60 | F | age-related cataract | 16-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | 10 ft. | 20/80 | 20/80 | | 24-Nov-15 |
| 713219 | 65 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | NIH | 20/60 | 20/60 | 0 | 24-Nov-15 |
| 713220 | 65 | F | age-related cataract | 16-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | 20/200 | 20/50 | 20/40 | 0 | 24-Nov-15 |
| 713221 | 50 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 20/100 | 20/80 | 20/80 | 20/80 | 0 | 24-Nov-15 |
| 713222 | 67 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/60 | 8 ft. | 20/60 | 20/80 | 0 | 17-Nov-15 |
| 713225 | 60 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | NIH | 20/30 | 20/60 | 20/30 | 0 | 24-Nov-15 |
| 713226 | 50 | F | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | 10 ft. | 20/100 | 20/100 | | 0 | 24-Nov-15 |
| 713227 | 45 | M | age-related cataract | 15-Nov-15 | 16-Nov-15 | R | Snellen feet | PL+ | 20/80 | 20/200 | 20/80 | 0 | 29-Nov-15 |
| 704233 | 65 | M | age-related cataract | 19-Nov-15 | 20-Nov-15 | L | Snellen feet | 20/80 | 20/100 | 20/80 | 20/80 | 0 | 24-Nov-15 |
| 713601 | 74 | M | age-related cataract | 19-Nov-15 | 20-Nov-15 | R | Snellen feet | 20/200 | 20/100 | 10 ft. | | 0 | 9-Dec-15 |
| 628100 | 60 | F | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | NIH | 8 ft. | 20/80 | 0 | 1-Dec-15 |
| 704250 | 40 | F | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 10 ft. | 20/40 | 10 ft. | 0 | 1-Dec-15 |
| 71845 | 75 | M | age-related cataract | 28-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/80 | 10 ft. | 20/80 | 20/60 | 0 | 1-Dec-15 |
| 715480 | 85 | F | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 20/200 | 20/200 | 20/80 | 20/200 | 0 | 1-Dec-15 |
| 715482 | 62 | F | age-related cataract | 28-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/80 | 10 ft. | 20/80 | 20/60 | 1 | 1-Dec-15 |
| 715483 | 70 | F | age-related cataract | 28-Nov-15 | 30-Nov-15 | L | Snellen feet | 8 ft. | 20/80 | 20/100 | | 0 | 1-Dec-15 |
| 715455 | 59 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 20/60 | 20/80 | 20/60 | 0 | 1-Dec-15 |
| 715456 | 76 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/200 | 8 ft. | 20/200 | 20/30 | 0 | 1-Dec-15 |
| 715457 | 60 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/80 | 8 ft. | 20/80 | 20/40 | 0 | 1-Dec-15 |
| 715458 | 65 | F | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 10 ft. | 20/80 | 20/60 | 20/60 | 0 | 1-Dec-15 |
| 715459 | 38 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 10 ft. | 20/80 | 10 ft. | 0 | 1-Dec-15 |
| 715460 | 60 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 20/200 | 20/200 | 20/80 | 20/200 | 0 | 1-Dec-15 |
| 715461 | 60 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/100 | 8 ft. | 20/100 | 20/60 | 0 | 1-Dec-15 |
| 715462 | 73 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | L | Snellen feet | 20/200 | 20/200 | 20/200 | 20/80 | 0 | 1-Dec-15 |
| 715463 | 73 | M | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 20/200 | 20/200 | 20/200 | 0 | 1-Dec-15 |
| 715464 | 66 | M | age-related cataract | 28-Nov-15 | 30-Nov-15 | L | Snellen feet | 10 ft. | PL+ | 10 ft. | 20/80 | 0 | 1-Dec-15 |
| 715465 | 52 | M | age-related cataract | 28-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 8 ft. | 20/40 | 8 ft. | 0 | 1-Dec-15 |
| 715466 | 60 | F | age-related cataract | 28-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 20/40 | 20/80 | 20/40 | 0 | 1-Dec-15 |
| 715467 | 42 | F | age-related cataract | 29-Nov-15 | 30-Nov-15 | R | Snellen feet | 8 ft. | 10 ft. | 20/80 | 10 ft. | 0 | 1-Dec-15 |
| 715607 | 59 | M | age-related cataract | 21-Nov-15 | 24-Nov-15 | R | Snellen feet | 20/200 | 20/80 | 20/30 | 20/80 | 0 | 2-Dec-15 |
| 713690 | 50 | F | age-related cataract | 15-Oct-15 | 16-Nov-15 | R | Snellen feet | NIH | NIH | PL+ | | 0 | 18-Nov-15 |
| 579327 | 1 | M | developmental cataract | 14-Nov-15 | 20-Nov-15 | R | Snellen feet | FPL-ight | FPL-ight | 10 ft. | FPL-ight | 0 | 16-Nov-15 |
| 706429 | 65 | F | age-related cataract | 5-Nov-15 | 24-Nov-15 | L | Snellen feet | 20/200 | 10 ft. | 20/200 | 20/200 | 0 | 3-Dec-15 |
| 701899 | 63 | M | age-related cataract | 23-Nov-15 | 25-Nov-15 | L | Snellen feet | 20/200 | 20/200 | 20/200 | 20/80 | 0 | 3-Dec-15 |
| 424788 | 50 | F | age-related cataract | 9-Nov-15 | 10-Nov-15 | R | Snellen feet | 20/100 | 20/100 | 20/80 | 20/100 | 0 | 15-Dec-15 |
| 642059 | 60 | F | age-related cataract | 6-Nov-15 | 11-Nov-15 | R | Snellen feet | 20/200 | 20/40 | 20/100 | 20/200 | 0 | 9-Dec-15 |
| 710135 | 65 | M | age-related cataract | 19-Oct-15 | 26-Nov-15 | R | Snellen feet | NIH | 20/40 | 20/60 | 20/40 | 1 | 4-Dec-15 |
| 710732 | 50 | F | age-related cataract | 2-Nov-15 | 10-Nov-15 | R | Snellen feet | PL+ | 8 ft. | 20/100 | 8 ft. | 0 | 18-Nov-15 |
| 710731 | 50 | F | age-related cataract | 2-Nov-15 | 10-Nov-15 | R | Snellen feet | 20/100 | 9 ft. | 20/50 | 20/50 | 0 | 19-Nov-15 |
| 710911 | 65 | M | age-related cataract | 19-Oct-15 | 10-Nov-15 | L | Snellen feet | 20/200 | 8 ft. | 20/200 | 20/100 | 0 | 19-Nov-15 |
| 712185 | 50 | M | age-related cataract | 9-Nov-15 | 17-Nov-15 | L | Snellen feet | 8 ft. | 8 ft. | 8 ft. | 20/200 | 0 | 19-Nov-15 |
| 712804 | 50 | F | age-related cataract | 13-Nov-15 | 25-Nov-15 | L | Snellen feet | 20/100 | 10 ft. | 20/100 | 20/80 | 0 | 3-Dec-15 |
| 714108 | 60 | F | age-related cataract | 11-Nov-15 | 24-Nov-15 | L | fix at object | 8 ft. | NIH | 8 ft. | 10 ft. | 1 | 9-Dec-15 |
| 712666 | 65 | M | age-related cataract | 13-Nov-15 | 18-Nov-15 | L | Snellen feet | 20/80 | PL+ | 20/100 | 20/80 | 0 | 19-Nov-15 |
| 699655 | 60 | M | age-related cataract | 2-Nov-15 | 16-Nov-15 | L | Snellen feet | 20/80 | 10 ft. | 8 ft. | 10 ft. | 0 | 18-Nov-15 |
| 713089 | 80 | F | age-related cataract | 14-Nov-15 | 24-Nov-15 | L | Snellen feet | 20/60 | 20/80 | 20/60 | 20/60 | 0 | 2-Dec-15 |
| 712075 | 70 | F | age-related cataract | 21-Nov-15 | 24-Nov-15 | L | Snellen feet | 20/200 | PL+ | 20/100 | 20/60 | 0 | 3-Dec-15 |
| 711978 | 54 | M | age-related cataract | 7-Nov-15 | 17-Nov-15 | R | Snellen feet | 10 ft. | 20/40 | 20/60 | | 0 | 2-Dec-15 |
| 527914 | 50 | F | age-related cataract | 27-Oct-15 | 5-Nov-15 | R | fix at object | NIH | 20/60 | 20/80 | | 0 | 23-Nov-15 |
| 707549 | 45 | M | age-related cataract | 15-Oct-15 | 10-Nov-15 | L | Snellen feet | 20/60 | 8 ft. | 20/80 | 20/60 | 0 | 18-Nov-15 |
| 710263 | 70 | F | age-related cataract | 29-Oct-15 | 9-Nov-15 | R | Snellen feet | PL+ | 8 ft. | 20/100 | 8 ft. | 0 | 7-Dec-15 |
| 710158 | 50 | F | age-related cataract | 12-Nov-15 | 18-Nov-15 | R | Snellen feet | 20/100 | 20/100 | 20/100 | 20/100 | 0 | 10-Dec-15 |
| 713786 | 70 | F | age-related cataract | 19-Nov-15 | 25-Nov-15 | R | Snellen feet | PL+ | 20/80 | 20/80 | 20/60 | 0 | 2-Dec-15 |
| 710060 | 55 | M | age-related cataract | 24-Nov-15 | 8-Dec-15 | L | Snellen feet | PL+ | 20/200 | 20/80 | 20/200 | 0 | 28-Nov-15 |
| 530609 | 55 | F | age-related cataract | 13-Nov-15 | 17-Nov-15 | R | Snellen feet | 20/80 | 20/80 | 20/80 | 20/80 | 0 | 19-Nov-15 |
| 673713 | 55 | F | age-related cataract | 7-Nov-15 | 10-Nov-15 | L | Snellen feet | 20/100 | 8 ft. | 20/100 | 20/80 | 0 | 18-Nov-15 |
| 676104 | 55 | M | age-related cataract | 28-Oct-15 | 10-Nov-15 | L | Snellen feet | 20/60 | EH6 ft. | 20/60 | 20/60 | 0 | 11-Dec-15 |
| 715682 | 74 | F | age-related cataract | 6-Nov-15 | 24-Nov-15 | L | Snellen feet | 20/80 | 20/100 | 20/50 | 20/80 | 1 | 7-Dec-15 |

| ID | Age | Sex | Diagnosis | Date 1 | Date 2 | Eye | Test | VA1 | VA2 | VA3 | VA4 | # | Date 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 708644 | 59 | M | age-related cataract | 20-Oct-15 | 18-Nov-15 | R | Snellen feet | 20/60 | 20/200 | 20/200 | 20/200 | 0 | 3-Dec-15 |
| 708649 | 65 | M | age-related cataract | 26-Oct-15 | 18-Nov-15 | R | Snellen feet | 6 ft | 20/60 | 20/100 | 20/90 | 1 | 3-Dec-15 |
| 708653 | 67 | M | age-related cataract | 27-Oct-15 | 18-Nov-15 | R | Snellen feet | PL+ | 20/100 | 20/60 | 20/100 | 0 | 18-Nov-15 |
| 582417 | 60 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 6 ft | 20/40 | 20/40 | 20/40 | 0 | 04-Dec-15 |
| 600497 | 55 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/60 | 10 ft | 20/60 | 20/60 | 0 | 04-Dec-15 |
| 600727 | 60 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/40 | 6 ft | 20/60 | 20/60 | 1 | 15-Dec-15 |
| 609028 | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/100 | 20/60 | 20/60 | 20/60 | 0 | 01-Jan-16 |
| 716031 | 62 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 10 ft | 20/60 | 0 | 04-Dec-15 |
| 716032 | 75 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 10 ft | 10 ft | 6 ft | 6 ft | 1 | 04-Dec-15 |
| 716033 | 60 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 10 ft | 20/200 | 20/60 | 20/60 | 0 | 04-Dec-15 |
| 716035 | 65 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/60 | PL+ | 20/60 | 20/90 | 0 | 04-Dec-15 |
| 716036 | 60 | F | age-related cataract | 03-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 04-Dec-15 |
| 716037 | 73 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 20/100 | 20/200 | 20/60 | 20/200 | 0 | 04-Dec-15 |
| 716041 | 68 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/100 | CFCF | 20/200 | 20/60 | 0 | 04-Dec-15 |
| 716042 | 65 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/80 | 10 ft | 1 | 04-Dec-15 |
| 716043 | 71 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 6 ft | 6 ft | 10 ft | 20/60 | 0 | 04-Dec-15 |
| 716044 | 76 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 04-Dec-15 |
| 716045 | 65 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 20/60 | 20/60 | 20/60 | 20/60 | 0 | 04-Dec-15 |
| 716047 | 57 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/100 | 10 ft | 20/100 | 20/30 | 0 | 04-Dec-15 |
| 716049 | 55 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 6 ft | 20/200 | 20/60 | 20/200 | 0 | 04-Dec-15 |
| 716050 | 72 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 20/60 | CFCF | 20/80 | CFCF | 0 | 02-Dec-15 |
| 716051 | 50 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 10 ft | 12 ft | 10 ft | 20/60 | 0 | 04-Dec-15 |
| 716053 | 60 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 20/40 | 20/60 | 0 | 04-Dec-15 |
| 716054 | 60 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 20/200 | 20/200 | 20/60 | 20/200 | 0 | 04-Dec-15 |
| 716055 | 70 | F | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/60 | CFCF | 20/60 | 20/60 | 0 | 04-Dec-15 |
| 716058 | 70 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 20/20 | 20/200 | 20/40 | 20/200 | 0 | 04-Dec-15 |
| 716058 | 60 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/100 | 6 ft | 20/100 | 20/40 | 1 | 04-Dec-15 |
| 716059 | 60 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 6 ft | 20/60 | 6 ft | 20/60 | 0 | 04-Dec-15 |
| 716060 | 76 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/30 | 10 ft | 20/20 | 20/90 | 0 | 04-Dec-15 |
| 716068 | 80 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | L | Snellen feet | 20/200 | PL+ | 20/200 | 20/200 | 1 | 04-Dec-15 |
| 716062 | 60 | M | age-related cataract | 02-Dec-15 | 03-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 6 ft | 10 ft | 1 | 04-Dec-15 |
| 718089 | 60 | F | age-related cataract | 02-Dec-15 | 04-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 20/60 | 20/200 | 0 | 04-Dec-15 |
| 718140 | 60 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | 6 ft | 20/200 | 20/60 | 20/200 | 0 | 15-Dec-15 |
| 718151 | 55 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/40 | 10 ft | 20/40 | 20/60 | 0 | 15-Dec-15 |
| 718152 | 70 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/810 | 6 ft | 20/100 | HM+ | 0 | 15-Dec-15 |
| 718154 | 53 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | 20/400 | 20/200 | 6 ft | 20/100 | 1 | 15-Dec-15 |
| 718155 | 52 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | PL+ | 20/200 | 20/60 | 20/200 | 0 | 15-Dec-15 |
| 718156 | 60 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/200 | 6 ft | 20/60 | 20/60 | 0 | 15-Dec-15 |
| 718157 | 60 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/40 | 6 ft | 20/40 | 20/60 | 0 | 15-Dec-15 |
| 718158 | 60 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 10 ft | 6 ft | 10 ft | 20/60 | 0 | 15-Dec-15 |
| 718159 | 65 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | PL+ | 20/60 | 20/60 | 20/60 | 0 | 15-Dec-15 |
| 718160 | 50 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/40 | PL+ | 20/40 | 20/60 | 0 | 15-Dec-15 |
| 718161 | 86 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 20/200 | 20/200 | 0 | 15-Dec-15 |
| 718162 | 65 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | 10 ft | 6 ft | 20/100 | 6 ft | 0 | 15-Dec-15 |
| 718163 | 63 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/100 | 10 ft | 20/100 | 20/60 | 0 | 15-Dec-15 |
| 718164 | 63 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 6 ft | 20/200 | 6 ft | 20/60 | 0 | 15-Dec-15 |
| 718165 | 65 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/100 | 20/200 | 20/100 | 20/60 | 1 | 15-Dec-15 |
| 718166 | 62 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | L | Snellen feet | 20/100 | PL+ | 20/100 | 20/60 | 0 | 15-Dec-15 |
| 718168 | 55 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | PL+ | 20/60 | 10 ft | 6 ft | 1 | 15-Dec-15 |
| 718169 | 56 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | PL+ | PL+ | 20/60 | PL+ | 0 | 18-Dec-15 |
| 718170 | 68 | M | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | CFCF | 20/200 | PL+ | 20/200 | 0 | 05-Jan-16 |
| 718571 | 63 | F | age-related cataract | 13-Dec-15 | 14-Dec-15 | R | Snellen feet | 10 ft | 20/100 | 20/100 | 20/60 | 0 | 15-Dec-15 |
| 718572 | 60 | F | age-related cataract | 03-Dec-15 | 04-Dec-15 | R | Snellen feet | 10 ft | 20/40 | 20/60 | 20/40 | 0 | 15-Dec-15 |
| 718759 | 65 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/60 | HM+ | 20/60 | 20/60 | 0 | 18-Dec-15 |
| 718761 | 70 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 20/60 | 20/200 | 0 | 18-Dec-15 |
| 718762 | 80 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 6 ft | 20/60 | 20/90 | 20/90 | 0 | 18-Dec-15 |
| 718764 | 60 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 20/200 | 20/60 | 20/90 | 20/80 | 0 | 18-Dec-15 |
| 718765 | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 20/200 | 6 ft | 20/60 | 6 ft | 0 | 18-Dec-15 |
| 716766 | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Near feet | 20/200 | 20/100 | 20/200 | 20/100 | 0 | 16-Dec-15 |
| 718767 | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Near feet | 20/100 | 6 ft | 20/100 | 1.5 ft | 0 | 26-Dec-15 |
| 718768 | 70 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Near feet | 10 ft | 20/60 | 20/80 | 20/60 | 0 | 18-Dec-15 |
| 718769 | 80 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Near feet | 20/60 | 10 ft | 20/200 | 20/60 | 0 | 18-Dec-15 |
| 718770 | 70 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Near feet | 10 ft | 6 ft | 10 ft | 20/60 | 0 | 18-Dec-15 |
| 718771 | 75 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 6 ft | 6 ft | 1 | 18-Dec-15 |
| 718772 | 80 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 10 ft | 12 ft | 10 ft | 6 ft | 0 | 18-Dec-15 |
| 718773 | 75 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 10 ft | 6 ft | HM+ | 6 ft | 0 | 18-Dec-15 |
| 718774 | 70 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Near feet | 10 ft | 20/200 | 20/100 | 20/200 | 0 | 18-Dec-15 |
| 718775 | 85 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Near feet | 20/60 | 20/60 | 20/60 | 20/60 | 1 | 18-Dec-15 |
| 718776 | 65 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/60 | 10 ft | 20/60 | 20/60 | 0 | 18-Dec-15 |
| 718777 | 75 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 20/200 | 20/60 | 20/40 | 20/60 | 0 | 18-Dec-15 |
| 718778 | 40 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/200 | 10 ft | 20/200 | 20/60 | 0 | 18-Dec-15 |
| 718780 | 70 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/40 | 20/200 | 20/40 | 20/60 | 0 | 18-Dec-15 |
| 718782 | 75 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 10 ft | 10 ft | 6 ft | 20/60 | 0 | 18-Dec-15 |
| 718783 | 80 | F | age-related cataract | 16-Dec-15 | 18-Dec-15 | L | Snellen feet | 10 ft | PL+ | 10 ft | PL+ | 0 | 18-Dec-15 |

| ID | | Age | Sex | Diagnosis | Date 1 | Date 2 | Eye | Test | VA1 | VA2 | VA3 | VA4 | N | Date 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 718784 | | 60 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 10 ft | 10 ft | 10 ft | 20/100 | 0 | 18-Dec-15 |
| 718785 | | 80 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/200 | 5 ft | 20/200 | 20/60 | 0 | 18-Dec-15 |
| 718786 | | 85 | F | age-related cataract | 16-Dec-15 | 31-Dec-15 | R | Snellen feet | 8 ft | 20/200 | 20/80 | 20/100 | 0 | 31-Jan-16 |
| 718787 | | 75 | F | age-related cataract | 16-Dec-15 | 19-Dec-15 | L | Snellen feet | 20/100 | PL+ | 20/100 | 20/200 | 1 | 18-Dec-15 |
| 718788 | | 55 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | PL+ | 20/200 | PL+ | 20/40 | 0 | 18-Dec-15 |
| 718789 | | 65 | F | age-related cataract | 16-Dec-15 | 18-Dec-15 | R | Snellen feet | CF/CF | 20/60 | 3 ft | 20/60 | 0 | 18-Dec-15 |
| 718790 | | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 20/60 | 20/60 | 0 | 18-Dec-15 |
| 718792 | | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 8 ft | 8 ft | 20/60 | 0 | 18-Dec-15 |
| 718795 | | 75 | M | age-related cataract | 16-Dec-15 | 19-Dec-15 | L | Snellen feet | 20/200 | 8 ft | 20/200 | 20/60 | 0 | 18-Dec-15 |
| 718796 | | 80 | F | age-related cataract | 16-Dec-15 | 18-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 10 ft | 0 | 18-Dec-15 |
| 718797 | | 65 | M | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/60 | 20/60 | 20/40 | 0 | 18-Dec-15 |
| 718798 | | 70 | F | age-related cataract | 16-Dec-15 | 17-Dec-15 | L | Snellen feet | 20/100 | 10 ft | 20/100 | 20/40 | 1 | 18-Dec-15 |
| 718799 | | 75 | F | age-related cataract | 16-Dec-15 | 18-Dec-15 | L | Snellen feet | 20/40 | 20/40 | 20/40 | 0 | 18-Dec-15 |
| 810687 | | 67 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 20/200 | 20/40 | 20/80 | 20/80 | 0 | 29-Dec-15 |
| 810621 | | 65 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | L | Snellen feet | 20/80 | 8 ft | 20/80 | 20/60 | 0 | 29-Dec-15 |
| 810601 | | 67 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 20/200 | 8 ft | 20/200 | 20/200 | 0 | 29-Dec-15 |
| 720632 | | 60 | F | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | PL+ | 20/50 | 20/60 | 20/60 | 0 | 29-Dec-15 |
| 720688 | | 60 | F | age-related cataract | 27-Dec-15 | 28-Dec-15 | L | Snellen feet | 20/60 | 5 ft | 20/60 | 20/100 | 0 | 30-Dec-15 |
| 720634 | | 50 | F | age-related cataract | 27-Dec-15 | 29-Dec-15 | R | Snellen feet | 10 ft | 20/400 | 20/80 | 20/400 | 0 | 29-Dec-15 |
| 720635 | | 45 | F | age-related cataract | 27-Dec-15 | 29-Dec-15 | L | Snellen feet | 20/80 | PL+ | 20/60 | 20/60 | 0 | 29-Dec-15 |
| 720637 | | 67 | M | age-related cataract | 29-Dec-15 | 28-Dec-15 | L | Snellen feet | 20/60 | 8 ft | 20/60 | 1 ft | 1 | 29-Dec-15 |
| 720638 | | 65 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 8 ft | 0 | 29-Dec-15 |
| 720691 | | 60 | F | age-related cataract | 27-Dec-15 | 30-Dec-15 | R | Snellen feet | 3 ft | 10 ft | 8 ft | 10 ft | 1 | 29-Dec-15 |
| 720640 | | 50 | F | age-related cataract | 27-Dec-15 | 26-Dec-15 | L | Snellen feet | 20/200 | 8 ft | 20/100 | 20/80 | 0 | 29-Dec-15 |
| 720641 | | 62 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | L | Snellen feet | PL+ | 10 ft | 29/100 | 20/60 | 0 | 29-Dec-15 |
| 720643 | | 70 | M | age-related cataract | 27-Dec-15 | 26-Dec-15 | R | Snellen feet | 10 ft | 12 ft | 20/40 | 10 ft | 0 | 29-Dec-15 |
| 720644 | | 85 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 20/200 | 20/100 | 20/80 | 20/50 | 0 | 29-Dec-15 |
| 720645 | | 75 | M | age-related cataract | 27-Dec-15 | 31-Dec-15 | R | Snellen feet | PL+ | 20/200 | 20/60 | 20/200 | 0 | 28-Dec-15 |
| 810648 | | 70 | M | age-related cataract | 27-Dec-15 | 31-Dec-15 | R | Snellen feet | CF/CF | 10 ft | 20/80 | 10 ft | 0 | 28-Dec-15 |
| 720647 | | 65 | M | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 10 ft | 20/800 | 8 ft | 20/200 | 0 | 29-Dec-15 |
| 720648 | | 65 | F | age-related cataract | 27-Dec-15 | 29-Dec-15 | L | Snellen feet | 10 ft | 20/200 | 10 ft | 20/200 | 0 | 30-Dec-15 |
| 720649 | | 65 | F | age-related cataract | 27-Dec-15 | 29-Dec-15 | R | Snellen feet | 80 ft | 20/40 | 20/60 | 20/60 | 1 | 30-Dec-15 |
| 720650 | | 70 | M | age-related cataract | 27-Dec-15 | 29-Dec-15 | L | Snellen feet | 20/60 | 10 ft | 20/50 | 20/60 | 1 | 30-Dec-15 |
| 720651 | | 65 | F | age-related cataract | 27-Dec-15 | 28-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 8 ft | 0 | 29-Dec-15 |
| 720654 | | 50 | F | age-related cataract | 27-Dec-15 | 29-Dec-15 | R | Snellen feet | PL+ | 20/100 | 20/80 | 20/110 | 0 | 29-Dec-15 |
| 720655 | | 60 | F | age-related cataract | 27-Dec-15 | 26-Dec-15 | L | Snellen feet | 20/60 | PL+ | 20/60 | 20/100 | 0 | 29-Dec-15 |
| 720656 | | 80 | F | age-related cataract | 27-Dec-15 | 28-Dec-15 | L | Snellen feet | 20/60 | CF/CF | 20/60 | 20/60 | 0 | 06-Dec-15 |
| 721169 | | 60 | F | age-related cataract | 30-Dec-15 | 26-Dec-15 | R | Snellen feet | 5 ft | 20/60 | 20/60 | 20/60 | 0 | 01-Jan-16 |
| 721170 | | 48 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 20/40 | 20/60 | 20/40 | 0 | 01-Jan-16 |
| 721171 | | 65 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/200 | 20/200 | 20/200 | 20/200 | 0 | 01-Jan-16 |
| 721172 | | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 10 ft | 10 ft | 0 | 01-Jan-16 |
| 721173 | | 58 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/80 | 3 ft | 20/80 | 20/60 | 0 | 01-Jan-16 |
| 721174 | | 70 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 10 ft | 0 | 05-Jan-16 |
| 721175 | | 65 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/60 | 10 ft | 20/60 | 20/60 | 0 | 01-Jan-16 |
| 721176 | | 57 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 01-Jan-16 |
| 721177 | | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/60 | 10 ft | 20/60 | 0 | 01-Jan-16 |
| 721178 | | 50 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 2 ft | 20/100 | 20/60 | 20/80 | 0 | 01-Jan-16 |
| 721179 | | 70 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/40 | 10 ft | 20/60 | 20/40 | 0 | 01-Jan-16 |
| 721180 | | 67 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 01-Jan-16 |
| 721181 | | 72 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 01-Jan-16 |
| 721182 | | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/60 | 5 ft | 20/60 | 20/200 | 0 | 01-Jan-16 |
| 721184 | | 75 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 0 | 01-Jan-16 |
| 721186 | | 50 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 8 ft | 5 ft | 20/60 | 0 | 01-Jan-16 |
| 721187 | | 65 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 8 ft | 20/100 | 20/60 | 20/100 | 0 | 01-Jan-16 |
| 721188 | | 50 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/200 | 20/400 | 20/200 | 20/60 | 0 | 01-Jan-16 |
| 721189 | | 55 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 09-Jan-16 |
| 721190 | | 55 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 5 ft | 8 ft | 20/60 | 5 ft | 0 | 01-Jan-16 |
| 721192 | | 66 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 20/60 | 20/60 | 20/60 | 0 | 01-Jan-16 |
| 728193 | | 65 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 10 ft | 8 ft | 10 ft | 20/60 | 0 | 01-Jan-16 |
| 721194 | | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 8 ft | 20/80 | 20/100 | 20/80 | 0 | 01-Jan-16 |
| 721195 | | 70 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 10 ft | 10 ft | 20/60 | 20/60 | 0 | 01-Jan-16 |
| 721595 | | 57 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/200 | CF/CF | 20/200 | 20/60 | 0 | 01-Jan-16 |
| 721596 | | 60 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/200 | 10 ft | 20/200 | 20/60 | 1 | 01-Jan-16 |
| 721199 | | 50 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 01-Jan-16 |
| 721200 | | 50 | F | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 20/400 | 20/200 | 20/60 | 20/200 | 0 | 01-Jan-16 |
| 721201 | | 80 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | R | Snellen feet | 10 ft | 10 ft | 20/60 | 10 ft | 0 | 01-Jan-16 |
| 721202 | | 60 | M | age-related cataract | 30-Dec-15 | 31-Dec-15 | L | Snellen feet | 5 ft | 8 ft | 20/60 | 0 | 01-Jan-16 |
| 630064 | | 45 | F | age-related cataract | 30-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/40 | 20/200 | 20/40 | 20/60 | 0 | 10-Dec-15 |
| 857255 | | 80 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/90 | 20/200 | 20/80 | 5 ft | 1 | 10-Dec-15 |
| 711799 | | 60 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/200 | 20/600 | 20/200 | 20/60 | 0 | 17-Dec-15 |
| 717140 | | 83 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | R | Snellen feet | 10 ft | 20/100 | 20/60 | 20/100 | 0 | 10-Dec-15 |
| 717141 | | 60 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | R | Snellen feet | 10 ft | 20/50 | 20/60 | 20/60 | 0 | 10-Dec-15 |
| 717143 | | 70 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | R | Snellen feet | 10 ft | 20/200 | 20/100 | 20/200 | 0 | 10-Dec-15 |
| 717144 | | 60 | F | age-related cataract | 08-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/90 | 8 ft | 20/100 | 20/60 | 0 | 10-Dec-15 |

| ID | | Sex | Diagnosis | Date | Date | Eye | Vision | | | | | | Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 717146 | | M | age related cataract | 06-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/80 | 10 ft | 20/80 | 20/80 | 0 | 10-Dec-15 |
| 787150 | | M | age related cataract | 06-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/80 | 5 ft | 20/80 | HM+ | 1 | 10-Dec-15 |
| 717166 | | F | age related cataract | 06-Dec-15 | 09-Dec-15 | L | Snellen feet | 20/80 | 9 M+ | 20/80 | 20/200 | 1 | 10-Dec-15 |
| 717168 | | F | age related cataract | 06-Dec-15 | 09-Dec-15 | R | Snellen feet | 6 ft | 20/800 | 20/80 | 20/100 | 0 | 10-Dec-15 |
| | | | | | | | | | | | | | |
| 685278 | | F | Congenital Cataract | 07-Aug-15 | 6-Aug-15 | R | Snellen feet | NC | NC | NC | NC | 0 | 5-Sep-15 |
| 632976 | | M | Cata ext. Post RD | 18-Jul-15 | 5-Aug-15 | R | Snellen feet | 0.5 ft | 20/20 | 1 ft | 20/20 | 0 | 7-Sep-15 |
| 697175 | | M | Traumatic Cataract | 7-Jul-15 | 11-Aug-15 | R | Snellen feet | PL+ | 20/20 | HM+ | 20/20 | 0 | 26-Sep-15 |
| 697175 | | F | Traumatic Cataract | 7-Jul-15 | 18-Aug-15 | L | Snellen feet | 20/20 | 0.5 ft | 20/20 | 20/200 | 0 | 22-Aug-15 |
| 695691 | | M | luxleaction of lens | 18-Aug-15 | 20-Aug-15 | R | Snellen feet | 10 ft | 10 ft | 20/100 | 10 ft | 0 | 22-Sep-15 |
| 693384 | | F | Developmental Cataract | 7-Aug-15 | 27-Aug-15 | R | Snellen feet | 20/80 | 20/80 | 20/60 | 20/60 | 0 | 16-Sep-15 |
| 645596 | | M | Aphakia | 10-Aug-15 | 27-Aug-15 | R | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 21-Oct-15 |
| 667032 | | F | Zonular Cataract | 30-Jun-15 | 2-Sep-15 | L | Snellen feet | 7 ft | 1.5 ft | 7 ft | 6 ft | 0 | 8-Oct-15 |
| 690702 | | F | Developmental Cataract | 26-Aug-15 | 2-Sep-15 | R | Snellen feet | PL+ | 2 ft | 20/40 | 2 ft | 0 | 30-Nov-15 |
| 691827 | | F | Developmental Cataract | 6-Aug-15 | 2-Sep-15 | L | Snellen feet | 20/60 | 20/80 | 20/60 | 20/60 | 0 | 2-Oct-15 |
| 696363 | | M | subluxation of lens, Ectopia Lentis | 3-Sep-15 | 7-Sep-15 | R | Snellen feet | 10 ft | 20/200 | 20/80 | 20/200 | 0 | 22-Oct-15 |
| 692838 | | M | Mature Cataract | 7-Sep-15 | 9-Sep-15 | L | Snellen feet | 6 ft | HM+ | 5 ft | HM+ | 0 | 20-Oct-15 |
| 676761 | | F | Developmental Cataract | 26-Aug-15 | 10-Sep-15 | R | Snellen feet | 20/100 | 20/80 | 20/40 | 20/60 | 1 | 10-Oct-15 |
| 395590 | | M | Developmental Cataract | 8-Sep-15 | 16-Sep-15 | R | Snellen feet | HM+ | 20/200 | 8 ft | 20/200 | 0 | 10-Oct-15 |
| 655537 | | M | Congenital Cataract | 10-Sep-15 | 16-Sep-15 | R | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 07-Oct-15 |
| 690572 | | M | Total Cataract | 14-Sep-15 | 24-Sep-15 | R | Snellen feet | PR+ | HR | 20/60 | 4 ft | 0 | 24-Oct-15 |
| 686799 | | M | Post Sub Capsule  Cataract, Post RD | 25-Sep-15 | 30-Sep-15 | L | Snellen feet | 3 ft | 20/20 | 3 ft | 20/20 | 0 | 13-Nov-15 |
| 700580 | | M | Cortical Cata int. Le ft Crinon | 14-Sep-15 | 30-Sep-15 | L | Snellen feet | 20/20 | 8 ft | 10 ft | 8 ft | 0 | 23-Nov-15 |
| 696630 | | M | Traumatic Cataract | 2-Sep-15 | 2-Oct-15 | R | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 7-Nov-15 |
| 705045 | | F | Zonular Cataract | 4-Oct-15 | 6-Oct-15 | R | Snellen feet | PL+ | PL+ | NC | PL+ | 0 | 9-Oct-15 |
| 700573 | | M | Total Cataract | 3-Oct-15 | 6-Oct-15 | L | Snellen feet | 20/200 | 5 ft | 20/200 | 20/80 | 0 | 28-Nov-15 |
| 654809 | | M | Bullous Keratopathy,Post TPK | 28-Sep-15 | 8-Oct-15 | L | Snellen feet | 20/20 | 0.5 ft | 20/20 | 3.5 ft | 1 | 16-Nov-15 |
| 654820 | | M | Post Sub Capsular Cataract | 28-Sep-15 | 8-Oct-15 | L | Snellen feet | 20/20 | 20/60 | 20/20 | 20/40 | 0 | 7-Nov-15 |
| 683276 | | F | Congenital Cataract | 5-Sep-15 | 13-Oct-15 | L | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 5-Dec-15 |
| 702848 | | M | Senile Cataract | 10-Sep-15 | 13-Oct-15 | L | Snellen feet | 20/60 | 20/50 | 20/60 | 20/40 | 0 | 21-Oct-15 |
| 645596 | | M | Aphakia | 10-Sep-15 | 13-Oct-15 | L | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 14-Nov-15 |
| 704589 | | M | Zonular Cataract | 2-Oct-15 | 13-Oct-15 | L | Snellen feet | PL+ | PL+ | 20/60 | PL+ | 0 | 08-Nov-15 |
| 705083 | | M | Traumatic Cataract | 5-Oct-15 | 14-Oct-15 | L | Snellen feet | 3 ft | 3 ft | 3 ft | 3 ft | 0 | 24-Oct-15 |
| 694916 | | M | Congenital Cataract | 11-Aug-15 | 20-Oct-15 | R | Snellen feet | 3 ft | 3 ft | 20/100 | 3 ft | 0 | 4-Dec-15 |
| 696510 | | F | Zonular Cataract | 3-Jun-15 | 20-Oct-15 | L | Snellen feet | 20/50 | 20/100 | 20/60 | 20/100 | 0 | 20-Nov-15 |
| 655537 | | M | Congenital Cataract | 10-Oct-15 | 27-Oct-15 | L | Snellen feet | FFLight | FFLight | FFLight | FFLight | 0 | 27-Nov-15 |
| 693066 | | M | Aphakia | 20-Oct-15 | 28-Oct-15 | R | Snellen feet | 5 ft | 20/20 | 5 ft | 20/20 | 0 | 4-Nov-15 |
| 645126 | | F | Aphakia | 22-Sep-15 | 3-Nov-15 | R | Snellen feet | FFLight | FFLight | 20/60 | FFLight | 0 | 12-Nov-15 |
| 669227 | | F | Post Sub Caps for Cataract | 14-Oct-15 | 4-Nov-15 | R | Snellen feet | 20/200 | 20/20 | 10 ft | 20/20 | 0 | 3-Dec-15 |
| 644590 | | F | Spinocphalic | 5-Nov-15 | 12-Nov-15 | L | Snellen feet | 10 ft | 10 ft | 10 ft | 20/20 | 1 | 16-Dec-15 |
| 694118 | | M | Congenital Cataract | 10-Nov-15 | 26-Nov-15 | L | Snellen feet | 20/80 | 20/200 | 20/100 | 20/200 | 0 | 4-Dec-15 |

# MULLANEY
# EXHIBIT 51



April 15, 2013

KPMG LLP
345 Park Avenue
New York, NY 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of WonderWork, Inc. (the Organization) as of June 30, 2012, and the related statements of activities, functional expenses and cash flows for the year then ended, for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position of the Organization, and the changes in its net assets and its cash flows in conformity with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, the following representations made to you during your audit:

1.    The financial statements referred to above are fairly presented in conformity with U.S. generally accepted accounting principles.

2.    We have made available to you:

      a.    All financial records and related data.

      b.    All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

EXHIBIT -51
Brian Mullaney
8/17/17
S. Anelle Santos, RPR, CSR
TransPerfect Legal

WON-EX 042016



3.   Except as disclosed to you in writing, there have been no communications from regulatory agencies, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

4.   There are no:

   a.   Violations or possible violations of laws or regulations, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

   b.   Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 450, *Contingencies.*

   c.   Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by FASB ASC 450, *Contingencies.*

   d.   Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

   e.   Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5.   There were no uncorrected financial statement misstatements.

6.   We acknowledge our responsibility for the design and implementation of programs and controls to prevent, deter, and detect fraud.  We understand that the term "fraud" includes misstatements arising from fraudulent financial reporting and misstatements arising from misappropriation of assets.

   Misstatements arising from fraudulent financial reporting are intentional misstatements, or omissions of amounts or disclosures in financial statements to deceive financial statement users.  Misstatements arising from misappropriation of assets involve the theft of an entity's assets where the effect of the theft causes the financial statements not to be presented in conformity with U.S. generally accepted accounting principles.

7.   We have no knowledge of any fraud or suspected fraud affecting the entity involving:

WON-EX 042017



a. Management

b. Employees who have significant roles in internal control over financial reporting, or

c. Others where the fraud could have a material effect on the financial statements.

8. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, regulators, or others.

9. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

10. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

11. The following have been properly recorded or disclosed in the financial statements, if applicable:

a. Related party transactions including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties.

The term "related party" refers to affiliates of the enterprise; entities for which investments in their equity securities would, absent the election of the fair value option under FASB ASC 825, Financial Instruments, be required to be accounted for by the equity method by the enterprise; trusts for the benefit of employees, such as pension and profit-sharing trusts that are managed by or under the trusteeship of management; principal owners of the enterprise; its management; members of the immediate families of principal owners of the enterprise and its management; and other parties with which the enterprise may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests. Another party also is a related party if it can significantly influence the management or operating policies of the transacting parties or if it has an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests.

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."

420 Fifth Avenue, New York, NY 10018 Tel: 212.729.1866 WonderWork.org

WON-EX 042018



Miracle surgeries for children.

b.  Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees*.

c.  Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC 275, *Risks and Uncertainties*.

Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

12. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

13. The Organization has complied with all aspects of laws, regulations, contracts, grants, and donor restrictions that would have a material effect on the financial statements in the event of noncompliance.

14. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state or local income, excise, employment, property, sales and use, or other tax liability.

15. The Organization has classified net assets as unrestricted, temporarily restricted or permanently restricted based on our assessment of the donor's intention, as specified in original donor correspondence where available. Where not available, we used other corroborating evidential matter including minutes of the Board, accounting records and financial statements. To the extent that we were unable to review original donor correspondence to determine the amount of the original gift and donor additions, our determination of such amount was based on our best estimate considering the relevant facts and circumstances. Amounts classified as temporarily restricted are subject to donor-

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."

420 Fifth Avenue, New York, NY 10018 Tel: 212.728.1865 WonderWork.org

WON-EX 042019



imposed purpose or time restrictions which precluded us from expending such amounts or recognizing such amounts as unrestricted as of June 30, 2012.

16. The Organization has a reasonable basis for allocation of functional expenses.

17. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2012.

Further, we confirm that we are responsible for the fair presentation in the financial statements of the balance sheet, changes in net assets, and cash flows in conformity with U.S. generally accepted accounting principles. We are also responsible for establishing and maintaining effective internal control over financial reporting.

Very truly yours,

WonderWork, Inc.

Brian Mullaney
Founder & CEO

Hana Fuchs/CFO
CFO

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."

420 Fifth Avenue, New York, NY 10018 Tel 212 728 1855 WonderWork.org

WON-EX 042020



Miracle surgeries for children.

February 20, 2014

KPMG LLP
345 Park Avenue
New York, NY 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of WonderWork, Inc. (the Organization) as of June 30, 2013, and the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position of the Organization, and the changes in its net assets and its cash flows in conformity with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purpose of appropriately informing ourselves, as of February 20, 2014, the following representations made to you during your audits:

1.  We have fulfilled our responsibilities, as set out in the terms of the audit engagement letter dated June 4, 2013, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2.  We have made available to you:

    a.  All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statements.

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."

420 Fifth Avenue, New York, NY 10118  Tel: 212.730.1856  WonderWork.org



Miracle surgeries for children.

    b.    Additional information that you have requested from us for the purpose of the audit.

    c.    Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

    d.    All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3.    Except as disclosed to you in writing, there have been no communications from regulatory agencies, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

4.    There are no:

    a.    Violations or possible violations of laws or regulations, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

    b.    Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 450, *Contingencies*.

    c.    Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by FASB ASC 450, *Contingencies*.

    d.    Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

    e.    Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5.    All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6.    There are no uncorrected financial statement misstatements.

WON-EX 042022



7. We acknowledge our responsibility for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud.

8. There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9. We have no knowledge of any fraud or suspected fraud affecting the entity involving:

    a. Management

    b. Employees who have significant roles in internal control over financial reporting, or

    c. Others where the fraud could have a material effect on the financial statements.

10. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, regulators, or others.

11. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

12. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

13. The following have been properly recorded or disclosed in the financial statements, if applicable:

WON-EX 042023



Miracle surgeries for children.
wonder
work

a. Related party transactions including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties.

b. Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees*.

c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC 275, *Risks and Uncertainties*.

Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

14. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

15. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts and grant agreements that have a direct and material effect on the determination of financial statement amounts.

16. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC 820, *Fair Value Measurements and Disclosures,* including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in FASB ASC 820, considered the appropriateness of valuation techniques, including circumstances in which a practical expedient may be used to estimate fair value, adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with generally accepted accounting principles including the disclosure requirements of FASB ASC 820. We



believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in FASB ASC 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in FASB ASC 820.

17. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC 825, *Financial Instruments*. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the FASB ASC 825, *Financial Instruments*. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by FASB ASC 825.

18. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state or local income, excise, employment, property, sales and use, or other tax liability.

19. The Organization has classified net assets as unrestricted, temporarily restricted or permanently restricted based on our assessment of the donor's intention, as specified in original donor correspondence where available. Where not available, we used other corroborating evidential matter including minutes of the Board, accounting records and financial statements. To the extent that we were unable to review original donor correspondence to determine the amount of the original gift and donor additions, our determination of such amount was based on our best estimate considering the relevant facts and circumstances. Amounts classified as temporarily restricted are subject to donor-imposed purpose or time restrictions which precluded us from expending such amounts or recognizing such amounts as unrestricted as of June 30, 2013.

20. The Organization has a reasonable basis for allocation of functional expenses.

21. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2013.


Miracle surgeries for children.

Further, we confirm that we are responsible for the fair presentation in the financial statements of the balance sheet, changes in net assets, and cash flows in conformity with U.S. generally accepted accounting principles. We are also responsible for establishing and maintaining effective internal control over financial reporting.

Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder and CEO*

Hana Fuchs
*CFO*

# MULLANEY EXHIBIT 52



Miracle surgeries for children.

May 7, 2015

KPMG LLP
345 Park Avenue
New York, New York 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of WonderWork, Inc. (the Organization) as of June 30, 2014, the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position, changes in net assets, and cash flows of the Organization in conformity with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purposes of appropriately informing ourselves, as of May 7, 2015, the following representations made to you during your audits:

1.  We have fulfilled our responsibilities, as set out in terms of the audit engagement letter dated October 20, 2014, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2.  We have made available to you:

EXHIBIT -52
Brian Mullaney
8/17/17
S. Anelle Santos, RPR, CSR
TransPerfect Legal

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."
420 Fifth Avenue, New York, NY 10018 Tel: 212.729.1895 WonderWork.org

WON-EX 042027



Miracle surgeries for children.

a. All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statement.

b. Additional information that you have requested from us for the purpose of the audit.

c. Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

d. All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3. Except as disclosed to you in writing, there have been no:

a. Circumstances that have resulted in communications from the Organization's external legal counsel to the Organization reporting evidence of a material violation of securities law or breach of fiduciary duty, or similar violation by the Organization or any agent thereof.

b. Communications from regulatory agencies, governmental representatives, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

c. False statements affecting the Organization's financial statements made to the Organization's internal auditors, or other auditors who have audited entities under our control upon whose work you may be relying in connection with your audits.

4. There are no:

a. Violations or possible violations of laws or regulations, in any jurisdiction, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

b. Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) Topic 450, *Contingencies.*

c. Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC Topic 450, *Contingencies.*

WON-EX 042028



Miracle surgeries for children.

d. Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

e. Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5. All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6. There are no uncorrected financial statement misstatements.

7. We acknowledge our responsibility for the design, implementation and maintenance of programs and controls to prevent, and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud. We understand that the term "fraud" includes misstatements arising from fraudulent financial reporting and misstatements arising from misappropriation of assets.

8. There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9. We have disclosed to you the results of our assessment of the risk that the financial statements may be materially misstated as a result of fraud.

10. We have no knowledge of any fraud or suspected fraud affecting the entity's financial statements involving:

a. Management

b. Employees who have significant roles in internal control over financial reporting, or

c. Others where the fraud could have a material effect on the financial statements.

11. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity's financial statements received in communications from employees, former employees, regulators, or others.

WON-EX 042029



Miracle surgeries for children.

12. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

13. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

14. The following have been properly recorded or disclosed in the financial statements if applicable:

    a. Related party relationships and transactions, of which we are aware, in accordance with the requirements of U.S. generally accepted accounting principles, including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties. Related party transactions do not involve undisclosed side agreements.

    b. Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees.*

    c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC Topic 275, *Risks and Uncertainties.*

    Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

15. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

16. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to the Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts and grant agreements that have a direct and material effect on the determination of financial statement amounts.

17. The Organization has complied with all aspects of laws, regulations, contractual agreements, grants, and donor restrictions that may affect the financial statements, including noncompliance.



18. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC Topic 820, *Fair Value Measurements*, including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in ASC Topic 820, considered the appropriateness of valuation techniques [including circumstances in which a practical expedient may be used to estimate fair value], adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with U.S. generally accepted accounting principles including the disclosure requirements of ASC Topic 820. We believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in ASC Topic 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in ASC Topic 820.

19. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC Topic 825, *Financial Instruments*. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the ASC Topic 825. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by ASC Topic 825.

20. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax-exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state, or local income, excise, employment, property, sales and use, or other tax liability.

21. The Organization notes that an appropriate accrual, or lack there of, for any Help Me See legal exposure has been booked in the financials as of June 30, 2014.

22. The Organization has a reasonable basis for allocation of functional expenses.

WON-EX 042031



Miracle surgeries for children.

23. The Organization has a reasonable basis for determining estimates associated with in-kind contributions and has followed that basis at June 30, 2014.

24. The Organization confirms that the following 2014 contributions have no restrictions and thus are properly classified as unrestricted: ████████████████████████████

25. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2014.

Further, we confirm that we are responsible for the fair presentation in the financial statements of financial position, changes in net assets and cash flows, and the related notes in conformity with U.S. generally accepted accounting principles.

Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder & CEO*

Hana Fuchs
*CFO*



Miracle surgeries for children.

May 12, 2016

KPMG LLP
345 Park Avenue
New York, New York 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of Wonderwork, Inc. (the Organization) as of June 30, 2015, the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position, changes in net assets, and cash flows of the Organization in accordance with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purposes of appropriately informing ourselves, as of May 12, 2016, the following representations made to you during your audit:

1. We have fulfilled our responsibilities, as set out in terms of the audit engagement letter dated October 28, 2015, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2. We have made available to you:

   a. All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statement.

WON-EX 042033



Miracle surgeries for children.

    b.   Additional information that you have requested from us for the purpose of the audit.

    c.   Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

    d.   All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3.    There have been no:

    a.   Circumstances that have resulted in communications from the Organization's external legal counsel to the Organization reporting evidence of a material violation of securities law or breach of fiduciary duty, or similar violation by the Organization or any agent thereof.

    b.   Communications from regulatory agencies, governmental representatives, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

    c.   False statements affecting the Organization's financial statements made to the Organization's internal auditors, or other auditors who have audited entities under our control upon whose work you may be relying in connection with your audit.

4.    There are no:

    a.   Violations or possible violations of laws or regulations, in any jurisdiction, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

    b.   Unasserted claims or assessments that our lawyers have advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) Topic 450, *Contingencies.*

    c.   Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC Topic 450, *Contingencies.*

    d.   Other obligations resulting from joint and several liability arrangements that are required to be accrued or disclosed by FASB ASU 2013-04, *Liabilities (Topic 405) – Obligations Resulting From Joint and Several Liability Arrangements for Which the Total Amount of the Obligation Is Fixed At the Reporting Date.*

WON-EX 042034



    e.   Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

    f.   Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5.  All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6.  There are no uncorrected financial statement misstatements.

7.  We acknowledge our responsibility for the design, implementation and maintenance of programs and controls to prevent, and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud. We understand that the term "fraud" includes misstatements arising from fraudulent financial reporting and misstatements arising from misappropriation of assets.

8.  There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9.  We have disclosed to you the results of our assessment of the risk that the financial statements may be materially misstated as a result of fraud.

10.  We have no knowledge of any fraud or suspected fraud affecting the entity's financial statements involving:

    a.   Management

    b.   Employees who have significant roles in internal control over financial reporting, or

    c.   Others where the fraud could have a material effect on the financial statements.

WON-EX 042035



Miracle surgeries for children.

11. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity's financial statements received in communications from employees, former employees, analysts, regulators, or others.

12. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

13. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

14. The following have been properly recorded or disclosed in the financial statements:

    a.  Related party relationships and transactions, of which we are aware, in accordance with the requirements of U.S. generally accepted accounting principles, including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties. Related party transactions do not involve undisclosed side agreements.

    b.  Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees.*

    c.  Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC Topic 275, *Risks and Uncertainties*.

        Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

    d.  All assets and liabilities under the Organization's control.

15. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

16. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to the Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts

WON-EX 042036



and grant agreements that have a direct and material effect on the determination of financial statement amounts.

17. The Organization has complied with all aspects of laws, regulations, contractual agreements, grants, and donor restrictions that may affect the financial statements, including noncompliance.

18. Receivables reported in the financial statements represent valid claims against debtors arising on or before the date of the balance sheet and have been appropriately reduced to their estimated net realizable value.

19. The Organization has appropriately grouped long-lived assets together for purposes of assessing impairment in accordance with FASB ASC Topic 360, Property, Plant, and Equipment. We have reviewed long-lived assets, including amortizable intangible assets, to be held and used for impairment whenever events or changes in circumstances have indicated that the carrying amount of the assets might not be recoverable. Provision has been made for any material adjustments to long-lived assets including amortizable intangible assets.

20. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC Topic 820, Fair Value Measurements, including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in ASC Topic 820, considered the appropriateness of valuation techniques, adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with U.S. generally accepted accounting principles including the disclosure requirements of ASC Topic 820. We believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in ASC Topic 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in ASC Topic 820.

21. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC Topic 825, Financial Instruments. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the ASC Topic 825. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by ASC Topic 825.

WON-EX 042037



22.  The Company is in compliance with bond indentures or other debt agreements.

23.  The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax-exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state, or local income, excise, employment, property, sales and use, or other tax liability.

24.  The Organization has classified net assets as unrestricted, or temporarily restricted, based on our assessment of the donor's intention, as specified in original donor correspondence where available. Where not available, we used other corroborating evidential matter including minutes of the Board, accounting records, and financial statements. To the extent that we were unable to review original donor correspondence to determine the amount of the original gift and donor additions, our determination of such amount was based on our best estimate considering the relevant facts and circumstances. Amounts classified as temporarily restricted are subject to donor-imposed purpose or time restrictions which precluded us from expending such amounts or recognizing such amounts as unrestricted as of the balance sheet date.

25.  The Organization has a reasonable basis for allocation of functional expenses.

26.  The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2015.

27.  The Organization notes that an appropriate accrual, or lack there of, for any Help Me See legal exposure has been booked in the financials as of June 30, 2015.

28.  The Organization has a reasonable basis for determining estimates associated with in-kind contributions and has followed that basis at June 30, 2015.

Further, we confirm that we are responsible for the fair presentation in the financial statements of financial position, changes in net assets and cash flows, and the related notes in accordance with U.S. generally accepted accounting principles.

WON-EX 042038



Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder & CEO*

Hana Fuchs
*CFO*

WON-EX 042039

MULLANEY
EXHIBIT 53

| Fill in this information to identify the case: |
|---|

| Debtor | WonderWork, Inc. |
|---|---|
| United States Bankruptcy Court for the: | Southern District | District of NY (State) |
| Case number (if known) | 16-13607 (MKV) |

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).
   ☑ No. Go to Part 2.
   ☐ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  | | Total claim | Priority amount |
|---|---|---|---|

**2.1** Priority creditor's name and mailing address

_____
_____
_____

As of the petition filing date, the claim is:    $_____    $_____
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

_____

Basis for the claim:

_____

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (_____)

**2.2** Priority creditor's name and mailing address

_____
_____
_____

As of the petition filing date, the claim is:    $_____    $_____
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

_____

Basis for the claim:

_____

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (_____)

**2.3** Priority creditor's name and mailing address

_____
_____
_____

As of the petition filing date, the claim is:    $_____    $_____
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

_____

Basis for the claim:

_____

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (_____)

EXHIBIT -53

Brian Mullaney

8/17/17

S. Arielle Santos, RPR, CSR

**TransPerfect Legal**

Debtor  WonderWork, Inc.  Case number (if known) 16-13607 (MKV)
_____
Name

## Part 2:  List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

**3.1** Nonpriority creditor's name and mailing address

Action Mailers

90 Commerce Drive

Aston, PA 19014

Date or dates debt was incurred  Aug. 2016

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☐ No
☐ Yes

$ 18,839.14

**3.2** Nonpriority creditor's name and mailing address

Bill & Ann Ziff Foundation

350 Park Avenue, 4th Floor

New York, NY 10022

Date or dates debt was incurred  May 2014

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Is the claim subject to offset?
☑ No
☐ Yes

$ 845,500.00

**3.3** Nonpriority creditor's name and mailing address

Brian Mullaney

1 Sumner Lane

Belmont, MA 02478

Date or dates debt was incurred  2016

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: 2016 Salary/Unreimbursed expenses

Is the claim subject to offset?
☑ No
☐ Yes

$ 641,320.07

**3.4** Nonpriority creditor's name and mailing address

CDR Fundraising Group

16900 Science Drive, Suite 210

Bowie, MD 20715

Date or dates debt was incurred  Oct. 2016

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 48,750.00

**3.5** Nonpriority creditor's name and mailing address

CENVEO

Commercial Env. Products

PO Box 802035, Chicago, IL 60680-2035

Date or dates debt was incurred  Oct. 2016

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 4,949.13

**3.6** Nonpriority creditor's name and mailing address

Color Tree Group

8000 Villa Park Drive

Henrico, VA 23228-6500

Date or dates debt was incurred  Sept. 2016

Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☐ No
☐ Yes

$ 21,719.22

| Debtor | WonderWork, Inc. | Case number (if known) 16-13607 (MKV) |
|---|---|---|
| | Name | |

## Part 2:  Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

**3.___** Nonpriority creditor's name and mailing address
Communications Corporation of America

13195 Freedom Way

Boston, VA 22713

Date or dates debt was incurred  Nov. 2016
Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 6305.63

---

**3.___** Nonpriority creditor's name and mailing address
Copilevitz & Canter, LLC

310 West 20th St., Suite 300

Kansas City, MO 64108

Date or dates debt was incurred  Dec. 2016
Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 1140.93

---

**3.___** Nonpriority creditor's name and mailing address
Corporate Press, Inc.

9700 Philadelphia Court

Lanham, MD 20706

Date or dates debt was incurred  Nov. 2016
Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 7,078.69

---

**3.___** Nonpriority creditor's name and mailing address
Detter Family Foundation

11519 Aerie Lane

Naples, FL 34120

Date or dates debt was incurred  Aug. 2013
Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Is the claim subject to offset?
☑ No
☐ Yes

$ 106,833.33

---

**3.___** Nonpriority creditor's name and mailing address
Development Resources, Inc.

1820 N. Fort Meyer Drive, Suite 702

Arlington, VA 22209

Date or dates debt was incurred  Nov. 2016
Last 4 digits of account number  ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 10,000.00

---

| Debtor | WonderWork, Inc. | Case number (*if known*) 16-13607 (MKV) |
|---|---|---|
| | *Name* | |

## Part 2:   Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

---

3.___ Nonpriority creditor's name and mailing address
Direct Mail Processors, Inc.

1150 Conrad Ct.

Hagerstown, MD 21740

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

$ 11,200.96

Basis for the claim: Services rendered

Date or dates debt was incurred    Sept. 2016

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

---

3.___ Nonpriority creditor's name and mailing address
DMI Data Management, Inc.

PO Box 846

Stoneville, NC 27048

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 4997.49

Basis for the claim: Services rendered

Date or dates debt was incurred    Dec. 2016

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

---

3.___ Nonpriority creditor's name and mailing address
Hana Fuchs

60 Riverside Drive, Apt. 7F

New York, NY 10024

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 8881.02

Basis for the claim: Unreimbursed expenses

Date or dates debt was incurred    2016

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

---

3.___ Nonpriority creditor's name and mailing address
HelpMeSee, Inc.

20 West 36th St., Fl. 4

New York, NY 10018

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☐ Unliquidated
☑ Disputed

$ 16,059,833.50

Basis for the claim: _____

Date or dates debt was incurred    2016

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

---

3.___ Nonpriority creditor's name and mailing address
IDMI

490 White Pond Drive

Akron, OH 44320

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$ 1628.52

Basis for the claim: Services rendered

Date or dates debt was incurred    Oct. 2016

Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | WonderWork, Inc. | Case number (if known) | 16-13607 (MKV) |
|---|---|---|---|
| | Name | | |

## Part 2:   Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

---

3.___ **Nonpriority creditor's name and mailing address**
Joseph Mullaney

512 River Road
Westport, MA 02790

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Loan

Date or dates debt was incurred    Aug. 2013
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 110,750.00

---

3.___ **Nonpriority creditor's name and mailing address**
Kaplan Kravet & Vogel P.C.

630 Third Avenue, 5th Floor
New York, NY 10017

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Dec. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☐ No
☐ Yes

$ 8259.03

---

3.___ **Nonpriority creditor's name and mailing address**
Koala Design

Attn: Mike Schell 1606 NE 1st St.
Fort Lauderdale, FL 33301

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Dec. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 8,500.00

---

3.___ **Nonpriority creditor's name and mailing address**
L&E Meridian

8000 Corporate Court
Springfield, VA 22153

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Oct. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 1359.48

---

3.___ **Nonpriority creditor's name and mailing address**
Log-On

520 Eighth Avenue, 14 Fl.
New York, NY 10018

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Sept. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 48,538.28

---

| | |
|---|---|
| Debtor | WonderWork, Inc. |
| | Name |

Case number (if known) 16-13607 (MKV)

| Part 2: | Additional Page |
|---|---|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

3.___ Nonpriority creditor's name and mailing address
MDI Imaging and Mail

21955 Cascades Parkway

Sterling, VA 20166

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Services rendered

Date or dates debt was incurred      Oct. 2016

Last 4 digits of account number      ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 4657.64

---

3.___ Nonpriority creditor's name and mailing address
Meadowlark Foundation

PO Box 860

Saratoga Springs, NY 12866

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Date or dates debt was incurred      Jan. 2014

Last 4 digits of account number      ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 524,833.33

---

3.___ Nonpriority creditor's name and mailing address
Nestle Pure Life Direct

PO Box 856192

Louisville, KY 40285

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Office supplies

Date or dates debt was incurred      Dec. 2016

Last 4 digits of account number      ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 22.33

---

3.___ Nonpriority creditor's name and mailing address
Nextiva

8800 E Chaparral Rd. Ste 300

Scottsdale, AZ 85250

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Utilities

Date or dates debt was incurred      Nov. 2016

Last 4 digits of account number      ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 527.56

---

3.___ Nonpriority creditor's name and mailing address
Resource One

2900 E. Apache

Tulsa, OK 74116

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred      Nov. 2016

Last 4 digits of account number      ___ ___ ___ ___

Is the claim subject to offset?
☑ No
☐ Yes

$ 2165.80

---

| Debtor | WonderWork, Inc. | | Case number (if known) | 16-13607 (MKV) |
|---|---|---|---|---|
| | Name | | | |

## Part 2:   Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

---

**3.__** Nonpriority creditor's name and mailing address
Skyline Credit Ride, Inc.

52-29 35th St.
Long Island City, NY 11101

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☒ No
☐ Yes

$ 43.05

---

**3.__** Nonpriority creditor's name and mailing address
The Holewinski Group

253 Rainbow Drive #15398
Livingston, TX 77399

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Nov. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☒ No
☐ Yes

$ 120.00

---

**3.__** Nonpriority creditor's name and mailing address
The Raphael & Diana Vinoly Foundation

350 Fifth Avenue, 41 Fl.
New York, NY 10118

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Date or dates debt was incurred    Sept. 2013
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☒ No
☐ Yes

$ 60,083.33

---

**3.__** Nonpriority creditor's name and mailing address
Thompson Family Foundation

c/o Kevin Maclay
One Thomas Circle, NW, Ste. 1100, Washington, DC 20005

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Loan

Date or dates debt was incurred    May 2013
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☒ No
☐ Yes

$ 7,979,166.67

---

**3.__** Nonpriority creditor's name and mailing address
Tri-State Envelope Corp.

1 West 34 St., Suite 704
New York NY 10001

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: Services rendered

Date or dates debt was incurred    Nov. 2016
Last 4 digits of account number    ___ ___ ___ ___

Is the claim subject to offset?
☒ No
☐ Yes

$ 2841.32

---

| Debtor | WonderWork, Inc. | Case number (if known) | 16-13607 (MKV) |
|---|---|---|---|
| | Name | | |

## Part 2:   Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

**3.___** Nonpriority creditor's name and mailing address
Union ID and Mail

8516 Rainswood Drive

Landover, MD 20785

Date or dates debt was incurred   Nov. 2016

Last 4 digits of account number   ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ Liquidated and neither contingent nor disputed

Basis for the claim:   Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 3171.06

---

**3.___** Nonpriority creditor's name and mailing address
Valtim Marketing Solutions

PO Box 809

Forest, VA 24551

Date or dates debt was incurred   Oct. 2016

Last 4 digits of account number   ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 1967.73

---

**3.___** Nonpriority creditor's name and mailing address
Wells Fargo Financial Leasing

800 Walnut St., MAC N0005-055

Des Moines, IA 50309

Date or dates debt was incurred   Dec. 2013

Last 4 digits of account number   ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   Copier Lease

Is the claim subject to offset?
☐ No
☐ Yes

$ 452.50

---

**3.___** Nonpriority creditor's name and mailing address
XPO Logistics

PO Box 2693

New York, NY 10108

Date or dates debt was incurred   Nov. 2016

Last 4 digits of account number   ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   Services rendered

Is the claim subject to offset?
☑ No
☐ Yes

$ 76.32

---

**3.___** Nonpriority creditor's name and mailing address

___

___

Date or dates debt was incurred   ___

Last 4 digits of account number   ___ ___ ___ ___

As of the petition filing date, the claim is:
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   ___

Is the claim subject to offset?
☐ No
☐ Yes

$ ___

| Debtor | WonderWork, Inc. | Case number (if known) | 16-13607 (MKV) |
| | Name | | |

## Part 4:   Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

|  |  | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ 0 |
| 5b. Total claims from Part 2 | 5b.  + | $ 26,556,513.06 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ 26,556,513.06 |

MULLANEY
EXHIBIT 54

CONFIDENTIAL

| Brian Mullaney | $475,000.00 | 2011-$275k | e-mail 1/4/12 $195k | board approved at $475k 6/22/12 per bm e-mail 6/22/12 |
|---|---|---|---|---|
| Dec.2011 | 275,000.00 | | | |
| Calendar 2011 | $275,000.00 | | | |

| | BM Salary | notes | | | | | increase | difference |
|---|---|---|---|---|---|---|---|---|
| Jan.12 | 24,583.33 | | | | | calendar year | | |
| Feb.12 | 24,583.33 | | | | | | | |
| Mar.12 | 24,583.33 | | 12/15/2011 | 275,000.00 | fiscal year | | | |
| Apr.12 | 24,583.33 | | 1/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| May.12 | 24,583.33 | | 2/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| June.12 | 24,583.33 | | 3/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| June.12 | 190,000.00 additional salary per 6/22/12 bod meeting | | 4/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| FY12 | $612,499.98 | | 5/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| | | | 6/15/2012 | 24,583.33 | 24,583.33 | | 39,583.33 | 15,000.00 |
| | | | Total for the fiscal year | 422,499.98 | | | | |
| | | | Calendar year | 147,499.98 | | | $237,500 | 90,000.00 |
| | | | | 137,500.00 | | | $475,000 | 100,000.00 |

| July.12 | 39,583.33 | | | | | | | |
| Aug.12 | 39,583.33 | | | | | | | |
| Sep.12 | 39,583.33 | | | | | | | |
| Oct.12 | 18,750.00 | 20,833.30 less $1500 for camera | | | | | | |
| Nov.12 | 0.00 | 39,583.33 | | | | | | |
| Dec.12 | 0.00 | 39,583.33 | | | | | | |
| Calendar.2012 | $475,000.00 | | | | | | | |

| Jan.13 | 56,916.63 | Include holdover per BM e-mail 1/2/13 | | | | | | |
| Jan.13 additional | 79,166.66 | Nov.12 and Dec.12 catch up e-mail 1/2/13 | NOTES | | | | | |
| Feb.13 | 39,583.33 | | | | | | | |
| Mar.13 | 39,583.33 | | | | | | | |
| April.13 | 39,583.33 | hold at $475k per e-mail 4/4/13 | | | | | | |
| Mar.13 | 39,583.33 | | | | | | | |
| Jun.13 | 39,583.33 | | 7/1/2013 | Board bonus | 250,000.00 | e-mail YTD | | |
| FY13 | $471,499.96 | | | | | | | |

| Jul.13 | 39,583.33 | | 1/6/2014 | | deduct the $22,000 from my impact loan to $228,000. | | | |
| Aug.13 | 39,583.33 | | | | | | | |
| Sep.13 | 39,583.33 | | 1/6/2014 x | | -22,000.00 | e-mail BM | | |
| Oct.13 | 22,250.07 | 17,333.26 | | remaining | -22,000.00 | | | |
| Nov.13 | 0.00 | 39,583.33 | | | | | | |
| Dec.13 | 0.00 | 39,583.33 | 46,499.97 paid in Jan 2014 | 7/1/2013 | Board bonus | 250,000.00 | e-mail YTD | |
| Calendar.2013 | $475,000.000 | 250,000.00 | | 1/6/2014 | personal reimburse | -22,000.00 | e-mail BM 1/6/14 | |
| | | | | 1/6/2014 | remaining | 228,000.00 | | |
| Bonus 7/1/13 | 114,170.19 | -22,000.00 | | 4/5/2014 | 4/5/2014 | -30,000.00 | about 50% weekly travel FY14, FY15 | |
| Jan.14 | 21,913.06 | $136,083.25 | 114,170.19 | | | -10,000.00 | | |
| Jan.14 additional | 39,583.33 | $136,083.25 | 136,083.25 | 0.00 | | | | |
| Feb.14 | 39,583.33 | | | x | | 4/5/2014 | -30,000.00 additional contribution | |
| Mar.14 | 39,583.33 | -78,000.00 deducted per 4/5/14 | | | | | | |
| Apr.14 | 189,583.33 includes $150k bonus per 4/5/14 e-mail | | | remaining bonus | 150,000.00 paid 4/15/14 | | | |
| May.14 | 39,583.33 | | | | | | | |
| Jun.14 | 30,583.43 | 8,999.90 remaining | | given back | -100,000.00 | | | |
| FY14 | $616,000.06 | | | BM | | | | |
| Jul.14 | 0.00 | 39,583.33 | | Jun.14 | 8,999.90 | | | |
| Aug.14 | 0.00 | 39,583.33 | | Jul.14 | 39,583.33 | | | |

EXHIBIT -54
Brian Mullaney
8/17/17
S. Anette Santos, RPR, CSR
TransPerfect Legal

WON07285

CONFIDENTIAL

Main ledger (left portion):

| Label | A | B | Balance / Note |
|---|---|---|---|
| Sep.14 | 0.00 | 39,583.33 | |
| bonus per 10/21/14 | | 250,000.00 | |
| per e-mail 10/7/14 | | -1,000.00 | |
| Oct.14 | 0.00 | 39,583.33 | |
| per e-mail 10/21/14 | 0.00 | -50,000.00 | |
| Nov.14 | 0.00 | 39,583.33 | |
| Dec.14 | 0.00 | 39,583.33 | 445,499.88 |
| Calendar 2014 | $475,000.00 | | |
| Jan.15 | $50,000.00 | -$10,416.67 | |
| 1/8 2015 | | -2,274.09 | holiday dinner |
| 2/9 2015 | | -1,300.00 | MAB dinner |
| Feb.15 | 39,583.33 | $41,509.12 | end of Jan 15 |
| Feb.15 additional | 385,416.67 | | to bring calendar year to $475k |
| Feb.15 additional | | $46,092.45 | balance as of Feb.15 |
| Mar.15 | 0.00 | 39,583.33 | $207,356.93 |
| Apr.15 | 0.00 | 39,583.33 | $246,940.26 |
| May.15 | 0.00 | 39,583.33 | $285,173.59 |
| Jun.15 | 0.00 | 39,583.33 | $324,202.29 |
| FY15 | $475,000.00 | $204,425.77 | $167,773.60 balance as of 6/15/15 |
| Jul.15 | 0.00 | 39,583.33 | $207,356.93 | $598,443.95 |
| Aug.15 | 0.00 | 39,583.33 | $246,940.26 | $630,027.28 |
| Sep.15 | 0.00 | 39,583.33 | $285,173.59 | $669,897.70 |
| Oct.15 | 0.00 | 39,583.33 | $322,699.18 | $709,481.03 |
| Nov.15 | 0.00 | 39,583.33 | $356,202.29 | $749,064.36 |
| Dec.15 | 0.00 | 39,583.33 | $558,860.62 | |
| Calendar 2015 | $475,000.00 | | | |
| Jan.16 | $0.00 | 39,583.33 | $598,443.95 | $524,064.36 |
| Feb.16 | $0.00 | 39,583.33 | $630,027.28 | $534,840.36 |
| Mar.16 | $0.00 | 39,583.33 | $669,897.70 | $570,745.06 |
| Apr.16 | $0.00 | 39,583.33 | $689,897.70 | $596,664.08 |
| May.16 | $0.00 | 39,583.33 | $709,481.03 | $92,633.45 |
| Jun.16 | $475,000.00 | 39,583.33 | $749,064.36 | |
| FY16 | $475,000.00 | | | |
| FY16 bonus per bod | | | | |
| Jul.16 | $0.00 | 39,583.33 | $524,064.36 | |
| Aug.16 | $0.00 | 39,583.33 | $534,840.36 | |
| Sep.16 | $0.00 | 39,583.33 | $570,745.06 | |
| Oct.16 | $0.00 | 39,583.33 | $92,633.45 | |
| Nov.16 | $0.00 | 39,583.33 | $626,726.79 | |
| Dec.16 | $0.00 | 39,583.33 | $634,800.12 | 22,186.66 |
| Calendar 2016 | $475,000.00 | | $664,383.45 | |
| Jan.17 | $0.00 | 39,583.33 | 664,383.45 | |
| Feb.17 | $0.00 | 39,583.33 | 703,966.78 | |
| Mar.17 | $0.00 | 39,583.33 | 743,550.11 | |
| Apr.17 | $0.00 | 39,583.33 | 783,133.44 | |
| May.17 | $0.00 | 39,583.33 | | |
| Jun.17 | $0.00 | | | |
| FY17 | $0.00 | | | |

Right-hand "bonus" column:

| bonus month | amount | note |
|---|---|---|
| | 250,000.00 | see e-mail from JJ 10.21.14 |
| Aug.14 | 39,583.33 | |
| Sep.14 | 39,583.33 | |
| x Oct.14 | 38,583.33 | per e-mail 10/7/14   9,000.00 |
| x 10/21/14email | -50,000.00 | 10/21/14email |
| Nov.14 | 39,583.33 | |
| Dec.14 | 39,583.33 | |
| | 445,499.88 | |
| Jan. 15 | 39,583.33 | |
| | 485,083.21 | |
| | -50,000.00 | payroll |
| Jan.15 | 435,083.21 | |
| x 1/8/15 email | -2,274.09 | holiday dinner |
| x 2/9/15 email | -1,300.00 | MAB dinner |
| | 431,509.12 | |
| Feb. 14 | 39,583.33 | |
| | 39,583.33 | paid 7/13/15 |
| paid in Feb | 385,416.67 | to bring calendar 2015 to 475,000 |
| remaining | 46,092.45 | |
| as of end of Feb.15 | | |
| Mar. 15 | 39,583.33 | |
| Apr. 15 | 39,583.33 | |
| | 125,259.11 | |
| x | -6,000.00 | 4/20/15 per mb for writer |
| | -3,000.00 | 4/20/15 per mb for Photoshop lessons |
| | 116,259.11 | as of 4/20/15 |
| x | 50,000.00 | e-mail 4/21/15 |
| May. 15 | | |
| x | -5,000.00 | e-mail 5/6/15 5-5,000 for camera equipment |
| | 130,842.44 | |
| x | -20,527.72 | e-mail 6/3/15 skyline deductions |
| June.15 | 39,583.33 | |
| | 167,773.60 | June Board 2015 meeting reduction of $150k not included |
| July.15 | 39,583.33 | |
| | 207,356.93 | |
| Aug.15 | 39,583.33 | |
| | 246,940.26 | |
| Sep.15 | 39,583.33 | |
| lowed | 285,173.59 | Sep.15 |
| x | -50,057.74 | e-mail 10.08.15 harvard club |
| Oct.15 | 39,583.33 | |
| owed to date | 322,699.18 | Oct.15 |
| x Nov. 15 | -50,081.02 | writer on india trip |
| | 39,583.33 | |
| | 356,202.29 | Nov.15 |
| Dec. 15 | 200,000.00 | bonus per 11/22/15 |
| | 558,860.62 | |
| Jan. 16 | 39,583.33 | |

Top-right stacked figures:

| |
|---|
| 475000 |
| 250000 |
| 725000 |

CONFIDENTIAL

WON07287

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 598,443.95 | | | |
| | | | | | Feb.16 | 39,583.33 | | | -46,072.49 |
| | | | | | | 638,027.28 | | | |
| owed as of Dec. 2016 | $624,800.12 | | | | | | dinner with lind 2/6/16 e-mail at shoreline | | |
| as of April 30, 2017 | $783,133.64 | | | | Mar.16 | 39,583.33 | golf balls | | |
| | | | | | | | langnam bills for 2015 per amex 3/13/16 email | | |
| | | | | | 3/11/2016 | | amtrak for 2015 per amex | | |
| | | | | | 3/11/2016 | | other taxis for 2015 per amex | | |
| Taken to date | | Bonuses | | | | | 4 seasons 3/11/16 e-mail | 1/24/15-1/23/16 | |
| Calendar 2011 | $275,000.00 | | | | | 630,314.37 | | | |
| Calendar 2012 | $475,000.00 | | | | Apr.16 | 39,583.33 | | | |
| Calendar 2013 | $475,000.00 | July 2013 | $250,000.00 | | | 669,897.70 | | | |
| Calendar 2014 | $475,000.00 | July 2014 | $250,000.00 | | May.16 | 39,583.33 | | | |
| Calendar 2015 | $475,000.00 | July 2015 | $200,000.00 | | | 709,481.03 | | | |
| Calendar 2016 | $475,000.00 | July 2016 | $250,000.00 | | Jun.16 | 39,583.33 | | | |
| | $2,650,000.00 | | $950,000.00 | | | 749,064.36 | | | |
| | | | | | taken June 2016 | -$475,000.00 | | | |
| | | | | | remaining | 274,064.36 | | | |
| | | | | | bonus per JJ 7/16 | 2,000.00 | | | |
| | | | | | Jul.16 | 59, 33 | | | |
| | | | | | | 57 4 | 4 seasons 3/19-8/2/16 | | |
| | | | | | email 6/7/16 | 2,5 .3 | skyline deductions through 7/13/16 | | |
| | | | | | email 6/7/16 | 1 742.2 | langham bills for 2016 per amex through July 31, 2016 | | |
| | | | | | email 7/31/16 | 7,061.00 | amtrak bills for 2016 per amex through July 31, 2016 | | |
| | | | | | email 7/31/16 | 5,319.2 | other misc taxis bills for 2016 per amex through July 31, 2016 | | |
| | | | | | | 534,840.36 | | | |
| | | | | | Aug.16 | 39,583.33 | | | |
| | | | | | | 3,1 50.00 | 8/24/16 per mb additional Photoshop lessons | | |
| | | | | | | 3,856.63 | July 2016 legal | | |
| | | | | | | 570,295.06 | | | |
| | | | | | email 9/9/16 | 23,413.33 | annual ... rst July 2016 email 09/09/16 | | |
| | | | | | e-mail 9/12/16 | 3,3 2.36 | trip to black pearl lodge | | |
| | | | | | Sep.16 | 39,583.33 | | | |
| | | | | | | 596,664.08 | | | |
| | | | | | 9/26/2016 | 13,000.00 | healthcare (annual) | | |
| | | | | | 10/19/2016 | 25,000.00 | trip to Bangladesh | | |
| | | | | | Oct.16 | 39,583.33 | | | |
| | | | | | | 596,267.41 | | | |
| | | | | | 10/21/2016 | 3,236.95 | camera | | |
| | | | | | | 592,633.46 | | | |
| | | | | | 10/31/2016 | 5,000.00 | computer | email | |
| | | | | | 10/31/2016 | 500.00 | ax invites | email | |
| | | | | | Nov.16 | 39,583.33 | | | |
| | | | | | | 626,716.79 | | | |
| | | | | | Dec.16 | 39,583.33 | | | |
| | | | | | | 21,500.00 | bonus email bon 12/4/16 | | |
| | | | | | | $634,800.12 | | | |
| | | | | | | -184,050.46 | | | |
| | | | | | | | | | |
| | | | | | | (521,659.68) | -421,659.68 | | |
| | | | | | Jan. 2017 | 39,583.33 | | | |
| | | | | | Feb. 2017 | 39,583.33 | | | |



$703,956.78

CONFIDENTIAL

WON07288

| NOTES | | | | | | |
|---|---|---|---|---|---|---|
| 1 | personal reimbursement | | -22,000.00 | e-mail BM 1/6/14 | | |
| 2 | | 4/5/2014 | -30,000.00 | about 50% weekly travel FY14, FY15 | | |
| 3 | | | -10,000.00 | annual ▮ visits | | |
| 4 | | 4/5/2014 | -38,000.00 | additional contribution | | |
| 5 | Oct.14 | | -1,000.00 | per e-mail 10/1/14 | | |
| 6 | 10/21/14email | | -50,000.00 | 10/21/14email | | |
| 7 | 1/8/15 email | | -2,274.09 | holiday dinner | | |
| 8 | 2/9/15 email | | -1,300.00 | MAB dinner | | |
| 9 | | | -6,000.00 | 4/20/15 per mb for writer | | |
| 10 | | | -3,000.00 | 4/20/15 per mb for Photoshop lessons | | |
| 11 | | | -20,000.00 | e-mail 4/21/15 June ▮ trip | | |
| 12 | | | -5,000.00 | e mail 5/6/15 $-5,000 for camera equipment | | |
| 13 | | | -2,652.17 | e-mail 6/3/15 skyline deductions | | |
| 14 | | | -1,350.00 | e-mail 9/23/15 | | |
| 15 | | | -2,057.74 | e-mail 10.08.15 harvard club | | |
| 16 | Nov. 15 | | -6,080.22 | writer on India trip | | |
| 17 | | | -36,925.00 | staff bonus email 11/23/15 | | |
| 18 | | | -1,223.75 | golf balls | | |
| 19 | | | -23,493.86 | langham bills for 2015 per amex 3/11/16 email | | |
| 20 | | 3/11/2016 | -11,028.60 | amtrak for 2015 per amex | | |
| 21 | | 3/11/2016 | -2,977.56 | other taxis for 2015 per amex | | |
| 22 | | | -8,572.47 | 4 seasons 3/11/16 e-mail | 1/24/15-1/23/16 | |
| 23 | email 6/7/16 | | -3,675.46 | 4 seasons 3/18-8/2/16 | | |
| 24 | email 6/7/16 | | -2,975.36 | skyline deductions through 7/13/16 | | |
| 25 | email 7/31/16 | | -13742.29 | langham bills for 2016 per amex through July 31, 2016 | | |
| 26 | email 7/31/16 | | -7,061.00 | amtrak bills for 2016 per amex through July 31, 2016 | | |
| 27 | email 7/31/16 | | -1,353.22 | other misc taxis bills for 2016 per amex through July 31, 2016 | | |
| 28 | | | -3,750.00 | 8/14/16 per mb addtional Photoshop lessons | | |
| 29 | | | -378.63 | July 2016 legal | | |
| 30 | email 9/8/16 | | -12,423.33 | annual ▮ visit July 2016 email 09/08/16 | | |
| 31 | e-mail 9/12/16 | | -790.98 | trip to black pearl lodge | | |
| 32 | | 9/28/2016 | -15,000.00 | healthcare (annual) | | |
| 33 | | 10/19/2016 | -25,000.00 | trip to Banglasdesh | | |
| 34 | | 10/21/2016 | -3,613.95 | camera | | |
| 35 | | 10/31/2016 | -5,000.00 | computer | email | |
| 36 | | 10/31/2016 | -500.00 | az invites | email | |
| 37 | | 12/4/2016 | -41,500.00 | bonus email bm 12/4/16 | | |

CONFIDENTIAL

WON07289

MULLANEY
EXHIBIT 55

| Void ☐ | a Employee's social security number ███████ | | OMB No. 1545-0008 Q3J | | 000001 |
|---|---|---|---|---|---|

| b Employer identification number (EIN)<br>27-4159217 | | 1 Wages, tips, other compensation<br>475000.00 | 2 Federal income tax withheld<br>130870.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code<br><br>WONDERWORK INC<br>420 5TH AVE 27TH FLOOR<br>NEW YORK, NY 10018 | | 3 Social security wages<br>110100.00 | 4 Social security tax withheld<br>4624.20 |
| | | 5 Medicare wages and tips<br>475000.00 | 6 Medicare tax withheld<br>6887.50 |
| | | 7 Social security tips | 8 Allocated tips |
| d Control number<br>000001 RF/Q3J | | 9 | 10 Dependent care benefits |
| e Employee's first name and initial    Last name        Suff.<br>BRIAN F    MULLANEY | | 11 Nonqualified plans | 12a See instructions for box 12 |
| | | 13 Statutory ☐ Retirement ☐ Third-party ☐<br>   employee   plan   sick pay | 12b |
| | | 14 Other<br>      28.00  VPDI | 12c |
| | | | 12d |
| f Employee's address and ZIP code | | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| NY | 27-4159217 | 475000.00 | 37613.10 | | | |

Form **W-2** Wage and Tax Statement    2012    Department of the Treasury—Internal Revenue Service
For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

Copy D — For Employer.



EXHIBIT -55
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
**TransPerfect Legal**

CONFIDENTIAL

| Void ☐ | a Employee's social security number | OMB No. 1545-0008 Q3J | | 000001 |
|---|---|---|---|---|

| b Employer identification number (EIN) | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 27-4159217 | 475000.00 | 131176.62 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| WONDERWORK INC | 113700.00 | 7049.40 |

| 420 5TH AVE 27TH FLOOR | 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|---|
| NEW YORK, NY 10018 | 475000.00 | 9362.50 |

| | 7 Social security tips | 8 Allocated tips |
|---|---|---|

| d Control number | 9 | 10 Dependent care benefits |
|---|---|---|
| 000001  RF/Q3J | | |

| e Employee's first name and initial   Last name   Suff. | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|
| BRIAN F          MULLANEY | | |
| | 13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | 12b |
| | 14 Other | 12c |
| | 26.00  VPDI | 12d |

f Employee's address and ZIP code

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| NY | 27-4159217 | 475000.00 | 33731.15 | | | |

Form **W-2** **Wage and Tax Statement**   2013

Copy D — For Employer

Department of the Treasury—Internal Revenue Service
For Privacy Act and Paperwork Reduction
Act Notice, see separate instructions.

CONFIDENTIAL

WON 06399

| | | |
|---|---|---|
| Void ☐ | **a** Employee's social security number ██████ | OMB No. 1545-0008 Q3J 000001 |

| **b** Employer identification number (EIN) 27-4159217 | **1** Wages, tips, other compensation 475000.00 | **2** Federal income tax withheld 152353.22 |
|---|---|---|
| **c** Employer's name, address, and ZIP code WONDERWORK INC 420 5TH AVE 27TH FLOOR NEW YORK, NY 10018 | **3** Social security wages 117000.00 | **4** Social security tax withheld 7254.00 |
| | **5** Medicare wages and tips 475000.00 | **6** Medicare tax withheld 9362.50 |
| | **7** Social security tips | **8** Allocated tips |
| **d** Control number 000001 RF/Q3J | **9** | **10** Dependent care benefits |
| **e** Employee's first name and initial    Last name    Suff. BRIAN F    MULLANEY ██████ | **11** Nonqualified plans | **12a** See instructions for box 12 |
| | **13** Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | **12b** |
| | **14** Other        18.20  VPDI | **12c** |
| | | **12d** |
| **f** Employee's address and ZIP code | | |

| **15** State | Employer's state ID number | **16** State wages, tips, etc. | **17** State income tax | **18** Local wages, tips, etc. | **19** Local income tax | **20** Locality name |
|---|---|---|---|---|---|---|
| NY | 27-4159217 | 475000.00 | 38234.85 | | | |

Form **W-2**  Wage and Tax Statement    2014    Department of the Treasury—Internal Revenue Service
For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

Copy D — For Employer

CONFIDENTIAL

WON 06400

| | | OMB No. 1545-0008 | Q3J | | 000001 |
|---|---|---|---|---|---|
| Void ☐ | a Employee's social security number ▮▮▮▮ | | | | |

| | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| b Employer identification number (EIN)<br>27-4159217 | 451000.00 | 132670.84 |
| c Employer's name, address, and ZIP code<br>WONDERWORK INC<br>420 5TH AVE 27TH FLOOR<br>NEW YORK, NY 10018 | 3 Social security wages<br>118500.00 | 4 Social security tax withheld<br>7347.00 |
| | 5 Medicare wages and tips<br>475000.00 | 6 Medicare tax withheld<br>9362.50 |
| | 7 Social security tips | 8 Allocated tips |
| d Control number<br>000001   RF/Q3J | 9 | 10 Dependent care benefits |
| e Employee's first name and initial   Last name   Suff.<br>BRIAN F   MULLANEY | 11 Nonqualified plans | 12a See instructions for box 12<br>D   24000.00 |
| | 13 Statutory employee ☐   Retirement plan ☒   Third-party sick pay ☐ | 12b |
| | 14 Other<br>7.80  VPDI | 12c |
| | | 12d |
| f Employee's address and ZIP code | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| NY | 27-4159217 | 451000.00 | 33986.75 | | | |

Form **W-2** Wage and Tax Statement   2015   Department of the Treasury—Internal Revenue Service

Copy D — For Employer

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

CONFIDENTIAL

WON 06401

MULLANEY
EXHIBIT 56

| | |
|---|---|
| **From:** | Brian Mullaney |
| **Sent:** | Monday, January 06, 2014 4:11 PM |
| **To:** | Hana Fuchs |
| **Subject:** | Re: back pay |

If it is okay with you, I'd like to deduct the $22,000 from my impact loan. Thus, my loan is reduced to $228,000.

Oky?

B.

**Brian Mullaney**
Co-Founder/CEO
WonderWork
420 Fifth Avenue, 27th Floor
New York, NY  10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

---

**From:** Hana Fuchs <hana@wonderwork.org>
**Date:** Monday, January 6, 2014 4:08 PM
**To:** brian mullaney <brian@wonderwork.org>
**Subject:** RE: back pay

I've attached the spreadsheet we keep based on your expenses above and what WW owes for Oct., Nov. and Dec. 13 which does not include the Impact Loan.
Let me now if you have any questions.
Thanks Hana

| | | Oct.13 | Nov.13 | Dec.13 | Total 2013 |
|---|---|---|---|---|---|
| | | 39,583.33 | | | |
| | paid in Oct. | 22,250.07 | | | |
| | owed to bm | 17,333.26 | 39,583.33 | 39,583.33 | |
| less misc. | per Karen spreadsheet | -2,106.63 | | | |
| | less ▇▇▇ | -3,797.43 | | | |
| 11/5/2013 | less dinner 4 Seasons | -15,000.00 | | | |
| 12/9/2013 | holiday dinner | -1,009.00 | | | |
| | | -4,579.80 | 39,583.33 | 39,583.33 | 74,586.86 |

**EXHIBIT -56**
Brian Mullaney
8/17/17
S. Arielle Santos, RPR, CSR
**TransPerfect Legal**

---

**From:** Brian Mullaney
**Sent:** Monday, January 06, 2014 3:41 PM

1

WON07291

**To:** Hana Fuchs
**Subject:** back pay

Hi Hana,

Can you please add any extra pay from 2013 that I did not take with my January pay?

This of course does not include the $250,000 bonus which I loaned to WonderWork as part of our impact loan. I should ask Karen to fill out some paperwork for me for this. I am not going to take any interest and I may forgive some or all of it.

Thank you,


Brian



**Brian Mullaney**
Co-Founder/CEO
WonderWork
420 Fifth Avenue, 27th Floor
New York, NY 10018
tel: 212.729.1855
cell: 917.902.7550
email: brian@wonderwork.org
www.WonderWork.org

2

WON07292