# FUCHS

# 8/14/2017

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

In Re:

                          Chapter 11

WonderWork, Inc.,

                          Case No.

        Debtor.          16-13607(MV)

---------------------------------------


        INTERVIEW OF HANA FUCHS

          August 14, 2017

        New York, New York


Reported by:

DEBRA STEVENS

Job no: 19383

1
2      INTERVIEW OF HANA FUCHS, taken by
3   the Examiner, at the offices of Loeb &
4   Loeb, 345 Park Avenue, New York, New York,
5   on Monday, August 14, 2017, at 1:00 p.m.,
6   before DEBRA STEVENS, a Certified Realtime
7   and Registered Professional Reporter and
8   Notary Public within and for the State of
9   New York.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2      E X A M I N A T I O N S
3   Witness                          Page
4   By Mr. Curchack               6
5
6      E X H I B I T S
7   Fuchs
    Exhibits    Description        Page
8
    Exhibit 1   12/18/11 email        23
9
    Exhibit 2   Document, Bates WON   37
10             01770 through 01782
11  Exhibit 3   6/30/17 "Donations   46
             Process Overview"
12
    Exhibit 4   "WonderWork Inc.     55
13             Employee Travel
             Policy"
14
    Exhibit 5   CHAR500 for fiscal   69
15             year ended 6/30/12
16  Exhibit 6   CHAR500 for fiscal   69
             year ended 6/30/13
17
    Exhibit 7   CHAR500 for fiscal   69
18             year ended 6/30/14
19  Exhibit 8   CHAR500 for fiscal   69
             year ended 6/30/15
20
    Exhibit 9   2/20/14 letter, Bates  92
21             WON-EX 042021 through
             042025
22
    Exhibit 10  Letter to KPMG from   96
23             WonderWork
24  Exhibit 11  Representation for   101
             the FY '15 audit
25

1
2      A P P E A R A N C E S :
3
4   LOEB & LOEB LLP
       Attorneys for Examiner
5   345 Park Avenue
    New York, New York 10154-1895
6
      BY:  WALTER H. CURCHACK, ESQ.
7        wcurchack@loeb.com
8        JASON R. LILIEN, ESQ.
         jlilien@loeb.com
9
         BETHANY SIMMONS, ESQ.
10        bsimmons@loeb.com
11
12
    CARTER LEDYARD & MILBURN LLP
13       Attorneys for WonderWork, Inc.
    2 Wall Street
14  New York, New York 10005
15    BY:  LEONARDO TRIVIGNO, ESQ.
         trivigno@clm.com
16
17
18
    ALSO PRESENT:
19
       MICHAEL BERKIN,
20        GoldinAssociates, LLC
21
22
23
24
25

1
2      E X H I B I T S
3   Fuchs
    Exhibits    Description        Page
4
    Exhibit 12  Three spreadsheets   138
5
    Exhibit 13  Email thread number  158
6             023602
7   Exhibit 14  3/20/17 email with   164
             spreadsheet Bates
8             0019930
9   Exhibit 15  Email with attachment 168
             labeled "WonderWork
10             Transaction Report,
             July 2015-June 2016"
11
    Exhibit 16  4/25/17 letter       172
12
    Exhibit 17  Three mailings       188
13
    Exhibit 18  Package of           189
14             information
15  Exhibit 19  Email thread         197
16  Exhibit 20  Three draft          201
             solicitations
17
18
19
20
21
22
23
24
25

1          H. Fuchs
2    EXAMINATION BY
3    MR. CURCHACK:
4        Q.    Good afternoon, Ms. Fuchs.  My
5    name is Walter Curchack and I represent
6    Jason Lilien, sitting to my left today.
7    As you know, Jason is the court-appointed
8    Examiner in the WonderWork bankruptcy
9    case.
10        I will be asking a series of
11   questions.  The reporter will be taking
12   your answers.  While this interview isn't
13   under oath, you appreciate the fact that
14   we understand you will be telling us the
15   truth.
16        Please, when I ask a question,
17   answer it audibly --
18        A.    Sure.
19        Q.    -- rather than just nodding or
20   saying "mm-hmm" or something, so the
21   reporter can get the answer.  Okay?
22        A.    Yes.
23        Q.    Also with me today, as you
24   heard, Bethany Simmons, my colleague;
25   Jason, who we introduced; and Mike Berkin,

1          H. Fuchs
2    who I think you have met before.
3        A.    Yes.
4        Q.    Mike is with the financial
5    advisory firm of GoldinAssociates, which
6    was also retained by the Examiner.
7        I will be asking most of the
8    questions today but, as I said before we
9    started, because of the somewhat informal
10   nature of the interview process here, from
11   time to time Jason will probably be asking
12   some questions, too.  We might also ask
13   Mike at some point to help phrase some of
14   the questions correctly when we get into
15   accounting specific questions.  Okay?
16        A.    Okay.
17        Q.    Couple of boilerplate rules.
18   Please wait for me to finish the question
19   before you answer.  If at any point you
20   don't understand the question, just say so
21   and we will try to rephrase it.  If at
22   some point during the interview you
23   remember something that you want to add to
24   an earlier answer or change an earlier
25   answer, don't hesitate.  Please just tell

1          H. Fuchs
2    us and we'll go and clear up what we need
3    to clear up.
4        We will be taking breaks,
5    because I expect we will be going a fairly
6    long time today.  If at some point you
7    want to take a break and we haven't called
8    one, let us know and as soon as we get to
9    an appropriate stopping point, we'll do
10   that.
11        Could you tell us where you
12   live, Ms. Fuchs?
13        A.    I live at 60 Riverside Drive.
14   It is on 78th Street and Riverside Drive,
15   New York City.
16        Q.    Are you feeling okay today, no
17   medication of any kind that could possibly
18   affect your ability to answer?
19        A.    I feel okay.
20        MR. CURCHACK:  Off the record.
21        (Discussion held off the
22   record.)
23        Q.    Ms. Fuchs, did you do any
24   preparation for this interview?
25        A.    Not really.

1          H. Fuchs
2        Q.    Did you talk to anybody about it
3    in advance?
4        A.    I spoke to Len a little bit
5    about what to expect in terms of the
6    procedure.
7        Q.    Did you look at any documents in
8    preparation for the interview?
9        A.    I looked at one document, which
10   was -- refreshed my memory on.
11        Q.    What document was that?
12        A.    The one on restricted donations
13   and the donation process.  It was
14   something we put together.
15        Q.    I think we are going to get to
16   that.  Let's do it now.
17        A.    I don't remember the full name
18   of it.
19        Q.    That's okay.
20        A.    "Donation process" I think it
21   was called.
22        Q.    Let us show it to you and see if
23   that is the one you are talking about.
24        A.    Okay.
25        MS. SIMMONS:  Let's move on and

```
1          H. Fuchs
2     I will have them pull it.
3          MR. CURCHACK:  We'll come back
4     to that.  Okay.
5     Q.    Could you tell us about your
6  education, please?
7     A.    Well, I went to Queens College
8  and have a degree in math back in 1970.
9  Bayside High School before that --
10    Q.    Just --
11    A.    That was it.  No graduate
12 school.
13    Q.    Have you ever taken any
14 certifications or continuing education
15 kind of programs?
16    A.    No, I haven't.
17    Q.    Let's turn to your employment
18 history.  What was your first job right
19 out of college?
20    A.    I worked for Avon Products when
21 I graduated as a -- I can't remember.  We
22 are talking 47 years ago.
23         Okay.  I worked for Avon
24 Products, ended up, after 25 years, as
25 director of internal audit.  I started in
```

```
1          H. Fuchs
2  their accounting department, moved into
3  the systems department, and after that, I
4  went into internal audit where I spent
5  probably 15 out of the 25 years in that
6  department.
7          Final job was a director of
8  international audit where we did financial
9  and operational reviews of the facilities
10 around the world.
11    Q.    Okay.
12    A.    After that -- you want the rest
13 of my --
14    Q.    Sure.
15    A.    Sorry.  From there I went to
16 Sesame Workshop.  It was called Children's
17 Television Workshop when I was there.  I
18 was there for about two years as the vice
19 president of -- vice president and
20 controller.  From there I moved to Smile
21 Train --
22    Q.    Let me stop at Sesame Workshop a
23 minute.
24    A.    Sure.
25    Q.    What were your responsibilities
```

```
1          H. Fuchs
2  as controller there?
3     A.    As controller?  I was in charge
4  of the day-to-day accounting and payroll
5  and accounts payable.  About maybe 15
6  people.
7     Q.    So, your accounting experience
8  really was learned on the job as opposed
9  to formal education?
10    A.    That's correct.
11    Q.    So let's now take it from
12 Children's Television Workshop to Smile
13 Train.  First of all, what caused you to
14 leave Children's Television?
15    A.    I didn't really get along with
16 the VP of finance -- the CFO, I should
17 say.  We had a difference of opinion, and
18 I decided at that time -- they were doing
19 a kind of layoff, so I kind of joined the
20 crowd and got a nice severance -- I got a
21 little severance package at the time.
22         And one of the people I worked
23 for at the Workshop left for Smile Train.
24    Q.    Who was that?
25         (Pause.)
```

```
1          H. Fuchs
2     A.    I'll remember it eventually.
3     Q.    That's why we let you go back.
4     A.    It's funny.  He was the first --
5  well, the second CEO at Smile Train.
6     Q.    So did he leave the Workshop to
7  become CEO of Smile Train?
8     A.    Yes.  He left before I left.
9     Q.    About how long before you left?
10 Do you remember?
11    A.    Probably about six to eight
12 months.
13    Q.    So this was what?  Around
14 2000 --
15    A.    1999.
16    Q.    What was your first position at
17 Smile Train?
18    A.    Smile Train, I was vice
19 president of finance and administration.
20    Q.    And did -- what were your
21 responsibilities in that position?
22    A.    Well, at that time Smile Train
23 was a start-up, so it was really
24 organizing the accounting department and
25 the finance department and the HR
```

1        H. Fuchs
2   department and keeping track of all of the
3   expenses and payroll.  Kind of wearing all
4   the hats.  It was a very small group,
5   so -- it sounded good, though, the title.
6       Q.   Did you have people reporting to
7   you while you were there?
8       A.   At Smile Train?  Eventually,
9   yes.  No, the beginning, because it was
10  about five or six people in total.
11      Q.   When did you grow -- when did it
12  grow to the size that you needed help?
13      A.   After about six or seven years,
14  I hired some staff.
15      Baxter Urist, U-R-I-S-T.
16      Q.   That was the gentleman --
17      A.   He was at Children's Television
18  Workshop and he moved to Smile Train.
19  Sorry I blurted that out.
20      Q.   No problem.
21      How long after you joined was it
22  until Mr. Urist left?
23      A.   Probably about a year.  Maybe
24  less.
25      Q.   Do you recall the circumstances

1        H. Fuchs
2   that caused him to leave?
3       A.   Not exactly.
4       Q.   Do you know who replaced him?
5       A.   Brian Mullaney.
6       Q.   So the first time you met Brian
7   was in around 2000?
8       A.   Probably right, about 20,000.
9       Q.   At that point, when he came in
10  he was the CEO of Smile Train?
11      A.   Acting CEO until he took the job
12  permanently.  I am not sure exactly the
13  transition time, but...
14      Q.   So, you overlapped with him
15  there for about 10 years more or less.  Is
16  that correct?
17      A.   Yes, that's correct.
18      Q.   During that time, did you and
19  Brian have conversations about accounting
20  practices?
21      A.   At Smile Train?
22      Q.   Yes.
23      A.   Can you be a little more
24  specific?
25      Q.   Did Brian ever come to you with

1        H. Fuchs
2   suggestions as to how to account for
3   things?
4       A.   Such as?
5       Q.   Such as how to book donations,
6   how to --
7       A.   No, not really.  No.
8       Q.   Any --
9       MR. LILIEN:  Did your role at
10  Smile Train include accounting?
11      MS. FUCHS:  Correct.
12      MR. LILIEN:  Can you just
13  explain to us what that role was with
14  respect to accounting?
15      MS. FUCHS:  Well, I did all of
16  the accounting, all of -- whatever it
17  entailed.  Paying the bills, doing the
18  payroll, booking the donations, doing
19  the -- well, getting an accounting
20  company in to do the financial reports
21  that were required for the IRS filings
22  and working with the marketing group
23  in terms of how to report the
24  donations and how they were getting
25  them in.

1        H. Fuchs
2       Kind of coming up with all the
3   systems that needed -- that we needed
4   to put together to have the company
5   run smoothly.
6       MR. LILIEN:  In terms of how
7   revenue, donations were recorded on
8   the books and records of Smile Train,
9   was that a function of yours?
10      MS. FUCHS:  That was my
11  function.  Correct.
12      MR. LILIEN:  Maybe that goes
13  back to your question.  Did you ever
14  discuss that function with Brian?
15      MS. FUCHS:  Probably
16  occasionally, but not when he first
17  started.  Towards -- when we had a
18  board meeting, I had to prepare
19  reports and things like that; we
20  discussed it.
21      Q.   Did he ever suggest any changes
22  in the way you were accounting for things?
23      A.   No.
24      Q.   You mentioned that payroll was
25  one of your responsibilities?

H. Fuchs

1
2    A.    Correct.
3    Q.    Did Brian ever tell you -- ask
4  you to handle his payroll in any way
5  different than you were handling it before
6  that?
7    A.    Well, in the beginning it was --
8  well, we used ADP as our payroll firm, and
9  every once in a while Brian would say he
10  didn't want to be paid at a particular
11  time, so to kind of defer his payroll.
12    Q.    Okay.  And --
13    A.    So I'd keep track.
14    Q.    You'd keep track of what?
15    A.    What he was supposed to be
16  earning versus what he actually was paid.
17    Q.    As part of your job as CFO, did
18  you prepare W-2 forms for employees of
19  Smile Train?
20    A.    ADP prepared those; yes.
21    Q.    When Brian took one of those
22  deferrals, did it ever go from one fiscal
23  year over into another fiscal year?
24    A.    Perhaps.  I am not sure exactly.
25  It's been a while.  But it could have gone

H. Fuchs

1
2  from one year to the next.
3    Q.    If that were the case, what
4  would his W-2 have reflected?
5    A.    Well, his W-2 would reflect his
6  cash salary.  Whatever he received.
7    Q.    And did you put anything on the
8  books of the company that would reflect
9  the deferred portion of his salary?
10    A.    Well, at the end of the year I
11  would always talk to auditors and explain
12  to them how Brian would or would not like
13  his payroll.  And it was on a separate
14  ledger.
15    MR. LILIEN:  Let me ask, when
16  you say end of year --
17    MS. FUCHS:  Fiscal year, when
18  the auditors would come in and review
19  the books.
20    MR. LILIEN:  The W-2's --
21    A.    The W-2's are end of the
22  calendar year.  But I always kept a
23  separate ledger of Brian's payroll.
24    Q.    When you first joined Smile
25  Train, who were the outside auditors?

H. Fuchs

1
2    A.    They were from Ernst & Young.
3    When I first joined, we didn't
4  have an audit firm so I looked for an
5  audit firm and we hired Mitchell & Titus.
6    Q.    How long were they the auditors?
7    A.    Until I left in 2011.
8    Q.    Did those auditors ever question
9  the practice -- raise any questions about
10  the practice of deferring this payment?
11    A.    I would explain to them the
12  procedure I used, and they were fine.
13    Q.    Okay.
14    A.    As well as the board.
15    MR. LILIEN:  You mentioned
16  before ADP prepares the W-2's.
17    MS. FUCHS:  Correct.
18    MR. LILIEN:  Based on
19  information that you had put into the
20  system?
21    MS. FUCHS:  Correct.
22    Q.    What caused you to leave Smile
23  Train?
24    A.    My employment was terminated.
25    Q.    Were you given a reason?

H. Fuchs

1
2    A.    I was given a reason.  It wasn't
3  the right reason but I was given a reason.
4    Q.    What was the reason you were
5  given?
6    A.    That -- at the time, that Smile
7  Train was merging with Operation Smile,
8  and my position was redundant.
9    Q.    What do you think the reason
10  was?
11    A.    I think Charles Wang just didn't
12  like me.  I don't know honestly.
13    Q.    What was Mr. Wang's position --
14  that is W-A-N-G; is that correct?
15    A.    W-A-N-G.  Right.
16    Q.    What was his position with
17  respect to Smile Train?
18    A.    Well, he was chairman of the
19  board.
20    Q.    Had he been chairman the whole
21  time you were there?
22    A.    Yes.  Correct.
23    Q.    And to your knowledge, did he
24  and Mr. Mullaney get along in your
25  opinion?

**6 (Pages 18 to 21)**

```
1            H. Fuchs
2      A.   I thought they did.  To my
3  knowledge.
4      Q.   Did that change at some point?
5      A.   Probably, yes.
6      Q.   About when?
7      A.   I think probably about six
8  months before my position was terminated.
9      Q.   Okay.
10     A.   Around that time.  Maybe a
11 little after that.
12     Q.   Did you leave Smile Train before
13 or after Mr. Mullaney left?
14     A.   Well, I left after him, but
15 his -- he was -- well, according to my
16 understanding, he was supposed to be a
17 consultant for a certain amount of time.
18 So at the time my job was terminated, I
19 thought he was still, had this consulting
20 position.  But apparently that wasn't
21 quite right.
22     Q.   Were you processing payroll for
23 him after he left or using a 1099?
24     A.   He wasn't -- he wasn't -- when I
25 left, it was his last payroll.  It was
```

```
1            H. Fuchs
2  payroll.  I don't know after that what his
3  payroll was.
4      Q.   So the record is clear, when he
5  left, that was the last payroll that you
6  saw for him?
7      A.   Correct.  My timing might be off
8  about the consultant part.  I am not sure.
9      Q.   Did you subsequently learn a
10 little bit more about why Mr. Mullaney
11 left Smile Train?
12     A.   Whatever -- I learned things but
13 I don't know how true some of them were,
14 so I really don't feel like I know enough
15 to say why he actually left.
16     Q.   I am going to show you an email
17 we'll be marking as Exhibit Fuchs 1.
18          (So marked for identification as
19 (Fuchs Exhibit 1.)
20     Q.   For the record, we have marked
21 as Exhibit Fuchs 1 a two-page email from
22 Brian Mullaney to Karen Lazarus, Hana
23 Fuchs and DeLois Greenwood dated Sunday,
24 December 18, 2011.
25          Do you recall receiving this
```

```
1            H. Fuchs
2  email?
3          (Pause.)
4      A.   Sounds familiar.  I mean, this
5  sounds like I must have read it already,
6  so I am sure I did receive it.  My name is
7  on it.
8      Q.   Were you offered severance when
9  you left Smile Train?
10     A.   Yes, I was.
11     Q.   Did you take it?
12     A.   No, I didn't.
13     Q.   Why not?
14     A.   I disagreed with the terms that
15 were in the agreement.
16     Q.   What terms did you disagree
17 with?
18     A.   Particularly that I could not
19 work for Brian Mullaney or even volunteer
20 for Brian Mullaney or do anything for him.
21     Q.   So when -- did Mr. Mullaney
22 offer you a position at WonderWork?
23     A.   He did, yes.
24     Q.   What did that happen?
25     A.   Probably around -- around
```

```
1            H. Fuchs
2  October 2011, when -- yeah.  That was
3  about right.  October.  I left Smile Train
4  February 2011.
5      Q.   So did you have any employment
6  between February of 2011 when you left
7  Smile Train and October?
8      A.   No.
9      Q.   Did you maintain contact with
10 Mr. Mullaney during that period?
11     A.   We spoke.  I am sure I received
12 some emails.
13     Q.   Did you get sued by Smile Train
14 at some point?
15     A.   Yes, I did.  I actually sued
16 them and then they countersued me.
17     Q.   What did you sue them for?
18     A.   For wrongful termination.
19     Q.   And what did they sue you for?
20     A.   For everything, for my salary
21 for 12 -- for numerous things that they
22 felt were suable.
23     Q.   Did you have to hire a lawyer?
24     A.   Yes, I did.
25     Q.   Who paid for the lawyer?
```

1            H. Fuchs
2    A.   I did.
3    Q.   Did you ever receive anything
4 from WonderWork to help you -- to help
5 mitigate those costs?
6    A.   No, I didn't.
7    Q.   Did you ever receive anything
8 from Mr. Mullaney to help with those
9 costs?
10    A.   No, I didn't.
11    Q.   How did that lawsuit end up?
12    A.   Well, it was -- it was dropped
13 without prejudice by both parties.
14    Q.   Was there a settlement in
15 connection with that?
16    A.   No, there wasn't.
17    MR. LILIEN:  Can you clarify
18 what they countersued you for?
19    MS. FUCHS:  Oh, pretty much for
20 my entire salary for the 11 years I
21 was working there.  That's what I
22 remember the most.  They wanted me to
23 pay back.
24    Q.   Did they say why they wanted you
25 to pay it back?

1            H. Fuchs
2    A.   You know, I can't remember.  I
3 am sure it was -- they had a reason there,
4 but one of those things that I forgot.
5    Q.   Did they sue anybody else at the
6 same time?
7    A.   Not that I know of.
8    Q.   Do you remember whether it was a
9 federal court or a state court that they
10 sued you in?
11    A.   Well, it was a countersuit to my
12 suit, which must -- it must have been
13 state. I don't remember what court it was
14 in. Sorry.
15    Q.   That's okay.
16    MR. LILIEN:  I am sorry.
17 Between February and November, you
18 mentioned there was no employment.
19 Were you consulting for anyone?  Were
20 you working in any capacity?
21    MS. FUCHS:  No.  I was
22 collecting unemployment.
23    MR. LILIEN:  During that period
24 when you said you talked or had emails
25 with Brian, was it about the formation

1            H. Fuchs
2 of WonderWork?
3    MS. FUCHS:  That's correct.
4 Yes.
5    MR. LILIEN:  Do you recall what
6 the content of those conversations or
7 those emails or what help you provided
8 him?
9    MS. FUCHS:  Well, I am not sure
10 if they were emails or conversations,
11 but he was still talking to Smile
12 Train, trying to get -- he was working
13 with some of the board members trying
14 to get our severance approved because
15 there was that agreement that we had.
16 And they seemed to come to certain
17 terms but never fully approved.
18 So, we were still hoping that we
19 could get a severance package, which
20 then I would have dropped my lawsuit,
21 but we didn't.  And he would -- he
22 would tell us that he thought maybe it
23 was working or there was a board
24 meeting that he might have told us
25 they talked about it.

1            H. Fuchs
2 Within, I guess it must have
3 been around that summertime he was
4 thinking of starting WonderWork --
5 well, Surgery For The Poor.
6    Q.   When you referred to the
7 agreement just now, is that the severance
8 agreement --
9    A.   The severance agreement.
10    Q.   -- that they had offered you but
11 had conditions that you didn't like?
12    A.   Correct.
13    Q.   And you said -- you also used
14 the word "us" so I take it there were
15 others who were in a similar position?
16    A.   Well, DeLois, Karen and I were
17 all offered severance agreements that we
18 turned down.
19    Q.   Were you all terminated at the
20 same time?
21    A.   Yes.  That's correct.
22    Q.   What is your current title at
23 wonder work?
24    A.   Chief financial officer.
25    Q.   Has that changed over time?

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

1        H. Fuchs
2        A.   No.
3        Q.   Was there anybody in a similar
4    capacity at WonderWork before you joined
5    it?
6        A.   No.
7        Q.   What were your responsibilities
8    when you started?
9        A.   When I started at Surgery For
10   the Poor/WonderWork, my responsibilities
11   were to develop a financial system,
12   develop payroll, HR, and work with Help Me
13   See to help them develop similar systems.
14       Q.   What was your understanding of
15   the relation between Help Me See and
16   WonderWork?
17       A.   My understanding was that we
18   were -- WonderWork was to supply them with
19   back office responsibilities for keeping
20   the books and records, doing certain
21   direct mail, which is kind of not in my
22   wheel house.  But direct mail and other
23   marketing things.
24       But my position was to set up
25   accounting policies and procedures, set up

1        H. Fuchs
2    their QuickBooks, PayPal, ways of getting
3    donations.
4        Q.   Were you compensated by HMS for
5    any of that separately from what you
6    were --
7        A.   No, I wasn't.
8        Q.   Do you remember how much
9    WonderWork was supposed to get paid by
10   Help Me See?
11       A.   They were supposed to pay us
12   $166,000 a month for the services we were
13   providing.  I think we were supposed to
14   then give them certain grants or rebates
15   in exchange.  However, the partnership
16   didn't last very long.
17       Q.   You say grants or rebates.
18   Could you explain that a little bit?
19       A.   Well, the money that was -- that
20   we were raising, we were supposed to give
21   them certain grants.  I can't specifically
22   say how much and for what at this point,
23   but I remember we did give them a grant
24   for Help Me See at one point.
25       Q.   And the source of those funds

1        H. Fuchs
2    were donations that you had raised at
3    WonderWork?
4        A.   WonderWork/Surgery For the Poor.
5    We did our own direct mail in addition to
6    working with Help Me See.
7        Q.   Did Help Me See send out its own
8    direct mail at that time?
9        A.   I don't remember quite how their
10   direct mail program worked.  But I think
11   they did.  I don't know.  I can't
12   remember.
13       Q.   Was Surgery For The Poor -- at
14   the time that Help Me See and Surgery For
15   The Poor were working together, Surgery
16   For The Poor would be sending out
17   solicitation mailings.  Is that correct?
18       A.   Yes, that's correct.
19       Q.   And were you or was Surgery For
20   The Poor sending out mailings on behalf of
21   Help Me See, also?
22       A.   I don't remember that.
23       Q.   Okay.
24       A.   I don't remember how that direct
25   mail program worked.

1        H. Fuchs
2        Q.   Was there anything, to your
3    recollection, in the mailings sent by
4    Surgery For The Poor that would indicate
5    that those funds would be going to Help Me
6    See?
7        A.   To my recollection, our mailings
8    were for burns, clubfoot, hydrocephalus
9    and -- water on the brain and hole in the
10   heart.
11       Q.   Go back to look at the long
12   email again.  On the last page, last major
13   paragraph, it talks about a year-end
14   bonus.  Did you ever receive that?
15       A.   Not to my recollection.
16       Q.   So how were you compensated at
17   WonderWork?
18       A.   Currently?
19       Q.   Let's start at the beginning and
20   go forward.
21       A.   Oh. When I started, my
22   compensation was 200,000 annually for
23   three years, and then it was reduced.  We
24   took a pay cut of 40 percent to 160.  And
25   then FY -- the beginning of FY '17, last

1          H. Fuchs
2    July, I was planning on working part time
3    towards retirement, so I was going to -- I
4    started to work two and a half days a week
5    at 95,000.
6        Q.   You said, I think, 40 percent
7    reduction, but did you mean to say a
8    $40,000 reduction?
9        A.   Oh, 20 percent -- to 160.
10   Sorry.  You are correct.
11          MR. LILIEN:  Who received those
12       reductions?
13          MS. FUCHS:  Karen, DeLois,
14       myself.  I think that was it.
15          MR. LILIEN:  What prompted the
16       reductions?
17          MS. FUCHS:  Well, we were trying
18       to save money and we were looking at
19       certain costs and work that was being
20       done.
21          MR. LILIEN:  Was that directed
22       by the board, or did Brian come up
23       with that?
24          MS. FUCHS:  Brian asked us about
25       it.  We agreed and he presented it to

1          H. Fuchs
2    the board.
3          MR. LILIEN:  Did Brian get a
4       similar reduction?
5          MS. FUCHS:  As of that time, no.
6        Q.   And that reduction stayed in
7    place until you decided to go part time?
8        A.   For me, yes.  Well, other people
9    had gotten increases, so...
10          MR. LILIEN:  Had gotten
11       increases?
12          MS. FUCHS:  When I got the
13       reduction, it was a new fiscal
14       year and the beginning of the year we
15       look at increases.
16          MR. LILIEN:  I am sorry.  Are
17       the increases factored in after the
18       reductions or did people, instead of
19       getting reductions, get increases?
20          MS. FUCHS:  No.  Sorry.  I
21       probably confused everybody.  We took
22       the reductions.  They stayed in place
23       until we did the FY '16 budget, and
24       then people were given increase.
25        Q.   Were you one of the people given

1          H. Fuchs
2    an increase?
3        A.   Well, I took a pay cut because I
4    was working part time, so --
5        Q.   So the increases for the other
6    people that got reduced went into effect
7    at the beginning of fiscal year '17?
8        A.   Yes, I think so.  Yes.
9        Q.   Last summer?
10       A.   Yes.  Last summer.  Seems like a
11   long time ago.  Yes.  But they weren't
12   back up to the percentage that was
13   reduced.
14          MR. LILIEN:  Do you know roughly
15       what the percentage of increase was?
16          MS. FUCHS:  Normally around
17       7 percent, but I can't tell you
18       exactly what it was at that time.  But
19       we go around that.
20          MR. LILIEN:  What justified the
21       increase?  What prompted the increase?
22          MS. FUCHS:  We had a great year.
23       People working really hard.
24          MR. LILIEN:  What year is this?
25          MS. FUCHS:  FY '15 slash -- FY

1          H. Fuchs
2    '15 year.
3          MR. LILIEN:  You had a great
4       year.
5          MS. FUCHS:  We had a good year.
6       A good year.  And people were working
7       really hard.  And normally on an
8       annual basis we do performance reviews
9       and...
10          MR. CURCHACK:  I am going to ask
11       the reporter to now mark as Exhibit
12       Fuchs 2 a document with production
13       numbers WON 01770 through 01782.
14          (So marked for identification as
15       Fuchs Exhibit 2.)
16       Q.   I would like to ask you when you
17   get it to just look at the second page.
18          If you look at that page, it's a
19   chart with titles, people's names and then
20   several other columns, one of which is
21   "Salary."  For you, it says $160,000.  Do
22   you see that line?
23       A.   Yes.
24       Q.   Next to that is $8,000 under a
25   column labeled "5 Percent."  Can you tell

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

```
 1            H. Fuchs
 2   me what that represents?
 3       A.   The 5 percent?
 4       Q.   Yes.
 5       A.   Was the bonus calculation for
 6   2015.  I mean, that's what it says here.
 7           MR. TRIVIGNO:  Look at the rest.
 8       Q.   Feel free to look at it.  It is
 9   just ADP records.
10           Did you receive an $8,000 bonus
11   at the end of fiscal '17?
12       A.   Yes, that's correct.
13       Q.   Then the next column says
14   "Total", and it's calendar '15.  Next to
15   your name it says $173,333.40.
16           Can you tell me what that number
17   represents?
18       A.   I think I know but I must look.
19           To my recollection, that would
20   have been the total salary for 2015.
21       Q.   Did you receive a bonus during
22   calendar year 2015?
23       A.   Yes, I did.  The 160, the annual
24   salary of the 160 was the FY '15 amount of
25   my salary.  And had I added in -- if I
```

```
 1            H. Fuchs
 2   would have added in the whole calendar
 3   year for 2015, then I would have gotten
 4   173,000.
 5           So, there were two options here,
 6   the annual salary versus the calendar year
 7   salary to do this calculation.  Am I
 8   making sense?
 9       Q.   Let me ask a foundational
10   question.  What does this chart represent?
11       A.   Well, as I recall, Brian had
12   asked me what everybody's salary was and
13   he wanted to give -- he wanted to see what
14   a 5 percent bonus would be.  So I took the
15   actual annual salary that we were given at
16   the fiscal year versus what the calendar
17   would have been had we extended it out,
18   which included the higher salary that I
19   was given before the reduction -- that
20   everybody was given.
21           So, the calendar year, if you
22   add in the total of the 200 for the first
23   six months and the 160 for the second six
24   months, you would have gotten this 173.
25           MR. LILIEN:  Why are some
```

```
 1            H. Fuchs
 2   numbers lower, not higher?  I would
 3   think --
 4           MS. FUCHS:  Which is lower?
 5           MR. LILIEN:  Looking at Tiffany
 6   Carson, for example.
 7           MS. FUCHS:  Because I -- I think
 8   it depends when she started.  But I
 9   don't have the start date, but let me
10   take a look.
11           She was hired --
12           MR. TRIVIGNO:  1779 is the page
13   she is looking at.
14           MS. FUCHS:  She was hired in
15   June of 2014, which would have been
16   the starter for salary.  She started
17   June 2, 2014, which is FY -- FY '15.
18   She would have been at the 60,000
19   mark.  But the calendar year would
20   have been -- well, I'd have to look it
21   up.  I am not making sense.
22           It was -- the calendar year
23   should have all been calculated the
24   same way from January to December of
25   2015, whereas the annual salary was
```

```
 1            H. Fuchs
 2   the fiscal year, FY '16, and I would
 3   have to go back to my payroll detail.
 4   I don't have that spreadsheet.
 5       Q.   Okay.
 6           So, in the approximately six
 7   years you have been working at WonderWork
 8   or Surgery For The Poor, did your
 9   responsibilities change?
10       A.   No.  My responsibilities
11   remained the same.
12       Q.   When did you meet DeLois
13   Greenwood?
14       A.   I met DeLois Greenwood at Smile
15   Train when I started working there.
16       Q.   So she was there before you?
17       A.   That's correct.
18       Q.   When did you meet Karen Lazarus?
19       A.   I met Karen about maybe a year
20   after I started.
21       Q.   Is that when she joined Smile
22   Train?
23       A.   That's correct.
24       Q.   So until you were at Smile
25   Train, you hadn't met Mr. Mullaney or
```

1          H. Fuchs
2   either Ms. Greenwood or Ms. Lazarus?
3       A.   That's correct.
4       Q.   Were you involved at all in
5   developing the business plan for
6   WonderWork?
7       A.   I didn't develop a plan per se,
8   but I assisted in some of the numbers,
9   writing some of the numbers for Brian.
10  But his business plan, he developed.
11          MR. LILIEN:  What does that
12      mean, writing the business?
13          MS. FUCHS:  Running the numbers.
14      If he wanted to see something 5 years
15      into the future, he would give me the
16      parameters as to how to calculate
17      them.  Like if X donations increased
18      by 10 percent over the years -- and
19      this is just an example -- then I
20      would do a spreadsheet on that.
21          MR. LILIEN:  And what were the
22      columns you were filling in?  What
23      were the end numbers you were trying
24      to come up with?  Revenues?  Net
25      assets?  What?

1          H. Fuchs
2          MS. FUCHS:  Best of my
3      recollection, it would be revenue,
4      expense, grants.
5       Q.   Did you have any input into that
6   business plan or that budget that was
7   based on numbers provided to you other
8   than the numbers that you got from Brian?
9       A.   No, not to my recollection.
10          MR. LILIEN:  Were you utilizing
11      your experience at Smile Train in any
12      way in coming up with those numbers?
13          MS. FUCHS:  I guess so.
14          MR. LILIEN:  Can you be a little
15      more specific?
16          MS. FUCHS:  Well, our business
17      at Smile Train was granting money to
18      hospitals, having them do the
19      surgeries and then, you know, giving
20      them funding as they grew.
21          So, similarly, we grant money to
22      the hospitals to perform the
23      surgeries, except it's different types
24      of surgery.  So, a similar type of
25      model.

1          H. Fuchs
2      We used the same type of
3   accounting.  QuickBooks I used at
4   Smile Train in the beginning.  Using
5   QuickBooks at WonderWork.  Payroll,
6   the same, of ADP.  So, in that
7   respect, yes.
8       Q.   When you joined Surgery For The
9   Poor initially -- if it's okay with you, I
10  am going to say WonderWork?
11      A.   Sure.
12      Q.   And we all know the name
13  changed, but if we are talking about a
14  period before the name change, you will
15  understand I mean --
16      A.   That is fine.  I agree.
17      Q.   When you first joined, who was
18  handling the payroll for WonderWork?
19      A.   When I joined WonderWork, there
20  was no payroll system in place.
21      Q.   So did you develop that payroll
22  system?
23      A.   Yes.  Called ADP January 2012.
24  Prior to that, I had an accounting person
25  come in and run the numbers for me so I

1          H. Fuchs
2   could make the payments, tax payments.
3       Q.   Okay.
4       A.   But that was just October,
5   November, December of 2011.
6       Q.   When did Mr. Mullaney first
7   defer some portion of his salary, to your
8   knowledge?
9       A.   I would have to look at my
10  payroll records.  I can't give you a
11  specific date.
12      Q.   Did Mr. Mullaney ever make a
13  loan to WonderWork?
14      A.   There was initially, when the
15  organization started, he -- before I
16  actually did the accounting, there was a
17  payment made to WonderWork from
18  Mr. Mullaney as a loan.
19      Q.   Did that get repaid?
20      A.   Yes, it did.
21      Q.   Do you remember how much the
22  loan was?
23      A.   I am thinking it was $50,000.
24      Q.   And do you know where the funds
25  to make that loan came from?

```
1              H. Fuchs
2    A.   No, I don't.
3        MR. CURCHACK:  I am going to ask
4   the reporter to mark as Exhibit Fuchs
5   3 a five-page document labeled,
6   "Donations Process Overview" dated
7   June 30, 2017.
8        (So marked for identification as
9   Fuchs Exhibit 3.)
10   Q.   Is this the document you were
11  referring to before as the donations
12  process?
13   A.   Yes.
14   Q.   This document is dated June 30,
15  2017.  Do you recall when you started to
16  prepare it?
17   A.   Well, to the best of my
18  recollection, it was done in phases, and
19  the marketing group started first.  I
20  reviewed part of it and then the final
21  piece I added, which was the fund
22  accounting reconciliation on page 4.
23   Q.   And when did you first start
24  working on your part of this?
25   A.   I probably started documenting
```

```
1              H. Fuchs
2   this around the time the auditors came in
3   April, and we finished it June 30th.
4    Q.   Which auditors are you referring
5   to?
6    A.   BDO.
7    Q.   Until BDO became involved, was
8   there any similar document that laid out
9   the donations process?
10   A.   Not as comprehensive as this.
11       MR. LILIEN:  Can you give some
12  more clarity to that?
13       MS. FUCHS:  I had write-ups on
14  certain of this, pieces of this.  But
15  not as detailed.
16       MR. LILIEN:  Where were those
17  write-ups?
18       MS. FUCHS:  Normally the
19  auditors take them.  I write them up.
20  The auditor, KPMG and BDO, writing
21  something up for them as to how it
22  works.
23   Q.   Did the process of -- did any of
24  the processes referred to in this document
25  change over the course of your time at
```

```
1              H. Fuchs
2   WonderWork?
3    A.   So, to be clear, did it change
4   on my side, or did it change on
5   marketing's side?  I am not sure --
6    Q.   On your side, with respect to
7   your roles.
8    A.   Yes.  We changed -- I changed
9   the part about how the restricted
10  donations were recorded based on linking
11  the donations to an appeal, which is on
12  two.
13   Q.   Was the practice of doing that
14  linkage conducted prior to the time that
15  this document was prepared?
16   A.   To my knowledge, yes.  This was
17  always -- donations were always linked to
18  an appeal in the marketing department on
19  their database.
20   Q.   And was that -- were those
21  markings carried through into the
22  financial statements of WonderWork?
23   A.   We started carrying them through
24  for FY '16.  They weren't linked prior to
25  that by me because in the past I wasn't
```

```
1              H. Fuchs
2   using this piece of knowledge to record
3   the WonderWork donations.
4        MR. LILIEN:  To clarify, you
5   mentioned you started working on this
6   in connection with the audit by BDO.
7        MS. FUCHS:  That's correct.
8        MR. LILIEN:  When you mentioned
9   fiscal '16, I want to be clear you are
10  saying that in connection with the BDO
11  audit and their guidance they are
12  giving to you?  I don't want to put
13  words in your mouth but I want to make
14  sure I understand.
15       MS. FUCHS:  That's correct.  In
16  connection to their guidance, we went
17  back and looked at FY '15 because of
18  the way -- because of the procedures
19  we were using for FY '16.  And so BDO
20  wanted to affirm that it was the same
21  in FY '15, which KPMG did that audit.
22   Q.   Was it the same?
23   A.   For WonderWork donations, no.
24   Q.   And how was it different?
25   A.   For the WonderWork
```

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

H. Fuchs

1  contributions, I was not linking the
2  donation to the appeal.  The other -- the
3  other causes, very simply, are restricted
4  based on the cause.  People donate money
5  to Burn Rescue, First Step, 20/20/20.
6  However, when they donate money to
7  WonderWork, it was always a WonderWork
8  account unless specifically on the check
9  or letter it would say, "Please use this
10 money for blindness, please use this money
11 for clubfoot."  Then it would become
12 restricted to that cause.
13         But if it was just WonderWork, I
14 never went back to check on the appeal,
15 which was...
16     Q.   How did you know when a check
17 came into WonderWork -- let me rephrase
18 that.
19         Prior to 2016, when a check came
20 into WonderWork and had some notation on
21 it such as "for surgery" or "for
22 blindness," how was that booked in
23 WonderWork's account?  As a restricted or
24 unrestricted donation?

H. Fuchs

1     A.   If it specifically said on the
2  check or if there was a letter attached to
3  the check, it would be restricted to the
4  cause, but not to WonderWork.  There was
5  not a WonderWork-restricted account at
6  that time.
7         The WonderWork checks came
8  directly to the office for the most part.
9  The address on the reply on the envelope
10 was usually our office address, so I
11 opened the mail and I would see the check,
12 and I would see what it said on the check.
13 And that's how it became either restricted
14 or unrestricted.
15         The marketing department then
16 was able to check in their database what
17 mail piece the donor received to determine
18 what -- why they sent the money.
19     Q.   So did you maintain a restricted
20 and an unrestricted account for WonderWork
21 itself during this period?
22     A.   Not until FY '16.
23         MR. LILIEN:  You mean during the
24 fiscal year '16 or after BDO was

H. Fuchs

1  retained and you were looking at
2  fiscal year '16 to evaluate what was
3  done in '16?
4         MS. FUCHS:  Well, we had a
5  restricted WonderWork account, but it
6  was at that time, before BDO started,
7  only one donation in there, which was
8  restricted for a medical records
9  database.
10        MR. LILIEN:  So during what time
11 period, approximately what time did
12 you start revisiting WonderWork and
13 the practice for WonderWork?
14        MS. FUCHS:  Actually, before
15 BDO.  Probably around January of 2017.
16    Q.   Do you recall -- whose decision
17 was it to go back to January of '16 --
18 excuse me.  January of 2017 and look at
19 that?
20    A.   I think it was a joint decision
21 between our lawyers and Brian, us.  I am
22 not sure exactly who made the decision.
23    Q.   Does DMP play any role in the
24 funds processing process?

H. Fuchs

1     A.   DMP, our caging company?
2     Q.   Yes.
3     A.   They get most of the -- they get
4  the majority of the direct mail pieces.
5  They are mailed to a post office box in
6  Maryland.  And they -- their role is to
7  get the mail, sort it out, process the
8  checks, update the database based on the
9  primarily restricted accounts we
10 have, the Burn Rescue, First Step and
11 20/20/20.
12    Q.   How does DMI fit in with the
13 process?
14    A.   DMI is our database management
15 company.  Their database is what we use
16 currently to keep track of all of the
17 donations, all the direct mail pieces, all
18 of our donors.
19    Q.   Before DMI, was there another
20 entity that did that for you?
21    A.   Yes.  IDMI.
22    Q.   Did they do basically the same
23 thing as DMI does?
24    A.   Yes.  Also part of their job is

1          H. Fuchs
2    to analyze the data, too, as well as --
3      Q.    "Their" meaning --
4      A.    Both of those companies.  Direct
5    mail companies, they analyze, report, do
6    all the marketing requirements.
7      Q.    Why did you switch from IDMI to
8    DMI?
9      A.    I think marketing -- the
10   marketing group would be the best people
11   to explain it.  I think it was expensive.
12   Part of it was expense, but I don't know
13   the full reason.
14         MR. LILIEN:  What is the savings
15   of cost between IDMI and DMI?
16         MS. FUCHS:  I am thinking at
17   least 50 percent.  I am just thinking
18   of the monthly -- the monthly database
19   costs were -- I think they ran around
20   $6,000 for IDMI and now are about
21   2,500 for DMI.  There are other
22   things, too, but that's my initial
23   recollection.
24     Q.    Who maintains the general ledger
25   for WonderWork?

1          H. Fuchs
2      A.    I do.
3      Q.    Who has access to it?
4      A.    I do.
5      Q.    Does anybody else have access to
6    it?
7      A.    Read or change?
8      Q.    Let's take them separately.
9    First, read.
10     A.    The auditors can, if I grant
11   them access at the time they are working
12   on it, and the legal people.
13     Q.    But none of them have the right
14   to change the ledger?
15     A.    Correct.
16         MR. LILIEN:  No one has the
17   right to change the ledger but you?
18         MS. FUCHS:  Correct.
19     Q.    From the time you first joined
20   WonderWork until the middle of 2016, did
21   WonderWork have a travel policy?
22     A.    WonderWork had a travel policy,
23   yes.
24         (So marked for identification as
25   Fuchs Exhibit 4.)

1          H. Fuchs
2      Q.    The reporter has marked as
3    Exhibit Fuchs 4 a two-page document that
4    says at the top "WonderWork Inc. Employee
5    Travel Policy."  Is this the policy you
6    were talking about?
7      A.    Yes, this is the policy.
8      Q.    Do you recall when it was
9    actually put on paper the way it is now?
10     A.    When we did a board policy
11   manual, we put this on paper.  It was
12   probably about 2012.
13     Q.    Did this policy apply to
14   everybody at WonderWork?
15     A.    This applied to the employees.
16     Q.    Did this apply to Mr. Mullaney?
17     A.    No.  Mr. Mullaney has his travel
18   policy in his employment agreement.
19     Q.    Are there any unwritten travel
20   policies at WonderWork?
21     A.    Can you give me a --
22     Q.    Are there any -- was this travel
23   policy followed literally by WonderWork?
24     A.    No.
25     Q.    Was this policy ever followed by

1          H. Fuchs
2    WonderWork?
3      A.    The travel policy -- well, first
4    of all, really most employees don't
5    travel, so it was followed by the junior
6    employees.  However, for the most part, I
7    don't think so.
8      Q.    And by referring to people other
9    than the junior employees do you mean, for
10   example, Mr. Mullaney?
11     A.    Well, Mr. Mullaney did not
12   follow this policy.  I am trying to think
13   of who else travelled.  DeLois Greenwood
14   travelled; however, her reimbursements
15   were usually for airline tickets and
16   that's probably all.
17         I didn't really travel, so...
18         MR. LILIEN:  What is your
19   understanding of Brian's travel
20   procedures that are in his employment
21   contract?
22         MS. FUCHS:  My understanding of
23   his travel procedures is his hotel
24   stays in New York, train to New York,
25   family travel with him, business class

15 (Pages 54 to 57)

H. Fuchs

1   travel.
2   MR. LILIEN: Can you explain
3   that a little further and go through
4   those individually? When you say his
5   hotels in New York, what are you
6   referring to?
7   MS. FUCHS: Well, Mr. Mullaney
8   lives in Boston now, so he commutes
9   once a week or one every two weeks,
10  and the transportation cost is covered
11  under his employment agreement, the
12  train to and from, parking, things
13  like that.
14  Q. Have you ever read his
15  employment agreement?
16  A. Yes.
17  Q. Where does Mr. Mullaney stay
18  when he is in New York?
19  A. He stays usually at the Langham
20  Hotel.
21  Q. Who was the initial public
22  auditor for WonderWork?
23  A. KPMG.
24  Q. And they were the auditors until

H. Fuchs

1   when?
2   A. They finished our FY '15 audit
3   and 990 New York tax return.
4   Q. Did they start working on the
5   2016 audit?
6   A. No, they did not.
7   Q. Did KPMG ever raise any
8   questions about your travel policies?
9   A. Not to my knowledge they didn't
10  raise -- not to my recollection.
11  Q. Did BDO ever raise any questions
12  about your travel policy?
13  A. BDO asked about approvals of
14  expenses.
15  Q. And what did you tell him?
16  A. Well, the expense budget is
17  approved by the board, the travel budget
18  is approved by the board. Mr. Mullaney's
19  expenses are part of his contract. And
20  they wanted to see backup for many of the
21  expenses that were in his -- on his credit
22  card and we were able to obtain most of
23  them.
24  Q. When you said the board approves

H. Fuchs

1   the budget, does the budget include the
2   amounts that WonderWork pays for
3   Mr. Mullaney's commuting to and from
4   Boston?
5   A. That's included in the budget,
6   yes.
7   Q. As part of what line?
8   A. Travel.
9   MR. LILIEN: Is it separately
10  delineated?
11  MS. FUCHS: Not -- not in the
12  budget that the board receives, but in
13  the work papers that I use to prepare
14  the budget.
15  MR. LILIEN: Within the system
16  that you manage at WonderWork, is
17  travel and commuting treated the same?
18  MS. FUCHS: Well, there is a
19  line item for travel, and then there
20  is a line item for transportation, and
21  then there is another line item for
22  meetings and entertainment. So there
23  are several line items and I book the
24  hotels on the meeting line and

H. Fuchs

1   transportation for the commuting. Is
2   that --
3   MR. LILIEN: You mentioned
4   before you believe his employment
5   contract also covers his family.
6   MS. FUCHS: For certain travel.
7   MR. LILIEN: Can you explain
8   that?
9   MS. FUCHS: If he decides to go
10  on a trip to visit a hospital, he is
11  allowed to take his spouse with him.
12  That's what I think is included.
13  Q. Does WonderWork have an expense
14  reimbursement policy different than the
15  travel policy?
16  A. Well, what I consider the
17  expense reimbursement policy would be a
18  person filling out an expense report for
19  expenses they incurred, attaching all the
20  required receipts. So it could be for
21  travel or it could be for something that
22  they have spent their own money on. Maybe
23  office supplies that weren't ordered or
24  something they needed to get to the

1    H. Fuchs
2  office. Stamps, for example. And they
3  would put it on an expense report with the
4  backup and it would be approved and
5  reimbursed.
6      Q.  Who would approve it?
7      A.  I would. Normally they'd ask me
8  first. "Can I buy stamps? We don't have
9  any stamps."
10     Q.  Was that policy ever in writing?
11     A.  I don't think so. It's actually
12 written up on the form, but it's not a
13 separate policy.
14     Q.  Did Mr. Mullaney follow that
15 policy when he put in for reimbursements?
16     A.  Primarily Mr. Mullaney's
17 expenses were on a corporate credit card,
18 so I don't remember -- or there may be one
19 or two times when he filled out an expense
20 report. But his assistant, Karen, would
21 do that. Maybe once.
22     MR. LILIEN: Regarding
23 Mr. Mullaney's commuting expenses, do
24 you recall any discussion with your
25 auditors about whether any of the

1    H. Fuchs
2  payments for those expenses were
3  taxable, taxable for Mr. Mullaney?
4      MS. FUCHS: I don't recall any
5  discussions like that.
6      MR. LILIEN: Do you recall
7  having any discussions with Brian?
8      MS. FUCHS: About that?
9      MR. LILIEN: Yes.
10     MS. FUCHS: No, I don't.
11     MR. LILIEN: Have you ever
12 treated those payments to Mr. Mullaney
13 as taxable to him in terms of federal
14 tax reporting?
15     MS. FUCHS: On his travel? On
16 his transportation?
17     MR. LILIEN: On his commuting.
18     MS. FUCHS: No, I haven't.
19     MR. LILIEN: Including his
20 hotel.
21     MS. FUCHS: No, I haven't.
22     Q.  And his travel?
23     A.  No, I haven't.
24     MR. LILIEN: Relatedly on that
25 point, would you consider within your

1    H. Fuchs
2  financial system at WonderWork to
3  treat hotel and travel that is
4  personal to Mr. Mullaney as a benefit?
5      MS. FUCHS: In my opinion, it
6  was always business related, so no,
7  not a benefit at this point.
8      MR. LILIEN: What was business
9  related about it?
10     MS. FUCHS: The fact that he
11 lived in Massachusetts and needed to
12 commute to New York to do business.
13     MR. LILIEN: Was this a need --
14 when you say need, explain what you
15 mean by need?
16     MS. FUCHS: Well, if he had a
17 meeting in the office, he had to have
18 a staff meeting or talk to the staff
19 or things like that. So, there would
20 be a need for him to be there.
21     Q.  Did Mr. Mullaney live in Boston
22 when you joined WonderWork?
23     A.  No, he didn't.
24     Q.  Do you recall when he moved?
25     A.  Probably about -- about two

1    H. Fuchs
2  years ago maybe.
3      Q.  While he was living -- while
4  Mr. Mullaney was living in New York, did
5  he get compensated for his computing
6  costs?
7      A.  Not that I recall.
8      Q.  Who told you that it was okay to
9  reimburse his computing costs as a
10 business expense?
11     A.  Well, at the time it was KPMG.
12     MR. CURCHACK: I am going to ask
13 the reporter to --
14     MR. LILIEN: Sorry, one second.
15 I want to explore that. Apart from
16 KPMG, before it got to the time of the
17 audit, during the course of the year
18 before it was audit time when the
19 auditor came and looked at expenses,
20 who instructed you to pay
21 Mr. Mullaney's hotel and travel from
22 Boston?
23     MS. FUCHS: Well, it was
24 discussed with the -- with the audit
25 committee on the board, too, and I

17 (Pages 62 to 65)

1          H. Fuchs
2     was -- I had explained this is what I
3     do, and they agreed.
4        Q.   Did you have direct
5     communications with the board on that?
6        A.   Directly to the board?
7        Q.   Let me ask some specific
8     questions.  Did you ever attend board
9     meetings?
10        A.   One.
11        Q.   Was the issue of Mr. Mullaney's
12     travel between Boston and New York address
13     at that board meeting?
14        A.   No, it was not.
15        Q.   Did you have direct
16     communications either by email or phone
17     with any member of the board concerning
18     Mr. Mullaney's travel between Boston and
19     New York?
20        A.   I don't recall having direct
21     communications.  I recall speaking with a
22     board member when he was in the office.
23        Q.   Do you remember which board
24     member that was?
25        A.   J.J.

1          H. Fuchs
2        MR. LILIEN:  When you say the
3     audit committee had approved this,
4     when did the audit committee approve
5     this and how do you know they approved
6     it?
7        MS. FUCHS:  Currently J.J. has
8     approved all of the expenses, so I
9     know he has approved in the past, but
10     I am not sure when.
11        MR. LILIEN:  When you say he's
12     approved expenses, can you tell me
13     what you mean by that?
14        MS. FUCHS:  He's gone over all
15     of the FY '15 and '16 credit card
16     expenses from Mr. Mullaney.
17        MR. LILIEN:  When did he start
18     doing that?
19        MS. FUCHS:  Well, he did that
20     for BDO recently.
21        MR. LILIEN:  Going back in time,
22     though, not in connection with a BDO
23     audit, you mentioned before the audit
24     committee had approved this practice.
25     I think that is what you had said.

1          H. Fuchs
2        MS. FUCHS:  Well, I am
3     assuming -- I shouldn't say assume,
4     but since it was in his contract about
5     his expenses and they read that and
6     approved his contract, that is what I
7     am surmising, that --
8        Q.   Sorry to interrupt.  Did
9     Mr. Mullaney tell you that the board had
10     approved his commuting costs at the time
11     he made the move?
12        A.   To the best of my recollection,
13     yes.
14        MR. CURCHACK:  We are going to
15     now mark as Fuchs Exhibit 5, 6, 7, 8
16     and 9, the New York forms CHAR500 for
17     several fiscal years, and attached to
18     each of those forms is the Internal
19     Revenue Service Form 990.  Attached to
20     that is the audited financial
21     statements.  The first exhibit is for
22     fiscal year ended June 30, 2012.
23        6 will be for fiscal year ended
24     June 30, 2013.
25        Let me redescribe this exhibit

1          H. Fuchs
2     as the same documents I described but
3     not including fiscal year 2016.
4        (So marked for identification as
5     Fuchs Exhibit 5.)
6        (So marked for identification as
7     Fuchs Exhibit 6.)
8        (So marked for identification as
9     Fuchs Exhibit 7.)
10        (So marked for identification as
11     Fuchs Exhibit 8.)
12        Q.   I don't think you need to read
13     the whole thing at this time.  I will
14     represent these were copied directly from
15     production.
16        Do you recognize these
17     documents?
18        A.   Yes.
19        Q.   Were you responsible for
20     preparing any portion of these documents?
21        A.   I was responsible in conjunction
22     with KPMG in preparing these.
23        Q.   Who actually filled out the form
24     CHAR500?
25        A.   This form was filled out by

H. Fuchs

KPMG.

Q.   Did KPMG prepare the initial drafts of the Form 990's also?

A.   That's correct.

Q.   What did they base their preparation of those documents on?

A.   They used the general ledger that I supplied for them for their initial preparation for the numbers anyway.

Q.   And did you review these reports before they were filed?

A.   Yes, I did.

Q.   And did you sign these reports before they were filed?

A.   I signed the CHAR500, and Mr. Mullaney signed the 990 and the CHAR500.

Q.   Over the course of the years at WonderWork, did your involvement in the preparation of these returns change?

A.   No.

Q.   If you could turn, in the 2012-fiscal year return, to the page labeled or numbered WON-EX 92.  At the top

H. Fuchs

of this page, which is labeled "Schedule J Compensation Information," do you see the boxes under line 1a?

A.   Yes.

Q.   And the first box says, "First Class or Charter Travel."  Is that correct?

A.   The box?  Yes, that's what it says.

Q.   And the next box says "Travel for Companions."  Is that correct?

A.   That's correct.

Q.   Is either of these boxes checked?

A.   No.

Q.   But is it correct that during this period Mr. Mullaney would travel with his spouse and would take business or first class airfares?

A.   To the best of my recollection -- well, I don't remember in that time period what travel Mr. Mullaney did.

Q.   Let's look at the form for

H. Fuchs

fiscal year 2015.  Let's go to page 277.  To your recollection, did Mr. Mullaney take any trips during fiscal year 2015?

A.   He probably did.  I cannot remember where, but I am guessing he did.

Q.   But these boxes are not checked on this year's return either, are they?

A.   I don't see a checkmark.

Q.   Let's turn to the return for fiscal year 2013.  I want you to turn to -- I thought I had marked the number.  Give me a second.

Page 0128.  This is Part 10 of the Form 990.  I would like to address your attention to line 23.

A.   I am sorry.  Which one?

Q.   It is the one that begins with 113 on the bottom.

A.   Okay.  I got it.

Q.   Go to the page that is 0128 at the bottom and look at line 23.  It says, "Secured mortgages and notes payable to unrelated third parties."  The line is blank for the beginning of the year but

H. Fuchs

has a $1,159,203 entry for the end of the year.  Can you tell me what that represents?

A.   I am thinking this was a loan made by one of our major donors.  We would call them impact loans -- oh, you know what?  I am sorry.  I take that back.  The loans payable underneath that is the impact loan.

It might have been -- I don't really want to guess here, but it might have been money we borrowed against our monies in Vanguard, but I am not sure.  I have to go back to my general ledger to find that out.

Q.   Let me ask you to turn to page 0170 in that same package, notes to the financial statements.  I ask you to read footnote 7 and let me know if that refreshes your recollection.

A.   That's the impact loan, yes.

Q.   Well, keep going.

A.   Borrow against the investment brokerage account.  Yes.

1       H. Fuchs
2    Q.  Why did WonderWork borrow
3 against its investment brokerage account?
4    A.  My understanding is we might
5 have been a little bit cash -- in need of
6 some cash.
7    MR. LILIEN: What was in the
8 investment account at the time?
9    (Pause.)
10    MR. LILIEN: I am not asking the
11 specific amount. I am asking what
12 were the source of the assets
13 represented in the investment account.
14    MS. FUCHS: The investment
15 account had monies from the loans, the
16 impact loans that we received that we
17 hadn't spent plus there were -- there
18 were some stocks and bonds that people
19 had donated to us.
20    MR. LILIEN: Why was there a
21 need to borrow against that account as
22 opposed to spending the investment
23 assets in the account?
24    MS. FUCHS: My recollection was
25 at that time it was probably less

1       H. Fuchs
2 expensive to take -- to borrow the
3 money, based on the interest that we
4 were getting on the investment. But I
5 would have to go back and look up my
6 details. But I think the money in the
7 Vanguard account was making more money
8 than the money that we took out
9 percentage-wise.
10    Q.  Who made the decision to invest
11 the money in that account?
12    A.  The decision was made by
13 Mr. Mullaney on the advice of some
14 person -- persons who were investment
15 strategists.
16    MR. LILIEN: Do you know the
17 names of the people who were
18 investment strategists?
19    MS. FUCHS: Well, the person
20 whose name comes to mind is ▆▆▆
21 ▆▆▆▆
22    MR. LILIEN: ▆▆▆▆?
23    MS. FUCHS: Yes. He is a
24 professor of something. I don't have
25 his whole title. But ▆▆▆▆.

1       H. Fuchs
2    MR. LILIEN: Is ▆▆▆▆ an
3 investment manager or investment
4 advisor to WonderWork?
5    MS. FUCHS: That is not his
6 title, but he was assisting in some
7 investment information for us.
8    MR. LILIEN: And to your
9 recollection, did the board approve
10 that loan against the investment pool?
11    MS. FUCHS: To my recollection,
12 they did.
13    MR. LILIEN: They did?
14    MS. FUCHS: They did.
15    Q.  Let's turn now to the forms for
16 fiscal year 2015, the one that begins with
17 237 at the bottom. You with me?
18    A.  Yes.
19    Q.  If you look at the page number
20 239, there is a line -- I am sorry. This
21 is called Schedule 4A, professional fund
22 raisers, fund raising councils, commercial
23 co-venturers.
24    In line 2, an entity called CDR
25 Fund Raising Group is identified. Can you

1       H. Fuchs
2 tell me who CDR Fund Raising Group is?
3    A.  CDR is our current marketing
4 consultants that strategize with us on how
5 to choose our marketing mail pieces and
6 lists and budgeting, what we need to do in
7 our direct mail.
8    Q.  According to this form, they
9 received a fee of $227,500 during this
10 fiscal year. Is that correct?
11    A.  That's correct.
12    Q.  I would like to ask you to turn
13 to page number 0251 of the 1090 -- I am
14 sorry. The 990, which is Part 9,
15 "Statement of Functional Expenses."
16 Please look down to line 11e. It shows a
17 0, doesn't it?
18    A.  I see that.
19    Q.  Why isn't the amount paid to CDR
20 reflected as an expense on that line?
21    A.  According to KPMG, that CDR
22 expense would be included in the line 13
23 for office expenses based on their
24 understanding of what goes into that line
25 item.

H. Fuchs

1      MR. LILIEN: Can you interpret
2 that for us, how that would be
3 classified as an office expense?
4      MS. FUCHS: I don't have the
5 actual 990 preparation information,
6 but according to how they describe it,
7 this type of information goes into
8 that line item based on how they
9 describe office expenses, because I
10 had asked KPMG the same question. I
11 was told in more detail when they
12 showed me the actual Form 990
13 preparation data as what you are
14 supposed to include in this line item,
15 and that's what they explained to me.
16      Q. Could you turn to page 274 of
17 the same document, please? This is
18 Schedule G, "Supplemental Information
19 Regarding Fund Raising or Gaming
20 Activities."
21      Now, this form shows CDR Fund
22 Raising Group as a marketing fund
23 consultant, and that $227,500 figure that
24 we saw in the other form, in the CHAR500,

H. Fuchs

1 appears in column 5 as an amount paid to
2 fund raiser. Is that correct?
3      A. That's correct.
4      Q. Now, in the next column, which
5 says, "Amount paid to or retained by
6 organization," there is a negative
7 $227,500. Can you explain that to me?
8      A. My understanding of this is that
9 our organization didn't obtain any of the
10 227,000 from the fund raiser organization.
11      Q. Meaning that they kept the whole
12 amount?
13      A. This was their fee. Correct.
14 Not based on how much money they raise.
15      Q. Okay. Thank you.
16      How does WonderWork -- let's
17 stay with that one and go to page 248,
18 part 7, "Compensation of Officers,
19 Directors, Trustees," et cetera.
20      Are you there? Are you on that
21 page?
22      A. Yes.
23      Q. In the first line it says Brian
24 Mullaney, and it says, "Reportable

H. Fuchs

1 Compensation $475,000." Then in column F,
2 "Estimated amount of other compensation,"
3 there is a $43,682 number. Can you tell
4 us what the $43,682 represents?
5      A. Well, this column includes
6 benefits that the employees, officers
7 would get, which would be health, dental,
8 life insurance, disability insurance, in
9 total.
10      Q. And what benefits do you recall
11 Mr. Mullaney having along those lines that
12 would be included in this line?
13      A. Okay. Health coverage for him
14 and his family. Our WonderWork policy
15 includes spouses and children for
16 everybody. It would be dental, the same
17 thing. Disability, which we had at this
18 point, we had long-term disability. And
19 it would also be -- he has a life
20 insurance policy.
21      Q. Who is the beneficiary of that
22 policy?
23      A. His family, his wife.
24      Q. WonderWork was paying the

H. Fuchs

1 premium for that insurance policy?
2      A. That's correct.
3      Q. Do you know whether that was
4 provided for in his employment agreement?
5      A. My understanding is it is.
6      MR. LILIEN: Does WonderWork
7 provide that similar benefit to any
8 other employees?
9      MS. FUCHS: Not -- no. We have
10 small life insurance policies on
11 everybody but not the extent of his.
12 But we do have life insurance.
13      Q. Do you recall when
14 Mr. Mullaney's employment agreement was
15 executed?
16      A. I don't recall the exact date.
17      Q. But did he have an agreement
18 when you joined?
19      A. No, he didn't.
20      Q. So his agreement came at some
21 point during the time?
22      A. That's correct.
23      Q. Who chose KPMG to be
24 WonderWork's auditor?

H. Fuchs

1
2 A. Well, I sent out RFP's to all of
3 the top audit firms. Some answered, some
4 didn't. And based on our responses,
5 talked through everything with Brian, and
6 KPMG had the best reputation, and that's
7 how we selected, based on reputation and
8 what their -- their charges for doing the
9 audit and the 990.
10 MR. LILIEN: Had you ever used
11 KPMG before in any of your employment?
12 MS. FUCHS: I did not.
13 MR. LILIEN: Do you know if
14 Brian had ever used KPMG before?
15 MS. FUCHS: I don't know.
16 MR. LILIEN: Were you familiar
17 at all with the partners or staff
18 working on the account?
19 MS. FUCHS: No, I was not.
20 MR. LILIEN: Do you know if
21 Brian was?
22 MS. FUCHS: I do not.
23 Q. Do you recall having discussions
24 with KPMG about in-kind donations?
25 A. Yes, I do.

H. Fuchs

1
2 Q. Tell us what you recall about
3 those conversations.
4 A. Well, going back to the
5 beginning of in-kind, we calculated
6 in-kind for Smile Train. So speaking to
7 KPMG, I explained to them the practice of
8 calculating in-kind that was used when I
9 was at Smile Train, which would be the
10 amount the hospitals would contribute
11 toward the surgeries. The difference
12 between what the hospitals would
13 contribute to a surgery to what we would
14 contribute. And we took the difference
15 and we would account for it as an in-kind
16 contribution as well as an in-kind
17 expense.
18 So I talked through this with
19 KPMG, and the manager on the job had his
20 own way of accounting for in-kind, and he
21 based it on the actual amount of surgeries
22 that were done and not how many we funded.
23 Q. Can you explain that
24 distinction?
25 A. Well, we give a grant -- for

H. Fuchs

1
2 example, say we gave a grant to a hospital
3 for $10,000 to do 25 surgeries. And
4 sometimes they only did 10 and sometimes
5 they would do 30. So the way I would book
6 the in-kind when I was at Smile Train, I
7 would use the 25 surgeries that we funded,
8 which did not mean the hospital actually
9 did 25, but I took that number.
10 We received information from the
11 hospitals as to what the actual cost was
12 and we calculated based on the difference.
13 Q. In other words, you would give
14 them -- Smile Train now would give the
15 hospital, let's say, $10,000, and say
16 please do 25 surgeries with this. But you
17 never confirmed that they actually did the
18 25 surgeries?
19 A. No, we confirmed it, but we
20 didn't book the in-kind that way. We
21 always confirmed it because the hospitals
22 had to send in pre and post operative
23 pictures of all the work they did before
24 we would fund them again.
25 Q. So --

H. Fuchs

1
2 A. Medical records we call them.
3 Q. Tell me again how you calculated
4 the in-kind with respect to those 25
5 surgeries?
6 A. We would -- we'd get -- we'd
7 send the hospitals a survey asking them
8 what it would cost to do surgery if they
9 weren't funded, the actual cost. And they
10 would fill out the survey and tell us how
11 much a real surgery would cost. So if
12 they said it cost $100 for the full
13 surgery and we gave them $25 but they did
14 the surgery, we would consider the
15 difference, the $75, as an in-kind
16 contribution.
17 Q. You mentioned that you did that
18 at Smile Train. Do you recall whose idea
19 it was initially to do that?
20 A. I don't.
21 Q. Did you ever read any accounting
22 literature to try to understand?
23 A. I read some of it. It's been a
24 while.
25 MR. LILIEN: What is your

1          H. Fuchs
2    understanding of what the accounting
3    treatment is on an in-kind -- when is
4    a donation considered an in-kind
5    donation such that you can report it
6    as in-kind on the company's books and
7    records?
8         MS. FUCHS:  It is based on
9    several criteria which exactly I can't
10   tell you at the moment.  But I have
11   some documentation at the office on
12   that.
13        MR. LILIEN:  So would you record
14   the in-kind donations during the
15   course of the year on your books and
16   records, or was that a function at the
17   end of the year you would determine?
18        MS. FUCHS:  I would record an
19   estimate, but then we'd true it up at
20   the end of the year based on the
21   survey from the partners and the
22   information on the actual -- the
23   records that they did the surgeries.
24        MR. LILIEN:  Do you recall if
25   any of the in-kind contributions that

1          H. Fuchs
2    were reported, reported as in-kind
3    contributions to WonderWork were
4    contributions that were given directly
5    to WonderWork?
6         MS. FUCHS:  We had one in-kind
7    contribution -- it might have been FY
8    '15; I don't remember exactly -- from
9    a consulting group that did work on
10   our program side that was valued at
11   about -- they valued it at over a
12   million dollars as an in-kind
13   contribution.
14        MR. LILIEN:  Aside from that
15   consulting group's in-kind
16   contribution, are there any others you
17   can think of that related to your
18   programmatic activities?
19   A.   We just used the surgeries.
20        MR. LILIEN:  And the Boston
21   consulting groups, which is I believe
22   what it was.
23        MS. FUCHS:  Yes.
24        MR. LILIEN:  What did you
25   receive at the time in order to

1          H. Fuchs
2    validate the amount of the
3    contribution?
4         MS. FUCHS:  Well, we received a
5    letter or email from the person who
6    actually did the work as to what his
7    work was valued at.
8         MR. LILIEN:  Do you recall
9    receiving any backup documentation
10   regarding that?
11        MS. FUCHS:  The backup of his
12   work?
13        MR. LILIEN:  Backup
14   demonstrating or documented how he
15   arrived at the million dollar figure.
16        MS. FUCHS:  I do not.
17   Q.   Did you ever discuss matching
18   gifts with KPMG?
19   A.   I did not.
20   Q.   Did you ever discuss the
21   allocation of donations as restricted or
22   unrestricted with KPMG?
23   A.   Yes.
24   Q.   Tell us about some of those
25   conversations.

1          H. Fuchs
2    A.   Well, initially we did not have
3    anything restricted back when we first
4    started, but when KPMG did, I think it was
5    the second audit, I worked -- no, it was
6    actually the first audit.  I worked with a
7    KPMG manager to come up with the process
8    of how you would allocate restricted and
9    unrestricted, how you would split the --
10   well, how you would come up with the
11   system of recording the restricted and
12   unrestricted and how you would release the
13   restriction and what you would end up with
14   at the end of the release procedure.  So,
15   that was a KPMG process.
16   Q.   Did you ever discuss functional
17   cost allocation with KPMG?
18   A.   Yes, I did.
19   Q.   What is your understanding of
20   what that means?
21   A.   That would be how much you could
22   allocate from your expenses based on if it
23   was programmatic, if it was management in
24   general or fund raising.
25   Q.   And what was the reason for

1          H. Fuchs
2    making that allocation?
3         A.    It would be based on the
4    percentage of costs or time that people or
5    things would be for each of those items.
6         Q.    But why was it necessary to make
7    that allocation?
8         A.    Well, it was an accounting -- it
9    was an accounting policy that you are
10   allowed to -- you were allowed to allocate
11   part of your other expenses other than
12   programs to programmatic means.
13        Q.    When you use the word
14   "programs," what do you think of?  What do
15   you mean?
16        A.    Well, the mission of the
17   organization is the program to me.  So,
18   our mission not only is to help the
19   poorest of the poor in these countries get
20   surgeries that they can't afford, but also
21   to make people aware of the conditions and
22   what can be done to help them and getting
23   the information out there to the people
24   who need to know as part of it.  That is
25   kind of in a nutshell.

1          H. Fuchs
2         Q.    Did you discuss how legal fees
3    would be apportioned or reflected on the
4    financial statements KPMG?
5         A.    Yes, I did.
6         Q.    Tell us about that.
7         A.    Well, in the last audit that
8    they did we discussed this expense of the
9    arbitration, and they considered that
10   total expense as being programmatic.
11        Q.    What was the basis for
12   considering it that?
13        A.    Well, the basis to them was it
14   was program related.  It was based on the
15   blindness program that this whole thing
16   came about.
17            The other thing -- one other
18   thing that just popped into my head is, in
19   them explaining that to me, they said,
20   "You can't allocate part of that to
21   anything else.  It is either programs or
22   it isn't."  So they said you have to take
23   the entire bill, which was what was in the
24   allocation, the legal allocation for
25   programs.

1          H. Fuchs
2         Q.    So KPMG told you, if I
3    understood you correctly -- KPMG told you
4    that if the legal fees in connection with
5    the HMS litigation weren't attributable to
6    program, they couldn't be counted as an
7    expense?  I am not sure I understand.
8         A.    No.  They told me that the
9    entire expense for that litigation was
10   attributable to programs.
11            MR. CURCHACK:  I would like to
12   mark as the next exhibit --
13        (Recess.)
14        Q.    I would like to first mark as
15   Exhibit 9 a letter dated February 20,
16   2014, from WonderWork addressed to KPMG.
17   It bears production number WON-EX 042021
18   through 042025.
19            (So marked for identification as
20   Fuchs Exhibit 9.)
21        Q.    Do you recognize this document?
22        A.    Yes.
23        Q.    And tell us what it is.
24        A.    This looks like the KPMG letter
25   to management on the financial statements.

1          H. Fuchs
2         Q.    To management?
3         A.    Well, it is to "Ladies and
4    gentlemen."  We sent to KPMG.  I am sorry.
5    It is sent by us to KPMG, and it is the
6    management -- I think it's the disclosure
7    letter.
8         Q.    And who drafted this?
9         A.    KPMG.
10        Q.    Is that your signature on the
11   last page?
12        A.    Yes, it's my signature.
13        Q.    At the time you signed this, did
14   you believe it to be true?
15        A.    Yes, I did.
16        Q.    Do you recall, what were you
17   relying on -- scratch that.  I apologize.
18            Go to paragraph number 20.  What
19   was your basis for stating that you had a
20   reasonable basis for allocation of
21   functional expenses?
22        A.    Well, our functional expenses
23   primarily are the biggest line item, which
24   is the marketing expenses.  And I use a
25   consultant to categorize our direct mail

1            H. Fuchs
2 marketing expenses as to which is
3 programmatic versus what is
4 administration/fund raising. So I am
5 relying on him to do this reasonably.
6      Q.    Who was that person?
7      A.    Well, in '14 it, was our
8 marketing company, Target Market, and they
9 have somebody in their office who does the
10 allocation, and this sent it to us. We
11 subsequently have somebody else to do it.
12      Q.    Do you recall who that was?
13      A.    It is a fellow called Gary
14 Ellis. And he does this as a second job.
15 He is an accounting person.
16      Q.    Does what as a second job?
17      A.    He does functional expense
18 allocations for direct mail pieces for
19 non-profits.
20      Q.    How did you come to retain him?
21      A.    When we switched marketing firms
22 from Target Market to CDR, the CDR
23 marketing company, they recommended Gary
24 Ellis because they didn't do it
25 themselves, where the other marketing

1            H. Fuchs
2 company did this practice. So they said
3 this guy Gary Ellis does this.
4      Q.    So when did you start using
5 Target Market Team as your marketing
6 consultant?
7      A.    We used them in the beginning,
8 the first two years or three years.
9      Q.    Did you ever use a company
10 called NNN?
11      A.    Oh, NNE?
12      Q.    NNE.
13      A.    Yes. But they did not supply
14 any of that information.
15      Q.    Do you recall when you switched
16 from NNE to Target Market Team?
17      A.    I think we -- I think we had
18 Target Market and then we went to NNE.
19 Maybe I am wrong. I don't remember. I
20 thought we -- I thought NNE came after
21 Target Market. I am not sure.
22      Q.    Let me try to refresh your
23 recollection --
24      A.    You are probably right.
25      Q.    My understanding is NNE came

1            H. Fuchs
2 first?
3      A.    Came first?
4      Q.    Yes.
5      A.    Okay.
6      Q.    So, if that's the case, then who
7 would have done the allocation before
8 Target Market Team?
9      A.    I don't think there was an
10 allocation before Target Market.
11 Initially we didn't really do any direct
12 mail in the very, very beginning. I would
13 have to go back and look. I am not sure
14 of the old financials.
15      Q.    And if you go to page -- never
16 mind.
17      A.    In '12, I was looking to see if
18 there was an allocation.
19        MR. TRIVIGNO: Wait for a
20 question.
21        (So marked for identification as
22 Fuchs Exhibit 10.)
23        MS. FUCHS: Back in FY '12, when
24 we used NNE, we allocated very little
25 to program on a direct mail. We had

1            H. Fuchs
2 most of it in fund raising, if you go
3 to the Exhibit 6, WON-EX 0165. If you
4 go to that line item 4, publishing --
5 "Printing, Publishing and Postage,"
6 you can see that the most -- most of
7 the money that was spent, of the
8 163,000, 154 was fund raising. So, we
9 didn't use anybody to allocate any of
10 the -- this was FY '12.
11      Q.    That is printing, publication
12 and postage?
13      A.    Yes.
14      Q.    Who did that allocation?
15      A.    I must have done it, or not done
16 it, since most of it was fund raising.
17 And there might have been a small piece
18 that just went out regarding our programs
19 that wasn't fund raising and printing.
20 But I don't know exactly which one it was.
21      Q.    Turning to the same page in the
22 financial statement for fiscal year 2012?
23        MR. TRIVIGNO: Talking about 5?
24      Q.    0106 of Exhibit 5, it again
25 appears to be a very small number.

1             H. Fuchs
2      A.   Yes.  That's the one I was
3  pointing out, FY '12.
4      Q.   Then if you go to the same page
5  of the financial statements for fiscal
6  year 2014, which appears at page 0228 --
7      A.   Yes, I see that.  This was
8  probably Target Market.
9      Q.   And this reflects $3 and a half
10  million being allocated to program
11  services and 4.3 million being allocated
12  to fund raising.  Is that correct?
13      A.   3.9 -- yes -- oh, FY '14.  0227?
14      Q.   0228.
15      A.   Okay.  That is FY '13.
16      Q.   Okay.
17      A.   Yes.
18      Q.   Wait a minute.  I think we may
19  have been looking at the wrong page.
20  Let's go to page 0164.
21      A.   In Exhibit --
22      Q.   Exhibit 5, the 2013.
23          MR. TRIVIGNO:  Exhibit 6.
24          MR. CURCHACK:  Exhibit 6.
25  Sorry.

1             H. Fuchs
2          MS. FUCHS: 0164?  Okay.  I see.
3      Q.   This is the June 30, 2013
4  financial statement, and again, it shows
5  the $3 and a half million allocated to
6  program services.  The page we looked at
7  previously was actually for fiscal year
8  2012.
9      A.   Correct.
10      Q.   It was part of this report
11  but --
12      A.   Prior year.  Mm-hmm.
13          So Target Market did this --
14  well, to the best of my recollection, they
15  did '13 and '14, even though probably NNE
16  started the marketing, Target Market
17  picked it up.  And they did the allocation
18  percentages for me until Gary Ellis did
19  them.
20      Q.   When you said '13 and '14, you
21  mean fiscal year?
22      A.   Fiscal year.  Yes.
23      Q.   Could you look at Exhibit 10,
24  please?
25      A.   Yes.

1             H. Fuchs
2      Q.   Is this also a similar kind of
3  letter to KPMG from WonderWork?
4      A.   Yes.
5      Q.   And it has your signature on the
6  last page?
7      A.   Yes.
8      Q.   Now, there were some changes in
9  this agreement -- in this letter.  Sorry.
10  I am not going to ask you to read through
11  it at this point because it speaks for
12  itself.  But do you recall noting any
13  differences between this letter and the
14  previous ones?
15      A.   It looks like they added on some
16  points.
17      Q.   Do you recall why?
18      A.   I don't recall why.  I see the
19  points, but I don't recall why they added
20  them.
21      Q.   Let's look at paragraph 23.
22  Paragraph 23 says, "The organization has a
23  reasonable basis for determining estimates
24  associated with in-kind contributions and
25  has followed that basis at June 30, 2014."

1             H. Fuchs
2          Did you ever have any
3  discussions with KPMG about that
4  representation?
5      A.   In this letter?  I mean, in
6  this --
7      Q.   Yes.
8      A.   I don't recall.
9      Q.   Did they -- to your
10  recollection, who drafted this letter?
11      A.   KPMG.
12      Q.   And you read it before you
13  signed it?
14      A.   I did.
15          MR. CURCHACK:  Let's mark the
16  next one.
17          (So marked for identification as
18  Fuchs Exhibit 11.)
19      Q.   Can you tell us what Exhibit 11
20  is?
21      A.   This looks like the
22  representation for the FY '15 audit.
23      Q.   Could you turn to -- and you
24  signed this on the last page?
25      A.   Yes, I did.

1          H. Fuchs
2     Q.   Could you turn to paragraph 27?
3 Do you recall why that paragraph was
4 added?
5     A.   I don't recall why it was added,
6 no.
7     Q.   Did WonderWork book --
8 withdrawn.
9          Do you recall whether WonderWork
10 created an accrual for potential exposure
11 to Help Me See?
12     A.   I created an accrual for what we
13 thought the exposure would be.  I just
14 don't remember which fiscal year it was
15 put in with Help Me See's agreement.
16 There is a footnote -- there should be a
17 footnote in the audited financials
18 regarding it.  If I could look through
19 this, I could find it.
20     Q.   Sure.  Please do.  Just tell us
21 what you are looking at.
22     A.   As soon as I find it, I will let
23 you know.
24     Q.   Can I direct you to page 0300?
25     A.   Of which Exhibit?

1          H. Fuchs
2     Q.   Of the 2015 audited financial
3 statements.
4          MS. SIMMONS:  8.
5     Q.   It's Exhibit 8.
6     A.   Got it.  Which page?
7     Q.   0300.  Tell me if that is the
8 footnote you were referring to.
9     A.   Footnote 8?
10     Q.   Yes.
11     A.   The original footnote, though,
12 didn't have the reversal in it.  We
13 reversed the entry based on not knowing
14 what the agreement might be, so we -- we
15 had put it in thinking we were going to
16 get money based on the arbitration.
17 However, at that point in time when this
18 was being done, we decided it really
19 didn't make sense -- well, KPMG decided
20 with us it didn't make sense to keep in
21 the accrual, so we reversed it.
22          MR. LILIEN:  How would KPMG
23     know, have enough information to make
24     that judgment?
25          MS. FUCHS:  They read the

1          H. Fuchs
2 contract and they saw what the terms
3 were of the dissolutionment of the
4 terms --
5          MR. LILIEN:  What word?
6          MS. FUCHS:  How we dissolved the
7 contract based on -- based on the
8 information that we had from Help Me
9 See and the emails that were sent
10 saying that they wanted to terminate
11 the agreement with us.
12          So, they read the -- they had
13 read the original contract and, based
14 on that, that we recorded the
15 liability -- well, it wasn't a
16 liability --
17          MR. LILIEN:  Let me read a line
18 I am referring to, "The liability
19 recorded at the termination of the
20 agreement has been reversed as
21 management believed the liability will
22 not be paid."
23          Is that the line you are saying
24 KPMG determined --
25          MS. FUCHS:   Well, based on the

1          H. Fuchs
2 original -- the original footnote when
3 we first came up with it, it was
4 according to how KPMG also interpreted
5 the agreement as to what we were
6 supposed to -- what we were supposed
7 to pay Help Me See and what they were
8 supposed to give us.  And they came up
9 with this liability.
10          And so at this --
11          MR. LILIEN:  Sorry.  When you
12 say they came up with this liability,
13 referring to KPMG?
14          MS. FUCHS:  KPMG, after they
15 read the agreement originally, back
16 when they first recorded the footnote.
17 Because the footnote was in the FY '13
18 audit.
19          MR. LILIEN:  I am not referring
20 to the recording of a liability.  I am
21 referring to the sentence that says,
22 "Management believes the liability
23 will not be paid."
24          MS. FUCHS:  At this point, we
25 told KPMG we didn't think this was

1      H. Fuchs
2  going by happen.
3      Q.   If you could look at Exhibit 10,
4  I think it is, which is the 2014 audit.
5  Go to page 0234.  Sorry.  Exhibit 9?
6          MS. SIMMONS:  The actual audit
7      is Exhibit 7.
8      Q.   Exhibit 7.  Look at footnote 8.
9  It looks to me to be the same footnote.
10     A.   They usually put in for two
11 years the same footnote.  That's probably
12 why they put it in because it affects two
13 fiscal years.  So this was the first time
14 they put it in.  I think the other
15 audit --
16     Q.   Let's go to the previous year,
17 the June 30th financials, which are
18 attached to Exhibit 6.
19     A.   Okay.
20     Q.   Go to page 0170.
21     A.   At that point, we didn't say it
22 would be reversed.
23     Q.   So what caused the change in the
24 management's view between the 2013 audit
25 and the fiscal year 2014 audit to add that

1      H. Fuchs
2  last sentence to the footnote?
3      A.   I think it was because it was
4  just dragging out.  Normally arbitration
5  should have been finished in, you know,
6  two months from what our original lawyer
7  had told us.  And the fact that it was
8  dragging out this long, management felt
9  that just it should be reversed, and I
10 didn't argue.
11     Q.   Well, the latter footnotes say
12 that the liability recorded has been
13 reversed.  So which liability is not going
14 to get paid?
15     A.   Let me go back and look at what
16 we had offered.
17          I think it was a grant that we
18 were supposed to give to Help Me See.
19     Q.   Which had been booked in the
20 financial statements as a liability?
21     A.   Yes, that's correct.
22     Q.   Thanks.
23     A.   Grants payable.  It was a grant.
24     Q.   How did WonderWork treat the
25 legal expenses incurred in the actions

1      H. Fuchs
2  brought by Smile Train and Help Me See in
3  their financial statements?
4      A.   How did we -- how we treated
5  them?
6      Q.   Yes.
7      A.   In terms of?
8      Q.   Were they treated -- how were
9  they allocated amongst the functional
10 expenses?
11     A.   Oh, according to what KPMG
12 discussed with us, we could treat the
13 expenses as a programmatic expense.
14     Q.   For both of those?
15     A.   For Help Me See?
16     Q.   Yes, and Smile Train?
17     A.   Yes.  They did.  I think they
18 did.  Smile Train was before that, so I am
19 not sure.  But I definitely remember Help
20 Me See.
21     Q.   Going back to Exhibit 10 --
22 sorry.  Exhibit 11 -- let's skip the
23 question and keep moving.
24          The end of fiscal year 2016, who
25 was WonderWork expecting to do its audit?

1      H. Fuchs
2      A.   At the very end of FY '16,
3  June 30th, '16?
4      Q.   Yes.
5      A.   KPMG.
6      Q.   At some point in time did that
7  change?
8      A.   Yes, it did.
9      Q.   Can you tell us what happened?
10     A.   Well, I recall speaking with the
11 partner in November, and everything seemed
12 to be okay.  And then the whole bankruptcy
13 issue came up December, and the ruling --
14 well, arbitration ruling came up first.
15 The bankruptcy -- although the partner
16 knew about arbitration ruling because I
17 had sent her the documentation.
18          And then the bankruptcy came up.
19 Then we were trying to getting things
20 together.  And everything was fine until
21 about February, when I got an email saying
22 they weren't going to do the audit.
23     Q.   Do you remember the name of the
24 KPMG partner you are referring to?
25     A.   Yes.  Kimberly Johnson.

28 (Pages 106 to 109)

H. Fuchs

1        H. Fuchs
2    Q.   Did she -- did Ms. Johnson tell
3   you why they were not going to be able to
4   do the audit?
5    A.   Part of it was because it was --
6   we were just too small of a charity for
7   them, we hadn't grown as much as they had
8   anticipated from the initial meeting with
9   them.  That was kind of it.  She didn't
10  say anything more.
11    Q.   Isn't it true that the number of
12  donors and the amount of donations
13  increased in every fiscal year?
14    A.   That's true.
15    Q.   Did you try to talk them out of
16  backing out of the audit?
17    A.   I tried to, but apparently it
18  had gone up the chain and the chain said
19  no.
20    Q.   So what did you guys do then --
21    MR. LILIEN:  Sorry.  Before you
22  go on, did anyone else besides you try
23  to convince KPMG?
24    MS. FUCHS:  I think Brian might
25  have called her.  I am not sure if he

H. Fuchs

1        H. Fuchs
2   called or e-mailed.  And possibly, but
3   I am not sure either, J.J. Coneys, our
4   audit committee person.
5    MR. LILIEN:  You believe either
6  Brian or J.J. may have spoken to KPMG
7  as well?
8    MS. FUCHS:  May have, yes.  I am
9  not sure.
10    MR. LILIEN:  Your understanding
11  of the reason was that you were too
12  small and not growing sufficiently.
13  Was there any other reason
14  discussed --
15    MS. FUCHS:  With me, no.
16    MR. LILIEN:  With Brian that you
17  are aware of?
18    MS. FUCHS:  I don't know about
19  anything that they discussed with her.
20  But what I had discussed through the
21  emails was exactly that.
22    I had even gotten an engagement
23  letter for the guy who was supposed to
24  do the 990, so I was surprised.
25    Q.   During this time frame, and

H. Fuchs

1        H. Fuchs
2   let's say starting in February, were you
3   having discussions with KPMG about any
4   particular issues regarding WonderWorks'
5   financial statements?
6    A.   No, I wasn't.
7    Q.   Can we, please, mark as
8  Exhibit -- sorry.  Never mind.
9    MR. LILIEN:  When you say they
10  went up the chain, your understanding
11  is they went up the chain because your
12  organization size was too small?
13    MS. FUCHS:  That was my
14  understanding, that it had to go --
15  well, that was one of the reasons but
16  I am sure -- not sure, but I -- well,
17  that was the reason that I was told,
18  that it went up her chain of partners.
19    MR. LILIEN:  Because?
20    MS. FUCHS:  Well, she said they
21  normally do a five-year review.  I
22  didn't get anything else, any other
23  information.
24    Q.   So what happened next?
25    A.   Next I tried to find another

H. Fuchs

1        H. Fuchs
2   accounting firm.  I sent out -- well, I
3   looked at whoever -- underneath the top
4   tier and I came up with three, four firms:
5   BDO, Eisner, CohnReznick -- I think there
6   was a fourth.  I am not sure.  I think
7   there were four that I called.  And each
8   one of them said no until BDO had agreed.
9   So, that took a while.
10    Q.   Do you recall when you finally
11  signed an engagement letter with them?
12    A.   I think it was the beginning of
13  April I think.
14    MR. LILIEN:  Why did the others
15  say no and how did they say no?  What
16  format did they say no to you?
17    MS. FUCHS:  Reznick said no,
18  just no.  The other ones, I had sent
19  them some information and they weren't
20  interested.  They never said why.
21    MR. LILIEN:  What information
22  did you send to them?
23    MS. FUCHS:  I sent them the
24  financials.  If they asked for -- I
25  might have sent them the arbitration

1          H. Fuchs
2     agreement, too, as part of their
3     review.
4          MR. TRIVIGNO:  The award.
5          MS. FUCHS:  The award.  I am not
6     sure exactly.  I have to go back and
7     see what I sent to everybody because
8     each were asking for different things.
9     But I explained the situation, that we
10    are looking for an auditor.  And until
11    BDO, the other ones had said no.
12         MR. LILIEN:  Explain to me the
13    process.  After you sent them and you
14    called them, they said send materials,
15    and you sent materials, what happened
16    next?  Did they speak with you about
17    your materials?
18         MS. FUCHS:  I am just trying to
19    think back.
20    A.     I was kind of like working with
21    one at a time.  And I would call them back
22    and find out -- because they were
23    interested originally and they weren't
24    interested and they never would tell me
25    exactly why, but they would say they

1          H. Fuchs
2     weren't interested.  So then I would work
3     with the next one on the list who was
4     interested, and they weren't interested.
5     Then BDO finally was interested and we
6     worked through all the documentation from
7     the bankruptcy, from the arbitration award
8     and from the bankruptcy.  Most of them
9     didn't get past the arbitration award.
10    But they didn't tell me that.  They just
11    said no.
12    Q.     When you retained BDO, what was
13    the time frame they were given to complete
14    the audit?
15    A.     Well, we wanted to issue the 990
16    on the 15th, when the second extension was
17    due.  That was part of it.  Plus, I
18    actually wanted to have the financials
19    done by then as well.
20         They said they would do their
21    best to be as fast as they could.
22    Initially they didn't actually give us
23    when they would be finished, but the field
24    work was supposed to be in April, and by
25    May 15th they had done the 990 even though

1          H. Fuchs
2     we weren't quite -- we didn't quite have
3     the correct restricted/unrestricted
4     numbers yet because we were still
5     completing the review for the FY '15 that
6     they wanted.
7          So, that was part of the reason
8     it was taking so long is because they
9     wanted to make sure they could -- they
10    could confirm the opening balance for FY
11    '16 restricted numbers by what KPMG had
12    left for the FY '15.  And they weren't
13    satisfied with what KPMG had sent them,
14    so...
15    Q.     So is the Form 909 now complete?
16    A.     Well, the Form 990, we filed it,
17    but we did say that it may be amended
18    based on the audited financials.
19    Q.     Tell us again the issues that
20    BDO has raised in connection with the
21    audit.
22    A.     The major -- well, there were
23    two issues they raised aside from all of
24    the management comments and footnotes
25    and -- what do you call those?  Financial

1          H. Fuchs
2     information you put in the front of the
3     report, which wasn't finished.  They had
4     questioned the opening balance for FY '16
5     of the restricted funds that were
6     remaining because they weren't comfortable
7     with the KPMG number.
8     Q.     Did they tell you why they
9     weren't comfortable with it?
10    A.     My understanding from the senior
11    auditor was that they had reviewed some
12    work papers that KPMG had given them and
13    they weren't happy.  They weren't
14    satisfied.  So, they wanted to further
15    test that.
16    Q.     Any other issues that they took
17    issue?
18         MS. FUCHS:  Oh, the other point
19    was, we had booked in-kind
20    contributions for the surgical
21    partners, and the contribution they
22    made to us based on the surgeries that
23    they performed, and they did not agree
24    with our -- our philosophy, so to
25    speak.

H. Fuchs

1       H. Fuchs
2    Q.  And has that issue been
3  resolved?
4    A.  That has just been resolved.
5  They agree with us now.  And so based on
6  their last review, they made some updates
7  to the numbers I had given them because
8  the numbers I had given them were as of
9  the time they finished the fieldwork.  So,
10  they wanted more up-to-date numbers, so
11  there are some additional in-kind
12  contributions they have accepted, which I
13  am just going to confirm that tomorrow
14  with our program associate.
15      And then on the restricted
16  numbers, based on the review that we
17  performed with CLM, we have come up with
18  an additional amount of restricted
19  contributions based on the philosophy and
20  procedures we used for FY '16 that BDO
21  agreed with.
22      So, I have updated those
23  numbers, and the person who is responsible
24  was on vacation last week.  So she is just
25  back today and I am supposed to go over

H. Fuchs

1       H. Fuchs
2  this with her tomorrow just to get that
3  out of the way.
4      Then there is just a few little
5  tweaks in the notes, the management notes,
6  and hopefully...
7    Q.  Did BDO raise any issues about
8  the allocation of legal fees?
9    A.  No, they didn't.
10    Q.  How does WonderWork invest funds
11  that it hasn't spent?
12    A.  Well, currently all of our funds
13  are in a money market, based on the
14  bankruptcy.
15    Q.  Prior to that, prior to the
16  bankruptcy.
17    A.  We kept it in a Vanguard Index
18  Fund, Total Stock Index Fund that was
19  recommended by Ken French.
20    Q.  Were there ever any other
21  investments other than that Total Stock
22  Fund?
23    A.  The only other investments we
24  had was when people donated stock to us
25  for their donations, and before it could

H. Fuchs

1       H. Fuchs
2  be converted to cash for -- to be moved to
3  the Total Stock, it was in the small stock
4  accounts.
5    Q.  Were there other procedure
6  issues that KPMG raised -- sorry.  That
7  BDO raised in connection with their audit?
8    A.  Other than?
9    Q.  You mentioned the in-kind issue?
10    A.  Right.
11    Q.  You mentioned the unrestricted
12  issue.  And I asked you about --
13    A.  Expenses.
14    Q.  -- legal fees.
15    A.  Okay.
16    Q.  For example, your policies with
17  respect to reimbursements?
18    A.  Their issue was on the
19  authorization of expense reimbursements,
20  since I was authorizing most of them, and
21  I had authorized Brian's expenses.  We
22  then sent all of the expenses to the board
23  to authorize.  And they were happy -- they
24  are okay with that now.  And all my
25  expenses, instead of me authorizing my own

H. Fuchs

1       H. Fuchs
2  expense reimbursements, send them to
3  Brian, and he authorized them.
4    Q.  Do you recall the amount of the
5  legal fees that were put under program
6  expenses?
7    A.  For FY '16?  FY '15?
8    Q.  For any year?
9    A.  Well, I know FY '15 was a lot.
10  And I can tell you that based on the
11  audit.
12      So for FY '15, professional or
13  consulting...
14      Well, we have 562,000 here under
15  programs.  Not all of that was legal, but
16  I would say at least three to 400,000 were
17  legal.  I don't have the breakdown with
18  me.
19    Q.  Thank you.
20      Let's turn to restricted and
21  unrestricted funds.
22    A.  Okay.
23    Q.  Who is responsible for
24  classifying donations as restricted or
25  unrestricted?

H. Fuchs

1  
2    A.    For the financials, I am.
3    Q.    How do you go about doing that?
4    A.    When a donation comes in to one
5  of our causes, directly to one of our
6  causes -- Burn Rescue, First Step,
7  20/20/20 -- it's automatically restricted
8  to the cause.  So that takes care of that.
9         When a donation comes in to
10 WonderWork, it's reviewed -- do you want
11 to know the now or the before we changed
12 this little procedure?
13    Q.    Let's go back to the beginning.
14    A.    Okay.
15    Q.    Starting at the beginning with
16 WonderWork.
17    A.    So before we even had the
18 causes, we -- at WonderWork, we did not
19 have d/b/a's, we just had WonderWork.  But
20 I did have -- I did have general ledger
21 accounts for Burn Rescue, First Step,
22 hydrocephalus and -- well, hole in the
23 heart and water on the brain.
24         When our initial mailings went
25 out, our WonderWork mailings went out, it

H. Fuchs

1  
2  was for the four causes.  And if someone
3  made a donation to WonderWork, however
4  they said on the donation that it was for
5  clubfoot, burns or the heart and the water
6  on the brain, I would then book it to the
7  appropriate general ledger account.
8         When we decided to expand on the
9  direct mail and --
10    Q.    And when was that?
11    A.    Probably in around 2012, going
12 forward.  We decided to set up these doing
13 business as so that people could see the
14 cause as itself as opposed to in this
15 informational -- with the other pieces.
16         So, we set up -- well, backing
17 up, we weren't getting much for hole in
18 the heart and water on the brain.  So
19 rather than keeping sending information
20 out to those, we let those kind of fall
21 through the cracks and set up the --
22    MR. LILIEN:  When you say
23  sending information out, what are you
24  referring to?
25    MS. FUCHS:  The direct mail.

H. Fuchs

1  
2  The direct mail pieces for donations
3  and other informational pieces on
4  getting -- funding causes.
5         After that, we set up doing
6  business as accounts for First Step
7  and for Burn Rescue.  So this way
8  people could donate directly to what
9  they wanted to and write the name of
10 the cause on the check and it would go
11 directly to that particular bank
12 account as opposed to the WonderWork
13 bank account.
14    Q.    Did WonderWork file any assumed
15 name certificates with any government?
16    A.    We just -- we set up this with
17 the bank.  We didn't set up a separate
18 charity for them.  So we just set up
19 separate bank accounts with HSBC.
20    MR. LILIEN:  But did you
21  alert -- did you file any paperwork
22  with any government authority
23  establishing the d/b/a's or seeking
24  approval of the d/b/a's?
25    MS. FUCHS:  Our lawyers did

H. Fuchs

1  
2  that.  Greg Lam -- Kravitz --
3  Copilevitz & Canter, who had set up
4  WonderWork originally as a 501(c)(3),
5  so they set up the d/b/a's with the
6  appropriate legal classifications.
7  Yes.  We have the paperwork.  That was
8  what we gave the bank to set up the
9  bank accounts.
10    Q.    So continue.
11    A.    So once we did that, we were
12 able to raise money and it would go
13 directly to the restricted account and we
14 didn't have to segregate anything.
15 However, when money came in to WonderWork,
16 it normally came in unrestricted, or
17 sometimes it would say -- it would say on
18 the check, "I want this money to go to
19 blindness surgeries," or if it came in
20 specifically to a cause, then it would go
21 into the WonderWork bank account, but it
22 would be restricted on the general ledger
23 to the cause.
24    MR. BERKIN:  The restricted
25  account you are referring to, is that

1        H. Fuchs
2  on the income statement or the balance
3  sheet?
4     MS. FUCHS: It is on the income
5  statement. Well, the balance sheet
6  has the bank accounts, the restricted
7  bank accounts. But if it came to
8  WonderWork, the balance sheet is in
9  the WonderWork account. But it went
10  to the general ledger income account
11  for the cause.
12     MR. LILIEN: When you say money
13  is restricted to a cause, could you
14  explain what that means?
15     A. I call them causes, but it is
16  what we do. The programmatic -- the
17  programs that we run for clubfoot and for
18  burns and for blindness now, the money
19  would be restricted to go to that
20  particular cause.
21     MR. LILIEN: To put it
22  differently, how would WonderWork
23  determine what uses within that cause
24  the money could be spent towards?
25     MS. FUCHS: Well, primarily

1        H. Fuchs
2  within the causes are surgical uses,
3  so that was where the restricted money
4  went to, grants for the surgeries.
5  Occasionally there were quality
6  reviews that were done in the
7  hospitals, or we purchased equipment
8  for some of the OR's or -- what do you
9  call them?
10     MR. LILIEN: How frequently did
11  that occur, that WonderWork purchased
12  equipment?
13     MS. FUCHS: Not frequently.
14  Once in a while. I don't know exactly
15  which grants went for the purchase of
16  equipment, but it was for probably eye
17  surgeries. Some kind of -- can't
18  remember the name of it.
19     Q. I have seen something to
20  indicate that at one point a microscope
21  was purchased for a hospital.
22     A. Yes.
23     Q. Other than that, are you aware
24  of any?
25     A. There was a few others, but I

1        H. Fuchs
2  can't recall exactly what they were.
3     I think there was something for
4  children's blood pressure. Pulse
5  oximeters. ████? That was I think
6  monitoring children after surgery who tend
7  to need to be watched more closely than
8  adults.
9     MR. LILIEN: If not you, who
10  would have that information?
11     MS. FUCHS: The program group.
12  They have all that.
13     Q. Continuing on with the story?
14     A. So if -- when we first -- well,
15  doing direct mail, the caging company,
16  DMP, would get the majority of the mail
17  pieces to -- they would go to the post
18  office box and collect them in Hagerstown,
19  Maryland. And it would be sorted by
20  cause. For the most part, WonderWork --
21  when we were soliciting for WonderWork
22  money or for WonderWork donations, that
23  normally came to the headquarters. So,
24  the caging company would then open the
25  mail, deposit the checks in the

1        H. Fuchs
2  appropriate bank cut.
3     It was set up so that they had
4  access through HSBC's secure check reading
5  machinery to deposit the checks into each
6  of the accounts. So, if they were doing a
7  batch of Burn Rescue, they would deposit
8  in the Burn Rescue account. Then the
9  actual direct mail receipt piece that came
10  in with the direct mail would go to their
11  input people. They would input people and
12  they would key it in, which would then go
13  directly to the database that we had in
14  place at the time.
15     The donation process, after
16  they -- after they would deposit the
17  donations, DMP would prepare a daily cash
18  deposit log, which they would then PDF to
19  WonderWork with the information of the
20  daily bank deposits, so I would know how
21  much money went into each of the d/b/a's
22  and I would be able to restrict that
23  amount on the general ledger.
24     When the bank statements would
25  come, I'd be able to reconcile the totals

```
1              H. Fuchs
2   from the daily deposit logs to the bank
3   statements.  If the donor wanted to use a
4   credit card, they would put in their
5   credit card number on reply device, and we
6   had separate PayPal accounts for each of
7   the d/b/a's.  So, they would -- DMP would
8   be able to key in the credit card
9   information, and that too would be put on
10  this deposit log and sent daily.
11             The WonderWork donations,
12  similarly, they would come to the office.
13  Instead of being deposited through DMP, we
14  would go to the bank and deposit them and
15  make a copy of the check, a copy of the
16  deposit slip that the market people would
17  keep.
18             I would put the information into
19  the WonderWork bank account with the name
20  of the donor as opposed to just a log
21  number, because we had that detail
22  information.  And then the marketing
23  people would upload that information to
24  the database and they would keep the
25  backup of a copy of the check and copy of
```

```
1              H. Fuchs
2   the deposit ticket.
3              If the WonderWork check had a
4   specific piece of information on it that
5   says "I want this for blindness" or "I
6   want this for burns," then rather than
7   putting it in my general ledger WonderWork
8   account, I'd put it in any general ledger
9   cause account, 20/20/20 or Burn Rescue or
10  First Step.
11             And that's how it was done.
12   Q.    Initially?
13   A.    Yes.  And it is still done --
14  well, until FY '17, it's been done like
15  that.  In FY '17, there is too many
16  donations coming in to headquarters, so we
17  decided to batch them and send the
18  WonderWork donations to DMP also so they
19  could put them in the bank and put them in
20  the database.
21   Q.    And who -- do you recall exactly
22  when you started sending those down to
23  DMP?
24   A.    When I decided to go part time.
25  July 2016.
```

```
1              H. Fuchs
2   Q.    At that point, who would decide
3   whether a WonderWork check should be
4   restricted or unrestricted?
5   A.    Well, DMP would send us the
6   backup for all the donations that we sent
7   them, and if there was a letter or copy of
8   a check, they would send that to us as
9   well.  So we would see that and be able to
10  restrict it if we could or not.
11             MR. LILIEN:  If there was no
12  letter?
13             MS. FUCHS:  Until recently it
14  was just going to WonderWork, the
15  unrestricted account, until we did
16  this massive review.
17   Q.    Could you just refresh my
18  recollection about the timing on this
19  review?
20   A.    Well, we started around January,
21  the FY '16 donations, based on the
22  matching of the actual direct mail piece
23  that the person was responding to.
24             MR. LILIEN:  It started when?
25             MS. FUCHS:  Around January.
```

```
1              H. Fuchs
2             MR. LILIEN:  Of this year?
3             MS. FUCHS:  Of 2017.
4             MR. LILIEN:  Talking about 2017?
5             MS. FUCHS:  Around there.
6   Q.    Who made the decision to --
7   A.    Well, BDO was wanting to confirm
8   all the WonderWork donations to see if
9   they were restricted or unrestricted.  And
10  based on the sample that they did and the
11  work that we were doing, we had -- well,
12  actually, no.
13             Backing up, BDO, that was
14  afterwards.
15             Based on the legal review of the
16  unrestricted donations, it was felt that
17  many of them should have been restricted.
18   Q.    When you say "based on the legal
19  review" --
20   A.    Well, the legal review of what
21  is considered a restricted donation.
22   Q.    And who made that review?
23   A.    Our legal team had been looking
24  at the donations for the bankruptcy.  They
25  were reviewing the backup of the donation.
```

1        H. Fuchs
2 They wanted to see the checks and they
3 wanted to see any letters that were sent.
4 But then they also wanted to see the
5 direct mail piece that the donor was
6 responding to.
7     Q.  Why couldn't they just rely on
8 your books and records?
9     A.  Because I wasn't using the
10 direct mail piece.  And a lot of times the
11 direct mail piece was "Can you contribute
12 money for surgeries," which would have
13 been restricted to surgeries, and I didn't
14 do that.
15     A lot of our direct mail pieces
16 evolved to "make a donation for surgeries"
17 as opposed to just "make a donation."
18    Q.  If somebody sent in a check to
19 WonderWork applied for surgeries, would
20 that be deemed restricted?
21    A.  It should have been but it
22 wasn't.
23    MR. TRIVIGNO:  Hold on.  On the
24  check, you are saying?
25    Q.  Assuming either the check or

1        H. Fuchs
2 even if there was something in the mailing
3 that says, "I want my gift restricted to
4 surgeries."
5    A.  If it said surgeries on the
6 check, yes, I would restrict it.  But if
7 it didn't --
8    MR. LILIEN:  Hold on.  You would
9  restrict it to what?
10    MS. FUCHS:  To surgeries, and
11  I'd split it up into the three
12  classifications of surgeries.
13    Q.  And how would you do that?
14    A.  Well, I would say 33, 33, 33.
15 Or it depends -- sometimes they would say
16 "I want this amount to go to blindness."
17    MR. LILIEN:  But if it did not
18  say the amount they wanted to go to
19  blindness --
20    MS. FUCHS:  If it just said
21  "surgeries"?
22    MR. LILIEN:  Yes.
23    MS. FUCHS:  I would just make a
24  note in the GL in my description, I
25  would say "restricted to surgeries."

1        H. Fuchs
2    MR. LILIEN:  What happened after
3  you put the note?  What was the effect
4  of you putting that note in the
5  ledger?
6    MS. FUCHS:  For FY '15, it
7  didn't, which was the problem.  In FY
8  '16, it became restricted to a
9  WonderWork surgery account.
10    MR. LILIEN:  Once the review
11  commenced in January 2017 to look back
12  at the restricted determinations?
13    MS. FUCHS:  That's correct.
14    Q.  Did KPMG ever raise questions
15 about the practice of sort of
16 retroactively allocating or retroactively
17 characterizing WonderWork checks as
18 restricted or unrestricted?
19    A.  That never came up, the
20 WonderWork checks.
21    MR. LILIEN:  Walter, I may be
22  getting ahead of you, but I will just
23  ask the questions as they are
24  relevant.
25    MR. CURCHACK:  Please.

1        H. Fuchs
2    MR. LILIEN:  As I understand the
3  process, the determination or final
4  determination as to whether a gift is
5  restricted or unrestricted happened in
6  connection with the audit post-closing
7  of the fiscal year.  You sit down with
8  the auditors --
9    MS. FUCHS:  Right.  That's
10  correct.
11    MR. LILIEN:  In the past,
12  pre-BDO.
13    MS. FUCHS:  That's correct.
14    MR. LILIEN:  So just a practical
15  question:  How would restricted
16  donations be tracked during the year?
17    MS. FUCHS:  Well, I don't
18  actually track them during the year
19  except for what is included in the
20  cause accounts that I know
21  specifically are restricted because I
22  have that number.  But the
23  WonderWork --
24    MR. LILIEN:  Were not
25  restricted?

H. Fuchs

1
2     MS. FUCHS:  Yes.
3        (So marked for identification as
4     Fuchs Exhibit 12.)
5     Q.   I have asked the reporter to
6  mark as the next exhibit, Exhibit 12,
7  three spreadsheets.  It appears to be --
8  let me identify them by what they say.
9  The first says, "Temporarily Restricted
10  Net Assets" at the top, and it says "Roll
11  Forward Schedule" at the bottom.
12        The second one says,
13  "Temporarily Restricted Net assets" but
14  refers to "Net Assets Released from
15  Restrictions on June 30, 2014."
16        The last one says "Temporarily
17  Restricted Net Assets FY '15" at the top.
18        Do you recognize these?
19  A.   Yes, I do.
20  Q.   Can you tell us what they are?
21  A.   So these were the calculations
22  that were done in conjunction with KPMG to
23  restrict -- well, to calculate what was
24  restricted and what could be removed from
25  restriction in FY '13, '14 and '15.

H. Fuchs

1
2     Q.   Let's go to fiscal year 2013.
3     A.   Okay.
4     Q.   Is that in fact what this is,
5  because it doesn't have a date on it?
6     A.   This was the first one that was
7  prepared, yes.  This was the first one
8  that was prepared.
9     Q.   What does "temporarily
10  restricted net assets" mean to you?
11     A.   These are the donations that
12  were received that need to be spent on our
13  causes, so you restrict them until you
14  spend them in how the donor wanted them
15  spent.
16     Q.   And then there is -- so that is
17  the revenue?  That is what came in to the
18  specific causes?
19     A.   That's correct.
20     Q.   At the time this chart was
21  prepared, this -- would this include any
22  money that came into WonderWork?
23     A.   This does not include any
24  WonderWork money.
25     Q.   Okay.

H. Fuchs

1
2     A.   Unless the WonderWork money was
3  booked to one of the accounts.  So if a
4  WonderWork check came in and the check
5  said "I want this for burns" then it's in
6  here.
7     Q.   And you are the one who would
8  have made that notation --
9     A.   Correct.  Yes, that's correct.
10     Q.   The second column after donation
11  says "Program Expenses."  What is included
12  in that?
13     A.   The program expenses are the
14  monies that were given in grants to our
15  partner hospitals to perform medical
16  services on the blindness, burns,
17  clubfoot, hole in the heart and
18  hydrocephalus.  We have cleft lip on the
19  top, but that wasn't used for this
20  exercise.
21     Q.   What was the cleft lip used for?
22     A.   Well, the cleft lip was a
23  program expense.  However, we did not get
24  any donations for that particular program
25  so it wasn't used in the calculation to

H. Fuchs

1
2  release restricted funds.
3     Q.   What was the source -- where did
4  the $450,000 go?
5     A.   It went to Smile Train.
6     Q.   And why did it go to Smile
7  Train?
8     A.   It was an agreement reached with
9  Smile Train on -- a legal agreement back
10  in FY '13.
11     Q.   Where did that $450,000 come
12  from?
13     A.   That came from the WonderWork
14  unrestricted funds.
15     Q.   Now the next column says,
16  "Remaining Restricted Funds Before
17  Allocation" which is just column 1, minus
18  column 2.  Correct?
19     A.   Yes, that's correct.
20     Q.   Then there are some percentages.
21  Are those -- what do those percentages
22  represent?
23     A.   So at the time we did this
24  allocation, we weren't -- we weren't as
25  detailed as we were in the past, but if

1       H. Fuchs
2   you look on the bottom where it says,
3   "Allocation to Split Among Programs" it
4   says 1506807.
5       At the time of the audit, the
6   manager had explained to me that I am
7   allowed to use this amount of money in the
8   calculation to release some restricted
9   funds.
10      MR. LILIEN:  What does that
11  mean, "release some restricted funds"?
12      MS. FUCHS:  Well, when the funds
13  are restricted, you need to remove the
14  restriction by spending the money on
15  the programs that the funds relate to.
16      MR. LILIEN:  So what were the
17  funds spent on?
18      MS. FUCHS:  Well.  Program
19  services allocation is the piece of
20  our direct mail that we are allowed to
21  allocate to programs.  This
22  1.5 million.
23      MR. LILIEN:  What do you mean
24  you are "allowed to allocate to
25  programs"?

1       H. Fuchs
2       MS. FUCHS:  Based on accounting
3   procedures, there are a certain amount
4   of direct mail that if it falls into
5   certain criteria, you can use the
6   expense for programs.
7       So the way this was done was
8   KPMG explained to me I could use $1
9   and a half million in our direct mail
10  expense that can release some of this
11  program expense for the year, fiscal
12  year.
13      MR. LILIEN:  Does that mean --
14  well, let me rephrase that.
15      Does the release of a program --
16  I will put it differently.
17      When money, funds are allowed to
18  be allocated to program when direct
19  mail expenses are allowed to be
20  allocated to program.
21      MS. FUCHS:  Yes.
22      MR. LILIEN:  What impact does
23  that have on your restricted gifts?
24      MS. FUCHS:  That removes that
25  amount from the restricted monies, so

1       H. Fuchs
2   it deducts that amount from what is
3   remaining restricted.
4       MR. LILIEN:  To be clear,
5   restricted funds that were treated as
6   restricted for WonderWork and the
7   d/b/a's, funds that were treated as
8   restricted became unrestricted as a
9   result of their allocation of those
10  funds to program?
11      MS. FUCHS:  That's correct.  So
12  you have -- you have the actual
13  program expense and you have the
14  allocation of the program services.
15  That's correct.
16      And then you have what is
17  remaining after you release the funds.
18  So, of the example 300 -- I can't see.
19  Q.  I think it is 636.
20      MS. FUCHS:  Yes.  636,000?
21  Well, we were able to release 505,000,
22  ,and so we had 130,000 remaining that
23  gets carried over to the next year
24  until you can spend that as well on
25  the program.

1       H. Fuchs
2       MR. LILIEN:  At any time when
3   you were releasing the restriction,
4   using restricted funds -- treating
5   restricted funds as though they were
6   used for mailing expenses --
7       MS. FUCHS:  Yeah, the public
8   information.
9       MR. LILIEN:  Right.  Did you or
10  anyone on your staff look at the
11  underlying solicitation materials that
12  accompanied those?
13      MS. FUCHS:  Well, we had our
14  marketing company do that as well as
15  the consultant that we hired to do
16  that.  I mean, there are certain rules
17  that they follow as to how you can
18  treat your direct mail pieces.
19      MR. LILIEN:  For clarity, I am
20  not referring to the fund allocation.
21  I am referring to restricted assets.
22      MS. FUCHS:  Okay.  Can you
23  repeat the question, then?
24      MR. LILIEN:  Sure.  When you
25  were determining whether a restricted

H. Fuchs

asset can be used for mailings or the
restricted nature of the asset can be
released for reporting purposes, did
you look at the underlying
solicitation materials?
    MS. FUCHS: That's exactly what
you look at, to see what they are
comprised of.
    MR. LILIEN: And when you looked
at those materials -- now, this is a
function that you did?
    MS. FUCHS: No. This is what
the marketing company did and our
consultant did. I mean, I looked at
it also obviously, but they were the
ones to come up with how to remove the
restriction, how the allocation works.
    MR. LILIEN: When they would
look at it, what is your understanding
of what they were looking for in order
to determine whether a restricted fund
can be released?
    MS. FUCHS: Yes. We looked at
it also, because you spend a lot of

H. Fuchs

money on direct mail and you want to
put in there certain pieces of
information to alert the donor of
the -- what the mission of the charity
is and how it can be things that are
helpful to them.
    MR. CURCHACK: To them, meaning
whom?
    MS. FUCHS: The donor, so that
you can actually use that piece of
material to split it up amongst the
allocations.
    MR. LILIEN: I appreciate that
you may have gone through the exercise
to treat what would otherwise be fund
raising expenses as program. I am
focusing just for the moment on the
restricted gifts.
    Before, you mentioned that your
understanding of restricted purpose
meant restricted for surgical
procedures and there may have been
some equipment. When you went through
the exercise of releasing restrictions

H. Fuchs

on funds, in other words, spending
restricted funds on purposes, did you
consider whether spending restricted
funds on mailings would be consistent
with the restricted purposes for which
the funds were raised?
    MS. FUCHS: Well, we considered
that in association with the
accounting policies on how you are
allowed to allocate your funds. So, I
guess -- I don't know if that is a yes
or no. But according to the
accounting policies, you can -- it is
understandable to be able to do this
kind of --
BY MR. CURCHACK:
    Q. Which accounting policies are
you talking about?
    A. The one that -- I can't remember
offhand, but I think it is 98 or
something, the accounting consultant uses
to determine what he can -- what he can
allocate to the program information.
    Q. Did you ever read that?

H. Fuchs

    A. I know there are certain pieces
that you need to include in your
materials. Call to action, things like
that. But I didn't read the whole...
    Q. So why would you have put a call
to action into one of the direct mail
pieces?
    A. We have a brochure in our direct
mail, a little brochure in our direct mail
pieces that explain a lot about the
problem with, for example, clubfoot and
how it can be treated and what needs to be
done, as opposed to just saying, "Give us
money."
    So, there are pieces in our
direct mail piece that explain that.
    Q. We'll look at some of those in a
little while.
    Going back to the schedule,
referring to the blindness line again?
    A. Yes.
    Q. If you go to the second page, I
see the $130,000 that you talked about
from the first page in column A?

1           H. Fuchs
2      A.   I see, yes.
3      Q.   So that is the --
4      A.   The rollover, carry forward.
5      Q.   Going across that line, we
6  talked about what these other columns are.
7  Column E says, "Direct Mail Allocation Per
8  KPMGRX."  What does that mean?
9      A.   Well, after the first year,
10  because we were doing so much more direct
11  mail, KPMG manager actually did the
12  allocation from the information that I
13  gave him on the cost of all our direct
14  mail pieces and how much in each direct
15  mail piece was attributable to programs.
16         So, he did a spreadsheet, this
17  RX title.
18      Q.   Do you know what is included in
19  the "Program Expenses" column on this
20  chart?  2.634?
21      A.   That would be -- that would be
22  the cost of the mail pieces used for
23  blindness that were attributable -- I'm
24  sorry.
25         The program expense side?

1           H. Fuchs
2      Q.   Yes, the program expenses.
3      A.   Oh, program expense was here.
4  If you look on the left column, program
5  expenses, 5000 program, 5100 blindness.
6  That's the general account of how much
7  funds were given for the grants and things
8  that were given for those programs.
9      Q.   So were $2.634 million given in
10  grants related to blindness in fiscal
11  2014?
12      A.   Yes.
13         40,000.  Right after that is
14  2.6 million.
15      Q.   A couple columns over to the
16  right it says, "Net Assets Released Per
17  Limit."  What does "per limit" mean?
18      A.   So the total expenses that we
19  had, if you look at the column with the
20  line 5.7 million, the net asset release
21  per limit, we could only release -- well,
22  we could actually release all of it, all
23  of the 3.1 million because we spent --
24  excuse me.
25         We could release...

1           H. Fuchs
2      Total expense, 5.7.
3         We spent -- well, we had
4  4.2 million in total that was restricted
5  from FY '13 and FY '14 total.  Our program
6  expenses were 2.6 million.  Our direct
7  mail allocation, 3.1 million.  So, the
8  total we could release based on that was
9  5.7.
10         However, our expenses were only
11  4.2.  So, we could release the entire 4.2.
12         MR. LILIEN:  When you say
13      "release," again, this is important
14      for us.  When you say release, you are
15      referring to restricted funds being
16      used, spent?
17         MS. FUCHS:  Spent.  That's
18      correct.  So we could -- we could say
19      that we have spent everything that we
20      have gotten in donations for -- which
21      included the '13 as well -- for
22      blindness.
23         So if you look at the last
24      column, there is zero left for
25      blindness.

1           H. Fuchs
2         MR. LILIEN:  And what are you
3      spending it on?
4         MS. FUCHS:  We are spending it
5      on the programs, which is the C
6      column, as well as the direct mail
7      allocation, which is the E column,
8      which total to the 5.7 million.
9         And since we only had
10      4.2 million, the whole thing was
11      released.
12         MR. LILIEN:  Off the record for
13      two minutes.
14         (Recess.)
15  BY MR. CURCHACK:
16      Q.   Other than providing this
17  allocation for purposes of your financial
18  statements, were there any other factors
19  considered in determining what was
20  restricted or unrestricted funds for
21  purposes of netting out or to come to net
22  assets at the end of the year?
23      A.   The only other one was the time
24  restriction.
25      Q.   But --

1        H. Fuchs
2    A.   Other than that?
3    Q.   Other than accounting
4  principles, was anything else considered?
5    A.   No.
6    Q.   Is there anything in the DMI
7  system that relates to the tracked
8  restricted net asset balances?
9    A.   Not that I know of.
10    Q.   When a donation is reclassified
11  between the fund codes and DMI, like when
12  you take a WonderWork check and put it
13  over to 20/20/20, because someone wrote
14  "blindness" on the check, is that then
15  reclassified in the general ledger as
16  well?
17    A.   Well, I would classify it in the
18  general ledger first.  So it would be --
19  it would be on the check when I gave it to
20  the marketing group to input.
21    Q.   Other than direct mail
22  expenses -- by that I mean printing and
23  postage -- are there any other expenses
24  charged against the restricted net asset
25  balances?

1        H. Fuchs
2    A.   It would just be the direct mail
3  expense, which would include the DMI and
4  the DMP in the total of all the expenses.
5    Q.   Prior to the middle --
6    A.   Excuse me.  That would be
7  included in the functional breakdown but
8  not in this calculation.  This calculation
9  is just the direct mail expense for the
10  printing and the paper and the postage.
11    Q.   What do you mean by the
12  functional allocation?
13    A.   That is on the audited financial
14  statements, where it breaks down the
15  expense by the different groups.  Program,
16  fund raising and management and general.
17        This, though, is just the actual
18  direct mail expense.  That includes, on
19  the functional expenses in the audited
20  financials, includes a few other expenses.
21    Q.   To be sure I understand what you
22  are saying, there are --
23    A.   Some stragglers.
24    Q.   There are deductions made from
25  the restricted funds to pay a portion of

1        H. Fuchs
2  salaries and office expenses?
3    A.   These -- no.  These restricted
4  funds, these are what would be remaining
5  in the restricted funds, which -- I am
6  just trying to think of what you are...
7        In the financials, we can
8  allocate -- we allocate funds to the
9  categories.  However, I do not use these
10  restricted funds to pay for that.
11        MR. LILIEN:  Why?
12        MS. FUCHS:  Well, these
13  restricted funds are restricted for
14  the program.  I don't calculate
15  anything on the financial statements
16  to release the funds.  I think at the
17  end of the financial statement there
18  is a calculation done to tell you --
19  no, it is not.  I am sorry.
20        No, I don't use --
21        MR. LILIEN:  What you are saying
22  is restricted funds are not used to
23  pay for compensation, for example?
24        MS. FUCHS:  The restricted
25  funds -- remaining restricted funds

1        H. Fuchs
2  ends up by itself.  I don't know.  I
3  don't think it's used on that expense.
4        MR. LILIEN:  Are restricted
5  funds used for any sort of overhead or
6  administration?
7        MS. FUCHS:  No.  No.  The
8  restricted funds stay restricted
9  separately.
10        MR. LILIEN:  A question for you:
11  Do you think it is inappropriate to
12  use restricted funds for compensation?
13        MS. FUCHS:  Good question.  Is
14  it inappropriate?  If someone is
15  restricting their money for a specific
16  program, then it would be
17  inappropriate.  If they are
18  restricting their funds to --
19  sometimes they have it more general.
20  "I want to restrict it to --" you
21  know, if they want to restrict it to
22  something other than surgical
23  programs, then fine.  For the most
24  part, it is probably not appropriate.
25        MR. LILIEN:  I think this is a

1         H. Fuchs
2 foundational question. How do you
3 define "surgical programs"?
4     MS. FUCHS: The surgical
5   programs are what we fund the
6   hospitals and/or medical teams that
7   are in the hospitals to do their work.
8   So we have a group -- we have a doctor
9   that I will do quality assurance reviews
10   in the hospital. So that is
11   programmatic.
12      We have the medical records
13   database, which is programmatic. But
14   we have that is restricted funds.
15      We have...
16     MR. LILIEN: Okay.
17     (So marked for identification as
18   Fuchs Exhibit 13.)
19 BY MR. CURCHACK:
20   Q. I have had the reporter mark as
21 Exhibit 13 an email thread identified by
22 email number 023602, and the most recent
23 email is from Hana Fuchs to Ryan Leggett
24 dated April 16, 2015.
25     Can you tell us who Ryan Leggett

1         H. Fuchs
2 is?
3   A. Ryan was the manager on the KPMG
4 account.
5   Q. If you go down to the bottom of
6 the first page, the last paragraph says,
7 "One other item though. I was able to
8 look into what was driving the reduction
9 in M&G expense and M&G salary expense. It
10 appears that Brian's allocation of salary
11 changed from 40 percent program in 2013 to
12 80 percent program in 2014."
13     Do you recall knowing that?
14   A. I must have known it. It's
15 here.
16   Q. Well --
17   A. Yes.
18   Q. What does it mean to say that
19 Brian's salary allocations changed from
20 40 percent program to 80 percent program?
21   A. At the end of the year when I
22 review the staff salaries and benefits for
23 the allocation of those expenses on the
24 functional expense allocation, we
25 determine how much time they have spent

1         H. Fuchs
2 either on programs, on management in
3 general and on fund raising. And based
4 on -- it appears, based on the analysis
5 that I did that year, Brian had spent way
6 more time on programmatic ventures than on
7 management in general and fund raising
8 from what this sounds like.
9     I don't have the numbers at the
10 moment but...
11   Q. So does that mean that his
12 salary would be included in the program
13 expenses, or that 80 percent of his salary
14 would be included in the "Program
15 Expenses" column?
16     MR. TRIVIGNO: When you say
17   "Program Expenses" column --
18     MS. FUCHS: Not on the
19   allocation, no. On the functional
20   expenses in the audited financials.
21   This is purely restricted monies from
22   donors.
23   Q. But would restricted monies go
24 to pay the portion of expenses
25 attributable to his time attributable to

1         H. Fuchs
2 program?
3   A. Well, the way the restricted
4 money is rolled over and remains
5 restricted does not include that.
6     MR. LILIEN: Can you maybe
7   answer Walter's question?
8     MS. FUCHS: Sorry.
9     MR. CURCHACK: Can you read the
10   question, please?
11     (Record read.)
12   A. It doesn't.
13   Q. It doesn't?
14   A. No, it doesn't.
15   Q. So restricted funds are not used
16 to pay those expenses?
17   A. Correct.
18     MR. LILIEN: What does, in this
19   context, when you say Brian worked
20   80 percent program, can you just
21   explain to me what he did, what
22   program activities he spent 80 percent
23   of his time on?
24     MS. FUCHS: His usual travelling
25   to the partner hospitals and reviewing

1          H. Fuchs
2    the type of work that they do.  And he
3    does that with DeLois a lot.  Would be
4    considered programmatic.  How he
5    reviews the grant application -- he
6    does some grant review and he writes a
7    lot of the direct mail pieces, which
8    would include the public information
9    piece.
10        So when I look at the time
11   allocation for all the staff, I look
12   at what they have been doing.
13        MR. LILIEN:  Just in terms of
14   the public information pieces, does
15   Brian write the public information
16   pieces?
17        MS. FUCHS:  He writes some of
18   them.  Some of them we glean from
19   other pieces of material.  But in some
20   of the pieces that are written, it is
21   Brian's language.  I don't know
22   exactly at the moment, but looking
23   through the pieces, when our
24   consultant reviews it, he outlines
25   which is programmatic.  It is usually

1          H. Fuchs
2    written by Brian.
3    BY MR. CURCHACK:
4    Q.   Could you tell us again what the
5    purpose of including that information is?
6    A.   The purpose of including program
7    information in a direct mail piece?
8    Q.   Yes.
9    A.   It's information to the public
10   as to many things.  One is, if it is on
11   blindness, how you can prevent blindness,
12   how you can detect certain issues, how --
13   what our mission is in this -- you know,
14   in our charity.
15   Q.   Is part of the mission of
16   WonderWork to prevent blindness?
17   A.   It's to make the public aware of
18   issues that may cause blindness in the
19   Third World countries, not -- we can't
20   prevent it, no.
21   Q.   But it is directed -- it is
22   intended to relate to programs providing
23   or addressing needs in Third World
24   countries?
25   A.   That's correct.  Yes.

1          H. Fuchs
2         MR. CURCHACK:  I am going to now
3    ask the reporter to mark as Exhibit 14
4    an email from Vera Eastman to you
5    dated March 20, 2017, together with a
6    spreadsheet that has at the bottom
7    0019930.
8         (So marked for identification as
9    Fuchs Exhibit 14.)
10   Q.   Do you recognize this email?
11   A.   From Vera?  Yes.
12   Q.   Can you tell us what this
13   spreadsheet shows?
14   A.   This is from FY '17 in our
15   general ledger.  I had given Vera a
16   download of what I had booked from the
17   general ledger through December 29th and
18   what was in the accounts for WonderWork
19   Burn Rescue, First Step and 20/20/20.
20        They went through the database
21   to show me -- well, to explain to me which
22   donations needed to be classified in
23   different accounts that I had.
24   Q.   Now, I understand from your
25   previous statements why a gift might be

1          H. Fuchs
2    moved into 20/20/20 from WonderWork, but
3    why would a gift be moved from 20/20/20
4    into WonderWork?
5    A.   The gifts -- it may have been
6    just deposited in the wrong bank account,
7    but I am not sure in particular.  I'd have
8    to look at each one.
9         Well, backing up a little, in FY
10   '17 we started having DMP deposit all of
11   the WonderWork donations.  And perhaps
12   they just made some mistakes because they
13   put them in the wrong bank account.  And
14   in doing so, it was booked to WonderWork
15   and it should have been booked to a cause.
16   Q.   But similarly, you are
17   suggesting that there could have been a
18   check deposited into the 20/20/20
19   account --
20   A.   Could have been.
21   Q.   -- that wasn't the result of a
22   20/20/20 solicitation?
23   A.   Possibly.  I actually made that
24   mistake once or twice when it was in the
25   bank.  And just in my haste to get things

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

1           H. Fuchs
2    deposited -- I use ATM machine to deposit
3    the checks and I hit the wrong account.
4       Q.   The salmon lines on the chart,
5    salmon-colored lines, all say "microscope
6    gift."  Are those donations to purchase
7    the microscope we were talking about
8    before?
9       A.   That's correct.  I think it --
10   no.  Well, if this is FY '17, I am not
11   sure.
12      Q.   Well, according to this chart,
13   those checks were deposited 12/28, 12/15
14   and 12/22 of 2016.
15      A.   I have to -- I am not sure about
16   this microscope, but there might have been
17   some fund raiser or something for
18   microscopes.  I honestly don't remember.
19      Q.   If someone gave money to
20   purchase a microscope, would that be
21   recorded as a donation in kind?
22      A.   No.  We would record that as a
23   restricted gift for a microscope for
24   whatever -- if it was blindness or if it
25   was just something else.  I have to go

1           H. Fuchs
2    back and double-check on this.  I am
3    sorry.
4           MR. LILIEN:  Len, if you can
5       help get information on this?  Was
6       this for multiple microscopes, one
7       microscope and where the donor is
8       giving the money with the intent of
9       purchasing a microscope?
10          MR. TRIVIGNO:  Sure.
11          MR. CURCHACK:  Can we please
12      mark the next exhibit, an email from
13      DeLois Greenwood to a number of
14      people, including you, dated March 27,
15      2017?  Attached to that is a very long
16      document called "Transaction Report"
17      that has production numbers emails
18      0019894 --
19          (Discussion held off the
20      record.)
21          MR. CURCHACK:  The attachment to
22      the email is labeled "WonderWork
23      Transaction Report,
24      July 2015-June 2016," a two-page
25      document.

1           H. Fuchs
2           (So marked for identification as
3       Fuchs Exhibit 15.)
4    BY MR. CURCHACK:
5       Q.   Do you recognize this
6    transaction report?
7       A.   This looks like it is part of a
8    download from the general ledger from my
9    donations.
10      Q.   What does the column labeled
11   "Split" mean?
12      A.   The column "Split"?  This column
13   is the bank account.  Or if there were a
14   journal entry, it would say "split"
15   because it wouldn't have the two accounts
16   for the journal entries.  So this just
17   right now has bank account.
18          MR. LILIEN:  Sorry.  What does
19      the word "split" mean in this context?
20          MS. FUCHS:  In the download of
21      the GL on QuickBooks, when it says
22      "split" in a line, there is usually
23      two lines, like a journal entry line
24      with the two accounts that it would
25      come from or go to.

1           H. Fuchs
2           But this just is the bank
3    account.  There is no split on there.
4    Just one account number.
5       Q.   What is the connection between
6    the amount and the balance columns?
7       A.   The balance is a running total
8    and it has no -- it has no relevance to
9    this information as it stands.  It would
10   be if you had the full printout, and it
11   would be at the end of the account number.
12   It would be running balance as it went
13   down the account.  So that doesn't have
14   any relevance on this page since it is
15   just the specific transactions that are
16   highlighted.
17      Q.   Thank you.
18          After the --
19          MR. LILIEN:  Let me just ask you
20      a question.  The line on the email
21      from DeLois to you and others says,
22      "Seems your reconciliation process has
23      some issues.  Need to work it out so
24      Hana and your numbers agree."
25          What is that a reference to?

43 (Pages 166 to 169)

1     H. Fuchs
2          MS. FUCHS:  Well, I am not sure
3     about this particular -- this
4     particular dump that DeLois sent out.
5     But in general, when we were trying to
6     come up with the restricted numbers
7     for the causes and for WonderWork,
8     what I did is I downloaded my general
9     ledger and said we needed to find each
10    donation and see where it led, whether
11    it was truly WonderWork for a
12    particular cause or for surgeries or
13    was it a cause that was in the wrong
14    place.
15         So we needed to match what Janet
16    and Vera had in their database to what
17    I had in my general ledger.  That was
18    the process we were going through.
19    And so if, it was -- if I had it in a
20    blindness account, they had to make
21    sure that their DMI account for the
22    donor was in a blindness account.  And
23    if not, we needed to figure out where
24    it really belonged.
25         So it was part of what we were

1     H. Fuchs
2     doing to find out what was restricted
3     or unrestricted.
4     BY MR. CURCHACK:
5     Q.   If there are funds contributed
6     on the website, through the website, are
7     those treated as restricted or
8     unrestricted?
9     A.   We have four accounts on our
10    website, the WonderWork, Burn Rescue,
11    20/20/20 and First Step.  Right now they
12    are all restricted for each of the
13    accounts, WonderWork, Burn Rescue,
14    20/20/20 and First Step.  In the past,
15    they weren't.  The WonderWork account
16    wasn't, but now they are.
17    Q.   Why is WonderWork now
18    restricted?
19    A.   Our website now says that all
20    your money is going to be used for
21    surgical programs.  I think that is on the
22    website now, so it is restricted.
23    Q.   By "surgical programs," you are
24    referring to the grants to hospitals?
25    A.   Correct.

1     H. Fuchs
2     Q.   As a result of the work that BDO
3     is doing in connection with their audit,
4     do you anticipate a change in the balances
5     of restricted and unrestricted funds?
6     A.   Based on our last review, we are
7     increasing the WonderWork restricted
8     number by about $900,000.
9     Q.   When you say "increasing," do
10    you mean --
11    A.   From the FY '15 back look.
12    Q.   Let me show you a letter your
13    counsel wrote to the United States Trustee
14    dated April 25, 2017.
15         (So marked for identification as
16    Fuchs Exhibit 16.)
17    Q.   Have you seen this letter
18    before?
19    A.   Possibly.  Oh, yes, I did.  I
20    have seen the letter.  I see the
21    spreadsheet in the back.  I worked on
22    that.  Sorry.
23    Q.   When you say you anticipate the
24    restricted funds increasing by 900,000 --
25    by approximately $900,000, is that a

1     H. Fuchs
2     change from these numbers that are
3     reflected on page 3 of this letter?
4     A.   Yes.  Correct.
5          MR. LILIEN:  Relatedly, do you
6     anticipate changing any numbers on the
7     expense side, how restricted funds
8     have been used?
9          MS. FUCHS:  Well, what I
10    changed -- what I changed was I booked
11    an expense to the WonderWork number
12    from FY '15 that wasn't there
13    originally because we didn't have FY
14    '15.  So that changed that particular
15    number, but --
16         MR. LILIEN:  What was the
17    change?
18         MS. FUCHS:  It was a few -- it
19    was about a hundred thousand dollars
20    in grants that were given to hospitals
21    in FY '15 that says use it for like
22    clubfoot and blindness or use it for
23    two causes instead of one.  So that
24    was in the WonderWork account.
25         When I double-checked that, I

**44 (Pages 170 to 173)**

1      H. Fuchs
2    said well, release that now.  I am
3    waiting for BDO to go over that
4    tomorrow.
5        MR. CURCHACK:  Why don't we take
6    a break.
7        (Recess.)
8        MS. FUCHS:  I just wanted to
9    clarify something I said earlier,
10    which after I left, I remembered it
11    wasn't quite right.  I think I
12    mentioned WonderWork web donations
13    were restricted to surgeries.  It is
14    really surgical programs, not just
15    surgeries.
16        I wanted to make a point of that
17    as opposed to saying the WonderWork
18    donations from the website were
19    restricted to surgeries.
20        MR. LILIEN:  In your mind, what
21    is the distinction between surgeries
22    and surgical programs?
23        MS. FUCHS:  Well, the programs
24    can be used for a number of things
25    other than just having a surgery.  The

1      H. Fuchs
2    program can be used for other things,
3    like equipment or Q/A reviews or
4    things like that for the hospital, not
5    just having surgery.
6  BY MR. CURCHACK:
7    Q.    Other things related to
8  performing the surgeries?
9    A.    Pretty much, yes, related to
10  that, but not just a surgery.
11    Q.    I want to ask a series of
12  questions, some of which may have been
13  addressed already, but I want to have
14  clear answers to the extent we can.
15        What does "joint cost
16  allocation" mean to you?
17    A.    To me, the joint cost allocation
18  is an expense that can be shared between
19  various categories of expenses.
20    Q.    Okay.
21        And what kind of -- what kind of
22  accounting guidance affects that or
23  provides a standard?
24    A.    There is a standard -- I don't
25  remember exactly the number.  I think it

1      H. Fuchs
2    is 98, but I might be wrong.  That relates
3    to how you can account for the different
4    categories.  We have a consultant who does
5    that for us.
6    Q.    What are the types of costs that
7  get jointly allocated?
8    A.    The direct mail expense costs
9  would be the costs directly allocated,
10  jointly allocated.
11    Q.    Does WonderWork allocate any of
12  the joint costs to the restricted net
13  asset accounts?
14    A.    The joint costs that are
15  allocated to the restricted accounts are
16  the cost for the various direct mail
17  pieces for each of the causes.  So, yes.
18    Q.    I would like to turn to the 2015
19  charity CHAR500 form, Exhibit 8,
20  particularly to page 0293.  Can you tell
21  us what this is?
22    A.    This is a schedule of functional
23  expense-by-expense categories, so this is
24  a breakdown of expenses by program,
25  management and general and fund raising.

1      H. Fuchs
2    Q.    Now, which of these expenses?
3        What do you think "program
4  services" entails, encompasses?
5    A.    Program services would be
6  expenses relating to the deliverance of
7  our mission and programs.  So, the way we
8  alerted the public, the way our management
9  group works on the programs.  It's all the
10  aspects of how we actually run our
11  charity.
12    Q.    Where does the money to pay the
13  program services come from?
14    A.    The expenses for the program
15  services are from our donations.
16    Q.    Other than grants and in-kind
17  services, which of the remaining expense
18  items on this table would be charged
19  against the restricted fund account?
20    A.    On the table here, if you look
21  at the printing, publication and postage
22  account, the part -- part of the total
23  expense of the $6 million would be
24  allocated to cover expenses for programs,
25  that $4 million, 4.4 million.

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

1          H. Fuchs
2     Q.    So that roughly $4 and a half
3  million, in your mind, could be paid with
4  restricted funds?
5     A.    That's correct.
6     Q.    And that allocation again is
7  based on the ratios that you were given by
8  Greg Ellis?
9     A.    Yes.  Gary Ellis.
10    Q.    Gary Ellis.  Sorry.
11    A.    Yes.
12    Q.    The other line items there,
13  salaries, professional consulting,
14  occupancy, office supplies, depreciation
15  and travel, can those be paid with
16  restricted funds?
17    A.    We don't use -- well, I don't
18  use restricted funds to pay the other
19  expense categories, only the grants and
20  the printing and publications, to release
21  the restrictions.
22    Q.    So all of those expenses from
23  those lines are paid with --
24    A.    With unrestricted.
25    Q.    Has that always been the case

1          H. Fuchs
2  for WonderWork?
3     A.    That's correct.
4          MR. LILIEN:  I have a couple of
5  questions.
6          MS. FUCHS:  Sure.
7          MR. LILIEN:  If you don't
8  determine what is restricted or
9  unrestricted until the end of the year
10  until the audit process, during the
11  course of the year how would you know
12  which funds can be spent for
13  restricted purposes?
14         MR. CURCHACK:  Or which funds
15  should not be spent for unrestricted
16  purposes?
17         MS. FUCHS:  The funds during the
18  course of the year are commingled in
19  the bank.  I pay everything out of the
20  WonderWork bank account, so the only
21  time I know how much is remaining is
22  when I do the exercise at the end of
23  the year or when there is a particular
24  restricted account that is set up,
25  like the medical records database that

1          H. Fuchs
2  I know specifically what it's been
3  used for.  But other than that, it's
4  the end of the year.
5          MR. CURCHACK:  Can we please
6  mark as next exhibit --
7          MR. LILIEN:  Sorry, Walter.  One
8  more question?
9          What does the depreciation in
10  the context refer to?
11         MS. FUCHS:  This is the fixed
12  asset depreciation and amortization
13  expense category line.
14         MR. LILIEN:  What are the fixed
15  assets you are referring to?
16         MS. FUCHS:  Our office
17  equipment, computers, desks, any other
18  equipment.  Chairs, tables, conference
19  room screens.
20  BY MR. CURCHACK:
21    Q.    How is that amount allocated?
22    A.    In terms of this reporting
23  structure?
24    Q.    Yes.
25    A.    Usually use the same percentages

1          H. Fuchs
2  as I would for like occupancy and, really,
3  salaries.  If I see the number of people
4  and I know the people are allocated to
5  certain programmatic versus support
6  services expenses, I take that pretty much
7  the same percent and I use it for a lot of
8  these allocations.
9          MR. LILIEN:  Another moment on
10  salaries and related expenses.  I see
11  that you allocated the bulk of it to
12  program services?
13         MS. FUCHS:  Correct.
14         MR. LILIEN:  How have you made
15  the determination to allocate most of
16  it to program services?
17         MS. FUCHS:  What I do is I take
18  the salaries for everybody over the
19  course of the year and add in the
20  benefits and then figure out, based on
21  each person, how much time they devote
22  to programs or management in general
23  or fund raising.  So, there are
24  certain people that all they do is
25  program work, DeLois and Tiffany.  So,

46 (Pages 178 to 181)

H. Fuchs

100 percent of their salary line would
be programs. Brian, it depends on
what he's been, I will allocate it
that way.
    I use that line --
    MR. LILIEN: Well, take Janet,
for example. How would you allocate
Janet's salary?
    MS. FUCHS: Well, I would use
her -- the work she does on direct
mail, which includes the work that
Gary Ellis has done in allocating the
expense line of direct mail, so I
would use some of that number in her
allocation, similarly to that.
BY MR. CURCHACK:
    Q. For clarification, meaning you
would divide her expense in the same ratio
as the direct mail expenses?
    A. Pretty much, yes. Then after I
do all that with everybody's salary, I go
to the bottom line and figure out what
totals program, what totals fund raising,
what totals percentage-wise.

H. Fuchs

    MR. LILIEN: Go back to Janet
just for a moment. Aside from
including the inserts, the public
health information inserts into the
mailings, does Janet perform any other
educational programs, programmatic
activities?
    MS. FUCHS: Well, she reads
everything, makes sure it's correct
and -- you'd have to ask her what more
she does.
    MR. LILIEN: I am asking you
because you have done the allocation.
    MS. FUCHS: That is kind of what
I do using the direct mail allocation
because that is what she works on, and
the database.
    MR. LILIEN: Are you aware if
Janet does any programmatic activity
other than including the inserts into
the fund raising mailings?
    MS. FUCHS: What programmatic
besides reading the information and
working on the program charts that

H. Fuchs

help program group? No. I mean,
there is general information that they
do for the board meeting on, you know,
how much...
    MR. LILIEN: What about your
salary? How is that allocated?
    MS. FUCHS: Pretty much to
management and general.
    MR. LILIEN: Your salary --
well, I am looking at that line,
"Salaries and Related Expenses in 2015
for fiscal year ended June 30, 2015."
It is about $99,000 in management and
general and your salary, then, I
recall was roughly $200,000?
    MS. FUCHS: In that time,
probably, yes.
    MR. LILIEN: So what would you
have allocated your salary to other
than management and general?
    MS. FUCHS: I would put part of
it in programs depending how much I
worked with the program group in
paying the grants and reviewing the

H. Fuchs

documentation on the grants.
    MR. LILIEN: How often would you
do that?
    MS. FUCHS: We would do that
pretty much once a month for a couple
of hours.
    MR. LILIEN: Other than that, is
there anything else that you worked on
from a programmatic perspective?
    MS. FUCHS: Keeping track of all
program expenses and sending out the
grants and pretty much handling the
flow of the money to the partners.
BY MR. CURCHACK:
    Q. You mentioned there is
information included in some of the
mailings which is used to support the
allocation of the printing cost between
program and other. Is that correct?
    A. Yes.
    Q. What kind of information gets
included?
    A. I'd have to look at a piece that
Gary Ellis divided up and see what he did.

47 (Pages 182 to 185)

1      H. Fuchs
2   But I am not familiar with the direct
3   mail pieces.
4      Q.   Do you know how WonderWork gets
5   the information to be included?
6      A.   That is another marketing piece
7   of information.  They would be able to
8   tell you better.  And also program people
9   get it from some -- I don't know.  Some
10  websites and things.  But that would be
11  more for programs.
12     Q.   Who is WonderWork trying to
13  educate through this public education?
14     A.   Well, it's for the general
15  public.
16     Q.   The people who are receiving --
17     A.   Receiving the direct mail piece.
18     Q.   Does WonderWork ever send out a
19  public education campaign that doesn't
20  include a reply device?
21     A.   I don't know.  Janet would be
22  able to tell you that.
23     Q.   Does WonderWork send public
24  education material to current donors?  In
25  other words, any renewal piece?

1      H. Fuchs
2      A.   Again, I would defer to Janet
3   for that.  My guess is yes, but I am not
4   sure so I don't want to really guess.
5      Q.   So when it comes time to do the
6   allocations at the end of the year, what
7   do you do to confirm the amount that is
8   attributable to program as opposed to the
9   other categories?
10     A.   Well, each piece, Janet and Vera
11  compile the expense for each of the pieces
12  because each piece has its own code, and
13  they know exactly how much it cost to
14  print, postage, do whatever to each piece.
15  So, Gary Ellis would do the actual
16  percentage of the piece by the line count
17  that he does.
18        Going back to the actual direct
19  mail piece, so he will count the lines and
20  determine what pieces of the piece are
21  allocated to either public information,
22  management and general, fund raising.
23  Then each piece has an associated cost, so
24  Janet and Vera will fill in the
25  spreadsheet he sends with the percentages

1      H. Fuchs
2   with the exact amount of each piece, and
3   that is how we get that expense amount.
4      MR. CURCHACK:  I've asked the
5   reporter to mark as Exhibit 17 three
6   copies of what... copies of what
7   appear to be three mailings.  One is
8   for 20/20/20 and begins with
9   production number 9021 through 9030.
10  The second is for Burn Rescue, and
11  production numbers begin 9061 and run
12  through 9069.  The last one is for
13  First Step, and begins with production
14  number 9070 and runs through 9078.
15     (So marked for identification as
16  Fuchs Exhibit 17.)
17     Q.   Looking first at the 20/20/20
18  mailing, can you tell me what is the
19  public information aspect of this mailing?
20     A.   I don't go through this.  Gary
21  Ellis does.  So I can't tell you what he
22  considers right now to be public
23  information.  He will go through this and
24  outline what he considers to be public
25  information and then I will take a look at

1      H. Fuchs
2   it, but I can't tell you right now what I
3   consider to be public information.
4      MR. LILIEN:  To the best of your
5   knowledge, what procedures or
6   protocols does Gary follow in making
7   that determination?
8      MS. FUCHS:  Well, he has a list
9   of what he considers, which he sends
10  me when he finishes it.  And it is on
11  the back of the piece that he has done
12  as to what -- and then he outlines the
13  document in different colors and says
14  what it's for.
15        But information about cloudy
16  lenses and your vision here on --
17     MR. LILIEN:  Before you get into
18  that, how would you know, after he
19  sends it to you, that he's right?
20     MS. FUCHS:  I just rely on him.
21  I don't really know.  It's his
22  background.
23     (So marked for identification as
24  Fuchs Exhibit 18.)
25  BY MR. CURCHACK:

1          H. Fuchs
2     Q.   Can you tell us what Exhibit 18
3   is?
4     A.   Do you want me to explain this ?
5     Q.   Yes, please.
6     A.   Sure.  This would be a package
7   of information that -- one of the packets
8   that Gary Ellis would send us back after
9   we have sent him PDF's of the mailing, the
10  direct mail piece.  And this is his
11  analysis of this particular piece called
12  "Priya Hoodie Control."  It's the name of
13  the package.  And the theme, what's
14  included.
15          And based on this particular
16  package, he is saying what he's got in the
17  public education content and information
18  about blindness and a call to action.
19          What he does is he highlights
20  the passages that he considers the
21  different categories in colored marker.
22  So, you are missing the color.  It would
23  be easier that way.
24    Q.   The first two pages is a
25  separate document than the balance, which

1          H. Fuchs
2   appears to be a copy of a mailing that is
3   marked.
4     A.   Right.  Gary provides the first
5   two pages on the particular direct mail
6   piece that he's analyzed.  And the two
7   pages consist of how he breaks out the
8   public education content and the call to
9   action.
10    Q.   If you go to the bottom of the
11  first page, where it says "Calls to
12  action," the first thing is "Reply
13  device."  Now, what is the action that is
14  being called for there?
15    A.   Well, what he is saying is
16  "Please send me update about 20/20/20 and
17  to watch the Two Sisters video on the
18  website."  That's part of the --
19    Q.   How is that a call to action?
20    A.   That, he would have to explain
21  to you.
22    Q.   The --
23    A.   Excuse me.  Another point would
24  be the information about the blindness
25  insert.  These are all calls to action

1          H. Fuchs
2   that people need to heed, which would be
3   about an eye exam, about family eye
4   health, eat right, maintain a healthy
5   weight, wear protective eyewear, quit
6   smoking.
7     Q.   How are those related to
8   providing surgeries for people in
9   underdeveloped countries?
10    A.   Well, this is the informational
11  piece about what a person needs to know
12  about blindness and not providing the
13  surgeries.  This is the way, I think, the
14  call to action is defined in the public
15  information.
16    Q.   So why is that relevant to
17  someone who is being asked to solicit
18  money to 20/20/20?
19    A.   This is educating the public on
20  issues with blindness, not just 20/20/20.
21  So that is part of the call to action.
22    Q.   How much is Mr. Ellis paid, if
23  you know?
24    A.   He gets a hundred dollars for
25  each piece that he analyzes.

1          H. Fuchs
2     Q.   A hundred dollars?  Do you know
3   how long it takes him to do each one?
4     A.   I really don't know.
5     Q.   Do you know how many in a given
6   year he does?
7     A.   For WonderWork?
8     Q.   Yes.
9     A.   It depends.  I don't have the
10  count right now, but it could be -- I
11  think -- I can't guess at that.
12        MR. LILIEN:  What, roughly, what
13  do you pay him a year?
14        MS. FUCHS:  He gets paid usually
15  the whole thing at once.  So we give
16  him all the pieces or all the ones
17  that we feel are different -- in one
18  case, if a piece is very similar, we
19  don't give it to him.  If we have
20  three pieces that look exactly like
21  this with maybe one or two variances,
22  we wouldn't give it to him.
23        So I am trying to think.  I
24  don't know.  Maybe 50, the last time
25  we gave him 50 or more different

1          H. Fuchs
2     variations of pieces that we sent out.
3     It could be more.  I don't know.
4          Q.    The balance of that exhibit is
5     what he marked up.  Is that correct?  The
6     rest of what is in this exhibit --
7          A.    That is the actual direct mail
8     piece that he would highlight, yes.
9     That's correct.
10         MR. LILIEN:  Has Mr. Ellis ever
11         commented on the content or made
12         suggestions for improving it?
13         MS. FUCHS:  The content?
14         MR. LILIEN:  The public
15         information piece.
16         MS. FUCHS:  Not to me he hasn't.
17         No.
18         Q.    Do you know whether Target
19     Market Team provided -- sorry.  Did their
20     allocation in the same way?
21         A.    They did a word count, not a
22     line count.  But it was similar in reading
23     the information.
24         Q.    If you go back to the exhibit
25     and you look at the print on the

1          H. Fuchs
2     information about blindness insert
3     compared to the rest of the mailing, it
4     would seem there is a pretty heavy
5     weighting towards the information about
6     blindness.
7          A.    Yes.
8          Q.    Would you agree?
9          A.    Yes, I agree.
10         Q.    What would be the reason for
11    doing that?
12         A.    Well, it is sentences of the
13    maybe that sentence is here.  It is not
14    really a whole line.
15         I thought it was a line count
16    that he used.
17         Q.    But I'm asking, if one were to
18    do a word count, where does it appear that
19    most of the words appear?
20         A.    Oh, pretty much in the brochure,
21    information about blindness.  That's
22    actually a little brochure.
23         Q.    For the record, by the brochure,
24    you mean this information about blindness
25    insert?

1          H. Fuchs
2          A.    Correct.
3          Q.    Where in the letter does it say
4     anything about the insert?
5          A.    I don't think it's in the
6     letter, but I don't know.  I'd have to
7     read the letter.  I think it just goes in
8     the envelope.
9          Q.    And does WonderWork -- has
10    WonderWork, to your knowledge, ever asked
11    a donor to give money to enable it to send
12    out materials like the "information about
13    blindness" insert?
14         A.    I wouldn't know that.
15         Q.    Have you ever seen a WonderWork
16    mailing that requested funds to enable it
17    to send out information about
18    blindness-type brochures?
19         A.    I haven't seen it.
20         Q.    Who would be the person who
21    would have the most communication with
22    Mr. Ellis?  Who from WonderWork would have
23    the most communication with Mr. Ellis?
24         A.    Well, Janet and Vera put
25    together the mailing packages -- well,

1          H. Fuchs
2     they are together already, but they would
3     send him the PDF's of all the mailings,
4     and he contacts me with the information
5     when he does the review.
6          Q.    Okay.
7          A.    Initially I would contact him
8     regarding, "We need the review done."
9          Q.    Did you ever have any
10    discussions with any member of the board
11    about the joint cost allocation?
12         A.    Not that I recall.
13         (So marked for identification as
14    Fuchs Exhibit 19.)
15         Q.    I have asked the reporter to
16    mark as Exhibit 19 an email thread.  The
17    top one is from Hana Fuchs to Greg Lam
18    dated February 2, 2015.
19         Could you tell us who Greg Lam
20    is?
21         A.
22



1          H. Fuchs
2   that while in the financial statement
3   salaries are attributed to different
4   elements, including programs and other,
5   that nevertheless they would not be paid
6   from restricted funds.  Is that correct?
7     A.   That's correct.
8       MR. LILIEN:  Has that always
9   been the case?
10      MS. FUCHS:  Yes.
11     Q.   So, would it be correct to
12  assume, then, that even though certain
13  legal expenses were attributed to program
14  for purposes of the financial statement
15  presentation, that those fees, those legal
16  fees would not be paid with restricted
17  funds?
18     A.   They were not paid with
19  restricted funds.  Yes, that's correct.
20     Q.   When did WonderWork start
21  including language that said "100 percent
22  of your donation will go toward surgeries"
23  or something like that?
24     A.   You'd have to ask Janet for
25  that.  I think it was for FY '17, but I am

1          H. Fuchs
2   not entirely correct -- I mean, I am not
3   sure.  Janet does the direct mail so she
4   would be able to tell you that.  ((It's
5   "information about blindness" insert).
6     (So marked for identification as
7   Fuchs Exhibit 20.)
8     Q.   The next exhibit consists of
9   three separate solicitations or draft
10  solicitations.  The first one is
11  production number WON 06087 through 06092.
12  The second is a one-page -- it looks like
13  a form letter, WON 06164.  The last one is
14  a letter dated November 2, 2016, with
15  production number WON 06120 through 06122.
16     Do you recall seeing these?
17     A.   I don't really receive these to
18  review, but these are FY '17
19  solicitations.  But I --
20     Q.   Okay.  Turn to page 06088.  In
21  the middle of the page is a paragraph that
22  begins, "We are very proud that our
23  overhead and admin expenses are extremely
24  low.  Even better, one of our founding
25  donors pays for all of our non-program

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

1       H. Fuchs
2  expenses so that 100 percent of all
3  donations, including yours, can go towards
4  programs."
5       Now let's turn to production
6  number 06164. There is a paragraph that
7  begins, "I want you to know." Do you see
8  that?
9    A.  Yes, I see it.
10    Q.  I will read that sentence. "I
11  want you to know also that we will use
12  100 percent of your donation for our free
13  surgery programs." Okay?
14       Then go to 06120. At the bottom
15  of the page, there is a statement that
16  says, "100 percent of all donations goes
17  towards our free surgery programs. A
18  founding donor pays all admin and
19  fund-raising expenses."
20       Now, although similar, those are
21  three different statements?
22    A.  That's correct.
23    Q.  Could you explain why -- could
24  you explain what the differences mean?
25    A.  I think you are going to have

1       H. Fuchs
2  Brian to explain that. He is the one who
3  wrote it.
4    Q.  Okay.
5    A.  I can't answer that.
6    Q.  Well, let's pretend or let's
7  assume that a donation came in in response
8  to each of these three mailings. Now, the
9  first one is a WonderWork mailing. The
10  second one, I can't tell, but it doesn't
11  identify itself as one of the d/b/a's.
12    A.  No.
13    Q.  And the third one is a
14  WonderWork mailing as well.
15    A.  Yes.
16    Q.  While these all say different
17  things as to where the donation -- I will
18  rephrase that.
19       How would you treat funds that
20  came in in response to each of these three
21  mailings?
22    A.  Based on the hundred percent,
23  this would be restricted to WonderWork's
24  surgical programs.
25    Q.  WonderWork, I thought, doesn't

1       H. Fuchs
2  have surgical programs?
3    A.  No, but we started a new account
4  for the WonderWork surgical program
5  restriction, and that would be -- that
6  would be how it would be restricted. And
7  this would be FY '17.
8    Q.  What was the basis for the
9  hundred percent claim?
10    A.  Again, you'd have to ask Brian
11  about that.
12    Q.  What did you understand the
13  hundred percent language to mean?
14    A.  That we would restrict
15  100 percent of the donation to our
16  surgical programs.
17    Q.  So, would surgical programs
18  include providing public information about
19  how to avoid going blind?
20    A.  That would be part of it.
21    Q.  And what is the connection
22  between surgical programs and general
23  health information?
24    A.  General health information about
25  blindness?

1       H. Fuchs
2    Q.  Yes.
3    A.  What is the difference?
4    Q.  What is the relationship?
5    A.  They are both part of the public
6  information.
7    MR. LILIEN: Hana, if a donor or
8  prospective donor would receive a
9  document that says "give to our
10  programs," which means surgical
11  programs, 100 percent goes to surgical
12  programs, I just want to understand
13  why you would think a donor would
14  believe that their donations go to pay
15  for cost of a public information
16  campaign.
17    MS. FUCHS: I don't -- I mean, I
18  don't know what a donor believes, but
19  I know, accounting-wise, you are
20  allowed to do this. So it is kind
21  of -- what I do is the financial
22  piece, but the marketing people do the
23  rest of it. So, it is more of what
24  they -- what their intentions are.
25    But according to the accounting

52 (Pages 202 to 205)

1       H. Fuchs
2 regulations, one is allowed to
3 allocate part of the direct mail
4 expenses to programs.
5     MR. LILIEN: Is there anything
6 in the documents you have in front of
7 you -- start with the letter 6087 to
8 6088 -- that would suggest that money
9 raised would go to pay for costs of
10 mailings of information.
11     MS. FUCHS: I don't see anything
12 here, but that doesn't mean it wasn't
13 included in the actual mail piece they
14 received. The envelope could have
15 been the brochure, which is usually
16 the case. This letter doesn't say
17 that.
18     MR. LILIEN: Just to be clear
19 here, your understanding and your
20 belief is that the phrase "surgical
21 programs" also means information that
22 is included in mailings to donors?
23     MS. FUCHS: The public
24 information piece. Correct.
25     MR. LILIEN: And you believe

1       H. Fuchs
2 that to be a surgical program?
3 Earlier you had mentioned surgical
4 programs were surgeries, equipment and
5 some quality assurance.
6     MS. FUCHS: Part of the
7 allocation. I mean, it is part of the
8 functional expense breakdown of the
9 finances. So, to me it is part of it
10 also.
11 Q. But if you were a donor and
12 received a solicitation from 20/20/20,
13 would you have any reason to believe that
14 your funds, your donation, would go to pay
15 for an insert like the one that we just
16 looked at?
17 A. I mean, I know it would, so I
18 can't answer that question. Since I do
19 the finances, I know when I get
20 information from every charity in the
21 world basically in my mailbox, I know
22 every piece of paper that they put in
23 there, which has a map of where they have
24 hospitals or how many surgeries they do.
25     For example, the breast cancer

1       H. Fuchs
2 people. "Go for a mammogram." I know
3 that is part of what I am paying for when
4 I give money to them. You know, it is
5 kind of -- yeah, I do know that. Just
6 because I know that.
7     MR. LILIEN: Let me have you put
8 your chief financial officer hat on
9 for a moment. As fiduciary of a
10 charity that has restricted funds,
11 would your answer be any different?
12     MS. FUCHS: Well, also, I mean,
13 I rely on the expertise of our
14 accounting professionals and our
15 auditors from KPMG and now from BDO to
16 either tell me this is incorrect and
17 change it or to agree with it.
18     So, if they agree with the
19 presentation..
20     MR. LILIEN: I think it is very
21 important for us, and I think we will
22 be breaking soon, but I just ask you
23 again.
24     MS. FUCHS: Sure.
25     MR. LILIEN: Just to make sure

1       H. Fuchs
2 we are clear on this, your decision as
3 CFO to use restricted funds for
4 purposes other than grants to
5 hospitals, equipment, quality
6 assurance reviews, is based on
7 accounting rules as to when you can
8 allocate costs across programs, not
9 based on what the solicitation
10 materials themselves may say?
11     MS. FUCHS: Well, backing up a
12 little, though, the allocation rules
13 are based on what the solicitation
14 materials say.
15     MR. LILIEN: Let me be more
16 specific. I mean in terms of what the
17 materials say about use.
18     MS. FUCHS: Well, I would rely
19 on KP -- rely on our auditors to
20 determine whether it is acceptable or
21 not. And if they reviewed what Gary
22 Ellis did and said to me, "This is
23 incorrect," then I would change it.
24 But they have all reviewed the work
25 that all of the people did, whether it

53 (Pages 206 to 209)

1     H. Fuchs
2 is Gary Ellis or Target Market, and
3 they have agreed with the
4 presentation.  So, I agreed with that.
5 Q.   Did you ever --
6     MR. CURCHACK:  I think we should
7 break now.  Thank you.  We will see
8 everybody back here at 11.
9     (TIME NOTED:  6:38 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2
        CERTIFICATION
3
4
5     I, DEBRA STEVENS, a Notary Public for
6 and within the State of New York, do
7 hereby certify:
8     That the witness whose testimony as
9 herein set forth, was duly sworn by me;
10 and that the within transcript is a true
11 record of the testimony given by said
12 witness.
13     I further certify that I am not
14 related to any of the parties to this
15 action by blood or marriage, and that I am
16 in no way interested in the outcome of
17 this matter.
18     IN WITNESS WHEREOF, I have hereunto
19 set my hand this 23rd day of August, 2017.
20
21     _____
22     DEBRA STEVENS, RPR-CRR
23
24         * * *
25

1
2     ACKNOWLEDGMENT
3
STATE OF NEW YORK   )
4             :ss
COUNTY OF NEW YORK  )
5
6
7     I, HANA FUCHS, hereby certify that
8 I have read the transcript of my
9 testimony taken under oath in my
10 deposition on August 14, 2017,
11 that the transcript is a true, complete
12 And correct record of my testimony, and
13 that the answers on the record as given by
14 me are true and correct.
15
16
17 _____
18     HANA FUCHS
19 Signed and subscribed to before me
20 This _____ day of _____, 2017.
21 _____
22 Notary Public, State of New York
23
24
25

1
2     *** ERRATA SHEET ***
   TRANSPERFECT DEPOSITION SERVICES
3   216 E. 45th Street, Suite #903
    NEW YORK, NEW YORK 10017
4     (212) 400-8845
5 CASE:  In Re Wonderwork, Inc.
   DATE:  August 14, 2017
6 WITNESS: Hana Fuchs    REF: Job #19383
7 PAGE LINE  FROM        TO
8 _____|____|_____|_____
9 _____|____|_____|_____
10 _____|____|_____|_____
11 _____|____|_____|_____
12 _____|____|_____|_____
13 _____|____|_____|_____
14 _____|____|_____|_____
15 _____|____|_____|_____
16 _____|____|_____|_____
17 _____|____|_____|_____
18 _____|____|_____|_____
19 _____|____|_____|_____
20 _____|____|_____|_____
21
22 _____
     HANA FUCHS
23
Subscribed and sworn to before me
24 this ____ day of _____, 20__.
  _____
25     Notary Public

**A**

**ability** 8:18
**able** 51:17 59:23
110:3 125:12
129:22,25 130:8
132:9 144:21
148:15 159:7
186:7,22 201:4
**acceptable** 209:20
**accepted** 118:12
**access** 55:3,5,11
129:4
**accompanied**
145:12
**account** 16:2 50:9
50:24 51:6,21
52:6 73:25 74:3,8
74:13,15,21,23
75:7,11 82:18
83:15 123:7
124:12,13 125:13
125:21,25 126:9
126:10 129:8
130:19 131:8,9
132:15 136:9
151:6 159:4 165:6
165:13,19 166:3
168:13,17 169:3,4
169:11,13 170:20
170:21,22 171:15
173:24 176:3
177:19,22 179:20
179:24 198:14
204:3
**accounting** 7:15
11:2 12:4,7 13:24
15:19 16:10,14,16
16:19 17:22 30:25
44:3,24 45:16
46:22 83:20 85:21
86:2 90:8,9 94:15
113:2 143:2
148:10,14,18,22
154:3 175:22
205:25 208:14
209:7
**accounting-wise**

205:19
**accounts** 12:5
53:10 120:4
122:21 124:6,19
125:9 126:6,7
129:6 130:6
137:20 140:3
164:18,23 168:15
168:24 171:9,13
176:13,15
**accrual** 102:10,12
103:21
**ACKNOWLED...**
211:2
**Acting** 15:11
**action** 149:4,7
190:18 191:9,12
191:13,19,25
192:14,21 199:12
199:13,20,20
212:15
**actions** 107:25
**activities** 78:21
87:18 161:22
183:8
**activity** 183:20
**actual** 39:15 78:6
78:13 83:21 84:11
85:9 86:22 106:6
129:9 132:22
144:12 155:17
187:15,18 194:7
206:13
**add** 7:23 39:22
106:25 181:19
**added** 38:25 39:2
46:21 100:15,19
102:4,5
**addition** 32:5
**additional** 118:11
118:18
**address** 51:10,11
66:12 72:15
198:20
**addressed** 92:16
175:13
**addresses** 199:11

**addressing** 163:23
**admin** 201:23
202:18
**administration**
13:19 157:6
**administration/f...**
94:4
**ADP** 18:8,20 20:16
38:9 44:6,23
**adults** 128:8
**advance** 9:3
**advice** 75:13
**advisor** 76:4
**advisory** 7:5
**affect** 8:18
**affirm** 49:20
**afford** 90:20
**afternoon** 6:4
**ago** 10:22 36:11
65:2
**agree** 44:16 117:23
118:5 169:24
195:8,9 208:17,18
**agreed** 34:25 66:3
113:8 118:21
210:3,4
**agreement** 24:15
28:15 29:7,8,9
56:18 58:12,16
81:5,15,18,21
100:9 102:15
103:14 104:11,20
105:5,15 114:2
141:8,9
**agreements** 29:17
**ahead** 136:22
**AICPA** 199:6
**airfares** 71:20
**airline** 57:15
**alert** 124:21 147:4
**alerted** 177:8
**allocate** 89:8,22
90:10 91:20 97:9
142:21,24 148:11
148:24 156:8,8
176:11 181:15
182:4,8 206:3

209:8
**allocated** 96:24
98:10,11 99:5
108:9 143:18,20
176:7,9,10,15
177:24 180:21
181:4,11 184:7,20
187:21
**allocating** 136:16
182:13
**allocation** 88:21
89:17 90:2,7
91:24,24 93:20
94:10 96:7,10,18
97:14 99:17 119:8
141:17,24 142:3
142:19 144:9,14
145:20 146:18
150:7,12 152:7
153:7,17 155:12
159:10,23,24
160:19 162:11
175:16,17 178:6
182:16 183:14,16
185:19 194:20
197:11 198:7,16
207:7 209:12
**allocations** 94:18
147:13 159:19
181:8 187:6
**allowed** 61:12
90:10,10 142:7,20
142:24 143:17,19
148:11 205:20
206:2
**amended** 116:17
**amortization**
180:12
**amount** 22:17
38:24 74:11 77:19
79:2,6,13 80:3
83:10,21 88:2
110:12 118:18
121:4 129:23
135:16,18 142:7
143:3,25 144:2
169:6 180:21

187:7 188:2,3
**amounts** 60:3
**analysis** 160:4
190:11
**analyze** 54:2,5
**analyzed** 191:6
**analyzes** 192:25
**and/or** 158:6
**annual** 37:8 38:23
39:6,15 40:25
**annually** 33:22
**answer** 6:17,21
7:19,24,25 8:18
161:7 203:5
207:18 208:11
**answered** 82:3
**answers** 6:12
175:14 211:13
**anticipate** 172:4,23
173:6
**anticipated** 110:8
**anybody** 9:2 27:5
30:3 55:5 97:9
**anyway** 70:10
198:20
**Apart** 65:15
**apologize** 93:17
**apparently** 22:20
110:17
**appeal** 48:11,18
50:3,15
**appear** 188:7
195:18,19
**appears** 79:2 97:25
98:6 138:7 159:10
160:4 191:2
**application** 162:5
134:19
**apply** 56:13,16
**apportioned** 91:3
**appreciate** 6:13
147:14
**appropriate** 8:9
123:7 125:6 129:2
157:24
**approval** 124:24

**approvals** 59:14
**approve** 62:6 67:4
  76:9
**approved** 28:14,17
  59:18,19 62:4
  67:3,5,8,9,12,24
  68:6,10
**approves** 59:25
**approximately**
  41:6 52:12 172:25
**April** 47:3 113:13
  115:24 158:24
  172:14
**arbitration** 91:9
  103:16 107:4
  109:14,16 113:25
  115:7,9
**argue** 107:10
**arrived** 88:15
**aside** 87:14 116:23
  183:3
**asked** 34:24 39:12
  59:14 78:11
  113:24 120:12
  138:5 188:4
  192:17 196:10
  197:15 198:17,18
**asking** 6:10 7:7,11
  74:10,11 85:7
  114:8 183:13
  195:17
**aspect** 188:19
**aspects** 177:10
**asset** 146:2,3
  151:20 154:8,24
  176:13 180:12
**assets** 42:25 74:12
  74:23 138:10,13
  138:14,17 139:10
  145:21 151:16
  153:22 180:15
**assistant** 62:20
**assisted** 42:8
**assisting** 76:6
**associate** 118:14
**associated** 100:24
  187:23

**association** 148:9
**assume** 68:3
  200:12 203:7
**assumed** 124:14
**assuming** 68:3
  134:25
**assurance** 158:9
  207:5 209:6
**ATM** 166:2
**attached** 51:3
  68:17,19 106:18
  167:15
**attaching** 61:20
**attachment** 5:9
  167:21
**attend** 66:8
**attention** 72:16
**Attorneys** 3:4,13
**attributable** 92:5
  92:10 150:15,23
  160:25,25 187:8
**attributed** 200:3,13
**audibly** 6:17
**audit** 4:24 10:25
  11:4,8 20:4,5 49:6
  49:11,21 59:3,6
  65:17,18,24 67:3
  67:4,23,23 82:3,9
  89:5,6 91:7
  101:22 105:18
  106:4,6,15,24,25
  108:25 109:22
  110:4,16 111:4
  115:14 116:21
  120:7 121:11
  137:6 142:5 172:3
  179:10
**audited** 68:20
  102:17 103:2
  116:18 155:13,19
  160:20
**auditor** 47:20
  58:23 65:19 81:25
  114:10 117:11
**auditors** 19:11,18
  19:25 20:6,8 47:2
  47:4,19 55:10

  58:25 62:25 137:8
  208:15 209:19
**August** 1:11 2:5
  211:10 212:19
  213:5
**authority** 124:22
**authorization**
  120:19
**authorize** 120:23
**authorized** 120:21
  121:3
**authorizing** 120:20
  120:25
**automatically**
  122:7
**Avenue** 2:4 3:5
**avoid** 204:19
**Avon** 10:20,23
**award** 114:4,5
  115:7,9
**aware** 90:21 111:17
  127:23 163:17
  183:19
**a.m** 198:4

### B

**B** 4:6 5:2
**back** 10:3,8 13:3
  17:13 26:23,25
  30:19 33:11 36:12
  41:3 49:17 50:15
  52:18 67:21 73:8
  73:15 75:5 83:4
  89:3 96:13,23
  105:15 107:15
  108:21 114:6,19
  114:21 118:25
  122:13 136:11
  141:9 149:20
  167:2 172:11,21
  183:2 187:18
  189:11 190:8
  194:24 210:8
**background**
  189:22
**backing** 110:16
  123:16 133:13

  165:9 209:11
**backup** 59:21 62:4
  88:9,11,13 130:25
  132:6 133:25
**balance** 116:10
  117:4 126:2,5,8
  169:6,7,12 190:25
  194:4
**balances** 154:8,25
  172:4
**bank** 124:11,13,17
  124:19 125:8,9,21
  126:6,7 129:2,20
  129:24 130:2,14
  130:19 131:19
  165:6,13,25
  168:13,17 169:2
  179:19,20
**bankruptcy** 1:2 6:8
  109:12,15,18
  115:7,8 119:14,16
  133:24
**base** 70:6
**based** 20:18 43:7
  48:10 50:5 53:9
  75:3 77:23 78:9
  79:15 82:4,7
  83:21 84:12 86:8
  86:20 89:22 90:3
  91:14 103:13,16
  104:7,7,13,25
  116:18 117:22
  118:5,16,19
  119:13 121:10
  132:21 133:10,15
  133:18 143:2
  152:8 160:3,4
  172:6 178:7
  181:20 190:15
  203:22 209:6,9,13
**basically** 53:23
  207:21
**basis** 37:8 91:11,13
  93:19,20 100:23
  100:25 204:8
**batch** 129:7 131:17
**Bates** 4:9,20 5:7

**Baxter** 14:15
**Bayside** 10:9
**BDO** 47:6,7,20
  49:6,10,19 51:25
  52:7,16 59:12,14
  67:20,22 113:5,8
  114:11 115:5,12
  116:20 118:20
  119:7 120:7 133:7
  133:13 172:2
  174:3 208:15
**bears** 92:17
**beginning** 14:9
  18:7 33:19,25
  35:14 36:7 44:4
  72:25 83:5 95:7
  96:12 113:12
  122:13,15
**begins** 72:18 76:16
  188:8,13 201:22
  202:7
**behalf** 32:20
**belief** 206:20
**believe** 61:5 87:21
  93:14 111:5
  199:25 205:14
  206:25 207:13
**believed** 104:21
**believes** 105:22
  205:18
**belonged** 170:24
**beneficiary** 80:22
**benefit** 64:4,7 81:8
**benefits** 80:7,11
  159:22 181:20
**Berkin** 3:19 6:25
  125:24
**best** 43:2 46:17
  54:10 68:12 71:21
  82:6 99:14 115:21
  189:4
**Bethany** 3:9 6:24
**better** 186:8 201:24
**biggest** 93:23
**bill** 91:23
**bills** 16:17
**bit** 9:4 23:10 31:18

74:5
**blank** 72:25
**blind** 204:19
**blindness** 50:11,23
91:15 125:19
126:18 131:5
135:16,19 140:16
149:21 150:23
151:5,10 152:22
152:25 154:14
163:11,11,16,18
166:24 170:20,22
173:22 190:18
191:24 192:12,20
195:2,6,21,24
196:13 201:5
204:25
**blindness-type**
196:18
**blood** 128:4 212:15
**blurted** 14:19
**board** 17:18 20:14
21:19 28:13,23
34:22 35:2 56:10
59:18,19,25 60:13
65:25 66:5,6,8,13
66:17,22,23 68:9
76:9 120:22 184:4
197:10 198:5,14
198:22
**boilerplate** 7:17
**bonds** 74:18
**bonus** 33:14 38:5
38:10,21 39:14
**book** 16:5 60:24
84:5,20 102:7
123:6
**booked** 50:23
107:19 117:19
140:3 164:16
165:14,15 173:10
**booking** 16:18
**books** 17:8 19:8,19
30:20 86:6,15
134:8
**borrow** 73:24 74:2
74:21 75:2

**borrowed** 73:13
**Boston** 58:9 60:5
64:21 65:22 66:12
66:18 87:20
**bottom** 72:19,22
76:17 138:11
142:1 159:5 164:6
182:23 191:10
198:3,25 202:14
**box** 53:6 71:6,9,11
128:18
**boxes** 71:4,14 72:7
**brain** 33:9 122:23
123:6,18
**break** 8:7 174:6
210:7
**breakdown** 121:17
155:7 176:24
207:8
**breaking** 208:22
**breaks** 8:4 155:14
191:7
**breast** 207:25
**Brian** 15:5,6,19,25
17:14 18:3,9,21
19:12 23:22 24:19
24:20 27:25 34:22
34:24 35:3 39:11
42:9 43:8 52:22
63:7 79:24 82:5
82:14,21 110:24
111:6,16 121:3
160:5 161:19
162:15 163:2
182:3 203:2
204:10
**Brian's** 19:23
57:19 120:21
159:10,19 162:21
**brochure** 149:9,10
195:20,22,23
206:15
**brochures** 196:18
**brokerage** 73:25
74:3
**brought** 108:2
**bsimmons@loeb....**

3:10
**budget** 35:23 43:6
59:17,18 60:2,2,6
60:13,15
**budgeting** 77:6
**bulk** 181:11
**Burn** 50:6 53:11
122:6,21 124:7
129:7,8 131:9
164:19 171:10,13
188:10
**burns** 33:8 123:5
126:18 131:6
140:5,16
**business** 42:5,10,12
43:6,16 57:25
64:6,8,12 65:10
71:19 123:13
124:6
**buy** 62:8

## C
**C** 3:2 153:5
**caging** 53:2 128:15
128:24
**calculate** 42:16
138:23 156:14
**calculated** 40:23
83:5 84:12 85:3
**calculating** 83:8
**calculation** 38:5
39:7 140:25 142:8
155:8,8 156:18
**calculations** 138:21
**calendar** 19:22
38:14,22 39:2,6
39:16,21 40:19,22
**call** 73:7 85:2
114:21 116:25
126:15 127:9
149:4,6 190:18
191:8,19 192:14
192:21
**called** 8:7 9:21
11:16 44:23 76:21
76:24 94:13 95:10
110:25 111:2

113:7 114:14
167:16 190:11
191:14
**calls** 191:11,25
**campaign** 186:19
205:16
**cancer** 207:25
**Canter** 125:3
197:22
**capacity** 27:20 30:4
**card** 59:23 62:17
67:15 130:4,5,8
**care** 122:8
**carried** 48:21
144:23
**carry** 150:4
**carrying** 48:23
**Carson** 40:6
**CARTER** 3:12
**case** 1:6 6:9 19:3
96:6 178:25
193:18 200:9
206:16 213:5
**cash** 19:6 74:5,6
120:2 129:17
**categories** 156:9
175:19 176:4,23
178:19 187:9
190:21
**categorize** 93:25
**category** 180:13
**cause** 50:5,13 51:5
122:8 123:14
124:10 125:20,23
126:11,13,20,23
128:20 131:9
137:20 163:18
165:15 170:12,13
**caused** 12:13 15:2
20:22 106:23
**causes** 50:4 122:5,6
122:18 123:2
124:4 126:15
127:2 139:13,18
170:7 173:23
176:17
**CDR** 76:24 77:2,3

77:19,21 78:22
94:22,22
**CEO** 13:5,7 15:10
15:11
**certain** 22:17 28:16
30:20 31:14,21
34:19 47:14 61:7
143:3,5 145:16
147:3 149:2
163:12 181:5,24
200:12
**certificates** 124:15
**CERTIFICATI...**
212:2
**certifications** 10:14
**Certified** 2:6
**certify** 211:7 212:7
212:13
**cetera** 79:20
**CFO** 12:16 18:17
209:3
**chain** 110:18,18
112:10,11,18
**chairman** 21:18,20
**Chairs** 180:18
**change** 7:24 22:4
41:9 44:14 47:25
48:3,4 55:7,14,17
70:21 106:23
109:7 172:4 173:2
173:17 208:17
209:23
**changed** 29:25
44:13 48:8,8
122:11 159:11,19
173:10,10,14
**changes** 17:21
100:8
**changing** 173:6
**Chapter** 1:5
**characterizing**
136:17
**charge** 12:3
**charged** 154:24
177:18
**charges** 82:8
**charity** 110:6

124:18 147:5
163:14 176:19
177:11 207:20
208:10
**Charles** 21:11
**chart** 37:19 39:10
139:20 150:20
166:4,12
**Charter** 71:7
**charts** 183:25
**CHAR500** 4:14,16
4:17,19 68:16
69:24 70:16,18
78:25 176:19
**check** 50:9,15,17
50:20 51:3,4,12
51:13,17 124:10
125:18 129:4
130:15,25 131:3
132:3,8 134:18,24
134:25 135:6
140:4,4 154:12,14
154:19 165:18
**checked** 71:15 72:7
**checkmark** 72:9
**checks** 51:8 53:9
128:25 129:5
134:2 136:17,20
166:3,13
**chief** 29:24 208:8
**children** 80:16
128:6
**children's** 11:16
12:12,14 14:17
128:4
**choose** 77:5
**chose** 81:24
**circumstances**
14:25
**City** 8:15
**claim** 204:9
**clarification**
182:18
**clarify** 26:17 49:4
174:9
**clarity** 47:12
145:19

**class** 57:25 71:7,20
**classifications**
125:6 135:12
**classified** 78:4
164:22
**classify** 154:17
**classifying** 121:24
**clear** 8:2,3 23:4
48:3 49:9 144:4
175:14 206:18
209:2
**cleft** 140:18,21,22
**CLM** 118:17
**closely** 128:7
**cloudy** 189:15
**clubfoot** 33:8 50:12
123:5 126:17
140:17 149:12
173:22
**code** 187:12
**codes** 154:11
**CohnReznick**
113:5
**colleague** 6:24
**collect** 128:18
**collecting** 27:22
**college** 10:7,19
**color** 190:22
**colored** 190:21
**colors** 189:13
**column** 37:25
38:13 79:2,5 80:2
80:6 140:10
141:15,17,18
149:25 150:7,19
151:4,19 152:24
153:6,7 160:15,17
168:10,12,12
**columns** 37:20
42:22 150:6
151:15 169:6
**come** 10:3 15:25
19:18 28:16 34:22
42:24 44:25 89:7
89:10 94:20
118:17 129:25
130:12 141:11

146:17 153:21
168:25 170:6
177:13
**comes** 75:20 122:4
122:9 187:5
**comfortable** 117:6
117:9
**coming** 17:2 43:12
131:16
**commenced** 136:11
**commented** 194:11
**comments** 116:24
**commercial** 76:22
**commingled**
179:18
**committee** 65:25
67:3,4,24 111:4
**communication**
196:21,23
**communications**
66:5,16,21
**commute** 64:12
**commutes** 58:9
**commuting** 60:4,18
61:2 62:23 63:17
68:10
**companies** 54:4,5
**Companions** 71:12
**company** 16:20
17:4 19:8 53:2,16
94:8,23 95:2,9
128:15,24 145:14
146:14 198:12
**company's** 86:6
**compared** 195:3
**compensated** 31:4
33:16 65:5
**compensation**
33:22 71:3 79:19
80:2,3 156:23
157:12
**compile** 187:11
**complete** 115:13
116:15 211:11
**completing** 116:5
**component** 199:11
**comprehensive**

47:10
**comprised** 146:9
**computers** 180:17
**computing** 65:5,9
**concerning** 66:17
**conditions** 29:11
90:21
**conducted** 48:14
**Coneys** 111:3
198:5
**conference** 180:18
**confirm** 116:10
118:13 133:7
187:7
**confirmed** 84:17
84:19,21
**confused** 35:21
**conjunction** 69:21
138:22
**connection** 26:15
49:6,10,16 67:22
92:4 116:20 120:7
137:6 169:5 172:3
204:21
**consider** 61:17
63:25 85:14 148:4
189:3
**considered** 86:4
91:9 133:21 148:8
153:19 154:4
162:4
**considering** 91:12
**considers** 188:22
188:24 189:9
190:20
**consist** 191:7
**consistent** 148:5
**consists** 201:8
**consultant** 22:17
23:8 78:24 93:25
95:6 145:15
146:15 148:22
162:24 176:4
**consultants** 77:4
**consulting** 22:19
27:19 87:9,15,21
121:13 178:13

**contact** 25:9 197:7
**contacts** 197:4
**content** 28:6
190:17 191:8
194:11,13
**context** 161:19
168:19 180:10
**continue** 125:10
**continuing** 10:14
128:13
**contract** 57:21
59:20 61:6 68:4,6
104:2,7,13
**contribute** 83:10
83:13,14 134:11
**contributed** 171:5
**contribution** 83:16
85:16 87:7,13,16
88:3 117:21
**contributions** 50:2
86:25 87:3,4
100:24 117:20
118:12,19
**Control** 190:12
**controller** 11:20
12:2,3
**conversations**
15:19 28:6,10
83:3 88:25
**converted** 120:2
**convince** 110:23
**copied** 69:14
**copies** 188:6,6
**Copilevitz** 125:3
197:22
**copy** 130:15,15,25
130:25 132:7
191:2
**corporate** 62:17
**correct** 12:10 15:16
15:17 16:11 17:11
18:2 20:17,21
21:14,22 23:7
28:3 29:12,21
32:17,18 34:10
38:12 41:17,23
42:3 49:7,15

55:15,18 70:5
71:8,12,13,17
77:10,11 79:3,4
79:14 81:3,23
98:12 99:9 107:21
116:3 136:13
137:10,13 139:19
140:9,9 141:18,19
144:11,15 152:18
161:17 163:25
166:9 171:25
173:4 178:5 179:3
181:13 183:10
185:20 194:5,9
196:2 200:6,7,11
200:19 201:2
202:22 206:24
211:12,14
**correctly** 7:14 92:3
198:13
**cost** 54:15 58:11
84:11 85:8,9,11
85:12 89:17
150:13,22 175:15
175:17 176:16
185:19 187:13,23
197:11 205:15
**costs** 26:5,9 34:19
54:19 65:6,9
68:10 90:4 176:6
176:8,9,12,14
206:9 209:8
**councils** 76:22
**counsel** 172:13
**count** 187:16,19
193:10 194:21,22
195:15,18
**counted** 92:6
**countersued** 25:16
26:18
**countersuit** 27:11
**countries** 90:19
163:19,24 192:9
**COUNTY** 211:4
**couple** 7:17 151:15
179:4 185:6
**course** 47:25 65:17

70:19 86:15
179:11,18 181:19
**court** 1:2 27:9,9,13
**court-appointed**
6:7
**cover** 177:24
**coverage** 80:14
**covered** 58:11
**covers** 61:6
**co-venturers** 76:23
**cracks** 123:21
**created** 102:10,12
**credit** 59:22 62:17
67:15 130:4,5,8
**criteria** 86:9 143:5
**crowd** 12:20
**Curchack** 3:6 4:4
6:3,5 8:20 10:3
37:10 46:3 65:12
68:14 92:11 98:24
101:15 136:25
147:8 148:17
153:15 158:19
161:9 163:3 164:2
167:11,21 168:4
171:4 174:5 175:6
179:14 180:5,20
182:17 185:15
188:4 189:25
210:6
**current** 29:22 77:3
186:24
**currently** 33:18
53:17 67:7 119:12
**cut** 33:24 36:3
129:2

**D**

**daily** 129:17,20
130:2,10
**data** 54:2 78:14
**database** 48:19
51:17 52:10 53:9
53:15,16 54:18
129:13 130:24
131:20 158:13
164:20 170:16

179:25 183:18
**date** 40:9 45:11
81:17 139:5 213:5
**dated** 23:23 46:6
46:14 92:15
158:24 164:5
167:14 172:14
197:18 201:14
**day** 211:20 212:19
213:24
**days** 34:4
**day-to-day** 12:4
**DEBRA** 1:24 2:6
212:5,22
**Debtor** 1:7
**December** 23:24
40:24 45:5 109:13
164:17
**decide** 132:2
**decided** 12:18 35:7
103:18,19 123:8
123:12 131:17,24
**decides** 61:10
**decision** 52:17,21
52:23 75:10,12
133:6 209:2
**deductions** 155:24
**deducts** 144:2
**deemed** 134:20
**defer** 18:11 45:7
187:2
**deferrals** 18:22
**deferred** 19:9
**deferring** 20:10
**define** 158:3
**defined** 192:14
**definitely** 108:19
**degree** 10:8
**delineated** 60:11
**deliverance** 177:6
**delivery** 199:11,19
**DeLois** 23:23 29:16
34:13 41:12,14
57:13 162:3
167:13 169:21
170:4 181:25
**demonstrating**

88:14
**dental** 80:8,17
**department** 11:2,3
11:6 13:24,25
14:2 48:18 51:16
**depending** 184:23
**depends** 40:8
135:15 182:3
193:9
**deposit** 128:25
129:5,7,16,18
130:2,10,14,16
131:2 165:10
166:2
**deposited** 130:13
165:6,18 166:2,13
**deposition** 211:10
213:2
**deposits** 129:20
**depreciation**
178:14 180:9,12
**describe** 78:7,10
**described** 69:2
**description** 4:7 5:3
135:24
**desks,any** 180:17
**detail** 41:3 78:12
130:21
**detailed** 47:15
141:25
**details** 75:6
**detect** 163:12
**determination**
137:3,4 181:15
189:7
**determinations**
136:12
**determine** 51:18
86:17 126:23
146:22 148:23
159:25 179:8
187:20 209:20
**determined** 104:24
**determining**
100:23 145:25
153:19
**develop** 30:11,12

30:13 42:7 44:21
**developed** 42:10
**developing** 42:5
**device** 130:5
186:20 191:13
**devote** 181:21
**difference** 12:17
83:11,14 84:12
85:15 205:3
**differences** 100:13
202:24
**different** 18:5
43:23 49:24 61:15
114:8 155:15
164:23 176:3
189:13 190:21
193:17,25 200:3
202:21 203:16
208:11
**differently** 126:22
143:16
**direct** 30:21,22
32:5,8,10,24 53:5
53:18 54:4 66:4
66:15,20 77:7
93:25 94:18 96:11
96:25 102:24
123:9,25 124:2
128:15 129:9,10
132:22 134:5,10
134:11,15 142:20
143:4,9,18 145:18
147:2 149:7,9,10
149:17 150:7,10
150:13,14 152:6
153:6 154:21
155:2,9,18 162:7
163:7 176:8,16
182:11,14,20
183:16 186:2,17
187:18 190:10
191:5 194:7 201:3
206:3
**directed** 34:21
163:21
**directly** 51:9 66:6
69:14 87:4 122:5

124:8,11 125:13
129:13 176:9
**director** 10:25 11:7
**Directors** 79:20
**disability** 80:9,18
80:19
**disagree** 24:16
**disagreed** 24:14
**disclosure** 93:6
**discuss** 17:14 88:17
88:20 89:16 91:2
**discussed** 17:20
65:24 91:8 108:12
111:14,19,20
**discussion** 8:21
62:24 167:19
**discussions** 63:5,7
82:23 101:3 112:3
197:10
**dissolutionment**
104:3
**dissolved** 104:6
**distinction** 83:24
174:21
**DISTRICT** 1:3
**divide** 182:19
**divided** 185:25
**DMI** 53:13,15,20
53:24 54:8,15,21
154:6,11 155:3
170:21
**DMP** 52:24 53:2
128:16 129:17
130:7,13 131:18
131:23 132:5
155:4 165:10
**doctor** 158:8
**document** 4:9 9:9
9:11 37:12 46:5
46:10,14 47:8,24
48:15 56:3 78:18
92:21 167:16,25
189:13 190:25
205:9
**documentation**
86:11 88:9 109:17
115:6 185:2

**documented** 88:14
**documenting** 46:25
**documents** 9:7
69:2,17,20 70:7
206:6
**doing** 12:18 16:17
16:18 30:20 48:13
67:18 82:8 122:3
123:12 124:5
128:15 129:6
133:11 150:10
162:12 165:14
171:2 172:3
195:11
**dollar** 88:15
**dollars** 87:12
173:19 192:24
193:2
**donate** 50:5,7
124:8
**donated** 74:19
119:24
**donation** 9:13,20
50:3,25 52:8 86:4
86:5 122:4,9
123:3,4 129:15
133:21,25 134:16
134:17 140:10
154:10 166:21
170:10 200:22
202:12 203:7,17
204:15 207:14
**donations** 4:11
9:12 16:5,18,24
17:7 31:3 32:2
42:17 46:6,11
47:9 48:10,11,17
49:3,23 53:18
82:24 86:14 88:21
110:12 119:25
121:24 124:2
128:22 129:17
130:11 131:16,18
132:6,21 133:8,16
133:24 137:16
139:11 140:24
152:20 164:22

165:11 166:6
168:9 174:12,18
177:15 202:3,16
205:14
**donor** 51:18 130:3
130:20 134:5
139:14 147:4,10
167:7 170:22
196:11 202:18
205:7,8,13,18
207:11
**donors** 53:19 73:6
110:12 160:22
186:24 201:25
206:22
**double-check**
167:2
**double-checked**
173:25
**download** 164:16
168:8,20
**downloaded** 170:8
**draft** 5:16 201:9
**drafted** 93:8
101:10 198:17
**drafts** 70:4
**dragging** 107:4,8
**Drive** 8:13,14
**driving** 159:8
**dropped** 26:12
28:20
**due** 115:17
**duly** 212:9
**dump** 170:4
**d/b/a's** 122:19
124:23,24 125:5
129:21 130:7
144:7 203:11

---
**E**
---

**E** 3:2,2 4:2,6 5:2
150:7 153:7 213:3
**earlier** 7:24,24
174:9 199:24
207:3
**earning** 18:16
**easier** 190:23

**Eastman** 164:4
**eat** 192:4
**educate** 186:13
**educating** 192:19
**education** 10:6,14
12:9 186:13,19,24
190:17 191:8
199:9
**educational** 183:7
**effect** 36:6 136:3
**eight** 13:11
**Eisner** 113:5
**either** 42:2 51:14
66:16 71:14 72:8
91:21 111:3,5
134:25 160:2
187:21 208:16
**elements** 200:4
**Ellis** 94:14,24 95:3
99:18 178:8,9,10
182:13 185:25
187:15 188:21
190:8 192:22
194:10 196:22,23
209:22 210:2
**email** 4:8 5:5,7,9,15
23:16,21 24:2
33:12 66:16 88:5
109:21 158:21,22
158:23 164:4,10
167:12,22 169:20
197:16 198:3,24
**emails** 25:12 27:24
28:7,10 104:9
111:21 167:17
**Employee** 4:13
56:4
**employees** 18:18
56:15 57:4,6,9
80:7 81:9
**employment** 10:17
20:24 25:5 27:18
56:18 57:20 58:12
58:16 61:5 81:5
81:15 82:11
**enable** 196:11,16
**encompasses** 177:4

**ended** 4:15,16,18
4:19 10:24 68:22
68:23 184:13
**ends** 157:2
**engagement** 111:22
113:11
**entailed** 16:17
**entails** 177:4
**entertainment**
60:23
**entire** 26:20 91:23
92:9 152:11
**entirely** 201:2
**entity** 53:21 76:24
**entries** 168:16
**entry** 73:2 103:13
168:14,23
**envelope** 51:10
196:8 206:14
**equation** 199:10
**equipment** 127:7
127:12,16 147:24
175:3 180:17,18
207:4 209:5
**Ernst** 20:2
**ERRATA** 213:2
**ESQ** 3:6,8,9,15
**establishing** 124:23
**estimate** 86:19
**Estimated** 80:3
**estimates** 100:23
et 79:20
**evaluate** 52:3
**eventually** 13:2
14:8
**everybody** 35:21
39:20 56:14 80:17
81:12 114:7
181:18 210:8
**everybody's** 39:12
182:22
**evolved** 134:16
**exact** 81:17 188:2
**exactly** 15:3,12
18:24 36:18 52:23
86:9 87:8 97:20
111:21 114:6,25

127:14 128:2
131:21 146:7
162:22 175:25
187:13 193:20
198:19
**exam** 192:3
**EXAMINATION**
6:2
**Examiner** 2:3 3:4
6:8 7:6
**example** 40:6 42:19
57:10 62:2 84:2
120:16 144:18
149:12 156:23
182:8 207:25
**exchange** 31:15
**excuse** 52:19
151:24 155:6
191:23
**executed** 81:16
**exercise** 140:20
147:15,25 179:22
**exhibit** 4:8,9,11,12
4:14,16,17,19,20
4:22,24 5:4,5,7,9
5:11,12,13,15,16
23:17,19,21 37:11
37:15 46:4,9
55:25 56:3 68:15
68:21,25 69:5,7,9
69:11 92:12,15,20
96:22 97:3,24
98:21,22,23,24
99:23 101:18,19
102:25 103:5
106:3,5,7,8,18
108:21,22 112:8
138:4,6,6 158:18
158:21 164:3,9
167:12 168:3
172:16 176:19
180:6 188:5,16
189:24 190:2
194:4,6,24 197:14
197:16 201:7,8
**Exhibits** 4:7 5:3
**expand** 123:8

**expect** 8:5 9:5
**expecting** 108:25
**expense** 43:4 54:12
59:17 61:14,18,19
62:3,19 65:10
77:20,22 78:4
83:17 91:8,10
92:7,9 94:17
108:13 120:19
121:2 140:23
143:6,10,11
144:13 150:25
151:3 152:2 155:3
155:9,15,18 157:3
159:9,9,24 173:7
173:11 175:18
176:8 177:17,23
178:19 180:13
182:14,19 187:11
188:3 207:8
**expenses** 14:3
59:15,20,22 61:20
62:17,23 63:2
65:19 67:8,12,16
68:5 77:15,23
78:10 89:22 90:11
93:21,22,24 94:2
107:25 108:10,13
120:13,21,22,25
121:6 140:11,13
143:19 145:6
147:17 150:19
151:2,5,18 152:6
152:10 154:22,23
155:4,19,20 156:2
159:23 160:13,15
160:17,20,24
161:16 175:19
176:24 177:2,6,14
177:24 178:22
181:6,10 182:20
184:12 185:12
200:13 201:23
202:2,19 206:4
**expense-by-expe...**
176:23
**expensive** 54:11

75:2
**experience** 12:7
43:11
**expertise** 208:13
**explain** 16:13
19:11 20:11 31:18
54:11 58:3 61:8
64:14 79:8 83:23
114:12 126:14
149:11,17 161:21
164:21 190:4
191:20 199:18
202:23,24 203:2
**explained** 66:2
78:16 83:7 114:9
142:6 143:8
**explaining** 91:19
**explore** 65:15
**exposure** 102:10,13
**extended** 39:17
**extension** 115:16
**extent** 81:12
175:14
**extremely** 201:23
**eye** 127:16 192:3,3
**eyewear** 192:5
**e-mailed** 111:2

**F**

**F** 80:2
**facilities** 11:9
**fact** 6:13 64:10
107:7 139:4
**factored** 35:17
**factors** 153:18
**fairly** 8:5
**fall** 123:20
**falls** 143:4
**familiar** 24:4 82:16
186:2
**family** 57:25 61:6
80:15,24 192:3
**fast** 115:21
**February** 25:4,6
27:17 92:15
109:21 112:2
197:18

**federal** 27:9 63:13
**fee** 77:9 79:14
**feel** 8:19 23:14 38:8
193:17
**feeling** 8:16
**fees** 91:2 92:4
119:8 120:14
121:5 200:15,16
**fellow** 94:13
**felt** 25:22 107:8
133:16
**fiduciary** 208:9
**field** 115:23
**fieldwork** 118:9
**figure** 78:24 88:15
170:23 181:20
182:23
**file** 124:14,21
**filed** 70:12,15
116:16
**filings** 16:21
**fill** 85:10 187:24
**filled** 62:19 69:23
69:25
**filling** 42:22 61:19
**final** 11:7 46:20
137:3
**finally** 113:10
115:5
**finance** 12:16
13:19,25
**finances** 207:9,19
**financial** 7:4 11:8
16:20 29:24 30:11
48:22 64:2 68:20
73:19 91:4 92:25
97:22 98:5 99:4
103:2 107:20
108:3 112:5
116:25 153:17
155:13 156:15,17
200:2,14 205:21
208:8
**financials** 96:14
102:17 106:17
113:24 115:18
116:18 122:2

155:20 156:7
160:20
**find** 73:16 102:19
102:22 112:25
114:22 170:9
171:2
**fine** 20:12 44:16
109:20 157:23
**finish** 7:18
**finished** 47:3 59:3
107:5 115:23
117:3 118:9
**finishes** 189:10
**firm** 7:5 18:8 20:4
20:5 113:2 197:24
**firms** 82:3 94:21
113:4
**first** 10:18 12:13
13:4,16 15:6
17:16 19:24 20:3
39:22 44:17 45:6
46:19,23 50:6
53:11 55:9,19
57:3 62:8 68:21
71:6,6,20 79:24
89:3,6 92:14 95:8
96:2,3 105:3,16
106:13 109:14
122:6,21 124:6
128:14 131:10
138:9 139:6,7
149:25 150:9
154:18 159:6
164:19 171:11,14
188:13,17 190:24
191:4,11,12 198:3
198:25 201:10
203:9
**fiscal** 4:14,16,17,19
18:22,23 19:17
35:13 36:7 38:11
39:16 41:2 49:9
51:25 52:3 68:17
68:22,23 69:3
72:2,4,11 76:16
77:10 97:22 98:5
99:7,21,22 102:14

106:13,25 108:24
110:13 137:7
139:2 143:11
151:10 184:13
**fit** 53:13
**five** 14:10
**five-page** 46:5
**five-year** 112:21
**fixed** 180:11,14
**flow** 185:14
**focusing** 147:18
**follow** 57:12 62:14
145:17 189:6
**followed** 56:23,25
57:5 100:25
**footnote** 73:20
102:16,17 103:8,9
103:11 105:2,16
105:17 106:8,9,11
107:2
**footnotes** 107:11
116:24
**forgot** 27:4
**form** 62:12 68:19
69:23,25 70:4
71:25 72:15 77:8
78:13,22,25
116:15,16 176:19
201:13
**formal** 12:9
**format** 113:16
**formation** 27:25
**forms** 18:18 68:16
68:18 76:15
**forth** 199:25 212:9
**forward** 33:20
123:12 138:11
150:4
**foundational** 39:9
158:2
**founding** 201:24
202:18
**four** 113:4,7 123:2
171:9
**fourth** 113:6
**frame** 111:25
115:13

**free** 38:8 202:12,17
████████
**frequently** 127:10
127:13
**front** 117:2 206:6
**Fuchs** 1:10 2:2 4:7
5:3 6:1,4 7:1 8:1
8:12,23 9:1 10:1
11:1 12:1 13:1
14:1 15:1 16:1,11
16:15 17:1,10,15
18:1 19:1,17 20:1
20:17,21 21:1
22:1 23:1,17,19
23:21,23 24:1
25:1 26:1,19 27:1
27:21 28:1,3,9
29:1 30:1 31:1
32:1 33:1 34:1,13
34:17,24 35:1,5
35:12,20 36:1,16
36:22,25 37:1,5
37:12,15 38:1
39:1 40:1,4,7,14
41:1 42:1,13 43:1
43:2,13,16 44:1
45:1 46:1,4,9 47:1
47:13,18 48:1
49:1,7,15 50:1
51:1 52:1,5,15
53:1 54:1,16 55:1
55:18,25 56:1,3
57:1,22 58:1,8
59:1 60:1,12,19
61:1,7,10 62:1
63:1,4,8,10,15,18
63:21 64:1,5,10
64:16 65:1,23
66:1 67:1,7,14,19
68:1,2,15 69:1,5,7
69:9,11 70:1 71:1
72:1 73:1 74:1,14
74:24 75:1,19,23
76:1,5,11,14 77:1
78:1,5 79:1 80:1
81:1,10 82:1,12

82:15,19,22 83:1
84:1 85:1 86:1,8
86:18 87:1,6,23
88:1,4,11,16 89:1
90:1 91:1 92:1,20
93:1 94:1 95:1
96:1,22,23 97:1
98:1 99:1,2 100:1
101:1,18 102:1
103:1,25 104:1,6
104:25 105:1,14
105:24 106:1
107:1 108:1 109:1
110:1,24 111:1,8
111:15,18 112:1
112:13,20 113:1
113:17,23 114:1,5
114:18 115:1
116:1 117:1,18
118:1 119:1 120:1
121:1 122:1 123:1
123:25 124:1,25
125:1 126:1,4,25
127:1,13 128:1,11
129:1 130:1 131:1
132:1,13,25 133:1
133:3,5 134:1
135:1,10,20,23
136:1,6,13 137:1
137:9,13,17 138:1
138:2,4 139:1
140:1 141:1 142:1
142:12,18 143:1,2
143:21,24 144:1
144:11,20 145:1,7
145:13,22 146:1,7
146:13,24 147:1
147:10 148:1,8
149:1 150:1 151:1
152:1,17 153:1,4
154:1 155:1 156:1
156:12,24 157:1,7
157:13 158:1,4,18
158:23 159:1
160:1,18 161:1,8
161:24 162:1,17
163:1 164:1,9

165:1 166:1 167:1
168:1,3,20 169:1
170:1,2 171:1
172:1,16 173:1,9
173:18 174:1,8,23
175:1 176:1 177:1
178:1 179:1,6,17
180:1,11,16 181:1
181:13,17 182:1
182:10 183:1,9,15
183:23 184:1,8,17
184:22 185:1,5,11
186:1 187:1 188:1
188:16 189:1,8,20
189:24 190:1
191:1 192:1 193:1
193:14 194:1,13
194:16 195:1
196:1 197:1,14,17
198:1 199:1 200:1
200:10 201:1,7
202:1 203:1 204:1
205:1,17 206:1,11
206:23 207:1,6
208:1,12,24 209:1
209:11,18 210:1
211:7,18 213:6,22
**full** 9:17 54:13
85:12 169:10
**fully** 28:17
**function** 17:9,11,14
86:16 146:12
**functional** 77:15
89:16 93:21,22
94:17 108:9 155:7
155:12,19 159:24
160:19 176:22
207:8
**fund** 46:21 76:21
76:22,25 77:2
78:20,22,23 79:3
79:11 84:24 89:24
97:2,8,16,19
98:12 119:18,18
119:22 145:20
146:22 147:16
154:11 155:16

158:5 160:3,7
166:17 176:25
177:19 181:23
182:24 183:22
187:22
**funded** 83:22 84:7
85:9
**funding** 43:20
124:4
**funds** 31:25 33:5
45:24 52:25 117:5
119:10,12 121:21
141:2,14,16 142:9
142:11,12,15,17
143:17 144:5,7,10
144:17 145:4,5
148:2,3,5,7,11
151:7 152:15
153:20 155:25
156:4,5,8,10,13
156:16,22,25,25
157:5,8,12,18
158:14 161:15
171:5 172:5,24
173:7 178:4,16,18
179:12,14,17
196:16 200:6,17
200:19 203:19
207:14 208:10
209:3
**fund-raising**
202:19
**funny** 13:4
**further** 58:4
117:14 212:13
**future** 42:15
**FY** 4:24 33:25,25
35:23 36:25,25
38:24 40:17,17
41:2 48:24 49:17
49:19,21 51:23
59:3 67:15 87:7
96:23 97:10 98:3
98:13,15 101:22
105:17 109:2
116:5,10,12 117:4
118:20 121:7,7,9

121:12 131:14,15
132:21 136:6,7
138:17,25 141:10
152:5,5 164:14
165:9 166:10
172:11 173:12,13
173:21 200:25
201:18 204:7

**G**

**G** 78:19
**Gaming** 78:20
**Gary** 94:13,23 95:3
99:18 178:9,10
182:13 185:25
187:15 188:20
189:6 190:8 191:4
209:21 210:2
**general** 54:24 70:8
73:15 89:24
122:20 123:7
125:22 126:10
129:23 131:7,8
151:6 154:15,18
155:16 157:19
160:3,7 164:15,17
168:8 170:5,8,17
176:25 181:22
184:3,9,15,21
186:14 187:22
204:22,24
**gentleman** 14:16
**gentlemen** 93:4
**getting** 16:19,24
31:2 35:19 75:4
90:22 123:17
124:4 136:22
**gift** 135:3 137:4
164:25 165:3
166:6,23
**gifts** 88:18 143:23
147:19 165:5
**give** 31:14,20,23
39:13 42:15 45:10
47:11 56:21 72:13
83:25 84:13,14
105:8 107:18

115:22 149:14
193:15,19,22
196:11 205:9
208:4
**given** 20:25 21:2,3
21:5 35:24,25
39:15,19,20 87:4
115:13 117:12
118:7,8 140:14
151:7,8,9 164:15
173:20 178:7
193:5 211:13
212:11
**giving** 43:19 49:12
167:8
**GL** 135:24 168:21
**glean** 162:18
**go** 8:2 13:3 18:22
33:11,20 35:7
36:19 41:3 52:18
58:4 61:10 72:2
72:21 73:15 75:5
79:18 93:18 96:13
96:15 97:2,4 98:4
98:20 106:5,16,20
107:15 110:22
112:14 114:6
118:25 122:3,13
124:10 125:12,18
125:20 126:19
128:17 129:10,12
130:14 131:24
135:16,18 139:2
141:4,6 149:23
159:5 160:23
166:25 168:25
174:3 182:22
183:2 188:20,23
191:10 194:24
200:22 202:3,14
205:14 206:9
207:14 208:2
**goes** 17:12 77:24
78:8 196:7 202:16
205:11
**going** 8:5 9:15
23:16 33:5 34:3

37:10 44:10 46:3
65:12 67:21 68:14
73:23 83:4 100:10
103:15 106:2
107:13 108:21
109:22 110:3
118:13 123:11
132:14 149:20
150:5 164:2
170:18 171:20
187:18 202:25
204:19
**GoldinAssociates**
3:20 7:5
**good** 6:4 14:5 37:5
37:6 157:13
**gotten** 35:9,10 39:3
39:24 111:22
152:20
**government** 124:15
124:22
**graduate** 10:11
**graduated** 10:21
**grant** 31:23 43:21
55:10 83:25 84:2
107:17,23 162:5,6
**granting** 43:17
**grants** 31:14,17,21
43:4 107:23 127:4
127:15 140:14
151:7,10 171:24
173:20 177:16
178:19 184:25
185:2,13 209:4
**great** 36:22 37:3
**Greenwood** 23:23
41:13,14 42:2
57:13 167:13
**Greg** 125:2 178:8
197:17,19,21
198:16,24
**grew** 43:20
**group** 14:4 16:22
46:19 54:10 76:25
77:2 78:23 87:9
128:11 154:20
158:8 177:9 184:2

184:24
**groups** 87:21
155:15
**group's** 87:15
**grow** 14:11,12
**growing** 111:12
**grown** 110:7
**guess** 29:2 43:13
73:12 148:12
187:3,4 193:11
**guessing** 72:6
**guidance** 49:11,16
175:22
**guy** 95:3 111:23
**guys** 110:20

**H**

**H** 3:6 4:6 5:2 6:1
7:1 8:1 9:1 10:1
11:1 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1 30:1 31:1
32:1 33:1 34:1
35:1 36:1 37:1
38:1 39:1 40:1
41:1 42:1 43:1
44:1 45:1 46:1
47:1 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1
62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1 88:1
89:1 90:1 91:1
92:1 93:1 94:1

95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
104:1 105:1 106:1
107:1 108:1 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1 117:1 118:1
119:1 120:1 121:1
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1
131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1 142:1
143:1 144:1 145:1
146:1 147:1 148:1
149:1 150:1 151:1
152:1 153:1 154:1
155:1 156:1 157:1
158:1 159:1 160:1
161:1 162:1 163:1
164:1 165:1 166:1
167:1 168:1 169:1
170:1 171:1 172:1
173:1 174:1 175:1
176:1 177:1 178:1
179:1 180:1 181:1
182:1 183:1 184:1
185:1 186:1 187:1
188:1 189:1 190:1
191:1 192:1 193:1
194:1 195:1 196:1
197:1 198:1 199:1
200:1 201:1 202:1
203:1 204:1 205:1
206:1 207:1 208:1
209:1 210:1
**Hagerstown**
128:18
**half** 34:4 98:9 99:5
143:9 178:2
**Hana** 1:10 2:2
23:22 158:23
169:24 197:17
205:7 211:7,18

213:6,22
hand 212:19
handle 18:4
handling 18:5
44:18 185:13
happen 24:24
106:2
happened 109:9
112:24 114:15
136:2 137:5
198:18,19
happy 117:13
120:23
hard 36:23 37:7
haste 165:25
hat 208:8
hats 14:4
head 91:18
headquarters
128:23 131:16
health 80:8,14
183:5 192:4
204:23,24
healthy 192:4
heard 6:24
heart 33:10 122:23
123:5,18 140:17
heavy 195:4
heed 192:2
held 8:21 167:19
help 7:13 14:12
26:4,4,8 28:7
30:12,13,15 31:10
31:24 32:6,7,14
32:21 33:5 90:18
90:22 102:11,15
104:8 105:7
107:18 108:2,15
108:19 167:5
184:2
helpful 147:7
hereunto 212:18
hesitate 7:25
High 10:9
higher 39:18 40:2
highlight 194:8
highlighted 169:16

highlights 190:19
hire 25:23
hired 14:14 20:5
40:11,14 145:15
history 10:18
hit 166:3
HMS 31:4 92:5
Hold 134:23 135:8
hole 33:9 122:22
123:17 140:17
honestly 21:12
166:18
Hoodie 190:12
hopefully 119:6
hoping 28:18
hospital 61:11 84:2
84:8,15 127:21
158:10 175:4
hospitals 43:18,22
83:10,12 84:11,21
85:7 127:7 140:15
158:6,7 161:25
171:24 173:20
207:24 209:5
hotel 57:23 58:21
63:20 64:3 65:21
hotels 58:6 60:25
hours 185:7
house 30:22
HR 13:25 30:12
HSBC 124:19
HSBC's 129:4
hundred 173:19
192:24 193:2
203:22 204:9,13
hydrocephalus
33:8 122:22
140:18

I
idea 85:18
identification
23:18 37:14 46:8
55:24 69:4,6,8,10
92:19 96:21
101:17 138:3
158:17 164:8

168:2 172:15
188:15 189:23
197:13 201:6
identified 76:25
158:21
identify 138:8
203:11
IDMI 53:22 54:7
54:15,20
impact 73:7,10,22
74:16 143:22
important 152:13
208:21
improving 194:12
inappropriate
157:11,14,17
include 16:10 60:2
78:15 139:21,23
149:3 155:3 161:5
162:8 186:20
204:18
included 39:18
60:6 61:13 77:22
80:13 137:19
140:11 150:18
152:21 155:7
160:12,14 185:17
185:23 186:5
190:14 206:13,22
includes 80:6,16
155:18,20 182:12
including 63:19
69:3 163:5,6
167:14 183:4,21
200:4,21 202:3
income 126:2,4,10
incorrect 208:16
209:23
increase 35:24 36:2
36:15,21,21
increased 42:17
110:13
increases 35:9,11
35:15,17,19 36:5
increasing 172:7,9
172:24
incurred 61:20

107:25
Index 119:17,18
indicate 33:4
127:20
individually 58:5
informal 7:9
information 5:14
20:19 71:3 76:7
78:6,8,19 84:10
86:22 90:23 95:14
103:23 104:8
112:23 113:19,21
117:2 123:19,23
128:10 129:19
130:9,18,22,23
131:4 145:8 147:4
148:24 150:12
162:8,14,15 163:5
163:7,9 167:5
169:9 183:5,24
184:3 185:17,22
186:5,7 187:21
188:19,23,25
189:3,15 190:7,17
191:24 192:15
194:15,23 195:2,5
195:21,24 196:12
196:17 197:4
198:15 199:4
201:5 204:18,23
204:24 205:6,15
206:10,21,24
207:20
informational
123:15 124:3
192:10
initial 54:22 58:22
70:3,9 110:8
122:24
initially 44:9 45:14
85:19 89:2 96:11
115:22 131:12
197:7
input 43:5 129:11
129:11 154:20
insert 191:25 195:2
195:25 196:4,13

201:5 207:15
inserts 183:4,5,21
instructed 65:20
insurance 80:9,9
80:21 81:2,11,13
intended 163:22
intent 167:8
intentions 205:24
interest 75:3
interested 113:20
114:23,24 115:2,4
115:4,5 198:6,23
212:16
internal 10:25 11:4
68:18
international 11:8
interpret 78:2
interpreted 105:4
interrupt 68:8
interview 1:10 2:2
6:12 7:10,22 8:24
9:8
introduced 6:25
invest 75:10 119:10
investment 73:24
74:3,8,13,14,22
75:4,14,18 76:3,3
76:7,10
investments 119:21
119:23
involved 42:4 47:7
involvement 70:20
in-kind 82:24 83:5
83:6,8,15,16,20
84:6,20 85:4,15
86:3,4,6,14,25
87:2,6,12,15
100:24 117:19
118:11 120:9
177:16
IRS 16:21
issue 66:11 109:13
115:15 117:17
118:2 120:9,12,18
issues 112:4 116:19
116:23 117:16
119:7 120:6

163:12,18 169:23
192:20
**item** 60:20,21,22
77:25 78:9,15
93:23 97:4 159:7
**items** 60:24 90:5
177:18 178:12

**J**

**J** 71:2
**Janet** 170:15 182:7
183:2,6,20 186:21
187:2,10,24
196:24 200:24
201:3
**Janet's** 182:9
**January** 40:24
44:23 52:16,18,19
132:20,25 136:11
**Jason** 3:8 6:6,7,25
7:11
**jlilien@loeb.com**
3:8
**job** 1:25 10:18 11:7
12:8 15:11 18:17
22:18 53:25 83:19
94:14,16 213:6
**Johnson** 109:25
110:2
**joined** 12:19 14:21
19:24 20:3 30:4
41:21 44:8,17,19
55:19 64:22 81:19
**joint** 52:21 175:15
175:17 176:12,14
197:11 198:7,16
**jointly** 176:7,10
**journal** 168:14,16
168:23
**judgment** 103:24
**July** 5:10 34:2
131:25 167:24
**June** 40:15,17 46:7
46:14 47:3 68:22
68:24 99:3 100:25
106:17 109:3
138:15 184:13

**junior** 57:5,9
**justified** 36:20
**J.J** 66:25 67:7
111:3,6 198:4,21
198:21

**K**

**Karen** 23:22 29:16
34:13 41:18,19
62:20
**keep** 18:13,14
53:17 73:23
103:20 108:23
130:17,24
**keeping** 14:2 30:19
123:19 185:11
**Ken** 75:20,22,25
76:2 119:19
**kept** 19:22 79:12
119:17
**key** 129:12 130:8
199:11
**Kimberly** 109:25
**kind** 8:17 10:15
12:19,19 14:3
17:2 18:11 30:21
90:25 100:2 110:9
114:20 123:20
127:17 148:16
166:21 175:21,21
183:15 185:22
205:20 208:5
**knew** 109:16
**know** 6:7 8:8 15:4
21:12 23:2,13,14
27:2,7 32:11
36:14 38:18 43:19
44:12 45:24 50:17
54:12 67:5,9 73:7
73:20 75:16 81:4
82:13,15,20 90:24
97:20 102:23
103:23 107:5
111:18 121:9
122:11 127:14
129:20 137:20
148:12 149:2

150:18 154:9
157:2,21 162:21
163:13 179:11,21
180:2 181:4 184:4
186:4,9,21 187:13
189:18,21 192:11
192:23 193:2,4,5
193:24 194:3,18
196:6,14 202:7,11
205:18,19 207:17
207:19,21 208:2,4
208:5,6
**knowing** 103:13
159:13
**knowledge** 21:23
22:3 45:8 48:16
49:2 59:10 189:5
196:10
**known** 159:14
**KP** 209:19
**KPMG** 4:22 47:20
49:21 58:24 59:8
65:11,16 69:22
70:2,3 77:21
78:11 81:24 82:6
82:11,14,24 83:7
83:19 88:18,22
89:4,7,15,17 91:4
92:2,3,16,24 93:4
93:5,9 100:3
101:3,11 103:19
103:22 104:24
105:4,13,14,25
108:11 109:5,24
110:23 111:6
112:3 116:11,13
117:7,12 120:6
136:14 138:22
143:8 150:11
159:3 208:15
**KPMGRX** 150:8
**Kravitz** 125:2

**L**

**labeled** 5:9 37:25
46:5 70:25 71:2
167:22 168:10

**Ladies** 93:3
**laid** 47:8
**Lam** 125:2 197:17
197:19,21 198:16
198:24
**Langham** 58:20
**language** 162:21
200:21 204:13
**lawsuit** 26:11 28:20
**lawyer** 25:23,25
107:6 197:21
**lawyers** 52:22
124:25
**layoff** 12:19
**Lazarus** 23:22
41:18 42:2
**learn** 23:9
**learned** 12:8 23:12
**leave** 12:14 13:6
15:2 20:22 22:12
**led** 170:10
**ledger** 19:14,23
54:24 55:14,17
70:8 73:15 122:20
123:7 125:22
126:10 129:23
131:7,8 136:5
154:15,18 164:15
164:17 168:8
170:9,17
**LEDYARD** 3:12
**left** 6:6 12:23 13:8
13:8,9 14:22 20:7
22:13,14,23,25
23:5,11,15 24:9
25:3,6 116:12
151:4 152:24
174:10
**legal** 55:12 91:2,24
92:4 107:25 119:8
120:14 121:5,15
121:17 125:6
133:15,18,20,23
141:9 200:13,15
**Leggett** 158:23,25
**Len** 9:4 167:4
**lenses** 189:16

**LEONARDO** 3:15
**letter** 4:20,22 5:11
50:10 51:3 88:5
92:15,24 93:7
100:3,9,13 101:5
101:10 111:23
113:11 132:7,12
172:12,17,20
173:3 196:3,6,7
201:13,14 206:7
206:16
**letters** 134:3
**let's** 9:16,25 10:17
12:11 33:19 55:8
71:25 72:2,10
76:15 79:17 84:15
98:20 100:21
101:15 106:16
108:22 112:2
121:20 122:13
139:2 198:18
202:5 203:6,6
**liability** 104:15,16
104:18,21 105:9
105:12,20,22
107:12,13,20
**life** 80:9,20 81:11
81:13
██████████

**Lilien** 3:8 6:6 16:9
16:12 17:6,12
19:15,20 20:15,18
26:17 27:16,23
28:5 34:11,15,21
35:3,10,16 36:14
36:20,24 37:3
39:25 40:5 42:11
42:21 43:10,14
47:11,16 49:4,8
51:24 52:11 54:14
55:16 57:18 58:3
60:10,16 61:4,8
62:22 63:6,9,11
63:17,19,24 64:8
64:13 65:14 67:2
67:11,17,21 74:7
74:10,20 75:16,22

76:2,8,13 78:2
81:7 82:10,13,16
82:20 85:25 86:13
86:24 87:14,20,24
88:8,13 103:22
104:5,17 105:11
105:19 110:21
111:5,10,16 112:9
112:19 113:14,21
114:12 123:22
124:20 126:12,21
127:10 128:9
132:11,24 133:2,4
135:8,17,22 136:2
136:10,21 137:2
137:11,14,24
142:10,16,23
143:13,22 144:4
145:2,9,19,24
146:10,19 147:14
152:12 153:2,12
156:11,21 157:4
157:10,25 158:16
161:6,18 162:13
167:4 168:18
169:19 173:5,16
174:20 179:4,7
180:7,14 181:9,14
182:7 183:2,13,19
184:6,10,19 185:3
185:8 189:4,17
193:12 194:10,14
200:8 205:7 206:5
206:18,25 208:7
208:20,25 209:15
**limit** 151:17,17,21
**line** 37:22 60:8,20
60:21,22,24,25
71:4 72:16,22,24
76:20,24 77:16,20
77:22,24 78:9,15
79:24 80:13 93:23
97:4 104:17,23
149:21 150:5
151:20 168:22,23
169:20 178:12
180:13 182:2,6,14

182:23 184:11
187:16 194:22
195:14,15 213:7
**lines** 80:12 166:4,5
168:23 178:23
187:19
**linkage** 48:14
**linked** 48:17,24
**linking** 48:10 50:2
**lip** 140:18,21,22
**list** 115:3 189:8
**lists** 77:6
**literally** 56:23
**literature** 85:22
**litigation** 92:5,9
**little** 9:4 12:21
15:23 22:11 23:10
31:18 43:14 58:4
74:5 96:24 119:4
122:12 149:10,19
165:9 195:22
209:12
**live** 8:12,13 64:21
**lived** 64:11
**lives** 58:9
**living** 65:3,4
**LLC** 3:20
**LLP** 3:4,12
**loan** 45:13,18,22,25
73:5,10,22 76:10
**loans** 73:7,9 74:15
74:16
**Loeb** 2:3,4 3:4,4
**log** 129:18 130:10
130:20
**logs** 130:2
**long** 8:6 13:9 14:21
20:6 31:16 33:11
36:11 107:8 116:8
167:15 193:3
**long-term** 80:19
**look** 9:7 33:11
35:15 37:17,18
38:7,8,18 40:10
40:20 45:9 52:19
71:25 72:22 75:5
76:19 77:16 96:13

99:23 100:21
102:18 106:3,8
107:15 136:11
142:2 145:10
146:5,8,20 149:18
151:4,19 152:23
159:8 162:10,11
165:8 172:11
177:20 185:24
188:25 193:20
194:25 198:2
**looked** 9:9 20:4
49:17 65:19 99:6
113:3 146:10,15
146:24 207:16
**looking** 34:18 40:5
40:13 52:2 96:17
98:19 102:21
114:10 133:23
146:21 162:22
184:11 188:17
**looks** 92:24 100:15
101:21 106:9
168:7 201:12
**lot** 121:9 134:10,15
146:25 149:11
162:3,7 181:7
**low** 201:24
**lower** 40:2,4

**M**

**M** 4:2
**machine** 166:2
**machinery** 129:5
**mail** 30:21,22 32:5
32:8,10,25 51:12
51:18 53:5,8,18
54:5 77:5,7 93:25
94:18 96:12,25
123:9,25 124:2
128:15,16,25
129:9,10 132:22
134:5,10,11,15
142:20 143:4,9,19
145:18 147:2
149:7,10,10,17
150:7,11,14,15,22

152:7 153:6
154:21 155:2,9,18
162:7 163:7 176:8
176:16 182:12,14
182:20 183:16
186:3,17 187:19
190:10 191:5
194:7 201:3 206:3
206:13
**mailbox** 207:21
**mailed** 53:6
**mailing** 135:2
145:6 188:18,19
190:9 191:2 195:3
196:16,25 203:9
203:14
**mailings** 5:12
32:17,20 33:3,7
122:24,25 146:2
148:5 183:6,22
185:18 188:7
197:3 203:8,21
206:10,22
**maintain** 25:9
51:20 192:4
**maintains** 54:24
**major** 33:12 73:6
116:22
**majority** 53:5
128:16
**making** 39:8 40:21
75:7 90:2 189:6
**mammogram**
208:2
**manage** 60:17
**management** 53:15
89:23 92:25 93:2
93:6 104:21
105:22 107:8
116:24 119:5
155:16 160:2,7
176:25 177:8
181:22 184:9,14
184:21 187:22
**management's**
106:24
**manager** 76:3

83:19 89:7 142:6
150:11 159:3
**manual** 56:11
**map** 207:23
**March** 164:5
167:14
**mark** 37:11 40:19
46:4 68:15 92:12
92:14 101:15
112:7 138:6
158:20 164:3
167:12 180:6
188:5 197:16
**marked** 23:18,20
37:14 46:8 55:24
56:2 69:4,6,8,10
72:12 92:19 96:21
101:17 138:3
158:17 164:8
168:2 172:15
188:15 189:23
191:3 194:5
197:13 201:6
**marker** 190:21
**market** 94:8,22
95:5,16,18,21
96:8,10 98:8
99:13,16 119:13
130:16 194:19
210:2
**marketing** 16:22
30:23 46:19 48:18
51:16 54:6,9,10
77:3,5 78:23
93:24 94:2,8,21
94:23,25 95:5
99:16 130:22
145:14 146:14
154:20 186:6
198:11 205:22
**marketing's** 48:5
**marking** 23:17
**markings** 48:21
**marriage** 212:15
**Maryland** 53:7
128:19
**Massachusetts**

64:11
**massive** 132:16
**match** 170:15
**matching** 88:17
132:22
**material** 147:12
162:19 186:24
**materials** 114:14
114:15,17 145:11
146:6,11 149:4
196:12 209:10,14
209:17
**math** 10:8
**matter** 212:17
**mean** 24:4 34:7
38:6 42:12 44:15
51:24 57:9 64:15
67:13 84:8 90:15
99:21 101:5
139:10 142:11,23
143:13 145:16
146:15 150:8
151:17 154:22
155:11 159:18
160:11 168:11,19
172:10 175:16
184:2 195:24
201:2 202:24
204:13 205:17
206:12 207:7,17
208:12 209:16
**meaning** 54:3
79:12 147:8
182:18
**means** 89:20 90:12
126:14 199:21
205:10 206:21
**meant** 147:22
**medical** 52:9 85:2
140:15 158:6,12
179:25
**medication** 8:17
**meet** 41:12,18
**meeting** 17:18
28:24 60:25 64:17
64:18 66:13 110:8
184:4

**meetings** 60:23
66:9
**member** 66:17,22
66:24 197:10
198:5,23
**members** 28:13
**memory** 9:10
**mentioned** 17:24
20:15 27:18 49:5
49:8 61:4 67:23
85:17 120:9,11
147:20 174:12
185:16 207:3
**merging** 21:7
**met** 7:2 15:6 41:14
41:19,25
**MICHAEL** 3:19
**microscope** 127:20
166:5,7,16,20,23
167:7,9
**microscopes**
166:18 167:6
**middle** 55:20 155:5
201:21
**Mike** 6:25 7:4,13
**MILBURN** 3:12
**million** 87:12 88:15
98:10,11 99:5
142:22 143:9
151:9,14,20,23
152:4,6,7 153:8
153:10 177:23,25
177:25 178:3
**mind** 75:20 96:16
112:8 174:20
178:3
**minus** 141:17
**minute** 11:23 98:18
**minutes** 153:13
**missing** 190:22
**mission** 90:16,18
147:5 163:13,15
177:7
**mistake** 165:24
**mistakes** 165:12
**Mitchell** 20:5
**mitigate** 26:5

**mm-hmm** 6:20
99:12
**model** 43:25
**moment** 86:10
147:18 160:10
162:22 181:9
183:3 208:9
**Monday** 2:5
**money** 31:19 34:18
43:17,21 50:5,7
50:11,11 51:19
61:23 73:13 75:3
75:6,7,8,11 79:15
97:7 103:16
119:13 125:12,15
125:18 126:12,18
126:24 127:3
128:22 129:21
134:12 139:22,24
140:2 142:7,14
143:17 147:2
149:15 157:15
161:4 166:19
167:8 171:20
177:12 185:14
192:18 196:11
206:8 208:4
**monies** 73:14 74:15
140:14 143:25
160:21,23
**monitoring** 128:6
**month** 31:12 185:6
**monthly** 54:18,18
**months** 13:12 22:8
39:23,24 107:6
**mortgages** 72:23
**mouth** 49:13
**move** 9:25 68:11
**moved** 11:2,20
14:18 64:24 120:2
165:2,3
**moving** 108:23
**Mullaney** 15:5
21:24 22:13 23:10
23:22 24:19,20,21
25:10 26:8 41:25
45:6,12,18 56:16

56:17 57:10,11
58:8,18 62:14
63:3,12 64:4,21
65:4 67:16 68:9
70:17 71:18,23
72:3 75:13 79:25
80:12
**Mullaney's** 59:19
60:4 62:16,23
65:21 66:11,18
81:15
**multiple** 167:6
**M&G** 159:9,9

**N**

N 3:2 4:2,2
**name** 6:5 9:17 24:6
38:15 44:12,14
75:20 109:23
124:9,15 127:18
130:19 190:12
**names** 37:19 75:17
**nature** 7:10 146:3
**necessary** 90:6
**need** 8:2 64:13,14
64:15,20 69:12
74:5,21 77:6
90:24 128:7
139:12 142:13
149:3 169:23
192:2 197:8
**needed** 14:12 17:3
17:3 61:25 64:11
164:22 170:9,15
170:23
**needs** 149:13
163:23 192:11
**negative** 79:7
**net** 42:24 138:10,13
138:14,17 139:10
151:16,20 153:21
154:8,24 176:12
**netting** 153:21
**never** 28:17 50:15
84:17 96:15 112:8
113:20 114:24
136:19

**nevertheless** 200:5
**new** 1:3,12,12 2:4,4
2:9 3:5,5,14,14
8:15 35:13 57:24
57:24 58:6,19
59:4 64:12 65:4
66:12,19 68:16
204:3 211:3,4,22
212:6 213:3,3
**newest** 198:5,22
**nice** 12:20
**NNE** 95:11,12,16
95:18,20,25 96:24
99:15
**NNN** 95:10
**nodding** 6:19
**non-profits** 94:19
**non-program**
201:25
**normally** 36:16
37:7 47:18 62:7
107:4 112:21
125:16 128:23
**Notary** 2:8 211:22
212:5 213:25
**notation** 50:21
140:8
**note** 135:24 136:3,4
**NOTED** 210:9
**notes** 72:23 73:18
119:5,5
**noting** 100:12
**November** 27:17
45:5 109:11
201:14
**number** 5:5 38:16
72:12 76:19 77:13
80:4 84:9 92:17
93:18 97:25
110:11 117:7
130:5,21 137:22
158:22 167:13
169:4,11 172:8
173:11,15 174:24
175:25 181:3
182:15 188:9,14
201:11,15 202:6

numbered 70:25
numbers 37:13
40:2 42:8,9,13,23
43:7,8,12 44:25
70:10 116:4,11
118:7,8,10,16,23
160:9 167:17
169:24 170:6
173:2,6 188:11
numerous 25:21
nutshell 90:25

**O**

O 4:2
oath 6:13 211:9
obtain 59:23 79:10
obviously 146:16
occasionally 17:16
127:5
occupancy 178:14
181:2
occur 127:11
October 25:2,3,7
45:4
offer 24:22
offered 24:8 29:10
29:17 107:16
offhand 148:21
office 30:19 51:9,11
53:6 61:24 62:2
64:17 66:22 77:23
78:4,10 86:11
94:9 128:18
130:12 156:2
178:14 180:16
officer 29:24 208:8
officers 79:19 80:7
offices 2:3
oh 26:19 33:21 34:9
73:7 95:11 98:13
108:11 117:18
151:3 172:19
195:20
okay 6:21 7:15,16
8:16,19 9:19,24
10:4,23 11:11
18:12 20:13 22:9

27:15 32:23 41:5
44:9 45:3 65:8
72:20 79:16 80:14
96:5 98:15,16
99:2 106:19
109:12 120:15,24
121:22 122:14
139:3,25 145:22
158:16 175:20
197:6 201:20
202:13 203:4
old 96:14
once 18:9 58:10
62:21 125:11
127:14 136:10
165:24 185:6
193:15
ones 100:14 113:18
114:11 146:17
193:16
one-page 201:12
open 128:24
opened 51:12
opening 116:10
117:4
Operation 21:7
operational 11:9
operative 84:22
opinion 12:17
21:25 64:5
opposed 12:8 74:22
123:14 124:12
130:20 134:17
149:14 174:17
187:8
options 39:5
order 87:25 146:21
ordered 61:24
organization 45:15
79:7,10,11 90:17
100:22 112:12
organizing 13:24
original 103:11
104:13 105:2,2
107:6
originally 105:15
114:23 125:4

173:13
OR's 127:8
outcome 212:16
outline 188:24
outlines 162:24
189:12
outside 19:25
overhead 157:5
201:23
overlapped 15:14
Overview 4:11
46:6
oximeters 128:5

**P**

P 3:2,2
package 5:13 12:21
28:19 73:18 190:6
190:13,16
packages 196:25
packets 190:7
page 4:3,7 5:3
33:12 37:17,18
40:12 46:22 70:24
71:2 72:2,14,21
73:17 76:19 77:13
78:17 79:18,22
93:11 96:15 97:21
98:4,6,19,20 99:6
100:6 101:24
102:24 103:6
106:5,20 149:23
149:25 159:6
169:14 173:3
176:20 191:11
198:3,25 201:20
201:21 202:15
213:7
pages 190:24 191:5
191:7
paid 18:10,16
25:25 31:9 77:19
79:2,6 104:22
105:23 107:14
178:3,15,23
192:22 193:14
200:5,16,18

paper 56:9,11
155:10 207:22
papers 60:14
117:12
paperwork 124:21
125:7
paragraph 33:13
93:18 100:21,22
102:2,3 159:6
201:21 202:6
parameters 42:16
Park 2:4 3:5
parking 58:13
part 18:17 23:8
34:2 35:7 36:4
46:20,24 48:9
51:9 53:25 54:12
57:6 59:20 60:8
72:14 77:14 79:19
90:11,24 91:20
99:10 110:5 114:2
115:17 116:7
128:20 131:24
157:24 163:15
168:7 170:25
177:22,22 184:22
191:18 192:21
197:24 199:9,10
204:20 205:5
206:3 207:6,7,9
208:3
particular 18:10
112:4 124:11
126:20 140:24
165:7 170:3,4,12
173:14 179:23
190:11,15 191:5
particularly 24:18
176:20
parties 26:13 72:24
212:14
partner 109:11,15
109:24 140:15
161:25
partners 82:17
86:21 112:18
117:21 185:14

partnership 31:15
passages 190:20
pause 12:25 24:3
74:9 199:3
pay 26:23,25 31:11
33:24 36:3 65:20
105:7 155:25
156:10,23 160:24
161:16 177:12
178:18 179:19
193:13 205:14
206:9 207:14
payable 12:5 72:23
73:9 107:23
paying 16:17 80:25
184:25 208:3
payment 20:10
45:17
payments 45:2,2
63:2,12
PayPal 31:2 130:6
payroll 12:4 14:3
16:18 17:24 18:4
18:8,11 19:13,23
22:22,25 23:2,3,5
30:12 41:3 44:5
44:18,20,21 45:10
pays 60:3 201:25
202:18
PDF 129:18
PDF's 190:9 197:3
people 12:6,22 14:6
14:10 35:8,18,24
35:25 36:6,23
37:6 50:5 54:10
55:12 57:8 74:18
75:17 90:4,21,23
119:24 123:13
124:8 129:11,11
130:16,23 167:14
181:3,4,24 186:8
186:16 192:2,8
205:22 208:2
209:25
people's 37:19
percent 33:24 34:6
34:9 36:17 37:25

38:3 39:14 42:18 54:17 159:11,12 159:20,20 160:13 161:20,22 181:7 182:2 200:21 202:2,12,16 203:22 204:9,13 204:15 205:11
**percentage** 36:12 36:15 90:4 187:16
**percentages** 99:18 141:20,21 180:25 187:25
**percentage-wise** 75:9 182:25
**perform** 43:22 140:15 183:6
**performance** 37:8
**performed** 117:23 118:17
**performing** 175:8
**period** 25:10 27:23 44:14 51:22 52:12 71:18,23
**permanently** 15:12
**person** 44:24 61:19 75:14,19 88:5 94:6,15 111:4 118:23 132:23 181:21 192:11 196:20
**personal** 64:4
**persons** 75:14
**perspective** 185:10
**phases** 46:18
**philosophy** 117:24 118:19
**phone** 66:16
**phrase** 7:13 199:19 206:20
**picked** 99:17
**pictures** 84:23
**piece** 46:21 49:2 51:18 97:17 129:9 131:4 132:22 134:5,10,11 142:19 147:11

149:17 150:15 162:9 163:7 185:24 186:6,17 186:25 187:10,12 187:14,16,19,20 187:23 188:2 189:11 190:10,11 191:6 192:11,25 193:18 194:8,15 205:22 206:13,24 207:22
**pieces** 47:14 53:5 53:18 77:5 94:18 123:15 124:2,3 128:17 134:15 145:18 147:3 149:2,8,11,16 150:14,22 162:7 162:14,16,19,20 162:23 176:17 186:3 187:11,20 193:16,20 194:2
**place** 35:7,22 44:20 129:14 170:14
**plan** 42:5,7,10 43:6
**planning** 34:2
**play** 52:24
**please** 6:16 7:18,25 10:6 50:10,11 77:16 78:18 84:16 99:24 102:20 112:7 136:25 161:10 167:11 180:5 190:5 191:16
**plus** 74:17 115:17
**point** 7:13,19,22 8:6,9 15:9 22:4 25:14 31:22,24 63:25 64:7 80:19 81:22 100:11 103:17 105:24 106:21 109:6 117:18 127:20 132:2 174:16 191:23 198:12
**pointing** 98:3

**points** 100:16,19
**policies** 30:25 56:20 59:9 81:11 120:16 148:10,14 148:18
**policy** 4:13 55:21 55:22 56:5,5,7,10 56:13,18,23,25 57:3,12 59:13 61:15,16,18 62:10 62:13,15 80:15,21 80:23 81:2 90:9
**pool** 76:10
**poor** 29:5 32:4,13 32:15,16,20 33:4 41:8 44:9 90:19
**poorest** 90:19
**Poor/WonderWo...** 30:10
**popped** 91:18
**portion** 19:9 45:7 69:20 155:25 160:24
**position** 13:16,21 21:8,13,16 22:8 22:20 24:22 29:15 30:24
**possibly** 8:17 111:2 165:23 172:19
**post** 53:6 84:22 128:17
**postage** 97:5,12 154:23 155:10 177:21 187:14
**post-closing** 137:6
**potential** 102:10
**practical** 137:14
**practice** 20:9,10 48:13 52:14 67:24 83:7 95:2 136:15
**practices** 15:20
**pre** 84:22
**prejudice** 26:13
**premium** 81:2
**preparation** 8:24 9:8 70:7,10,21 78:6,14

**prepare** 17:18 18:18 46:16 60:14 70:3 129:17
**prepared** 18:20 48:15 139:7,8,21
**prepares** 20:16
**preparing** 69:20,22
**PRESENT** 3:18
**presentation** 200:15 208:19 210:4
**presented** 34:25
**president** 11:19,19 13:19
**pressure** 128:4
**pretend** 203:6
**pretty** 26:19 175:9 181:6 182:21 184:8 185:6,13 195:4,20
**prevent** 163:11,16 163:20
**previous** 100:14 106:16 164:25
**previously** 99:7
**pre-BDO** 137:12
**primarily** 53:10 62:16 93:23 126:25
**principles** 154:4
**print** 187:14 194:25
**printing** 97:5,11,19 154:22 155:10 177:21 178:20 185:19
**printout** 169:10
**prior** 44:24 48:14 48:24 50:20 99:12 119:15,15 155:5
**Priya** 190:12
**probably** 7:11 11:5 13:11 14:23 15:8 17:15 22:5,7 24:25 35:21 46:25 52:16 56:12 57:16 64:25 72:5 74:25

95:24 98:8 99:15 106:11 123:11 127:16 157:24 184:18
**problem** 14:20 136:7 149:12
**procedure** 9:6 20:12 89:14 120:5 122:12
**procedures** 30:25 49:18 57:20,23 118:20 143:3 147:23 189:5
**process** 4:11 7:10 9:13,20 46:6,12 47:9,23 52:25 53:8,14 89:7,15 114:13 129:15 137:3 169:22 170:18 179:10
**processes** 47:24
**processing** 22:22 52:25
**production** 37:12 69:15 92:17 167:17 188:9,11 188:13 201:11,15 202:5
**Products** 10:20,24
**professional** 2:7 76:21 121:12 178:13
**professionals** 208:14
**professor** 75:24
**program** 32:10,25 87:10 90:17 91:14 91:15 92:6 96:25 98:10 99:6 118:14 121:5 128:11 140:11,13,23,24 142:18 143:11,15 143:18,20 144:10 144:13,14,25 147:17 148:24 150:19,25 151:2,3 151:4,5 152:5

155:15 156:14
157:16 159:11,12
159:20,20 160:12
160:14,17 161:2
161:20,22 163:6
175:2 176:24
177:3,5,13,14
181:12,16,25
182:24 183:25
184:2,24 185:12
185:20 186:8
187:8 200:13
204:4 207:2
**programmatic**
87:18 89:23 90:12
91:10 94:3 108:13
126:16 158:11,13
160:6 162:4,25
181:5 183:7,20,23
185:10
**programs** 10:15
90:12,14 91:21,25
92:10 97:18
121:15 126:17
142:3,15,21,25
143:6 150:15
151:8 153:5
157:23 158:3,5
160:2 163:22
171:21,23 174:14
174:22,23 177:7,9
177:24 181:22
182:3 183:7
184:23 186:11
199:13,21 200:4
202:4,13,17
203:24 204:2,16
204:17,22 205:10
205:11,12 206:4
206:21 207:4
209:8
**prompted** 34:15
36:21
**prospective** 205:8
**protective** 192:5
**protocols** 189:6
**proud** 201:22

**provide** 81:8
**provided** 28:7 43:7
81:5 194:19
**provides** 175:23
191:4
**providing** 31:13
153:16 163:22
192:8,12 204:18
**public** 2:8 58:22
145:7 162:8,14,15
163:9,17 177:8
183:4 186:13,15
186:19,23 187:21
188:19,22,24
189:3 190:17
191:8 192:14,19
194:14 198:15
199:9,12,20
204:18 205:5,15
206:23 211:22
212:5 213:25
**publication** 97:11
177:21
**publications**
178:20
**publishing** 97:4,5
**pull** 10:2
**Pulse** 128:4
**purchase** 127:15
166:6,20
**purchased** 127:7
127:11,21
**purchasing** 167:9
**purely** 160:21
**purpose** 147:21
163:5,6
**purposes** 146:4
148:3,6 153:17,21
179:13,16 200:14
209:4
**put** 9:14 17:4 19:7
20:19 49:12 56:9
56:11 62:3,15
102:15 103:15
106:10,12,14
117:2 121:5
126:21 130:4,9,18

131:8,19,19 136:3
143:16 147:3
149:6 154:12
165:13 184:22
196:24 207:22
208:7
**putting** 131:7
136:4
**PWC** 198:5
**p.m** 2:5 210:9

---

**Q**

**quality** 127:5 158:9
207:5 209:5
**Queens** 10:7
**question** 6:16 7:18
7:20 17:13 20:8
39:10 78:11 96:20
108:23 137:15
145:23 157:10,13
158:2 161:7,10
169:20 180:8
207:18
**questioned** 117:4
**questions** 6:11 7:8
7:12,14,15 20:9
59:9,12 66:8
136:14,23 175:12
179:5
**QuickBooks** 31:2
44:3,5 168:21
**quit** 192:5
**quite** 22:21 32:9
116:2,2 174:11
**Q/A** 175:3

---

**R**

**R** 3:2,8
**raise** 20:9 59:8,11
59:12 79:15 119:7
125:12 136:14
**raised** 32:2 116:20
116:23 120:6,7
148:7 206:9
**raiser** 79:3,11
166:17
**raisers** 76:22
**raising** 31:20 76:22

76:25 77:2 78:20
78:23 89:24 94:4
97:2,8,16,19
98:12 147:17
155:16 160:3,7
176:25 181:23
182:24 183:22
187:22
**ran** 54:19
**ratio** 182:19
**ratios** 178:7
**reached** 141:8
**read** 24:5 55:7,9
58:15 68:5 69:12
73:19 85:21,23
100:10 101:12
103:25 104:12,13
104:17 105:15
148:25 149:5
161:9,11 196:7
199:2,23 202:10
211:8
**reading** 129:4
183:24 194:22
**reads** 183:9
**real** 85:11
**really** 8:25 12:8,15
13:23 16:7 23:14
36:23 37:7 57:4
57:17 73:12 96:11
103:18 170:24
174:14 181:2
187:4 189:21
193:4 195:14
201:17
**Realtime** 2:6
**reason** 20:25 21:2,3
21:3,4,9 27:3
54:13 89:25
111:11,13 112:17
116:7 195:10
207:13
**reasonable** 93:20
100:23
**reasonably** 94:5
**reasons** 112:15
**rebates** 31:14,17

**recall** 14:25 23:25
28:5 39:11 46:15
52:17 56:8 62:24
63:4,6 64:24 65:7
66:20,21 80:11
81:14,17 82:23
83:2 85:18 86:24
88:8 93:16 94:12
95:15 100:12,17
100:18,19 101:8
102:3,5,9 109:10
113:10 121:4
128:2 131:21
159:13 184:16
197:12 198:12
199:15,16 201:16
**receipt** 129:9
**receipts** 61:21
**receive** 24:6 26:3,7
33:14 38:10,21
87:25 201:17
205:8
**received** 19:6 25:11
34:11 51:18 74:16
77:9 84:10 88:4
139:12 206:14
207:12
**receives** 60:13
**receiving** 23:25
88:9 186:16,17
**Recess** 92:13
153:14 174:7
**reclassified** 154:10
154:15
**recognize** 69:16
92:21 138:18
164:10 168:5
**recollection** 33:3,7
33:15 38:19 43:3
43:9 46:18 54:23
59:11 68:12 71:22
72:3 73:21 74:24
76:9,11 95:23
99:14 101:10
132:18 198:10
**recommended**
94:23 119:19

reconcile 129:25
reconciliation
    46:22 169:22
record 8:20,22 23:4
    23:20 49:2 86:13
    86:18 153:12
    161:11 166:22
    167:20 195:23
    211:12,13 212:11
recorded 17:7
    48:10 104:14,19
    105:16 107:12
    166:21
recording 89:11
    105:20
records 17:8 30:20
    38:9 45:10 52:9
    85:2 86:7,16,23
    134:8 158:12
    179:25
redescribe 68:25
reduced 33:23 36:6
    36:13
reduction 34:7,8
    35:4,6,13 39:19
    159:8
reductions 34:12
    34:16 35:18,19,22
redundant 21:8
REF 213:6
refer 180:10
reference 169:25
referred 29:6 47:24
referring 46:11
    47:4 57:8 58:7
    103:8 104:18
    105:13,19,21
    109:24 123:24
    125:25 145:20,21
    149:21 152:15
    171:24 180:15
    199:4
refers 138:14
reflect 19:5,8
reflected 19:4
    77:20 91:3 173:3
reflects 98:9

refresh 95:22
    132:17 198:9
refreshed 9:10
refreshes 73:21
regarding 62:22
    78:20 88:10 97:18
    102:18 112:4
    197:8 198:14
Registered 2:7
registrations
    197:23,25
regulations 206:2
reimburse 65:9
reimbursed 62:5
reimbursement
    61:15,18
reimbursements
    57:14 62:15
    120:17,19 121:2
relate 142:15
    163:22
related 64:6,9
    87:17 91:14
    151:10 175:7,9
    181:10 184:12
    192:7 212:14
Relatedly 63:24
    173:5
relates 154:7 176:2
relating 177:6
relation 30:15
relationship 205:4
release 89:12,14
    141:2 142:8,11
    143:10,15 144:17
    144:21 151:20,21
    151:22,25 152:8
    152:11,13,14
    156:16 174:2
    178:20
released 138:14
    146:4,23 151:16
    153:11
releasing 145:3
    147:25
relevance 169:8,14
relevant 136:24

    192:16
rely 134:7 189:20
    208:13 209:18,19
relying 93:17 94:5
remained 41:11
remaining 117:6
    141:16 144:3,17
    144:22 156:4,25
    177:17 179:21
remains 161:4
remember 7:23
    9:17 10:21 13:2
    13:10 26:22 27:2
    27:8,13 31:8,23
    32:9,12,22,24
    45:21 62:18 66:23
    71:22 72:6 87:8
    95:19 102:14
    108:19 109:23
    127:18 148:20
    166:18 175:25
remembered
    174:10
remove 142:13
    146:17
removed 138:24
removes 143:24
renewal 186:25
repaid 45:19
repeat 145:23
rephrase 7:21
    50:18 143:14
    203:18
replaced 15:4
reply 51:10 130:5
    186:20 191:12
report 5:10 16:23
    54:5 61:19 62:3
    62:20 86:5 99:10
    117:3 167:16,23
    168:6
Reportable 79:25
reported 1:23 87:2
    87:2
reporter 2:7 6:11
    6:21 37:11 46:4
    56:2 65:13 138:5

    158:20 164:3
    188:5 197:15
reporting 14:6
    63:14 146:4
    180:22
reports 16:20
    17:19 70:11,14
represent 6:5 39:10
    69:14 141:22
representation
    4:24 101:4,22
represented 74:13
represents 38:2,17
    73:4 80:5
reputation 82:6,7
requested 196:16
requests/call
    199:12
requests/calls
    199:19
required 16:21
    61:21
requirements 54:6
Rescue 50:6 53:11
    122:6,21 124:7
    129:7,8 131:9
    164:19 171:10,13
    188:10
resolution 198:14
    199:10,16
resolved 118:3,4
respect 16:14 21:17
    44:7 48:6 85:4
    120:17
responding 132:23
    134:6
response 203:7,20
responses 82:4
responsibilities
    11:25 13:21 17:25
    30:7,10,19 41:9
    41:10
responsible 69:19
    69:21 118:23
    121:23
rest 11:12 38:7
    194:6 195:3

    205:23
restrict 129:22
    132:10 135:6,9
    138:23 139:13
    157:20,21 204:14
restricted 9:12
    48:9 50:4,13,24
    51:4,14,20 52:6,9
    53:10 88:21 89:3
    89:8,11 116:11
    117:5 118:15,18
    121:20,24 122:7
    125:13,22,24
    126:6,13,19 127:3
    132:4 133:9,17,21
    134:13,20 135:3
    135:25 136:8,12
    136:18 137:5,15
    137:21,25 138:9
    138:13,17,24
    139:10 141:2,16
    142:8,11,13
    143:23,25 144:3,5
    144:6,8 145:4,5
    145:21,25 146:3
    146:22 147:19,21
    147:22 148:3,4,6
    152:4,15 153:20
    154:8,24 155:25
    156:3,5,10,13,13
    156:22,24,25
    157:4,8,8,12
    158:14 160:21,23
    161:3,5,15 166:23
    170:6 171:2,7,12
    171:18,22 172:5,7
    172:24 173:7
    174:13,19 176:12
    176:15 177:19
    178:4,16,18 179:8
    179:13,24 200:6
    200:16,19 203:23
    204:6 208:10
    209:3
restricted/unrest...
    116:3
restricting 157:15

157:18
**restriction** 89:13
138:25 142:14
145:3 146:18
153:24 204:5
**restrictions** 138:15
147:25 178:21
**result** 144:9 165:21
172:2
**retain** 94:20
**retained** 7:6 52:2
79:6 115:12
**retirement** 34:3
**retroactively**
136:16,16
**return** 59:4 70:24
72:8,10
**returns** 70:21
**revenue** 17:7 43:3
68:19 139:17
**Revenues** 42:24
**reversal** 103:12
**reversed** 103:13,21
104:20 106:22
107:9,13
**review** 19:18 70:11
112:21 114:3
116:5 118:6,16
132:16,19 133:15
133:19,20,22
136:10 159:22
162:6 172:6 197:5
197:8 201:18
**reviewed** 46:20
117:11 122:10
209:21,24
**reviewing** 133:25
161:25 184:25
**reviews** 11:9 37:8
127:6 158:9 162:5
162:24 175:3
209:6
**revisiting** 52:13
**Reznick** 113:17
**RFP's** 82:2
**right** 10:18 15:8
21:3,15 22:21

25:3 55:13,17
95:24 120:10
137:9 145:9
151:13,16 168:17
171:11 174:11
188:22 189:2,19
191:4 192:4
193:10
**Riverside** 8:13,14
**role** 16:9,13 52:24
53:7
**roles** 48:7
**Roll** 138:10
**rolled** 161:4
**rollover** 150:4
**room** 180:19
**roughly** 36:14
178:2 184:16
193:12
**RPR-CRR** 212:22
**rules** 7:17 145:16
198:7 209:7,12
**ruling** 109:13,14,16
**run** 17:5 44:25
126:17 177:10
188:11
**running** 42:13
169:7,12
**runs** 188:14
**RX** 150:17
**Ryan** 158:23,25
159:3

**S**

**S** 3:2 4:2,6 5:2
**salaries** 156:2
159:22 178:13
181:3,10,18
184:12 199:25
200:3
**salary** 19:6,9 25:20
26:20 37:21 38:20
38:24,25 39:6,7
39:12,15,18 40:16
40:25 45:7 159:9
159:10,19 160:12
160:13 182:2,9,22

184:7,10,15,20
**salmon** 166:4
**salmon-colored**
166:5
**sample** 133:10
**satisfied** 116:13
117:14
**save** 34:18
**savings** 54:14
**saw** 23:6 78:25
104:2
**saying** 6:20 49:10
104:10,23 109:21
134:24 149:14
155:22 156:21
174:17 190:16
191:15
**says** 37:21 38:6,13
38:15 56:4 71:6
71:10,11 72:22
79:6,24,25 100:22
105:21 131:5
135:3 138:9,10,12
138:16 140:11
141:15 142:2,4
150:7 151:16
159:6 168:21
169:21 171:19
173:21 189:13
191:11 198:4
202:16 205:9
**schedule** 71:2
76:21 78:19
138:11 149:20
176:22
**school** 10:9,12
**scratch** 93:17
**screens** 180:19
**se** 42:7
**second** 13:5 37:17
39:23 65:14 72:13
89:5 94:14,16
115:16 138:12
140:10 149:23
188:10 201:12
203:10
**secure** 129:4

**Secured** 72:23
**see** 9:22 30:13,15
31:10,24 32:6,7
32:14,21 33:6
37:22 39:13 42:14
51:12,13 59:21
71:3 72:9 77:18
96:17 97:6 98:7
99:2 100:18
102:11 104:9
105:7 107:18
108:2,15,20 114:7
123:13 132:9
133:8 134:2,3,4
144:18 146:8
149:24 150:2
170:10 172:20
181:3,10 185:25
198:18 202:7,9
206:11 210:7
**seeing** 199:15,16
201:16
**seeking** 124:23
**seen** 127:19 172:17
172:20 196:15,19
**See's** 102:15
**segregate** 125:14
**selected** 82:7
**send** 32:7 84:22
85:7 113:22
114:14 121:2
131:17 132:5,8
186:18,23 190:8
191:16 196:11,17
197:3 198:7
**sending** 32:16,20
123:19,23 131:22
185:12
**sends** 187:25 189:9
189:19
**senior** 117:10
**sense** 39:8 40:21
103:19,20
**sent** 33:3 51:19
82:2 93:4,5 94:10
104:9 109:17
113:2,18,23,25

114:7,13,15
116:13 120:22
130:10 132:6
134:3,18 170:4
190:9 194:2
**sentence** 105:21
107:2 195:13
198:4 199:2
202:10
**sentences** 195:12
**separate** 19:13,23
62:13 124:17,19
130:6 190:25
201:9
**separately** 31:5
55:8 60:10 157:9
**series** 6:10 175:11
**Service** 68:19
**services** 31:12
98:11 99:6 140:16
142:19 144:14
177:4,5,13,15,17
181:6,12,16 213:2
**Sesame** 11:16,22
**set** 30:24,25 123:12
123:16,21 124:5
124:16,17,18
125:3,5,8 129:3
179:24 212:9,19
**settlement** 26:14
**seven** 14:13
**severance** 12:20,21
24:8 28:14,19
29:7,9,17
**shared** 175:18
**sheet** 126:3,5,8
213:2
**show** 9:22 23:16
164:21 172:12
**showed** 78:13
**shows** 77:16 78:22
99:4 164:13
**side** 48:4,5,6 87:10
150:25 173:7
**sign** 70:14
**signature** 93:10,12
100:5

signed 70:16,17
93:13 101:13,24
113:11 211:19
similar 29:15 30:3
30:13 35:4 43:24
47:8 81:8 100:2
193:18 194:22
202:20
similarly 43:21
130:12 165:16
182:16
Simmons 3:9 6:24
9:25 103:4 106:6
simply 50:4
Sisters 191:17
sit 137:7
sitting 6:6
situation 114:9
six 13:11 14:10,13
22:7 39:23,23
41:6
size 14:12 112:12
skip 108:22
slash 36:25
slip 130:16
small 14:4 81:11
97:17,25 110:6
111:12 112:12
120:3
Smile 11:20 12:12
12:23 13:5,7,17
13:18,22 14:8,18
15:10,21 16:10
17:8 18:19 19:24
20:22 21:6,7,17
22:12 23:11 24:9
25:3,7,13 28:11
41:14,21,24 43:11
43:17 44:4 83:6,9
84:6,14 85:18
108:2,16,18 141:5
141:6,9
smoking 192:6
smoothly 17:5
solicit 192:17
solicitation 32:17
145:11 146:6

165:22 207:12
209:9,13
solicitations 5:16
201:9,10,19
soliciting 128:21
somebody 94:9,11
134:18
somewhat 7:9
soon 8:8 102:22
208:22
SOP 199:6
sorry 11:15 14:19
27:14,16 34:10
35:16,20 65:14
68:8 72:17 73:8
76:20 77:14 93:4
98:25 100:9
105:11 106:5
108:22 110:21
112:8 120:6
150:24 156:19
161:8 167:3
168:18 172:22
178:10 180:7
194:19
sort 53:8 136:15
157:5
sorted 128:19
sounded 14:5
sounds 24:4,5
160:8
source 31:25 74:12
141:3
SOUTHERN 1:3
speak 114:16
117:25 198:21
speaking 66:21
83:6 109:10
speaks 100:11
specific 7:15 15:24
43:15 45:11 66:7
74:11 131:4
139:18 157:15
169:15 209:16
specifically 31:21
50:9 51:2 125:20
137:21 180:2

spend 139:14
144:24 146:25
spending 74:22
142:14 148:2,4
153:3,4
spent 11:4 61:23
74:17 97:7 119:11
126:24 139:12,15
142:17 151:23
152:3,16,17,19
159:25 160:5
161:22 179:12,15
split 89:9 135:11
142:3 147:12
168:11,12,14,19
168:22 169:3
spoke 9:4 25:11
spoken 111:6
spouse 61:12 71:19
spouses 80:16
spreadsheet 5:7
41:4 42:20 150:16
164:6,13 172:21
187:25
spreadsheets 5:4
138:7
ss 211:4
staff 14:14 64:18
64:18 82:17
145:10 159:22
162:11
stamps 62:2,8,9
standard 175:23,24
stands 169:9
start 33:19 40:9
46:23 52:13 59:5
67:17 95:4 199:8
200:20 206:7
started 7:9 10:25
17:17 30:8,9
33:21 34:4 40:8
40:16 41:15,20
45:15 46:15,19,25
48:23 49:5 52:7
89:4 99:16 131:22
132:20,24 165:10
204:3

starter 40:16
starting 29:4 112:2
122:15
start-up 13:23
state 2:8 27:9,13
197:25 211:3,22
212:6
statement 77:15
97:22 99:4 126:2
126:5 156:17
200:2,14 202:15
statements 48:22
68:21 73:19 91:4
92:25 98:5 103:3
107:20 108:3
112:5 129:24
130:3 153:18
155:14 156:15
164:25 202:21
States 1:2 172:13
stating 93:19
stay 58:18 79:18
157:8
stayed 35:6,22
stays 57:24 58:20
Step 50:6 53:11
122:6,21 124:6
131:10 164:19
171:11,14 188:13
STEVENS 1:24 2:6
212:5,22
stock 119:18,21,24
120:3,3
stocks 74:18
stop 11:22
stopping 8:9
story 128:13
stragglers 155:23
strategists 75:15,18
strategize 77:4
Street 3:13 8:14
213:3
structure 180:23
suable 25:22
subscribed 211:19
213:23
subsequently 23:9

94:11
sue 25:17,19 27:5
sued 25:13,15
27:10
sufficiently 111:12
suggest 17:21
206:8
suggested 198:13
suggesting 165:17
suggestions 16:2
194:12
suit 27:12
Suite 213:3
summer 36:9,10
summertime 29:3
Sunday 23:23
Supplemental
78:19
supplied 70:9
supplies 61:24
178:14
supply 30:18 95:13
support 181:5
185:18 199:13,21
supposed 18:15
22:16 31:9,11,13
31:20 78:15 105:6
105:6,8 107:18
111:23 115:24
118:25
sure 6:18 11:14,24
15:12 18:24 23:8
24:6 25:11 27:3
28:9 44:11 48:5
49:14 52:23 67:10
73:14 92:7 95:21
96:13 102:20
108:19 110:25
111:3,9 112:16,16
113:6 114:6 116:9
145:24 155:21
165:7 166:11,15
167:10 170:2,21
179:6 183:10
187:4 190:6 201:3
208:24,25
surgeries 43:19,23

83:11,21 84:3,7
84:16,18 85:5
86:23 87:19 90:20
117:22 125:19
127:4,17 134:12
134:13,16,19
135:4,5,10,12,21
135:25 170:12
174:13,15,19,21
175:8 192:8,13
200:22 207:4,24
**surgery** 29:5 30:9
32:13,14,15,19
33:4 41:8 43:24
44:8 50:22 83:13
85:8,11,13,14
128:6 136:9
174:25 175:5,10
202:13,17
**surgical** 117:20
127:2 147:22
157:22 158:3,4
171:21,23 174:14
174:22 203:24
204:2,4,16,17,22
205:10,11 206:20
207:2,3
**surmising** 68:7
**surprised** 111:24
**survey** 85:7,10
86:21
**switch** 54:7
**switched** 94:21
95:15
**sworn** 212:9 213:23
**system** 20:20 30:11
44:20,22 60:16
64:2 89:11 154:7
**systems** 11:3 17:3
30:13

---

**T**

**T** 4:2,6 5:2
**table** 177:18,20
**tables** 180:18
**take** 8:7 12:11
24:11 29:14 40:10

47:19 55:8 61:12
71:19 72:4 73:8
75:2 91:22 154:12
174:5 181:6,17
182:7 188:25
199:13,20
**taken** 2:2 10:13
211:9
**takes** 122:8 193:3
**talk** 9:2 19:11
64:18 110:15
198:21
**talked** 27:24 28:25
82:5 83:18 149:24
150:6
**talking** 9:23 10:22
28:11 44:13 56:6
97:23 133:4
148:19 166:7
199:24
**talks** 33:13
**Target** 94:8,22
95:5,16,18,21
96:8,10 98:8
99:13,16 194:18
210:2
**tax** 45:2 59:4 63:14
**taxable** 63:3,3,13
**team** 95:5,16 96:8
133:23 194:19
**teams** 158:6
**Television** 11:17
12:12,14 14:17
**tell** 7:25 8:11 10:5
18:3 28:22 36:17
37:25 38:16 59:16
67:12 68:9 73:3
77:2 80:4 83:2
85:3,10 86:10
88:24 91:6 92:23
101:19 102:20
103:7 109:9 110:2
114:24 115:10
116:19 117:8
121:10 138:20
156:18 158:25
163:4 164:12

176:20 186:8,22
188:18,21 189:2
190:2 197:19
201:4 203:10
208:16
**telling** 6:14
**temporarily** 138:9
138:13,16 139:9
**tend** 128:6
**terminate** 104:10
**terminated** 20:24
22:8,18 29:19
**termination** 25:18
104:19
**terms** 9:5 16:23
17:6 24:14,16
28:17 63:13 104:2
104:4 108:7
162:13 180:22
209:16
**test** 117:15
**testimony** 211:9,12
212:8,11
**Thank** 79:16
121:19 169:17
210:7
**Thanks** 107:22
**theme** 190:13
**they'd** 62:7
**thing** 53:24 69:13
80:18 91:15,17,18
153:10 191:12
193:15
**things** 16:3 17:19
17:22 23:12 25:21
27:4 30:23 54:22
58:13 64:19 90:5
109:19 114:8
147:6 149:4 151:7
163:10 165:25
174:24 175:2,4,7
186:10 203:17
**think** 7:2 9:15,20
21:9,11 22:7
31:13 32:10 34:6
34:14 36:8 38:18
40:3,7 52:21 54:9

54:11,19 57:7,12
61:13 62:11 67:25
69:12 75:6 87:17
89:4 90:14 93:6
95:17,17 96:9
98:18 105:25
106:4,14 107:3,17
108:17 110:24
113:5,6,12,13
114:19 128:3,5
144:19 148:21
156:6,16 157:3,11
157:25 166:9
171:21 174:11
175:25 177:3
192:13 193:11,23
196:5,7 198:16
199:7 200:25
202:25 205:13
208:20,21 210:6
**thinking** 29:4
45:23 54:16,17
73:5 103:15
**third** 72:24 163:19
163:23 199:2
203:13
**thought** 22:2,19
28:22 72:12 95:20
95:20 102:13
195:15 203:25
**thousand** 173:19
**thread** 5:5,15
158:21 197:16
**three** 5:4,12,16
33:23 95:8 113:4
121:16 135:11
138:7 188:5,7
193:20 201:9
202:21 203:8,20
**ticket** 131:2
**tickets** 57:15
**tier** 113:4
**Tiffany** 40:5
181:25
**time** 7:11,11 8:6
12:18,21 13:22
15:6,13,18 18:11

21:6,21 22:10,17
22:18 27:6 29:20
29:25 32:8,14
34:2 35:5,7 36:4
36:11,18 47:2,25
48:14 51:7 52:7
52:11,12 55:11,19
65:11,16,18 67:21
68:10 69:13 71:23
74:8,25 81:22
87:25 90:4 93:13
103:17 106:13
109:6 111:25
114:21 115:13
118:9 129:14
131:24 139:20
141:23 142:5
145:2 153:23
159:25 160:6,25
161:23 162:10
179:21 181:21
184:17 187:5
193:24 198:22
210:9
**timed** 198:3
**times** 62:19 134:10
**timing** 23:7 132:18
**title** 14:5 29:22
75:25 76:6 150:17
**titles** 37:19
**Titus** 20:5
**today** 6:6,23 7:8
8:6,16 118:25
**told** 28:24 65:8
78:12 92:2,3,8
105:25 107:7
112:17
**tomorrow** 118:13
119:2 174:4
**top** 56:4 70:25 82:3
113:3 138:10,17
140:19 197:17
**total** 14:10 38:14
38:20 39:22 80:10
91:10 119:18,21
120:3 151:18
152:2,4,5,8 153:8

155:4 169:7
177:22
**totals** 129:25
182:24,24,25
**track** 14:2 18:13,14
53:17 137:18
185:11
**tracked** 137:16
154:7
**train** 11:21 12:13
12:23 13:5,7,17
13:18,22 14:8,18
15:10,21 16:10
17:8 18:19 19:25
20:23 21:7,17
22:12 23:11 24:9
25:3,7,13 28:12
41:15,22,25 43:11
43:17 44:4 57:24
58:13 83:6,9 84:6
84:14 85:18 108:2
108:16,18 141:5,7
141:9
**transaction** 5:10
167:16,23 168:6
**transactions**
169:15
**transcript** 211:8,11
212:10
**transition** 15:13
**TRANSPERFECT**
213:2
**transportation**
58:11 60:21 61:2
63:16
**travel** 4:13 55:21
55:22 56:5,17,19
56:22 57:3,5,17
57:19,23,25 58:2
59:9,13,18 60:9
60:18,20 61:7,16
61:22 63:15,22
64:3 65:21 66:12
66:18 71:7,11,18
71:23 178:15
**travelled** 57:13,14
**travelling** 161:24

**treat** 64:3 107:24
108:12 145:18
147:16 203:19
**treated** 60:18 63:12
108:4,8 144:5,7
149:13 171:7
**treating** 145:4
**treatment** 86:3
**tried** 110:17 112:25
**trip** 61:11
**trips** 72:4
**TRIVIGNO** 3:15
38:7 40:12 96:19
97:23 98:23 114:4
134:23 160:16
167:10
**trivigno@clm.com**
3:15
**true** 23:13 86:19
93:14 110:11,14
211:11,14 212:10
**truly** 170:11
**Trustee** 172:13
**Trustees** 79:20
**truth** 6:15
**try** 7:21 85:22
95:22 110:15,22
**trying** 28:12,13
34:17 42:23 57:12
109:19 114:18
156:6 170:5
186:12 193:23
**turn** 10:17 70:23
72:10,11 73:17
76:15 77:12 78:17
101:23 102:2
121:20 176:18
201:20 202:5
**turned** 29:18
**Turning** 97:21
**tweaks** 119:5
**twice** 165:24
**two** 11:18 34:4 39:5
48:12 58:10 62:19
64:25 95:8 106:10
106:12 107:6
116:23 153:13

168:15,23,24
173:23 190:24
191:5,6,17 193:21
199:7
**two-page** 23:21
56:3 167:24
**type** 43:24 44:2
78:8 162:2
**types** 43:23 176:6

___

**U**

**underdeveloped**
192:9
**underlying** 145:11
146:5
**underneath** 73:9
113:3
**understand** 6:14
7:20 44:15 49:14
85:22 92:7 137:2
155:21 164:24
199:22 204:12
205:12
**understandable**
148:15
**understanding**
22:16 30:14,17
57:19,22 74:4
77:24 79:9 81:6
86:2 89:19 95:25
111:10 112:10,14
117:10 146:20
147:21 206:19
**understood** 92:3
**unemployment**
27:22
**United** 1:2 172:13
**unrelated** 72:24
**unrestricted** 50:25
51:15,21 88:22
89:9,12 120:11
121:21,25 125:16
132:4,15 133:9,16
136:18 137:5
141:14 144:8
153:20 171:3,8
172:5 178:24

179:9,15
**unwritten** 56:19
**update** 53:9 191:16
**updated** 118:22
**updates** 118:6
**upload** 130:23
**up-to-date** 118:10
**Urist** 14:15,22
**use** 50:10,11 53:16
60:14 84:7 90:13
93:24 95:9 97:9
130:3 142:7 143:5
143:8 147:11
156:9,20 157:12
166:2 173:21,22
178:17,18 180:25
181:7 182:6,10,15
197:22,24 202:11
209:3,17
**uses** 126:23 127:2
148:22
**usual** 161:24
**usually** 51:11 57:15
58:20 106:10
162:25 168:22
180:25 193:14
206:15
**utilizing** 43:10
**U-R-I-S-T** 14:15

___

**V**

**vacation** 118:24
**validate** 88:2
**valued** 87:10,11
88:7
**Vanguard** 73:14
75:7 119:17
**variances** 193:21
**variations** 194:2
**various** 175:19
176:16
**ventures** 160:6
**Vera** 164:4,11,15
170:16 187:10,24
196:24
**versus** 18:16 39:6
39:16 94:3 181:5

**vice** 11:18,19 13:18
**video** 191:17
**view** 106:24
**vision** 189:16
**visit** 61:11
**volunteer** 24:19
**VP** 12:16

___

**W**

**wait** 7:18 96:19
98:18
**waiting** 174:3
**Wall** 3:13
**Walter** 3:6 6:5
136:21 180:7
**Walter's** 161:7
**Wang** 21:11
**Wang's** 21:13
**want** 7:23 8:7
11:12 18:10 49:9
49:12,13 65:15
72:11 73:12
122:10 125:18
131:5,6 135:3,16
140:5 147:2
157:20,21 175:11
175:13 187:4
190:4 202:7,11
205:12
**wanted** 26:22,24
39:13,13 42:14
49:20 59:21
104:10 115:15,18
116:6,9 117:14
118:10 124:9
130:3 134:2,3,4
135:18 139:14
174:8,16
**wanting** 133:7
**wasn't** 21:2 22:20
22:24,24 26:16
31:7 48:25 97:19
104:15 112:6
117:3 134:9,22
140:19,25 165:21
171:16 173:12
174:11 206:12

**watch** 191:17
**watched** 128:7
**water** 33:9 122:23
123:5,18
**way** 17:22 18:4
40:24 43:12 49:18
56:9 83:20 84:5
84:20 119:3 124:7
143:7 160:5 161:3
177:7,8 182:5
190:23 192:13
194:20 212:16
**ways** 31:2
**wcurchack@loe...**
3:7
**wear** 192:5
**wearing** 14:3
**web** 174:12
**website** 171:6,6,10
171:19,22 174:18
191:18
**websites** 186:10
**week** 34:4 58:10
118:24
**weeks** 58:10
**weight** 192:5
**weighting** 195:5
**went** 10:7 11:4,15
36:6 49:16 50:15
95:18 97:18
112:10,11,18
122:24,25 126:9
127:4,15 129:21
141:5 147:24
164:20 169:12
**weren't** 36:11
48:24 61:24 85:9
92:5 109:22
113:19 114:23
115:2,4 116:2,12
117:6,9,13,13
123:17 141:24,24
171:15
**we'll** 8:2,9 10:3
23:17 149:18
**wheel** 30:22
**WHEREOF**

212:18
**wife** 80:24
**withdrawn** 102:8
**witness** 4:3 212:8
212:12,18 213:6
**WON** 4:9 37:13
201:11,13,15
**wonder** 29:23
**WonderWork** 1:6
3:13 4:12,23 5:9
6:8 24:22 26:4
28:2 29:4 30:4,16
30:18 31:9 32:3
33:17 41:7 42:6
44:5,10,18,19
45:13,17 48:2,22
49:3,23,25 50:8,8
50:14,18,21 51:5
51:8,21 52:6,13
52:14 54:25 55:20
55:21,22 56:4,14
56:20,23 57:2
58:23 60:3,17
61:14 64:2,22
70:20 74:2 76:4
79:17 80:15,25
81:7 87:3,5 92:16
100:3 102:7,9
107:24 108:25
119:10 122:10,16
122:18,19,25
123:3 124:12,14
125:4,15,21 126:8
126:9,22 127:11
128:20,21,22
129:19 130:11,19
131:3,7,18 132:3
132:14 133:8
134:19 136:9,17
136:20 137:23
139:22,24 140:2,4
141:13 144:6
154:12 163:16
164:18 165:2,4,11
165:14 167:22
170:7,11 171:10
171:13,15,17

172:7 173:11,24
174:12,17 176:11
179:2,20 186:4,12
186:18,23 193:7
196:9,10,15,22
200:20 203:9,14
203:25 204:4
213:5
**WonderWorks**
112:4
**WonderWork's**
50:24 81:25
203:23
**WonderWork-re...**
51:6
**WonderWork/S...**
32:4
**WON-EX** 4:21
70:25 92:17 97:3
**word** 29:14 90:13
104:5 168:19
194:21 195:18
**words** 49:13 84:13
148:2 186:25
195:19
**work** 24:19 29:23
30:12 34:4,19
60:14 84:23 87:9
88:6,7,12 115:2
115:24 117:12
133:11 158:7
162:2 169:23
172:2 181:25
182:11,12 209:24
**worked** 10:20,23
12:22 32:10,25
89:5,6 115:6
161:19 172:21
184:24 185:9
**working** 16:22
26:21 27:20 28:12
28:23 32:6,15
34:2 36:4,23 37:6
41:7,15 46:24
49:5 55:11 59:5
82:18 114:20
183:25

**works** 47:22
146:18 177:9
183:17
**Workshop** 11:16
11:17,22 12:12,23
13:6 14:18
**world** 11:10 163:19
163:23 207:21
**wouldn't** 168:15
193:22 196:14
**write** 47:19 124:9
162:15
**writes** 162:6,17
**write-ups** 47:13,17
**writing** 42:9,12
47:20 62:10
**written** 62:12
162:20 163:2
199:22
**wrong** 95:19 98:19
165:6,13 166:3
170:13 176:2
**wrongful** 25:18
**wrote** 154:13
172:13 203:3
**WW** 199:14,21
**W-A-N-G** 21:14,15
**W-2** 18:18 19:4,5
**W-2's** 19:20,21
20:16

**X**

**X** 4:2,6 5:2 42:17

**Y**

**yeah** 25:2 145:7
208:5
**year** 4:15,16,18,19
14:23 18:23,23
19:2,10,16,17,22
35:14,14 36:7,22
36:24 37:2,4,5,6
38:22 39:3,6,16
39:21 40:19,22
41:2,19 51:25
52:3 65:17 68:22
68:23 69:3 70:24
72:2,4,11,25 73:3

76:16 77:10 86:15
86:17,20 97:22
98:6 99:7,12,21
99:22 102:14
106:16,25 108:24
110:13 121:8
133:2 137:7,16,18
139:2 143:11,12
144:23 150:9
153:22 159:21
160:5 179:9,11,18
179:23 180:4
181:19 184:13
187:6 193:6,13
**years** 10:22,24 11:5
11:18 14:13 15:15
26:20 33:23 41:7
42:14,18 65:2
68:17 70:19 95:8
95:8 106:11,13
**year's** 72:8
**year-end** 33:13
**York** 1:3,12,12 2:4
2:4,9 3:5,5,14,14
8:15 57:24,24
58:6,19 59:4
64:12 65:4 66:12
66:19 68:16 211:3
211:4,22 212:6
213:3,3
**Young** 20:2

**Z**

**zero** 152:24

**$**

**$1** 143:8
**$1,159,203** 73:2
**$10,000** 84:3,15
**$100** 85:12
**$130,000** 149:24
**$160,000** 37:21
**$166,000** 31:12
**$173,333.40** 38:15
**$2.634** 151:9
**$200,000** 184:16
**$227,500** 77:9
78:24 79:8

**$25** 85:13
**$3** 98:9 99:5
**$4** 177:25 178:2
**$40,000** 34:8
**$43,682** 80:4,5
**$450,000** 141:4,11
**$475,000** 80:2
**$50,000** 45:23
**$6** 177:23
**$6,000** 54:20
**$75** 85:15
**$8,000** 37:24 38:10
**$900,000** 172:8,25
**$99,000** 184:14

_____
**#**

**#19383** 213:6
**#903** 213:3

_____
**0**

**0** 77:17
**0019894** 167:18
**0019930** 5:8 164:7
**0106** 97:24
**0128** 72:14,21
**0164** 98:20 99:2
**0165** 97:3
**0170** 73:18 106:20
**01770** 4:10 37:13
**01782** 4:10 37:13
**0227** 98:13
**0228** 98:6,14
**0234** 106:5
**023602** 5:6 158:22
**0251** 77:13
**0293** 176:20
**0300** 102:24 103:7
**042021** 4:21 92:17
**042025** 4:21 92:18
**06087** 201:11
**06088** 201:20
**06092** 201:11
**06120** 201:15
202:14
**06122** 201:15
**06164** 201:13 202:6

_____
**1**

**1** 4:8 23:17,19,21
141:17
**1a** 71:4
**1.5** 142:22
**1:00** 2:5
**10** 4:22 15:15 42:18
72:14 84:4 96:22
99:23 106:3
108:21
**100** 182:2 200:21
202:2,12,16
204:15 205:11
**10005** 3:14
**10017** 213:3
**101** 4:24
**10154-1895** 3:5
**1090** 77:13
**1099** 22:23
**11** 1:5 4:24 26:20
101:18,19 108:22
210:8
**11e** 77:16
**113** 72:19
**12** 5:4 25:21 96:17
96:23 97:10 98:3
138:4,6
**12/15** 166:13
**12/18/11** 4:8
**12/22** 166:14
**12/28** 166:13
**13** 5:5 77:22 98:15
99:15,20 105:17
138:25 141:10
152:5,21 158:18
158:21
**130,000** 144:22
**138** 5:4
**14** 1:11 2:5 5:7 94:7
98:13 99:15,20
138:25 152:5
164:3,9 211:10
213:5
**15** 4:24 5:9 11:5
12:5 36:25 37:2
38:14,24 40:17
49:17,21 59:3
67:15 87:8 101:22

116:5,12 121:7,9
121:12 136:6
138:17,25 168:3
172:11 173:12,14
173:21
**15th** 115:16,25
**1506807** 142:4
**154** 97:8
**158** 5:5
**16** 5:11 35:23 41:2
48:24 49:9,19
51:23,25 52:3,4
52:18 67:15 109:2
109:3 116:11
117:4 118:20
121:7 132:21
136:8 158:24
172:16
**16-13607(MV)** 1:7
**160** 33:24 34:9
38:23,24 39:23
**163,000** 97:8
**164** 5:7
**168** 5:9
**17** 5:12 33:25 36:7
38:11 131:14,15
164:14 165:10
166:10 188:5,16
200:25 201:18
204:7
**172** 5:11
**173** 39:24
**173,000** 39:4
**1779** 40:12
**18** 5:13 23:24
189:24 190:2
**188** 5:12
**189** 5:13
**19** 5:15 197:14,16
**19383** 1:25
**197** 5:15
**1970** 10:8
**1999** 13:15

_____
**2**

**2** 3:13 4:9 37:12,15
40:17 76:24

141:18 197:18
201:14
**2,500** 54:21
**2.6** 151:14 152:6
**2.634** 150:20
**2/20/14** 4:20
**20** 5:16 34:9 92:15
93:18 164:5 201:7
213:24
**20,000** 15:8
**20/20/20** 50:6 53:12
122:7 131:9
154:13 164:19
165:2,3,18,22
171:11,14 188:8
188:17 191:16
192:18,20 207:12
**200** 39:22
**200,000** 33:22
**2000** 13:4 15:7
**201** 5:16
**2011** 20:7 23:24
25:2,4,6 45:5
**2012** 44:23 56:12
68:22 97:22 99:8
123:11
**2012-fiscal** 70:24
**2013** 68:24 72:11
98:22 99:3 106:24
139:2 159:11
**2014** 40:15,17
92:16 96:8 100:25
106:4,25 138:15
151:11 159:12
**2015** 38:6,20,22
39:3 40:25 72:2,4
76:16 103:2
158:24 176:18
184:12,13 197:18
**2015-June** 5:10
167:24
**2016** 5:10 50:20
55:20 59:6 69:3
108:24 131:25
166:14 167:24
201:14
**2017** 1:11 2:5 46:7

46:15 52:16,19
133:3,4 136:11
164:5 167:15
172:14 211:10,20
212:19 213:5
**212** 213:4
**216** 213:3
**227,000** 79:11
**23** 4:8 72:16,22
100:21,22
**23rd** 212:19
**237** 76:17
**239** 76:20
**248** 79:18
**25** 10:24 11:5 84:3
84:7,9,16,18 85:4
172:14
**27** 102:2 167:14
**274** 78:17
**277** 72:2
**29th** 164:17

_____
**3**

**3** 4:11 46:5,9 173:3
**3.1** 151:23 152:7
**3.9** 98:13
**3/20/17** 5:7
**30** 46:7,14 68:22,24
84:5 99:3 100:25
138:15 184:13
**30th** 47:3 106:17
109:3
**300** 144:18
**33** 135:14,14,14
**345** 2:4 3:5
**37** 4:9

_____
**4**

**4** 4:12 46:22 55:25
56:3 97:4
**4A** 76:21
**4.2** 152:4,11,11
153:10
**4.3** 98:11
**4.4** 177:25
**4/25/17** 5:11
**40** 33:24 34:6
159:11,20

_____

**40,000** 151:13
**400,000** 121:16
**400-8845** 213:4
**45th** 213:3
**46** 4:11
**47** 10:22

---
**5**

**5** 4:14 37:25 38:3
 39:14 42:14 68:15
 69:5 79:2 97:23
 97:24 98:22
**5.7** 151:20 152:2,9
 153:8
**50** 54:17 193:24,25
**5000** 151:5
**501(c)(3)** 125:4
**505,000** 144:21
**5100** 151:5
**55** 4:12
**562,000** 121:14

---
**6**

**6** 4:4,16 68:15,23
 69:7 97:3 98:23
 98:24 106:18
**6/30/12** 4:15
**6/30/13** 4:16
**6/30/14** 4:18
**6/30/15** 4:19
**6/30/17** 4:11
**6:38** 210:9
**60** 8:13
**60,000** 40:18
**6087** 206:7
**6088** 206:8
**636** 144:19
**636,000** 144:20
**69** 4:14,16,17,19

---
**7**

**7** 4:17 36:17 68:15
 69:9 73:20 79:19
 106:7,8
**78th** 8:14

---
**8**

**8** 4:19 68:15 69:11

 103:4,5,9 106:8
 176:19
**8:51** 198:4
**80** 159:12,20
 160:13 161:20,22
**87-2** 199:7

---
**9**

**9** 4:20 68:16 77:14
 92:15,20 106:5
**900,000** 172:24
**9021** 188:9
**9030** 188:9
**9061** 188:11
**9069** 188:12
**9070** 188:14
**9078** 188:14
**909** 116:15
**92** 4:20 70:25
**95,000** 34:5
**96** 4:22
**98** 148:21 176:2
 199:5
**98-2** 199:3,9
**990** 59:4 68:19
 70:17 72:15 77:14
 78:6,13 82:9
 111:24 115:15,25
 116:16
**990's** 70:4

# FUCHS
# EXHIBIT 1

**From:** Brian Mullaney [brian@surgery4thepoor.org]
**Sent:** Sunday, December 18, 2011 1:44 PM
**To:** Karen Lazarus; Hana Fuchs; DeLois Greenwood
**Subject:** good news bad news



EXHIBIT # 1
WIT: _Fuchs_
DATE: _8-14-17_
DEBRA STEVENS, RPR, CRR

Hi,

Good news is ▮▮▮▮▮▮▮ just agreed to let us use his $5 million as a matching grant. Thank God.

Bad news is ▮▮▮▮ has reduced his grant from $5 million to $1 million IF we can resolve my lawsuit and Hana's lawsuit with Wang. ( I am confident we can accommodate them.)

He did say that he will consider future funding which leads me to believe that if we can stay away from fighting with Wang and are successful, we will end up with the entire $5 million he originally agreed to give us. He has made it clear he doesn't want to be part of any lawsuits or controversy and he and his lawyers will be watching us closely over the next year.

Now is not the time to be in court with Wang for any of us. We all have legitimate claims against him and smile train but fighting with him now will only undermine our efforts with Surgery For The Poor and tarnish all of our reputations.

Over the past year, because of conflict and turmoil with Charles Wang, Surgery For The Poor has lost...

- $5,000,000 grant from ▮▮▮▮▮▮▮▮▮
- $5,000,000 grant from ▮▮▮▮▮▮
- $5,000,000 grant from ▮▮▮▮▮
- $4,000,000 from ▮▮▮▮▮▮ and his offer to join our board and possibly be Chairman.
- Any chance of ever receiving support from ▮▮▮
- Maybe $1 million from ▮▮▮▮▮▮, no word from them.

If we do not resolve these two lawsuits we will lose the $1 million grant ▮▮▮▮ has promised to give us immediately, as well as any chance of future support and of course, having ▮▮▮▮▮ involved with us.

Look how much we have lost - $19 million - because of Wang and that's BEFORE even going to court with him. A trial with Hana and or me would send all of our supporters running for the hills and all of our money would evaporate along with our reputations. Is any of this worth a lawsuit that at best will result in an award of a few hundred thousand dollars? Even a successful lawsuit will not lead to a 5 year payout as it is way too much, at most any of us would get 1 to 1.5 years of severance which is peanuts compared to what we will lose.

A lawsuit right now would be playing right into his hands – this is exactly what Wang wants, the chance to smear and slander us as we destroy ourselves. If he had any idea how much money he has cost us he would be thrilled. I know it is very frustrating to wait. And all of us would like to see wang go to jail. But we have to be smart about this and we have to put our own personal interests aside for the moment and consider our collective good. Like Franklin said during the revolutionary war, we must hang together or we will hang separately.

As you know, I have put my own interests on hold to build this new charity and so did all of you when you refused to sign the original severance deals 10 months ago. I had a handshake deal back in May and asked them to include all three of you. Back in february my lawyer said he could get me a lot of money if I agreed to support the merger instead of fighting it. The new deal they want me to sign is very bad compared to my current deal and I literally am forgoing more than half a million dollars that they promised me. I agreed to do that so that you three would get the severance deals you deserve. And even though my lawyer says I have a good chance if I appeal my lawsuit with Wang, I am folding my tent to appease ▮▮▮▮ and sending Wang $650,000 next week.

I am confident that we will all be able to settle with the regime that follows Wang whenever that is! One way or another, I do not envision him running smile train for another year. Smits has told me several times that Wang has said he doesn't want to run Smile Train.

If for some reason, Wang does continue to run Smile Train, any and all of us could sue him and Smile Train in six – 12 months

if we wish once Surgery For The Poor is more established and we have donors, start-up capital, and of course some success with blindness. Smits advised me to sue smile train in federal court which he says refers just about everything to mediation, he said I would win quickly and easily. We can sue him when we are in a position to weather the storm.

Right now, we have much more to lose than Wang does.

As a small token of appreciation for all of you not signing those wicked severance agreements and joining surgery for the poor I am going to give all of you a $15,000 year end bonus once we receive the ███████ grant in January to help you with your legal fees.

This money is NOT coming from donations or donors but from our services contract with Ueltschi.

Please let me know what you think.

Thanks,

Brian

Brian Mullaney
Co-Founder
Surgery For The Poor
420 Fifth Avenue, 27th Floor
New York, New York 10018
email brian@surgery4thepoor.org
tel 646-558-3768
cell 917-902-7550
www.surgery4thepoor.org



TIME magazine named Surgery For The Poor one of "10 Ideas That Can Change The World"

# FUCHS
# EXHIBIT 2

REDACTED

# FUCHS

# EXHIBIT 3

<u>**Donations Process Overview**</u>

*What follows is a summary prepared by WonderWork with counsel. In general, this summary describes WonderWork's current practices. As with any business, WonderWork has updated and improved upon its processes over time. We have flagged the most significant updates below.*

I.  **Fundraising Methods**
    a.  Direct Mail Appeals (Campaigns). Note that nearly all of WonderWork's donations are raised through direct mail.
        i.  Acquisition (to acquire new donors)
            1.  The last acquisition appeals under the "FirstStep" and "BurnRescue" "brands" were sent in December 2014.
            2.  The last acquisition appeals under the "20/20/20" brand were sent in May 2016.
            3.  WonderWork sends a small number of acquisition mailings to foundations under the "WonderWork" brand.
            4.  WonderWork selects lists of prospective donors to receive acquisition appeals based on WonderWork's list broker's recommendations.
        ii. Renewal
            1.  WonderWork sends renewal appeals to donors who have given to the brands of WonderWork, 20/20/20, BurnRescue and FirstStep.
            2.  WonderWork selects the list of donors to receive renewal appeals based on a variety of criteria.
    b.  Other Methods. A small number of donors make donations in connection with face-to-face meetings, awareness videos, speeches, media coverage and other similar channels.

II. **Donation Methods**
    a.  Mail
        i.  <u>WonderWork Donations</u>
            Most donors mail their donations directly to WonderWork's office. WonderWork batches and ships them to Direct Mail Processors (DMP), its caging company, once or twice a week for DMP to deposit checks, charge credit cards, and, within two days of deposit or charge, key donor information and donation amount into our donor database. WonderWork keeps a tracking sheet with the number of mail pieces in each shipment it sends to DMP. Donors send a small number of WonderWork donations to a P.O. Box in Washington D.C. which are processed by DMP.

        ii. <u>20/20/20, BurnRescue, FirstStep Donations</u>
            Donors mail these donations to P.O. Boxes in Washington D.C., which DMP collects and processes on a daily basis. DMP keys or scans in donor information and donation amount, and uploads this information into the donor database within two days of deposit.

    DMP forwards the following items to WonderWork for quality assurance checks: on a daily basis, scanned images of $500+ donations; and once per week, hard copies of $500+ donations and any comment mail or special requests (regardless of amount). A WonderWork employee reviews the scans (daily) and hard copies (weekly) to ensure that DMP entered the donation correctly in the donor database and assigned appropriate flags to the record.

    b.  Online
        i.  Donations can be made by credit card at 20x20x20.org, 1stStep.org, BurnRescue.org, or WonderWork.org.



EXHIBIT 3
WIT: Fuchs
DATE: 8-14-17
DEBRA STEVENS, RPR, CRR

      ii. Paypal is our credit card processor and they automatically process online donations.

      iii. Once a week, WonderWork's CFO downloads data regarding web donations from WordPress, the online platform for our websites. The CFO then emails this information in a spreadsheet to Data Management Inc. ("DMI")[1]; DMI uploads this information into the donor database via an automated process. A WonderWork staff member quality checks this automated process to ensure all donations are uploaded with the correct amounts and no duplicate records are created.

  c. Phone: Donations can be made over the phone. A staff member fills out the appropriate WonderWork internal donation form (20/20/20, FirstStep, BurnRescue, or WonderWork), and charges the card to the appropriate PayPal account.

  d. Other payment methods: donors also donate by wire transfer and ACH, and donate stock.

## III. Linking a Donation to an Appeal

  a. Donations Sent With a Reply Device

Except as described below, WonderWork includes a "reply device" with each appeal to a donor. The reply device includes the donor's name, address and suggested amounts which the donor may choose from. Before printing the reply device, a unique "key code" (also known as a "transaction code" or "source code") is assigned to each appeal and printed on the reply device. For existing donors, this key code is also uploaded to their record. A guide to reading WonderWork's key codes has been provided separately.

When a donor returns the reply device with his/her donation, DMP keys (or scans) the key codes on the reply device and uploads this into our donor database. Using the key code, WonderWork's donor database matches the donation to the relevant appeal.

For DBA appeals, WonderWork has been inserting reply devices with key codes into appeal mailers since inception; for WonderWork appeals, this practice began around July 2016.

  b. Donations Sent Without a Reply Device

Online donations are all initially assigned a web "white mail" key code as a placeholder in the donor database.[2] In the case of donations made by phone, a staff member keys the donation into the donor database, determines from the database the most recent mailing the donor received and assigns the donation to that mailing; if there is no record of sending the donor any mail, the staff member assigns the donation a "white mail" code as a placeholder. In the case of donations received by mail without a reply device, DMP assigns a "white mail" code as a placeholder. WonderWork estimates that less than 2% of total donations are assigned this "white mail" code.

In order to match donations with white mail codes to appeals, WonderWork has set up its database to use an automated "matchback" process based on donor name and address. If the name and address of

---

[1] As of the end of October 2016, DMI is the company that provides WonderWork with its CRM solution (the donor database), analytics and reporting. Prior to that, WonderWork's database vendor was International Data Management Inc.

[2] WonderWork generally uses the phrase "white mail" either (1) as a placeholder until we are able to match a donation to an appeal or (2) to mean that WonderWork cannot match a donation back to an appeal. Even if WonderWork assigns a white mail key code, if the donor specifies a restriction, it is allocated accordingly with the appropriate restricted Fund Code.

the white mail donor matches an existing donor or a donor to whom WonderWork recently sent an appeal, the white mail key code is replaced with the key code of the most recent appeal on that donor's record. If no match is found, the donation retains the white mail key code.

Note that the automated matchback process will only "matchback" a donation to a cause to an appeal for that cause. This also means that donors to 20/20/20, FirstStep or BurnRescue who make a donation to WonderWork through their donor advised fund or foundation (because they prefer to make their check out to the name of the legal entity with 501(c)(3) status) will not be picked up by the automated matchback process; they will be coded as white mail but will be assigned a fund code restriction to the appropriate surgery program.

WonderWork also receives donations from large donors with whom the organization or Brian Mullaney has a relationship, or from friends and family members of the organization. In general, WonderWork assigns these donations a key code character to indicate that WonderWork made personalized appeals, presentations, or formal or informal pitches to this donor (the donor may have also received certain appeals or marketing materials). If these donations are restricted they will also be assigned a fund code restriction to the appropriate surgery program.

In some cases, if it is clear to a staff member that a donor was responding to an appeal other than the most recent appeal on that donor's record in the database (for example, if a donor includes the cover page of a different appeal in the envelope with his or her donation), the staff member will "override" the automated matchback process and enter the key code for the appropriate appeal.

## IV.     Coding Restricted Funds in Donor Database

Donations are restricted to the program(s) indicated in the first position of the donation's key code.

"N" means restricted to blindness programs.
"C" means restricted to clubfoot programs.
"B" means restricted to burns programs.
"X" means restricted to WonderWork's programs.

Donations to WonderWork are further designated with a "Fund Code" (which is not part of the key code) in the donor record as follows:

| Charity | 1st Digit of Key Code | Fund Code | Surgery Program |
|---|---|---|---|
| 20/20/20 | N | N | Blindness |
| First Step | C | C | Clubfoot |
| BurnRescue | B | B | Burns |
| WonderWork | X | W | Surgery Programs |
| WonderWork | X | N | Blindness |
| WonderWork | X | B | Burns |
| WonderWork | X | C | Clubfoot |
| WonderWork | X | X | assigned by system default |
| WonderWork | X | U | Unrestricted (e.g. for operating expenses) |

Fund codes are automatically assigned to all new donations added into the database. For donations to WonderWork, please note:

- the database default is to assign an "X" fund code.

3

- If a donation is restricted, a WonderWork employee will then reassign the fund code as N, B, C or W, as appropriate. WonderWork began using the W fund code to signify donations that were restricted to surgery programs (as opposed to specific types of surgeries) around December 2016. Prior to that, starting around the end of 2013, WonderWork utilized "RS" in key codes for donations that were restricted to surgeries. WonderWork would communicate to its database vendor that all donors receiving a particular appeal should get "RS" in their key code. The last appeal utilizing the RS characters in the key code was sent around November of 2016.
- If the donation is unrestricted, in the past it would retain the "X" fund code; WonderWork has created but not yet implemented a new "U" fund code for staff to assign to these donations.

## V.  Fund Accounting and Reconciliation

### a.  Bank Accounts and "Income Accounts"

WonderWork maintains a separate system of accounts for:

- Funds that are restricted to (1) blindness programs, (2) burns programs, (3) clubfoot programs, and (4) the electronic medical records project; and
- All other funds. With respect to this second category, for FY16 to the present, WonderWork further distinguishes between funds that are restricted to surgery programs generally (as opposed to a single surgery program), and funds that are unrestricted.

Donations directed to "20/20/20," "BurnRescue" or "FirstStep" are deposited in a separate bank (or PayPal) account for each such cause and marked in the general ledger with an "income account" related to that cause (#4010, #4020 or #4030).

A donor may direct his or her donation to "WonderWork" but specify a particular type of surgery. In general, that donation would be deposited into the WonderWork bank account (account # 1040) or PayPal account (account #1060), but marked in the general ledger with an "income account" related to that cause (#4010, #4020 or #4030).

A donor may direct his or her donation to "WonderWork" without any further instruction on use of funds (or an instruction that the donation is unrestricted). That donation would also be deposited into the WonderWork bank or PayPal accounts specified above, but marked in the general ledger with an "income account" designating the funds as unrestricted (account #4000).

A donor may direct his or her donation to "WonderWork" but specify surgeries generally. That donation would also be deposited into the WonderWork bank or PayPal accounts specified above. In the past, this donation would be marked in the general ledger with the income account #4000;[3] in WonderWork's audited financial statements for FY15 and prior years, it only reported restricted fund balances for burns, blindness and clubfoot (and hole-in-heart and hydrocephalus in the applicable years). Moving forward, these funds will be marked in the general ledger with an "income account" designating the funds as restricted to surgeries (WonderWork intends to use account #4005, which was established for the electronic medical records project); in WonderWork's audited financial statements for FY16, WonderWork intends to report restricted fund balances for each of burns, blindness, clubfoot, and WonderWork: Other Restricted Contributions.

### b.  Annual Audit and Release of Restrictions

---

[3] To the extent these donations were flagged with the "RS" characters in the key code, they may also be marked in the memo column of the general ledger with a note that they are restricted to surgeries.

**CONFIDENTIAL**

In preparation for the annual audit, Marketing exports a list from the database of all "WonderWork" donations with key codes that start with "X" and either (a) end with "RS" or (b) have Fund Codes "N," "B" or "C" (and, starting in December 2016, "W"), and pulls copies of the checks and correspondence for these donations. This information is provided to Finance and is made available to the auditors.

At the end of the fiscal year, Finance prepares a spreadsheet starting with the restricted fund balances from the previous years, and adds to these amounts the restricted funds received in the current fiscal year, to arrive at a new total net restricted assets. Next, Finance reviews the current year end program expenses by cause (including Direct Mail Allocation program expenses per AICPA Statement of Position 98-2) so that the restricted net assets can be reduced (or "released") by the amount of these expenses. The remaining restricted net assets are carried over to the next fiscal year.

7998481.1

# FUCHS
# EXHIBIT 4

# WONDERWORK, INC.
## Employee Travel Policy

The purpose of these Business Travel and Other Expense Reimbursement Policies is to provide the WonderWork employees with specific guidelines covering WonderWork travel and other business expenses, as well as the documentation required to substantiate requests for reimbursement of those expenses.

Because it is not possible to anticipate all of the situations that individual travelers may encounter in conducting WonderWork business, these policies are designed to allow for some flexibility in addressing unique circumstances which may require occasional exceptions. As a general guideline, it is expected that travelers and individuals approving travel payment or reimbursement requests will interpret these policies in a manner that keeps expenses to a minimum and fairly assigns the costs of business-related activities to WonderWork.

Accordingly, the primary responsibility for adherence to these policies rests with the key employees and supervisors who are authorizing travel and approving expense reimbursements.

Travelers should also bear in mind that government agencies and other observers may perceive certain expenditures as being either excessive or inappropriate in the context of a regulatory audit, an IRS audit, or other similar review of WonderWork activities. Thus, moderation and discretion should guide travelers' decisions to incur expenses on WonderWork's behalf.

## GENERAL POLICIES

WonderWork will only approve travel purchases or reimburse expenses incurred in connection with WonderWork business that are appropriately documented by the employee.

The basic policy governing travel expenses is that an individual should neither gain nor lose funds in the course of conducting WonderWork business.

WonderWork will not approve travel purchases or reimburse travelers for expenses which are inherently personal in nature such as child care, clothing, personal recreation or entertainment, etc. All travel expenses must have a business purpose.

WonderWork will not reimburse travel expenses that have been or will be reimbursed from any outside sources.



EXHIBIT   4
WIT:   Fuchs
DATE:   8-14-17
DEBRA STEVENS, RPR, CRR

WON-EX 009870

Assuming a reasonable level of comfort and convenience for the traveler, every effort should be made to keep WonderWork expenses to a minimum.

Payment or reimbursement will be on the basis of actual and reasonable expenses incurred for transportation, meals, lodging, and other necessary business expenses.

Travel expenses must be approved by the employee's supervisor or by the Board Treasurer, if appropriate.

WonderWork will not provide travel advances, nor make reimbursements for the travel expenses of spouses who accompany employees on WonderWork business, except in unusual circumstances which require their presence. These exceptions must be approved by the WonderWork Executive Director or other staff/officer in charge of such decisions, or by the Board of Directors. The organization shall report any benefit to the employee as compensation if required by federal law.

## REPORTING REQUIREMENTS

Regulations issued by the Internal Revenue Service and various other government agencies require that WonderWork maintain a policy under which employees must account for all advances, allowances, and other reimbursements of expenses. This accounting must include:

- sufficient information to establish the business purpose of the travel, entertainment, or other expenditure;
- an adequate record of each expenditure including the amount, date, and place;
- substantiation of expenditures with original receipts -- at a minimum, receipts must be provided for all lodging and entertainment expenses (regardless of amount) and for all other expenses of $75 or more to comply with IRS regulations; however, departments may elect to require receipts for all expenditures over $25; and
- the return of any unused monies from cash advances.

Employees must keep track of their expenses and substantiate the expenses by submitting adequate supporting documentation within a reasonable period of time. Any amounts paid to an employee which are not accounted for and substantiated in this way must be included in the employee's income and are subject to payroll tax withholding. (For example, payments to employees of lump-sum, estimated amounts in lieu of reimbursement of *actual* expenses do not meet the requirements of an IRS accountable plan and must be treated as employee compensation subject to withholding.)

WON-EX 009871

# FUCHS

# EXHIBIT 5

Ⓖ $ 275



<table>
<tr><td rowspan="2">Form CHAR500<br><br>This form used for<br>Article 7-A, EPTL and Dual<br>(Applicable to CHAR 497, CHAR<br>619 and CHAR 816)</td><td>**Annual Filing for Charitable Organizations**<br>New York State Department of Law (Office of the Attorney General)<br>Charities Bureau - Registration Section<br>120 Broadway<br>New York, NY 10271<br>http://www.charitiesnys.com</td><td>**2012**</td></tr>
<tr><td></td><td>**Open to Public<br>Inspection**</td></tr>
</table>

**1. General Information**

a. For the fiscal year beginning (mm/dd/yyyy) **7/1/2011**    end ending (mm/dd/yyyy) **6/30/2012**

b. Check if applicable for NYS:

☐ Address change
☐ Name change
☐ Initial filing
☐ Final filing
☐ Amended filing
☐ NY registration pending

c. Name of organization
**WonderWork, Inc.**

Number and street or P.O. box if mail not delivered to street address)  Room/suite
**420 Fifth Avenue 27th Floor**

City or town, state or country and zip + 4
**New York, NY 10018**

d. Fed. employer ID no. (EIN) (00-0000000)
**27-4159217**

e. NY State registration no. (00-00-00)
**43-28-70**

f. Telephone number
**212-729-1855**

g. E-mail
**adobbins@cckc-law.com**

**2. Certification - Two Signatures Required**

We certify under penalties of perjury that we reviewed this report, including all attachments, and to the best of our knowledge and belief, they are true, correct and complete in accordance with the laws of the State of New York applicable to this report.

| | Signature | Printed Name | Title | Date |
|---|---|---|---|---|
| a. President or Authorized Officer | | BRIAN MULLANEY CEO | | 6/3/13 |
| b. Chief Financial Officer or Treas. | | HANA FUCHS CFO | | 6/3/13 |

**3. Annual Report Exemption Information**

a. Article 7-A annual report exemption (Article 7-A registrants and dual registrants)

Check ⇨ ☑ If total contributions from NY State (including residents, foundations, corporations, government agencies, etc.) did not exceed $25,000 **and** the organization did not engage a professional fund raiser (PFR) or fund raising counsel (FRC) to solicit contributions during this fiscal year.

**NOTE:** An organization may claim this exemption if no PFR or FRC was used **and** either: 1) it received an allocation from a federated fund, United Way or incorporated community appeal **and** contributions from other sources did not exceed $25,000 **or** 2) it received all or substantially all of its contributions from one government agency to which it submitted an annual report similar to that required by Article 7-A.

b. EPTL annual report exemption (EPTL registrants and dual registrants)

Check ⇨ ☑ if gross receipts did not exceed $25,000 **and** assets (market value) did not exceed $25,000 at any time during this fiscal year.

For EPTL or Article 7-A registrants claiming the annual report exemption under the one law under which they are registered and for dual registrants claiming the annual report exemptions under both laws, simply complete part 1 (General Information), part 2 (Certification) and part 3 (Annual Report Exemption Information) above. *Do not* submit a fee, *do not* complete the following schedules and *do not* submit any attachments to this form.

**4. Article 7-A Schedules**

If you did not check the Article 7-A annual report exemption above, complete the following for this fiscal year:

a. Did the organization use a professional fund raiser, fund raising counsel or commercial co-venturer for fund raising activity in NY State? . . . . ☐ Yes* ☑ No

* If "Yes", complete Schedule 4a.

b. Did the organization receive government contributions (grants)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes* ☑ No

* If "Yes", complete Schedule 4b.

**5. Fee Submitted: See last page for summary of fee requirements.**

Indicate the filing fee(s) you are submitting along with this form:

a. Article 7-A filing fee . . . . . . . . . . . . . . . . . . . . . . $ **25**
b. EPTL filing fee . . . . . . . . . . . . . . . . . . . . . . . . . . $ **250**
c. Total fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **275**

*Submit only one check or money order for the total fee, payable to "NYS Department of Law"*

**6. Attachments -** For organizations that are not claiming annual report exemptions under both laws, see last page for required attachments ⇾⇾⇾

1    CHAR500 - 2012

WON-EX 0062

EXHIBIT   5
WIT: Fuchs
DATE: 8-14-17
DEBRA STEVENS, RPR, CRR

**Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsels (FRC), Commercial Co-Venturers (CCV)**

If you checked the box in question 4.a. on page 1, complete the following schedule for each PFR, FRC or CCV that the organization engaged for fund raising activity in NY State:

1. Type of fund raising professional (FRP):

   Professional fund raiser .................................................................................... ☐
   Fund raising counsel ....................................................................................... ☒
   Commercial co-venturer .................................................................................... ☐

2. Name of FRP:

   NNE Marketing, LLC

   Number and street (or P.O. box if mail is not delivered to street address):

   754 Massachusetts Avenue

   City or town, state or country and zip + 4:

   Arlington, MA 02476

3. FRP telephone number:

4. Services provided by FRP (provide description):

   The charity has retained NEE to consult on their direct marketing fund-raising efforts. The scope of work is covered in the agreement.

5. Compensation arrangement with FRP (provide description):

   The client and NEE have agreed that the fees for the scope of work will be $32,000 per month for the term of the contract. If creative development is needed for projects outside the scope of the agreement, it will be billed separately on a per package basis- ranging from $500-$4,500 per package.

6. Dates of contract .............................................. 02/01/2013   through 01/31/2014
   (mm/dd/yyyy)                    (mm/dd/yyyy)

7. Amount paid to FRP ............................................................ $ 0

Form CHAR500 (2004)

WON-EX 0063

**Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsels (FRC), Commercial Co-Venturers (CCV)**

If you checked the box in question 4.a. on page 1, complete the following schedule for each PFR, FRC or CCV that the organization engaged for fund raising activity in NY State:

1. Type of fund raising professional (FRP):

   Professional fund raiser ................................................................................ ☐

   Fund raising counsel ................................................................................ ☑

   Commercial co-venturer ................................................................................ ☐

2. Name of FRP:

   Paradysz, Inc.

   Number and street (or P.O. box if mail is not delivered to street address):

   5 Hanover Square

   City or town, state or country and zip + 4:

   New York, New York 10004

3. FRP telephone number:

   212 383-0300

4. Services provided by FRP (provide description):

   Recommend segmentation for outside rental lists, exchange and multi names. Forecast outside rental lists, exchange and multi names. Conduct list audits. Recommend test data for each of charity's campaigns. Warehouse and report performance data, rolled up at the list and campaign levels, based on information reported by charity. Additional scope of services are on the contract.

5. Compensation arrangement with FRP (provide description):

   A service fee amounting to $14 for outside list rentals, exchanges and multi names, based on the number of names shipped to the charity. A negotiation incentive whereby Paradysz will receive 35% of any net incremental reduction in list cost it obtains for the charity. Paradysz will provide client with 65% of savings it obtains.

6. Dates of contract ......................................... 05/18/2012 through On-going
                                                          (mm/dd/yyyy)              (mm/dd/yyyy)

7. Amount paid to FRP ................................................................. $ 41,327.94

8. If services were provided by a CCV, did the CCV provide the charitable organization with the interim report(s) required by §§ 173-a. 3 of the Executive Law? ☑ Yes ☐ No

WON-EX 0064

**Schedule 4b: Government Contributions (Grants)**

If you checked the box in question 4.b. on page 1, complete the following schedule for each government contribution (grant). Use additional copies of this page if necessary to list each government contribution (grant) separately.

| Government Agency Name | Grant Amount |
|---|---|
| NONE. | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Government Contributions (Grants)** | $ 0.00 |

WON-EX 0065

**WonderWork, Inc.**                                             FEIN:   27-4159217

*Attachment referenced in question*

**List of Agreements with Professional Fundraisers, Professional Fundraising Counsel, and/or Commercial Co-Venturers**

Paradysz, Inc.
5 Hanover Square
New York, New York 10004
Type: Consultant
Duration: May 18, 2012 to On-going

NNE Marketing, LLC
754 Massachusetts Avenue
Arlington, MA 02476
Type: Consultant
Duration: February 1, 2013 to January 31, 2014

WON-EX 0066

Form **990**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

► The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No. 1545-0047

**2011**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

**A** For the 2011 calendar year, or tax year beginning **07/01, 2011,** and ending **06/30, 2012**

| B Check if applicable: | C Name of organization WONDERWORK, INC. | | D Employer identification number 27-4159217 |
|---|---|---|---|
| ☐ Address change | Doing Business As | | |
| ☒ | Number and street (or P.O. box if mail is not delivered to street address) 420 5TH AVENUE, 27TH FLOOR | Room/suite | E Telephone number (212) 729-1855 |
| ☒ Initial return | City or town, state or country, and ZIP + 4 NEW YORK, NY 10018 | | G Gross receipts $ 9,214,668. |
| ☐ Terminated | F Name and address of principal officer: BRIAN MULLANEY | | H(a) Is this a group return for affiliates? ☐ Yes ☒ No |
| ☐ Amended return | 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018 | | H(b) Are all affiliates included? ☐ Yes ☐ No |
| ☐ Application pending | | | If "No," attach a list. (see instructions) |

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ► WWW.WONDERWORK.ORG

H(c) Group exemption number ►

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ► | **L** Year of formation: 2011 | **M** State of legal domicile: DE

### Part I    Summary

| | |
|---|---|
| 1 | Briefly describe the organization's mission or most significant activities: PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES, SUFFERING FROM DISEASE, ILLNESS, OR DISABILITY. |

2 Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3. |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 2. |
| 5 | Total number of individuals employed in calendar year 2011 (Part V, line 2a) | 5 | 4. |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 2. |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 34 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 50,767. | 7,878,990. |
| 9 | Program service revenue (Part VIII, line 2g) | 0 | 1,333,667. |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 6. | 2,011. |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| 12 | Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 50,773. | 9,214,668. |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 0 | 789,800. |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 61,272. | 1,240,919. |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ► 321,736. | | |
| 17 | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 120,785. | 702,540. |
| 18 | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 182,057. | 2,733,259. |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | -131,284. | 6,481,409. |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 1,421. | 7,038,498. |
| 21 | Total liabilities (Part X, line 26) | 132,705. | 803,061. |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | -131,284. | 6,235,437. |

### Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ► Signature of officer _(signature)_ | Date 5/14/13 |
|---|---|---|
| | ► BRIAN MULLANEY    CO-FOUNDER, PRESIDENT & CEO | |
| | Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name M. Hodgkins | Preparer's signature _(signature)_ | Date 5/13/13 | Check ☐ if self-employed | PTIN P01420019 |
|---|---|---|---|---|---|
| | Firm's name ► KPMG LLP | | | Firm's EIN ► 13-5565207 | |
| | Firm's address ► 345 PARK AVENUE NEW YORK, NY 10154-0102 | | | Phone no. 212-758-9700 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☒ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.

Form **990** (2011)

JSA
1E1010 1.000

4099FL 2231 5/13/2013   12:25:36 PM  V 11-6.5       2910316                    PAGE 1

WON-EX 0067

| Form **8868**<br>(Rev. January 2012)<br>Department of the Treasury<br>Internal Revenue Service | **Application for Extension of Time To File an<br>Exempt Organization Return**<br>▶ File a separate application for each return. | OMB No. 1545-1709 |
|---|---|---|

- If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box . . . . . . . . . . ▶ ☑
- If you are filing for an Additional (Not Automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

**Do not complete Part II unless** you have already been granted an automatic 3-month extension on a previously filed Form 8868.

**Electronic filing (e-file).** You can electronically file Form 8868 if you need a 3-month automatic extension of time (6 months for a corporation required to file Form 990-T), or an additional (not automatic) 3-month extension of time. You can electronically file Form 8868 to request an extension of time to file any of the forms listed in Part I or Part II with the exception of Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, which must be sent to the IRS in paper format (see instructions). For more details on the electronic filing of this form, visit *www.irs.gov/efile* and click on *e-file for Charities & Nonprofits.*

**Part I** **Automatic 3-Month Extension of Time. Only submit original (no copies needed).**

A corporation required to file Form 990-T and requesting an automatic 6-month extension—check this box and complete Part I only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

*All other corporations (including 1120-C filers), partnerships, REMICs, and trusts must use Form 7004 to request an extension of time to file income tax returns.*

Enter filer's identifying number, see instructions

| Type or<br>print | Name of exempt organization or other filer, see instructions.<br>WonderWork, Inc. | Employer identification number (EIN) or |
|---|---|---|
| | | ☐  27-4159217 |
| File by the<br>due date for<br>filing your<br>return. See<br>instructions. | Number, street, and room or suite no. If a P.O. box, see instructions.<br>420 5th Avenue 27th floor | Social security number (SSN) |
| | | ☐ |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>New York, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . ▶ | 0 | 1 |

| Application<br>Is For | Return<br>Code | Application<br>Is For | Return<br>Code |
|---|---|---|---|
| Form 990 | 01 | Form 990-T (corporation) | 07 |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 990-EZ | 01 | Form 4720 | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

- **The books are in the care of** ▶ Hans Fuchs _____

Telephone No. ▶ __212-729-1855__   FAX No. ▶ __212-729-4541__

- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . ▶ ☐ . If it is for part of the group, check this box . . . . ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

**1** I request an automatic 3-month (6 months for a corporation required to file Form 990-T) extension of time until __Feb. 15__ , 20 _13_ , to file the exempt organization return for the organization named above. The extension is for the organization's return for:
  ▶ ☐ calendar year 20 ___ or
  ▶ ☑ tax year beginning __July 1__ , 20 _11_ , and ending __June 30__ , 20 _12_ .

**2** If the tax year entered in line 1 is for less than 12 months, check reason: ☐ Initial return ☐ Final return
  ☐ Change in accounting period

| **3a** | If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. | 3a | $ | 0 |
|---|---|---|---|---|
| **b** | If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit. | 3b | $ | 0 |
| **c** | Balance due. Subtract line 3b from line 3a. Include your payment with this form, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. | 3c | $ | 0 |

**Caution.** If you are going to make an electronic fund withdrawal with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

For Privacy Act and Paperwork Reduction Act Notice, see instructions.     Cat. No. 27916D     Form **8868** (Rev. 1-2012)

WON-EX 0068

Form 8868 (Rev. 1-2013)                                                                                          Page **2**

- If you are filing for an **Additional (Not Automatic) 3-Month Extension,** complete only Part II and check this box . . . . ▶ ☐
  **Note.** Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.
- If you are filing for an **Automatic 3-Month Extension,** complete only Part I (on page 1).

**Part II**    Additional (Not Automatic) 3-Month Extension of Time. Only file the original (no copies needed).

| Type or print | Name of exempt organization or other filer, see instructions. | Enter filer's identifying number, see instructions |
|---|---|---|
| | WonderWork, Inc. | Employer identification number (EIN) or |
| **File by the due date for filing your return. See instructions.** | | 27-4189217 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | Social security number (SSN) |
| | 420 5th Ave. 27th floor | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | New York, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . ▶ | 0 | 1 |

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | ~~Form 990-T (corporation)~~ | 07 |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

**STOP!** Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.

- The books are in the care of ▶ Kana Fuchs
  Telephone No. ▶ 212-729-1855 x 103     FAX No. ▶ 212-729-4541
- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . ▶ ☐. If it is for part of the group, check this box . . . . ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4   I request an additional 3-month extension of time until _____ May 15 _____ , 20 _13_ .
5   For calendar year _____ , or other tax year beginning ___July 1___ , 20 _11_ , and ending ___June 30___ , 20 _12_ .
6   If the tax year entered in line 5 is for less than 12 months, check reason: ☐ Initial return    ☐ Final return
   ☐ Change in accounting period
7   State in detail why you need the extension   Additional time is needed to prepare a complete and accurate form.
_____
_____

| | | | | |
|---|---|---|---|---|
| 8a | If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. | 8a | $ | |
| b | If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868. | 8b | $ | |
| c | Balance due. Subtract line 8b from line 8a. Include your payment with this form, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. | 8c | $ | |

**Signature and Verification must be completed for Part II only.**

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ _Kana Fuchs_    Title ▶ Chief Financial Officer    Date ▶ 2/6/13

Form **8868** (Rev. 1-2013)

WON-EX 0069

**Part III** Statement of Program Service Accomplishments

Check if Schedule O contains a response to any question in this Part III . . . . . . . . . . . . . . . . . . . . . . [X]

1 Briefly describe the organization's mission:

PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND
ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES, SUFFERING
FROM DISEASE, ILLNESS, OR DISABILITY. FOR MORE INFORMATION, SEE
SCHEDULE O.

2 Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes [ ] No
If "Yes," describe these new services on Schedule O.

3 Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes [X] No
If "Yes," describe these changes on Schedule O.

4 Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses. Section 501(c)(3) and 501(c)(4) organizations and section 4947(a)(1) trusts are required to report the amount of
grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

4a (Code: _____ ) (Expenses $ 2,297,070. including grants of $ 789,800. ) (Revenue $ 1,133,467. )

WONDERWORK EMPOWERS AND PARTNERS WITH LOCAL SURGEONS, HOSPITALS,
AND CHARITABLE ORGANIZATIONS ENGAGED IN THE DELIVERY OF
LIFE-CHANGING SURGERY AND RELATED CARE BY PROVIDING TRAINING AND
EDUCATION, FINANCIAL SUPPORT AND EQUIPMENT. WONDERWORK ALSO
EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL
CARE AND RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH
DISABILITIES.

4b (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d Other program services (Describe in Schedule O.)
(Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e Total program service expenses ▶ 2,297,070.

WON-EX 0070

WONDERWORK, INC.            27-4159217     

## Part IV   Checklist of Required Schedules

| | | Yes | No |
|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1** | X | |
| 2 | Is the organization required to complete Schedule B, Schedule of Contributors (see instructions)? . . . . . . . . . **2** | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . **3** | | X |
| 4 | Section 501(c)(3) organizations. Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . . . . . . . . . . . . **4** | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5** | | |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6** | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . . . . . **7** | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8** | | X |
| 9 | Did the organization report an amount in Part X, line 21; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9** | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . . . . **10** | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11a** | X | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . . . . . . . **11b** | | X |
| c | Did the organization report an amount for investments–program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . . . . . . **11c** | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . . . . . . . . . . . . . . **11d** | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* . . **11e** | | X |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . . . . **11f** | X | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI, XII, and XIII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12a** | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI, XII, and XIII is optional* . . . . . . . . . **12b** | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . . . . . . **13** | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States?. . . . . . . . . . . . **14a** | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . . . **14b** | | X |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or assistance to any organization or entity located outside the United States? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . **15** | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or assistance to individuals located outside the United States? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . . . **16** | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I (see instructions)* . . . . . . . . . . . **17** | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . **18** | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19** | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . . . . . . . **20a** | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . . . . . **20b** | | |

Form 990 (2011)

WON-EX 0071

WONDERWORK, INC.                27-4159217

## Part IV  Checklist of Required Schedules *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants and other assistance to any government or organization in the United States on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . . . . . . | 21 | X | |
| 22 | Did the organization report more than $5,000 of grants and other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . . . . . . . . . | 22 | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 | X | |
| 24 a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25* . . . . . . . . . . . . . . . . . . . . . . . | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . . . . | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . . . | 24d | | |
| 25 a | Section 501(c)(3) and 501(c)(4) organizations. Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25b | | X |
| 26 | Was a loan to or by a current or former officer, director, trustee, key employee, highly compensated employee, or disqualified person outstanding as of the end of the organization's tax year? *If "Yes," complete Schedule L, Part II* . . | 26 | | X |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . | 28a | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . . . . | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . . | 29 | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . . . . . . . | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . . . . . . | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Parts II, III, IV, and V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 | | X |
| 35 a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . . . . . . | 35a | | X |
| b | Did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . | 35b | | |
| 36 | Section 501(c)(3) organizations. Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . . . . . | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11 and 19? Note. All Form 990 filers are required to complete Schedule O. | 38 | X | |

Form 990 (2011)

WON-EX 0072

**Part V**   **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response to any question in this Part V . . . . . . . . . . . . . . . . . . . . . . . . ☐

|  |  |  | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . . . . . . . | 1a | 10 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . . . . . . . . | 1b | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . . | | 1c | X | |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . | 2a | 4 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? Note. If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file* (see instructions) . . . . . | | 2b | X | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . . . . . | | 3a | | X |
| b | If "Yes," has it filed a Form 990-T for this year? If "No," *provide an explanation in Schedule O* . . . . . . . . . | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 4a | | X |
| b | If "Yes," enter the name of the foreign country: ▶ _____ See instructions for filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . | | 5a | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? . . . | | 5b | | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . . . | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible? . . . . . . . . . . . . . . . . . | | 6a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 7a | | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 7c | | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . | 7d | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . | | 7e | | X |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . . | | 7f | | X |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations.** Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the organization make any taxable distributions under section 4966? . . . . . . . . . . . . . . . . . | | 9a | | |
| b | Did the organization make a distribution to a donor, donor advisor, or related person? . . . . . . . . . . . | | 9b | | |
| 10 | **Section 501(c)(7) organizations. Enter:** | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . | 10a | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . | 10b | | | |
| 11 | **Section 501(c)(12) organizations. Enter:** | | | | |
| a | Gross income from members or shareholders . . . . . . . . . . . . . . . . | 11a | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . . | 11b | | | |
| 12a | Section 4947(a)(1) non-exempt charitable trusts. Is the organization filing Form 990 in lieu of Form 1041? | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . | 12b | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . . . . | | 13a | | |
| | Note. See the instructions for additional information the organization must report on Schedule O. | | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . . . . . | 13b | | | |
| c | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . . | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . . . | | 14a | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," *provide an explanation in Schedule O* . . . . . | | 14b | | |

JSA
1E1040 1.000       4099FL 2231  5/13/2013  12:25:36 PM  V 11-6.5      2910316           Form 990 (2011)
                                                                     PAGE 5

WON-EX 0073

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response to any question in this Part VI . . . . . . . . . . . . . . . . . . . . . . . [X]

**Section A. Governing Body and Management**

| | | Yes | No |
|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year. If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O.   **1a**   3 | | |
| b | Enter the number of voting members included in line 1a, above, who are independent . . . . . **1b**   2 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2** | | X |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? . . . **3** | | X |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . **4** | X | |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . . **5** | | X |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6** | | X |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7a** | | X |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7b** | | X |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | |
| a | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8a** | X | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . . . . . . . . . . **8b** | X | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . . . . . **9** | | X |

**Section B. Policies** *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | Yes | No |
|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . . . . . . . . . . . . . . . **10a** | | X |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? . . . . . **10b** | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . **11a** | X | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | |
| 12a | Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . . . . . . . . . . . . **12a** | X | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12b** | X | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12c** | X | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13** | X | |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . . . . . . . . . . . . . . **14** | X | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . . . . . . . . . . . . . . . . **15a** | X | |
| b | Other officers or key employees of the organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15b** | X | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16a** | | X |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . . . . . . . . . . . . **16b** | | |

**Section C. Disclosure**

17   List the states with which a copy of this Form 990 is required to be filed ▶ ATTACHMENT 1

18   Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.
   [X] Own website    [ ] Another's website    [X] Upon request

19   Describe in Schedule O whether (and if so, how), the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20   State the name, physical address, and telephone number of the person who possesses the books and records of the organization: ▶ YANG FUSIS 422 FIFTH AVENUE, 37TH FLOOR NEW YORK, NY 10018    212-729-1655

WON-EX 0074

**Part VII** **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response to any question in this Part VII . . . . . . . . . . . . . . . . . . ☐

**Section A.　Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former** directors or trustees that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week (describe hours for related organizations in Schedule O) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| **(1)** BRIAN MULLANEY<br>CO-FOUNDER, PRESIDENT AND CEO | 40.00 | X | | X | | | | 275,000. | 0 | 9,845. |
| **(2)** THEODORE DYSART<br>SECRETARY/TREASURER | 1.00 | X | | | | | | 0 | 0 | 0 |
| **(3)** RAVI KANT<br>DIRECTOR | 1.00 | X | | | | | | 0 | 0 | 0 |
| **(4)** HANA FUCHS<br>CFO | 40.00 | | | X | | | | 154,500. | 0 | 1,652. |
| **(5)** | | | | | | | | | | |
| **(6)** | | | | | | | | | | |
| **(7)** | | | | | | | | | | |
| **(8)** | | | | | | | | | | |
| **(9)** | | | | | | | | | | |
| **(10)** | | | | | | | | | | |
| **(11)** | | | | | | | | | | |
| **(12)** | | | | | | | | | | |
| **(13)** | | | | | | | | | | |
| **(14)** | | | | | | | | | | |

JSA
1E1041 1.000

Form **990** (2011)

4099FL 2231  5/13/2013  12:25:36 PM  V 11-6.5　　　2910316　　　PAGE 7

WON-EX 0075

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A) Name and title | (B) Average hours per week (describe hours for related organizations in Schedule O) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director / Institutional trustee / Officer / Key employee / Highest compensated employee / Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **1b** Sub-total ▶ | | | 429,500. | 0 | 11,497. |
| **c** Total from continuation sheets to Part VII, Section A ▶ | | | 0 | 0 | 0 |
| **d** Total (add lines 1b and 1c) ▶ | | | 429,500. | 0 | 11,497. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ **2**

|   |   | Yes | No |
|---|---|---|---|
| **3** Did the organization list any former officer, director, or trustee, key employee, or highest compensated employee on line 1a? If "Yes," complete Schedule J for such individual | 3 | | X |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? If "Yes," complete Schedule J for such individual | 4 | X | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? If "Yes," complete Schedule J for such person | 5 | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 in compensation from the organization ▶ **0**

WON-EX 0076

**Part VIII  Statement of Revenue**

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512, 513, or 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns | 1a | | | | |
| | b | Membership dues | 1b | | | | |
| | c | Fundraising events | 1c | | | | |
| | d | Related organizations | 1d | | | | |
| | e | Government grants (contributions) | 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above | 1f | 7,878,990. | | | |
| | g | Noncash contributions included in lines 1a-1f  $ | | | | | |
| | h | **Total. Add lines 1a-1f** ▶ | | 7,878,990. | | | |
| **Program Service Revenue** | 2a | PROGRAMMATIC ASSISTANCE | Business Code 541900 | 1,333,667. | 1,333,667. | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | | | | | | |
| | e | | | | | | |
| | f | All other program service revenue | | | | | |
| | g | **Total. Add lines 2a-2f** ▶ | | 1,333,667. | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts) ▶ | | 1,314. | | | 1,314. |
| | 4 | Income from investment of tax-exempt bond proceeds ▶ | | 0 | | | |
| | 5 | Royalties ▶ | | | | | |
| | | | (i) Real | (ii) Personal | | | | |
| | 6a | Gross rents | | | | | | |
| | b | Less: rental expenses | | | | | | |
| | c | Rental income or (loss) | | | | | | |
| | d | Net rental income or (loss) ▶ | | | | | |
| | | | (i) Securities | (ii) Other | | | | |
| | 7a | Gross amount from sales of assets other than inventory | 697 | | | | | |
| | b | Less: cost or other basis and sales expenses | | | | | | |
| | c | Gain or (loss) | 697 | | | | | |
| | d | Net gain or (loss) ▶ | | 697. | | | 697. |
| | 8a | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 | a | | | | |
| | b | Less: direct expenses | b | | | | |
| | c | Net income or (loss) from fundraising events ▶ | | | | | |
| | 9a | Gross income from gaming activities. See Part IV, line 19 | a | | | | |
| | b | Less: direct expenses | b | | | | |
| | c | Net income or (loss) from gaming activities ▶ | | 0 | | | |
| | 10a | Gross sales of inventory, less returns and allowances | a | | | | |
| | b | Less: cost of goods sold | b | | | | |
| | c | Net income or (loss) from sales of inventory ▶ | | 0 | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | 11a | | | | | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | All other revenue | | | | | |
| | e | **Total. Add lines 11a-11d** ▶ | | 0 | | | |
| | 12 | **Total revenue. See instructions** ▶ | | 9,214,668. | 1,333,667. | | 2,011. |

Form **990** (2011)

JSA
1E1051 1.000

WON-EX 0077

**Part IX   Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A) but are not required to complete columns (B), (C), and (D).

Check if Schedule O contains a response to any question in this Part IX . . . . . . . . . . . . . . . . . . . . . . . . . .

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to governments and organizations in the United States. See Part IV, line 21 . | 789,800. | 789,800. | | |
| 2 Grants and other assistance to individuals in the United States. See Part IV, line 22 . . . . . | 0 | | | |
| 3 Grants and other assistance to governments, organizations, and individuals outside the United States. See Part IV, lines 15 and 16 . . . | 0 | | | |
| 4 Benefits paid to or for members . . . . . . . | 0 | | | |
| 5 Compensation of current officers, directors, trustees, and key employees . . . . . . . . | 889,729. | 806,249. | 64,587. | 18,893. |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . | 0 | | | |
| 7 Other salaries and wages . . . . . . . . . | 252,433. | 133,165. | 18,462. | 100,806. |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . | 0 | | | |
| 9 Other employee benefits . . . . . . . . . . | 32,630. | 26,837. | 2,373. | 3,420. |
| 10 Payroll taxes . . . . . . . . . . . . . . | 66,127. | 54,369. | 4,808. | 6,930. |
| 11 Fees for services (non-employees): | | | | |
| a Management . . . . . . . . . . . . . . | 0 | | | |
| b Legal . . . . . . . . . . . . . . . . . | 21,988. | 18,085. | 1,599. | 2,304. |
| c Accounting . . . . . . . . . . . . . . . | 2,160. | 1,777. | 157. | 226. |
| d Lobbying . . . . . . . . . . . . . . . . | 0 | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees . . . . . . . . | | | | |
| g Other . . . . . . . . . . . . . . . . . | 168,783. | 154,820. | 5,719. | 8,244. |
| 12 Advertising and promotion . . . . . . . . . | 0 | | | |
| 13 Office expenses . . . . . . . . . . . . . | 241,778. | 73,141. | 5,694. | 162,943. |
| 14 Information technology . . . . . . . . . . . | 5,449. | 4,482. | 396. | 571. |
| 15 Royalties . . . . . . . . . . . . . . . . | 0 | | | |
| 16 Occupancy . . . . . . . . . . . . . . . | 128,267. | 105,498. | 9,327. | 13,442. |
| 17 Travel . . . . . . . . . . . . . . . . . | 130,815. | 126,113. | 1,089. | 3,613. |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | 0 | | | |
| 19 Conferences, conventions, and meetings . . . . | 0 | | | |
| 20 Interest . . . . . . . . . . . . . . . . | 0 | | | |
| 21 Payments to affiliates . . . . . . . . . . . | 0 | | | |
| 22 Depreciation, depletion, and amortization . . . . | 3,300. | 2,714. | 240. | 346. |
| 23 Insurance . . . . . . . . . . . . . . . | 0 | | | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | | |
| b _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | | |
| c _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | | |
| d _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | | |
| e All other expenses _ _ _ _ _ _ _ _ _ | | | | |
| 25 Total functional expenses. Add lines 1 through 24e | 2,733,259. | 2,297,070. | 114,451. | 321,738. |
| 26 Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) . . . . . . | 0 | | | |

WON-EX 0078

## Part X Balance Sheet

| Section | Line | Description | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| Assets | 1 | Cash - non-interest-bearing | 765. | 1 | 7,124. |
| | 2 | Savings and temporary cash investments | 656. | 2 | 811,118. |
| | 3 | Pledges and grants receivable, net | 0 | 3 | 769,451. |
| | 4 | Accounts receivable, net | 0 | 4 | 0 |
| | 5 | Receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L | 0 | 5 | 0 |
| | 6 | Receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) | 0 | 6 | 0 |
| | 7 | Notes and loans receivable, net | 0 | 7 | 0 |
| | 8 | Inventories for sale or use | 0 | 8 | 0 |
| | 9 | Prepaid expenses and deferred charges | 0 | 9 | 45,625. |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D — 10a: 16,904. | | | |
| | b | Less: accumulated depreciation — 10b: 3,300. | 0 | 10c | 13,604. |
| | 11 | Investments - publicly traded securities | 0 | 11 | 5,391,576. |
| | 12 | Investments - other securities. See Part IV, line 11 | 0 | 12 | 0 |
| | 13 | Investments - program-related. See Part IV, line 11 | 0 | 13 | 0 |
| | 14 | Intangible assets | 0 | 14 | 0 |
| | 15 | Other assets. See Part IV, line 11 | 0 | 15 | 0 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) | 1,421. | 16 | 7,038,498. |
| Liabilities | 17 | Accounts payable and accrued expenses | 6,705. | 17 | 70,061. |
| | 18 | Grants payable | 0 | 18 | 733,000. |
| | 19 | Deferred revenue | 0 | 19 | 0 |
| | 20 | Tax-exempt bond liabilities | 0 | 20 | 0 |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | 0 | 21 | 0 |
| | 22 | Payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L | 126,000. | 22 | 0 |
| | 23 | Secured mortgages and notes payable to unrelated third parties | 0 | 23 | 0 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | 0 | 24 | 0 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 0 | 25 | 0 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | 132,705. | 26 | 803,061. |
| Net Assets or Fund Balances | | **Organizations that follow SFAS 117, check here ▶ [X] and complete lines 27 through 29, and lines 33 and 34.** | | | |
| | 27 | Unrestricted net assets | -131,284. | 27 | 5,465,750. |
| | 28 | Temporarily restricted net assets | 0 | 28 | 769,687. |
| | 29 | Permanently restricted net assets | 0 | 29 | 0 |
| | | **Organizations that do not follow SFAS 117, check here ▶ [ ] and complete lines 30 through 34.** | | | |
| | 30 | Capital stock or trust principal, or current funds | | 30 | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund | | 31 | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds | | 32 | |
| | 33 | Total net assets or fund balances | -131,284. | 33 | 6,235,437. |
| | 34 | Total liabilities and net assets/fund balances | 1,421. | 34 | 7,038,498. |

WONDERWORK, INC.       27-4155217      Page **12**

## Part XI   Reconciliation of Net Assets

Check if Schedule O contains a response to any question in this Part XI . . . . . . . . . . . . . . . . . . . . . [X]

| | | | | |
|---|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . . . | **1** | 9,214,668. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . . . . . . . | **2** | 2,733,259. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . | **3** | 6,481,409. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . . . . . . | **4** | -131,284. |
| 5 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . . . . . | **5** | -114,688. |
| 6 | Net assets or fund balances at end of year. Combine lines 3, 4, and 5 (must equal Part X, line 33, column (B)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | 6,235,437. |

## Part XII   Financial Statements and Reporting

Check if Schedule O contains a response to any question in this Part XII . . . . . . . . . . . . . . . . . . . . [ ]

| | | Yes | No |
|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: [ ] Cash [X] Accrual [ ] Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . . . . | **2a** | | X |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . | **2b** | X | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | |
| d | If "Yes" to line 2a or 2b, check a box below to indicate whether the financial statements for the year were issued on a separate basis, consolidated basis, or both: | | |
| | [X] Separate basis    [ ] Consolidated basis    [ ] Both consolidated and separate basis | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . . . . . . . . . | **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

Form **990** (2011)

WON-EX 0080

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section
4947(a)(1) nonexempt charitable trust.

▶ Attach to Form 990 or Form 990-EZ.  ▶ See separate instructions.

OMB No. 1545-0047

# 2011

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 11, check only one box.)

1. ☐ A church, convention of churches, or association of churches described in section 170(b)(1)(A)(i).
2. ☐ A school described in section 170(b)(1)(A)(ii). (Attach Schedule E.)
3. ☐ A hospital or a cooperative hospital service organization described in section 170(b)(1)(A)(iii).
4. ☐ A medical research organization operated in conjunction with a hospital described in section 170(b)(1)(A)(iii). Enter the hospital's name, city, and state:
5. ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in section 170(b)(1)(A)(iv). (Complete Part II.)
6. ☐ A federal, state, or local government or governmental unit described in section 170(b)(1)(A)(v).
7. ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in section 170(b)(1)(A)(vi). (Complete Part II.)
8. ☐ A community trust described in section 170(b)(1)(A)(vi). (Complete Part II.)
9. ☐ An organization that normally receives: (1) more than 33⅓% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33⅓% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See section 509(a)(2). (Complete Part III.)
10. ☐ An organization organized and operated exclusively to test for public safety. See section 509(a)(4).
11. ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2). See section 509(a)(3). Check the box that describes the type of supporting organization and complete lines 11e through 11h.
    a ☐ Type I    b ☐ Type II    c ☐ Type III - Functionally integrated    d ☐ Type III - Other
    e. ☐ By checking this box, I certify that the organization is not controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2).
    f. If the organization received a written determination from the IRS that it is a Type I, Type II, or Type III supporting organization, check this box ☐
    g. Since August 17, 2006, has the organization accepted any gift or contribution from any of the following persons?

| | | Yes | No |
|---|---|---|---|
| (i) A person who directly or indirectly controls, either alone or together with persons described in (ii) and (iii) below, the governing body of the supported organization? | 11g(i) | | |
| (ii) A family member of a person described in (i) above? | 11g(ii) | | |
| (iii) A 35% controlled entity of a person described in (i) or (ii) above? | 11g(iii) | | |

h. Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-9 above or IRC section (see instructions)) | (iv) Is the organization in col. (i) listed in your governing document? | | (v) Did you notify the organization in col. (i) of your support? | | (vi) Is the organization in col. (i) organized in the U.S.? | | (vii) Amount of support |
|---|---|---|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No | Yes | No | |
| (A) | | | | | | | | | |
| (B) | | | | | | | | | |
| (C) | | | | | | | | | |
| (D) | | | | | | | | | |
| (E) | | | | | | | | | |
| **Total** | | | | | | | | | |

For Paperwork Reduction Act Notice, see the instructions for
Form 990 or 990-EZ.

Schedule A (Form 990 or 990-EZ) 2011

WON-EX 0081

Schedule A (Form 990 or 990-EZ) 2011                                           **Page 2**

**Part II**   **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2007 | (b) 2008 | (c) 2009 | (d) 2010 | (e) 2011 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | 50,767. | 7,878,990. | 7,929,757. |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 Total. Add lines 1 through 3 | | | | 50,767. | 7,878,990. | 7,929,757. |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 4,524,134. |
| 6 Public support. Subtract line 5 from line 4. | | | | | | 3,405,623. |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2007 | (b) 2008 | (c) 2009 | (d) 2010 | (e) 2011 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | | | 50,767. | 7,878,990. | 7,929,757. |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | 4. | 1,316. | 1,320. |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | |
| 11 Total support. Add lines 7 through 10 | | | | | | 7,931,077. |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | 12 | 1,333,667. |
| 13 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here | | | | | | ▶ [X] |

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| 14 Public support percentage for 2011 (line 6, column (f) divided by line 11, column (f)) | 14 | % |
| 15 Public support percentage from 2010 Schedule A, Part II, line 14 | 15 | % |

16a 33 1/3% support test - 2011. If the organization did not check the box on line 13, and line 14 is 33 1/3 % or more, check this box and stop here. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . ▶ ☐

b 33 1/3% support test - 2010. If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and stop here. The organization qualifies as a publicly supported organization . . . . . . . . . . . ▶ ☐

17a 10%-facts-and-circumstances test - 2011. If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and stop here. Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

b 10%-facts-and-circumstances test - 2010. If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and stop here. Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

18 Private foundation. If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

Schedule A (Form 990 or 990-EZ) 2011

WON-EX 0082

**Part III** Support Schedule for Organizations Described in Section 509(a)(2)
(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II.
If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2007 | (b) 2008 | (c) 2009 | (d) 2010 | (e) 2011 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 Total. Add lines 1 through 5 | | | | | | |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| c Add lines 7a and 7b | | | | | | |
| 8 Public support (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2007 | (b) 2008 | (c) 2009 | (d) 2010 | (e) 2011 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6 | | | | | | |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| c Add lines 10a and 10b | | | | | | |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | |
| 13 Total support. (Add lines 9, 10c, 11, and 12.) | | | | | | |

14 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3)
organization, check this box and stop here ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| 15 Public support percentage for 2011 (line 8, column (f) divided by line 13, column (f)) | 15 | % |
| 16 Public support percentage from 2010 Schedule A, Part III, line 15 | 16 | % |

### Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| 17 Investment income percentage for 2011 (line 10c, column (f) divided by line 13, column (f)) | 17 | % |
| 18 Investment income percentage from 2010 Schedule A, Part III, line 17 | 18 | % |

19a 33 1/3 % support tests - 2011. If the organization did not check the box on line 14, and line 15 is more than 33 1/3 %, and line
17 is not more than 33 1/3 %, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☐

b 33 1/3 % support tests - 2010. If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3 %, and
line 18 is not more than 33 1/3 %, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☐

20 Private foundation. If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

WON-EX 0083

**Part IV**  Supplemental Information. Complete this part to provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See Instructions).

WON-EX 0084

| SCHEDULE D (Form 990) | Supplemental Financial Statements | OMB No. 1545-0047 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ►Complete if the organization answered "Yes," to Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b. ►Attach to Form 990. ►See separate instructions. | **2011** Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts. Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . | | |
| 2 | Aggregate contributions to (during year) . . . . | | |
| 3 | Aggregate grants from (during year) . . . . . . | | |
| 4 | Aggregate value at end of year . . . . . . . . | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . ☐ Yes ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**Part II** Conservation Easements. Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (e.g., recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2a |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . . . . . . . . . . | 2b |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . . | 2c |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . . . . . . . . . . . . . . | 2d |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4  Number of states where property subject to conservation easement is located ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

7  Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year ► $ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

8  Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9  In Part XIV, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III** Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets. Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIV, the text of the footnote to its financial statements that describes these items.

b  If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i)  Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . ► $ _ _ _ _ _ _ _ _ _ _ _ _ _
(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . ► $ _ _ _ _ _ _ _ _ _ _ _ _ _

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a  Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . . ► $ _ _ _ _ _ _ _ _ _ _ _ _ _
b  Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . ► $ _ _ _ _ _ _ _ _ _ _ _ _ _

WON-EX 0085

**Part III** Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)*

3  Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition      d ☐ Loan or exchange programs

b ☐ Scholarly research      e ☐ Other _____

c ☐ Preservation for future generations

4  Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIV.

5  During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . . . . ☐ Yes ☐ No

**Part IV** Escrow and Custodial Arrangements. Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a  Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

b  If "Yes," explain the arrangement in Part XIV and complete the following table:

| | | Amount |
|---|---|---|
| c Beginning balance . . . . . . . . . . . . . . . . . . . . . . | 1c | |
| d Additions during the year . . . . . . . . . . . . . . . . . | 1d | |
| e Distributions during the year . . . . . . . . . . . . . . . | 1e | |
| f Ending balance . . . . . . . . . . . . . . . . . . . . . . | 1f | |

2a  Did the organization include an amount on Form 990, Part X, line 21? . . . . . . . . . . . . ☐ Yes ☐ No

b  If "Yes," explain the arrangement in Part XIV.

**Part V** Endowment Funds. Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| 1a Beginning of year balance . . . . | | | | | |
| b Contributions . . . . . . . . . | | | | | |
| c Net investment earnings, gains, and losses. | | | | | |
| d Grants or scholarships . . . . . | | | | | |
| e Other expenditures for facilities and programs . . . . . . . . . | | | | | |
| f Administrative expenses . . . . . | | | | | |
| g End of year balance . . . . . . | | | | | |

2  Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a  Board designated or quasi-endowment ▶ _____ %

b  Permanent endowment ▶ _____ %

c  Temporarily restricted endowment ▶ _____ %

The percentages in lines 2a, 2b, and 2c should equal 100%.

3a  Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| (i) unrelated organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(i) | | |
| (ii) related organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(ii) | | |
| b If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . . . | 3b | | |

4  Describe in Part XIV the intended uses of the organization's endowment funds.

**Part VI** Land, Buildings, and Equipment. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a Land . . . . . . . . . . . . . . . | | | | |
| b Buildings . . . . . . . . . . . . . | | | | |
| c Leasehold improvements . . . . . . . . . | | | | |
| d Equipment . . . . . . . . . . . . | | 16,904. | 3,300. | 13,604. |
| e Other . . . . . . . . . . . . . . | | | | |

Total. Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . ▶ | | | | 13,604. |

Schedule D (Form 990) 2011

WON-EX 0086

WONDERWORK, INC.                                                    27-4159217

**Part VII** Investments - Other Securities. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . . . . . | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

**Part VIII** Investments - Program Related. See Form 990, Part X, line 13.

| (a) Description of investment type | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

**Part IX** Other Assets. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 15.) ▶ | |

**Part X** Other Liabilities. See Form 990, Part X, line 25.

1.

| (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| (11) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 25.) ▶ | | |

2. FIN 48 (ASC 740) Footnote. In Part XIV, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740).

JSA
1E1270 1.000

Schedule D (Form 990) 2011

WON-EX 0087

**Part XI** Reconciliation of Change in Net Assets from Form 990 to Audited Financial Statements

| | | | |
|---|---|---|---|
| 1 | Total revenue (Form 990, Part VIII, column (A), line 12) | 1 | 9,214,668. |
| 2 | Total expenses (Form 990, Part IX, column (A), line 25) | 2 | 2,733,259. |
| 3 | Excess or (deficit) for the year. Subtract line 2 from line 1 | 3 | 6,481,409. |
| 4 | Net unrealized gains (losses) on investments | 4 | -114,687. |
| 5 | Donated services and use of facilities | 5 | |
| 6 | Investment expenses | 6 | |
| 7 | Prior period adjustments | 7 | |
| 8 | Other (Describe in Part XIV.) | 8 | |
| 9 | Total adjustments (net). Add lines 4 through 8 | 9 | -114,687. |
| 10 | Excess or (deficit) for the year per audited financial statements. Combine lines 3 and 9 | 10 | 6,366,722. |

**Part XII** Reconciliation of Revenue per Audited Financial Statements With Revenue per Return

| | | | | |
|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | 1 | 9,099,981. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| a | Net unrealized gains on investments | 2a | -114,687. | |
| b | Donated services and use of facilities | 2b | | |
| c | Recoveries of prior year grants | 2c | | |
| d | Other (Describe in Part XIV.) | 2d | | |
| e | Add lines 2a through 2d | | 2e | -114,687. |
| 3 | Subtract line 2e from line 1 | | 3 | 9,214,668. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | |
| b | Other (Describe in Part XIV.) | 4b | | |
| c | Add lines 4a and 4b | | 4c | |
| 5 | Total revenue. Add lines 3 and 4c. (This must equal Form 990, Part I, line 12.) | | 5 | 9,214,668. |

**Part XIII** Reconciliation of Expenses per Audited Financial Statements With Expenses per Return

| | | | | |
|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | 1 | 2,733,259. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| a | Donated services and use of facilities | 2a | | |
| b | Prior year adjustments | 2b | | |
| c | Other losses | 2c | | |
| d | Other (Describe in Part XIV.) | 2d | | |
| e | Add lines 2a through 2d | | 2e | |
| 3 | Subtract line 2e from line 1 | | 3 | 2,733,259. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | |
| b | Other (Describe in Part XIV.) | 4b | | |
| c | Add lines 4a and 4b | | 4c | |
| 5 | Total expenses. Add lines 3 and 4c. (This must equal Form 990, Part I, line 18.) | | 5 | 2,733,259. |

**Part XIV** Supplemental Information

Complete this part to provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, line 8; Part XII, lines 2d and 4b; and Part XIII, lines 2d and 4b. Also complete this part to provide any additional information.

SEE PAGE 5

---

JSA
1E1271 1.000

WON-EX 0088

**Part XIV    Supplemental Information** *(continued)*

UNCERTAIN TAX POSITIONS

FORM 990, SCHEDULE D, PART X, LINE 2

WONDERWORK RECOGNIZES THE EFFECT OF INCOME TAX POSITIONS ONLY IF THOSE

POSITIONS ARE MORE LIKELY THAN NOT OF BEING SUSTAINED.   INCOME GENERATED

FROM ACTIVITIES UNRELATED TO WONDERWORK'S EXEMPT PURPOSE IS SUBJECT TO

TAX UNDER INTERNAL REVENUE CODE SECTION 511.   WONDERWORK UTILIZES A

THRESHOLD OF MORE-LIKELY-THAN-NOT FOR RECOGNITION AND DERECOGNITION OF

TAX POSITIONS TAKEN OR EXPECTED TO BE TAKEN IN A TAX RETURN.   WONDERWORK

DID NOT RECOGNIZE ANY UNRELATED BUSINESS INCOME FOR TAX LIABILITY FOR THE

YEAR ENDED JUNE 30, 2012.

WON-EX 0089

# SCHEDULE I (Form 990)

Department of the Treasury
Internal Revenue Service

## Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.
▶ Attach to Form 990.

OMB No. 1545-0047

**2011**

Open to Public Inspection

Name of the organization
WONDERWORK, INC.

Employer identification number
27-4159217

### Part I General Information on Grants and Assistance

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☒ Yes  ☐ No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

### Part II Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Check this box if no one recipient received more than $5,000. Part II can be duplicated if additional space is needed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) SCOJ MS SEE<br>20 WEST 36TH STREET NEW YORK, NY 10018-8005 | 27-1067714 | 501(C)(3) | 789,550. | | | | FUND MIRACLE SURGERY BLINDNESS |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶  1.
3  Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule I (Form 990) (2011)

JSA
1E1288 1.000

4099FI 2231  5/13/2013  12:25:36  P  V 11-6.5  2910316

PAGE 32

WON-EX 0090

WONDERWORK, INC.                                                                 27-4159217

**Part III** Grants and Other Assistance to Individuals in the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of non-cash assistance |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |

**Part IV** Supplemental Information. Complete this part to provide the information required in Part I, line 2, and any other additional information.

GRANT ELIGIBILITY

FORM 990, SCHEDULE I, PART I, LINE 2

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS.  THE SELECTION PROCESS ALSO INCLUDES OBTAINING

THIRD PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING

WITH THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

JSA
1E1504 2.000
4099FL 2231  5/13/2013  12:25:36 PM  V 11-6.5                  2910316                     PAGE 33

WON-EX 0091

| SCHEDULE J<br>(Form 990)<br><br>Department of the Treasury<br>Internal Revenue Service | **Compensation Information**<br>For certain Officers, Directors, Trustees, Key Employees, and Highest<br>Compensated Employees<br>▶ Complete if the organization answered "Yes" to Form 990,<br>Part IV, line 23.<br>▶ Attach to Form 990. ▶ See separate instructions. | OMB No. 1545-0047<br><br>**2011**<br>Open to Public<br>Inspection |
|---|---|---|

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I**    **Questions Regarding Compensation**

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

| ☐ First-class or charter travel | ☐ Housing allowance or residence for personal use |
|---|---|
| ☐ Travel for companions | ☐ Payments for business use of personal residence |
| ☐ Tax indemnification and gross-up payments | ☐ Health or social club dues or initiation fees |
| ☐ Discretionary spending account | ☐ Personal services (e.g., maid, chauffeur, chef) |

|  |  | | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all officers, directors, trustees, and the CEO/Executive Director, regarding the items checked in line 1a? . . . . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director. Explain in Part III. | | | |

| ☒ Compensation committee | ☐ Written employment contract |
|---|---|
| ☐ Independent compensation consultant | ☒ Compensation survey or study |
| ☐ Form 990 of other organizations | ☒ Approval by the board or compensation committee |

|  |  | | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . . . . . | **4a** | | X |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . . . | **4b** | | X |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . . | **4c** | | X |
|  | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
|  | Only section 501(c)(3) and 501(c)(4) organizations must complete lines 5-9. | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5a** | | X |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5b** | | X |
|  | If "Yes" to line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6a** | | X |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6b** | | X |
|  | If "Yes" to line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . | **7** | | X |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | X |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.        Schedule J (Form 990) 2011

WON-EX 0092

WONDERWORK, INC.

27-4159217

## Part II　Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

Note. The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 BRIAN MULLANEY | (i) | 275,000. | 0 | 0 | 0 | 9,845. | 284,845. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 HANA FUCHS | (i) | 154,500. | 0 | 0 | 0 | 1,652. | 156,152. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 4 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 5 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 6 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 7 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 8 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 9 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 10 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 11 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 12 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 13 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 14 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 15 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 16 | (i) | | | | | | | |
| | (ii) | | | | | | | |

JSA
1E1291 1.000
4059FL 2231　5/13/2013　12:25:36 PM　V 11-6.5　　　2910316　　　　　　　　　　PAGE 35

WON-EX 0093

Schedule J (Form 990) 2011

**Part III  Supplemental Information**
Complete this part to provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II.
Also complete this part for any additional information.

WON-EX 0094

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.

OMB No. 1545-0047

**2011**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

ORGANIZATION'S MISSION

FORM 990, PART III, LINE 1

WONDERWORK IS A NOT-FOR-PROFIT ORGANIZATION WHICH WAS FOUNDED TO PROVIDE

TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND ADULTS IN

UNDERSERVED REGIONS OF THE WORLD. WONDERWORK PROVIDES LIFE-CHANGING

SUPPORT FOR ILLNESS, DISEASE, AND DISABILITY INCLUDING BUT NOT LIMITED

TO, BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS, AND PEDIATRIC CARDIAC

SURGERY. WONDERWORK SUPPORTS OTHER MEDICAL INSTITUTIONS AND CHARITABLE

ORGANIZATIONS ENGAGED IN THE PROVISION OF THESE SERVICES; AS WELL AS,

PROVIDES EDUCATION TO DOCTORS AND THE PUBLIC ON NEEDED TREATMENTS AND

SURGICAL TECHNIQUES.


SIGNIFICANT PROGRAM SERVICE ACTIVITIES

FORM 990, PART III, LINE 2

THE ORGANIZATION WAS INCORPORATED IN AND FILED AN INITIAL RETURN IN

FISCAL YEAR 2011. DURING FISCAL YEAR 2012, WONDERWORK, INC. RECEIVED

SIGNIFICANT SUPPORT FROM DONORS AND INCREASED OPERATIONS TO SUPPORT ITS

FIVE MAIN SERVICE AREAS - BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS,

AND PEDIATRIC CARDIAC SURGERY.  THE ORGANIZATION PLANS TO SEE CONTINUED

GROWTH IN FISCAL YEAR 2013.


SIGNIFICANT CHANGE TO GOVERNING DOCUMENTS

FORM 990, PART VI, LINE 4

IN APRIL 2012, THE ORGANIZATION AMENDED ITS ARTICLES OF INCORPORATION AND

For Privacy Act and Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Schedule O (Form 990 or 990-EZ) (2011)

JSA
1E1227 2.000

4099FL 2231 5/13/2013   12:25:36 PM  V 11-6.5          2910316          PAGE 37

WON-EX 0095

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

BYLAWS TO CHANGE IT'S NAME FROM SURGERY FOR THE POOR, INC. TO WONDERWORK,
INC.

FORM 990 REVIEW
FORM 990, PART VI, LINE 11B
THE FORM 990 WAS PREPARED BY AN INTERNATIONAL ACCOUNTING FIRM AND THE
FINANCE DEPARTMENT. A COPY OF THE FORM 990 WAS REVIEWED BY THE CHAIR OF
THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS AND WAS DISTRIBUTED TO ALL
BOARD MEMBERS BEFORE FILING WITH THE IRS.

CONFLICT OF INTEREST POLICY
FORM 990, PART VI, LINE 12
EACH OFFICER, DIRECTOR AND KEY EMPLOYEE OF THE ORGANIZATION IS REQUIRED
TO DISCLOSE ANY CONFLICTS OF INTEREST THAT ARISE THROUGH EMPLOYMENT,
BOARD SERVICE OR POSITION IN THE ORGANIZATION. THE ORGANIZATION MONITORS
COMPLIANCE WITH ITS CONFLICT OF INTEREST POLICY THROUGH ANNUAL COMPLETION
OF THE QUESTIONNAIRE AND DISCLOSURE STATEMENT THAT IS DISTRIBUTED TO
THESE INDIVIDUALS.

ALSO, NEW EMPLOYEES JOINING THE ORGANIZATION ARE REQUIRED TO COMPLETE THE
QUESTIONNAIRE. POTENTIAL CONFLICTS OF INTEREST ARE INVESTIGATED
IMMEDIATELY, AND A PERSON WHO HAS A CONFLICT OF INTEREST SHALL NOT
PARTICIPATE IN DISCUSSIONS ON ANY MATTER RELATED TO THE CONFLICT.

COMPLETED QUESTIONNAIRES ARE AVAILABLE FOR INSPECTION BY ANY BOARD MEMBER
AND MAY BE REVIEWED BY THE ORGANIZATION'S LEGAL COUNSEL. THE FINANCE

WON-EX 0096

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

DEPARTMENT MONITORS NEW CONTRACTS AND INVOICE PAYMENTS TO MAKE SURE THAT
THE POLICY IS FOLLOWED.

PROCESS FOR DETERMINING COMPENSATION

FORM 990, PART VI, LINE 15

AN INDEPENDENT COMPENSATION COMMITTEE HAS BEEN ESTABLISHED BY THE BOARD
OF DIRECTORS TO SECURE DATA FROM AND ABOUT COMPARABLE NONPROFIT
ORGANIZATIONS IN OUR AREA TO BENCHMARK PAY. THE COMMITTEE WAS
ESTABLISHED TO FURTHER COLLECT OTHER PUBLISHED SURVEY DATA, WHEN
APPROPRIATE, OF FOR-PROFIT ORGANIZATIONS FOR SPECIFIC FUNCTIONAL
COMPETENCIES SUCH AS FINANCE AND HUMAN RESOURCES. TOGETHER WITH THIS DATA
FROM THE COMPARABLE LOCAL ORGANIZATIONS, DATA FROM THESE MARKET SEGMENTS
ARE USED TO FORM A "MARKET COMPOSITE" TO ASSESS THE COMPETITIVENESS,
FAIRNESS AND APPROPRIATENESS OF COMPENSATION PAID BY WONDERWORK TO ITS
EXECUTIVES AND OTHER EMPLOYEES.

WONDERWORK'S COMPENSATION STRATEGY AND IMPLEMENTATION IS ADMINISTERED BY
THIS COMPENSATION COMMITTEE, WHICH WILL REPORT ITS FINDINGS TO THE BOARD
OF DIRECTORS. THE BOARD, THROUGH THIS COMMITTEE, IS RESPONSIBLE FOR
ESTABLISHING AND MAINTAINING A COMPETITIVE COMPENSATION PROGRAM FOR THE
ORGANIZATION AND COORDINATING AN ANNUAL REVIEW BY AN INDEPENDENT REVIEWER
(OR AN INTERNAL DETERMINATION) TO EVALUATE THE ORGANIZATION'S EXECUTIVE
COMPENSATION AGAINST THE COMPETITIVE MARKET. FOLLOWING THE REVIEW OF THIS
EVALUATION, THE BOARD APPROVES, FOR SELECTED KEY EXECUTIVES, BASE
SALARIES AND ANNUAL INCENTIVE OPPORTUNITY ADJUSTMENTS (IF ANY), AND
OBJECTIVES AND GOALS FOR THE UPCOMING YEAR.

WON-EX 0097

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

COMPENSATION REVIEWS ARE CONTEMPORANEOUSLY DOCUMENTED IN BOARD AND
COMMITTEE MINUTES.

DOCUMENT DISCLOSURE

FORM 990, PART VI, LINE 19

THE ORGANIZATION MAKES THE FORM 990 AVAILABLE TO THE PUBLIC BY RETAINING

A COPY AT ITS HEADQUARTERS IN NEW YORK CITY. THE FORM 990 IS ALSO

PUBLISHED ON THE INTERNET ON THE ORGANIZATION'S WEBSITE. THE

ORGANIZATIONS FINANCIAL STATEMENTS ARE ALSO AVAILABLE ON THE WEBSITE

(WWW.WONDERWORK.ORG).

THE ORGANIZATION'S GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY

ARE AVAILABLE UPON REQUEST.

OTHER CHANGES IN NET ASSETS

FORM 990, PART XI, LINE 5

$(114,687) UNREALIZED LOSSES

(1) PRIOR PERIOD ADJUSTMENT

----------

$(114,688)

FORM 990, PART VI, LINE 17 - STATES                    ATTACHMENT 1

AL,AK,AZ,AR,CA,CO,CT,

DC,FL,GA,HI,IL,KS,KY,ME,MD,MA,MI,

MN,MS,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,

RI,SC,TN,UT,VA,WA,WV,WI,

WON-EX 0098

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 10:00 AM 04/18/2012*
*FILED 10:00 AM 04/18/2012*
*SRV 120448397 - 4949958 FILE*

# STATE OF DELAWARE
## CERTIFICATE OF AMENDMENT
## (A CORPORATION WITHOUT CAPITAL STOCK)

The corporation, Surgery for the Poor, Inc.

organized and existing under the laws of the State of Delaware, hereby certifies as follows:

(1) That at a meeting a vote of the members of the governing body was taken for and against the amendment to the Certificate of Incorporation, said Amendment being as follows: see attached amended Article First, amending the name of the corporation, and Article Third amending the purpose of the corporation.

(2) That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, said corporation has caused this certificate to be signed this 12 day of April , A.D 20 12 .

By: _____
Authorized Officer

Name: BRIAN MULLANEY
Print or Type

Articles of Amendment
Articles of Incorporation
Surgery for the Poor, Inc.
p.2

Articles First and Third of the Articles of Incorporation are hereby amended as follows:

FIRST:  The name of the Corporation is WonderWork, Inc.

THIRD:  The Corporation shall be operated exclusively for charitable and educational purposes within the meaning of 501(c)(3) of the Internal Revenue Code of 1986, as now in effect or as may hereafter by amended ("the Code"):  The purposes for which the Corporation is formed are to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries, suffering from disease, illness, or disability, including but not necessarily limited to blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as to educate doctors and the public on potential treatments and surgical techniques, and creating general awareness of these disabilities and available treatments.

The Corporation shall be a nonprofit corporation and may engage in all lawful activities for which nonprofit corporations may be organized under the General Corporation Law of Delaware and shall further be authorized to engage in other charitable and educational activities consistent with an organization exempt from Federal Income Taxation under §501(c)(3) of the Internal Revenue Code, including provision of assistance and funds to other § 501(c)(3) organizations.

In furtherance thereof, the Corporation may receive property by gift, devise or bequest, invest or reinvest the same, and apply the income and principal thereof, as the Board of Directors may from time to time determine, either directly or through contributions to any charitable organization or organizations, exclusively for charitable and educations purposes, and engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law.

WON-EX 0100



# State of Delaware
### SECRETARY OF STATE
### DIVISION OF CORPORATIONS
P.O. BOX 898
DOVER, DELAWARE 19903

120448397

9241694
COPILEVITZ & CANTER, LLC.
310 N. 20TH STREET
STE 300
KANSAS CITY        MO    64108
ATTN: DIANE STINE

04-26-2012

| DESCRIPTION | AMOUNT |
|---|---|
| WONDERWORK, INC. | |
| 4949958    0240   Amendment; Domestic | |
| Receiving/Indexing | 115.00 |
| Data Entry Fee | 5.00 |
| Court Municipality Fee, Wilm. | 20.00 |
| Surcharge Assessment-New Castle | 6.00 |
| Page Assessment-New Castle Count | 27.00 |
| FILING TOTAL | 173.00 |
| TOTAL PAYMENTS | 253.00 |
| CHARGED TO ACCOUNT | 80.00CR |

WON-EX 0101



**WONDERWORK, INC.**

Financial Statements

June 30, 2012

(With Independent Auditors' Report Thereon)

WON-EX 0102



KPMG LLP
345 Park Avenue
New York, NY 10154-0102

## Independent Auditors' Report

The Board of Directors
WonderWork, Inc.:

We have audited the accompanying balance sheet of WonderWork, Inc. (WonderWork) as of June 30, 2012, and the related statements of activities, functional expenses, and cash flows for the year then ended. These financial statements are the responsibility of WonderWork's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the organization's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of WonderWork, Inc. as of June 30, 2012, and the changes in its net assets and its cash flows for the year then ended in conformity with U.S. generally accepted accounting principles.

*KPMG LLP*

April 15, 2013

KPMG LLP is a Delaware limited liability partnership, the U.S. member firm of KPMG International Cooperative ("KPMG International"), a Swiss entity.

**WONDERWORK, INC.**

Balance Sheet

June 30, 2012

### Assets

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 818,242 |
| Contributions receivable (note 3) | | 769,451 |
| Prepaid expenses and other assets | | 45,625 |
| Investments (note 4) | | 5,391,576 |
| Property and equipment, net | | 13,604 |
| Total assets | $ | 7,038,498 |

### Liabilities and Net Assets

| | | |
|---|---|---:|
| Liabilities: | | |
| Accounts payable and accrued expenses | $ | 70,061 |
| Grants and other amounts payable to to Help Me See (note 7) | | 733,000 |
| Total liabilities | | 803,061 |
| Commitments (note 5) | | |
| Net assets: | | |
| Unrestricted | | 5,465,750 |
| Temporarily restricted (note 6) | | 769,687 |
| Total net assets | | 6,235,437 |
| Total liabilities and net assets | $ | 7,038,498 |

See accompanying notes to financial statements.

2

WON-EX 0104

**WONDERWORK, INC.**

Statement of Activities

Year ended June 30, 2012

| | | |
|---|---|---:|
| Change in unrestricted net assets: | | |
| Contributions and revenues: | | |
| Contributions | $ | 7,109,303 |
| Service fees (note 7) | | 1,333,667 |
| Investment loss | | (112,676) |
| Total contributions and revenues | | 8,330,294 |
| Expenses: | | |
| Program- surgical treatments | | 2,297,070 |
| Management and general | | 114,451 |
| Fundraising | | 321,738 |
| Total expenses | | 2,733,259 |
| Increase in unrestricted net assets | | 5,597,035 |
| Change in temporarily restricted net assets: | | |
| Contributions | | 769,687 |
| Increase in temporarily restricted net assets | | 769,687 |
| Increase in net assets | | 6,366,722 |
| Net assets (deficit) at beginning of year | | (131,285) |
| Net assets at end of year | $ | 6,235,437 |

See accompanying notes to financial statements.

3

WON-EX 0105

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2012

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | | **Supporting services** | | |
| Grants | $ 789,800 | — | — | — | 789,800 |
| Salaries and related expenses | 1,020,640 | 90,230 | 130,049 | 220,279 | 1,240,919 |
| Professional and consulting fees | 179,164 | 7,871 | 11,345 | 19,216 | 198,380 |
| Occupancy | 105,498 | 9,327 | 13,442 | 22,769 | 128,267 |
| Office supplies and services | 64,420 | 5,694 | 8,208 | 13,902 | 78,322 |
| Printing, publications and postage | 8,721 | — | 154,735 | 154,735 | 163,456 |
| Depreciation | 2,714 | 240 | 346 | 586 | 3,300 |
| Travel and other miscellaneous | 126,113 | 1,089 | 3,613 | 4,702 | 130,815 |
| Total expenses | $ 2,297,070 | 114,451 | 321,738 | 436,189 | 2,733,259 |

See accompanying notes to the financial statements.

4

WON-EX 0106

**WONDERWORK, INC.**

Statement of Cash Flows

Year ended June 30, 2012

| | | |
|---|---|---:|
| Cash flows from operating activities: | | |
| Change in net assets | $ | 6,366,722 |
| Adjustments to reconcile change in net assets to net cash provided by operating activities: | | |
| Depreciation and amortization | | 3,300 |
| Net realized and unrealized loss on investments | | 112,676 |
| Changes in operating assets and liabilities: | | |
| Contributions receivables | | (769,451) |
| Prepaid expenses and other assets | | (45,625) |
| Accounts payable and accrued expenses | | 63,355 |
| Grants and other amounts payable to Help Me See | | 733,000 |
| Net cash provided by operating activities | | 6,463,977 |
| | | |
| Cash flows from investing activities: | | |
| Purchases of investments | | (5,504,252) |
| Purchases of property and equipment | | (16,904) |
| Net cash used in investing activities | | (5,521,156) |
| | | |
| Cash flows from financing activities: | | |
| Loans from officer | | 205,000 |
| Repayments of officer loans | | (331,000) |
| Net cash used in financing activities | | (126,000) |
| Net increase in cash and cash equivalents | | 816,821 |
| | | |
| Cash and cash equivalents, beginning of year | | 1,421 |
| | | |
| Cash and cash equivalents, end of year | $ | 818,242 |

See accompanying notes to financial statements.

5

WON-EX 0107

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2012

**(1) Description of Organization**

WonderWork, Inc. (the Organization or WonderWork) is a not-for-profit organization which was incorporated in 2011 to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries suffering from disease, illness, or disability, including, but not necessarily limited to, blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as to educate doctors and the public on potential treatments and surgical techniques, and creating general awareness of these disabilities and available treatments. Since the Organization was recently formed, many activities consisted of start-up related costs for the year ended June 30, 2012. In 2012, WonderWork changes its name from Surgery for the Poor, Inc. to WonderWork, Inc.

**(2) Summary of Significant Accounting Policies**

**(a) Basis of Presentation**

The Organization's financial statements have been prepared on the accrual basis of accounting in accordance with U.S. generally accepted accounting principles. Net assets and the changes therein are classified and reported as follows:

Unrestricted – Net assets that are not subject to donor-imposed restrictions.

Temporarily Restricted – Net assets subject to donor-imposed restrictions that will be met by actions of the Organization and/or the passage of time.

Revenues are reported as increases in unrestricted net assets unless their use is limited by explicit donor-imposed restrictions or by law. Expenses are reported as decreases in net assets.

**(b) Fair Value**

Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability (an exit price) in the principal or most advantageous market for the asset or liability in an orderly transaction between market participants on the measurement date. The three levels of the fair value hierarchy are as follows:

- Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that a reporting entity has the ability to access at the measurement date.

- Level 2 inputs are inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly.

- Level 3 inputs are unobservable inputs for the asset or liability.

(Continued)

WON-EX 0108

(c)  *Accounting Estimates*

The preparation of the financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingencies at the date of the financial statements and revenues and expenses recognized during the reporting period. Significant estimates made in the preparation of the financial statements include the net realizable value of contributions and functional expense allocations. Actual results could differ from those estimates.

(d)  *Cash and Cash Equivalents*

The Organization considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents. The Organization maintains cash and cash equivalents in major financial institutions. Cash held by a financial institution that exceeds the Federal Deposit Insurance Corporation (FDIC) limits exposes the Organization to a concentration of credit risk.

(e)  *Investments*

Investments are reported at fair value based upon quoted market prices.

(f)  *Contributions*

Contributions, including unconditional promises to give (pledges), are recognized as revenue upon receipt and are considered to be unrestricted unless they are received with donor stipulations that limit their use through either purpose or time restrictions. Contributions with donor stipulations that limit their use are considered to be temporarily restricted until the donor restrictions expire, that is, when a time restriction ends or purpose restriction is fulfilled. Upon the expiration of donor stipulations, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the accompanying statement of activities as net assets released from restrictions. Contributions expected to be received after one year are discounted at a risk-adjusted rate of return.

(g)  *Loans from Officer*

The Organization received several start-up interest free loans from an officer of WonderWork. These loans were repaid in 2012.

(h)  *Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation and amortization. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets ranging from 3 to 5 years. Leasehold improvements are amortized on a straight-line basis over the lesser of their useful lives or the term of the lease.

(Continued)

WON-EX 0109

(i) *Income Taxes*

WonderWork recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. Income generated from activities unrelated to the WonderWork's exempt purpose is subject to tax under Internal Revenue Code Section 511. WonderWork utilizes a threshold of more-likely-than-not for recognition and derecognition of tax positions taken or expected to be taken in a tax return. WonderWork did not recognize any unrelated business income tax liability for the year ended June 30, 2012.

(3) **Contributions and Contributions Receivable**

Contributions receivable are scheduled to be collected as follows at June 30, 2012:

| | | |
|---|---|---:|
| Amount due in one year or less | $ | 200,000 |
| Amount due in 2 to 5 years | | 597,046 |
| Less: discount to present value at 2.4% | | (27,595) |
| | $ | 769,451 |

Contributions receivable is from one donor at June 30, 2012. Approximately 90% of contributions were received from three donors in 2012.

(4) **Investments**

The following presents the Organization's investments measured at fair value as of June 30, 2012. These all represent Level 1 investments in the fair value hierarchy.

| | | |
|---|---|---:|
| Vanguard total world stock | $ | 5,177,412 |
| Vanguard all world stock excluding US | | 158,224 |
| Vanguard-other | | 53,511 |
| Common stocks - domestic | | 2,101 |
| Money market fund | | 328 |
| Total investments | $ | 5,391,576 |

(5) **Commitments**

The Organization has a lease agreement for the rental of its office in New York. Approximate minimum annual rentals related to this lease is as follows for the year ended subsequent to June 30, 2012:

| | | |
|---|---|---:|
| 2013 | $ | 182,500 |
| 2014 | | 182,500 |
| 2015 | | 182,500 |
| 2016 | | 136,875 |
| | $ | 684,375 |

Rent expense for the year ended June 30, 2012 amounted to approximately $128,000.

(Continued)

WON-EX 0110

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2012

(6) **Temporarily Restricted Net Assets**

Temporarily restricted net assets are primarily time restricted at June 30, 2012.

(7) **Payable to Help Me See**

In August 2011, WonderWork entered into an agreement to provide services to Help Me See, another not-for-profit, with a similar mission to assist them in programmatic, fundraising, and administrative efforts. In exchange for these services, WonderWork is to receive $166,667 per month. In addition, the agreement requires WonderWork to transfer $2 million to Help Me See at the termination of the agreement on September 1, 2016 and provide an annual grant to Help Me See equal to the amount of largest grant WonderWork made from unrestricted funds in that year. If the agreement terminates early, the $2 million grant is required to be prorated over the contract period. Help Me See informed WonderWork of its intention to terminate the agreement. Currently, Help Me See and WonderWork are in arbitration regarding the termination clause in the agreement.

(8) **Subsequent Events**

In connection with the preparation of the financial statements, the Organization evaluated subsequent events after the balance sheet date of June 30, 2012 through April 15, 2013 which was the date the financial statements were available to be issued and determined that there were no additional matters that are required to be disclosed.



COPY OF WITH PAPER
RECEIVED

JUN 1 7 2013

THE OFFICE OF THE ATTORNEY GENERAL
CHARITIES BUREAU

9

WON-EX 0111

# COPILEVITZ & CANTER, LLC

ATTORNEYS AT LAW

310 W. 20TH STREET
SUITE 300
KANSAS CITY, MISSOURI 64108
(816) 472-9000 • FAX (816) 472-5000

June 12, 2013

NYS Department of Law
Office of the Attorney General
Charities Bureau - Registration Section
120 Broadway
New York, NY 10271

Re:                    **WonderWork, Inc.**
Registration No.:      **43-28-70**

To Whom It May Concern:

Enclosed please find the above-referenced organization's completed CHAR 500 Annual
Filing and the $275 filing fee. Accompanying this renewal form, you will also find the
IRS Form 990 and Financial Audit for the fiscal year ended June 30, 2012.

Should you have any questions, or require additional information, please contact me.

Very truly yours,

Abby Dobbins
Paralegal
For the Firm
adobbins@cckc-law.com

Enclosures

WON-EX 0112

# FUCHS
# EXHIBIT 6

*(handwritten)* any  275

**Form CHAR500**

This form used for
Article 7-A, EPTL and dual filers
(replaces forms CHAR 497,
CHAR 610 and CHAR 006)

## Annual Filing for Charitable Organizations
New York State Department of Law (Office of the Attorney General)
Charities Bureau - Registration Section
120 Broadway
New York, NY 10271
http://www.charitiesnys.com

**2 0 1 2**

**Open to Public Inspection**

### 1. General Information

a. For the fiscal year beginning (mm/dd/yyyy) 07/01/2012 and ending (mm/dd/yyyy) 06/30/2013

b. Check if applicable for NYS:
- [ ] Address change
- [ ] Name change
- [ ] Initial filing
- [ ] Final filing
- [ ] Amended filing
- [ ] NY registration pending

c. Name of organization

WONDERWORK, INC.

Number and street (or P.O. box if mail not delivered to street address)    Room/suite

420 5TH AVENUE, 27TH F/L

City or town, state or country and zip + 4

NEW YORK, NY 10018

d. Fed. employer ID no. (EIN)
27-4159217

e. NY State registration no.
43-28-70

f. Telephone number
(212)729-1855

g. Email

### 2. Certification - Two Signatures Required

We certify under penalties of perjury that we reviewed this report, including all attachments, and to the best of our knowledge and belief, they are true, correct and complete in accordance with the laws of the State of New York applicable to this report.

a. President or Authorized Officer

Signature    Printed Name BRIAN MULLANEY    Title CEO    Date 5/6/14

b. Chief Financial Officer or Treas.

Signature    Printed Name HANA FUCHS    Title CFO    Date 5/6/14

### 3. Annual Report Exemption Information

a. **Article 7-A** annual report exemption (Article 7-A registrants and dual registrants)

Check ▶ [ ] if total contributions from NY State (including residents, foundations, corporations, government agencies, etc.) did not exceed $25,000 **and** the organization did not engage a professional fund raiser (PFR) or fund raising counsel (FRC) to solicit contributions during this fiscal year.

**NOTE:** An organization may claim this exemption if no PFR or FRC was used **and** either: 1) it received an allocation from a federated fund, United Way or incorporated community appeal **and** contributions from other sources did not exceed $25,000 **or** 2) it received all or substantially all of its contributions from one government agency to which it submitted an annual report similar to that required by Article 7-A.

b. **EPTL** annual report exemption (EPTL registrants and dual registrants)

Check ▶ [ ] if gross receipts did not exceed $25,000 and assets (market value) did not exceed $25,000 at any time during this fiscal year.

For EPTL or Article-7A registrants claiming the annual report exemption under the one law under which they are registered and for dual registrants claiming the annual report exemptions under both laws, simply complete part 1 (General Information), part 2 (Certification) and part 3 (Annual Report Exemption Information) above. *Do not* submit a fee, *do not* complete the following schedules and *do not* submit any attachments to this form.

### 4. Article 7-A Schedules

If you did not check the Article 7-A annual report exemption above, complete the following for this fiscal year:

a. Did the organization use a professional fund raiser, fund raising counsel or commercial co-venturer for fund raising activity in NY State? . . . [X] Yes*  [ ] No
* If "Yes", complete Schedule 4a.

b. Did the organization receive government contributions (grants)? . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes*  [X] No
* If "Yes", complete Schedule 4b.

### 5. Fee Submitted: See last page for summary of fee requirements.

Indicate the filing fee(s) you are submitting along with this form:

a. Article 7-A filing fee . . . . . . . . . . . . . . . . . . . . . . . . . . $   25.00
b. EPTL filing fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $  250.00
c. Total fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $  275.00

*Submit only one check or money order for the total fee, payable to "NYS Department of Law"*

### 6. Attachments - For organizations that are not claiming annual report exemptions under both laws, see last page for required attachments → → →

WON-EX 0113



EXHIBIT 6
WIT: Fuchs
DATE: 3-14-17
DEBRA STEVENS, RPR, CRR

## Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsels (FRC), Commercial Co-Venturers (CCV)

If you checked the box in question 4.a. on page 1, complete the following schedule for each PFR, FRC or CCV that the organization engaged for fund raising activity in NY State:

1. Type of fund raising professional (FRP):

   Professional fund raiser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X]
   Fund raising counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ]
   Commercial co-venturer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ]

2. Name of FRP:

   NNE MARKETING

   Number and street (or P.O. box if mail is not delivered to street address):
   754 Massachusetts Ave

   City or town, state or country and zip + 4:
   Arlington, MA 02476

3. FRP telephone number:

   (781) 777-1951

4. Services provided by FRP (provide description):
   Refine and develop the strategic program direction for direct mail.
   Recommend creative and audience tests.
   Develop creative product for the direct marketing program.
   Manage production house relationship.
   Manage the relationship with list broker.

5. Compensation arrangement with FRP (provide description):
   NNE was paid $32,000 per month for February - June 2013 (5 months).

6. Dates of contract . . . . . . . . . . . . . . . . . . . . . . . . . . . 02/01/2013 through 08/28/2013
                                          (mm/dd/yyyy)        (mm/dd/yyyy)

7. Amount paid to FRP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 160,000.00

8. If services were provided by a CCV, did the CCV provide the charitable organization with the interim report(s) required by §§ 173-a. 3 of the Executive Law?

WON-EX 0114

## 5. Fee Instructions

*The filing fee depends on the organization's Registration Type. For details on Registration Type and filing fees, see the Instructions for Form CHAR500.*

| Organization's Registration Type | Fee Instructions |
|---|---|
| • Article 7-A | Calculate the Article 7-A filing fee using the table in part a below.  The EPTL filing fee is $0. |
| • EPTL | Calculate the EPTL filing fee using the table in part b below.  The Article 7-A filing fee is $0. |
| • Dual | Calculate both the Article 7-A and EPTL filing fees using the tables in parts a and b below.  Add the Article 7-A and EPTL filing fees together to calculate the total fee.  Submit a _single_ check or money order for the total fee. |

a)  Article 7-A filing fee

| Total Support & Revenue | Article 7-A Fee |
|---|---|
| more than $250,000 | $25 |
| up to $250,000 * | $10 |

> \* *Any organization that contracted with or used the services of a professional fund raiser (PFR) or fund raising counsel (FRC) during the reporting period must pay an Article 7-A filing fee of $25, regardless of total support and revenue.*

b)  EPTL filing fee

| Net Worth at End of Year | EPTL Fee |
|---|---|
| Less than $50,000 | $25 |
| $50,000 or more, but less than $250,000 | $50 |
| $250,000 or more, but less than $1,000,000 | $100 |
| $1,000,000 or more, but less than $10,000,000 | $250 |
| $10,000,000 or more, but less than $50,000,000 | $750 |
| $50,000,000 or more | $1500 |

## 6. Attachments - Document Attachment Check-List

*Check the boxes for the documents you are attaching.*

**For All Filers**

Filing Fee

[X] Single check or money order payable to "NYS Department of Law"

Copies of Internal Revenue Service Forms

| [X] IRS Form 990 | [ ] IRS Form 990-EZ | [ ] IRS Form 990-PF |
|---|---|---|
| [X] All required schedules (including Schedule B) | [ ] All required schedules (including Schedule B) | [ ] All required schedules (including Schedule B) |
| [ ] IRS Form 990-T | [ ] IRS Form 990-T | [ ] IRS Form 990-T |

---

**Additional Article 7-A Document Attachment Requirement**

Independent Accountant's Report

[X] Audit Report *(total support & revenue more than $250,000)*
[ ] Review Report *(total support & revenue $100,001 to $250,000)*
[ ] No Accountant's Report Required *(total support & revenue not more than $100,000)*

2J3545 1.000

WON-EX 0115

Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No. 1545-0047

**2012**

Open to Public Inspection

**A** For the 2012 calendar year, or tax year beginning 07/01, 2012, and ending 06/30, 20 13

| B Check if applicable: | C Name of organization | D Employer identification number |
|---|---|---|
| Address change | WONDERWORK, INC. | 27-4159217 |
| Name change | Doing Business As | |
| Initial return | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | E Telephone number |
| | 420 5TH AVENUE, 27TH FLOOR | (212) 729-1855 |
| Terminated | City, town or post office, state, and ZIP code | |
| Amended return | NEW YORK, NY 10018 | G Gross receipts $ 7,698,619. |
| Application pending | F Name and address of principal officer: BRIAN MULLANEY | H(a) Is this a group return for affiliates? ☐ Yes ☒ No |
| | 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018 | H(b) Are all affiliates included? ☐ Yes ☐ No |

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no.) ☐ 4947(a)(1) or ☐ 527    If "No," attach a list. (see instructions)

**J** Website: ▶ WWW.WONDERWORK.ORG    H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ▶   **L** Year of formation: 2011   **M** State of legal domicile: DE

### Part I   Summary

**1** Briefly describe the organization's mission or most significant activities:

PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND
ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES,
SUFFERING FROM DISEASE, ILLNESS, OR DISABILITY.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) | **3** | 4. |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 3. |
| **5** Total number of individuals employed in calendar year 2012 (Part V, line 2a) | **5** | 8. |
| **6** Total number of volunteers (estimate if necessary) | **6** | 2. |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 0 |
| **b** Net unrelated business taxable income from Form 990-T, line 34 | **7b** | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) | | 7,878,990. | 7,446,172. |
| **9** Program service revenue (Part VIII, line 2g) | | 1,333,667. | 0 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) | | 2,011. | 146,128. |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | | 0 | 0 |
| **12** Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | | 9,214,668. | 7,592,300. |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1-3) | | 789,800. | 1,327,500. |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) | | 0 | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | | 1,240,919. | 1,369,968. |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) | | 0 | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ▶ 4,785,598. | | | |
| **17** Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | | 702,540. | 9,137,776. |
| **18** Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | | 2,733,259. | 11,835,244. |
| **19** Revenue less expenses. Subtract line 18 from line 12 | | 6,481,409. | -4,242,944. |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **20** Total assets (Part X, line 16) | | 7,038,498. | 8,357,225. |
| **21** Total liabilities (Part X, line 26) | | 803,061. | 5,628,863. |
| **22** Net assets or fund balances. Subtract line 21 from line 20 | | 6,235,437. | 2,728,362. |

### Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

| Signature of officer | Date 5/6/14 |
|---|---|
| BRIAN MULLANEY CEO | |
| Type or print name and title | |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Devin L. Duncan | demetron | 4/14/14 | | P01249521 |
| Firm's name ▶ KPMG LLP | | | Firm's EIN ▶ 13-5565207 | |
| Firm's address ▶ 345 PARK AVENUE NEW YORK, NY 10154-0102 | | | Phone no. 212-758-9700 | |

May the IRS discuss this return with the preparer shown above? (see instructions)    ☒ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.       Form **990** (2012)

JSA
2E1010 1.000

4099FL 2231 4/28/2014 4:38:52 PM V 12-7.12    2910316       PAGE 1

WON-EX 0116

Form **8868**
(Rev. January 2013)

Department of the Treasury
Internal Revenue Service

## Application for Extension of Time To File an Exempt Organization Return

OMB No. 1545-1709

▶ File a separate application for each return.

- If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box . . . . . . . . . . . . . . . . ▶ [X]
- If you are filing for an Additional (Not Automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

*Do not complete Part II unless* you have already been granted an automatic 3-month extension on a previously filed Form 8868.

**Electronic filing** *(e-file).* You can electronically file Form 8868 if you need a 3-month automatic extension of time to file (6 months for a corporation required to file Form 990-T), or an additional (not automatic) 3-month extension of time. You can electronically file Form 8868 to request an extension of time to file any of the forms listed in Part I or Part II with the exception of Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, which must be sent to the IRS in paper format (see instructions). For more details on the electronic filing of this form, visit *www.irs.gov/efile* and click on *e-file for Charities & Nonprofits.*

**Part I** **Automatic 3-Month Extension of Time.** Only submit original (no copies needed).

A corporation required to file Form 990-T and requesting an automatic 6-month extension - check this box and complete
Part I only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ [ ]

*All other corporations (including 1120-C filers), partnerships, REMICs, and trusts must use Form 7004 to request an extension of time to file income tax returns.*

| Type or print | Name of exempt organization or other filer, see instructions. | Enter filer's identifying number, see instructions. |
|---|---|---|
| | | Employer identification number (EIN) or |
| **File by the due date for filing your return. See instructions.** | WONDERWORK, INC. | 27-4159217 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | Social security number (SSN) |
| | 420 5TH AVENUE, 27TH F/L | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . . . . . . . [0][1]

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | Form 990-T (corporation) | 07 |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

- The books are in the care of ▶ HANA FUCHS

Telephone No. ▶ 212-729-1855        FAX No. ▶

- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . ▶ [ ]
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . . ▶ [ ] . If it is for part of the group, check this box . . . . . . ▶ [ ] and attach a list with the names and EINs of all members the extension is for.

1   I request an automatic 3-month (6 months for a corporation required to file Form 990-T) extension of time
    until 2/15_____ , 20 14 , to file the exempt organization return for the organization named above. The extension is
    for the organization's return for:
    ▶ [ ] calendar year 20 _____ or
    ▶ [X] tax year beginning 07/01 , 20 12 , and ending 06/30 , 20 13 .

2   If the tax year entered in line 1 is for less than 12 months, check reason: [ ] Initial return   [ ] Final return
    [ ] Change in accounting period

3a  If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
    nonrefundable credits. See instructions.                                                                    | 3a | $ |
 b  If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and
    estimated tax payments made. Include any prior year overpayment allowed as a credit.                        | 3b | $ |
 c  Balance due. Subtract line 3b from line 3a. Include your payment with this form, if required, by using EFTPS
    (Electronic Federal Tax Payment System). See instructions.                                                  | 3c | $ |

**Caution.** If you are going to make an electronic fund withdrawal with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

For Privacy Act and Paperwork Reduction Act Notice, see instructions.                                Form **8868** (Rev. 1-2013)

JSA
3F8054 2.000

WON-EX 0117

- If you are filing for an **Additional (Not Automatic) 3-Month Extension,** complete only Part II and check this box . . . . . . . ▶ ☒
- **Note.** Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.
- If you are filing for an **Automatic 3-Month Extension,** complete only Part I (on page 1).

| Part II | Additional (Not Automatic) 3-Month Extension of Time. Only file the original (no copies needed). |
|---|---|

| Type or print | Name of exempt organization or other filer, see instructions. | Enter filer's identifying number, see instructions |
|---|---|---|
| | WONDERWORK, INC. | Employer identification number (EIN) or |
| File by the due date for filing your return. See Instructions. | Number, street, and room or suite no. If a P.O. box, see instructions. | 27-4159217 |
| | 420 5TH AVENUE, 27TH F/L | Social security number (SSN) |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . . . . . . . | 0 | 1 |

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | | |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 (other than individual) | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

**STOP!** Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.

- The books are in the care of ▶ HANA FUCHS
  Telephone No. ▶ 212-729-1855 x 103                    Fax No. ▶ 212-729-4541
- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . . . ▶ ☐ . If it is for part of the group, check this box . . . . . . . ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4  I request an additional 3-month extension of time until May 15 , 20 14 .
5  For calendar year _____ , or other tax year beginning July 1 , 20 12 , and ending June 30 , 20 13 .
6  If the tax year entered in line 5 is for less than 12 months, check reason: ☐ Initial return  ☐ Final return
   ☐ Change in accounting period
7  State in detail why you need the extension Additional time is needed to prepare a complete and accurate form.
   _____

| 8a | If this application is for Forms 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. | 8a | $ |
|---|---|---|---|
| b | If this application is for Forms 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868. | 8b | $ |
| c | **Balance Due.** Subtract line 8b from line 8a. Include your payment with this form, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. | 8c | $ |

**Signature and Verification must be completed for Part II only.**

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ _Jonathan_____  Title ▶ Paid Preparer   Date ▶ 2/3/14

Form **8868** (Rev. 1-2014)

WON-EX 0118

Form 990 (2012)                                                                    Page **2**

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response to any question in this Part III . . . . . . . . . . . . . . . . . . . . . . . [X]

1   Briefly describe the organization's mission:

PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND
ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES, SUFFERING
FROM DISEASE, ILLNESS, OR DISABILITY.  FOR MORE INFORMATION, SEE
SCHEDULE O.

2   Did the organization undertake any significant program services during the year which were not listed on the
    prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes  [X] No
    If "Yes," describe these new services on Schedule O.

3   Did the organization cease conducting, or make significant changes in how it conducts, any program
    services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes  [ ] No
    If "Yes," describe these changes on Schedule O.

4   Describe the organization's program service accomplishments for each of its three largest program services, as measured by
    expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
    the total expenses, and revenue, if any, for each program service reported.

4a  (Code: _____) (Expenses $ __6,522,235._ including grants of $ ___1,327,500._ ) (Revenue $ _____0_ )
    WONDERWORK EMPOWERS AND PARTNERS WITH LOCAL SURGEONS, HOSPITALS,
    AND CHARITABLE ORGANIZATIONS ENGAGED IN THE DELIVERY OF
    LIFE-CHANGING SURGERY AND RELATED CARE BY PROVIDING TRAINING AND
    EDUCATION, FINANCIAL SUPPORT AND EQUIPMENT. WONDERWORK ALSO
    EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL
    CARE AND RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH
    DISABILITIES.

4b  (Code: _____) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c  (Code: _____) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d  Other program services (Describe in Schedule O.)
    (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e  Total program service expenses ▶ _____6,522,235.

JSA
2E1020 2.000

Form **990** (2012)

4099FL 2231 4/28/2014  4:38:52 PM  V 12-7.12          2910316              PAGE 2

WON-EX 0119

## Part IV   Checklist of Required Schedules

| | | | Yes | No |
|---|---|---|:---:|:---:|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes,"* *complete Schedule A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | X | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . . . . . . | **2** | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . . . . . . . . . . . . . | **3** | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . . . . . . . . | **4** | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . . . . . | **7** | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . . | **10** | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | X | |
| b | Did the organization report an amount for investments-other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . . . . . . | **11b** | | X |
| c | Did the organization report an amount for investments-program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . . . . . | **11c** | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . . . . . . . . . . . . . | **11d** | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | | X |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . | **11f** | X | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12a** | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* . . . . . . . . | **12b** | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . . . . . | **13** | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . . . . . . . | **14a** | X | |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . | **14b** | X | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or assistance to any organization or entity located outside the United States? *If "Yes," complete Schedule F, Parts II and IV* . . . . . | **15** | X | |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or assistance to individuals located outside the United States? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . | **16** | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I (see instructions)* . . . . . . . . . | **17** | X | |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . . . . . . . . . . . . | **18** | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . . . . . . | **20a** | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . . . . | **20b** | | |

WON-EX 0120

**Part IV** **Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants and other assistance to any government or organization in the United States on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . . . . . . . | 21 | X | |
| 22 | Did the organization report more than $5,000 of grants and other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . . . . . . . . . . . | 22 | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 | X | |
| 24 a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25* . . . . . . . . . . . . . . . . . . . . . . . . . | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . . . | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . . . | 24d | | |
| 25 a | **Section 501(c)(3) and 501(c)(4) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25b | | X |
| 26 | Was a loan to or by a current or former officer, director, trustee, key employee, highly compensated employee, or disqualified person outstanding as of the end of the organization's tax year? *If "Yes," complete Schedule L, Part II* . . | 26 | | X |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . . | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . | 28a | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . . . . . . | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . . . . . . . . . . | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 | | X |
| 35 a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . . . . . . . . | 35a | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . . . . . . . . . | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? Note. All Form 990 filers are required to complete Schedule O . . . . . . . . . . . . . . . . . . . . . . . | 38 | X | |

Form **990** (2012)

## Part V  Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response to any question in this Part V . . . . . . . . . . . . . . . . . . . . . . . . . . □

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . . . . . . . | 1a | 7 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable. . . . . . . . | 1b | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . . . . | | 1c | X | |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return  . . | 2a | 6 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? . . . . . . | | 2b | X | |
| | Note. If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) . . . . | | | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year?  . . . . | | 3a | | X |
| b | If "Yes," has it filed a Form 990-T for this year? If "No," provide an explanation in Schedule O . . . . . . | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 4a | | X |
| b | If "Yes," enter the name of the foreign country: ▶ _____ | | | | |
| | See instructions for filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . . | | 5a | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? . . . . | | 5b | | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . . | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . | | 6a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 6b | | |
| 7 | Organizations that may receive deductible contributions under section 170(c). | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 7a | | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 7c | | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . . . . . . | 7d | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . | | 7e | | X |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . . | | 7f | | X |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | 7h | | |
| 8 | Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations. Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . | | 8 | | |
| 9 | Sponsoring organizations maintaining donor advised funds. | | | | |
| a | Did the organization make any taxable distributions under section 4966? . . . . . . . . . . . . . . . . | | 9a | | |
| b | Did the organization make a distribution to a donor, donor advisor, or related person? . . . . . . . . . . . | | 9b | | |
| 10 | Section 501(c)(7) organizations. Enter: | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . . . . . | 10a | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . | 10b | | | |
| 11 | Section 501(c)(12) organizations. Enter: | | | | |
| a | Gross income from members or shareholders . . . . . . . . . . . . . . . . . . . . | 11a | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . . . . . | 11b | | | |
| 12a | Section 4947(a)(1) non-exempt charitable trusts. Is the organization filing Form 990 in lieu of Form 1041? | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year  . . . . | 12b | | | |
| 13 | Section 501(c)(29) qualified nonprofit health insurance issuers. | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . . . | | 13a | | |
| | Note. See the instructions for additional information the organization must report on Schedule O. | | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . . . | 13b | | | |
| c | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . . . . . | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . . | | 14a | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O . . . . . | | 14b | | |

WON-EX 0122

**Part VI** Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response to any question in this Part VI . . . . . . . . . . . . . . . . . . . . . . . [X]

## Section A. Governing Body and Management

|  |  | Yes | No |
|---|---|---|---|
| **1a** Enter the number of voting members of the governing body at the end of the tax year. **1a** 4 | | | |
| If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| **b** Enter the number of voting members included in line 1a, above, who are independent . . . . . . **1b** 3 | | | |
| **2** Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** | | X |
| **3** Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? . . . | **3** | | X |
| **4** Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . . | **4** | | X |
| **5** Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . . . | **5** | | X |
| **6** Did the organization have members or stockholders? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | | X |
| **7a** Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7a** | | X |
| **b** Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7b** | | X |
| **8** Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| **a** The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8a** | X | |
| **b** Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . . . . . . . | **8b** | X | |
| **9** Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . . . . . . | **9** | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  | Yes | No |
|---|---|---|---|
| **10a** Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . . . . . . . . . . . . . | **10a** | | X |
| **b** If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? . . . . | **10b** | | |
| **11a** Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . | **11a** | X | |
| **b** Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . . . . . . . . . . . | **12a** | X | |
| **b** Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12b** | X | |
| **c** Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12c** | X | |
| **13** Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | X | |
| **14** Did the organization have a written document retention and destruction policy? . . . . . . . . . . . . . . . . . | **14** | X | |
| **15** Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** The organization's CEO, Executive Director, or top management official . . . . . . . . . . . . . . . . . . . . | **15a** | X | |
| **b** Other officers or key employees of the organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **15b** | X | |
| If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **16a** | | X |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . . . . . . . . . . | **16b** | | |

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed ▶ ATTACHMENT 1

**18** Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

[X] Own website　　[ ] Another's website　　[X] Upon request　　[ ] Other *(explain in Schedule O)*

**19** Describe in Schedule O whether (and if so, how), the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, physical address, and telephone number of the person who possesses the books and records of the organization: ▶ RANA FUCHS 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018　　212-729-1855

Form **990** (2012)

WON-EX 0123

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Check if Schedule O contains a response to any question in this Part VII . . . . . . . . . . . . . . . . . . . ☒

**Section A.    Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) BRIAN MULLANEY CO-FOUNDER, PRESIDENT AND CEO | 40.00 | X | | X | | | | 475,000. | 0 | 23,277. |
| (2) THEODORE DYSART SECRETARY/TREASURER | 1.00 | X | | | | | | 0 | 0 | 0 |
| (3) RAVI KANT DIRECTOR | 1.00 | X | | | | | | 0 | 0 | 0 |
| (4) JJ CONEYS AUDIT COMMITTEE CHAIR | 1.00 | X | | | | | | 0 | 0 | 0 |
| (5) HANA FUCHS CFO | 40.00 | | | X | | | | 200,000. | 0 | 8,198. |
| (6) KAREN LAZARUS DIRECTOR OF STRATEGIC PROJECTS | 40.00 | | | | | X | | 121,500. | 0 | 16,379. |
| (7) BARBARA SCHULMAN DIRECTOR MANAGER | 40.00 | | | | | X | | 140,000. | 0 | 6,523. |
| (8) | | | | | | | | | | |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |
| (12) | | | | | | | | | | |
| (13) | | | | | | | | | | |
| (14) | | | | | | | | | | |

JSA
2E1041 1.000

Form **990** (2012)

WON-EX 0124

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**1b** Sub-total . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | | | | | | | | 936,500. | 0 | 54,377.

**c** Total from continuation sheets to Part VII, Section A . . . ▶ | | | | | | | | 0 | 0 | 0

**d** Total (add lines 1b and 1c) . . . . . . . . . . . . . . . . . ▶ | | | | | | | | 936,500. | 0 | 54,377.

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ **4**

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any former officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . | **3** | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | X | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . . . . . | **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| ATTACHMENT 2 | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 in compensation from the organization ▶ **1**

WON-EX 0125

**Part VIII** | Statement of Revenue

Check if Schedule O contains a response to any question in this Part VIII . . . . . . . . . . . . . . . ☐

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512, 513, or 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns . . . . . . . . | 1a | | | | |
| | b | Membership dues . . . . . . . . | 1b | | | | |
| | c | Fundraising events . . . . . . . . | 1c | | | | |
| | d | Related organizations . . . . . . . | 1d | | | | |
| | e | Government grants (contributions) . . | 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above . | 1f | 7,446,172. | | | |
| | g | Noncash contributions included in lines 1a-1f: $ | | | | | |
| | h | **Total. Add lines 1a-1f** . . . . . . . . . . . . . ▶ | | 7,446,172. | | | |
| **Program Service Revenue** | 2a | | Business Code | | | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | | | | | | |
| | e | | | | | | |
| | f | All other program service revenue . . . . . | | | | | |
| | g | **Total. Add lines 2a-2f** . . . . . . . . . . . ▶ | | 0 | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts) . . . . . . . . . . . . ▶ | | 41,243. | | | 41,243. |
| | 4 | Income from investment of tax-exempt bond proceeds ▶ | | 0 | | | |
| | 5 | Royalties . . . . . . . . . . . . . . . . . . ▶ | | 0 | | | |
| | 6a | Gross rents . . . . . . . . | (i) Real     (ii) Personal | | | | |
| | b | Less: rental expenses . . . | | | | | |
| | c | Rental income or (loss) . . | | | | | |
| | d | Net rental income or (loss) . . . . . . . . . . . ▶ | | 0 | | | |
| | 7a | Gross amount from sales of assets other than inventory | (i) Securities 211,204.   (ii) Other | | | | |
| | b | Less: cost or other basis and sales expenses . . . . | 106,319. | | | | |
| | c | Gain or (loss) . . . . . . | 104,885. | | | | |
| | d | Net gain or (loss) . . . . . . . . . . . . . . . ▶ | | 104,885. | | | 104,885. |
| | 8a | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . . . . . . . . a | | | | | |
| | b | Less: direct expenses . . . . . . . . . b | | | | | |
| | c | Net income or (loss) from fundraising events . . . . . . . ▶ | | 0 | | | |
| | 9a | Gross income from gaming activities. See Part IV, line 19 . . . . . . . . . a | | | | | |
| | b | Less: direct expenses . . . . . . . . . b | | | | | |
| | c | Net income or (loss) from gaming activities . . . . . . . . ▶ | | 0 | | | |
| | 10a | Gross sales of inventory, less returns and allowances . . . . . . . . . a | | | | | |
| | b | Less: cost of goods sold . . . . . . . . b | | | | | |
| | c | Net income or (loss) from sales of inventory. . . . . . . . ▶ | | 0 | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | 11a | | | | | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | All other revenue . . . . . . . . . | | | | | |
| | e | **Total. Add lines 11a-11d** . . . . . . . . . . . ▶ | | 0 | | | |
| | 12 | **Total revenue. See instructions** . . . . . . . . . . . ▶ | | 7,592,300. | | | 146,128. |

Form **990** (2012)

WON-EX 0126

| Part IX | Statement of Functional Expenses | | | |
|---|---|---|---|---|

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response to any question in this Part IX . . . . . . . . . . . . . . . . . . . . □

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1　Grants and other assistance to governments and organizations in the United States. See Part IV, line 21 . | 785,000. | 785,000. | | |
| 2　Grants and other assistance to individuals in the United States. See Part IV, line 22 . . . . . . | 0 | | | |
| 3　Grants and other assistance to governments, organizations, and individuals outside the United States. See Part IV, lines 15 and 16 . . | 542,500. | 542,500. | | |
| 4　Benefits paid to or for members . . . . . . . . . | 0 | | | |
| 5　Compensation of current officers, directors, trustees, and key employees . . . . . . . . . | 705,251. | 564,201. | 51,717. | 89,333. |
| 6　Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . | 0 | | | |
| 7　Other salaries and wages . . . . . . . . . . | 516,196. | 258,557. | 81,216. | 176,423. |
| 8　Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . . . | | | | |
| 9　Other employee benefits . . . . . . . . . . . | 87,979. | 54,558. | 11,103. | 22,318. |
| 10　Payroll taxes . . . . . . . . . . . . . . | 60,542. | 40,563. | 6,660. | 13,319. |
| 11　Fees for services (non-employees): | | | | |
| a　Management . . . . . . . . . . . . . . . | 0 | | | |
| b　Legal . . . . . . . . . . . . . . . . . | 351,944. | 119,661. | 175,972. | 56,311. |
| c　Accounting . . . . . . . . . . . . . . . | 46,570. | 15,834. | 23,285. | 7,451. |
| d　Lobbying . . . . . . . . . . . . . . . . | 0 | | | |
| e　Professional fundraising services. See Part IV, line 17 | 0 | | | |
| f　Investment management fees . . . . . . . . | 0 | | | |
| g　Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O.) . . . . . | 319,706. | 108,700. | 159,853. | 51,153. |
| 12　Advertising and promotion . . . . . . . . . | 35,830. | 16,123. | | 19,707. |
| 13　Office expenses . . . . . . . . . . . . . | 7,964,650. | 3,638,361. | 7,060. | 4,319,229. |
| 14　Information technology . . . . . . . . . . . | 17,736. | 15,272. | 650. | 1,814. |
| 15　Royalties . . . . . . . . . . . . . . . . | 0 | | | |
| 16　Occupancy . . . . . . . . . . . . . . . | 199,999. | 172,223. | 7,325. | 20,451. |
| 17　Travel . . . . . . . . . . . . . . . . . | 182,410. | 175,114. | 1,824. | 5,472. |
| 18　Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19　Conferences, conventions, and meetings . . . . | 0 | | | |
| 20　Interest . . . . . . . . . . . . . . . . | 0 | | | |
| 21　Payments to affiliates . . . . . . . . . . . | 0 | | | |
| 22　Depreciation, depletion, and amortization . . . . | 12,659. | 10,901. | 464. | 1,294. |
| 23　Insurance . . . . . . . . . . . . . . . | 6,272. | 4,667. | 282. | 1,323. |
| 24　Other expenses. Itemize expenses not covered above. (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a　------------------------------ | | | | |
| b　------------------------------ | | | | |
| c　------------------------------ | | | | |
| d　------------------------------ | | | | |
| e　All other expenses ---------------- | | | | |
| 25　Total functional expenses. Add lines 1 through 24e | 11,835,244. | 6,522,235. | 527,411. | 4,785,598. |
| 26　Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☒ if following SOP 98-2 (ASC 958-720) . . . . . . | 7,864,436. | 3,538,996. | | 4,325,440. |

JSA
2E1052 1.000
Form **990** (2012)

WON-EX 0127

| **Part X** | **Balance Sheet** | | | |
|---|---|---|---|---|

Check if Schedule O contains a response to any question in this Part X . . . . . . . . . . . . . . . . . . . . . .

| | | | (A)<br>Beginning of year | | (B)<br>End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash - non-interest-bearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7,124. | **1** | 191,061. |
| | 2 | Savings and temporary cash investments . . . . . . . . . . . . . . . . . . . . . | 811,118. | **2** | 987,168. |
| | 3 | Pledges and grants receivable, net . . . . . . . . . . . . . . . . . . . . . . . . . | 769,451. | **3** | 570,156. |
| | 4 | Accounts receivable, net . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **4** | 0 |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **5** | 0 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions). Complete Part II of Schedule L . . . . . | 0 | **6** | 0 |
| | 7 | Notes and loans receivable, net . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **7** | 0 |
| | 8 | Inventories for sale or use . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **8** | 0 |
| | 9 | Prepaid expenses and deferred charges . . . . . . . . . . . . . . . . . . . . . | 45,625. | **9** | 45,625. |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | **10a** | 147,548. | |
| | b | Less: accumulated depreciation . . . . . . . | **10b** | 15,958. | 13,604. | **10c** | 131,590. |
| | 11 | Investments - publicly traded securities . . . . . . . . . . . . . . . . . . . | 5,391,576. | **11** | 6,431,625. |
| | 12 | Investments - other securities. See Part IV, line 11 . . . . . . . . . . . . . . | 0 | **12** | 0 |
| | 13 | Investments - program-related. See Part IV, line 11 . . . . . . . . . . . . . . | 0 | **13** | 0 |
| | 14 | Intangible assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **14** | 0 |
| | 15 | Other assets. See Part IV, line 11 . . . . . . . . . . . . . . . . . . . . . . . | 0 | **15** | 0 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . . . . . . . . | 7,038,498. | **16** | 8,357,225. |
| **Liabilities** | 17 | Accounts payable and accrued expenses . . . . . . . . . . . . . . . . . . . . . | 70,061. | **17** | 1,236,660. |
| | 18 | Grants payable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 733,000. | **18** | 733,000. |
| | 19 | Deferred revenue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **19** | 0 |
| | 20 | Tax-exempt bond liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **20** | 0 |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D . . . . . | 0 | **21** | 0 |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L . . . . . . . . . . . . | 0 | **22** | 0 |
| | 23 | Secured mortgages and notes payable to unrelated third parties . . . . . . . . | 0 | **23** | 1,159,203. |
| | 24 | Unsecured notes and loans payable to unrelated third parties . . . . . . . . . | 0 | **24** | 2,500,000. |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **25** | 0 |
| | 26 | **Total liabilities.** Add lines 17 through 25 . . . . . . . . . . . . . . . . . . | 803,061. | **26** | 5,628,863. |
| **Net Assets or Fund Balances** | | **Organizations that follow SFAS 117 (ASC 958), check here** ▶ ☒ **and complete lines 27 through 29, and lines 33 and 34.** | | | |
| | 27 | Unrestricted net assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5,465,750. | **27** | 873,356. |
| | 28 | Temporarily restricted net assets . . . . . . . . . . . . . . . . . . . . . . . | 769,687. | **28** | 1,855,006. |
| | 29 | Permanently restricted net assets . . . . . . . . . . . . . . . . . . . . . . . | | **29** | 0 |
| | | **Organizations that do not follow SFAS 117 (ASC 958), check here** ▶ ☐ **and complete lines 30 through 34.** | | | |
| | 30 | Capital stock or trust principal, or current funds . . . . . . . . . . . . . . | | **30** | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund . . . . . . . | | **31** | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds . . . . . . . | | **32** | |
| | 33 | Total net assets or fund balances . . . . . . . . . . . . . . . . . . . . . . . | 6,235,437. | **33** | 2,728,362. |
| | 34 | Total liabilities and net assets/fund balances . . . . . . . . . . . . . . . . | 7,038,498. | **34** | 8,357,225. |

Form **990** (2012)

WON-EX 0128

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response to any question in this Part XI . . . . . . . . . . . . . . . . . . . ☐

| | | | |
|---|---|---|---:|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . . . | 1 | 7,592,300. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . . . . . . . | 2 | 11,835,244. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . | 3 | -4,242,944. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . . . . | 4 | 6,235,437. |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . . . . . . . . . | 5 | 735,869. |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | 0 |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | 0 |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | 0 |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . . . . . | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | 2,728,362. |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response to any question in this Part XII . . . . . . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash  ☒ Accrual  ☐ Other | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . | 2a | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . . . . | 2b | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | ☒ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | 3b | | |

Form **990** (2012)

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section
4947(a)(1) nonexempt charitable trust.
▶ Attach to Form 990 or Form 990-EZ. ▶ See separate instructions.

OMB No. 1545-0047

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

## Part I  Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 11, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E.)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An organization that normally receives: (1) more than 33 1/3 % of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

10 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

11 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2). See **section 509(a)(3).** Check the box that describes the type of supporting organization and complete lines 11e through 11h.

  a ☐ Type I   b ☐ Type II   c ☐ Type III-Functionally integrated   d ☐ Type III-Non-functionally integrated

  e ☐ By checking this box, I certify that the organization is not controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2).

  f  If the organization received a written determination from the IRS that it is a Type I, Type II, or Type III supporting organization, check this box ................................................................. ☐

  g  Since August 17, 2006, has the organization accepted any gift or contribution from any of the following persons?

| | | Yes | No |
|---|---|---|---|
| (i) | A person who directly or indirectly controls, either alone or together with persons described in (ii) and (iii) below, the governing body of the supported organization? ..................... | 11g(i) | | |
| (ii) | A family member of a person described in (i) above? ........................... | 11g(ii) | | |
| (iii) | A 35% controlled entity of a person described in (i) or (ii) above? ..................... | 11g(iii) | | |

  h  Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-9 above or IRC section (see instructions)) | (iv) Is the organization in col. (i) listed in your governing document? | | (v) Did you notify the organization in col. (i) of your support? | | (vi) Is the organization in col. (i) organized in the U.S.? | | (vii) Amount of monetary support |
|---|---|---|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No | Yes | No | |
| **(A)** | | | | | | | | | |
| **(B)** | | | | | | | | | |
| **(C)** | | | | | | | | | |
| **(D)** | | | | | | | | | |
| **(E)** | | | | | | | | | |
| **Total** | | | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for
Form 990 or 990-EZ.

Schedule A (Form 990 or 990-EZ) 2012

WON-EX 0130

WONDERWORK, INC.    27-4159217  

**Part II** Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 0 | 0 | 50,767. | 7,878,990. | 7,446,172. | 15,375,929. |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | 0 |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| 4 Total. Add lines 1 through 3 | | | 50,767. | 7,878,990. | 7,446,172. | 15,375,929. |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 8,084,899. |
| 6 Public support. Subtract line 5 from line 4. | | | | | | 7,291,030. |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | | 50,767. | 7,878,990. | 7,446,172. | 15,375,929. |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | 6. | 1,314. | 43,243. | 42,563. |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | 0 |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | 0 |
| 11 Total support. Add lines 7 through 10 | | | | | | 15,418,492. |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | 12 | 1,333,667. |
| 13 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here | | | | | | ▶ [X] |

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2012 (line 6, column (f) divided by line 11, column (f))   | 14 | %

15 Public support percentage from 2011 Schedule A, Part II, line 14   | 15 | %

16a **33 1/3 % support test - 2012.** If the organization did not check the box on line 13, and line 14 is 33 1/3 % or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶ ☐

b **33 1/3 % support test - 2011.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3 % or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶ ☐

17a **10%-facts-and-circumstances test - 2012.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization   ▶ ☐

b **10%-facts-and-circumstances test - 2011.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization   ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions   ▶ ☐

JSA
2E1220 1.000
4099PL 2231 4/28/2014 4:38:52 PM V 12-7.12 2910316  PAGE 14

WON-EX 0131

WONDERWORK, INC.                                        27-4159217

## Part III    Support Schedule for Organizations Described in Section 509(a)(2)
    (Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II.
    if the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 1   Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2   Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3   Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4   Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5   The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6   Total. Add lines 1 through 5 | | | | | | |
| 7a   Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b   Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| c   Add lines 7a and 7b | | | | | | |
| 8   Public support (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 9   Amounts from line 6 | | | | | | |
| 10a   Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| b   Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| c   Add lines 10a and 10b | | | | | | |
| 11   Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| 12   Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | |
| 13   Total support. (Add lines 9, 10c, 11, and 12.) | | | | | | |

14   First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here ........................................................... ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| 15   Public support percentage for 2012 (line 8, column (f) divided by line 13, column (f)) | 15 | % |
| 16   Public support percentage from 2011 Schedule A, Part III, line 15 | 16 | % |

### Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| 17   Investment income percentage for 2012 (line 10c, column (f) divided by line 13, column (f)) | 17 | % |
| 18   Investment income percentage from 2011 Schedule A, Part III, line 17 | 18 | % |

19a   33 1/3% support tests - 2012. If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ..... ▶ ☐

  b   33 1/3% support tests - 2011. If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ..... ▶ ☐

20   Private foundation. If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ..... ▶ ☐

WON-EX 0132

**Part IV**    **Supplemental Information.** Complete this part to provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See instructions).

WON-EX 0133

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990. ▶ See separate instructions.

OMB No. 1545-0047

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts. Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . . | | |
| 2 | Aggregate contributions to (during year) . . . . | | |
| 3 | Aggregate grants from (during year) . . . . . . | | |
| 4 | Aggregate value at end of year . . . . . . . . | | |

5   Did the organization inform all donors and donor advisors in writing that the assets held in donor advised
funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . ☐ Yes ☐ No

6   Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used
only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose
conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part II — Conservation Easements. Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1   Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)    ☐ Preservation of an historically important land area
☐ Protection of natural habitat    ☐ Preservation of a certified historic structure
☐ Preservation of open space

2   Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation
easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . . . . . . . . . . . | 2d | |

3   Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the
tax year ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4   Number of states where property subject to conservation easement is located ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

5   Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

6   Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

7   Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
▶ $ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

8   Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)
(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9   In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and
balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the
organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets. Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a   If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b   If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
public service, provide the following amounts relating to these items:

   (i) Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _ _

   (ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _ _

2   If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the
following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a   Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _

b   Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _

WON-EX 0134

**Part III**   Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)*

3   Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition      d ☐ Loan or exchange programs

b ☐ Scholarly research      e ☐ Other _____

c ☐ Preservation for future generations

4   Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5   During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?   ☐ Yes ☐ No

**Part IV**   Escrow and Custodial Arrangements. Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a   Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?   ☐ Yes ☐ No

b   If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| c Beginning balance | 1c | |
| d Additions during the year | 1d | |
| e Distributions during the year | 1e | |
| f Ending balance | 1f | |

2a   Did the organization include an amount on Form 990, Part X, line 21?   ☐ Yes ☐ No

b   If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . . . . . ☐

**Part V**   Endowment Funds. Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| 1a Beginning of year balance . . . . | | | | | |
| b Contributions . . . . . . . . . . | | | | | |
| c Net investment earnings, gains, and losses . . . . . . . . . . . | | | | | |
| d Grants or scholarships . . . . . | | | | | |
| e Other expenditures for facilities and programs . . . . . . . . . . | | | | | |
| f Administrative expenses . . . . | | | | | |
| g End of year balance . . . . . . . | | | | | |

2   Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a   Board designated or quasi-endowment ▶ _____%

b   Permanent endowment ▶ _____ %

c   Temporarily restricted endowment ▶ _____ %

The percentages in lines 2a, 2b, and 2c should equal 100%.

3a   Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| (i) unrelated organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(i) | | |
| (ii) related organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(ii) | | |
| b If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . . . | 3b | | |

4   Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI**   Land, Buildings, and Equipment. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a Land . . . . . . . . . . . . . . . | | | | |
| b Buildings . . . . . . . . . . . . . . | | | | |
| c Leasehold improvements . . . . . . . . . | | 56,677. | 1,667. | 55,010. |
| d Equipment . . . . . . . . . . . . | | 45,950. | 12,168. | 33,782. |
| e Other . . . . . . . . . . . . . . | | 44,921. | 2,123. | 42,798. |
| Total. Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . ▶ | | | | 131,590. |

Schedule D (Form 990) 2012

**Part VII** Investments - Other Securities. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . . . . . . . . | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| (I) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

**Part VIII** Investments - Program Related. See Form 990, Part X, line 13.

| (a) Description of investment type | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | |

**Part IX** Other Assets. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 15.) . . . . . . . . . . . . . . . . . . . . . ▶ | |

**Part X** Other Liabilities. See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| (11) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 25.) ▶ | | |

2. FIN 48 (ASC 740) Footnote. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII. . . . . . . . . . . . . [X]

WON-EX 0136

WONDERWORK, INC.  27-4159217

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return** | | | |
|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | **1** | 8,328,169. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| a | Net unrealized gains on investments | **2a** 735,869. | | |
| b | Donated services and use of facilities | **2b** | | |
| c | Recoveries of prior year grants | **2c** | | |
| d | Other (Describe in Part XIII.) | **2d** | | |
| e | Add lines 2a through 2d | | **2e** | 735,869. |
| 3 | Subtract line 2e from line 1 | | **3** | 7,592,300. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | |
| b | Other (Describe in Part XIII.) | **4b** | | |
| c | Add lines 4a and 4b | | **4c** | |
| 5 | Total revenue. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 12.)* | | **5** | 7,592,300. |
| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return** | | | |
| 1 | Total expenses and losses per audited financial statements | | **1** | 11,835,244. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| a | Donated services and use of facilities | **2a** | | |
| b | Prior year adjustments | **2b** | | |
| c | Other losses | **2c** | | |
| d | Other (Describe in Part XIII.) | **2d** | | |
| e | Add lines 2a through 2d | | **2e** | |
| 3 | Subtract line 2e from line 1 | | **3** | 11,835,244. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | |
| b | Other (Describe in Part XIII.) | **4b** | | |
| c | Add lines 4a and 4b | | **4c** | |
| 5 | Total expenses. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 18.)* | | **5** | 11,835,244. |

| **Part XIII** | **Supplemental Information** |
|---|---|

Complete this part to provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

SEE PAGE 5

-------------------------------------------------------------------

-------------------------------------------------------------------

-------------------------------------------------------------------

-------------------------------------------------------------------

-------------------------------------------------------------------

-------------------------------------------------------------------

-------------------------------------------------------------------

Schedule D (Form 990) 2012

WON-EX 0137

**Part XIII** **Supplemental Information** *(continued)*

UNCERTAIN TAX POSITIONS

FORM 990, SCHEDULE D, PART X, LINE 2

WONDERWORK RECOGNIZES THE EFFECT OF INCOME TAX POSITIONS ONLY IF THOSE

POSITIONS ARE MORE LIKELY THAN NOT OF BEING SUSTAINED.  INCOME GENERATED

FROM ACTIVITIES UNRELATED TO WONDERWORK'S EXEMPT PURPOSE IS SUBJECT TO

TAX UNDER INTERNAL REVENUE CODE SECTION 511.  WONDERWORK UTILIZES A

THRESHOLD OF MORE-LIKELY-THAN-NOT FOR RECOGNITION AND DERECOGNITION OF

TAX POSITIONS TAKEN OR EXPECTED TO BE TAKEN IN A TAX RETURN.  WONDERWORK

DID NOT RECOGNIZE ANY UNRELATED BUSINESS INCOME FOR TAX LIABILITY FOR THE

YEAR ENDED JUNE 30, 2013 AND 2012.

WON-EX 0138

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" to Form 990,
Part IV, line 14b, 15, or 16.
▶ Attach to Form 990. ▶ See separate instructions.

OMB No. 1545-0047

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** General Information on Activities Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 14b.

1 **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes [ ] No

2 **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

3 Activities per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in region | (d) Activities conducted in region (by type) (e.g., fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for and investments in region |
|---|---|---|---|---|---|
| **(1)** SOUTH ASIA | | | GRANTMAKING | | 365,000. |
| **(2)** SOUTH ASIA | | 1. | PROGRAM SERVICES | PROGRAM CONSULTING | 4,505. |
| **(3)** SUB-SAHARAN AFRICA | | | GRANTMAKING | | 80,000. |
| **(4)** EUROPE | | | GRANTMAKING | | 60,000. |
| **(5)** EAST ASIA AND THE PACIFIC | | | GRANTMAKING | | 17,500. |
| **(6)** NORTH AMERICA | | | GRANTMAKING | | 10,000. |
| **(7)** SOUTH AMERICA | | | GRANTMAKING | | 10,000. |
| **(8)** | | | | | |
| **(9)** | | | | | |
| **(10)** | | | | | |
| **(11)** | | | | | |
| **(12)** | | | | | |
| **(13)** | | | | | |
| **(14)** | | | | | |
| **(15)** | | | | | |
| **(16)** | | | | | |
| **(17)** | | | | | |
| **3a** Sub-total . . . . . . . . . | | 1. | | | 547,000. |
| **b** Total from continuation sheets to Part I . . . . . . . | | | | | |
| **c** Totals (add lines 3a and 3b) | | 1. | | | 547,000. |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule F (Form 990) 2012

WON-EX 0139

WONDERWORK, INC.

**Part II**   Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (2) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (3) | | | EAST ASIA/PACIFIC | CATARACT | 10,000 | CHECK | | | |
| (4) | | | SOUTH ASIA | CLUBFOOT | 16,000 | WIRE | | | |
| (5) | | | SOUTH ASIA | CLUBFOOT | 10,000 | WIRE | | | |
| (6) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (7) | | | SOUTH ASIA | CLUBFOOT | 10,000 | WIRE | | | |
| (8) | | | NORTH AMERICA | BURN, CATARA | 10,000 | CHECK | | | |
| (9) | | | SOUTH AMERICA | CLUBFOOT | 10,000 | CHECK | | | |
| (10) | | | SUB-SAHARAN AFRICA | BURN | 10,500 | WIRE | | | |
| (11) | | | SUB-SAHARAN AFRICA | BURN | 10,000 | CHECK | | | |
| (12) | | | SOUTH ASIA | BURN | 60,000 | WIRE | | | |
| (13) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (14) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (15) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (16) | | | SOUTH ASIA | CLUBFOOT | 10,000 | CHECK | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter. . . . . . . . . . . . . . . . . . . . . . ▲

3   Enter total number of other organizations or entities. . . . . . . . . . . . . . . . . . ▲

JSA
2E1275 1.000
4099FL 2231   4/28/2014   4:38:52 PM   V 12-7.12   2910316

WON-EX 0140

WONDERWORKS, INC.                                                          27-4159217

Schedule F (Form 990) 2012                                                        Page 2

**Part II** Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (2) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (3) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (4) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (5) | | | SOUTH ASIA | CATARACT, ED | 10,000 | CHECK | | | |
| (6) | | | SOUTH ASIA | BURN | 10,000 | WIRE | | | |
| (7) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (8) | | | SOUTH ASIA | CATARACT | 49,000 | WIRE | | | |
| (9) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (10) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (11) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (12) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (13) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (14) | | | SOUTH ASIA | CATARACT | 10,000 | CHECK | | | |
| (15) | | | EUROPE/ICELAND/GREENLAND | CATARACT | 10,000 | CHECK | | | |
| (16) | | | SUB-SAHARAN AFRICA | INTERCEPHALO | 15,000 | CHECK | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter. . . . . . . . . . . . . . . . . . . ▲
3   Enter total number of other organizations or entities. . . . . . . . . . . . . . . . . . . ▲

WON-EX 0141

WONDERWORK, INC.

Schedule F (Form 990) 2012

**Part II** Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | CHECK | | | |
| (2) | | | SOUTH ASIA | CLUBFOOT, BU | 10,000 | CHECK | | | |
| (3) | | | SOUTH ASIA | BURN | 10,000 | CHECK | | | |
| (4) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (5) | | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | WIRE | | | |
| (6) | | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | WIRE | | | |
| (7) | | | EUROPE/ICELAND/GREENLAND | BURN | 10,000 | CHECK | | | |
| (8) | | | EAST ASIA/PACIFIC | HOLE IN HEAR | 7,500 | CHECK | | | |
| (9) | | | SUB-SAHARAN AFRICA | CLUBFOOT | 10,000 | WIRE | | | |
| (10) | | | EUROPE/ICELAND/GREENLAND | BRE SURGERY | 10,000 | CHECK | | | |
| (11) | | | EUROPE/ICELAND/GREENLAND | BRST SURGERY | 10,000 | CHECK | | | |
| (12) | | | EUROPE/ICELAND/GREENLAND | CLUBFOOT, CA | 10,000 | CHECK | | | |
| (13) | | | EUROPE/ICELAND/GREENLAND | BURN | 10,000 | CHECK | | | |
| (14) | | | | | | | | | |
| (15) | | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter. . . . . . . . . . . . . . . . . . ▲

3 Enter total number of other organizations or entities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▲ . . . 45.

Schedule F (Form 990) 2012

WON-EX 0142

Schedule F (Form 990) 2012     Page 2

**Part III**   Grants and Other Assistance to Individuals Outside the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 16.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of non-cash assistance | (g) Description of non-cash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| **(1)** | | | | | | | |
| **(2)** | | | | | | | |
| **(3)** | | | | | | | |
| **(4)** | | | | | | | |
| **(5)** | | | | | | | |
| **(6)** | | | | | | | |
| **(7)** | | | | | | | |
| **(8)** | | | | | | | |
| **(9)** | | | | | | | |
| **(10)** | | | | | | | |
| **(11)** | | | | | | | |
| **(12)** | | | | | | | |
| **(13)** | | | | | | | |
| **(14)** | | | | | | | |
| **(15)** | | | | | | | |
| **(16)** | | | | | | | |
| **(17)** | | | | | | | |
| **(18)** | | | | | | | |

Schedule F (Form 990) 2012

JSA
2E1276 1.000   4099FL 2231   4/28/2014   4:38:52 PM   V 12-7.12     2910316     PAGE 42

WON-EX 0143

| Part IV | Foreign Forms |
|---------|---------------|

1.   Was the organization a U.S. transferor of property to a foreign corporation during the tax year? If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see instructions for Form 926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

2.   Did the organization have an interest in a foreign trust during the tax year? If "Yes," the organization may be required to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see instructions for Forms 3520 and 3520-A) . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

3.   Did the organization have an ownership interest in a foreign corporation during the tax year? If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations. (see instructions for Form 5471) . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

4.   Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see instructions for Form 8621) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

5.   Did the organization have an ownership interest in a foreign partnership during the tax year? If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons With Respect To Certain Foreign Partnerships. (see instructions for Form 8865) . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

6.   Did the organization have any operations in or related to any boycotting countries during the tax year? If "Yes," the organization may be required to file Form 5713, International Boycott Report (see instructions for Form 5713) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☒ No

WON-EX 0144

**Part V**  **Supplemental Information**
Complete this part to provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f)
(accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III
(accounting method; and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to
provide any additional information (see Instructions).

GRANT ELIGIBILITY

FORM 990, SCHEDULE F, PART I, LINE 1

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS. THE SELECTION PROCESS ALSO INCLUDES OBTAINING THIRD

PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING WITH

THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

**SCHEDULE G**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

# Supplemental Information Regarding Fundraising or Gaming Activities

Complete if the organization answered "Yes" to Form 990, Part IV, lines 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.
▶ Attach to Form 990 or Form 990-EZ. ▶ See separate instructions.

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** | Fundraising Activities. Complete if the organization answered "Yes" to Form 990, Part IV, line 17.
Form 990-EZ filers are not required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

a [X] Mail solicitations    e [X] Solicitation of non-government grants
b [X] Internet and email solicitations    f [ ] Solicitation of government grants
c [ ] Phone solicitations    g [ ] Special fundraising events
d [X] In-person solicitations

**2a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   [X] Yes   [ ] No

**b** If "Yes," list the ten highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| **1** NNE MARKETING | DIRECT MAIL | | X | | 160,000. | -160,000. |
| **2** | | | | | | |
| **3** | | | | | | |
| **4** | | | | | | |
| **5** | | | | | | |
| **6** | | | | | | |
| **7** | | | | | | |
| **8** | | | | | | |
| **9** | | | | | | |
| **10** | | | | | | |
| **Total** . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | | | | | 160,000. | -160,000. |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

AL, AK, AZ, AR, CA, CO, CT, DC, FL, GA, HI, IL,

KS, KY, ME, MD, MA, MI, MN, MS, NH, NJ, NM, NY, NC, ND, OH,

OK, OR, PA, RI, SC, TN, UT, VA, WA, WV, WI,

Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.    Schedule G (Form 990 or 990-EZ) 2012
JSA
2E1281 1.000
4099FL 2231 4/28/2014 4:38:52 PM V 12-7.12    2910316    PAGE 45

WON-EX 0146

**Part II**   **Fundraising Events.** Complete if the organization answered "Yes" to Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a) Event #1 | (b) Event #2 | (c) Other events | (d) Total events (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| | | (event type) | (event type) | (total number) | |
| Revenue | 1 Gross receipts . . . . . . . . . . . | | | | |
| | 2 Less: Contributions . . . . . . . . . | | | | |
| | 3 Gross income (line 1 minus line 2) . | | | | |
| Direct Expenses | 4 Cash prizes . . . . . . . . . . . . | | | | |
| | 5 Noncash prizes . . . . . . . . . . | | | | |
| | 6 Rent/facility costs . . . . . . . . | | | | |
| | 7 Food and beverages . . . . . . . . | | | | |
| | 8 Entertainment . . . . . . . . . . | | | | |
| | 9 Other direct expenses . . . . . . . | | | | |

10 Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . . . . . . . . . . . . ▶ (           )

11 Net income summary. Combine line 3, column (d), and line 10 . . . . . . . . . . . . . . . . . . . ▶

**Part III**   **Gaming.** Complete if the organization answered "Yes" to Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue . . . . . . . . . . . | | | | |
| Direct Expenses | 2 Cash prizes . . . . . . . . . . . | | | | |
| | 3 Noncash prizes . . . . . . . . . | | | | |
| | 4 Rent/facility costs . . . . . . . . | | | | |
| | 5 Other direct expenses . . . . . . . | | | | |
| | 6 Volunteer labor . . . . . . . . . | Yes _____ % / No | Yes _____ % / No | Yes _____ % / No | |

7 Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . . . . . . . . . . . . ▶ (           )

8 Net gaming income summary. Combine line 1, column d, and line 7 . . . . . . . . . . . . . . . . . . . ▶

9 Enter the state(s) in which the organization operates gaming activities:

a Is the organization licensed to operate gaming activities in each of these states? . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

b If "No," explain: _____

_____

10 a Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? . . . . ☐ Yes ☐ No

b If "Yes," explain: _____

_____

Schedule G (Form 990 or 990-EZ) 2012                                                                    Page **3**

| | | | | |
|---|---|---|---|---|
| 11 | Does the organization operate gaming activities with nonmembers? . . . . . . . . . . . . . . . . . . . . . . . . | | ☐ Yes | ☐ No |
| 12 | Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ☐ Yes | ☐ No |
| 13 | Indicate the percentage of gaming activity operated in: | | | |
| a | The organization's facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13a | | % |
| b | An outside facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13b | | % |
| 14 | Enter the name and address of the person who prepares the organization's gaming/special events books and records: | | | |

Name ▶ _____

Address ▶ _____

| | | | | |
|---|---|---|---|---|
| 15 a | Does the organization have a contract with a third party from whom the organization receives gaming revenue? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ☐ Yes | ☐ No |
| b | If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount of gaming revenue retained by the third party ▶ $ _____ . | | | |
| c | If "Yes," enter name and address of the third party: | | | |

Name ▶ _____

Address ▶ _____

16  Gaming manager information:

Name ▶ _____

Gaming manager compensation ▶ $ _____

Description of services provided ▶ _____

☐ Director/officer        ☐ Employee        ☐ Independent contractor

17  Mandatory distributions:

| | | | | |
|---|---|---|---|---|
| a | Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | ☐ Yes | ☐ No |
| b | Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $ | | | |

**Part IV**  **Supplemental Information.** Complete this part to provide the explanation required by Part I, line 2b, columns (iii) and (v), and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also complete this part to provide any additional information (see instructions).

Schedule G (Form 990 or 990-EZ) 2012

WON-EX 0148

OMB No. 1545-0047

**SCHEDULE I**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.

▶ Attach to Form 990.

**2012**

Open to Public
Inspection

Name of the organization

WONDERWORK, INC.

Employer identification number

27-4159217

## Part I General Information on Grants and Assistance

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and
the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes [ ] No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|---|
| (1) CURE INTERNATIONAL 701 BOSLER AVENUE LEMOYNE, PA 17043 | 23-2846383 | 501(C)(3) | 190,000. | | | | CLUBFOOT |
| (2) RESURGE 145 N WOLFE ROAD SUNNYVALE, CA 94086 | 22-2927270 | 501(C)(3) | 10,000. | | | | BURN |
| (3) SURGICAL VOLUNTEERS INTERNATIONAL 6651½ E. MESA RIDGE CT TUCSON, AZ 85739 | 04-1816914 | 501(C)(3) | 10,000. | | | | BURN |
| (4) ASEES FOUNDATION 4000 LEGATO ROAD FAIRFAX, VA 22033 | 23-7383718 | 501(C)(3) | 30,000. | | | | CATARACT |
| (5) MAKE USA OFFICE 4 WEST 43RD STREET NEW YORK, NY 10036 | 13-1867411 | 501(C)(3) | 15,000. | | | | BURN |
| (6) SAHARA REPORTERS OR TRUST INC. 3712 OAKVILLE CT NEW HOPE, ROCKVILLE, MD 20850 | 13-1531548 | 501(C)(3) | 10,000. | | | | CATARACT |
| (7) UNITE FOR SIGHT 234 CHURCH STREET NEW HAVEN, CT 06510 | 32-0091616 | 501(C)(3) | 10,000. | | | | CATARACT |
| (8) MEDICAL EXCELLENCE FOUNDATION 10707 CORPORATE DRIVE STAFFORD, TX 77477 | 62-6046138 | 501(C)(3) | 10,000. | | | | CATARACT, BURN |
| (9) CHILDREN'S SURGICAL CENTRE PO BOX 2145 KODIAK, AK 99615 | 71-0987196 | 501(C)(3) | 10,000. | | | | BURN, CATARACT |
| (10) PROSTHETICS OUTREACH FOUNDATION 600 EAST PINE STREET SEATTLE, WA 98122 | 91-1453216 | 501(C)(3) | 10,000. | | | | CLUBFOOT |
| (11) LIGHTHOUSE INC. PO BOX 542 AVON, AL 05122 | 71-1740776 | 501(C)(3) | 15,000. | | | | CATARACT |
| (12) DOCTORS COLLABORATING TO HELP CHILDREN 32 OVERLOOK RD MAYLAND, MA 01778 | 27-3911278 | 501(C)(3) | 10,000. | | | | BURNS |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶
3 Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

JSA
2E1288 1.000 4099FL 2231 4/28/2014 4:38:52 PM V 12-7.12

Schedule I (Form 990) 2012

2910316

PAGE 48

WON-EX 0149

SCHEDULE I
(Form 990)

OMB No. 1545-0047

2012

Open to Public
Inspection

# Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.

▶ Attach to Form 990.

Department of the Treasury
Internal Revenue Service

Name of the organization

WONDERWORK, INC.

Employer identification number

27-4159217

## Part I — General Information on Grants and Assistance

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and
   the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes  ☐ No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II — Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|---|
| (1) SMILE TRAIN<br>1 HARLEM AVE #1E NEW YORK, NY 10019 | 13-3661416 | 501(C)(3) | 450,000. | | | | | CLEFT PALATE SURGERY |
| (2) | | | | | | | | |
| (3) | | | | | | | | |
| (4) | | | | | | | | |
| (5) | | | | | | | | |
| (6) | | | | | | | | |
| (7) | | | | | | | | |
| (8) | | | | | | | | |
| (9) | | | | | | | | |
| (10) | | | | | | | | |
| (11) | | | | | | | | |
| (12) | | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶  1.

3  Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule I (Form 990) (2012)

WON-EX 0150

Schedule I (Form 990) (2012)    **Page 2**

**Part III**   Grants and Other Assistance to Individuals in the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of non-cash assistance |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |

**Part IV**   Supplemental Information. Complete this part to provide the information required in Part I, line 2, Part III, column (b), and any other additional information.

GRANT ELIGIBILITY

FORM 990, SCHEDULE I, PART I, LINE 2

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS. THE SELECTION PROCESS ALSO INCLUDES OBTAINING THIRD

PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING WITH

THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

JSA
2E1504 2.000   4099FL 2231   4/28/2014   4:38:52 PM   V 12-7.12    2910316    PAGE 50

WON-EX 0151

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
► Complete if the organization answered "Yes" to Form 990, Part IV, line 23.
► Attach to Form 990. ► See separate instructions.

OMB No. 1545-0047

**2012**

Open to Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

## Part I — Questions Regarding Compensation

|  | | Yes | No |
|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

- ☐ First-class or charter travel
- ☐ Travel for companions
- ☐ Tax indemnification and gross-up payments
- ☐ Discretionary spending account
- ☐ Housing allowance or residence for personal use
- ☐ Payments for business use of personal residence
- ☐ Health or social club dues or initiation fees
- ☐ Personal services (e.g., maid, chauffeur, chef)

|  | | | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all officers, directors, trustees, and the CEO/Executive Director, regarding the items checked in line 1a? . . . . . . . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

- ☒ Compensation committee
- ☐ Independent compensation consultant
- ☐ Form 990 of other organizations
- ☐ Written employment contract
- ☒ Compensation survey or study
- ☒ Approval by the board or compensation committee

|  | | | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . . . . . | **4a** | | X |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . | **4b** | | X |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . . | **4c** | | X |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only section 501(c)(3) and 501(c)(4) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5a** | | X |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5b** | | X |
| | If "Yes" to line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6a** | | X |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6b** | | X |
| | If "Yes" to line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . | **7** | | X |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | X |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule J (Form 990) 2012

WON-EX 0152

WONDERWORKS, INC.

Schedule J (Form 990) 2012

**Part II** Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organization, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| BRIAN MULLANEY | (i) | 475,000. | 0 | 0 | 0 | 23,277. | 498,277. | 0 |
| 1 CO-FOUNDER, PRESIDENT AND CEO | (ii) | | | | 0 | | 0 | 0 |
| HANA FUCHS | (i) | 200,000. | 0 | 0 | 0 | 9,193. | 209,193. | 0 |
| 2 CFO | (ii) | | | | 0 | | 0 | 0 |
| 3 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 4 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 5 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 6 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 7 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 8 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 9 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 10 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 11 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 12 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 13 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 14 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 15 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 16 | (i) | | | | | | | |
| | (ii) | | | | | | | |

Schedule J (Form 990) 2012

JSA
2E1291 1.000
4099FL 2231   4/28/2014   4:38:52 PM   V 12-7.12        2910316        PAGE 52

WON-EX 0153

WONDERWORK, INC.                                                              27-4159217

Schedule J (Form 990) 2012

**Part III   Supplemental Information**

Complete this part to provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II.
Also complete this part for any additional information.

WON-EX 0154

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.

OMB No. 1545-0047

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

ORGANIZATION'S MISSION

FORM 990, PART III, LINE 1

WONDERWORK IS A NOT-FOR-PROFIT ORGANIZATION WHICH WAS FOUNDED TO PROVIDE
TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND ADULTS IN
UNDERSERVED REGIONS OF THE WORLD. WONDERWORK PROVIDES LIFE-CHANGING
SUPPORT FOR ILLNESS, DISEASE, AND DISABILITY INCLUDING BUT NOT LIMITED TO
BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS, AND PEDIATRIC CARDIAC
SURGERY. WONDERWORK SUPPORTS OTHER MEDICAL INSTITUTIONS AND CHARITABLE
ORGANIZATIONS ENGAGED IN THE PROVISION OF THESE SERVICES; AS WELL AS,
EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL CARE AND
RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH DISABILITIES.


PROGRAM SERVICE ACTIVITIES

FORM 990, PART III, LINE 3

IN AUGUST 2011, WONDERWORK ENTERED INTO AN AGREEMENT TO PROVIDE SERVICES
TO HELP ME SEE, ANOTHER NOT-FOR-PROFIT WITH A SIMILAR MISSION, TO ASSIST
THEM IN PROGRAMMATIC, FUNDRAISING, AND ADMINISTRATIVE EFFORTS. IN
EXCHANGE FOR THESE SERVICES, WONDERWORK WAS TO RECEIVE $166,667 PER
MONTH. IN ADDITION, THE AGREEMENT REQUIRED WONDERWORK TO TRANSFER $2
MILLION TO HELP ME SEE AT THE TERMINATION OF THE AGREEMENT ON SEPTEMBER
1, 2016 AND PROVIDE AN ANNUAL GRANT TO HELP ME SEE EQUAL TO THE AMOUNT OF
LARGEST GRANT WONDERWORK MADE FROM UNRESTRICTED FUNDS IN THAT YEAR. IF
THE AGREEMENT TERMINATES EARLY, THE $2 MILLION GRANT IS REQUIRED TO BE
PRORATED OVER THE CONTRACT PERIOD. HELP ME SEE INFORMED WONDERWORK OF ITS

For Privacy Act and Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.     Schedule O (Form 990 or 990-EZ) (2012)

JSA
2E1227 1.000
4099FL 2231 4/28/2014  4:38:52 PM   V 12-7.12       2910316                PAGE 54

WON-EX 0155

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

INTENTION TO TERMINATE THE AGREEMENT. CURRENTLY, HELP ME SEE AND

WONDERWORK ARE IN ARBITRATION REGARDING THE TERMINATION CLAUSE IN THE

AGREEMENT.

FORM 990 REVIEW

FORM 990, PART VI, LINE 11B

THE FORM 990 WAS PREPARED BY AN INTERNATIONAL ACCOUNTING FIRM AND THE

FINANCE DEPARTMENT. A COPY OF THE FORM 990 WAS REVIEWED BY THE CHAIR OF

THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS AND WAS DISTRIBUTED TO ALL

BOARD MEMBERS BEFORE FILING WITH THE IRS.

CONFLICT OF INTEREST POLICY

FORM 990, PART VI, LINE 12C

EACH OFFICER, DIRECTOR AND KEY EMPLOYEE OF THE ORGANIZATION IS REQUIRED

TO DISCLOSE ANY CONFLICTS OF INTEREST THAT ARISE THROUGH EMPLOYMENT,

BOARD SERVICE OR POSITION IN THE ORGANIZATION. THE ORGANIZATION MONITORS

COMPLIANCE WITH ITS CONFLICT OF INTEREST POLICY THROUGH ANNUAL COMPLETION

OF THE QUESTIONNAIRE AND DISCLOSURE STATEMENT THAT IS DISTRIBUTED TO

THESE INDIVIDUALS.

ALSO, NEW EMPLOYEES JOINING THE ORGANIZATION ARE REQUIRED TO COMPLETE THE

QUESTIONNAIRE. POTENTIAL CONFLICTS OF INTEREST ARE INVESTIGATED

IMMEDIATELY, AND A PERSON WHO HAS A CONFLICT OF INTEREST SHALL NOT

PARTICIPATE IN DISCUSSIONS ON ANY MATTER RELATED TO THE CONFLICT.

COMPLETED QUESTIONNAIRES ARE AVAILABLE FOR INSPECTION BY ANY BOARD MEMBER

WON-EX 0156

| Name of the organization | Employer Identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

AND MAY BE REVIEWED BY THE ORGANIZATION'S LEGAL COUNSEL. THE FINANCE

DEPARTMENT MONITORS NEW CONTRACTS AND INVOICE PAYMENTS TO MAKE SURE THAT

THE POLICY IS FOLLOWED.


PROCESS FOR DETERMINING COMPENSATION

FORM 990, PART VI, LINE 15

AN INDEPENDENT COMPENSATION COMMITTEE HAS BEEN ESTABLISHED BY THE BOARD

OF DIRECTORS TO SECURE DATA FROM AND ABOUT COMPARABLE NONPROFIT

ORGANIZATIONS IN OUR AREA TO BENCHMARK PAY. THE COMMITTEE WAS ESTABLISHED

TO FURTHER COLLECT OTHER PUBLISHED SURVEY DATA, WHEN APPROPRIATE, OF

FOR-PROFIT ORGANIZATIONS FOR SPECIFIC FUNCTIONAL COMPETENCIES SUCH AS

FINANCE AND HUMAN RESOURCES. TOGETHER WITH THIS DATA FROM THE COMPARABLE

LOCAL ORGANIZATIONS, DATA FROM THESE MARKET SEGMENTS ARE USED TO FORM A

"MARKET COMPOSITE" TO ASSESS THE COMPETITIVENESS, FAIRNESS AND

APPROPRIATENESS OF COMPENSATION PAID BY WONDERWORK TO ITS EXECUTIVES AND

OTHER EMPLOYEES.


WONDERWORK'S COMPENSATION STRATEGY AND IMPLEMENTATION IS ADMINISTERED BY

THIS COMPENSATION COMMITTEE, WHICH WILL REPORT ITS FINDINGS TO THE BOARD

OF DIRECTORS. THE BOARD, THROUGH THIS COMMITTEE, IS RESPONSIBLE FOR

ESTABLISHING AND MAINTAINING A COMPETITIVE COMPENSATION PROGRAM FOR THE

ORGANIZATION AND COORDINATING AN ANNUAL REVIEW BY AN INDEPENDENT REVIEWER

(OR AN INTERNAL DETERMINATION) TO EVALUATE THE ORGANIZATION'S EXECUTIVE

COMPENSATION AGAINST THE COMPETITIVE MARKET. FOLLOWING THE REVIEW OF THIS

EVALUATION, THE BOARD APPROVES, FOR SELECTED KEY EXECUTIVES, BASE

SALARIES AND ANNUAL INCENTIVE OPPORTUNITY ADJUSTMENTS (IF ANY), AND

WON-EX 0157

| Name of the organization | Employer Identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

OBJECTIVES AND GOALS FOR THE UPCOMING YEAR.

COMPENSATION REVIEWS ARE CONTEMPORANEOUSLY DOCUMENTED IN BOARD AND

COMMITTEE MINUTES.


DOCUMENT DISCLOSURE

FORM 990, PART VI, LINE 19

THE ORGANIZATION MAKES THE FORM 990 AVAILABLE TO THE PUBLIC BY RETAINING

A COPY AT ITS HEADQUARTERS IN NEW YORK CITY. THE FORM 990 IS ALSO

PUBLISHED ON THE INTERNET ON THE ORGANIZATION'S WEBSITE. THE

ORGANIZATIONS FINANCIAL STATEMENTS ARE ALSO AVAILABLE ON THE WEBSITE

(WWW.WONDERWORK.ORG).


THE ORGANIZATION'S GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY

ARE AVAILABLE UPON REQUEST.

ATTACHMENT 1

FORM 990, PART VI, LINE 17 - STATES

AL,AK,AZ,AR,CA,CO,CT,

DC,FL,GA,HI,IL,KS,KY,ME,MD,MA,MI,

MN,MS,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,

RI,SC,TN,UT,VA,WA,WV,WI,


ATTACHMENT 2

990, PART VII- COMPENSATION OF THE FIVE HIGHEST PAID IND. CONTRACTORS

| NAME AND ADDRESS | DESCRIPTION OF SERVICES | COMPENSATION |
|---|---|---|
| HELP FOR THE CAUSE, LLC<br>586 LAKESHORE DRIVE<br>BERKELEY LAKE, GA 30096 | CONSULTING SERVICES | 120,515. |

WON-EX 0158



COPY OF WITHIN PAPER
RECEIVED

MAY 0 8 2014

NYS OFFICE OF THE ATTORNEY GENERAL
CHARITIES BUREAU

WON-EX 0159



**WONDERWORK, INC.**

Financial Statements

June 30, 2013 and 2012

(With Independent Auditors' Report Thereon)

WON-EX 0160



KPMG LLP
345 Park Avenue
New York, NY 10154-0102

**Independent Auditors' Report**

The Board of Directors
WonderWork, Inc.:

We have audited the accompanying financial statements of WonderWork, Inc. (WonderWork), which comprise the balance sheets as of June 30, 2013 and 2012, and the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

*Management's Responsibility for the Financial Statements*

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

*Auditors' Responsibility*

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the organization's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the organization's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Opinion*

In our opinion, the financial statements referred to above present fairly in all material respects, the financial position of WonderWork, Inc. as of June 30, 2013 and 2012, and the changes in its net assets and its cash flows for the years then ended in accordance with U.S. generally accepted accounting principles.



February 20, 2014

KPMG LLP is a Delaware limited liability partnership,
the U.S. member firm of KPMG International Cooperative
("KPMG International"), a Swiss entity.

WON-EX 0161

**WONDERWORK, INC.**

Balance Sheets

June 30, 2013 and 2012

| Assets | | 2013 | 2012 |
|---|---|---|---|
| Cash and cash equivalents | $ | 1,178,229 | 818,242 |
| Contributions receivable (note 3) | | 570,156 | 769,451 |
| Prepaid expenses and other assets | | 45,625 | 45,625 |
| Investments (note 4) | | 6,431,625 | 5,391,576 |
| Property and equipment, net | | 131,590 | 13,604 |
| Total assets | $ | 8,357,225 | 7,038,498 |

**Liabilities and Net Assets**

| | | | |
|---|---|---|---|
| Liabilities: | | | |
| Accounts payable and accrued expenses (note 10) | $ | 1,236,660 | 70,061 |
| Loans payable (note 7) | | 3,659,203 | — |
| Grants and other amounts payable to Help Me See (note 8) | | 733,000 | 733,000 |
| Total liabilities | | 5,628,863 | 803,061 |
| Commitments (note 5) | | | |
| Net assets: | | | |
| Unrestricted | | 873,356 | 5,465,750 |
| Temporarily restricted (note 6) | | 1,855,006 | 769,687 |
| Total net assets | | 2,728,362 | 6,235,437 |
| Total liabilities and net assets | $ | 8,357,225 | 7,038,498 |

See accompanying notes to financial statements.

2

WON-EX 0162

**WONDERWORK, INC.**

Statements of Activities

Years ended June 30, 2013 and 2012

|  | | 2013 | 2012 |
|---|---|---|---|
| Change in unrestricted net assets: | | | |
| Contributions and revenues: | | | |
| Contributions | $ | 3,777,015 | 7,109,303 |
| Service fees (note 8) | | — | 1,333,667 |
| Investment gain (loss) | | 881,997 | (112,676) |
| Net assets released from restrictions (note 6) | | 2,583,838 | — |
| Total contributions and revenues | | 7,242,850 | 8,330,294 |
| Expenses: | | | |
| Program: | | | |
| Surgical treatments and related activities, and information and health education | | 6,522,235 | 2,297,070 |
| Management and general | | 527,411 | 114,451 |
| Fundraising | | 4,785,598 | 321,738 |
| Total expenses | | 11,835,244 | 2,733,259 |
| (Decrease) increase in unrestricted net assets | | (4,592,394) | 5,597,035 |
| Change in temporarily restricted net assets: | | | |
| Contributions | | 3,669,157 | 769,687 |
| Net assets released from restrictions (note 6) | | (2,583,838) | — |
| Increase in temporarily restricted net assets | | 1,085,319 | 769,687 |
| (Decrease) increase in net assets | | (3,507,075) | 6,366,722 |
| Net assets (deficit) at beginning of year | | 6,235,437 | (131,285) |
| Net assets at end of year | $ | 2,728,362 | 6,235,437 |

See accompanying notes to financial statements.

WON-EX 0163

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2013

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | | Supporting services | | |
| Grants | $ 1,327,500 | — | — | — | 1,327,500 |
| Salaries and related expenses | 917,879 | 150,696 | 301,393 | 452,089 | 1,369,968 |
| Professional and consulting fees | 245,758 | 361,409 | 115,651 | 477,060 | 722,818 |
| Occupancy | 157,154 | 6,684 | 18,662 | 25,346 | 182,500 |
| Office supplies and services | 148,932 | 6,334 | 17,686 | 24,020 | 172,952 |
| Printing, publications, and postage | 3,538,996 | — | 4,325,440 | 4,325,440 | 7,864,436 |
| Depreciation | 10,901 | 464 | 1,294 | 1,758 | 12,659 |
| Travel and other miscellaneous | 175,115 | 1,824 | 5,472 | 7,296 | 182,411 |
| Total expenses | $ 6,522,235 | 527,411 | 4,785,598 | 5,313,009 | 11,835,244 |

See accompanying notes to the financial statements.

4

WON-EX 0164

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2012

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | | **Supporting services** | | |
| Grants | $ 789,800 | — | — | — | 789,800 |
| Salaries and related expenses | 1,020,640 | 90,230 | 130,049 | 220,279 | 1,240,919 |
| Professional and consulting fees | 179,164 | 7,871 | 11,345 | 19,216 | 198,380 |
| Occupancy | 105,498 | 9,327 | 13,442 | 22,769 | 128,267 |
| Office supplies and services | 64,420 | 5,694 | 8,208 | 13,902 | 78,322 |
| Printing, publications, and postage | 8,721 | — | 154,735 | 154,735 | 163,456 |
| Depreciation | 2,714 | 240 | 346 | 586 | 3,300 |
| Travel and other miscellaneous | 126,113 | 1,089 | 3,613 | 4,702 | 130,815 |
| Total expenses | $ 2,297,070 | 114,451 | 321,738 | 436,189 | 2,733,259 |

See accompanying notes to the financial statements.

5

WON-EX 0165

**WONDERWORK, INC.**

Statements of Cash Flows

Years ended June 30, 2013 and 2012

| | | 2013 | 2012 |
|---|---|---|---|
| Cash flows from operating activities: | | | |
| Change in net assets | $ | (3,507,075) | 6,366,722 |
| Adjustments to reconcile change in net assets to net cash | | | |
| (used in) provided by operating activities: | | | |
| Depreciation and amortization | | 12,659 | 3,300 |
| Net realized and unrealized (gain) loss on investments | | (881,997) | 112,676 |
| Changes in operating assets and liabilities: | | | |
| Contributions receivables | | 199,295 | (769,451) |
| Prepaid expenses and other assets | | — | (45,625) |
| Accounts payable and accrued expenses | | 1,166,599 | 63,355 |
| Grants and other amounts payable to Help Me See | | — | 733,000 |
| Net cash (used in) provided by operating activities | | (3,010,519) | 6,463,977 |
| Cash flows from investing activities: | | | |
| Purchases of investments | | (791,214) | (5,504,252) |
| Sales of investments | | 633,162 | — |
| Purchases of property and equipment | | (130,645) | (16,904) |
| Net cash used in investing activities | | (288,697) | (5,521,156) |
| Cash flows from financing activities: | | | |
| Loans payable | | 3,659,203 | — |
| Loans from officer | | — | 205,000 |
| Repayments of officer loans | | — | (331,000) |
| Net cash provided by (used in) financing activities | | 3,659,203 | (126,000) |
| Net increase in cash and cash equivalents | | 359,987 | 816,821 |
| Cash and cash equivalents, beginning of year | | 818,242 | 1,421 |
| Cash and cash equivalents, end of year | $ | 1,178,229 | 818,242 |

See accompanying notes to financial statements.

6

WON-EX 0166

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2013 and 2012

**(1) Description of Organization**

WonderWork, Inc. (the Organization or WonderWork) is a not-for-profit organization which was incorporated in 2011 to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries suffering from disease, illness, or disability, including, but not necessarily limited to, blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as creating general awareness of these disabilities and available treatments. Since the Organization was recently formed, many activities consisted of start-up related costs for the years ended June 30, 2013 and 2012. In 2012, WonderWork changed its name from Surgery for the Poor, Inc. to WonderWork, Inc.

**(2) Summary of Significant Accounting Policies**

*(a) Basis of Presentation*

The Organization's financial statements have been prepared on the accrual basis of accounting in accordance with U.S. generally accepted accounting principles. Net assets and the changes therein are classified and reported as follows:

Unrestricted – Net assets that are not subject to donor-imposed restrictions.

Temporarily Restricted – Net assets subject to donor-imposed restrictions that will be met by actions of the Organization and/or the passage of time.

Revenues are reported as increases in unrestricted net assets unless their use is limited by explicit donor-imposed restrictions or by law. Expenses are reported as decreases in net assets.

*(b) Fair Value*

Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability (an exit price) in the principal or most advantageous market for the asset or liability in an orderly transaction between market participants on the measurement date. The three levels of the fair value hierarchy are as follows:

- Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that a reporting entity has the ability to access at the measurement date.

- Level 2 inputs are inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly.

- Level 3 inputs are unobservable inputs for the asset or liability.

The carrying amounts of the Organization's contributions receivable, accounts payable and accrued expenses, and grants payable approximated their fair values at June 30, 2013 because of the terms and relatively short maturities of these financial instruments. The estimated fair values, however, involve unobservable inputs considered to be Level 3 in the fair value hierarchy.

7

WON-EX 0167

(c) *Accounting Estimates*

The preparation of the financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingencies at the date of the financial statements and revenues and expenses recognized during the reporting period. Significant estimates made in the preparation of the financial statements include the net realizable value of contributions and functional expense allocations. Actual results could differ from those estimates.

(d) *Cash and Cash Equivalents*

The Organization considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents. The Organization maintains cash and cash equivalents in major financial institutions. Cash held by a financial institution that exceeds the Federal Deposit Insurance Corporation (FDIC) limits exposes the Organization to a concentration of credit risk.

(e) *Investments*

Investments are reported at fair value based upon quoted market prices.

(f) *Contributions*

Contributions, including unconditional promises to give (pledges), are recognized as revenue upon receipt and are considered to be unrestricted unless they are received with donor stipulations that limit their use through either purpose or time restrictions. Contributions with donor stipulations that limit their use are considered to be temporarily restricted until the donor restrictions expire, that is, when a time restriction ends or purpose restriction is fulfilled. Upon the expiration of donor stipulations, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the accompanying statements of activities as net assets released from restrictions. Contributions expected to be received after one year are discounted at a risk-adjusted rate of return.

(g) *Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation and amortization. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets ranging from 3 to 5 years. Leasehold improvements are amortized on a straight-line basis over the lesser of their useful lives or the term of the lease.

(h) *Income Taxes*

WonderWork recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. Income generated from activities unrelated to the WonderWork's exempt purpose is subject to tax under Internal Revenue Code Section 511. WonderWork utilizes a threshold of more-likely than-not for recognition and derecognition of tax positions taken or expected to be taken in a tax return. WonderWork did not recognize any unrelated business income tax liability for the years ended June 30, 2013 and 2012.

8

WON-EX 0168

**(3) Contributions and Contributions Receivable**

Contributions receivable are scheduled to be collected as follows at June 30, 2013 and 2012:

|  | | 2013 | 2012 |
|---|---|---|---|
| Amount due in one year or less | $ | 200,000 | 200,000 |
| Amount due in 2 to 5 years | | 385,749 | 597,046 |
| Less discount to present value at 2.4% | | (15,593) | (27,595) |
|  | $ | 570,156 | 769,451 |

Contributions receivable is from one donor at June 30, 2013 and 2012. Approximately 30% of contributions were received from two donors in 2013 and 90% of contributions were received from three donors in 2012.

**(4) Investments**

The following presents the Organization's investments measured at fair value as of June 30, 2013 and 2012. These all represent Level 1 investments in the fair value hierarchy.

|  | | 2013 | 2012 |
|---|---|---|---|
| Vanguard Total World Stock | $ | 6,190,423 | 5,177,412 |
| Vanguard All World Stock Excluding U.S. | | 175,670 | 158,224 |
| Vanguard – Other | | 65,532 | 53,511 |
| Other | | — | 2,429 |
| Total investments | $ | 6,431,625 | 5,391,576 |

**(5) Commitments**

The Organization has a lease agreement for the rental of its office in New York. Approximate minimum annual rentals related to this lease are as follows for the years ending June 30:

| | | |
|---|---|---|
| 2014 | $ | 182,500 |
| 2015 | | 182,500 |
| 2016 | | 136,875 |
| | $ | 501,875 |

Rent expense for the years ended June 30, 2013 and 2012 amounted to approximately $182,500 and $128,000, respectively.

9

WON-EX 0169

(6) **Temporarily Restricted Net Assets**

Temporarily restricted net assets are available for the following as of June 30, 2013 and 2012:

|  |  | 2013 | 2012 |
|---|---|---|---|
| Blindness | $ | 130,943 | — |
| Burns |  | 559,412 | — |
| Clubfoot |  | 594,495 | — |
| Time |  | 570,156 | 769,687 |
|  | $ | 1,855,006 | 769,687 |

Net assets were released from restrictions during the year ended June 30, 2013 by incurring expenses or the passage of time as follows:

|  |  |  |
|---|---|---|
| Blindness | $ | 505,508 |
| Burns |  | 894,222 |
| Clubfoot |  | 961,577 |
| Hole in the heart |  | 11,500 |
| Hydrocephalus |  | 11,500 |
| Time |  | 199,531 |
|  | $ | 2,583,838 |

(7) **Loans Payable**

In fiscal 2013, the Organization received an unsecured impact loan of $7,500,000 from a foundation to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by the foundation are to be repaid after 5 years at the rate of 2% per annum. As of June 30, 2013, WonderWork had drawn down $2,500,000 of this loan. During 2013, WonderWork borrowed $1,159,203 against its investment brokerage account with interest rates ranging 5.25%–6%. This loan was fully repaid in October 2013. In previous years, the Organization also received several start-up interest free loans from an officer of WonderWork. These loans were repaid in 2012. The estimated fair values of loan payable involve unobservable inputs and therefore are considered to be Level 3 in the fair value hierarchy.

(8) **Payable to Help Me See**

In August 2011, WonderWork entered into an agreement to provide services to Help Me See, another not-for-profit with a similar mission, to assist them in programmatic, fundraising, and administrative efforts. In exchange for these services, WonderWork was to receive $166,667 per month. In addition, the agreement required WonderWork to transfer $2 million to Help Me See at the termination of the agreement on September 1, 2016 and provide an annual grant to Help Me See equal to the amount of largest grant WonderWork made from unrestricted funds in that year. If the agreement terminates early, the $2 million grant is required to be prorated over the contract period. Help Me See informed WonderWork of its

10

WON-EX 0170

intention to terminate the agreement. Currently, Help Me See and WonderWork are in arbitration regarding the termination clause in the agreement.

**(9) Allocation of Joint Costs**

WonderWork incurred joint costs of $7,864,436 relating to informational materials, publications, and activities that included fundraising appeals for the year ended June 30, 2013. For the year ended June 30, 2013, $3,538,996 was allocated to program service expenses and $4,325,440 was allocated to fundraising expenses.

**(10) Subsequent Events**

On July 12, 2013, WonderWork entered into a settlement agreement for $450,000, of which $300,000 was paid after June 30, 2013 and the remaining $150,000 is expected to be paid in June 2014.

In connection with the preparation of the financial statements, the Organization evaluated subsequent events after the balance sheet date of June 30, 2013 through February 20, 2014, which was the date the financial statements were available to be issued and determined that there were no additional matters that are required to be disclosed.

WON-EX 0171

# FUCHS
# EXHIBIT 7

$275



# CHAR500

NYS Annual Filing for Charitable Organizations
www.CharitiesNYS.com

| Send with fee and attachments to: NYS Office of the Attorney General Charities Bureau Registration Section 120 Broadway New York, NY 10271 | **2013** Open to Public Inspection |
|---|---|

## 1. General Information

For Fiscal Year Beginning (mm/dd/yyyy) 07 / 01 / 2013 and Ending (mm/dd/yyyy) 06 / 30 / 2014

| Check if Applicable: | | |
|---|---|---|
| ☐ Address Change | Name of Organization: WONDERWORK, INC. | Employer Identification Number (EIN): 27-4159217 |
| ☐ Name Change | Mailing Address: | NY Registration Number: |
| ☐ Initial Filing | 420 5TH AVENUE, 27TH FLOOR | 43-28-70 |
| ☐ Final Filing | City / State / Zip: | Telephone: |
| ☐ Amended Filing | NEW YORK, NY, 10018 | (212) 729-1855 |
| ☐ Reg ID Pending | Website: WWW.WONDERWORK.ORG | Email: HANA@WONDERWORK.ORG |

| Check your organization's registration category: | ☐ 7A only  ☐ EPTL only  ☒ DUAL (7A & EPTL)  ☐ EXEMPT | Find your registration category in the Charities Registry at www.CharitiesNYS.com |
|---|---|---|

## 2. Certification

See Instructions for certification requirements. Improper certification is a violation of law that may be subject to penalties.

We certify under penalties of perjury that we reviewed this report, including all attachments, and to the best of our knowledge and belief, they are true, correct and complete in accordance with the laws of the State of New York applicable to this report.

| President or Authorized Officer: | Signature | LEO | Title | 8/7/15 Date |
|---|---|---|---|---|
| Chief Financial Officer or Treasurer: | Signature | LFO | Title | 8/7/15 Date |

## 3. Annual Reporting Exemption

Check the exemption(s) that apply to your filing. If your organization is claiming an exemption under the category (7A and EPTL only filers) or both categories (DUAL filers) that apply to your registration, complete only parts 1, 2, and 3, and submit the certified Char500. No fee, schedules, or additional attachments are required. If you cannot claim an exemption or are a DUAL filer that claims only one exemption, you must file applicable schedules and attachments and pay applicable fees.

☐ **3a. 7A filing exemption:** Total contributions from NY State including residents, foundations, government agencies, etc. did not exceed $25,000 **and** the organization did not engage a professional fund raiser (PFR) or fund raising counsel (FRC) to solicit contributions during the fiscal year. Or the organization qualifies for another 7A exemption (see instructions).

☐ **3b. EPTL filing exemption:** Gross receipts did not exceed $25,000 and the market value of assets did not exceed $25,000 at any time during the fiscal year.

## 4. Schedules and Attachments

| See the following page for a checklist of schedules and attachments to complete your filing. | ☒ Yes  ☐ No | 4a. Did your organization use a professional fund raiser, fund raising counsel or commercial co-venturer for fund raising activity in NY State? If yes, complete Schedule 4a. |
|---|---|---|
| | ☐ Yes  ☒ No | 4b. Did the organization receive government grants? If yes, complete Schedule 4b. |

## 5. Fee

| See the checklist on the next page to calculate your fee(s). Indicate fee(s) you are submitting here: | 7A filing fee: $ 25. | EPTL filing fee: $ 250. | Total fee: $ 275. | Make a single check or money order payable to: **"Department of Law"** |
|---|---|---|---|---|

WON-EX 0172

EXHIBIT 7
WIT: Fuchs
DATE: 8-14-17
DEBRA STEVENS, RPR, CRR

# CHAR500

**Annual Filing Checklist**

Simply submit the certified CHAR500 with no fee, schedule, or additional attachments IF:
- Your organization is registered as 7A only and you marked the 7A filing exemption in Part 3.
- Your organization is registered as EPTL only and you marked the EPTL filing exemption in Part 3.
- Your organization is registered as DUAL and you marked both the 7A and EPTL filing exemption in Part 3.

## Checklist of Schedules and Attachments

Check the schedules you must submit with your CHAR500 as described in Part 4:

[X] If you answered "yes" in Part 4a, submit Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsel (FRC), Commercial Co-Venturers (CCV)

[ ] If you answered "yes" in Part 4b, submit Schedule 4b: Government Grants

Check the financial attachments you must submit with your CHAR500:

[X] IRS Form 990, 990-EZ, or 990-PF, and 990-T if applicable

[X] All additional IRS Form 990 Schedules including Schedule B (Schedule of Contributors).

[ ] IRS Form 990-T if applicable

If you are a 7A only or DUAL filer, submit the applicable Independent Certified Public Accountant's Review or Audit Report:

[ ] Review Report if you received total revenue and support greater than $250,000 and up to $500,000.

[X] Audit Report if you received total revenue and support greater than $500,000

[ ] No Review Report or Audit Report is required because total revenue and support is less than $250,000

Note: The Audit and Review requirements are set to change in 2017 and 2021 in accordance with the Non Profit Revitalization Act of 2013.
For more details, visit www.CharitiesNYS.com.

## Calculate Your Fee

For 7A and DUAL filers, calculate the 7A fee:

[ ] $0, if you marked the 7A exemption in Part 3a

[X] $25, if you did not mark the 7A exemption in Part 3a

For EPTL and DUAL filers, calculate the EPTL fee:

[ ] $0, if you marked the EPTL exemption in Part 3b

[ ] $25, if the NET WORTH is less than $50,000

[ ] $50, if the NET WORTH is $50,000 or more but less than $250,000

[ ] $100, if the NET WORTH is $250,000 or more but less than $1,000,000

[X] $250, if the NET WORTH is $1,000,000 or more but less than $10,000,000

[ ] $750, if the NET WORTH is $10,000,000 or more but less than $50,000,000

[ ] $1500, if the NET WORTH is $50,000,000 or more .

*Is my organization a 7A, EPTL or DUAL filer?*
- 7A filers are registered to solicit contributions in New York under Article 7-A of the Executive Law ("7A")
- EPTL filers are registered under the Estates, Powers & Trusts Law ("EPTL") because they hold assets and/or conduct activities for charitable purposes in NY.
- DUAL filers are registered under both 7A and EPTL.

Check your registration category and learn more about NY law at www.CharitiesNYS.com

*Where do I find my organization's NET WORTH?*
NET WORTH for fee purposes is calculated on:
- IRS Form 990 Part I, line 22
- IRS Form 990 EZ Part I line 21
- IRS Form 990 PF, calculate the difference between Total Assets at Fair Market Value (Part II, line 16(c)) and Total Liabilities (Part II, line 23(b)).

## Send Your Filing

Send your CHAR500, all schedules and attachments, and total fee to:

NYS Office of the Attorney General
Charities Bureau Registration Section
120 Broadway
New York, NY 10271

CHAR500 Annual Filing for Charitable Organizations (Updated June 2014)
3/3551 1.000

4099FL 2231 4/23/2015   1:04:02 PM   V 13-7.15        2910316        PAGE 77

WON-EX 0173

# CHAR500

Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers
www.CharitiesNYS.com

**2013**
Open to Public
Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. Use additional pages if necessary. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations.

## 1. Organization Information

| Name of Organization: | NY Registration Number: |
|---|---|
| WONDERWORK, INC. | 432870 |

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

Fund Raising Professional type:

[X] Professional Fund Raiser

[ ] Fund Raising Counsel

[ ] Commercial Co-Venturer

| Name of FRP: | NY Registration Number: |
|---|---|
| TARGET MARKETEAM | 326241 |
| Mailing Address: | Telephone: |
| 1120 AVENUE OF THE AMERICAS | 770-274-3700 |
| City / State / Zip: | |
| NEW YORK, NY 10036 | |

## 3. Contract Information

| Contract Start Date: | Contract End Date: |
|---|---|
| N/A | N/A |

## 4. Description of Services

Services provided by FRP:  DEVELOPING DIRECT MAIL CAMPAIGNS

## 5. Description of Compensation

| Compensation arrangement with FRP: MONTHLY FEE | Amount Paid to FRP: |
|---|---|
| | 180,000. |

## 6. Commercial Co-Venturer (CCV) Report

[ ] Yes [ ] No  If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).

3/3552 1.000
4099FL 2231 5/4/2015  3:30:57 PM  V 13-7.15    2910316    PAGE 3

WON-EX 0174

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter Social Security numbers on this form as it may be made public.
▶ Information about Form 990 and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2013**

Open to Public
Inspection

**A** For the 2013 calendar year, or tax year beginning **07/01, 2013**, and ending **06/30, 20 14**

| B Check if applicable: | C Name of organization WONDERWORK, INC. | | | D Employer identification number |
|---|---|---|---|---|
| ☐ Address change | Doing Business As | | | 27-4159217 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address) 420 5TH AVENUE, 27TH FLOOR | | Room/suite | E Telephone number (212) 729-1855 |
| ☐ Initial return | City or town, state or province, country, and ZIP or foreign postal code NEW YORK, NY 10018 | | | G Gross receipts $ 14,729,311. |

☐ Terminated
☐ Amended return
☐ Application pending

**F** Name and address of principal officer: BRIAN MULLANEY
420 FIFTH AVENUE 27TH FLOOR NEW YORK, NY 10018

H(a) Is this a group return for subordinates? ☐ Yes ☒ No
H(b) Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ▶ WWW.WONDERWORK.ORG

H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ▶ | **L** Year of formation: 2011 | **M** State of legal domicile: DE

## Part I  Summary

| | | | |
|---|---|---|---|
| **Activities & Governance** | 1 Briefly describe the organization's mission or most significant activities: PROVIDE FREE SURGERY TO INDIGENT CHILDREN AND ADULTS, FINANCIAL SUPPORT FOR LOCAL HOSPITALS, AND RAISE AWARENESS ABOUT THE LACK OF ACCESS TO SURGERY IN DEVELOPING COUNTRIES. | | |
| | 2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| | 3 Number of voting members of the governing body (Part VI, line 1a) | 3 | 4. |
| | 4 Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 3. |
| | 5 Total number of individuals employed in calendar year 2013 (Part V, line 2a) | 5 | 13. |
| | 6 Total number of volunteers (estimate if necessary) | 6 | 3. |
| | 7a Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| | b Net unrelated business taxable income from Form 990-T, line 34 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | 8 Contributions and grants (Part VIII, line 1h) | 7,446,172. | 12,912,667. |
| | 9 Program service revenue (Part VIII, line 2g) | 0 | 0 |
| | 10 Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 146,128. | 647,872. |
| | 11 Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 26,130. |
| | 12 Total revenue – add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 7,592,300. | 13,586,669. |
| **Expenses** | 13 Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 1,327,500. | 1,543,055. |
| | 14 Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 1,369,968. | 1,721,683. |
| | 16a Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b Total fundraising expenses (Part IX, column (D), line 25) ▶ 4,619,803. | | |
| | 17 Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 9,137,776. | 9,521,812. |
| | 18 Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 11,835,244. | 12,786,550. |
| | 19 Revenue less expenses. Subtract line 18 from line 12 | -4,242,944. | 800,119. |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **Net Assets or Fund Balances** | 20 Total assets (Part X, line 16) | 8,357,225. | 15,445,443. |
| | 21 Total liabilities (Part X, line 26) | 5,628,863. | 10,686,666. |
| | 22 Net assets or fund balances. Subtract line 21 from line 20 | 2,728,362. | 4,758,777. |

## Part II  Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ▶ Signature of officer | | Date |
|---|---|---|---|
| | ▶ Type or print name and title | | |

| Paid Preparer Use Only | Print/Type preparer's name DEVIN L. DUNCAN | Preparer's signature [signature] | Date 5/11/15 | Check ☐ if self-employed | PTIN P01249521 |
|---|---|---|---|---|---|
| | Firm's name ▶ KPMG LLP | | | Firm's EIN ▶ 13-5565207 | |
| | Firm's address ▶ 345 PARK AVENUE NEW YORK, NY 10154-0102 | | | Phone no. 212-758-9700 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☒ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.

Form **990** (2013)

JSA
3E1010 1.000

4099FL 2231 5/7/2015  3:31:20 PM  V 13-7.15  2910316  PAGE 2

WON-EX 0175

**Part III**  Statement of Program Service Accomplishments

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . . . . . . . . . . [X]

1  Briefly describe the organization's mission:

PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND
ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES, SUFFERING
FROM DISEASE, ILLNESS, OR DISABILITY. FOR MORE INFORMATION, SEE
SCHEDULE O.

2  Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  [X] No
If "Yes," describe these new services on Schedule O.

3  Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  [X] Yes  ☐ No
If "Yes," describe these changes on Schedule O.

4  Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported.

4a  (Code: _____ ) (Expenses $ ___7,879,996.___ including grants of $ ___1,543,055.___ ) (Revenue $ _____0.___ )
WONDERWORK EMPOWERS AND PARTNERS WITH LOCAL SURGEONS, HOSPITALS,
AND CHARITABLE ORGANIZATIONS ENGAGED IN THE DELIVERY OF
LIFE-CHANGING SURGERY AND RELATED CARE BY PROVIDING TRAINING AND
EDUCATION, FINANCIAL SUPPORT AND EQUIPMENT. WONDERWORK ALSO
EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL
CARE AND RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH
DISABILITIES.

4b  (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c  (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d  Other program services (Describe in Schedule O.)
(Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e  Total program service expenses ▶ _____7,879,996.___

WON-EX 0176

**Part IV**   **Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | X | |
| 2 | Is the organization required to complete Schedule B, Schedule of Contributors (see instructions)? . . . . . . . . | 2 | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . . . . . . . . . . | 3 | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . . . . . . | 4 | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . . . . . | 7 | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . . . . . . . . . . . | 9 | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . | 10 | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11a | X | |
| b | Did the organization report an amount for investments-other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . . . . . | 11b | | X |
| c | Did the organization report an amount for investments-program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . . . . . | 11c | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . . . . . . . . . | 11d | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | X |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . | 11f | X | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12a | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* . . . . . . . . . . . . . | 12b | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . . . . . | 13 | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . . . . . . | 14a | X | |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . . | 14b | X | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . . . . . . . . . | 15 | X | |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . . . . . | 16 | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I (see instructions)* . . . . . . . . . | 17 | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . . . . . . . . . . | 18 | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . . . . . . | 20a | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . . . . . | 20b | | |

WON-EX 0177

**Part IV** Checklist of Required Schedules *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | X | |
| 22 | Did the organization report more than $5,000 of grants or other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | **22** | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | **23** | X | |
| 24 a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | **24a** | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | **24d** | | |
| 25 a | **Section 501(c)(3) and 501(c)(4) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | **25a** | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | **25b** | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payable to any current or former officers, directors, trustees, key employee, highest compensated employees, or disqualified persons? If so, complete Schedule L, Part II | **26** | X | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | **27** | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | **28a** | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | **28b** | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* | **28c** | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | **29** | X | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | **30** | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | **32** | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | **33** | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | **34** | | X |
| 35 a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | **35b** | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | **36** | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? Note. All Form 990 filers are required to complete Schedule O | **38** | X | |

Form **990** (2013)

WON-EX 0178

| Part V | Statements Regarding Other IRS Filings and Tax Compliance |
|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . . . . . . . . ☐

|  |  | Yes | No |
|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . . . . . . . **1a** 10 |  |  |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . . . . . . . **1b** 0 |  |  |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . . . . . . **1c** | X |  |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . **2a** 13 |  |  |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **2b** | X |  |
|  | Note. If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) . . . . . |  |  |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . . . . . . **3a** |  | X |
| b | If "Yes," has it filed a Form 990-T for this year? If "No" to line 3b, provide an explanation in Schedule O . . . . **3b** |  |  |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4a** |  | X |
| b | If "Yes," enter the name of the foreign country: ▶ |  |  |
|  | See instructions for filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. |  |  |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . **5a** |  | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? . . **5b** |  | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . . . . . . . **5c** |  |  |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . . . . **6a** |  | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6b** |  |  |
| 7 | Organizations that may receive deductible contributions under section 170(c). |  |  |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7a** |  | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . . **7b** |  |  |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7c** |  | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . **7d** |  |  |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . **7e** |  | X |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . **7f** |  | X |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? **7g** |  |  |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? **7h** |  |  |
| 8 | Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations. Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . . . . . **8** |  |  |
| 9 | Sponsoring organizations maintaining donor advised funds. |  |  |
| a | Did the organization make any taxable distributions under section 4966? . . . . . . . . . . . . . . . . . . . **9a** |  |  |
| b | Did the organization make a distribution to a donor, donor advisor, or related person? . . . . . . . . . . . . . **9b** |  |  |
| 10 | Section 501(c)(7) organizations. Enter: |  |  |
| a | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . . . . . . . **10a** |  |  |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . **10b** |  |  |
| 11 | Section 501(c)(12) organizations. Enter: |  |  |
| a | Gross income from members or shareholders . . . . . . . . . . . . . . . . . . . . . . **11a** |  |  |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . . . . . . **11b** |  |  |
| 12a | Section 4947(a)(1) non-exempt charitable trusts. Is the organization filing Form 990 in lieu of Form 1041? **12a** |  |  |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . . . **12b** |  |  |
| 13 | Section 501(c)(29) qualified nonprofit health insurance issuers. |  |  |
| a | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . . . . . **13a** |  |  |
|  | Note. See the instructions for additional information the organization must report on Schedule O. |  |  |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . . . . . . . **13b** |  |  |
| c | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . . . . . . . . . **13c** |  |  |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . . . . **14a** |  | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O . . . . . **14b** |  |  |

WON-EX 0179

**Part VI** | **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . . . . . . . . . . . [X]

### Section A. Governing Body and Management

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year . . . . . | 1a  4 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent . . . . | 1b  3 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | | X |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? . . | 3 | | X |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . | 4 | | X |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . | 5 | | X |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | | X |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7a | | X |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . | 7b | | X |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8a | X | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . . . . . . . | 8b | X | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . . . . | 9 | | X |

### Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . . . . . . . . . . . . | 10a | | X |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? . . . . | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . | 11a | X | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . . . . . . . . . . . | 12a | X | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12b | X | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12c | X | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | X | |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . . . . . . . . . . . | 14 | X | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . . . . . . . . . . . . . | 15a | X | |
| b | Other officers or key employees of the organization . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15b | X | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16a | | X |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . . . . . . . | 16b | | |

### Section C. Disclosure

17 List the states with which a copy of this Form 990 is required to be filed ▶ ATTACHMENT 1

18 Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

[X] Own website   [ ] Another's website   [X] Upon request   [ ] Other (explain in Schedule O)

19 Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20 State the name, physical address, and telephone number of the person who possesses the books and records of the organization: ▶ HANA FUCHS 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018    212-729-1855

WON-EX 0180

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . . . . . . . [X]

**Section A.   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

[ ] Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position<br>(do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) BRIAN MULLANEY<br>CO-FOUNDER, PRESIDENT & CEO | 40.00<br>0 | X | | X | | | | 475,000. | 0 | 42,744. |
| (2) JJ CONBYS<br>AUDIT COMMITTEE CHAIR | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (3) THEODORE DYSART<br>TREASURER/SECRETARY | 1.00<br>0 | X | | X | | | | 0 | 0 | 0 |
| (4) RAVI KANT<br>DIRECTOR | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (5) HANA FUCHS<br>CHIEF FINANCIAL OFFICER | 40.00<br>0 | | | X | | | | 200,000. | 0 | 7,615. |
| (6) DELOIS GREENWOOD<br>SENIOR ADVISOR GLOBAL PROGRAMS | 40.00<br>0 | | | | | X | | 145,833. | 0 | 0 |
| (7) KAREN LAZARUS<br>DIRECTOR STRATEGIC PROJECTS | 40.00<br>0 | | | | | X | | 142,500. | 0 | 16,860. |
| (8) | | | | | | | | | | |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |
| (12) | | | | | | | | | | |
| (13) | | | | | | | | | | |
| (14) | | | | | | | | | | |

JSA
3E1041 1.000

Form **990** (2013)

WON-EX 0181

WONDERWORK, INC.                                    27-4159217                    Page 8

## Part VII  Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| ------------------------ | | | | | | | | | | | |
| **1b Sub-total** ▶ | | | | | | | | | 963,333. | 0 | 67,219. |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | | | | | | | 0 | 0 | 0 |
| **d Total (add lines 1b and 1c)** ▶ | | | | | | | | | 963,333. | 0 | 67,219. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶  **4**

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any former officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . | 3 | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | X | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . . . . . . . | 5 | | X |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| ATTACHMENT 2 | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 in compensation from the organization ▶  **2**

WON-EX 0182

**Part VIII**   Statement of Revenue

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . □

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a Federated campaigns . . . . . . . . | 1a | | | | |
| | b Membership dues . . . . . . . . . | 1b | | | | |
| | c Fundraising events . . . . . . . . . | 1c | | | | |
| | d Related organizations . . . . . . . . | 1d | | | | |
| | e Government grants (contributions) . . | 1e | | | | |
| | f All other contributions, gifts, grants, and similar amounts not included above | 1f | 12,912,667. | | | |
| | g Noncash contributions included in lines 1a-1f $ | 239,725. | | | | |
| | h **Total. Add lines 1a-1f** . . . . . . . . . ▶ | | 12,912,667. | | | |
| **Program Service Revenue** | 2a | **Business Code** | | | | |
| | b | | | | | |
| | c | | | | | |
| | d | | | | | |
| | e | | | | | |
| | f All other program service revenue . . . . . | | | | | |
| | g **Total. Add lines 2a-2f** . . . . . . . . . ▶ | | 0 | | | |
| **Other Revenue** | 3 Investment income (including dividends, interest, and other similar amounts). . . . . . . . . ▶ | | 270,263. | | | 270,263. |
| | 4 Income from investment of tax-exempt bond proceeds . . . ▶ | | 0 | | | |
| | 5 Royalties . . . . . . . . . . . . . ▶ | | 0 | | | |
| | | (i) Real | (ii) Personal | | | | |
| | 6a Gross rents . . . . . . . . | | | | | | |
| | b Less: rental expenses . . . | | | | | | |
| | c Rental income or (loss) . . | | | | | | |
| | d Net rental income or (loss) . . . . . . . . ▶ | | 0 | | | |
| | | (i) Securities | (ii) Other | | | | |
| | 7a Gross amount from sales of assets other than inventory | 1,520,251. | | | | | |
| | b Less: cost or other basis and sales expenses . . . . | 1,142,642. | | | | | |
| | c Gain or (loss) . . . . . | 377,609. | | | | | |
| | d Net gain or (loss) . . . . . . . . . ▶ | | 377,609. | | | 377,609. |
| | 8a Gross income from fundraising events (not including $ of contributions reported on line 1c). See Part IV, line 18 . . . . . . . a | | | | | | |
| | b Less: direct expenses . . . . . . . . b | | | | | | |
| | c Net income or (loss) from fundraising events . . . . . . . ▶ | | 0 | | | |
| | 9a Gross income from gaming activities. See Part IV, line 19 . . . . . . a | | | | | | |
| | b Less: direct expenses . . . . . . . . b | | | | | | |
| | c Net income or (loss) from gaming activities . . ▶ | | 0 | | | |
| | 10a Gross sales of inventory, less returns and allowances . . . . . . . a | | | | | | |
| | b Less: cost of goods sold . . . . . . . b | | | | | | |
| | c Net income or (loss) from sales of inventory . . ▶ | | 0 | | | |
| | | Miscellaneous Revenue | **Business Code** | | | | |
| | 11a MISCELLANEOUS | 900099 | 26,130. | | | 26,130. |
| | b | | | | | |
| | c | | | | | |
| | d All other revenue . . . . . . . . . . . . . | | | | | |
| | e **Total. Add lines 11a-11d** . . . . . . . . . ▶ | | 26,130. | | | |
| | 12 **Total revenue. See instructions** . . . . . ▶ | | 13,586,669. | | | 674,002. |

WON-EX 0183

**Part IX**   **Statement of Functional Expenses**

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . . . □

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| 1   Grants and other assistance to governments and organizations in the United States. See Part IV, line 21 . | 460,000. | 460,000. | | |
| 2   Grants and other assistance to individuals in the United States. See Part IV, line 22 . . . . . . | 0 | | | |
| 3   Grants and other assistance to governments, organizations, and individuals outside the United States. See Part IV, lines 15 and 16 . | 1,083,055. | 1,083,055. | | |
| 4   Benefits paid to or for members . . . . . . . | 0 | | | |
| 5   Compensation of current officers, directors, trustees, and key employees . . . . . . . . . | 886,183. | 708,946. | 58,522. | 118,715. |
| 6   Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . | 0 | | | |
| 7   Other salaries and wages . . . . . . . . . . | 674,365. | 491,444. | 8,819. | 174,102. |
| 8   Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . . | 0 | | | |
| 9   Other employee benefits . . . . . . . . . . . | 80,364. | 60,138. | 3,428. | 16,798. |
| 10   Payroll taxes . . . . . . . . . . . . . . . . | 80,771. | 62,048. | 3,483. | 15,240. |
| 11   Fees for services (non-employees): | | | | |
| a   Management . . . . . . . . . . . . . . . | 0 | | | |
| b   Legal . . . . . . . . . . . . . . . . . . | 639,924. | 558,680. | 81,244. | |
| c   Accounting . . . . . . . . . . . . . . . | 50,100. | | 50,100. | |
| d   Lobbying . . . . . . . . . . . . . . . . | 0 | | | |
| e   Professional fundraising services. See Part IV, line 17 . | 0 | | | |
| f   Investment management fees . . . . . . . | | | | |
| g   Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O.) . . . . | 396,955. | 198,709. | 95. | 198,151. |
| 12   Advertising and promotion . . . . . . . . . | 44,822. | 21,211. | | 23,611. |
| 13   Office expenses . . . . . . . . . . . . . . | 7,755,692. | 3,805,923. | 6,555. | 3,943,214. |
| 14   Information technology . . . . . . . . . . . | 15,876. | 12,196. | 684. | 2,996. |
| 15   Royalties . . . . . . . . . . . . . . . . . | 0 | | | |
| 16   Occupancy . . . . . . . . . . . . . . . . | 187,025. | 143,670. | 8,066. | 35,289. |
| 17   Travel . . . . . . . . . . . . . . . . . . | 237,969. | 144,488. | 41,722. | 51,759. |
| 18   Payments of travel or entertainment expenses for any federal, state, or local public officials | 0 | | | |
| 19   Conferences, conventions, and meetings . . . . | 0 | | | |
| 20   Interest . . . . . . . . . . . . . . . . . | 0 | | | |
| 21   Payments to affiliates . . . . . . . . . . . | 0 | | | |
| 22   Depreciation, depletion, and amortization . . . . | 44,486. | 34,173. | 1,919. | 8,394. |
| 23   Insurance . . . . . . . . . . . . . . . . | 30,212. | 23,209. | 1,302. | 5,701. |
| 24   Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a MISCELLANEOUS _____ | 118,751. | 72,106. | 20,812. | 25,833. |
| b _____ | | | | |
| c _____ | | | | |
| d _____ | | | | |
| e   All other expenses _____ | | | | |
| 25   **Total functional expenses. Add lines 1 through 24e** | 12,786,550. | 7,879,996. | 286,751. | 4,619,803. |
| 26   **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ □ if following SOP 98-2 (ASC 958-720) . . . . . | 0 | | | |

JSA<br>3E1052 1.000

Form **990** (2013)

WON-EX 0184

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . . . . . . . . . . . . . . 

| | | (A)<br>Beginning of year | | (B)<br>End of year |
|---|---|---:|---|---:|
| **Assets** | | | | |
| 1 | Cash - non-interest-bearing | 191,061. | **1** | 460,840. |
| 2 | Savings and temporary cash investments | 987,168. | **2** | 413,121. |
| 3 | Pledges and grants receivable, net | 570,156. | **3** | 370,116. |
| 4 | Accounts receivable, net | | **4** | 0 |
| 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L | 0 | **5** | 0 |
| 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions). Complete Part II of Schedule L | 0 | **6** | 0 |
| 7 | Notes and loans receivable, net | 0 | **7** | 0 |
| 8 | Inventories for sale or use | 0 | **8** | 0 |
| 9 | Prepaid expenses and deferred charges | 45,625. | **9** | 45,625. |
| 10 a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D **10a** 149,370. | | | |
| b | Less: accumulated depreciation **10b** 60,444. | 131,590. | **10c** | 88,926. |
| 11 | Investments - publicly traded securities | 6,431,625. | **11** | 14,066,815. |
| 12 | Investments - other securities. See Part IV, line 11 | 0 | **12** | 0 |
| 13 | Investments - program-related. See Part IV, line 11 | 0 | **13** | 0 |
| 14 | Intangible assets | 0 | **14** | 0 |
| 15 | Other assets. See Part IV, line 11 | 0 | **15** | 0 |
| 16 | Total assets. Add lines 1 through 15 (must equal line 34) | 8,357,225. | **16** | 15,445,443. |
| **Liabilities** | | | | |
| 17 | Accounts payable and accrued expenses | 1,236,660. | **17** | 1,167,916. |
| 18 | Grants payable | 733,000. | **18** | 0 |
| 19 | Deferred revenue | 0 | **19** | 0 |
| 20 | Tax-exempt bond liabilities | 0 | **20** | 0 |
| 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | 0 | **21** | 0 |
| 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L | 0 | **22** | 200,000. |
| 23 | Secured mortgages and notes payable to unrelated third parties | 1,159,203. | **23** | 0 |
| 24 | Unsecured notes and loans payable to unrelated third parties | 2,500,000. | **24** | 9,318,750. |
| 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 0 | **25** | 0 |
| 26 | Total liabilities. Add lines 17 through 25 | 5,628,863. | **26** | 10,686,666. |
| **Net Assets or Fund Balances** | Organizations that follow SFAS 117 (ASC 958), check here ▶ [X] and complete lines 27 through 29, and lines 33 and 34. | | | |
| 27 | Unrestricted net assets | 873,356. | **27** | 2,376,415. |
| 28 | Temporarily restricted net assets | 1,855,006. | **28** | 2,382,362. |
| 29 | Permanently restricted net assets | 0 | **29** | 0 |
| | Organizations that do not follow SFAS 117 (ASC 958), check here ▶ [ ] and complete lines 30 through 34. | | | |
| 30 | Capital stock or trust principal, or current funds | | **30** | |
| 31 | Paid-in or capital surplus, or land, building, or equipment fund | | **31** | |
| 32 | Retained earnings, endowment, accumulated income, or other funds | | **32** | |
| 33 | Total net assets or fund balances | 2,728,362. | **33** | 4,758,777. |
| 34 | Total liabilities and net assets/fund balances | 8,357,225. | **34** | 15,445,443. |

Form **990** (2013)

WON-EX 0185

Form 990 (2013)                                                      Page **12**

**Part XI**   **Reconciliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . . . . . . ☐

| | | |
|---|---|---|
| 1 Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . . . . | **1** | 13,586,669. |
| 2 Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . . . . . . . . . | **2** | 12,786,550. |
| 3 Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 800,119. |
| 4 Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . . . . | **4** | 2,728,362. |
| 5 Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | 1,230,296. |
| 6 Donated services and use of facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | 0 |
| 7 Investment expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | 0 |
| 8 Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | 0 |
| 9 Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . . . . . . . . | **9** | 0 |
| 10 Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | 4,758,777. |

**Part XII**   **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|---|---|
| 1   Accounting method used to prepare the Form 990: ☐ Cash   ☒ Accrual   ☐ Other _____ <br> If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a   Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . . <br> If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: <br> ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | **2a** | | X |
| b   Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . . . . <br> If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: <br> ☒ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | **2b** | X | |
| c   If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? <br> If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | **2c** | X | |
| 3a   As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3a** | | X |
| b   If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

Form **990** (2013)

WON-EX 0186

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section
4947(a)(1) nonexempt charitable trust.

▶ Attach to Form 990 or Form 990-EZ.
▶ Information about Schedule A (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990*.

OMB No. 1545-0047

**2013**

Open to Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 11, check only one box.)

1. ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**
2. ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E.)
3. ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**
4. ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____
5. ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)
6. ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**
7. ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)
8. ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)
9. ☐ An organization that normally receives: (1) more than 33 1/3 % of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33 1/3 % of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)
10. ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**
11. ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2). See **section 509(a)(3).** Check the box that describes the type of supporting organization and complete lines 11e through 11h.
    - a ☐ Type I     b ☐ Type II     c ☐ Type III-Functionally integrated     d ☐ Type III-Non-functionally integrated
    - e ☐ By checking this box, I certify that the organization is not controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2).
    - f    If the organization received a written determination from the IRS that it is a Type I, Type II, or Type III supporting organization, check this box ☐
    - g   Since August 17, 2006, has the organization accepted any gift or contribution from any of the following persons?

| | | | Yes | No |
|---|---|---|---|---|
| (i) A person who directly or indirectly controls, either alone or together with persons described in (ii) and (iii) below, the governing body of the supported organization? . . . . . . . . . . . . . . . . . . . . . . . | | 11g(i) | | |
| (ii) A family member of a person described in (i) above? . . . . . . . . . . . . . . . . . . . . . . . . . | | 11g(ii) | | |
| (iii) A 35% controlled entity of a person described in (i) or (ii) above? . . . . . . . . . . . . . . . . . . | | 11g(iii) | | |

   - h   Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-9 above or IRC section (see instructions)) | (iv) Is the organization in col. (i) listed in your governing document? | | (v) Did you notify the organization in col. (i) of your support? | | (vi) Is the organization in col. (i) organized in the U.S.? | | (vii) Amount of monetary support |
|---|---|---|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No | Yes | No | |
| **(A)** | | | | | | | | | |
| **(B)** | | | | | | | | | |
| **(C)** | | | | | | | | | |
| **(D)** | | | | | | | | | |
| **(E)** | | | | | | | | | |
| **Total** | | | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for
Form 990 or 990-EZ.

Schedule A (Form 990 or 990-EZ) 2013

WON-EX 0187

WONDERWORK, INC.                                27-4159217                    Page 2

**Part II**   Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 0 | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 28,288,596. |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | 0 |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| 4 Total. Add lines 1 through 3 | | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 28,288,596. |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 9,721,888. |
| 6 Public support. Subtract line 5 from line 4 | | | | | | 18,566,708. |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 28,288,596. |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | 6. | 3,334. | 41,243. | 270,263. | 312,826. |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | 0 |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | 0 |
| 11 Total support. Add lines 7 through 10 | | | | | | 28,601,422. |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | 12 | 1,333,667. |
| 13 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here | | | | | | ▶ ☒ |

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| 14 Public support percentage for 2013 (line 6, column (f) divided by line 11, column (f)) | 14 | % |
| 15 Public support percentage from 2012 Schedule A, Part II, line 14 | 15 | % |

16a **33 1/3% support test - 2013.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

b **33 1/3% support test - 2012.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

17a **10%-facts-and-circumstances test - 2013.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization ▶ ☐

b **10%-facts-and-circumstances test - 2012.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ▶ ☐

WON-EX 0188

WONDERWORK, INC.                                          27-4159217                    Page **3**

**Part III** Support Schedule for Organizations Described in Section 509(a)(2)
(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II.
If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 Total. Add lines 1 through 5 | | | | | | |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| c Add lines 7a and 7b | | | | | | |
| 8 Public support (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6 | | | | | | |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| c Add lines 10a and 10b | | | | | | |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part IV.) | | | | | | |
| 13 Total support. (Add lines 9, 10c, 11, and 12.) | | | | | | |

14 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here ............................................................................ ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| 15 Public support percentage for 2013 (line 8, column (f) divided by line 13, column (f)) | 15 | % |
| 16 Public support percentage from 2012 Schedule A, Part III, line 15 | 16 | % |

**Section D. Computation of Investment Income Percentage**

| | | |
|---|---|---|
| 17 Investment income percentage for 2013 (line 10c, column (f) divided by line 13, column (f)) | 17 | % |
| 18 Investment income percentage from 2012 Schedule A, Part III, line 17 | 18 | % |

19a 33 1/3% support tests - 2013. If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☐

b 33 1/3% support tests - 2012. If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☐

20 Private foundation. If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

JEA
3E1221 1.000

WON-EX 0189

**Part IV** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See instructions).

WON-EX 0190

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Information about Schedule D (Form 990) and its instructions is at *www.irs.gov/form990*.

OMB No. 1545-0047

**2013**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . . | | |
| 2 | Aggregate contributions to (during year) . . . . | | |
| 3 | Aggregate grants from (during year) . . . . . . | | |
| 4 | Aggregate value at end of year . . . . . . . . . | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised
funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used
only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose
conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**Part II** Conservation Easements. Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation
easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . . . . . . . . . . . . | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the
tax year ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4 Number of states where property subject to conservation easement is located ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

7 Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
▶ $ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)
(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and
balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the
organization's accounting for conservation easements.

**Part III** Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
public service, provide the following amounts relating to these items:

(i) Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the
following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a Revenues included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _

b Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _ _ _ _ _ _ _ _ _ _ _ _

WON-EX 0191

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)* |

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition                    d ☐ Loan or exchange programs
b ☐ Scholarly research                   e ☐ Other _____
c ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar
assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . . . . ☐ Yes ☐ No

| **Part IV** | **Escrow and Custodial Arrangements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21. |

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not
included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
b If "Yes," explain the arrangement in Part XIII and complete the following table:

|  |  | Amount |
|---|---|---|
| c | Beginning balance . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1c | |
| d | Additions during the year . . . . . . . . . . . . . . . . . . . . . . . . | 1d | |
| e | Distributions during the year . . . . . . . . . . . . . . . . . . . . . . | 1e | |
| f | Ending balance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1f | |

**2a** Did the organization include an amount on Form 990, Part X, line 21? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII. . . . . . . . . ☐

| **Part V** | **Endowment Funds.** Complete if the organization answered "Yes" to Form 990, Part IV, line 10. |

|  | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . | | | | | |
| b Contributions . . . . . . . . . . | | | | | |
| c Net investment earnings, gains, and losses . . . . . . . | | | | | |
| d Grants or scholarships . . . . . | | | | | |
| e Other expenditures for facilities and programs . . . . . . . . . | | | | | |
| f Administrative expenses . . . . | | | | | |
| g End of year balance . . . . . . | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:
a Board designated or quasi-endowment ▶ _____ %
b Permanent endowment ▶ _____ %
c Temporarily restricted endowment ▶ _____ %
  The percentages in lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the

|  |  | Yes | No |
|---|---|---|---|
| organization by: | | | |
| (i) unrelated organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(i) | | |
| (ii) related organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(ii) | | |
| b If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . . . . . | 3b | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| **Part VI** | **Land, Buildings, and Equipment.** Complete if the organization answered "Yes" to Form 990, Part IV, line 11a. See Form 990, Part X, line 10. |

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . . . . . . . | | | | |
| b Buildings . . . . . . . . . . . . . . | | | | |
| c Leasehold improvements . . . . . . . . . | | 57,177. | 21,852. | 35,325. |
| d Equipment . . . . . . . . . . . . . . | | 45,950. | 27,485. | 18,465. |
| e Other . . . . . . . . . . . . . . . | | 46,243. | 11,107. | 35,136. |
| Total. Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . ▶ | | | | 88,926. |

Schedule D (Form 990) 2013

WON-EX 0192

WONDERWORK, INC.                    27-4159217

## Part VII  Investments - Other Securities.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . . . . . | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

## Part VIII  Investments - Program Related.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | |

## Part IX  Other Assets.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 15.) . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | |

## Part X  Other Liabilities.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value | | | |
|---|---|---|---|---|
| (1) Federal income taxes | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 25.) ▶ | | | | |

2. Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII  [X]

WON-EX 0193

WONDERWORK, INC.                                      27-4159217                      Page **4**

## Part XI  Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.
Complete if the organization answered "Yes" to Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---:|---|---:|
| 1 | Total revenue, gains, and other support per audited financial statements | | | **1** | 16,699,406. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains on investments | 2a | 1,230,296. | | |
| b | Donated services and use of facilities | 2b | 1,882,441. | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines 2a through 2d | | | **2e** | 3,112,737. |
| 3 | Subtract line 2e from line 1 | | | **3** | 13,586,669. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines 4a and 4b | | | **4c** | |
| 5 | Total revenue. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 12.)* | | | **5** | 13,586,669. |

## Part XII  Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.
Complete if the organization answered "Yes" to Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---:|---|---:|
| 1 | Total expenses and losses per audited financial statements | | | **1** | 14,668,991. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | 1,882,441. | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines 2a through 2d | | | **2e** | 1,882,441. |
| 3 | Subtract line 2e from line 1 | | | **3** | 12,786,550. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines 4a and 4b | | | **4c** | |
| 5 | Total expenses. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 18.)* | | | **5** | 12,786,550. |

## Part XIII  Supplemental Information.
Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

SEE PAGE 5

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

-----------------------------------------------------------------------

WON-EX 0194

**Part XIII     Supplemental Information** *(continued)*

UNCERTAIN TAX POSITIONS

FORM 990, SCHEDULE D, PART X, LINE 2

WONDERWORK RECOGNIZES THE EFFECT OF INCOME TAX POSITIONS ONLY IF THOSE

POSITIONS ARE MORE LIKELY THAN NOT OF BEING SUSTAINED. INCOME GENERATED

FROM ACTIVITIES UNRELATED TO THE WONDERWORK'S EXEMPT PURPOSE IS SUBJECT

TO TAX UNDER INTERNAL REVENUE CODE SECTION 511. WONDERWORK UTILIZES A

THRESHOLD OF MORE LIKELY THAN NOT FOR RECOGNITION AND DERECOGNITION OF

TAX POSITIONS TAKEN OR EXPECTED TO BE TAKEN IN A TAX RETURN. WONDERWORK

DID NOT RECOGNIZE ANY UNRELATED BUSINESS INCOME TAX LIABILITY FOR THE

YEARS ENDED JUNE 30, 2014 AND 2013.

WON-EX 0195

SCHEDULE F
(Form 990)

Department of the Treasury
Internal Revenue Service

**Statement of Activities Outside the United States**

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990. ▶ See separate instructions.
▶ Information about Schedule F (Form 990) and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2013**

Open to Public
Inspection

Name of the organization
WONDERWORK, INC.

Employer identification number
27-4159217

**Part I** | General Information on Activities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

1  For grantmakers. Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes [ ] No

2  For grantmakers. Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

3  Activities per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in region | (d) Activities conducted in region (by type) (e.g., fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for and investments in region |
|---|---|---|---|---|---|
| (1) SOUTH ASIA | | | GRANTMAKING | | 943,055. |
| (2) SUB-SAHARAN AFRICA | | | GRANTMAKING | | 60,000. |
| (3) EUROPE | | | GRANTMAKING | | 60,000. |
| (4) EAST ASIA AND THE PACIFIC | | | GRANTMAKING | | 20,000. |
| (5) SOUTH ASIA | | 1. | PROGRAM SERVICES | CONSULTING | 18,000. |
| (6) | | | | | |
| (7) | | | | | |
| (8) | | | | | |
| (9) | | | | | |
| (10) | | | | | |
| (11) | | | | | |
| (12) | | | | | |
| (13) | | | | | |
| (14) | | | | | |
| (15) | | | | | |
| (16) | | | | | |
| (17) | | | | | |
| 3a Sub-total . . . . . . . . . | | 1. | | | 1,101,055. |
| b Total from continuation sheets to Part I . . . . . . . | | | | | |
| c Totals (add lines 3a and 3b) | | 1. | | | 1,101,055. |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule F (Form 990) 2013

JSA
3E1274 1.000

WONDERWORK, INC.  27-4159217  Page 2

## Part II — Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| (1) | | SOUTH ASIA | CATARACT | 20,000 | WIRE | | | |
| (2) | | SUB-SAHARAN AFRICA | BURN | 10,000 | CHECK | | | |
| (3) | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (4) | | EUROPE//ICELAND/GREENLAND | BURN | 10,000 | CHECK | | | |
| (5) | | SUB-SAHARAN AFRICA | CLUBFOOT | 10,000 | WIRE | | | |
| (6) | | SOUTH ASIA | CLUBFOOT | 20,000 | WIRE | | | |
| (7) | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (8) | | SOUTH ASIA | CATARACT | 20,000 | WIRE | | | |
| (9) | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (10) | | EUROPE//ICELAND/GREENLAND | BURN | 10,000 | CHECK | | | |
| (11) | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | WIRE | | | |
| (12) | | SOUTH ASIA | CATARACT CLUBFOOT BURN | 10,000 | WIRE | | | |
| (13) | | SOUTH ASIA | CLUBFOOT BURN | 145,555 | CHECK | | | |
| (14) | | SOUTH ASIA | CLUBFOOT NPH | 22,500 | CHECK | | | |
| (15) | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (16) | | EUROPE//ICELAND/GREENLAND | CLUBFOOT,CA-ARACT,BURN | 10,000 | CHECK | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt
by the IRS or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . . . . . ▲ ▲

3 Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▲ ▲

JSA
3E1274 1.000
4099FL 2231 5/4/2015   8:34:13 AM   V 13-7.15   2910316   PAGE 44

WON-EX 0197

Schedule F (Form 990) 2013                                                                 Page 2

**Part II**  Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | EUROPE/ICELAND/GREENLAND | BURN | 10,000 | CHECK | | | |
| (2) | | | SOUTH ASIA | CATARACT | 70,000 | WIRE | | | |
| (3) | | | SOUTH ASIA | CATARACT | 50,000 | WIRE | | | |
| (4) | | | SOUTH ASIA | CATARACT | 35,000 | WIRE | | | |
| (5) | | | EUROPE/ICELAND/GREENLAND | SAFE SURGERY | 10,000 | WIRE | | | |
| (6) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (7) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (8) | | | EAST ASIA/PACIFIC | BURNS | 10,005 | WIRE | | | |
| (9) | | | SOUTH ASIA | BURNS | 23,000 | WIRE | | | |
| (10) | | | SOUTH ASIA | CATARACT | 170,000 | WIRE | | | |
| (11) | | | SOUTH ASIA | CATARACT | 90,000 | WIRE | | | |
| (12) | | | SOUTH ASIA | CATARACT | 10,000 | WIRE | | | |
| (13) | | | EAST ASIA/PACIFIC | CATARACT | 10,000 | WIRE | | | |
| (14) | | | SOUTH ASIA | CATARACT | 30,000 | CHECK | | | |
| (15) | | | SOUTH ASIA | CATARACT | 20,000 | WIRE | | | |
| (16) | | | SOUTH ASIA | CATARACT | 40,000 | WIRE | | | |

2  Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt
by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . ▲ ▲

3  Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

JSA
3E1275 1.000
4099FL 2231  5/4/2015  8:34:13 AM  V 13-7.15            2931.0316                                PAGE  45

WON-EX 0198

WONDERWORK, INC.    27-4159217

Page 2

**Part II**   Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | CHECK | | | |
| (2) | | | SUB-SAHARAN AFRICA | CATARACT | 10,000 | WIRE | | | |
| (3) | | | SOUTH ASIA | CATARACT | 110,000 | WIRE | | | |
| (4) | | | SOUTH ASIA | CLUBFOOT | 20,000 | WIRE | | | |
| (5) | | | EUROPE/ICELAND/GREENLAND | SAFE SURGERY | 10,000 | CHECK | | | |
| (6) | | | SUB-SAHARAN AFRICA | BURN | 10,000 | WIRE | | | |
| (7) | | | SOUTH ASIA | CLUBFOOT | 20,000 | WIRE | | | |
| (8) | | | | | | | | | |
| (9) | | | | | | | | | |
| (10) | | | | | | | | | |
| (11) | | | | | | | | | |
| (12) | | | | | | | | | |
| (13) | | | | | | | | | |
| (14) | | | | | | | | | |
| (15) | | | | | | | | | |
| (16) | | | | | | | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . . . ▲    35

3   Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▲

WON-EX 0199

WONDERWORKS, INC.                                                                    27-4159217

**Part III** Grants and Other Assistance to Individuals Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 16.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of non-cash assistance | (g) Description of non-cash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| (1) | | | | | | | |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |
| (13) | | | | | | | |
| (14) | | | | | | | |
| (15) | | | | | | | |
| (16) | | | | | | | |
| (17) | | | | | | | |
| (18) | | | | | | | |

JSA
3E1275 1.000
4099FL 2231   5/4/2015   8:34:13 AM   V 13-7.15         2910316                      PAGE 47

WON-EX 0200

WONDERWORK, INC.                27-4159217

## Part IV    Foreign Forms

1   Was the organization a U.S. transferor of property to a foreign corporation during the tax year? If "Yes,"
    the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign
    Corporation (see Instructions for Form 926) . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

2   Did the organization have an interest in a foreign trust during the tax year? If "Yes," the organization
    may be required to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and
    Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a
    U.S. Owner (see Instructions for Forms 3520 and 3520-A) . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

3   Did the organization have an ownership interest in a foreign corporation during the tax year? If "Yes,"
    the organization may be required to file Form 5471, Information Return of U.S. Persons With Respect To
    Certain Foreign Corporations. (see Instructions for Form 5471) . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

4   Was the organization a direct or indirect shareholder of a passive foreign investment company or a
    qualified electing fund during the tax year? If "Yes," the organization may be required to file Form 8621,
    Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing
    Fund. (see Instructions for Form 8621) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

5   Did the organization have an ownership interest in a foreign partnership during the tax year? If "Yes,"
    the organization may be required to file Form 8865, Return of U.S. Persons With Respect To Certain
    Foreign Partnerships. (see Instructions for Form 8865) . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

6   Did the organization have any operations in or related to any boycotting countries during the tax year? If
    "Yes," the organization may be required to file Form 5713, International Boycott Report (see Instructions
    for Form 5713) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☒ No

WON-EX 0201

**Part V** | **Supplemental Information**

Complete this part to provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information (see instructions).

GRANT ELIGIBILITY

FORM 990, SCH F, PART I, LINE 1

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS. THE SELECTION PROCESS ALSO INCLUDES OBTAINING THIRD

PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING WITH

THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

WON-EX 0202

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" to Form 990, Part IV, lines 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.
▶ Attach to Form 990 or Form 990-EZ.
▶ Information about Schedule G (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

**2013**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I**    Fundraising Activities. Complete if the organization answered "Yes" to Form 990, Part IV, line 17.
Form 990-EZ filers are not required to complete this part.

1   Indicate whether the organization raised funds through any of the following activities. Check all that apply.

a [X] Mail solicitations
b [X] Internet and email solicitations
c [ ] Phone solicitations
d [X] In-person solicitations
e [X] Solicitation of non-government grants
f [ ] Solicitation of government grants
g [ ] Special fundraising events

2a   Did the organization have a written or oral agreement with any individual (including officers, directors, trustees or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   [X] Yes   [ ] No

b   If "Yes," list the ten highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| 1   TARGET MARKETEAM | FUNDRAISING CONSULTING | | X | | 180,000. | -180,000. |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| Total . . . . . . . . . . . . . . . . ▶ | | | | | 180,000. | -180,000. |

3   List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

AL,AK,AR,CA,CO,CT,DC,FL,GA,HI,IL,
KS,KY,ME,MD,MA,MI,MN,MS,NV,NH,NJ,NM,NY,NC,ND,OH,
OK,OR,PA,RI,SC,TN,UT,VA,WA,WV,WI,

WON-EX 0203

**Part II** **Fundraising Events.** Complete if the organization answered "Yes" to Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a) Event #1 | (b) Event #2 | (c) Other events | (d) Total events (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| | | (event type) | (event type) | (total number) | |
| Revenue | 1 Gross receipts . . . . . . . . . . . . . | | | | |
| | 2 Less: Contributions . . . . . . . . . | | | | |
| | 3 Gross income (line 1 minus line 2) . | | | | |
| Direct Expenses | 4 Cash prizes . . . . . . . . . . . . . | | | | |
| | 5 Noncash prizes . . . . . . . . . . . | | | | |
| | 6 Rent/facility costs . . . . . . . . . | | | | |
| | 7 Food and beverages . . . . . . . . | | | | |
| | 8 Entertainment . . . . . . . . . . . | | | | |
| | 9 Other direct expenses . . . . . . . | | | | |
| | 10 Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . . . . . . . . . . . ▶ | | | | |
| | 11 Net income summary. Subtract line 10 from line 3, column (d) . . . . . . . . . . . . . . . . . . ▶ | | | | |

**Part III** **Gaming.** Complete if the organization answered "Yes" to Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col. (a) through col. (d)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue . . . . . . . . . . . . | | | | |
| Direct Expenses | 2 Cash prizes . . . . . . . . . . . . . | | | | |
| | 3 Noncash prizes . . . . . . . . . . . | | | | |
| | 4 Rent/facility costs . . . . . . . . . | | | | |
| | 5 Other direct expenses . . . . . . . | | | | |
| | 6 Volunteer labor . . . . . . . . . . . | ☐ Yes_____% ☐ No | ☐ Yes_____% ☐ No | ☐ Yes_____% ☐ No | |
| | 7 Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . . . . . . . . . . ▶ | | | | |
| | 8 Net gaming income summary. Subtract line 7 from line 1, column (d) . . . . . . . . . . . . . . ▶ | | | | |

9 Enter the state(s) in which the organization operates gaming activities: _____

a Is the organization licensed to operate gaming activities in each of these states? . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

b If "No," explain: _____

_____

10 a Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? . . . . ☐ Yes ☐ No

b If "Yes," explain: _____

_____

WON-EX 0204

| | | |
|---|---|---|
| 11 | Does the organization operate gaming activities with nonmembers? . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
| 12 | Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |

13  Indicate the percentage of gaming activity operated in:

a  The organization's facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13a**              %

b  An outside facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13b**              %

14  Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ _____

Address ▶ _____

15 a  Does the organization have a contract with a third party from whom the organization receives gaming revenue? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

b  If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount of gaming revenue retained by the third party ▶ $ _____

c  If "Yes," enter name and address of the third party:

Name ▶ _____

Address ▶ _____

16  Gaming manager information:

Name ▶ _____

Gaming manager compensation ▶ $ _____

Description of services provided ▶ _____

☐ Director/officer         ☐ Employee         ☐ Independent contractor

17  Mandatory distributions:

a  Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

b  Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $

**Part IV**  **Supplemental Information.** Provide the explanation required by Part I, line 2b, columns (iii) and (v), and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also complete this part to provide any additional information (see instructions).

PROFESSIONAL FUNDRAISERS - ADDRESSES .

FORM 990, SCHEDULE G, PART I

TARGET MARKETEAM

1120 AVENUE OF THE AMERICAS

NEW YORK, NY 10036

WON-EX 0205

| SCHEDULE I (Form 990) | | | | | | OMB No. 1545-0047 |
|---|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | | | | | **2013** Open to Public Inspection |

**Grants and Other Assistance to Organizations, Governments, and Individuals in the United States**

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.
▶ Attach to Form 990.
▶ Information about Schedule I (Form 990) and its instructions is at www.irs.gov/form990.

Name of the organization: WONDERWORK, INC.  Employer identification number: 27-4159217

## Part I  General Information on Grants and Assistance

1. Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? .......... ☒ Yes ☐ No

2. Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II  Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) ASPEN USA OFFICE 4 WEST 43RD STREET NEW YORK, NY 10036 | 13-1843411 | 501(C)(3) | 15,000 | | | | BURN |
| (2) ASCRS FOUNDATION 4000 LEGATO ROAD FAIRFAX, VA 22033 | 22-3388748 | 501(C)(3) | 10,000 | | | | CATARACT |
| (3) BETHANY KIDS PO BOX 1637 AKRON, PA 23413-1637 | 32-2164127 | 501(C)(3) | | | | | BURN |
| (4) CHILDREN'S SURGICAL CENTRE PO BOX 3503 KODIAK, AK 99614 | 71-8917196 | 501(C)(3) | 10,000 | | | | BURN, CATARACT |
| (5) CURE INTERNATIONAL 701 BOSLER AVENUE LEMOYNE, PA 17043 | 58-2248333 | 501(C)(3) | 150,000 | | | | CLUBFOOT |
| (6) HIMALAYAN CATARACT PROJECT PO BOX 55 WATERBURY, VT 05674 | 03-0363926 | 501(C)(3) | 100,000 | | | | CATARACT |
| (7) DR PRABHA EYE INSTITUTE 221 TEARWOOD ROAD ROCHESTER, NY 14618 | 13-1294601 | 501(C)(3) | 10,000 | | | | CATARACT |
| (8) MEDICAL MINISTRIES FOUNDATION SITE 220 STAMFORD, TX 77477 | 62-6046438 | 501(C)(3) | 10,000 | | | | CATARACT, BURN |
| (9) MOBILITY OUTREACH FOUNDATION SUITE 323 SEATTLE, WA 98122 | 91-1453216 | 501(C)(3) | 10,000 | | | | CLUBFOOT |
| (10) RESURGE 145 E WOLFE ROAD SUNNYVALE, CA 94086 | 23-7292770 | 501(C)(3) | 10,000 | | | | BURN |
| (11) TANZANIAN FEDERATION COMMUNITY JORDAN TRUST NO 337 ROCKVILLE, MD 20896 | 52-1613548 | 501(C)(3) | 50,000 | | | | CATARACT |
| (12) SURGICAL VOLUNTEERS INTERNATIONAL 63712 E. MESA RIDGE CT TUCSON, AZ 85739 | 06-1616591 | 501(C)(3) | 10,000 | | | | BURN |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ........... ▲

3 Enter total number of other organizations listed in the line 1 table ........... ▲

For Paperwork Reduction Act Notice, see the Instructions for Form 990.  Schedule I (Form 990) (2013)

JSA
3E1288 1.000
4099FL 2231  5/4/2015  8:34:13 AM  V 13-7.15  2910316  PAGE 53

SCHEDULE I
(Form 990)

OMB No. 1545-0047

2013

Open to Public
Inspection

# Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.
▶ Attach to Form 990.
▶ Information about Schedule I (Form 990) and its instructions is at www.irs.gov/form990.

Department of the Treasury
Internal Revenue Service

Name of the organization
WONDERWORKS, INC.

Employer identification number
27-4159217

## Part I  General Information on Grants and Assistance

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☒ Yes  ☐ No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II  Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) THE JOHN FAWCETT FOUNDATION 6201 LEESBURG PIKE FALLS CHURCH, VA 22044 | 22-4285892 | 501(C)(3) | 26,000. | | | | CATARACT |
| (2) UNITE FOR SIGHT 15TH FLOOR NEW HAVEN, CT 06510 | 32-0081816 | 501(C)(3) | 46,000. | | | | CATARACT |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . ▶ 14.
3  Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule I (Form 990) (2013)

JSA
3E1288 1.000

WON-EX 0207

WONDERWORK, INC.

**Part III** Grants and Other Assistance to Individuals in the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of non-cash assistance |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |

**Part IV** Supplemental Information. Complete this part to provide the information required in Part I, line 2, Part III, column (b), and any other additional information.

GRANT ELIGIBILITY

FORM 990, SCHEDULE I, PART I, LINE 2

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS. THE SELECTION PROCESS ALSO INCLUDES OBTAINING THIRD

PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING WITH

THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

JSA
3E1504 1.000     4099FL 2231  5/4/2015   8:34:13 AM   V 13-7.15          2910316

WON-EX 0208

# Compensation Information

For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees
► Complete if the organization answered "Yes" to Form 990, Part IV, line 23.
► Attach to Form 990. ► See separate instructions.
► Information about Schedule J (Form 990) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

**2013**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

## Part I  Questions Regarding Compensation

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

| | |
|---|---|
| ☐ First-class or charter travel | ☐ Housing allowance or residence for personal use |
| ☐ Travel for companions | ☐ Payments for business use of personal residence |
| ☐ Tax indemnification and gross-up payments | ☐ Health or social club dues or initiation fees |
| ☐ Discretionary spending account | ☐ Personal services (e.g., maid, chauffeur, chef) |

|  |  |  |  |  |
|---|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked in line 1a? | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

| | |
|---|---|
| ☒ Compensation committee | ☐ Written employment contract |
| ☐ Independent compensation consultant | ☒ Compensation survey or study |
| ☐ Form 990 of other organizations | ☒ Approval by the board or compensation committee |

|  |  |  |  |  |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | | X |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | | X |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** | | X |
| | If "Yes" to any of lines 4a–c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only section 501(c)(3) and 501(c)(4) organizations must complete lines 5–9.** | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | **5a** | | X |
| **b** | Any related organization? | **5b** | | X |
| | If "Yes" to line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | **6a** | | X |
| **b** | Any related organization? | **6b** | | X |
| | If "Yes" to line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 5 and 6? If "Yes," describe in Part III | **7** | | X |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** | | X |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.                    Schedule J (Form 990) 2013

WON-EX 0209

Schedule J (Form 990) 2013

**Part II**   **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.**

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)–(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)–(D) | (F) Compensation reported as deferred in prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 BRIAN MULLANEY<br>CO-FOUNDER, PRESIDENT & CEO | (i)<br>(ii) | 475,000. | 0<br>0 | 0<br>0 | 0<br>0 | 42,744. | 517,744.<br>0 | 0<br>0 |
| 2 HANA FUCHS<br>CHIEF FINANCIAL OFFICER | (i)<br>(ii) | 200,000. | 0<br>0 | 0<br>0 | 0<br>0 | 9,252. | 209,252.<br>0 | 0<br>0 |
| 3 KAREN LAZARUS<br>DIRECTOR STRATEGIC PROJECTS | (i)<br>(ii) | 142,500. | 0<br>0 | 0<br>0 | 0<br>0 | 18,111. | 160,611.<br>0 | 0<br>0 |
| 4 | (i)<br>(ii) | | | | | | | |
| 5 | (i)<br>(ii) | | | | | | | |
| 6 | (i)<br>(ii) | | | | | | | |
| 7 | (i)<br>(ii) | | | | | | | |
| 8 | (i)<br>(ii) | | | | | | | |
| 9 | (i)<br>(ii) | | | | | | | |
| 10 | (i)<br>(ii) | | | | | | | |
| 11 | (i)<br>(ii) | | | | | | | |
| 12 | (i)<br>(ii) | | | | | | | |
| 13 | (i)<br>(ii) | | | | | | | |
| 14 | (i)<br>(ii) | | | | | | | |
| 15 | (i)<br>(ii) | | | | | | | |
| 16 | (i)<br>(ii) | | | | | | | |

JSA
3E1291 1.000

Schedule J (Form 990) 2013

WON-EX 0210

WONDERWORK, INC.                                                                27-4159217

**Part III  Supplemental Information**
Complete this part to provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II.
Also complete this part for any additional information.

JSA
3E1994 1.000    4099FL 2231  5/4/2015   8:34:13 AM   V 13-7.15          2910316          PAGE 58

WON-EX 0211

OMB No. 1545-0047

**SCHEDULE L**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Transactions With Interested Persons

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.
▶ Attach to Form 990 or 990-EZ. ▶ See separate instructions.
▶ Information about Schedule L (Form 990 or 990-EZ) and its instructions is at www.irs.gov/form990.

**2013**

Open To Public
Inspection

| Name of the organization | Employer Identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Excess Benefit Transactions (section 501(c)(3) and section 501(c)(4) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year
under section 4958 . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . . . . . . . . . . . ▶ $ _____

**Part II** Loans to and/or From Interested Persons.
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To | From | (e) Original principal amount | (f) Balance due | (g) In default? Yes | No | (h) Approved by board or committee? Yes | No | (i) Written agreement? Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (1) J. MULLANEY | DISQ PER | IMPACT | X | | 250,000. | 200,000. | | X | X | | X | |
| (2) | | | | | | | | | | | | |
| (3) | | | | | | | | | | | | |
| (4) | | | | | | | | | | | | |
| (5) | | | | | | | | | | | | |
| (6) | | | | | | | | | | | | |
| (7) | | | | | | | | | | | | |
| (8) | | | | | | | | | | | | |
| (9) | | | | | | | | | | | | |
| (10) | | | | | | | | | | | | |
| Total | | | | | ▶ $ | 200,000. | | | | | | |

**Part III** Grants or Assistance Benefiting Interested Persons.
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.

Schedule L (Form 990 or 990-EZ) 2013

WON-EX 0212

**Part IV**   **Business Transactions Involving Interested Persons.**

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenue? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |
| (8) | | | | | |
| (9) | | | | | |
| (10) | | | | | |

**Part V**   **Supplemental Information**

Provide additional information for responses to questions on Schedule L (see instructions).

WON-EX 0213

# Noncash Contributions

▶ **Complete if the organizations answered "Yes" on Form 990, Part IV, lines 29 or 30.**
▶ **Attach to Form 990.**
▶ **Information about Schedule M (Form 990) and its instructions is at** *www.irs.gov/form990.*

OMB No. 1545-0047

**2013**

Open To Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I**  Types of Property

| | | (a) Check if applicable | (b) Number of contributions or items contributed | (c) Noncash contribution amounts reported on Form 990, Part VIII, line 1g | (d) Method of determining noncash contribution amounts |
|---|---|---|---|---|---|
| 1 | Art - Works of art . . . . . . . . . . | | | | |
| 2 | Art - Historical treasures . . . . . . | | | | |
| 3 | Art - Fractional interests . . . . . . | | | | |
| 4 | Books and publications . . . . . . | | | | |
| 5 | Clothing and household goods. . . . . . . . . . . . . . | | | | |
| 6 | Cars and other vehicles . . . . . . | | | | |
| 7 | Boats and planes. . . . . . . . . | | | | |
| 8 | Intellectual property . . . . . . . . | | | | |
| 9 | Securities - Publicly traded . . . . | X | 6. | 239,725. | FMV |
| 10 | Securities - Closely held stock . . . | | | | |
| 11 | Securities - Partnership, LLC, or trust interests . . . . . . . . . . | | | | |
| 12 | Securities - Miscellaneous . . . . . | | | | |
| 13 | Qualified conservation contribution - Historic structures . . . . . . . . . . . | | | | |
| 14 | Qualified conservation contribution - Other . . . . . . . . | | | | |
| 15 | Real estate - Residential . . . . . . | | | | |
| 16 | Real estate - Commercial . . . . . | | | | |
| 17 | Real estate - Other . . . . . . . . | | | | |
| 18 | Collectibles. . . . . . . . . . . . | | | | |
| 19 | Food inventory . . . . . . . . . . | | | | |
| 20 | Drugs and medical supplies . . . . | | | | |
| 21 | Taxidermy . . . . . . . . . . . . | | | | |
| 22 | Historical artifacts . . . . . . . . . | | | | |
| 23 | Scientific specimens . . . . . . . . | | | | |
| 24 | Archeological artifacts . . . . . . . | | | | |
| 25 | Other ▶ (_____) | | | | |
| 26 | Other ▶ (_____) | | | | |
| 27 | Other ▶ (_____) | | | | |
| 28 | Other ▶ (_____) | | | | |

| 29 | Number of Forms 8283 received by the organization during the tax year for contributions for which the organization completed Form 8283, Part IV, Donee Acknowledgement . . . . . . . . | **29** | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 30 a | During the year, did the organization receive by contribution any property reported in Part I, lines 1-28, that it must hold for at least three years from the date of the initial contribution, and which is not required to be used for exempt purposes for the entire holding period? . . . . . . . . . . . . . . . . . . . . . . . . . . | **30a** | | X |
| b | If "Yes," describe the arrangement in Part II. | | | |
| 31 | Does the organization have a gift acceptance policy that requires the review of any non-standard contributions? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **31** | | X |
| 32 a | Does the organization hire or use third parties or related organizations to solicit, process, or sell noncash contributions? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **32a** | | X |
| b | If "Yes," describe in Part II. | | | |
| 33 | If the organization did not report an amount in column (c) for a type of property for which column (a) is checked, describe in Part II. | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

JSA
3E1298 1.000

Schedule M (Form 990) (2013)

4099FL 2231  5/4/2015    8:34:13 AM    V 13-7.15        2910316                    PAGE 61

WON-EX 0214

**Part II** **Supplemental Information.** Complete this part to provide the information required by Part I, lines 30b, 32b, and 33, and whether the organization is reporting in Part I, column (b), the number of contributions, the number of items received, or a combination of both. Also complete this part for any additional information.

NUMBER OF CONTRIBUTIONS

FORM 990, SCH M, PART I, COLUMN (B)

THE NUMBER IN COLUMN (B) REPRESENTS THE NUMBER OF CONTRIBUTIONS.

WON-EX 0215

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.

OMB No. 1545-0047

**2013**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

ORGANIZATION'S MISSION

FORM 990, PART III, LINE 1

WONDERWORK IS A NOT-FOR-PROFIT ORGANIZATION WHICH WAS FOUNDED TO PROVIDE

TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND ADULTS IN

UNDERSERVED REGIONS OF THE WORLD. WONDERWORK PROVIDES LIFE-CHANGING

SUPPORT FOR ILLNESS, DISEASE, AND DISABILITY INCLUDING BUT NOT LIMITED TO

BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS, AND PEDIATRIC CARDIAC

SURGERY. WONDERWORK SUPPORTS OTHER MEDICAL INSTITUTIONS AND CHARITABLE

ORGANIZATIONS ENGAGED IN THE PROVISION OF THESE SERVICES; AS WELL AS,

EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL CARE AND

RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH DISABILITIES.


WONDERWORK ALSO AIMS TO FURTHER THE PUBLIC EDUCATION AND PUBLIC

INTERACTION BY ENGAGING IN PUBIC EDUCATION AND DELIVERY OF CALLS TO

ACTION ASKING THE PUBLIC TO TAKE ACTION IN SUPPORT OF WONDERWORK'S

PROGRAMS IN CONJUNCTION WITH FUNDRAISING APPEALS.


SIGNIFICANT PROGRAM SERVICE ACTIVITIES

FORM 990, PART III, LINE 3

THE ORGANIZATION WAS INCORPORATED IN AND FILED AN INITIAL RETURN IN

FISCAL YEAR 2011. DURING FISCAL YEAR 2012, WONDERWORK, INC. RECEIVED

SIGNIFICANT SUPPORT FROM DONORS AND INCREASED OPERATIONS TO SUPPORT ITS

FIVE MAIN SERVICE AREAS - BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS,

AND PEDIATRIC CARDIAC SURGERY. THE ORGANIZATION SAW CONTINUED GROWTH IN

For Privacy Act and Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.      Schedule O (Form 990 or 990-EZ) (2013)

JSA
3E1227 1.000

4099PL 2231  5/4/2015    8:34:13 AM   V 13-7.15       2910316              PAGE 63

WON-EX 0216

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

FISCAL YEAR 2013 AND 2014 HOWEVER, MOST DONATIONS WERE RESTRICTED TO THE
BLINDNESS, CLUBFOOT, BURN CARE PROGRAMS.

FORM 990 REVIEW

FORM 990, PART VI, LINE 11B

THE FORM 990 WAS PREPARED BY AN INTERNATIONAL ACCOUNTING FIRM AND THE
WONDERWORK FINANCE DEPARTMENT. A COPY OF THE FORM 990 WAS REVIEWED BY THE
CHAIR OF THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS AND WAS
DISTRIBUTED TO ALL BOARD MEMBERS BEFORE FILING WITH THE IRS.

CONFLICT OF INTEREST POLICY

FORM 990, PART VI, LINE 12C

EACH OFFICER, DIRECTOR AND KEY EMPLOYEE OF THE ORGANIZATION IS REQUIRED
TO DISCLOSE ANY CONFLICTS OF INTEREST THAT ARISE THROUGH EMPLOYMENT,
BOARD SERVICE OR POSITION IN THE ORGANIZATION. THE ORGANIZATION MONITORS
COMPLIANCE WITH ITS CONFLICT OF INTEREST POLICY THROUGH ANNUAL COMPLETION
OF THE QUESTIONNAIRE AND DISCLOSURE STATEMENT THAT IS DISTRIBUTED TO
THESE INDIVIDUALS.

ALSO, NEW EMPLOYEES JOINING THE ORGANIZATION ARE REQUIRED TO COMPLETE THE
QUESTIONNAIRE. POTRNTIAL CONFLICTS OF INTEREST ARE INVESTIGATED
IMMEDIATELY, AND A PERSON WHO HAS A CONFLICT OF INTEREST SHALL NOT
PARTICIPATE IN DISCUSSIONS ON ANY MATTER RELATED TO THE CONFLICT.

COMPLETED QUESTIONNAIRES ARE AVAILABLE FOR INSPECTION BY ANY BOARD MEMBER
AND MAY BE REVIEWED BY THE ORGANIZATION'S LEGAL COUNSEL. THE FINANCE

WON-EX 0217

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

DEPARTMENT MONITORS NEW CONTRACTS AND INVOICE PAYMENTS TO MAKE SURE THAT
THE POLICY IS FOLLOWED.

PROCESS FOR DETERMINING COMPENSATION

FORM 990, PART VI, LINE 15A & 15B

AN INDEPENDENT COMPENSATION COMMITTEE HAS BEEN ESTABLISHED BY THE BOARD
OF DIRECTORS TO SECURE DATA FROM AND ABOUT COMPARABLE NONPROFIT
ORGANIZATIONS IN OUR AREA TO BENCHMARK PAY. THE COMMITTEE WAS ESTABLISHED
TO FURTHER COLLECT OTHER PUBLISHED SURVEY DATA, WHEN APPROPRIATE, OF
FOR-PROFIT ORGANIZATIONS FOR SPECIFIC FUNCTIONAL COMPETENCIES SUCH AS
FINANCE AND HUMAN RESOURCES. TOGETHER WITH THIS DATA FROM THE COMPARABLE
LOCAL ORGANIZATIONS, DATA FROM THESE MARKET SEGMENTS ARE USED TO FORM A
MARKET COMPOSITE TO ASSESS THE COMPETITIVENESS, FAIRNESS AND
APPROPRIATENESS OF COMPENSATION PAID BY WONDERWORK TO ITS EXECUTIVES AND
OTHER EMPLOYEES.

WONDERWORK'S COMPENSATION STRATEGY AND IMPLEMENTATION IS ADMINISTERED BY
THIS COMPENSATION COMMITTEE, WHICH WILL REPORT ITS FINDINGS TO THE BOARD
OF DIRECTORS. THE BOARD, THROUGH THIS COMMITTEE, IS RESPONSIBLE FOR
ESTABLISHING AND MAINTAINING A COMPETITIVE COMPENSATION PROGRAM FOR THE
ORGANIZATION AND COORDINATING AN ANNUAL REVIEW BY AN INDEPENDENT REVIRWER
(OR AN INTERNAL DETERMINATION) TO EVALUATE THE ORGANIZATION'S EXECUTIVE
COMPENSATION AGAINST THE COMPETITIVE MARKET. FOLLOWING THE REVIEW OF THIS
EVALUATION, THE BOARD APPROVES, FOR SELECTED KEY EXECUTIVES, BASE
SALARIES AND ANNUAL INCENTIVE OPPORTUNITY ADJUSTMENTS (IF ANY), AND
OBJECTIVES AND GOALS FOR THE UPCOMING YEAR.

JSA                                        Schedule O (Form 990 or 990-EZ) 2013
3E1228 1.000
4099PL 2231 5/4/2015   8:34:13 AM   V 13-7.15      2910316          PAGE 65

WON-EX 0218

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

COMPENSATION REVIEWS ARE CONTEMPORANEOUSLY DOCUMENTED IN BOARD AND
COMMITTEE MINUTES.

DOCUMENT DISCLOSURE

FORM 990, PART VI, LINE 19

THE ORGANIZATION MAKES THE FORM 990 AVAILABLE TO THE PUBLIC BY RETAINING

A COPY AT ITS HEADQUARTERS IN NEW YORK CITY. THE FORM 990 IS ALSO

PUBLISHED ON THE INTERNET ON THE ORGANIZATION'S WEBSITE. THE

ORGANIZATIONS FINANCIAL STATEMENTS ARE ALSO AVAILABLE ON THE WEBSITE

(WWW.WONDERWORK.ORG).

THE ORGANIZATION'S GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY

ARE AVAILABLE UPON REQUEST.

ATTACHMENT 1

FORM 990, PART VI, LINE 17 - STATES

AL,AK,AR,CA,CO,CT,

DC,FL,GA,HI,IL,KS,KY,ME,MD,MA,MI,

MN,MS,NV,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,

RI,SC,TN,UT,VA,WA,WV,WI,

ATTACHMENT 2

990, PART VII- COMPENSATION OF THE FIVE HIGHEST PAID IND. CONTRACTORS

| NAME AND ADDRESS | DESCRIPTION OF SERVICES | COMPENSATION |
|---|---|---|
| JONES DAY | CONSULTING SERVICES | 245,357. |

WON-EX 0219

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

990, PART VII- COMPENSATION OF THE FIVE HIGHEST PAID IND. CONTRACTORS

| NAME AND ADDRESS | DESCRIPTION OF SERVICES | COMPENSATION |
|---|---|---|
| 222 EAST 41ST STREET<br>NEW YORK, NY 10017-6702 | | |
| KRAVET & VOGEL, LLP<br>1040 AVENUE OF THE AMERICAS - STE 1101<br>NEW YORK, NY 10018-3703 | CONSULTING SERVICES | 237,240. |

WON-EX 0220

**Form 8868**

(Rev. January 2014)

Department of the Treasury
Internal Revenue Service

## Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return.
▶ Information about Form 8868 and its instructions is at *www.irs.gov/form8868*.

OMB No. 1545-1709

- If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box ............... ▶ ☒
- If you are filing for an Additional (Not Automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

*Do not complete Part II unless* you have already been granted an automatic 3-month extension on a previously filed Form 8868.

**Electronic filing *(e-file)*.** You can electronically file Form 8868 if you need a 3-month automatic extension of time to file (6 months for a corporation required to file Form 990-T), or an additional (not automatic) 3-month extension of time. You can electronically file Form 8868 to request an extension of time to file any of the forms listed in Part I or Part II with the exception of Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, which must be sent to the IRS in paper format (see instructions). For more details on the electronic filing of this form, visit *www.irs.gov/efile* and click on *e-file for Charities & Nonprofits*.

**Part I** | **Automatic 3-Month Extension of Time. Only submit original (no copies needed).**

A corporation required to file Form 990-T and requesting an automatic 6-month extension - check this box and complete
Part I only .............................................................. ▶ ☐

*All other corporations (including 1120-C filers), partnerships, REMICs, and trusts must use Form 7004 to request an extension of time to file income tax returns.*

| Type or print | Name of exempt organization or other filer, see instructions. | Enter filer's identifying number, see instructions |
|---|---|---|
| | | **Employer identification number (EIN) or** |
| File by the due date for filing your return. See instructions. | WONDERWORK, INC. | 27-4159217 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | **Social security number (SSN)** |
| | 420 5TH AVENUE, 27TH FLOOR | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) ........... | 0 | 1 |

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | Form 990-T (corporation) | 07 |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 (other than individual) | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

- The books are in the care of ▶ HANA FUCHS, 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018

   Telephone No. ▶ 212 729-1855                FAX No. ▶ _____
- If the organization does not have an office or place of business in the United States, check this box ............... ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box .... ▶ ☐ . If it is for part of the group, check this box .... ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

1    I request an automatic 3-month (6 months for a corporation required to file Form 990-T) extension of time
     until _____02/16__, 20 15 , to file the exempt organization return for the organization named above. The extension is
     for the organization's return for:
     ▶ ☐ calendar year 20 ____ or
     ▶ ☒ tax year beginning _____07/01__, 2013 , and ending _____06/30 , 20 14 .

2    If the tax year entered in line 1 is for less than 12 months, check reason:  ☐ Initial return   ☐ Final return
     ☐ Change in accounting period

3a   If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
     nonrefundable credits. See instructions. | 3a | $ | 0 |
 b   If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and
     estimated tax payments made. Include any prior year overpayment allowed as a credit. | 3b | $ | 0 |
 c   **Balance due.** Subtract line 3b from line 3a. Include your payment with this form, if required, by using EFTPS
     (Electronic Federal Tax Payment System). See instructions. | 3c | $ | 0 |

**Caution.** If you are going to make an electronic funds withdrawal (direct debit) with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

**For Privacy Act and Paperwork Reduction Act Notice, see instructions.**                **Form 8868** (Rev. 1-2014)

JSA
3F8054 2.000

WON-EX 0221

- If you are filing for an **Additional (Not Automatic) 3-Month Extension**, complete only Part II and check this box . . . . . . ▶ ☒

**Note.** Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.

- If you are filing for an **Automatic 3-Month Extension**, complete only Part I (on page 1).

| **Part II** | Additional (Not Automatic) 3-Month Extension of Time. Only file the original (no copies needed). |
|---|---|

| Type or print | Name of exempt organization or other filer, see instructions. | Enter filer's identifying number, see instructions |
|---|---|---|
| | WONDERWORK, INC. | **Employer identification number (EIN) or** |
| **File by the due date for filing your return. See instructions.** | Number, street, and room or suite no. If a P.O. box, see instructions. | 27-4159217 |
| | 420 5TH AVENUE, 27TH FLOOR | **Social security number (SSN)** |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . . . . . . ▢ ▢ | 0 | 1 |

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | | |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 (other than individual) | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

**STOP!** Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.

- The books are in the care of ▶ HANA FUCHS, 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018

  Telephone No. ▶ 212  729-1855                Fax No. ▶

- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . ▶ ▢
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . . . ▶ ▢ . If it is for part of the group, check this box . . . . . . ▶ ▢ and attach a list with the names and EINs of all members the extension is for.

**4** I request an additional 3-month extension of time until _____ 05/15 , 20 15 .

**5** For calendar year _____ , or other tax year beginning ___ 07/01 , 20 13 , and ending ___ 06/30 , 20 14 .

**6** If the tax year entered in line 5 is for less than 12 months, check reason: ▢ Initial return ▢ Final return

  ▢ Change in accounting period

**7** State in detail why you need the extension  INFORMATION NECESSARY TO PREPARE A COMPLETE

AND ACCURATE RETURN IS NOT YET AVAILABLE.

| | | | |
|---|---|---|---|
| **8a** | If this application is for Forms 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. | **8a** $ | 0 |
| **b** | If this application is for Forms 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868. | **8b** $ | 0 |
| **c** | **Balance Due.** Subtract line 8b from line 8a. Include your payment with this form, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. | **8c** $ | 0 |

**Signature and Verification must be completed for Part II only.**

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ _~~signature~~_                    Title ▶ PAID PREPARER   Date ▶ 2/9/15

Form **8868** (Rev. 1-2014)

WON-EX 0222



**WONDERWORK, INC.**

Financial Statements

June 30, 2014 and 2013

(With Independent Auditors' Report Thereon)

WON-EX 0223

 **KPMG LLP**
345 Park Avenue
New York, NY 10154-0102

## Independent Auditors' Report

The Board of Directors
WonderWork, Inc.:

We have audited the accompanying financial statements of WonderWork, Inc. (WonderWork), which comprise the balance sheets as of June 30, 2014 and 2013, and the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

### Management's Responsibility for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditors' Responsibility

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the organization's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the organization's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of WonderWork, Inc. as of June 30, 2014 and 2013, and the changes in its net assets and its cash flows for the years then ended, in accordance with U.S. generally accepted accounting principles.

*KPMG LLP*

May 7, 2015

KPMG LLP is a Delaware limited liability partnership,
the U.S. member firm of KPMG International Cooperative
("KPMG International"), a Swiss entity.

WON-EX 0224

**WONDERWORK, INC.**

Balance Sheets

June 30, 2014 and 2013

| Assets | | 2014 | 2013 |
|---|---|---|---|
| Cash and cash equivalents | $ | 873,961 | 1,178,229 |
| Contributions receivable (note 3) | | 370,116 | 570,156 |
| Prepaid expenses and other assets | | 45,625 | 45,625 |
| Investments (note 4) | | 14,066,815 | 6,431,625 |
| Property and equipment, net | | 88,926 | 131,590 |
| Total assets | $ | 15,445,443 | 8,357,225 |

**Liabilities and Net Assets**

| | | | |
|---|---|---|---|
| Liabilities: | | | |
| Accounts payable and accrued expenses | $ | 1,167,916 | 1,236,660 |
| Loans payable (note 7) | | 9,518,750 | 3,659,203 |
| Grants and other amounts payable to Help Me See (note 8) | | — | 733,000 |
| Total liabilities | | 10,686,666 | 5,628,863 |
| Net assets: | | | |
| Unrestricted | | 2,376,415 | 873,356 |
| Temporarily restricted (note 6) | | 2,382,362 | 1,855,006 |
| Total net assets | | 4,758,777 | 2,728,362 |
| Total liabilities and net assets | $ | 15,445,443 | 8,357,225 |

See accompanying notes to financial statements.

2

WON-EX 0225

**WONDERWORK, INC.**

Statements of Activities

Years ended June 30, 2014 and 2013

| | | 2014 | 2013 |
|---|---|---|---|
| Change in unrestricted net assets: | | | |
| Operating activities: | | | |
| Revenues: | | | |
| Contributions | $ | 5,582,853 | 3,777,015 |
| In-kind contributions (note 10) | | 1,882,441 | — |
| Investment gain | | 1,878,168 | 881,997 |
| Other | | 26,130 | — |
| Net assets released from restrictions (note 6) | | 6,069,458 | 2,583,838 |
| Total revenues | | 15,439,050 | 7,242,850 |
| Expenses: | | | |
| Program: | | | |
| Surgical treatments and related activities, and information and health education (note 10) | | 9,762,437 | 6,522,235 |
| Management and general | | 286,751 | 527,411 |
| Fund-raising | | 4,619,803 | 4,785,598 |
| Total expenses | | 14,668,991 | 11,835,244 |
| Excess (deficiency) of operating revenues over operating expenses | | 770,059 | (4,592,394) |
| Nonoperating activities: | | | |
| Grant and other liability write-off (note 8) | | 733,000 | — |
| Increase (decrease) in unrestricted net assets | | 1,503,059 | (4,592,394) |
| Change in temporarily restricted net assets: | | | |
| Contributions | | 6,596,814 | 3,669,157 |
| Net assets released from restrictions (note 6) | | (6,069,458) | (2,583,838) |
| Increase in temporarily restricted net assets | | 527,356 | 1,085,319 |
| Increase (decrease) in net assets | | 2,030,415 | (3,507,075) |
| Net assets at beginning of year | | 2,728,362 | 6,235,437 |
| Net assets at end of year | $ | 4,758,777 | 2,728,362 |

See accompanying notes to financial statements.

3

WON-EX 0226

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2014

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | **Supporting services** | | | |
| Grants | $ 1,543,055 | — | — | — | 1,543,055 |
| In-kind treatments | 1,882,441 | — | — | — | 1,882,441 |
| Salaries and related expenses | 1,322,576 | 74,252 | 324,855 | 399,107 | 1,721,683 |
| Professional and consulting fees | 759,085 | 131,944 | 199,203 | 331,147 | 1,090,232 |
| Occupancy | 143,670 | 8,066 | 35,289 | 43,355 | 187,025 |
| Office supplies and services | (42,991) | 8,028 | 35,122 | 43,150 | 186,141 |
| Printing, publications, and postage (note 9) | 3,717,836 | — | 3,939,353 | 3,939,353 | 7,657,209 |
| Depreciation | 34,173 | 1,919 | 8,394 | 10,313 | 44,486 |
| Travel and other miscellaneous | 216,590 | 62,542 | 77,587 | 140,129 | 356,719 |
| Total expenses | $ 9,762,437 | 286,751 | 4,619,803 | 4,906,554 | 14,668,591 |

See accompanying notes to financial statements.

WON-EX 0227

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2013

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | | Supporting services | | |
| Grants | $ 1,327,500 | — | — | — | 1,327,500 |
| Salaries and related expenses | 917,879 | 150,696 | 301,393 | 452,089 | 1,369,968 |
| Professional and consulting fees | 245,758 | 361,409 | 115,651 | 477,060 | 722,818 |
| Occupancy | 157,154 | 6,684 | 18,662 | 25,346 | 182,500 |
| Office supplies and services | 148,932 | 6,334 | 17,686 | 24,020 | 172,952 |
| Printing, publications, and postage | 3,538,996 | — | 4,325,440 | 4,325,440 | 7,864,436 |
| Depreciation | 10,901 | 464 | 1,294 | 1,758 | 12,659 |
| Travel and other miscellaneous | 175,115 | 1,824 | 5,472 | 7,296 | 182,411 |
| Total expenses | $ 6,522,235 | 527,411 | 4,785,598 | 5,313,009 | 11,835,244 |

See accompanying notes to financial statements.

WON-EX 0228

**WONDERWORK, INC.**

Statements of Cash Flows

Years ended June 30, 2014 and 2013

| | 2014 | 2013 |
|---|---|---|
| Cash flows from operating activities: | | |
| Change in net assets | $ 2,030,415 | (3,507,075) |
| Adjustments to reconcile change in net assets to net cash used in operating activities: | | |
| Depreciation and amortization | 44,486 | 12,659 |
| Investment gain | (1,878,168) | (881,997) |
| Changes in operating assets and liabilities: | | |
| Contributions receivables | 200,040 | 199,295 |
| Accounts payable and accrued expenses | (68,744) | 1,166,599 |
| Grants and other amounts payable to Help Me See | (733,000) | — |
| Net cash used in operating activities | (404,971) | (3,010,519) |
| Cash flows from investing activities: | | |
| Purchases of investments | (6,265,858) | (791,214) |
| Sales of investments | 508,836 | 633,162 |
| Purchases of property and equipment | (1,822) | (130,645) |
| Net cash used in investing activities | (5,758,844) | (288,697) |
| Cash flows from financing activities: | | |
| Loans payable | 5,859,547 | 3,659,203 |
| Net cash provided by financing activities | 5,859,547 | 3,659,203 |
| Net (decrease) increase in cash and cash equivalents | (304,268) | 359,987 |
| Cash and cash equivalents, beginning of year | 1,178,229 | 818,242 |
| Cash and cash equivalents, end of year | $ 873,961 | 1,178,229 |

See accompanying notes to financial statements.

6

WON-EX 0229

**(1)  Description of Organization**

WonderWork, Inc. (the Organization or WonderWork) is a not-for-profit organization, which was incorporated in 2011 to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries suffering from disease, illness, or disability, including, but not necessarily limited to, blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as creating general awareness of these disabilities and available treatments. Since the Organization was recently formed, many activities consisted of start-up related costs for the years ended June 30, 2014 and 2013. In 2012, WonderWork changed its name from Surgery for the Poor, Inc. to WonderWork, Inc.

**(2)  Summary of Significant Accounting Policies**

*(a)  Basis of Presentation*

The Organization's financial statements have been prepared on the accrual basis of accounting in accordance with U.S. generally accepted accounting principles. Net assets and the changes therein are classified and reported as follows:

Unrestricted – Net assets that are not subject to donor-imposed restrictions.

Temporarily Restricted – Net assets subject to donor-imposed restrictions that will be met by actions of the Organization and/or the passage of time.

Revenues are reported as increases in unrestricted net assets unless their use is limited by explicit donor-imposed restrictions or by law. Expenses are reported as decreases in net assets.

*(b)  Fair Value*

Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability (an exit price) in the principal or most advantageous market for the asset or liability in an orderly transaction between market participants on the measurement date. The three levels of the fair value hierarchy are as follows:

- Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that a reporting entity has the ability to access at the measurement date.

- Level 2 inputs are inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly.

- Level 3 inputs are unobservable inputs for the asset or liability.

*(c)  Accounting Estimates*

The preparation of the financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingencies at the date of the financial statements and revenues and expenses recognized during the reporting period. Significant estimates made in the preparation of the financial statements include determining the net realizable value of contributions,

(Continued)

WON-EX 0230

valuation of in-kind contributions, and functional expense allocations. Actual results could differ from those estimates.

### (d) Cash and Cash Equivalents

The Organization considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents. The Organization maintains cash and cash equivalents in major financial institutions. Cash held by a financial institution that exceeds the Federal Deposit Insurance Corporation (FDIC) limits exposes the Organization to a concentration of credit risk.

### (e) Investments

Investments are reported at fair value based upon quoted market prices.

### (f) Contributions

Contributions, including unconditional promises to give (pledges), are recognized as revenue upon receipt and are considered to be unrestricted unless received with donor stipulations that limit their use through either purpose or time restrictions. Contributions with donor stipulations that limit their use are considered to be temporarily restricted until the donor restrictions expire, that is, when a time restriction ends or purpose restriction is fulfilled. Upon the expiration of donor stipulations, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the accompanying statements of activities as net assets released from restrictions. Contributions expected to be received after one year are discounted at a risk-adjusted rate of return.

### (g) Contributions In-Kind

Contributions in-kind include donated services and materials related to the treatments sponsored by WonderWork. These contributions are recorded at fair value on the date of donation and are recognizable as they either create or enhance assets that are not financial in nature or provided by individuals with specialized skills that would need to be purchased if the services had not been donated.

### (h) Property and Equipment

Property and equipment are stated at cost less accumulated depreciation and amortization. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets ranging from 3 to 5 years. Leasehold improvements are amortized on a straight-line basis over the lesser of their useful lives or the term of the lease.

### (i) Income Taxes

WonderWork recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. Income generated from activities unrelated to the WonderWork's exempt purpose is subject to tax under Internal Revenue Code Section 511. WonderWork utilizes a threshold of more likely than not for recognition and derecognition of tax positions taken or expected to be taken in a tax return. WonderWork did not recognize any unrelated business income tax liability for the years ended June 30, 2014 and 2013.

(Continued)

WON-EX 0231

(3) **Contributions and Contributions Receivable**

Contributions receivable are scheduled to be collected as follows at June 30, 2014 and 2013:

|  | 2014 | 2013 |
|---|---|---|
| Amount due in one year or less | $ 200,000 | 200,000 |
| Amount due in 2 to 5 years | 197,711 | 385,749 |
| Less discount to present value at 2.4% | (27,595) | (15,593) |
|  | $ 370,116 | 570,156 |

Contributions receivable is from one donor at June 30, 2014 and 2013. Approximately 35% of contributions were received from 6 donors in 2014 and 30% of contributions were received from two donors in 2013.

(4) **Investments**

The following presents the Organization's investments measured at fair value as of June 30, 2014 and 2013. These all represent Level 1 investments in the fair value hierarchy.

|  | 2014 | 2013 |
|---|---|---|
| Vanguard total world stock | $ 14,055,540 | 6,190,423 |
| Vanguard all world stock excluding U.S. | — | 175,670 |
| Vanguard – other | — | 65,532 |
| Other | 11,275 | — |
| Total investments | $ 14,066,815 | 6,431,625 |

(5) **Commitments**

The Organization has a lease agreement for the rental of its office in New York. Approximate minimum annual rentals related to this lease are as follows for the years ending June 30:

| | |
|---|---|
| 2015 | $ 182,500 |
| 2016 | 136,875 |
| | $ 319,375 |

Rent expense for the years ended June 30, 2014 and 2013 amounted to approximately $187,000 and $182,500, respectively.

(Continued)

WON-EX 0232

(6)  **Temporarily Restricted Net Assets**

Temporarily restricted net assets are available for the following as of June 30, 2014 and 2013:

|  | | 2014 | 2013 |
|---|---|---|---|
| Blindness | $ | — | 130,943 |
| Burns | | 958,278 | 559,412 |
| Clubfoot | | 1,053,968 | 594,495 |
| Time | | 370,116 | 570,156 |
| | $ | 2,382,362 | 1,855,006 |

Net assets were released from restrictions during the year ended June 30, 2014 by incurring expenses or the passage of time as follows:

|  | | 2014 | 2013 |
|---|---|---|---|
| Blindness | $ | 4,271,517 | 505,508 |
| Burns | | 614,320 | 894,222 |
| Clubfoot | | 983,281 | 961,577 |
| Hole in the heart | | — | 11,500 |
| Hydrocephalus | | 300 | 11,500 |
| Time | | 200,040 | 199,531 |
| | $ | 6,069,458 | 2,583,838 |

(7)  **Loans Payable**

In fiscal 2013, the Organization received an unsecured impact loan commitment of $7,500,000 from a foundation to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by the foundation are to be repaid after 5 years at the rate of 2% per annum. As of June 30, 2013, WonderWork had drawn down $2,500,000 of this loan. In 2014, an additional $5,000,000 was drawn down under the loan.

In 2014, the Organization received unsecured impact loans commitment of $2,000,000 to be used to generate additional funding for WonderWork programs. Funds loaned are to be repaid after 5 years at the rate of 2% per annum. In 2014, $100,000 of these loans were forgiven and recognized as contribution revenue in the accompanying statement of activities.

As of June 30, 2014 and 2013, WonderWork had drawn down a total of $9,400,000 and $2,500,000 of these loans, respectively. Interest on the loans is not due until repayment. Accrued interest expense of $118,750 at June 30, 2014 was recognized on these loans.

During 2013, WonderWork borrowed $1,159,203 against its investment brokerage account with interest rates ranging from 5.25% to 6%. This loan was fully repaid in October 2013.

(Continued)

WON-EX 0233

The aggregate amount of principal due on loans payable at June 30, 2014 is as follows:

| | | |
|---|---|---:|
| 2018 | $ | 7,500,000 |
| 2019 | | 1,900,000 |
| | $ | 9,400,000 |

Pursuit to the loan agreements, Wonderwork met its loan covenants as of June 30, 2014, which consisted of maintaining assets in excess of $1,500,000 and maintaining expenditures of 50% or more of all public donations on program service activities.

(8)  **Payable to HelpMeSee**

In August, 2011, WonderWork entered into a partnership agreement with HelpMeSee, another blindness charity and 501(c)(3), to work together to solve the problem of cataract blindness. This agreement provided that WonderWork would support HelpMeSee with program grants that WonderWork would pay to HelpMeSee, including an annual grant equal to the amount of the largest grant WonderWork made to a blindness partner from unrestricted funds that year, and a $2,000,000 program grant payable at the end of the 5 year agreement. (If the agreement was terminated before 5 years, this grant would be pro-rated.) This agreement provided that HelpMeSee would help WonderWork through payments of $166,667 per month to help pay for a portion of the expenses WonderWork incurred as part of this agreement. HelpMeSee terminated this agreement in the 12th month (August 2012) and currently the two organizations are in arbitration. The liability recorded at the termination of the agreement has been reversed as management believes the liability will not be paid.

(9)  **Allocation of Joint Costs**

In 2014 and 2013, Wonderwork conducted activities, principally direct mailings, that included fundraising appeals as well as program components. The joint costs incurred were allocated as follows:

| | | **2014** | **2013** |
|---|---|---:|---:|
| Program services | $ | 3,717,856 | 3,538,996 |
| Fund-raising | | 3,939,353 | 4,325,440 |
| Total | $ | 7,657,209 | 7,864,436 |

(10)  **Contributions In-Kind**

In fiscal year 2014, in-kind contributions consisted of donated professional services, overhead for medical and surgical staff and facilities, medical surgical supplies, medications, and outreach from surgical partners. The amount that hospitals donate toward the overall cost needed to provide the surgeries was $1,882,441.

WON-EX 0234

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2014 and 2013

(11) **Subsequent Events**

In connection with the preparation of the financial statements, the Organization evaluated subsequent events after the balance sheet date of June 30, 2014 through May 7, 2015, which was the date the financial statements were available to be issued and determined that there were no additional matters that are required to be disclosed.

12

WON-EX 0235

COPY OF WITHIN PAPER
RECEIVED

MAY 1 5 2015

NYS OFFICE OF THE ATTORNEY GENERAL
CHARITIES BUREAU

WON-EX 0236

# FUCHS

# EXHIBIT 8

ms 275

# CHAR500

NYS Annual Filing for Charitable Organizations
www.CharitiesNYS.com

Send with fee and attachments to:
NYS Office of the Attorney General
Charities Bureau Registration Section
120 Broadway
New York, NY 10271

**2014**
Open to Public
Inspection

## 1. General Information

For Fiscal Year Beginning (mm/dd/yyyy) 07 / 01 / 2014 and Ending (mm/dd/yyyy) 06 / 30 / 2015

Check if Applicable:
- [X] Address Change
- [ ] Name Change
- [ ] Initial Filing
- [ ] Final Filing
- [ ] Amended Filing
- [ ] Reg ID Pending

Name of Organization: WONDERWORK, INC.

Mailing Address:
411 FIFTH AVENUE, SUITE 702

City / State / Zip:
NEW YORK, NY 10016

Website:
WWW.WONDERWORK.ORG

Employer Identification Number (EIN):
27-4159217

NY Registration Number:
43-28-70

Telephone:
(212) 729-1855

Email:
HANA@WONDERWORK.ORG

Check your organization's registration category:
[ ] 7A only    [ ] EPTL only    [X] DUAL (7A & EPTL)    [ ] EXEMPT

Find your registration category in the Charities Registry at www.CharitiesNYS.com

## 2. Certification

See instructions for certification requirements. Improper certification is a violation of law that may be subject to penalties.

We certify under penalties of perjury that we reviewed this report, including all attachments, and to the best of our knowledge and belief, they are true, correct and complete in accordance with the laws of the State of New York applicable to this report.

President or Authorized Officer: Signature _____ Title LEO Date 8/13/16

Chief Financial Officer or Treasurer: Signature _____ Title CFO Date 8/13/16

## 3. Annual Reporting Exemption

Check the exemption(s) that apply to your filing. If your organization is claiming an exemption under the category (7A and EPTL only filers) or both categories (DUAL filers) that apply to your registration, complete only parts 1, 2, and 3, and submit the certified Char500. No fee, schedules, or additional attachments are required. If you cannot claim an exemption or are a DUAL filer that claims only one exemption, you must file applicable schedules and attachments and pay applicable fees.

- [ ] **3a. 7A filing exemption:** Total contributions from NY State including residents, foundations, government agencies, etc. did not exceed $25,000 and the organization did not engage a professional fund raiser (PFR) or fund raising counsel (FRC) to solicit contributions during the fiscal year. Or the organization qualifies for another 7A exemption (see instructions).

- [ ] **3b. EPTL filing exemption:** Gross receipts did not exceed $25,000 and the market value of assets did not exceed $25,000 at any time during the fiscal year.

## 4. Schedules and Attachments

See the following page for a checklist of schedules and attachments to complete your filing.

[X] Yes [ ] No    **4a.** Did your organization use a professional fund raiser, fund raising counsel or commercial co-venturer for fund raising activity in NY State? If yes, complete Schedule 4a.

[ ] Yes [X] No    **4b.** Did the organization receive government grants? If yes, complete Schedule 4b.

## 5. Fee

See the checklist on the next page to calculate your fee(s). Indicate fee(s) you are submitting here:

7A filing fee:
$ 25.

EPTL filing fee:
$ 250.

Total fee:
$ 275.

Make a single check or money order payable to:
"Department of Law"

CHAR500 Annual Filing for Charitable Organizations (Updated November 2014)                    Page 1

WON-EX 0237



EXHIBIT 8
WIT: Fuchs
DATE: 8-14-17
DEBRA STEVENS, RPR, CRR

# CHAR500

**Annual Filing Checklist**

Simply submit the certified CHAR500 with no fee, schedule, or additional attachments IF:
- Your organization is registered as 7A only and you marked the 7A filing exemption in Part 3.
- Your organization is registered as EPTL only and you marked the EPTL filing exemption in Part 3.
- Your organization is registered as DUAL and you marked **both** the 7A and EPTL filing exemption in Part 3.

## Checklist of Schedules and Attachments

Check the schedules you must submit with your CHAR500 as described in Part 4:

[X] If you answered "yes" in Part 4a, submit Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsel (FRC), Commercial Co-Venturers (CCV)

[ ] If you answered "yes" in Part 4b, submit Schedule 4b: Government Grants

Check the financial attachments you must submit with your CHAR500:

[X] IRS Form 990, 990-EZ, or 990-PF, and 990-T if applicable

[X] All additional IRS Form 990 Schedules including Schedule B (Schedule of Contributors).

[ ] IRS Form 990-T if applicable

If you are a 7A only or DUAL filer, submit the applicable independent Certified Public Accountant's Review or Audit Report:

[ ] Review Report if you received total revenue and support greater than $250,000 and up to $500,000.

[X] Audit Report if you received total revenue and support greater than $500,000

[ ] No Review Report or Audit Report is required because total revenue and support is less than $250,000

Note: The Audit and Review requirements are set to change in 2017 and 2021 in accordance with the Non Profit Revitalization Act of 2013.
For more details, visit www.CharitiesNYS.com.

## Calculate Your Fee

For 7A and DUAL filers, calculate the 7A fee:

[ ] $0, if you marked the 7A exemption in Part 3a

[X] $25, if you did not mark the 7A exemption in Part 3a

For EPTL and DUAL filers, calculate the EPTL fee:

[ ] $0, if you marked the EPTL exemption in Part 3b

[ ] $25, if the NET WORTH is less than $50,000

[ ] $50, if the NET WORTH is $50,000 or more but less than $250,000

[ ] $100, if the NET WORTH is $250,000 or more but less than $1,000,000

[X] $250, if the NET WORTH is $1,000,000 or more but less than $10,000,000

[ ] $750, if the NET WORTH is $10,000,000 or more but less than $50,000,000

[ ] $1500, if the NET WORTH is $50,000,000 or more

*Is my organization a 7A, EPTL or DUAL filer?*

- 7A filers are registered to solicit contributions in New York under Article 7-A of the Executive Law ("7A")
- EPTL filers are registered under the Estates, Powers & Trusts Law ("EPTL") because they hold assets and/or conduct activities for charitable purposes in NY.
- DUAL filers are registered under both 7A and EPTL.

Check your registration category and learn more about NY law at www.CharitiesNYS.com.

*Where do I find my organization's NET WORTH?*

NET WORTH for fee purposes is calculated on:
- IRS Form 990 Part I, line 22
- IRS Form 990 EZ Part I line 21
- IRS Form 990 PF, calculate the difference between Total Assets at Fair Market Value (Part II, line 16(c)) and Total Liabilities (Part II, line 23(b)).

## Send Your Filing

Send your CHAR500, all schedules and attachments, and total fee to:

NYS Office of the Attorney General
Charities Bureau Registration Section
120 Broadway
New York, NY 10271

CHAR500 Annual Filing for Charitable Organizations (Updated November 2014)

Page 2

WON-EX 0238

# CHAR500

Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers
www.CharitiesNYS.com

**2014**
Open to Public
Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. Use additional pages if necessary. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations.

## 1. Organization Information

| Name of Organization: | NY Registration Number: |
|---|---|
| WONDERWORK, INC. | 43-28-70 |

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

| Fund Raising Professional type: | Name of FRP: | NY Registration Number: |
|---|---|---|
| [X] Professional Fund Raiser | CDR FUNDRAISING GROUP | 32-52-14 |
| [ ] Fund Raising Counsel | Mailing Address: | Telephone: |
| [ ] Commercial Co-Venturer | 16900 SCIENCE DR. #210 | 301-858-1500 |
| | City / State / Zip: | |
| | BOWIE, MD 20715 | |

## 3. Contract Information

| Contract Start Date: | Contract End Date: |
|---|---|
| N/A | N/A |

## 4. Description of Services

Services provided by FRP: MARKETING AND FUNDRAISING CONSULTING

## 5. Description of Compensation

| Compensation arrangement with FRP: FLAT FEE PAID | Amount Paid to FRP: |
|---|---|
| | 227,500. |

## 6. Commercial Co-Venturer (CCV) Report

[ ] Yes [ ] No  If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).

CHAR500 Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers (Updated November 2014) Page 1

4J3552 1.000
4099FL 2231                    V 14-7.16          2910316              PAGE 3

WON-EX 0239

Form **990**

**Return of Organization Exempt From Income Tax**

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

► Do not enter social security numbers on this form as it may be made public.
► Information about Form 990 and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

**A** For the 2014 calendar year, or tax year beginning **07/01, 2014**, and ending **06/30, 20 15**

| B Check if applicable: | C Name of organization  WONDERWORK, INC. | D Employer identification number |
|---|---|---|
| ☐ Address change | Doing business as | 27-4159217 |
| X Name change | Number and street (or P.O. box if mail is not delivered to street address)  Room/suite  411 FIFTH AVENUE, SUITE 702 | E Telephone number  (212) 729-1855 |
| ☐ Initial return | City or town, state or province, country, and ZIP or foreign postal code  NEW YORK, NY 10016 | G Gross receipts $ 26,739,454. |

F Name and address of principal officer:  BRIAN MULLANEY
411 FIFTH AVENUE NEW YORK, NY 10016

H(a) Is this a group return for subordinates?  ☐ Yes  X No
H(b) Are all subordinates included?  ☐ Yes  ☐ No
If "No," attach a list. (see instructions)

**I** Tax-exempt status:  X 501(c)(3)  ☐ 501(c) ( ) ◄ (insert no.)  ☐ 4947(a)(1) or  ☐ 527

**J** Website: ► WWW.WONDERWORK.ORG

H(c) Group exemption number ►

**K** Form of organization:  X Corporation  ☐ Trust  ☐ Association  ☐ Other ►

L Year of formation: 2011  M State of legal domicile: DE

## Part I  Summary

| | | | |
|---|---|---|---|
| Activities & Governance | 1 | Briefly describe the organization's mission or most significant activities: PROVIDE FREE SURGERY TO INDIGENT CHILDREN AND ADULTS, FINANCIAL SUPPORT FOR LOCAL HOSPITALS, AND RAISE AWARENESS ABOUT THE LACK OF ACCESS TO SURGERY IN DEVELOPING COUNTRIES. | |
| | 2 | Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | |
| | 3 | Number of voting members of the governing body (Part VI, line 1a) . . . . . . . . . . . **3** | 4. |
| | 4 | Number of independent voting members of the governing body (Part VI, line 1b) . . . . . **4** | 3. |
| | 5 | Total number of individuals employed in calendar year 2014 (Part V, line 2a) . . . . . . **5** | 14. |
| | 6 | Total number of volunteers (estimate if necessary) . . . . . . . . . . . . . . . . **6** | 0 |
| | 7a | Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . . . . **7a** | 0 |
| | b | Net unrelated business taxable income from Form 990-T, line 34 . . . . . . . . . . . **7b** | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| Revenue | 8 Contributions and grants (Part VIII, line 1h) . . . . . . . . . . . . . | 12,179,667. | 12,396,269. |
| | 9 Program service revenue (Part VIII, line 2g) . . . . . . . . . . . . . | | |
| | 10 Investment income (Part VIII, column (A), lines 3, 4, and 7d) . . . . . . | 647,872. | 2,254,262. |
| | 11 Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) . . | 759,126. | 2,059. |
| | 12 Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) . . | 13,586,665. | 14,652,590. |
| Expenses | 13 Grants and similar amounts paid (Part IX, column (A), lines 1-3) . . . . | 1,543,055. | 1,992,500. |
| | 14 Benefits paid to or for members (Part IX, column (A), line 4) . . . . . . | 0 | 0 |
| | 15 Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 1,721,682. | 1,617,552. |
| | 16a Professional fundraising fees (Part IX, column (A), line 11e) . . . . . . | 0 | 0 |
| | b Total fundraising expenses (Part IX, column (D), line 25) ► 2,875,177. | | |
| | 17 Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) . . . . . | 9,521,813. | 8,684,299. |
| | 18 Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) . . | 12,786,550. | 12,294,351. |
| | 19 Revenue less expenses. Subtract line 18 from line 12 . . . . . . . . | 800,115. | 2,358,239. |

| Net Assets or Fund Balances | | Beginning of Current Year | End of Year |
|---|---|---|---|
| | 20 Total assets (Part X, line 16) . . . . . . . . . . . . . . . . . | 15,445,443. | 14,545,082. |
| | 21 Total liabilities (Part X, line 26) . . . . . . . . . . . . . . . . | 10,686,666. | 9,836,110. |
| | 22 Net assets or fund balances. Subtract line 21 from line 20 . . . . . . | 4,758,777. | 4,708,972. |

## Part II  Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ► Signature of officer | Date |
|---|---|---|
| | ► Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name  PHILLIP GROFF | Preparer's signature | Date  05/12/2016 | Check ☐ if self-employed | PTIN  P01247783 |
|---|---|---|---|---|---|
| | Firm's name ► KPMG LLP | | | Firm's EIN ► 13-5565207 | |
| | Firm's address ► 345 PARK AVENUE NEW YORK, NY 10154-0102 | | | Phone no. 212-758-9700 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . . X Yes  ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.

Form **990** (2014)

JSA
4E1010 1.000

4099FL 2231                    V 14-7.16                    2910316                    PAGE 1

WON-EX 0240

Form **8868**
(Rev. January 2014)

Department of the Treasury
Internal Revenue Service

OMB No. 1545-1709

# Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return.
▶ Information about Form 8868 and its instructions is at www.irs.gov/form8868.

- If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box . . . . . . . . . . . . . . . ▶ [X]
- If you are filing for an Additional (Not Automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

*Do not complete Part II unless* you have already been granted an automatic 3-month extension on a previously filed Form 8868.

**Electronic filing** *(e-file).* You can electronically file Form 8868 if you need a 3-month automatic extension of time to file (6 months for a corporation required to file Form 990-T), or an additional (not automatic) 3-month extension of time. You can electronically file Form 8868 to request an extension of time to file any of the forms listed in Part I or Part II with the exception of Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, which must be sent to the IRS in paper format (see instructions). For more details on the electronic filing of this form, visit *www.irs.gov/efile* and click on *e-file for Charities & Nonprofits.*

## Part I | Automatic 3-Month Extension of Time. Only submit original (no copies needed).

A corporation required to file Form 990-T and requesting an automatic 6-month extension - check this box and complete
Part I only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

*All other corporations (including 1120-C filers), partnerships, REMICs, and trusts must use Form 7004 to request an extension of time to file income tax returns.*

Enter filer's identifying number, see instructions

| Type or print | Name of exempt organization or other filer, see instructions. | Employer identification number (EIN) or |
|---|---|---|
| File by the due date for filing your return. See instructions | WONDERWORK, INC. | 27-4159217 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | Social security number (SSN) |
| | 420 5TH AVENUE, 27TH FLOOR | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . . . . . . . | 0 | 1 |

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | Form 990-T (corporation) | 07 |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 (other than individual) | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

- The books are in the care of ▶ HANA FUCHS, 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018

Telephone No. ▶ __212 729-1855_____ FAX No. ▶ _____
- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . . ▶ ☐ . If it is for part of the group, check this box . . . . . . ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

1   I request an automatic 3-month (6 months for a corporation required to file Form 990-T) extension of time
    until _____ 09/15_ , 20 16 _ , to file the exempt organization return for the organization named above. The extension is
    for the organization's return for:
    ▶ ☐ calendar year 20 ___ or
    ▶ [X] tax year beginning _____ 07/01_ , 20 14 _ , and ending _____ 06/30_ , 20 15 _ .

2   If the tax year entered in line 1 is for less than 12 months, check reason: ☐ Initial return   ☐ Final return
    ☐ Change in accounting period

| | | | 3a | $ | 0 |
|---|---|---|---|---|---|

3a  If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
    nonrefundable credits. See instructions. | 3a | $ | 0

  b  If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and
     estimated tax payments made. Include any prior year overpayment allowed as a credit. | 3b | $ | 0

  c  Balance due. Subtract line 3b from line 3a. Include your payment with this form, if required, by using EFTPS
     (Electronic Federal Tax Payment System). See instructions. | 3c | $ | 0

**Caution.** If you are going to make an electronic funds withdrawal (direct debit) with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

For Privacy Act and Paperwork Reduction Act Notice, see instructions.                          Form **8868** (Rev. 1-2014)

JSA
4F8054 1.000

WON-EX 0241

- If you are filing for an Additional (Not Automatic) 3-Month Extension, complete only Part II and check this box . . . . . . . ▶ [X]

Note. Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.

- If you are filing for an Automatic 3-Month Extension, complete only Part I (on page 1).

| Part II | Additional (Not Automatic) 3-Month Extension of Time. Only file the original (no copies needed). |

Enter filer's identifying number, see instructions

| Type or print | Name of exempt organization or other filer, see instructions. | Employer identification number (EIN) or |
|---|---|---|
| | WONDERWORK, INC. | 27-4159217 |
| File by the due date for filing your return. See instructions. | Number, street, and room or suite no. If a P.O. box, see instructions. | Social security number (SSN) |
| | 420 5TH AVENUE, 27TH FLOOR | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | NEW YORK, NY 10018 | |

Enter the Return code for the return that this application is for (file a separate application for each return) . . . . . . . . . . . [0][1]

| Application Is For | Return Code | Application Is For | Return Code |
|---|---|---|---|
| Form 990 or Form 990-EZ | 01 | | |
| Form 990-BL | 02 | Form 1041-A | 08 |
| Form 4720 (individual) | 03 | Form 4720 (other than individual) | 09 |
| Form 990-PF | 04 | Form 5227 | 10 |
| Form 990-T (sec. 401(a) or 408(a) trust) | 05 | Form 6069 | 11 |
| Form 990-T (trust other than above) | 06 | Form 8870 | 12 |

STOP! Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.

- The books are in the care of ▶ HANA FUCHS, 420 FIFTH AVENUE, 27TH FLOOR NEW YORK, NY 10018

   Telephone No. ▶ 212  729-1855                          Fax No. ▶

- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box . . . . . . ▶ ☐ . If it is for part of the group, check this box . . . . . . ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4  I request an additional 3-month extension of time until _____ 05/16 , 20 16 .

5  For calendar year _____ , or other tax year beginning   07/01 , 20 14 , and ending   06/30 , 20 15 .

6  If the tax year entered in line 5 is for less than 12 months, check reason: ☐ Initial return   ☐ Final return
   ☐ Change in accounting period

7  State in detail why you need the extension  INFORMATION NECESSARY TO PREPARE A COMPLETE
   AND ACCURATE RETURN IS NOT YET AVAILABLE.

| | | | |
|---|---|---|---|
| 8a | If this application is for Forms 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. | 8a | $ 0 |
| b | If this application is for Forms 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868. | 8b | $ 0 |
| c | Balance Due. Subtract line 8b from line 8a. Include your payment with this form, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. | 8c | $ 0 |

### Signature and Verification must be completed for Part II only.

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ [signature]                  Title ▶ PAID PREPARER          Date ▶ 1/27/2016

Form 8868 (Rev. 1-2014)

WON-EX 0242

WONDERWORK, INC.                                    27-4159217                  Page **2**

## Part III  Statement of Program Service Accomplishments

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X]

1   Briefly describe the organization's mission:

PROVIDE TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND
ADULTS EVERYWHERE, INCLUDING THOSE IN DEVELOPING COUNTRIES, SUFFERING
FROM DISEASE, ILLNESS, OR DISABILITY. FOR MORE INFORMATION, SEE
SCHEDULE O.

2   Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  [ ] Yes  [X] No
If "Yes," describe these new services on Schedule O.

3   Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  [X] Yes  [ ] No
If "Yes," describe these changes on Schedule O.

4   Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported.

4a  (Code: _____ ) (Expenses $ ___8,856,965.__ including grants of $ ___1,992,826.__ ) (Revenue $ _____ )

WONDERWORK EMPOWERS AND PARTNERS WITH LOCAL SURGEONS, HOSPITALS,
AND CHARITABLE ORGANIZATIONS ENGAGED IN THE DELIVERY OF
LIFE-CHANGING SURGERY AND RELATED CARE BY PROVIDING TRAINING AND
EDUCATION, FINANCIAL SUPPORT AND EQUIPMENT. WONDERWORK ALSO
EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL
CARE AND RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH
DISABILITIES.

4b  (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c  (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d  Other program services (Describe in Schedule O.)
(Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e  Total program service expenses ▶            8,856,965.

WON-EX 0243

| **Part IV** | **Checklist of Required Schedules** | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | X | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | 2 | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | 6 | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | 8 | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* | 10 | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* | 11a | X | |
| b | Did the organization report an amount for investments-other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | X |
| c | Did the organization report an amount for investments-program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | X |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | X | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | X | |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | X | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | X | |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) | 17 | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |

Form **990** (2014)

WON-EX 0244

| Part IV | Checklist of Required Schedules *(continued)* | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . . . . . . | 21 | | X |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . . . . . . . | 22 | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 | X | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . . . . . . . | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . . | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . . | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25b | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . . . . . . . . . . . | 26 | X | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . | 28a | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . . . . | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . . | 29 | X | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . . . . | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . . . . | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 | | X |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . . . . . | 35a | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . . . . | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? Note. All Form 990 filers are required to complete Schedule O . . . . . . . . . . . . . . . . . | 38 | X | |

Form **990** (2014)

WON-EX 0245

**Part V** | **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . . . . . . . . ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . . . . . . . | **1a** 15 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable. . . . . . . . . | **1b** 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | **1c** | X | |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . | **2a** 14 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | **2b** | X | |
| | Note. If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) . . . . . . | | | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . . . . . . | | **3a** | | X |
| b | If "Yes," has it filed a Form 990-T for this year? If "No" to line 3b, provide an explanation in Schedule O . . . . . . . | | **3b** | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4a** | | X |
| b | If "Yes," enter the name of the foreign country: ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | | |
| | See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . | | **5a** | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . . . . . . | | **5c** | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . . . . . . | | **6a** | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **6b** | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7a** | | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . | | **7b** | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7c** | | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . . . . . . | **7d** | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | X |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . . | | **7f** | | X |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | **7g** | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | **7h** | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . . . . | | **8** | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . . . . . . . | | **9a** | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . . . . . | | **9b** | | |
| 10 | **Section 501(c)(7) organizations. Enter:** | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . . . . . . . . | **10a** | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . | **10b** | | | |
| 11 | **Section 501(c)(12) organizations. Enter:** | | | | |
| a | Gross income from members or shareholders . . . . . . . . . . . . . . . . . . . . | **11a** | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . . . . . | **11b** | | | |
| 12a | Section 4947(a)(1) non-exempt charitable trusts. Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . | **12b** | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . . . . | | **13a** | | |
| | Note. See the instructions for additional information the organization must report on Schedule O. | | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . | **13b** | | | |
| c | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . . . . . | **13c** | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . . | | **14a** | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O . . . . | | **14b** | | |

JSA
4E1040 1.000                                          Form 990 (2014)
4099FL 2231          V 14-7.16          2910316            PAGE 5

WON-EX 0246

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . . . . . . . . . [X]

## Section A. Governing Body and Management

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year . . . . . | 1a   4 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent . . . . . | 1b   3 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | | X |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? . | 3 | | X |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . | 4 | | X |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . | 5 | | X |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | | X |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7a | | X |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . . . . . . . . | 7b | | X |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8a | X | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . . . . . | 8b | X | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . . . . . . . | 9 | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . . . . . . . . . . | 10a | | X |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? . . . | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . | 11a | X | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . . . . . . . . | 12a | X | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12b | X | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12c | X | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . . . . . . . | 13 | X | |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . . . . . . . . . | 14 | X | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . . . . . . . . . . . | 15a | X | |
| b | Other officers or key employees of the organization . . . . . . . . . . . . . . . . . . . . . . . . . | 15b | X | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16a | | X |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . . . . . . | 16b | | |

## Section C. Disclosure

17 List the states with which a copy of this Form 990 is required to be filed ▶ ATTACHMENT 1

18 Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

[X] Own website    [ ] Another's website    [X] Upon request    [ ] Other *(explain in Schedule O)*

19 Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20 State the name, address, and telephone number of the person who possesses the organization's books and records: ▶
   HANA FUCHS 411 FIFTH AVENUE, SUITE 702 NEW YORK, NY 10016     212-729-1655

WON-EX 0247

**Part VII**   **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

     Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . . . . . □

**Section A.**   **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

   • List all of the organization's current officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

   • List all of the organization's current key employees, if any. See instructions for definition of "key employee."

   • List the organization's five current highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

   • List all of the organization's former officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

   • List all of the organization's former directors or trustees that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

   □ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) BRIAN MULLANEY<br>CO-FOUNDER, PRESIDENT & CEO | 40.00<br>0 | X | | X | | | | 475,000. | 0 | 43,682. |
| (2) JJ CONEYS<br>AUDIT COMMITTEE CHAIR | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (3) RAVI KANT<br>DIRECTOR | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (4) THEODORE DYSART<br>TREASURER/SECRETARY | 1.00<br>0 | X | | X | | | | 0 | 0 | 0 |
| (5) HANA FUCHS<br>CHIEF FINANCIAL OFFICER | 40.00<br>0 | | | X | | | | 220,000. | 0 | 5,569. |
| (6) DELOIS GREENWOOD<br>SENIOR ADVISOR GLOBAL PROGRAMS | 40.00<br>0 | | | | | X | | 192,500. | 0 | 3,313. |
| (7) KAREN LAZARUS<br>DIRECTOR STRATEGIC PROJECTS | 40.00<br>0 | | | | | X | | 165,000. | 0 | 20,308. |
| (8) ELAINE PATAFIO<br>DIRECTOR MARKETING | 40.00<br>0 | | | | | X | | 152,500. | 0 | 10,892. |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |
| (12) | | | | | | | | | | |
| (13) | | | | | | | | | | |
| (14) | | | | | | | | | | |

WON-EX 0248

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organization below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **1b** Sub-total . . . . . . . . . . . . . . . . . . . . ▶ | | | 1,205,000. | 0 | 83,764. |
| **c** Total from continuation sheets to Part VII, Section A . . . . . . . . . ▶ | | | 0 | 0 | 0 |
| **d** Total (add lines 1b and 1c) . . . . . . . . . . . . . . . . . . ▶ | | | 1,205,000. | 0 | 83,764. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶    **5**

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any former officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . | **3** | | X |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . | **4** | X | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . . . . . . . . | **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| ATTACHMENT 2 | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 in compensation from the organization ▶    **2**

JSA
4E1055 1.000
    4099FL 2231              V 14-7.16          2910316            Form **990** (2014)
                                              PAGE 8

WON-EX 0249

## Part VIII  Statement of Revenue

Check if Schedule O contains a response or note to any line in this Part VIII. . . . . . . . . . . . . . . . . . □

| | | | (A)<br>Total revenue | (B)<br>Related or exempt function revenue | (C)<br>Unrelated business revenue | (D)<br>Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns . . . . . . . . 1a | | | | |
| | b | Membership dues . . . . . . . . . 1b | | | | |
| | c | Fundraising events . . . . . . . . . 1c | | | | |
| | d | Related organizations . . . . . . . 1d | | | | |
| | e | Government grants (contributions) . . 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above 1f | 12,396,269. | | | |
| | g | Noncash contributions included in lines 1a-1f $ 230,735. | | | | |
| | h | Total. Add lines 1a-1f . . . . . . . . . . . . ▶ | 12,396,269. | | | |
| **Program Service Revenue** | 2a | | Business Code | | | |
| | b | | | | | |
| | c | | | | | |
| | d | | | | | |
| | e | | | | | |
| | f | All other program service revenue . . . . . | | | | |
| | g | Total. Add lines 2a-2f . . . . . . . . . . ▶ | 0 | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts). . . . . . . . . . . . . . ▶ | 423,046. | | | 423,046. |
| | 4 | Income from investment of tax-exempt bond proceeds . . ▶ | | | | |
| | 5 | Royalties . . . . . . . . . . . . . . . . . . . . ▶ | 0 | | | |
| | | | (i) Real | (ii) Personal | | |
| | 6a | Gross rents . . . . . . . | | | | |
| | b | Less: rental expenses . . . | | | | |
| | c | Rental income or (loss) . . . | | | | |
| | d | Net rental income or (loss) . . . . . . . . . . ▶ | 0 | | | |
| | 7a | Gross amount from sales of assets other than inventory | (i) Securities 13,919,080. | (ii) Other | | |
| | b | Less: cost or other basis and sales expenses . . . . | 12,086,864. | | | |
| | c | Gain or (loss) . . . . . . . | 1,832,216. | | | |
| | d | Net gain or (loss) . . . . . . . . . . . . . . . ▶ | 1,832,216. | | | 1,832,216. |
| | 8a | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . . . . a | | | | |
| | b | Less: direct expenses . . . . . . . . . . b | | | | |
| | c | Net income or (loss) from fundraising events . . . . . ▶ | 0 | | | |
| | 9a | Gross income from gaming activities. See Part IV, line 19 . . . . . . . . . a | | | | |
| | b | Less: direct expenses . . . . . . . . . . b | | | | |
| | c | Net income or (loss) from gaming activities . . . . . . ▶ | 0 | | | |
| | 10a | Gross sales of inventory, less returns and allowances . . . . . . . a | | | | |
| | b | Less: cost of goods sold . . . . . . . b | | | | |
| | c | Net income or (loss) from sales of inventory . . . . . . ▶ | 0 | | | |
| | | Miscellaneous Revenue | Business Code | | | |
| | 11a | MISCELLANEOUS | 900099 | 2,059. | | | 2,059. |
| | b | | | | | |
| | c | | | | | |
| | d | All other revenue . . . . . . . . . . . | | | | |
| | e | Total. Add lines 11a-11d . . . . . . . . . . . . ▶ | 2,059. | | | |
| | 12 | Total revenue. See instructions . . . . . . . . . . ▶ | 14,653,590. | | | 2,256,321. |

Form 990 (2014)

WON-EX 0250

**Part IX** **Statement of Functional Expenses**

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . . ☐

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . | 0 | | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . | 0 | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 . . . . . . | 1,992,500. | 1,992,500. | | |
| 4 Benefits paid to or for members . . . . . . . | 0 | | | |
| 5 Compensation of current officers, directors, trustees, and key employees . . . . . . . | 708,867. | 503,853. | 43,649. | 161,365. |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . | 0 | | | |
| 7 Other salaries and wages . . . . . . . . . | 701,468. | 498,593. | 43,196. | 159,679. |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . | 19,719. | 14,015. | 1,215. | 4,489. |
| 9 Other employee benefits . . . . . . . . . | 110,407. | 78,475. | 6,799. | 25,133. |
| 10 Payroll taxes . . . . . . . . . . . . . | 77,091. | 54,795. | 4,747. | 17,549. |
| 11 Fees for services (non-employees): | | | | |
| a Management . . . . . . . . . . . . . | 0 | | | |
| b Legal . . . . . . . . . . . . . . . | 361,906. | 278,888. | 38,399. | 44,619. |
| c Accounting . . . . . . . . . . . . . | 56,075. | 43,212. | 5,950. | 6,913. |
| d Lobbying . . . . . . . . . . . . . . | 0 | | | |
| e Professional fundraising services. See Part IV, line 17. | 0 | | | |
| f Investment management fees . . . . . . . | | | | |
| g Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O.) . . . . . | 308,500. | 237,733. | 32,732. | 38,035. |
| 12 Advertising and promotion . . . . . . . . | 103,661. | 66,633. | 4,115. | 32,913. |
| 13 Office expenses . . . . . . . . . . . . | 7,066,282. | 4,563,580. | 281,296. | 2,221,406. |
| 14 Information technology . . . . . . . . . . | 17,898. | 13,749. | 772. | *3,377. |
| 15 Royalties . . . . . . . . . . . . . . | 0 | | | |
| 16 Occupancy . . . . . . . . . . . . . . | 195,988. | 150,555. | 8,453. | 36,980. |
| 17 Travel . . . . . . . . . . . . . . . . | 314,072. | 190,696. | 55,065. | 68,311. |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | 0 | | | |
| 19 Conferences, conventions, and meetings . . . . | 0 | | | |
| 20 Interest . . . . . . . . . . . . . . . | 0 | | | |
| 21 Payments to affiliates . . . . . . . . . . | 0 | | | |
| 22 Depreciation, depletion, and amortization . . . . | 42,785. | 32,866. | 1,846. | 8,073. |
| 23 Insurance . . . . . . . . . . . . . . | 30,965. | 23,787. | 1,335. | 5,843. |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a MISCELLANEOUS | 186,167. | 113,035. | 32,640. | 40,492. |
| b | | | | |
| c | | | | |
| d | | | | |
| e All other expenses | | | | |
| 25 Total functional expenses. Add lines 1 through 24e | 12,294,351. | 8,856,965. | 562,209. | 2,875,177. |
| 26 Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ☐ if following SOP 98-2 (ASC 958-720) . . . . . . | 0 | | | |

JSA
4E1052 1.000

Form **990** (2014)

WON-EX 0251

**Part X** | **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . . . . . . . . . . . . . . . . . . . □

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash - non-interest-bearing . . . . . . . . . . . . . . . . . . . . . . . . . . | 460,840. | **1** | 499,723. |
| | 2 | Savings and temporary cash investments . . . . . . . . . . . . . . . . . | 413,121. | **2** | 590,395. |
| | 3 | Pledges and grants receivable, net . . . . . . . . . . . . . . . . . . . . | 370,116. | **3** | 197,136. |
| | 4 | Accounts receivable, net . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4** | 4,740. |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L . . . . . . . . . . . . . . . . . . . . . . | 0 | **5** | 0 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions). Complete Part II of Schedule L . . . . | 0 | **6** | 0 |
| | 7 | Notes and loans receivable, net . . . . . . . . . . . . . . . . . . . . . . | 0 | **7** | 0 |
| | 8 | Inventories for sale or use . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **8** | 0 |
| | 9 | Prepaid expenses and deferred charges . . . . . . . . . . . . . . . . . | 45,625. | **9** | 45,625. |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | 160,567. | | |
| | b | Less: accumulated depreciation . . . . . . . | 10b | 103,229. | 88,926. | **10c** | 57,338. |
| | 11 | Investments - publicly traded securities . . . . . . . . . . . . . . . . . | 14,066,815. | **11** | 13,150,125. |
| | 12 | Investments - other securities. See Part IV, line 11 . . . . . . . . . . | 0 | **12** | 0 |
| | 13 | Investments - program-related. See Part IV, line 11 . . . . . . . . . | 0 | **13** | 0 |
| | 14 | Intangible assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | **14** | 0 |
| | 15 | Other assets. See Part IV, line 11 . . . . . . . . . . . . . . . . . . . . | 0 | **15** | 0 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . . . . . . | 15,445,443. | **16** | 14,545,082. |
| **Liabilities** | 17 | Accounts payable and accrued expenses . . . . . . . . . . . . . . . . | 1,167,916. | **17** | 233,693. |
| | 18 | Grants payable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **18** | 0 |
| | 19 | Deferred revenue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **19** | 0 |
| | 20 | Tax-exempt bond liabilities . . . . . . . . . . . . . . . . . . . . . . . . | | **20** | 0 |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D . . . | | **21** | 0 |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L . . . . . . . . | 200,000. | **22** | 150,000. |
| | 23 | Secured mortgages and notes payable to unrelated third parties . . . . . | 0 | **23** | 0 |
| | 24 | Unsecured notes and loans payable to unrelated third parties . . . . | 9,318,750. | **24** | 9,452,417. |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **25** | 0 |
| | 26 | **Total liabilities.** Add lines 17 through 25 . . . . . . . . . . . . . . . . | 10,686,666. | **26** | 9,836,110. |
| **Net Assets or Fund Balances** | | Organizations that follow SFAS 117 (ASC 958), check here ▶ ☒ and complete lines 27 through 29, and lines 33 and 34. | | | |
| | 27 | Unrestricted net assets . . . . . . . . . . . . . . . . . . . . . . . . . . | 2,376,415. | **27** | 211,918. |
| | 28 | Temporarily restricted net assets . . . . . . . . . . . . . . . . . . . . | 2,382,362. | **28** | 4,497,054. |
| | 29 | Permanently restricted net assets . . . . . . . . . . . . . . . . . . . . | 0 | **29** | 0 |
| | | Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 30 through 34. | | | |
| | 30 | Capital stock or trust principal, or current funds . . . . . . . . . . . . | | **30** | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund . . . . | | **31** | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds . . . | | **32** | |
| | 33 | Total net assets or fund balances . . . . . . . . . . . . . . . . . . . . | 4,758,777. | **33** | 4,708,972. |
| | 34 | Total liabilities and net assets/fund balances . . . . . . . . . . . . . . | 15,445,443. | **34** | 14,545,082. |

Form **990** (2014)

WON-EX 0252

WONDERWORK, INC.      27-4159217      Page **12**

## Part XI   Reconciliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . . . . . ☐

| | | |
|---|---|---:|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . . . . | **1** | 14,652,590. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . . . . . . . . . | **2** | 12,294,351. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 2,358,239. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . . . . | **4** | 4,758,777. |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | -2,408,044. |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | 0 |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | 0 |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | 0 |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . . . . . . . | **9** | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | 4,708,972. |

## Part XII   Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|:-:|:-:|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☒ Accrual ☐ Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . . | **2a** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | ☐ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . . . . | **2b** | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | ☒ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

WON-EX 0253

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section
4947(a)(1) nonexempt charitable trust.

▶ Attach to Form 990 or Form 990-EZ.

▶ Information about Schedule A (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

**2014**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 11, check only one box.)

1. ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**
2. ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E.)
3. ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**
4. ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:
5. ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)
6. ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**
7. ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)
8. ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)
9. ☐ An organization that normally receives: (1) more than 33 1/3 % of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33 1/3 % of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)
10. ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**
11. ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 11a through 11d that describes the type of supporting organization and complete lines 11e, 11f, and 11g.

   a. ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

   b. ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

   c. ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

   d. ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

   e. ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

   f. Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

   g. Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-9 above or IRC section (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| **(A)** | | | | | | |
| **(B)** | | | | | | |
| **(C)** | | | | | | |
| **(D)** | | | | | | |
| **(E)** | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for
Form 990 or 990-EZ.

Schedule A (Form 990 or 990-EZ) 2014

JSA
4E1210 2.000          4099FL 2231                    V 14-7.16              2910316              PAGE 13

WON-EX 0254

WONDERWORK, INC.    27-4159217

**Part II**  **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 12,396,269. | 40,684,865. |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | 0 |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| 4 Total. Add lines 1 through 3 | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 12,396,269. | 40,684,865. |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 Public support. Subtract line 5 from line 4. | | | | | | 40,684,865. |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | 50,767. | 7,878,990. | 7,446,172. | 12,912,667. | 12,396,269. | 40,684,865. |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | 6. | 1,314. | 41,243. | 270,263. | | 312,826. |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | 0 |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | 0 |
| 11 Total support. Add lines 7 through 10 . | | | | | | 40,997,691. |
| 12 Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . . . . . . . | | | | | 12 | 1,233,667. |
| 13 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | | | | | | ☒ |

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| 14 Public support percentage for 2014 (line 6, column (f) divided by line 11, column (f)) . . . . . . . | 14 | % |
| 15 Public support percentage from 2013 Schedule A, Part II, line 14 . . . . . . . . . . . . . . . . . | 15 | % |

16a **33 1/3% support test - 2014.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and stop here. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . ▶ ☐

b **33 1/3% support test - 2013.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3 % or more, check this box and stop here. The organization qualifies as a publicly supported organization . . . . . . . . . . . . ▶ ☐

17a **10%-facts-and-circumstances test - 2014.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and stop here. Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

b **10%-facts-and-circumstances test - 2013.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and stop here. Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

Schedule A (Form 990 or 990-EZ) 2014

WON-EX 0255

**WONDERWORK, INC.**     27-4159217

**Part III**   **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II.
If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 1   Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2   Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3   Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4   Tax revenues levied for the organization's benefit and either paid to or expended on its behalf . . . . . . | | | | | | |
| 5   The value of services or facilities furnished by a governmental unit to the organization without charge . . . . . . | | | | | | |
| 6   Total. Add lines 1 through 5 . . . | | | | | | |
| 7a   Amounts included on lines 1, 2, and 3 received from disqualified persons . . . . | | | | | | |
| b   Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| c   Add lines 7a and 7b. . . . . . . . . . | | | | | | |
| 8   Public support (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 9   Amounts from line 6. . . . . . . . . . | | | | | | |
| 10a   Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources . . . . . . . . . . . . | | | | | | |
| b   Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 . . . . . . | | | | | | |
| c   Add lines 10a and 10b . . . . . . . . | | | | | | |
| 11   Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on . . . . . . . . . . . . | | | | | | |
| 12   Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . . . . . . . . . | | | | | | |
| 13   Total support. (Add lines 9, 10c, 11, and 12.) . . . . . . . . . . | | | | | | |

14   **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| 15   Public support percentage for 2014 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . . | 15 | | % |
| 16   Public support percentage from 2013 Schedule A, Part III, line 15. . . . . . . . . . . . . . . . . . . . | 16 | | % |

### Section D. Computation of Investment Income Percentage

| | | | |
|---|---|---|---|
| 17   Investment income percentage for 2014 (line 10c, column (f) divided by line 13, column (f)) . . . . . . . . . | 17 | | % |
| 18   Investment income percentage from 2013 Schedule A, Part III, line 17 . . . . . . . . . . . . . . . . . . | 18 | | % |

19a   **33 1/3% support tests - 2014.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization . . . ▶ ☐

b   **33 1/3% support tests - 2013.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization . . . ▶ ☐

20   **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . ▶ ☐

WON-EX 0256

**Part IV**   **Supporting Organizations**

(Complete only if you checked a box on line 11 of Part I. If you checked 11a of Part I, complete Sections A and B. If you checked 11b of Part I, complete Sections A and C. If you checked 11c of Part I, complete Sections A, D, and E. If you checked 11d of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in Part VI how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in Part VI how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below.* | **3a** | |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in Part VI when and how the organization made the determination.* | **3b** | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in Part VI what controls the organization put in place to ensure such use.* | **3c** | |
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 11a or 11b in Part I, answer (b) and (c) below.* | **4a** | |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in Part VI how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in Part VI what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in Part VI, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (a) its supported organizations; (b) individuals that are part of the charitable class benefited by one or more of its supported organizations; or (c) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in Part VI.* | **6** | |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in IRC 4958(c)(3)(C)), a family member of a substantial contributor, or a 35-percent controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990).* | **7** | |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in Part VI.* | **9a** | |
| b | Did one or more disqualified persons (as defined in line 9(a)) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in Part VI.* | **9b** | |
| c | Did a disqualified person (as defined in line 9(a)) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in Part VI.* | **9c** | |
| 10a | Was the organization subject to the excess business holdings rules of IRC 4943 because of IRC 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer (b) below.* | **10a** | |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings.)* | **10b** | |

WON-EX 0257

**Part IV**   Supporting Organizations *(continued)*

| | | Yes | No |
|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | |
| a | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | 11a | |
| b | A family member of a person described in (a) above? | 11b | |
| c | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in Part VI.* | 11c | |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in Part VI how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in Part VI how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization.* | 2 | |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in Part VI how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | 1 | |

**Section D. All Type III Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (1) a written notice describing the type and amount of support provided during the prior tax year, (2) a copy of the Form 990 that was most recently filed as of the date of notification, and (3) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in Part VI how the organization maintained a close and continuous working relationship with the supported organization(s).* | 2 | |
| 3 | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in Part VI the role the organization's supported organizations played in this regard.* | 3 | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

| 1 | *Check the box next to the method that the organization used to satisfy the Integral Part Test during the year (see instructions):* | | |
|---|---|---|---|
| a | ☐ The organization satisfied the Activities Test. *Complete line 2 below.* | | |
| b | ☐ The organization is the parent of each of its supported organizations. *Complete line 3 below.* | | |
| c | ☐ The organization supported a governmental entity. *Describe in Part VI how you supported a government entity (see instructions).* | | |

| | | Yes | No |
|---|---|---|---|
| 2 | Activities Test. *Answer (a) and (b) below.* | | |
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in Part VI identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | 2a | |
| b | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in Part VI the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | 2b | |
| 3 | Parent of Supported Organizations. *Answer (a) and (b) below.* | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in Part VI.* | 3a | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in Part VI the role played by the organization in this regard.* | 3b | |

WON-EX 0258

## Part V   Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970. See instructions. All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 Net short-term capital gain | 1 | | |
| 2 Recoveries of prior-year distributions | 2 | | |
| 3 Other gross income (see instructions) | 3 | | |
| 4 Add lines 1 through 3 | 4 | | |
| 5 Depreciation and depletion | 5 | | |
| 6 Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 Other expenses (see instructions) | 7 | | |
| 8 Adjusted Net Income (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | | | |
| a Average monthly value of securities | 1a | | |
| b Average monthly cash balances | 1b | | |
| c Fair market value of other non-exempt-use assets | 1c | | |
| d Total (add lines 1a, 1b, and 1c) | 1d | | |
| e Discount claimed for blockage or other factors (explain in detail in Part VI): | | | |
| 2 Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| 3 Subtract line 2 from line 1d | 3 | | |
| 4 Cash deemed held for exempt use. Enter 1-1/2% of line 3 (for greater amount, see instructions). | 4 | | |
| 5 Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 Multiply line 5 by .035 | 6 | | |
| 7 Recoveries of prior-year distributions | 7 | | |
| 8 Minimum Asset Amount (add line 7 to line 6) | 8 | | |

| Section C - Distributable Amount | | Current Year |
|---|---|---|
| 1 Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | |
| 2 Enter 85% of line 1 | 2 | |
| 3 Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | |
| 4 Enter greater of line 2 or line 3 | 4 | |
| 5 Income tax imposed in prior year | 5 | |
| 6 Distributable Amount. Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions).

WON-EX 0259

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations *(continued)* | |
|---|---|---|

**Section D - Distributions**

| | | Current Year |
|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| 4 | Amounts paid to acquire exempt-use assets | |
| 5 | Qualified set-aside amounts (prior IRS approval required) | |
| 6 | Other distributions (describe in Part VI). See instructions. | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (provide details in Part VI). See instructions. | |
| 9 | Distributable amount for 2014 from Section C, line 6 | |
| 10 | Line 8 amount divided by Line 9 amount | |

| Section E - Distribution Allocations (see instructions) | (i)<br>Excess Distributions | (ii)<br>Underdistributions<br>Pre-2014 | (iii)<br>Distributable<br>Amount for 2014 |
|---|---|---|---|
| 1 Distributable amount for 2014 from Section C, line 6 | | | |
| 2 Underdistributions, if any, for years prior to 2014 (reasonable cause required-see instructions) | | | |
| 3 Excess distributions carryover, if any, to 2014: | | | |
| a | | | |
| b | | | |
| c | | | |
| d | | | |
| e From 2013 . . . . . . . . | | | |
| f **Total** of lines 3a through e | | | |
| g Applied to underdistributions of prior years | | | |
| h Applied to 2014 distributable amount | | | |
| i Carryover from 2009 not applied (see instructions) | | | |
| j Remainder. Subtract lines 3g, 3h, and 3i from 3f. | | | |
| 4 Distributions for 2014 from Section D, line 7: $ | | | |
| a Applied to underdistributions of prior years | | | |
| b Applied to 2014 distributable amount | | | |
| c Remainder. Subtract lines 4a and 4b from 4. | | | |
| 5 Remaining underdistributions for years prior to 2014, if any. Subtract lines 3g and 4a from line 2 (if amount greater than zero, see instructions). | | | |
| 6 Remaining underdistributions for 2014. Subtract lines 3h and 4b from line 1 (if amount greater than zero, see instructions). | | | |
| 7 **Excess distributions carryover to 2015.** Add lines 3j and 4c. | | | |
| 8 Breakdown of line 7: | | | |
| a | | | |
| b | | | |
| c | | | |
| d Excess from 2013 . . . . . . . . | | | |
| e Excess from 2014 . . . . . . . . | | | |

Schedule A (Form 990 or 990-EZ) 2014

JSA
4E1232 3.000
4099FL 2231
V 14-7.16
2910316
PAGE 19

WON-EX 0260

WONDERWORK, INC.                                                    27-4159217

**Part VI**  **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See instructions).

WON-EX 0261

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes" to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Information about Schedule D (Form 990) and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open to Public
Inspection

Name of the organization

WONDERWORK, INC.

Employer identification number

27-4159217

## Part I   Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) . . | | |
| 4 | Aggregate value at end of year . . . . . . . . . | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised
   funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . ☐ Yes ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used
   only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose
   conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part II   Conservation Easements.
Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).
   ☐ Preservation of land for public use (e.g., recreation or education)    ☐ Preservation of a historically important land area
   ☐ Protection of natural habitat    ☐ Preservation of a certified historic structure
   ☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation
   easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . . . . . . . . . . | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the
   tax year ▶ _____

4  Number of states where property subject to conservation easement is located ▶ _____

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
   violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
   ▶ _____

7  Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
   ▶ $ _____

8  Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i)
   and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and
   balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the
   organization's accounting for conservation easements.

## Part III   Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet
    works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
    public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b   If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet
    works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of
    public service, provide the following amounts relating to these items:

    (i)  Revenue included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____
    (ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

2   If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the
    following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a   Revenue included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____
b   Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

WON-EX 0262

WONDERWORK, INC.                                      27-4159217                    Page **2**

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition                 d ☐ Loan or exchange programs
b ☐ Scholarly research                e ☐ Other _____
c ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar
assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . . . . ☐ Yes ☐ No

**Part IV** Escrow and Custodial Arrangements. Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not
included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
 b If "Yes," explain the arrangement in Part XIII and complete the following table:

|  |  | Amount |
|---|---|---|
| c Beginning balance . . . . . . . . . . . . . . . . . . . . . . | 1c |  |
| d Additions during the year . . . . . . . . . . . . . . . . . | 1d |  |
| e Distributions during the year . . . . . . . . . . . . . . . | 1e |  |
| f Ending balance . . . . . . . . . . . . . . . . . . . . . . . | 1f |  |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . ☐ Yes ☐ No
 b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . . . . ☐

**Part V** Endowment Funds. Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

|  | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . |  |  |  |  |  |
| b Contributions . . . . . . . . . . |  |  |  |  |  |
| c Net investment earnings, gains, and losses . . . . . . . . . . . |  |  |  |  |  |
| d Grants or scholarships . . . . . |  |  |  |  |  |
| e Other expenditures for facilities and programs . . . . . . . . . |  |  |  |  |  |
| f Administrative expenses . . . . |  |  |  |  |  |
| g End of year balance . . . . . . |  |  |  |  |  |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:
a Board designated or quasi-endowment ▶ _____ %
b Permanent endowment ▶ _____ %
c Temporarily restricted endowment ▶ _____ %
The percentages in lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

|  |  | Yes | No |
|---|---|---|---|
| (i) unrelated organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(i) |  |  |
| (ii) related organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3a(ii) |  |  |
| b If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . . . . . . | 3b |  |  |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI** Land, Buildings, and Equipment.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . . . . . . . . . . |  |  |  |  |
| b Buildings . . . . . . . . . . . . . . . . . |  |  |  |  |
| c Leasehold improvements . . . . . . . . . |  | 57,177. | 42,038. | 15,139. |
| d Equipment . . . . . . . . . . . . . . . . |  | 55,826. | 40,703. | 15,123. |
| e Other . . . . . . . . . . . . . . . . . . . |  | 47,564. | 20,488. | 27,076. |
| Total. Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . ▶ |  |  |  | 57,338. |

Schedule D (Form 990) 2014

WON-EX 0263

WONDERWORK, INC.                                      27-4159217

## Part VII   Investments - Other Securities.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . . . . . | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

## Part VIII   Investments - Program Related.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | |

## Part IX   Other Assets.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 15.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | |

## Part X   Other Liabilities.
Complete if the organization answered "Yes" to Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1.   (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 25.) ▶ | | |

2. Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII   [X]

WON-EX 0264

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** |
|---|---|
| | Complete if the organization answered "Yes" to Form 990, Part IV, line 12a. |

| 1 | Total revenue, gains, and other support per audited financial statements . . . . . . . . . . . . . . | 1 | 13,766,658. |
|---|---|---|---|
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | |
| a | Net unrealized gains (losses) on investments | 2a | -2,408,044. | | |
| b | Donated services and use of facilities | 2b | 1,522,112. | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines 2a through 2d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 2e | -885,932. |
| 3 | Subtract line 2e from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 3 | 14,652,590. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines 4a and 4b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 4c | |
| 5 | Total revenue. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 12.)* . . . . | | | 5 | 14,652,590. |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** |
|---|---|
| | Complete if the organization answered "Yes" to Form 990, Part IV, line 12a. |

| 1 | Total expenses and losses per audited financial statements . . . . . . . . . . . . . . . . | 1 | 13,816,463. |
|---|---|---|---|
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | |
| a | Donated services and use of facilities | 2a | 1,522,112. | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines 2a through 2d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 2e | 1,522,112. |
| 3 | Subtract line 2e from line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 3 | 12,294,351. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines 4a and 4b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 4c | |
| 5 | Total expenses. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 18.)* . . . . . | | | 5 | 12,294,351. |

| **Part XIII** | **Supplemental Information.** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

SEE PAGE 5

WON-EX 0265

**Part XIII   Supplemental Information** *(continued)*

UNCERTAIN TAX POSITIONS

FORM 990, SCHEDULE D, PART X, LINE 2

WONDERWORK RECOGNIZES THE EFFECT OF INCOME TAX POSITIONS ONLY IF THOSE

POSITIONS ARE MORE LIKELY THAN NOT OF BEING SUSTAINED.  INCOME GENERATED

FROM ACTIVITIES UNRELATED TO WONDERWORK'S EXEMPT PURPOSE IS SUBJECT TO

TAX UNDER INTERNAL REVENUE CODE SECTION 511.  WONDERWORK UTILIZES A

THRESHOLD OF MORE-LIKELY-THAN-NOT FOR RECOGNITION AND DERECOGNITION OF

TAX POSITIONS TAKEN OR EXPECTED TO BE TAKEN IN A TAX RETURN.  WONDERWORK

DID NOT RECOGNIZE ANY UNRELATED BUSINESS INCOME FOR TAX LIABILITY FOR THE

YEAR ENDED JUNE 30, 2015 AND 2014.

WON-EX 0266

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990.
▶ Information about Schedule F (Form 990) and its instructions is at *www.irs.gov/form990*.

Department of the Treasury
Internal Revenue Service

Name of the organization
WONDERWORK, INC.

Employer identification number
27-4159217

| Part I | General Information on Activities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 14b. |

1 For grantmakers. Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [X] Yes [ ] No

2 For grantmakers. Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

3 Activities per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in region | (d) Activities conducted in region (by type) (e.g., fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for and investments in region |
|---|---|---|---|---|---|
| **(1)** SOUTH ASIA | | | GRANTMAKING | | 1,680,500. |
| **(2)** EUROPE | | | GRANTMAKING | | 193,000. |
| **(3)** SUB-SAHARAN AFRICA | | | GRANTMAKING | | 89,000. |
| **(4)** EAST ASIA AND THE PACIFIC | | | GRANTMAKING | | 30,000. |
| **(5)** SOUTH ASIA | | 1. | PROGRAM SERVICES | CONSULTING | 25,000. |
| **(6)** | | | | | |
| **(7)** | | | | | |
| **(8)** | | | | | |
| **(9)** | | | | | |
| **(10)** | | | | | |
| **(11)** | | | | | |
| **(12)** | | | | | |
| **(13)** | | | | | |
| **(14)** | | | | | |
| **(15)** | | | | | |
| **(16)** | | | | | |
| **(17)** | | | | | |
| **3a** Sub-total . . . . . . . . . | | 1. | | | 2,017,500. |
| **b** Total from continuation sheets to Part I . . . . . . | | | | | |
| **c** Totals (add lines 3a and 3b) | | 1. | | | 2,017,500. |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule F (Form 990) 2014

JSA
4E1274 1.000
4099FL 2231                    V 14-7.16            2910316                    PAGE 54

WON-EX 0267

WONDERWORK, INC.

Schedule F (Form 990) 2014     Page 2

**Part II**   Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990,
Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| **(1)** | | | SUB-SAHARAN AFRICA | BLINDNESS, QUALITY CONT | 16,900 | | | | |
| **(2)** | | | SUB-SAHARAN AFRICA | BURN | 20,000 | | | | |
| **(3)** | | | EUROPE/ICELAND/GREENLAND | BURN | 131,000 | | | | |
| **(4)** | | | EAST ASIA/PACIFIC | BLINDNESS | 10,000 | | | | |
| **(5)** | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 176,000 | | | | |
| **(6)** | | | SOUTH ASIA | BURN | 31,000 | | | | |
| **(7)** | | | EAST ASIA/PACIFIC | BLINDNESS | 10,000 | | | | |
| **(8)** | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| **(9)** | | | EAST ASIA/PACIFIC | BLINDNESS | 10,000 | | | | |
| **(10)** | | | SUB-SAHARAN AFRICA | QUALITY CONT BLINDNESS | 20,000 | | | | |
| **(11)** | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 243,300 | | | | |
| **(12)** | | | SUB-SAHARAN AFRICA | BURN | 10,000 | | | | |
| **(13)** | | | SOUTH ASIA | BURN | 10,000 | | | | |
| **(14)** | | | EUROPE/ICELAND/GREENLAND | BLINDNESS | 20,000 | | | | |
| **(15)** | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 11,000 | | | | |
| **(16)** | | | SOUTH ASIA | BURN | 10,000 | | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt
by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . . . . . ▶

3   Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶

Schedule F (Form 990) 2014

JSA
4E1274 1.000
4099FL 2231     V 14-7.16     2910316     PAGE 55

WON-EX 0268

WONDERWORK, INC.                                                                                                    27-4159217

Schedule F (Form 990) 2014                                                                                              Page 2

**Part II** Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (2) | | | SOUTH ASIA | BLINDNESS | 40,000 | | | | |
| (3) | | | SOUTH ASIA | BLINDNESS | 20,000 | | | | |
| (4) | | | SUB-SAHARAN AFRICA | BLINDNESS, QUALITY CONT | 11,000 | | | | |
| (5) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (6) | | | SOUTH ASIA | BURN, QUALITY CONT | 131,000 | | | | |
| (7) | | | EUROPE/ICELAND/GREENLAND | CLUBFOOT, QUALITY CONT | 20,000 | | | | |
| (8) | | | SOUTH ASIA | BLINDNESS | 20,000 | | | | |
| (9) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (10) | | | SOUTH ASIA | BLINDNESS | 20,000 | | | | |
| (11) | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 20,000 | | | | |
| (12) | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 72,500 | | | | |
| (13) | | | SOUTH ASIA | BLINDNESS, QUALITY | 21,000 | | | | |
| (14) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (15) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (16) | | | SOUTH ASIA | BLINDNESS, QUALITY CONT | 11,000 | | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt
    by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . . ▲

3   Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▲

                                                                                                       Schedule F (Form 990) 2014

JSA
4E1275 1.000
4099FL 2231                          V 14-7.16                  2910316                                          PAGE 56

WON-EX 0269

**Part II** Grants and Other Assistance to Organizations or Entities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of non-cash assistance | (h) Description of non-cash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | EUROPE/ICELAND/GREENLAND | BORN, QUALITY CERT | 20,000 | | | | |
| (2) | | | SOUTH ASIA | BLINDNESS, QUALITY CERT | 201,000 | | | | |
| (3) | | | SOUTH ASIA | BLINDNESS, QUALITY CERT | 61,000 | | | | |
| (4) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (5) | | | SOUTH ASIA | BLINDNESS | 16,000 | | | | |
| (6) | | | SOUTH ASIA | BLINDNESS, QUALITY CERT | 31,000 | | | | |
| (7) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (8) | | | SOUTH ASIA | BLINDNESS | 16,000 | | | | |
| (9) | | | SOUTH ASIA | BLINDNESS | 20,000 | | | | |
| (10) | | | SOUTH ASIA | BLINDNESS | 10,000 | | | | |
| (11) | | | SOUTH ASIA | BLINDNESS | 40,000 | | | | |
| (12) | | | SOUTH ASIA | BLINDNESS, QUALITY CERT | 160,000 | | | | |
| (13) | | | | | | | | | |
| (14) | | | | | | | | | |
| (15) | | | | | | | | | |
| (16) | | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . . . . . . . . . . ▲   44.

3 Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▲

Schedule F (Form 990) 2014

WON-EX 0270

WONDERWORK, INC.                                    27-4159217          Page **3**

**Part III** Grants and Other Assistance to Individuals Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 16.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of non-cash assistance | (g) Description of non-cash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| (1) | | | | | | | |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |
| (13) | | | | | | | |
| (14) | | | | | | | |
| (15) | | | | | | | |
| (16) | | | | | | | |
| (17) | | | | | | | |
| (18) | | | | | | | |

JSA
4E1276 1.000

4G99FL 2231          V 14-7.16          2910316

WON-EX 0271

| Part IV | Foreign Forms |
|---|---|

1   Was the organization a U.S. transferor of property to a foreign corporation during the tax year? If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see instructions for Form 926) . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

2   Did the organization have an interest in a foreign trust during the tax year? If "Yes," the organization may be required to file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see instructions for Forms 3520 and 3520-A; do not file with Form 990) . . . . . . . . . ☐ Yes   ☒ No

3   Did the organization have an ownership interest in a foreign corporation during the tax year? If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations (see instructions for Form 5471) . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

4   Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund (see instructions for Form 8621) . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

5   Did the organization have an ownership interest in a foreign partnership during the tax year? If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons With Respect To Certain Foreign Partnerships (see instructions for Form 8865) . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

6   Did the organization have any operations in or related to any boycotting countries during the tax year? If "Yes," the organization may be required to file Form 5713, International Boycott Report (see instructions for Form 5713; do not file with Form 990) . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes   ☒ No

WON-EX 0272

**Part V**   **Supplemental Information**
Complete this part to provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information (see instructions).

GRANT ELIGIBILITY

FORM 990, SCHEDULE F, PART I, LINE 1

THE ORGANIZATION HAS A SPECIFIC METHODOLOGY FOR SELECTING PROGRAM

GRANTEES, WHICH INCLUDES EXTENSIVE RESEARCH INTO A POTENTIAL GRANTEE'S

MISSION AND PROGRAMS. THE SELECTION PROCESS ALSO INCLUDES OBTAINING THIRD

PARTY REFERENCES ABOUT THE GRANTEE'S HISTORY AND CROSS REFERENCING WITH

THE US DEPARTMENT OF THE TREASURY AND THE TERRORISM AND FINANCIAL

INTELLIGENCE OFFICE.

WON-EX 0273

SCHEDULE G
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" to Form 990, Part IV, lines 17, 18, or 19, or if the
organization entered more than $15,000 on Form 990-EZ, line 6a.

▶ Attach to Form 990 or Form 990-EZ.
▶ Information about Schedule G (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

**2014**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** | Fundraising Activities. Complete if the organization answered "Yes" to Form 990, Part IV, line 17.
Form 990-EZ filers are not required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

a [X] Mail solicitations
b [X] Internet and email solicitations
c [ ] Phone solicitations
d [X] In-person solicitations

e [X] Solicitation of non-government grants
f [ ] Solicitation of government grants
g [ ] Special fundraising events

**2a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees
or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services? [X] Yes [ ] No

**b** If "Yes," list the ten highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be
compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| **1** CDR FUNDRAISING GROUP | MKT & FUND CONSULTANT | | X | | 227,500. | -227,500. |
| **2** | | | | | | |
| **3** | | | | | | |
| **4** | | | | | | |
| **5** | | | | | | |
| **6** | | | | | | |
| **7** | | | | | | |
| **8** | | | | | | |
| **9** | | | | | | |
| **10** | | | | | | |
| **Total** ........................................................▶ | | | | | 227,500. | -227,500. |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from
registration or licensing.

AL,AK,AZ,AR,CA,CO,CT,DC,FL,GA,HI,IL,
KS,KY,ME,MD,MA,MI,MN,MS,NH,NJ,NM,NY,NC,ND,OH,
OK,OR,PA,RI,SC,TN,UT,VA,WA,WV,WI,

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.

JSA
4E1281 1.000

Schedule G (Form 990 or 990-EZ) 2014

WON-EX 0274

WONDERWORK, INC.                    27-4159217

**Part II** **Fundraising Events.** Complete if the organization answered "Yes" to Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a) Event #1 | (b) Event #2 | (c) Other events | (d) Total events |
|---|---|---|---|---|---|
| | | (event type) | (event type) | (total number) | (add col. (a) through col. (c)) |
| **Revenue** | 1 Gross receipts . . . . . . . . . . | | | | |
| | 2 Less: Contributions . . . . . . . . | | | | |
| | 3 Gross income (line 1 minus line 2) . . | | | | |
| **Direct Expenses** | 4 Cash prizes . . . . . . . . . . . . | | | | |
| | 5 Noncash prizes . . . . . . . . . . | | | | |
| | 6 Rent/facility costs . . . . . . . . . | | | | |
| | 7 Food and beverages . . . . . . . . | | | | |
| | 8 Entertainment . . . . . . . . . . | | | | |
| | 9 Other direct expenses . . . . . . . | | | | |

10 Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . . . . . . . . . . . . . ▶

11 Net income summary. Subtract line 10 from line 3, column (d) . . . . . . . . . . . . . . . . . . . ▶

**Part III** **Gaming.** Complete if the organization answered "Yes" to Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| **Revenue** | 1 Gross revenue . . . . . . . . . . | | | | |
| **Direct Expenses** | 2 Cash prizes . . . . . . . . . . . | | | | |
| | 3 Noncash prizes . . . . . . . . . | | | | |
| | 4 Rent/facility costs . . . . . . . . | | | | |
| | 5 Other direct expenses . . . . . . . | | | | |
| | 6 Volunteer labor . . . . . . . . . | ☐ Yes _____% ☐ No | ☐ Yes _____% ☐ No | ☐ Yes _____% ☐ No | |

7 Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . . . . . . . . . . . . . ▶

8 Net gaming income summary. Subtract line 7 from line 1, column (d) . . . . . . . . . . . . . . . . ▶

9 Enter the state(s) in which the organization conducts gaming activities: _____

a Is the organization licensed to conduct gaming activities in each of these states? . . . . . . . . . . . . . . .   ☐ Yes ☐ No

b If "No," explain: _____

10 a Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? . . . .   ☐ Yes ☐ No

b If "Yes," explain: _____

JSA
4E1282 1.000
4099FL 2231                 V 14-7.16                 2910316                 PAGE 62

WON-EX 0275

WONDERWORK, INC.                                                27-4159217

| 11 | Does the organization conduct gaming activities with nonmembers? . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
|----|------|------|

| 12 | Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
|----|------|------|

**13** Indicate the percentage of gaming activity conducted in:

| a | The organization's facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13a | % |
|---|------|-----|---|
| b | An outside facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13b | % |

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ _____

Address ▶ _____

| 15a | Does the organization have a contract with a third party from whom the organization receives gaming revenue? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
|-----|------|------|

b  If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount of gaming revenue retained by the third party ▶ $ _____

c  If "Yes," enter name and address of the third party:

Name ▶ _____

Address ▶ _____

**16** Gaming manager information:

Name ▶ _____

Gaming manager compensation ▶ $ _____

Description of services provided ▶ _____

☐ Director/officer        ☐ Employee        ☐ Independent contractor

**17** Mandatory distributions:

| a | Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
|---|------|------|

b  Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $ _____

**Part IV**  **Supplemental Information.** Provide the explanation required by Part I, line 2b, columns (iii) and (v), and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information (see instructions).

PROFESSIONAL FUNDRAISERS - ADDRESS

FORM 990, SCHEDULE G, PART I

CDR FUNDRAISING GROUP

16900 SCIENCE DRIVE, SUITE 210

BOWIE, MD 20715

WON-EX 0276

# Compensation Information

For certain Officers, Directors, Trustees, Key Employees, and Highest
Compensated Employees
► Complete if the organization answered "Yes" on Form 990, Part IV, line 23.
► Attach to Form 990.
► Information about Schedule J (Form 990) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

**2014**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I** Questions Regarding Compensation

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed in Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

  ☐ First-class or charter travel            ☐ Housing allowance or residence for personal use
  ☐ Travel for companions                   ☐ Payments for business use of personal residence
  ☐ Tax indemnification and gross-up payments   ☐ Health or social club dues or initiation fees
  ☐ Discretionary spending account            ☐ Personal services (e.g., maid, chauffeur, chef)

|  |  | Yes | No |
|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked in line 1a? | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

  ☒ Compensation committee              ☐ Written employment contract
  ☐ Independent compensation consultant     ☒ Compensation survey or study
  ☐ Form 990 of other organizations         ☒ Approval by the board or compensation committee

|  |  | | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed in Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | | X |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | | X |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** | | X |
|  | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
|  | **Only section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | **5a** | | X |
| **b** | Any related organization? | **5b** | | X |
|  | If "Yes" to line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | **6a** | | X |
| **b** | Any related organization? | **6b** | | X |
|  | If "Yes" to line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed in Form 990, Part VII, Section A, line 1a, did the organization provide any non-fixed payments not described in lines 6 and 6? If "Yes," describe in Part III | **7** | X | |
| **8** | Were any amounts reported in Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** | | X |
| **9** | If "Yes" to line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule J (Form 990) 2014

WON-EX 0277

Schedule J (Form 990) 2014    Page **2**

**Part II**   **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported in Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)–(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred in prior Form 990 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 BRIAN MULLANEY CO-FOUNDER, PRESIDENT & CEO | (i) | 475,000. | 0 | 0 | 0 | 0 | 475,000. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 HANA FUCHS CHIEF FINANCIAL OFFICER | (i) | 200,000. | 20,000. | 0 | 0 | 0 | 220,000. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 DELOIS GREENWOOD SENIOR ADVISOR GLOBAL PROGRAMS | (i) | 175,000. | 17,500. | 0 | 0 | 0 | 192,500. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4 KAREN LAZARUS DIRECTOR STRATEGIC PROJECTS | (i) | 150,000. | 15,000. | 0 | 0 | 0 | 165,000. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 ELAINE ENTATFIO DIRECTOR MARKETING | (i) | 147,500. | 5,000. | 0 | 0 | 0 | 152,500. | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 7 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 8 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 9 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 10 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 11 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 12 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 13 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 14 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 15 | (i) | | | | | | | |
| | (ii) | | | | | | | |
| 16 | (i) | | | | | | | |
| | (ii) | | | | | | | |

JSA
4E1291 1.000

4099FL 2231     V 14-7.16     2910316

Schedule J (Form 990) 2014

PAGE 65

WON-EX 0278

WONDERWORK, INC.                                                                27-4159217

**Part III  Supplemental Information**
Complete this part to provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II.
Also complete this part for any additional information.

NON-FIXED PAYMENTS

SCHEDULE J, PART I, LINE 7

THE CHIEF FINANCIAL OFFICER, SENIOR ADVISOR OF GLOBAL PROGRAMS, DIRECTOR

OF STRATEGIC PROJECTS, AND DIRECTOR OF MARKETING RECEIVED A NON-FIXED

BONUS BASED ON INDIVIDUAL PERFORMANCE AND THE ACHIEVEMENT OF

INSTITUTIONAL GOALS.

JSA
4E1505 1.000  4O99FL 2231            V 14-7.16            2910316            PAGE 66

WON-EX 0279

# Transactions With Interested Persons

► Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.
►Attach to Form 990 or Form 990-EZ.
► Information about Schedule L (Form 990 or 990-EZ) and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open To Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I**  Excess Benefit Transactions (section 501(c)(3), section 501(c)(4), and 501(c)(29) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes No |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |

2  Enter the amount of tax incurred by the organization managers or disqualified persons during the year
under section 4958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► $ _____
3  Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . . . . . . . . . . . . ► $ _____

**Part II**  Loans to and/or From Interested Persons.
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To / From | (e) Original principal amount | (f) Balance due | (g) In default? Yes No | (h) Approved by board or committee? Yes No | (i) Written agreement? Yes No |
|---|---|---|---|---|---|---|---|---|
| (1) J. MULLANEY | DIRO PER | IMPACT | X | 250,000. | 150,000. | X | X | X |
| (2) | | | | | | | | |
| (3) | | | | | | | | |
| (4) | | | | | | | | |
| (5) | | | | | | | | |
| (6) | | | | | | | | |
| (7) | | | | | | | | |
| (8) | | | | | | | | |
| (9) | | | | | | | | |
| (10) | | | | | | | | |
| Total | | | | ► $ | 150,000. | | | |

**Part III**  Grants or Assistance Benefiting Interested Persons.
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Schedule L (Form 990 or 990-EZ) 2014

WON-EX 0280

WONDERWORK, INC. 27-4159217

**Part IV** Business Transactions Involving Interested Persons.
Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenue? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |
| (8) | | | | | |
| (9) | | | | | |
| (10) | | | | | |

**Part V** Supplemental Information
Provide additional information for responses to questions on Schedule L (see instructions).

WON-EX 0281

# Noncash Contributions

▶ Complete if the organizations answered "Yes" on Form 990, Part IV, lines 29 or 30.
▶ Attach to Form 990.
▶ Information about Schedule M (Form 990) and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open To Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

**Part I  Types of Property**

| | (a) Check if applicable | (b) Number of contributions or items contributed | (c) Noncash contribution amounts reported on Form 990, Part VIII, line 1g | (d) Method of determining noncash contribution amounts |
|---|---|---|---|---|
| 1 Art - Works of art . . . . . . . . . . . | | | | |
| 2 Art - Historical treasures . . . . . . | | | | |
| 3 Art - Fractional interests . . . . . . | | | | |
| 4 Books and publications . . . . . . | | | | |
| 5 Clothing and household goods. . . . . . . . . . . . . . . . | | | | |
| 6 Cars and other vehicles . . . . . . | | | | |
| 7 Boats and planes. . . . . . . . . . | | | | |
| 8 Intellectual property . . . . . . . . | | | | |
| 9 Securities - Publicly traded . . . . | X | 11. | 230,758. | FMV |
| 10 Securities - Closely held stock . . . | | | | |
| 11 Securities - Partnership, LLC, or trust interests . . . . . . . . . | | | | |
| 12 Securities - Miscellaneous . . . . . | | | | |
| 13 Qualified conservation contribution - Historic structures . . . . . . . . . . . . . | | | | |
| 14 Qualified conservation contribution - Other . . . . . . . | | | | |
| 15 Real estate - Residential . . . . . . | | | | |
| 16 Real estate - Commercial . . . . . | | | | |
| 17 Real estate - Other . . . . . . . . | | | | |
| 18 Collectibles. . . . . . . . . . . . . | | | | |
| 19 Food inventory. . . . . . . . . . . | | | | |
| 20 Drugs and medical supplies . . . . | | | | |
| 21 Taxidermy . . . . . . . . . . . . . | | | | |
| 22 Historical artifacts . . . . . . . . . | | | | |
| 23 Scientific specimens. . . . . . . . | | | | |
| 24 Archeological artifacts. . . . . . . | | | | |
| 25 Other ▶(_____) | | | | |
| 26 Other ▶(_____) | | | | |
| 27 Other ▶(_____) | | | | |
| 28 Other ▶(_____) | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| 29 Number of Forms 8283 received by the organization during the tax year for contributions for which the organization completed Form 8283, Part IV, Donee Acknowledgement . . . . . . . . . . | **29** | | | |
| 30a During the year, did the organization receive by contribution any property reported in Part I, lines 1 through 28, that it must hold for at least three years from the date of the initial contribution, and which is not required to be used for exempt purposes for the entire holding period? . . . . . . . . . . . . . . . . . . . . . | | **30a** | | X |
| b If "Yes," describe the arrangement in Part II. | | | | |
| 31 Does the organization have a gift acceptance policy that requires the review of any non-standard contributions?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **31** | | X |
| 32a Does the organization hire or use third parties or related organizations to solicit, process, or sell noncash contributions?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **32a** | | X |
| b If "Yes," describe in Part II. | | | | |
| 33 If the organization did not report an amount in column (c) for a type of property for which column (a) is checked, describe in Part II. | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

Schedule M (Form 990) (2014)

JSA
4E1298 1.000

4099FL 2231                 V 14-7.16          2910316                        PAGE 69

WON-EX 0282

WONDERWORK, INC.                                    27-4159217                Page 2

**Part II**   **Supplemental Information.** Complete this part to provide the information required by Part I, lines 30b, 32b, and 33, and whether the organization is reporting in Part I, column (b), the number of contributions, the number of items received, or a combination of both. Also complete this part for any additional information.

NUMBER OF CONTRIBUTORS

FORM 990, SCHEDULE M, PART I, COLUMN (B)

THE NUMBER IN COLUMN (B) REPRESENTS THE NUMBER OF CONTRIBUTIONS.

WON-EX 0283

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.

OMB No. 1545-0047

**2014**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

ORGANIZATION'S MISSION

FORM 990, PART III, LINE 1

WONDERWORK IS A NOT-FOR-PROFIT ORGANIZATION WHICH WAS FOUNDED TO PROVIDE

TREATMENT, SURGERY, AND RELATED ASSISTANCE TO CHILDREN AND ADULTS IN

UNDERSERVED REGIONS OF THE WORLD. WONDERWORK PROVIDES LIFE-CHANGING

SUPPORT FOR ILLNESS, DISEASE, AND DISABILITY INCLUDING BUT NOT LIMITED TO

BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS, AND PEDIATRIC CARDIAC

SURGERY. WONDERWORK SUPPORTS OTHER MEDICAL INSTITUTIONS AND CHARITABLE

ORGANIZATIONS ENGAGED IN THE PROVISION OF THESE SERVICES; AS WELL AS,

EDUCATES DOCTORS AND RAISES PUBLIC AWARENESS ON NEEDED SURGICAL CARE AND

RELATED TREATMENT FOR UNDERSERVED POPULATIONS WITH DISABILITIES.


WONDERWORK ALSO AIMS TO FURTHER THE PUBLIC EDUCATION AND PUBLIC

INTERACTION BY ENGAGING IN PUBLIC EDUCATION AND DELIVERY OF CALLS TO

ACTION ASKING THE PUBLIC TO TAKE ACTION IN SUPPORT OF WONDERWORK'S

PROGRAMS IN CONJUNCTION WITH FUNDRAISING APPEALS.


SIGNIFICANT PROGRAM SERVICE ACTIVITIES

FORM 990, PART III, LINE 3

THE ORGANIZATION WAS INCORPORATED IN AND FILED AN INITIAL RETURN IN

FISCAL YEAR 2011. DURING FISCAL YEAR 2012, WONDERWORK, INC. RECEIVED

SIGNIFICANT SUPPORT FROM DONORS AND INCREASED OPERATIONS TO SUPPORT ITS

FIVE MAIN SERVICE AREAS - BLINDNESS, CLUBFOOT, BURN CARE, HYDROCEPHALUS,

AND PEDIATRIC CARDIAC SURGERY. THE ORGANIZATION SAW CONTINUED GROWTH IN

For Privacy Act and Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.        Schedule O (Form 990 or 990-EZ) (2014)

JSA
4E1227 1.000
4099FL 2231                 V 14-7.16        2910316                      PAGE 71

WON-EX 0284

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

FISCAL YEAR 2013, 2014 AND 2015. HOWEVER, MOST DONATIONS WERE RESTRICTED

TO THE BLINDNESS, CLUBFOOT, AND BURN CARE PROGRAMS.


990 REVIEW

FORM 990, PART VI, LINE 11B

THE FORM 990 WAS PREPARED BY AN INTERNATIONAL ACCOUNTING FIRM AND THE

FINANCE DEPARTMENT. A COPY OF THE FORM 990 WAS REVIEWED BY THE CHAIR OF

THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS AND WAS DISTRIBUTED TO ALL

BOARD MEMBERS BEFORE FILING WITH THE IRS.


MONITORING AND COMPLIANCE WITH CONFLICT OF INTEREST POLICY

FORM 990, PART VI, LINE 12C

EACH OFFICER, DIRECTOR AND KEY EMPLOYEE OF THE ORGANIZATION IS REQUIRED

TO DISCLOSE ANY CONFLICTS OF INTEREST THAT ARISE THROUGH EMPLOYMENT,

BOARD SERVICE OR POSITION IN THE ORGANIZATION. THE ORGANIZATION MONITORS

COMPLIANCE WITH ITS CONFLICT OF INTEREST POLICY THROUGH ANNUAL COMPLETION

OF THE QUESTIONNAIRE AND DISCLOSURE STATEMENT THAT IS DISTRIBUTED TO

THESE INDIVIDUALS.


ALSO, NEW EMPLOYEES JOINING THE ORGANIZATION ARE REQUIRED TO COMPLETE THE

QUESTIONNAIRE. POTENTIAL CONFLICTS OF INTEREST ARE INVESTIGATED

IMMEDIATELY, AND A PERSON WHO HAS A CONFLICT OF INTEREST SHALL NOT

PARTICIPATE IN DISCUSSIONS ON ANY MATTER RELATED TO THE CONFLICT.


COMPLETED QUESTIONNAIRES ARE AVAILABLE FOR INSPECTION BY ANY BOARD MEMBER

AND MAY BE REVIEWED BY THE ORGANIZATION'S LEGAL COUNSEL. THE FINANCE

JSA
4E1228 1.000
4099FL 2231         V 14-7.16        2910316         PAGE 72

WON-EX 0285

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

DEPARTMENT MONITORS NEW CONTRACTS AND INVOICE PAYMENTS TO MAKE SURE THAT

THE POLICY IS FOLLOWED.

PROCESS FOR DETERMINING COMPENSATION

FORM 990, PART VI, LINE 15

AN INDEPENDENT COMPENSATION COMMITTEE HAS BEEN ESTABLISHED BY THE BOARD

OF DIRECTORS TO SECURE DATA FROM AND ABOUT COMPARABLE NONPROFIT

ORGANIZATIONS IN OUR AREA TO BENCHMARK PAY. THE COMMITTEE WAS ESTABLISHED

TO FURTHER COLLECT OTHER PUBLISHED SURVEY DATA, WHEN APPROPRIATE, OF

FOR-PROFIT ORGANIZATIONS FOR SPECIFIC FUNCTIONAL COMPETENCIES SUCH AS

FINANCE AND HUMAN RESOURCES. TOGETHER WITH THIS DATA FROM THE COMPARABLE

LOCAL ORGANIZATIONS, DATA FROM THESE MARKET SEGMENTS ARE USED TO FORM A

"MARKET COMPOSITE" TO ASSESS THE COMPETITIVENESS, FAIRNESS AND

APPROPRIATENESS OF COMPENSATION PAID BY WONDERWORK TO ITS EXECUTIVES AND

OTHER EMPLOYEES.

WONDERWORK'S COMPENSATION STRATEGY AND IMPLEMENTATION IS ADMINISTERED BY

THIS COMPENSATION COMMITTEE, WHICH WILL REPORT ITS FINDINGS TO THE BOARD

OF DIRECTORS. THE BOARD, THROUGH THIS COMMITTEE, IS RESPONSIBLE FOR

ESTABLISHING AND MAINTAINING A COMPETITIVE COMPENSATION PROGRAM FOR THE

ORGANIZATION AND COORDINATING AN ANNUAL REVIEW BY AN INDEPENDENT REVIEWER

(OR AN INTERNAL DETERMINATION) TO EVALUATE THE ORGANIZATION'S EXECUTIVE

COMPENSATION AGAINST THE COMPETITIVE MARKET. FOLLOWING THE REVIEW OF THIS

EVALUATION, THE BOARD APPROVES, FOR SELECTED KEY EXECUTIVES, BASE

SALARIES AND ANNUAL INCENTIVE OPPORTUNITY ADJUSTMENTS (IF ANY), AND

OBJECTIVES AND GOALS FOR THE UPCOMING YEAR.

WON-EX 0286

| Name of the organization | Employer Identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

COMPENSATION REVIEWS ARE CONTEMPORANEOUSLY DOCUMENTED IN BOARD AND

COMMITTEE MINUTES.


DOCUMENT DISCLOSURE

FORM 990, PART VI, LINE 19

THE ORGANIZATION MAKES THE FORM 990 AVAILABLE TO THE PUBLIC BY RETAINING

A COPY AT ITS HEADQUARTERS IN NEW YORK CITY. THE FORM 990 IS ALSO

PUBLISHED ON THE INTERNET ON THE ORGANIZATION'S WEBSITE. THE

ORGANIZATIONS FINANCIAL STATEMENTS ARE ALSO AVAILABLE ON THE WEBSITE

(WWW.WONDERWORK.ORG).


THE ORGANIZATION'S GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY

ARE AVAILABLE UPON REQUEST.

ATTACHMENT 1

FORM 990, PART VI, LINE 17 - STATES

AL,AK,AR,CA,CO,CT,

DC,FL,GA,HI,IL,KS,KY,ME,MD,MA,MI,

MN,MS,NH,NJ,NM,NY,NC,ND,OH,OK,OR,PA,

RI,SC,TN,UT,VA,WA,WV,WI,


ATTACHMENT 2

990, PART VII- COMPENSATION OF THE FIVE HIGHEST PAID IND. CONTRACTORS

| NAME AND ADDRESS | DESCRIPTION OF SERVICES | COMPENSATION |
|---|---|---|
| KAPLAN KRAVET & VOGEL P.C.<br>630 THIRD AVE., 5TH FLOOR<br>NEW YORK, NY 10017-6705 | LEGAL SERVICES | 447,081. |
| ONIX PARTNERS LLC | CONSULTING SERVICES | 136,000. |

WON-EX 0287

| Name of the organization | Employer identification number |
|---|---|
| WONDERWORK, INC. | 27-4159217 |

ATTACHMENT 2 (CONT'D)

990, PART VII- COMPENSATION OF THE FIVE HIGHEST PAID IND. CONTRACTORS

| NAME AND ADDRESS | DESCRIPTION OF SERVICES | COMPENSATION |
|---|---|---|

101 28TH STREET, UNIT #3
SAN FRANCISCO, CA 94131

WON-EX 0288

DRAFT 5/12/2016 10:29 AM 520376_15_Wonderworkinc_FS.docx

*Final Editorial Review Not Completed*

| NDPPS USE ONLY | |
|---|---|
| *NDPPS ID:* | _____ |
| *Contact Name:* | _____ |
| *Special Instructions* | _____ |
| | _____ |
| | _____ |
| | *Version* ____ |

**WONDERWORK, INC.**

Financial Statements

June 30, 2015 and 2014

(With Independent Auditors' Report Thereon)

WON-EX 0289

**Independent Auditors' Report**

The Board of Directors
WonderWork, Inc.:

We have audited the accompanying financial statements of WonderWork, Inc. (WonderWork), which comprise the balance sheets as of June 30, 2015 and 2014, and the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

*Management's Responsibility for the Financial Statements*

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

*Auditors' Responsibility*

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the organization's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the organization's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Opinion*

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of WonderWork, Inc. as of June 30, 2015 and 2014, and the changes in its net assets and its cash flows for the years then ended, in accordance with U.S. generally accepted accounting principles.

*(signed) KPMG LLP*

Date

**WONDERWORK, INC.**

Balance Sheets

June 30, 2015 and 2014

| Assets | | 2015 | 2014 |
|---|---|---|---|
| Cash and cash equivalents | $ | 1,090,118 | 873,961 |
| Contributions receivable (note 3) | | 201,876 | 370,116 |
| Prepaid expenses and other assets | | 45,625 | 45,625 |
| Investments (note 4) | | 13,150,125 | 14,066,815 |
| Property and equipment, net | | 57,338 | 88,926 |
| Total assets | $ | 14,545,082 | 15,445,443 |

**Liabilities and Net Assets**

| | | | |
|---|---|---|---|
| Liabilities: | | | |
| Accounts payable and accrued expenses | $ | 233,693 | 1,167,916 |
| Loans payable (note 7) | | 9,602,417 | 9,518,750 |
| Total liabilities | | 9,836,110 | 10,686,666 |
| Net assets: | | | |
| Unrestricted | | 211,918 | 2,376,415 |
| Temporarily restricted (note 6) | | 4,497,054 | 2,382,362 |
| Total net assets | | 4,708,972 | 4,758,777 |
| Total liabilities and net assets | $ | 14,545,082 | 15,445,443 |

See accompanying notes to financial statements.

WON-EX 0291

**WONDERWORK, INC.**

Statements of Activities

Years ended June 30, 2015 and 2014

| | | 2015 | 2014 |
|---|---|---|---|
| Change in unrestricted net assets: | | | |
| Operating activities: | | | |
| Revenues: | | | |
| Contributions | $ | 3,958,954 | 5,582,853 |
| In-kind contributions (note 10) | | 1,522,112 | 1,882,441 |
| Investment loss (gain) | | (153,782) | 1,878,168 |
| Other | | 2,059 | 26,130 |
| Net assets released from restrictions (note 6) | | 6,322,623 | 6,069,458 |
| Total revenues | | 11,651,966 | 15,439,050 |
| Expenses (note 9): | | | |
| Program: | | | |
| Surgical treatments and related activities, and information and health education (note 10) | | 10,379,077 | 9,762,437 |
| Management and general | | 562,209 | 286,751 |
| Fund-raising | | 2,875,177 | 4,619,803 |
| Total expenses | | 13,816,463 | 14,668,991 |
| (Deficiency) excess of operating revenues over operating expenses | | (2,164,497) | 770,059 |
| Nonoperating activities: | | | |
| Grant and other liability write-off (note 8) | | — | 733,000 |
| (Decrease) increase in unrestricted net assets | | (2,164,497) | 1,503,059 |
| Change in temporarily restricted net assets: | | | |
| Contributions | | 8,437,315 | 6,596,814 |
| Net assets released from restrictions (note 6) | | (6,322,623) | (6,069,458) |
| Increase in temporarily restricted net assets | | 2,114,692 | 527,356 |
| Change in net assets | | (49,805) | 2,030,415 |
| Net assets at beginning of year | | 4,758,777 | 2,728,362 |
| Net assets at end of year | $ | 4,708,972 | 4,758,777 |

See accompanying notes to financial statements.

3

WON-EX 0292

WONDERWORK, INC.

Statement of Functional Expenses

Year ended June 30, 2015

| | Program services | Management and general | Fund-raising | Subtotal | Total |
|---|---|---|---|---|---|
| | | Supporting services | | | |
| Grants | $ 1,992,500 | — | — | — | 1,992,500 |
| In-kind services (note 10) | 1,522,112 | — | — | — | 1,522,112 |
| Salaries and related expenses | 1,149,731 | 99,607 | 368,216 | 467,823 | 1,617,554 |
| Professional and consulting fees | 562,420 | 77,437 | 89,981 | 167,418 | 729,838 |
| Occupancy | 150,555 | 8,453 | 36,980 | 45,433 | 195,988 |
| Office supplies and services | 165,890 | 9,314 | 40,747 | 50,061 | 215,951 |
| Printing, publications, and postage (note 9) | 4,499,272 | 277,847 | 2,222,376 | 2,500,223 | 6,999,495 |
| Depreciation | 32,866 | 1,846 | 8,073 | 9,919 | 42,785 |
| Travel and other miscellaneous | 303,731 | 87,705 | 108,804 | 196,509 | 500,240 |
| Total expenses | $ 10,379,077 | 562,209 | 2,875,177 | 3,437,386 | 13,816,463 |

See accompanying notes to financial statements.

4

WON-EX 0293

**WONDERWORK, INC.**

Statement of Functional Expenses

Year ended June 30, 2014

| | Program services | Supporting services | | | Total |
|---|---|---|---|---|---|
| | | Management and general | Fund-raising | Subtotal | |
| Grants | $ 1,543,055 | — | — | — | 1,543,055 |
| In-kind services (note 10) | 1,882,441 | — | — | — | 1,882,441 |
| Salaries and related expenses | 1,322,576 | 74,252 | 324,855 | 399,107 | 1,721,683 |
| Professional and consulting fees | 759,085 | 131,944 | 199,203 | 331,147 | 1,090,232 |
| Occupancy | 143,670 | 8,066 | 35,289 | 43,355 | 187,025 |
| Office supplies and services | 142,991 | 8,028 | 35,122 | 43,150 | 186,141 |
| Printing, publications, and postage (note 9) | 3,717,856 | — | 3,939,353 | 3,939,353 | 7,657,209 |
| Depreciation | 34,173 | 1,919 | 8,394 | 10,313 | 44,486 |
| Travel and other miscellaneous | 216,590 | 62,542 | 77,587 | 140,129 | 356,719 |
| Total expenses | $ 9,762,437 | 286,751 | 4,619,803 | 4,906,554 | 14,668,991 |

See accompanying notes to financial statements.

5

WON-EX 0294

**WONDERWORK, INC.**

Statements of Cash Flows

Years ended June 30, 2015 and 2014

|  | | 2015 | 2014 |
|---|---|---|---|
| Cash flows from operating activities: | | | |
| Change in net assets | $ | (49,805) | 2,030,415 |
| Adjustments to reconcile change in net assets to net cash | | | |
| used in operating activities: | | | |
| Depreciation and amortization | | 42,785 | 44,486 |
| Forgiveness of debt | | (300,000) | (100,000) |
| Investment loss (gain) | | 153,782 | (1,878,168) |
| Changes in operating assets and liabilities: | | | |
| Contributions receivable | | 168,240 | 200,040 |
| Accounts payable and accrued expenses | | (934,223) | (68,744) |
| Interest payable | | 183,667 | 118,750 |
| Grants and other amounts payable to Help Me See | | — | (733,000) |
| Net cash used in operating activities | | (735,554) | (386,221) |
| Cash flows from investing activities: | | | |
| Purchases of property and equipment | | (11,197) | (1,822) |
| Sales of investments | | 13,925,803 | 508,836 |
| Purchases of investments | | (13,162,895) | (6,265,858) |
| Net cash provided by (used in) investing activities | | 751,711 | (5,758,844) |
| Cash flows from financing activities: | | | |
| Loans payable | | 200,000 | 5,840,797 |
| Net cash provided by financing activities | | 200,000 | 5,840,797 |
| Net increase (decrease) in cash and cash equivalents | | 216,157 | (304,268) |
| Cash and cash equivalents, beginning of year | | 873,961 | 1,178,229 |
| Cash and cash equivalents, end of year | $ | 1,090,118 | 873,961 |

See accompanying notes to financial statements.

6

WON-EX 0295

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

(1) **Description of Organization**

WonderWork, Inc. (the Organization or WonderWork) is a not-for-profit organization, which was incorporated in 2011 to provide treatment, surgery, and related assistance to children and adults everywhere, including those in developing countries suffering from disease, illness, or disability, including, but not necessarily limited to, blindness, club foot, hydrocephalus, pediatric cardiac surgery, and burns; and to further support medical institutions and other charitable organizations engaged in the provision of these services; as well as creating general awareness of these disabilities and available treatments.

(2) **Summary of Significant Accounting Policies**

   (a) *Basis of Presentation*

   The Organization's financial statements have been prepared on the accrual basis of accounting in accordance with U.S. generally accepted accounting principles. Net assets and the changes therein are classified and reported as follows:

   Unrestricted – Net assets that are not subject to donor-imposed restrictions.

   Temporarily Restricted – Net assets subject to donor-imposed restrictions that will be met by actions of the Organization and/or the passage of time.

   Revenues are reported as increases in unrestricted net assets unless their use is limited by explicit donor-imposed restrictions or by law. Expenses are reported as decreases in net assets.

   (b) *Fair Value*

   Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability (an exit price) in the principal or most advantageous market for the asset or liability in an orderly transaction between market participants on the measurement date. The three levels of the fair value hierarchy are as follows:

   - Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that a reporting entity has the ability to access at the measurement date.

   - Level 2 inputs are inputs other than quoted prices included within Level 1 that are observable for the asset or liability, either directly or indirectly.

   - Level 3 inputs are unobservable inputs for the asset or liability.

   (c) *Accounting Estimates*

   The preparation of the financial statements in conformity with U.S. generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingencies at the date of the financial statements and revenues and expenses recognized during the reporting period. Significant estimates made in the preparation of the financial statements include determining the net realizable value of contributions, valuation of in-kind contributions, and functional expense allocations. Actual results could differ from those estimates.

7                                                                 (Continued)

WON-EX 0296

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

(d) *Cash and Cash Equivalents*

The Organization considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents. The Organization maintains cash and cash equivalents in major financial institutions. Cash held by a financial institution that exceeds the Federal Deposit Insurance Corporation (FDIC) limits exposes the Organization to a concentration of credit risk.

(e) *Investments*

Investments are reported at fair value based upon quoted market prices.

(f) *Contributions*

Contributions, including unconditional promises to give (pledges), are recognized as revenue upon receipt and are considered to be unrestricted unless received with donor stipulations that limit their use through either purpose or time restrictions. Contributions with donor stipulations that limit their use are considered to be temporarily restricted until the donor restrictions expire, that is, when a time restriction ends or purpose restriction is fulfilled. Upon the expiration of donor stipulations, temporarily restricted net assets are reclassified to unrestricted net assets and reported in the accompanying statements of activities as net assets released from restrictions. Contributions expected to be received after one year are discounted at a risk-adjusted rate of return.

(g) *Contributions In-Kind*

Contributions in-kind include donated services and materials related to the treatments sponsored by WonderWork. These contributions are recorded at fair value on the date of donation and are recognizable as they either create or enhance assets that are not financial in nature or provided by individuals with specialized skills that would need to be purchased if the services had not been donated.

(h) *Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation and amortization. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets ranging from 3 to 5 years. Leasehold improvements are amortized on a straight-line basis over the lesser of their useful lives or the term of the lease.

(i) *Income Taxes*

WonderWork recognizes the effect of income tax positions only if those positions are more likely than not of being sustained. Income generated from activities unrelated to the WonderWork's exempt purpose is subject to tax under Internal Revenue Code Section 511. WonderWork utilizes a threshold of more likely than not for recognition and derecognition of tax positions taken or expected to be taken in a tax return. WonderWork did not recognize any unrelated business income tax liability for the years ended June 30, 2015 and 2014.

8 (Continued)

WON-EX 0297

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

(3) **Contributions and Contributions Receivable**

Contributions receivable are scheduled to be collected as follows at June 30, 2015 and 2014:

|  | 2015 | 2014 |
|---|---|---|
| Amount due in one year or less | $ 201,876 | 200,000 |
| Amount due in 2 to 5 years | — | 197,711 |
| Less discount to present value at 2.4% | — | (27,595) |
|  | $ 201,876 | 370,116 |

Contributions receivable is from one donor at June 30, 2015 and 2014. Approximately 20% of contributions were received from 5 donors in 2015 and 35% of contributions were received from two donors in 2014.

(4) **Investments**

The following presents the Organization's investments measured at fair value as of June 30, 2015 and 2014. These all represent Level 1 investments in the fair value hierarchy.

|  | 2015 | 2014 |
|---|---|---|
| Vanguard total world stock | $ — | 14,055,540 |
| Vanguard total stock market | 13,147,354 | — |
| Other | 2,771 | 11,275 |
| Total investments | $ 13,150,125 | 14,066,815 |

(5) **Commitments**

The Organization has a lease agreement for the rental of its office in New York expiring in 2016. Approximate future minimum annual rentals related to this lease are $137,000.

Rent expense for the years ended June 30, 2015 and 2014 amounted to approximately $196,000 and $187,000, respectively.

(6) **Temporarily Restricted Net Assets**

Temporarily restricted net assets are available for the following as of June 30, 2015 and 2014:

|  | 2015 | 2014 |
|---|---|---|
| Blindness | $ 1,093,040 | — |
| Burns | 1,334,093 | 958,278 |
| Clubfoot | 1,900,380 | 1,053,968 |
| Time | 169,541 | 370,116 |
|  | $ 4,497,054 | 2,382,362 |

(Continued)

WON-EX 0298

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

Net assets were released from restrictions during the year ended June 30, 2015 by incurring expenses or the passage of time as follows:

|  | | 2015 | 2014 |
|---|---|---|---|
| Blindness | $ | 5,249,556 | 4,271,517 |
| Burns | | 536,174 | 614,320 |
| Clubfoot | | 336,318 | 983,281 |
| Hydrocephalus | | — | 300 |
| Time | | 200,575 | 200,040 |
|  | $ | 6,322,623 | 6,069,458 |

(7) **Loans Payable**

In fiscal 2013, the Organization received an unsecured impact loan commitment of $7,500,000 from a foundation to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by the foundation are scheduled to be repaid after 5 year at the rate of 2% per annum. As of June 30, 2013, WonderWork had drawn down $2,500,000 of this loan. In 2014 the remaining $5,000,000 was drawn down under the loan.

In fiscal 2014, the Organization received unsecured impact loan commitments of $2,000,000 from several foundations to be used to generate additional funding for WonderWork programs and facilitate the more effective and efficient delivery of surgeries for the poor and needy served by WonderWork. Funds loaned by these foundations are scheduled to be repaid after 5 years at the rate of 2% per annum.

In fiscal 2015, the Organization received an additional unsecured impact loans commitment of $200,000 from a foundation at the same terms and for the same purpose as the fiscal 2014 loans, to be repaid after 5 years at the rate of 2%.

As of June 30, 2015 and 2014, WonderWork had drawn down a total of $9,300,000 and $9,400,000 of these loans, respectively. Interest on the loans is not due until repayment. Accrued interest expense of $302,417 and $118,750 at June 30, 2015 and 2014, respectively, were recognized on these loans.

In 2015 and 2014, $300,000 and $100,000, respectively, of these loans were forgiven and recognized as contribution revenue in the accompanying statement of activities.

The aggregate amount of principal due on loans payable at June 30, 2015 is as follows:

| 2018 | $ | 7,500,000 |
|---|---|---|
| 2019 | | 1,600,000 |
| 2020 | | 200,000 |
|  | $ | 9,300,000 |

10

(Continued)

WON-EX 0299

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

Pursuit to the loan agreements, Wonderwork met its loan covenants as of June 30, 2015, which consisted of maintaining assets in excess of $1.5 million and maintaining expenditures of 50% or more of all public donations on program service activities.

(8) **Payable to HelpMeSee**

In August, 2011, WonderWork entered into a partnership agreement with HelpMeSee, another blindness charity and 501(c)(3), to work together to solve the problem of cataract blindness. This agreement provided that WonderWork would support HelpMeSee with program grants that WonderWork would pay to HelpMeSee, including an annual grant equal to the amount of the largest grant WonderWork made to a blindness partner from unrestricted funds that year, and a $2,000,000 program grant payable at the end of the 5 year agreement. (If the agreement was terminated before 5 years, this grant would be pro-rated.) This agreement provided that HelpMeSee would help WonderWork through payments of $166,667 per month to help pay for a portion of the expenses WonderWork incurred as part of this agreement. HelpMeSee terminated this agreement in the 12th month (August 2012) and currently the two organizations are in arbitration. The liability recorded at the termination of the agreement has been reversed as management believes the liability will not be paid.

(9) **Allocation of Joint Costs**

In 2015 and 2014, Wonderwork conducted activities, principally direct mailings, that included fundraising appeals as well as program components. The joint costs incurred were allocated as follows:

|  |  | 2015 | 2014 |
|---|---|---|---|
| Program services | $ | 4,499,272 | 3,717,856 |
| Management and general |  | 277,847 | — |
| Fund-raising |  | 2,222,376 | 3,939,353 |
| Total | $ | 6,999,495 | 7,657,209 |

(10) **Contributions In-Kind**

In fiscal year 2015, in-kind contributions consisted of donated professional services, overhead for medical and surgical staff and facilities, medical surgical supplies, medications, and outreach from surgical partners. The amount that hospitals donate toward the overall cost needed to provide the surgeries was $434,486. Additionally, there was an in-kind donation of consulting services of $1,087,626 for an overall review of global programs to provide strategic direction by looking at population, poverty, disease burden, physician density and current hospital/partner locations. They used data provided by WonderWork partners to develop a detailed geo-spatial mapping representing over 100,000 patient locations. Further analysis was done for hospital/partner targeting, location-based patient targeting and data visualization for hospitals.

In fiscal year 2014, in-kind contributions consisted of donated professional services, overhead for medical and surgical staff and facilities, medical surgical supplies, medications and outreach from surgical partners. The amount that hospitals donate toward the overall cost needed to provide the surgeries was $1,882,441.

11 (Continued)

**WONDERWORK, INC.**

Notes to Financial Statements

June 30, 2015 and 2014

**(11) Subsequent Events**

In connection with the preparation of the financial statements, the Organization evaluated subsequent events after the balance sheet date of June 30, 2015 through _____ __, ____, which was the date the financial statements were available to be issued.

On February 19, 2016, the Organization signed a lease agreement for the rental of office space beginning April 1, 2016, as the previous lease had expired on March 31, 2016. Approximate minimum annual rentals related to this lease are as follows for the years ended subsequent to June 30, 2015.

| | | |
|---|---|---|
| 2016 | $ | 23,394 |
| 2017 | | 93,576 |
| 2018 | | 93,576 |
| 2019 | | 93,576 |
| 2020 | | 93,576 |
| 2021 | | 46,788 |

During fiscal 2016, $200,000 of impact loans were forgiven and will be recorded as contribution revenue in 2016.

12

WON-EX 0301

COPY OF WITHIN PAPER
RECEIVED

MAY 1 9 2016

NYS OFFICE OF THE ATTORNEY GENERAL
CHARITIES BUREAU

WON-EX 0302

# FUCHS
# EXHIBIT 9



February 20, 2014

KPMG LLP
345 Park Avenue
New York, NY 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of WonderWork, Inc. (the Organization) as of June 30, 2013, and the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position of the Organization, and the changes in its net assets and its cash flows in conformity with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purpose of appropriately informing ourselves, as of February 20, 2014, the following representations made to you during your audits:

1.  We have fulfilled our responsibilities, as set out in the terms of the audit engagement letter dated June 4, 2013, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2.  We have made available to you:

    a.  All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statements.

EXHIBIT 4
WIT: *Fuchs*
DATE: *8-14-17*
DEBRA STEVENS, RPR, CRR

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."
Visit WonderWork.org to learn more about our programs.



b.   Additional information that you have requested from us for the purpose of the audit.

c.   Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

d.   All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3.   Except as disclosed to you in writing, there have been no communications from regulatory agencies, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

4.   There are no:

a.   Violations or possible violations of laws or regulations, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

b.   Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 450, *Contingencies*.

c.   Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by FASB ASC 450, *Contingencies*.

d.   Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

e.   Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5.   All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6.   There are no uncorrected financial statement misstatements.



7.  We acknowledge our responsibility for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud.

8.  There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9.  We have no knowledge of any fraud or suspected fraud affecting the entity involving:

    a.   Management

    b.   Employees who have significant roles in internal control over financial reporting, or

    c.   Others where the fraud could have a material effect on the financial statements.

10. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, regulators, or others.

11. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

12. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

13. The following have been properly recorded or disclosed in the financial statements, if applicable:



a. Related party transactions including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties.

b. Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees*.

c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC 275, *Risks and Uncertainties*.

Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

14. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

15. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts and grant agreements that have a direct and material effect on the determination of financial statement amounts.

16. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC 820, *Fair Value Measurements and Disclosures,* including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in FASB ASC 820, considered the appropriateness of valuation techniques, including circumstances in which a practical expedient may be used to estimate fair value, adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with generally accepted accounting principles including the disclosure requirements of FASB ASC 820. We

WON-EX 042024



believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in FASB ASC 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in FASB ASC 820.

17. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC 825, *Financial Instruments*. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the FASB ASC 825, *Financial Instruments*. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by FASB ASC 825.

18. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state or local income, excise, employment, property, sales and use, or other tax liability.

19. The Organization has classified net assets as unrestricted, temporarily restricted or permanently restricted based on our assessment of the donor's intention, as specified in original donor correspondence where available. Where not available, we used other corroborating evidential matter including minutes of the Board, accounting records and financial statements. To the extent that we were unable to review original donor correspondence to determine the amount of the original gift and donor additions, our determination of such amount was based on our best estimate considering the relevant facts and circumstances. Amounts classified as temporarily restricted are subject to donor-imposed purpose or time restrictions which precluded us from expending such amounts or recognizing such amounts as unrestricted as of June 30, 2013.

20. The Organization has a reasonable basis for allocation of functional expenses.

21. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2013.

WON-EX 042025



Further, we confirm that we are responsible for the fair presentation in the financial statements of the balance sheet, changes in net assets, and cash flows in conformity with U.S. generally accepted accounting principles. We are also responsible for establishing and maintaining effective internal control over financial reporting.

Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder and CEO*

Hana Fuchs
*CFO*

WON-EX 042026

# FUCHS
# EXHIBIT 10

May 7, 2015

KPMG LLP
345 Park Avenue
New York, New York 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of WonderWork, Inc. (the Organization) as of June 30, 2014, the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position, changes in net assets, and cash flows of the Organization in conformity with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purposes of appropriately informing ourselves, as of May 7, 2015, the following representations made to you during your audits:

1.  We have fulfilled our responsibilities, as set out in terms of the audit engagement letter dated October 20, 2014, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2.  We have made available to you:

TIME magazine named WonderWork one of "10 Ideas That Can Change The World."

120 Fifth Avenue, New York, NY 10016  Tel: 212.279.1808  WonderWork.org



EXHIBIT __10__
WIT: __Fuchs__
DATE: __8-14-17__
DEBRA STEVENS, RPR, CRR

WON-EX 042027



    a.   All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statement.

    b.   Additional information that you have requested from us for the purpose of the audit.

    c.   Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

    d.   All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3.    Except as disclosed to you in writing, there have been no:

    a.   Circumstances that have resulted in communications from the Organization's external legal counsel to the Organization reporting evidence of a material violation of securities law or breach of fiduciary duty, or similar violation by the Organization or any agent thereof.

    b.   Communications from regulatory agencies, governmental representatives, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

    c.   False statements affecting the Organization's financial statements made to the Organization's internal auditors, or other auditors who have audited entities under our control upon whose work you may be relying in connection with your audits.

4.    There are no:

    a.   Violations or possible violations of laws or regulations, in any jurisdiction, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

    b.   Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) Topic 450, *Contingencies*.

    c.   *Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC Topic 450, Contingencies.*

WON-EX 042028

miracle surgeries for children
WINGS
WORLD

d. Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

e. Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5. All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6. There are no uncorrected financial statement misstatements.

7. We acknowledge our responsibility for the design, implementation and maintenance of programs and controls to prevent, and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud. We understand that the term "fraud" includes misstatements arising from fraudulent financial reporting and misstatements arising from misappropriation of assets.

8. There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9. We have disclosed to you the results of our assessment of the risk that the financial statements may be materially misstated as a result of fraud.

10. We have no knowledge of any fraud or suspected fraud affecting the entity's financial statements involving:

a. Management

b. Employees who have significant roles in internal control over financial reporting, or

c. Others where the fraud could have a material effect on the financial statements.

11. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity's financial statements received in communications from employees, former employees, regulators, or others.

WON-EX 042029

12. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

13. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

14. The following have been properly recorded or disclosed in the financial statements if applicable:

    a. Related party relationships and transactions, of which we are aware, in accordance with the requirements of U.S. generally accepted accounting principles, including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties. Related party transactions do not involve undisclosed side agreements.

    b. Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees*.

    c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC Topic 275, *Risks and Uncertainties*.

       Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

15. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

16. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to the Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts and grant agreements that have a direct and material effect on the determination of financial statement amounts.

17. The Organization has complied with all aspects of laws, regulations, contractual agreements, grants, and donor restrictions that may affect the financial statements, including noncompliance.

18. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC Topic 820, *Fair Value Measurements*, including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in ASC Topic 820, considered the appropriateness of valuation techniques [including circumstances in which a practical expedient may be used to estimate fair value], adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with U.S. generally accepted accounting principles including the disclosure requirements of ASC Topic 820. We believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in ASC Topic 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in ASC Topic 820.

19. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC Topic 825, *Financial Instruments*. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the ASC Topic 825. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by ASC Topic 825.

20. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax-exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state, or local income, excise, employment, property, sales and use, or other tax liability.

21. The Organization notes that an appropriate accrual, or lack there of, for any Help Me See legal exposure has been booked in the financials as of June 30, 2014.

22. The Organization has a reasonable basis for allocation of functional expenses.

WON-EX 042031

23. The Organization has a reasonable basis for determining estimates associated with in-kind contributions and has followed that basis at June 30, 2014.

24. The Organization confirms that the following 2014 contributions have no restrictions and thus are properly classified as unrestricted: ███████████ for $1 million, ████████ for $500 thousand, and ████████████ for $100 thousand.

25. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2014.

Further, we confirm that we are responsible for the fair presentation in the financial statements of financial position, changes in net assets and cash flows, and the related notes in conformity with U.S. generally accepted accounting principles.

Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder & CEO*

Hana Fuchs
*CFO*

WON-EX 042032

FUCHS

EXHIBIT 11



May 12, 2016

KPMG LLP
345 Park Avenue
New York, New York 10154

Ladies and Gentlemen:

We are providing this letter in connection with your audit of the balance sheet of Wonderwork, Inc. (the Organization) as of June 30, 2015, the related statements of activities, functional expenses and cash flows for the year then ended, and the related notes to the financial statements for the purpose of expressing an opinion as to whether these financial statements present fairly, in all material respects, the financial position, changes in net assets, and cash flows of the Organization in accordance with U.S. generally accepted accounting principles.

Certain representations in this letter are described as being limited to matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would be changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, having made such inquiries as we considered necessary for the purposes of appropriately informing ourselves, as of May 12, 2016, the following representations made to you during your audit:

1.  We have fulfilled our responsibilities, as set out in terms of the audit engagement letter dated October 28, 2015, for the preparation and fair presentation of the financial statements in accordance with U.S. generally accepted accounting principles.

2.  We have made available to you:

    a.  All records, documentation, and information that is relevant to the preparation and fair presentation of the financial statement.

EXHIBIT  11
WIT: Fuchs
DATE: 8-14-17
DEBRA STEVENS, RPR, CRR

WON-EX 042033

b.  Additional information that you have requested from us for the purpose of the audit.

c.  Unrestricted access and the full cooperation of personnel within the entity from whom you determined it necessary to obtain audit evidence.

d.  All minutes of meetings of the Board of Directors and committees of the Board of Directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3.  There have been no:

a.  Circumstances that have resulted in communications from the Organization's external legal counsel to the Organization reporting evidence of a material violation of securities law or breach of fiduciary duty, or similar violation by the Organization or any agent thereof.

b.  Communications from regulatory agencies, governmental representatives, employees, or others concerning investigations or allegations of noncompliance with laws and regulations in any jurisdiction, deficiencies in financial reporting practices, or other matters that could have a material adverse effect on the financial statements.

c.  False statements affecting the Organization's financial statements made to the Organization's internal auditors, or other auditors who have audited entities under our control upon whose work you may be relying in connection with your audit.

4.  There are no:

a.  Violations or possible violations of laws or regulations, in any jurisdiction, whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

b.  Unasserted claims or assessments that our lawyers have advised us are probable of assertion and must be disclosed in accordance with Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) Topic 450, *Contingencies.*

c.  Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by ASC Topic 450, *Contingencies.*

d.  Other obligations resulting from joint and several liability arrangements that are required to be accrued or disclosed by FASB ASU 2013-04, *Liabilities (Topic 405) – Obligations Resulting From Joint and Several Liability Arrangements for Which the Total Amount of the Obligation Is Fixed At the Reporting Date.*

WON-EX 042034

e.  Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

f.  Events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the financial statements.

5.  All known actual or possible litigation and claims have been accounted for and disclosed in accordance with ASC Topic 450, *Contingencies*.

6.  There are no uncorrected financial statement misstatements.

7.  We acknowledge our responsibility for the design, implementation and maintenance of programs and controls to prevent, and detect fraud; for adopting sound accounting policies; and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the financial statements whether due to error or fraud. We understand that the term "fraud" includes misstatements arising from fraudulent financial reporting and misstatements arising from misappropriation of assets.

8.  There are no deficiencies, significant deficiencies, or material weaknesses in the design or operation of internal control over financial reporting of which we are aware, which could adversely affect the Organization's ability to initiate, authorize, record, process, or report financial data. We have applied the definitions of a "significant deficiency" and a "material weakness" in accordance with the definitions in AU-C Section 265, Communicating Internal Control Related Matters Identified in an Audit.

9.  We have disclosed to you the results of our assessment of the risk that the financial statements may be materially misstated as a result of fraud.

10. We have no knowledge of any fraud or suspected fraud affecting the entity's **financial statements** involving:

a.  Management

b.  Employees who have significant roles in internal control over financial reporting, or

c.  Others where the fraud could have a material effect on the financial statements.

WON-EX 042035

11. We have no knowledge of any allegations of fraud or suspected fraud affecting the entity's financial statements received in communications from employees, former employees, analysts, regulators, or others.

12. The Organization has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

13. We have no knowledge of any officer or director of the Organization, or any other person acting under the direction thereof, having taken any action to fraudulently influence, coerce, manipulate, or mislead you during your audit.

14. The following have been properly recorded or disclosed in the financial statements:

    a. Related party relationships and transactions, of which we are aware, in accordance with the requirements of U.S. generally accepted accounting principles, including sales, purchases, loans, transfers, leasing arrangements, guarantees, ongoing contractual commitments, and amounts receivable from or payable to related parties. Related party transactions do not involve undisclosed side agreements.

    b. Guarantees, whether written or oral, under which the Organization is contingently liable, including guarantee contracts and indemnification agreements pursuant to FASB ASC 460, *Guarantees.*

    c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with FASB ASC Topic 275, *Risks and Uncertainties.*

       Significant estimates are estimates at the balance sheet date, which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which it is reasonably possible that events could occur which would significantly disrupt normal finances within the next year.

    d. All assets and liabilities under the Organization's control.

15. The Organization has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets, nor has any asset been pledged as collateral.

16. Management is responsible for compliance with the laws, regulations, donor restrictions, and provisions of contracts and grant agreements applicable to the Organization. Management has identified and disclosed to you all laws, regulations, donor restrictions, and provisions of contracts

WON-EX 042036

and grant agreements that have a direct and material effect on the determination of financial statement amounts.

17. The Organization has complied with all aspects of laws, regulations, contractual agreements, grants, and donor restrictions that may affect the financial statements, including noncompliance.

18. Receivables reported in the financial statements represent valid claims against debtors arising on or before the date of the balance sheet and have been appropriately reduced to their estimated net realizable value.

19. The Organization has appropriately grouped long-lived assets together for purposes of assessing impairment in accordance with FASB ASC Topic 360, Property, Plant, and Equipment. We have reviewed long-lived assets, including amortizable intangible assets, to be held and used for impairment whenever events or changes in circumstances have indicated that the carrying amount of the assets might not be recoverable. Provision has been made for any material adjustments to long-lived assets including amortizable intangible assets.

20. We are responsible for making the fair value measurements and disclosures included in the financial statements in accordance with FASB ASC Topic 820, Fair Value Measurements, including determining the fair value of assets and liabilities for which there has been a significant decrease in the volume and level of activity in relation to the normal market activity for those assets or liabilities (or similar assets or liabilities) or for which transactions are deemed not orderly. As part of fulfilling this responsibility, we have established an accounting and financial reporting process for determining the fair value measurements and disclosures, in accordance with the fair value techniques included in ASC Topic 820, considered the appropriateness of valuation techniques, adequately supported any significant assumptions used, and ensured that the presentation and disclosure of the fair value measurements are in accordance with U.S. generally accepted accounting principles including the disclosure requirements of ASC Topic 820. We believe the assumptions and techniques used by us, including those used by specialists engaged by us, are in accordance with the definition of fair value in ASC Topic 820 and the disclosures adequately describe the level of the inputs used in the fair value measurement, in accordance with the fair value hierarchy in ASC Topic 820.

21. The Organization is responsible for determining the fair value of financial instruments as required by FASB ASC Topic 825, Financial Instruments. The amounts disclosed represent the Organization's best estimate of fair value of financial instruments required to be disclosed under the ASC Topic 825. The Organization also has disclosed the methods and significant assumptions used to estimate the fair value of financial instruments and any changes to those methods and significant assumptions, if any, as required by ASC Topic 825.

WON-EX 042037

22. The Company is in compliance with bond indentures or other debt agreements.

23. The Organization has been recognized as exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 as an organization described in Section 501(c)(3) of the Code, as evidenced by our determination letter dated September 11, 2012, a copy of which has been furnished to you. Since the date of our determination letter, no changes have occurred in the organization or operation of the Organization that would affect our tax-exempt status. Based on our determination letter, we have been classified as a public charity under Section 509(a) of the Internal Revenue Code, and since the date of our determination letter, no changes have occurred in the organization or its operations that would change this classification. Provision has been made, where material, for any federal, state, or local income, excise, employment, property, sales and use, or other tax liability.

24. The Organization has classified net assets as unrestricted, or temporarily restricted, based on our assessment of the donor's intention, as specified in original donor correspondence where available. Where not available, we used other corroborating evidential matter including minutes of the Board, accounting records, and financial statements. To the extent that we were unable to review original donor correspondence to determine the amount of the original gift and donor additions, our determination of such amount was based on our best estimate considering the relevant facts and circumstances. Amounts classified as temporarily restricted are subject to donor-imposed purpose or time restrictions which precluded us from expending such amounts or recognizing such amounts as unrestricted as of the balance sheet date.

25. The Organization has a reasonable basis for allocation of functional expenses.

26. The Organization is not subject to the requirements of OMB Circular A-133 as it did not expend more than $500,000 in federal awards during the year ended June 30, 2015.

27. The Organization notes that an appropriate accrual, or lack there of, for any Help Me See legal exposure has been booked in the financials as of June 30, 2015.

28. The Organization has a reasonable basis for determining estimates associated with in-kind contributions and has followed that basis at June 30, 2015.

Further, we confirm that we are responsible for the fair presentation in the financial statements of financial position, changes in net assets and cash flows, and the related notes in accordance with U.S. generally accepted accounting principles.

WON-EX 042038

Very truly yours,

WonderWork, Inc.

Brian Mullaney
*Founder & CEO*

Hana Fuchs

*CFO*

WON-EX 042039

FUCHS

EXHIBIT 12

**Temporarily Restricted Net Assets**

**Revenue**

| | |
|---|---|
| 4010 Blindness (N) | 636,450.87 |
| 4020 Burns (B) | 1,453,634.03 |
| 4030 Clubfoot (C) | 1,559,335.41 |
| 4040 Hole in the Heart (T) | 9,955.92 |
| 4050 Hydrocephalus (Y) | 9,781.00 |
| | 3,669,157.23 |

**Program Expenses** (see details in next tab)

| | |
|---|---|
| 5000 Cleft Lip | 450,000.00 |
| 5100 Blindness | 352,333.34 |
| 5200 Burns | 239,833.33 |
| 5300 Clubfoot | 262,333.33 |
| 5400 Hole in the Heart | 11,500.00 |
| 5500 Hydrocephalus | 11,500.00 |
| Total 5000 Programs | 1,327,500.00 |

**Remove from restriction**

| | Donations | Program Expenses | Remaining Restricted Funds before allocation | % to total | program services allocation | Released from restriction | Remaining Restricted Funds after allocation |
|---|---|---|---|---|---|---|---|
| 4010 Blindness (N) | 636,450.87 | 352,333.34 | 284,117.53 | 10.2% | 153,174.44 | 505,507.78 | 130,943.09 |
| 4020 Burns (B) | 1,453,634.03 | 239,833.33 | 1,213,800.70 | 43.4% | 654,388.49 | 894,221.82 | 559,412.21 |
| 4030 Clubfoot (C) | 1,559,335.41 | 262,333.33 | 1,297,002.08 | 46.4% | 699,244.31 | 961,577.64 | 597,757.77 |
| 4040 Hole in the Heart (T) | 9,955.92 | 11,500.00 | - | | | 11,500.00 | - |
| 4050 Hydrocephalus (Y) | 9,781.00 | 11,500.00 | - | | | 11,500.00 | - |
| Time | | | | | | 199,531.00 | 570,156.00 |
| Restricted donations | 3,669,157.23 | 877,500.00 | 2,794,920.31 | 100.0% | 1,506,807.23 | 2,583,838.23 | 1,858,269.08 |

| | | |
|---|---|---|
| remaining | 1,085,319.00 | |
| released | 2,583,838.23 | |
| programs | (877,500.00) | 877,500.00 |
| time | (199,531.00) | 1,019,491.26 |
| allocation to split among programs | 1,506,807.23 | 424,926.87 |
| | | 135,811.26 |
| | 2,384,307.00 | 128,705.39 |
| | | 3,498,385.67 |
| | | 9,420.13 |
| | | 170,524.70 |
| | | 1,888,879.62 |

release from restriction

2,583,838.00  to be released

(199,531.00) time
2,384,307.00  remaining to be released

1,085,319.00  remaining

1,085,319.00  remaining
1,506,807.23

EXHIBIT 12
WIT: Fuchs
DATE: 8-15-17
DEBRA STEVENS, RPR, CRR



ROLL FORWARD SCHEDULE

Temporarily Restricted Net Assets

**Revenue**

| | |
|---|---|
| 4010 Blindness (N) | 4,140,574.07 |
| 4020 Burns (B) | 1,013,186.45 |
| 4030 Clubfoot (C) | 1,442,753.53 |
| 4040 Hole in the Heart (T) | 0.00 |
| 4050 Hydrocephalus (Y) | 300.00 |
| | 6,596,814.05 |

**Program Expenses** (see details in next tab)

| | |
|---|---|
| 5000 Programs | 40,000.00 |
| 5100 Blindness | 2,634,471.00 |
| 5200 Burns | 452,509.00 |
| 5300 Clubfoot | 564,455.00 |
| 5400 Hole in the Heart | 0.00 |
| 5500 Hydrocephalus | 0.00 |
| 5600 Quality Assurance | 20,000.00 |
| Total 5000 Programs | 3,691,435.00 |

PBC: Hana Fuchs

FY14

| | | |
|---|---|---|
| 4000 Donations-WonderWork | 5,582,852.74 | |
| 4010 Blindness (N) | 4,140,574.07 | 6,596,814.05 |
| 4020 Burns (B) | 1,013,186.45 | |
| 4030 Clubfoot (C) | 1,442,753.53 | |
| 4050 Hydrocephalus (Y) | 300.00 | |
| Total 4000 Donations-WonderWork | $ 12,179,666.79 | |

**Wonderwork**
**Net Assets Released from Restrictions**
**6/30/14**

**Purpose:** To recalculate schedule of net assets released from restrictions and tie to expense testwork.

| | A Per PY FS FN 6 FY13 | | B Donations | Total Net Restricted Additions | C Program Expenses | E Direct Mail Allocation per KPMG Rx | Time Release | Total Expenses | Net Assets Released per limit | Allowed Release | Amounts covered by unrestricted funds | Restricted Net Assets at 6/30/14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4010 Blindness (N) | 130,943 | GL | 4,140,574.07 | 4,271,517.07 GL | 2,634,471.00 | $ 3,137,219.19 | $ - | $ 5,771,690.19 | (1,500,173.12) | 4,271,517.07 | 1,500,173.12 | 0.00 |
| 4020 Burns (B) | 559,412 | | 1,013,186.45 | 1,572,598.45 | 452,509.00 | $ 161,810.840 | $ - | $ 614,319.84 | 958,278.61 | 614,319.84 | 0 | 958,278.61 |
| 4030 Clubfoot (C) | 594,495 | | 1,442,753.53 | 2,037,248.53 | 564,455.00 | $ 418,825.72 | $ - | $ 983,280.72 | 1,053,967.81 | 983,280.72 | 0 | 1,053,967.81 |
| 4040 Hole in the Heart (T) | - | | 0.00 | 0.00 | - | | $ - | $ - | - | - | 0 | 0.00 |
| 4050 Hydrocephalus (Y) | | | 300.00 | 300.00 | 300.00 | | $ - | $ 300.00 | - | 300.00 | 0 | 0.00 |
| Time | 570,156 | | | 570,156.00 | | | $ 200,040.00 | $ 200,040.00 | 200,040.00 | 200,040.00 | 0 | 370,116.00 |
| Restricted donations | 1,855,006 | | 6,596,814.05 | 8,451,820.05 | 3,651,735.00 | $ 3,717,855.75 | $ 200,040.00 | $ 7,569,630.75 | 712,113.30 | 6,069,457.63 | 1,500,173.12 | $ 2,382,362.42 |

F

**Conclusion:** KPMG notes that net assets released from restrictions are reasonably stated for the year ended 6/30/14.

**Tickmark Legend:**
F- Footed
Rx- Recalculated
GL- T/A to 6/30/14 Trial Balance
FS- T/A to 6/30/14 Financial Statements

Temporarily Restricted Net Assets FY15
Revenue
| | |
|---|---|
| 4010 Blindness (N) | 6,342,596.27 |
| 4020 Burns (B) | 911,989.44 |
| 4030 Clubfoot (C) | 1,182,729.30 |
| 4040 Hole in the Heart (T) | 0.00 |
| 4050 Hydrocephalus (Y) | 0.00 |
| | 8,437,315.01 |

Program Expenses (see details in next tab)
| | |
|---|---|
| **5000 Programs** | 101,000.00 |
| 5100 Blindness | 1,244,500.00 |
| 5200 Burns | 429,000.00 |
| 5300 Clubfoot | 218,000.00 |
| 5400 Hole in the Heart | 0.00 |
| 5500 Hydrocephalus | 0.00 |
| **5600 Quality Assurance** | 0.00 |
| Total 5000 Programs | 1,992,500.00 |

PBC: Hana Fuchs

**Wonderwork**
**Net Assets Released from Restrictions**
**6/30/15**

**Purpose**: To calculate schedule of net assets released from restrictions and tie to expense testwork.

| | A Per PY FS FN 6 FY14 | | B Donations | | Total Net Restricted Additions | | C Program Expenses | E Direct Mail Allocation | Time Release | Total Expenses | Net Assets Released per limit | Allowed Release | Amounts covered by unrestricted funds | Restricted Net Assets at 6/30/15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4010 Blindness (N) | - | GL | 6,342,596.27 | | 6,342,596.27 | GL | 1,244,500.00 | $ 4,005,055.88 | $ - | $ 5,249,555.88 | 1,093,040.39 | 5,249,555.88 $ - | | 1,093,040.39 |
| 4020 Burns (B) | 958,278 | | 911,989.44 | | 1,870,267.44 | | 429,000.00 | $ 107,174.436 | $ - | $ 536,174.44 | 1,334,093.00 | 536,174.44 | 0 | 1,334,093.00 |
| 4030 Clubfoot (C) | 1,053,968 | | 1,182,729.30 | | 2,236,697.30 | | 218,000.00 | $ 118,317.80 | $ - | $ 336,317.80 | 1,900,379.50 | 336,317.80 | 0 | 1,900,379.50 |
| 4040 Hole in the Heart (T) | - | | 0.00 | | 0.00 | | - | | $ - | $ - | - | - | 0 | 0.00 |
| 4050 Hydrocephalus (Y) | - | | 0.00 | | 0.00 | | - | | $ - | $ - | - | - | 0 | 0.00 |
| Time ▮▮▮ gift over 5 years | 370,116 | | 0.00 | | 370,116.00 | | | | 200,575.00 | $ 200,575.00 | 200,575.00 | 200,575.00 | 0 | 169,541.00 |
| Restricted donations | 2,382,362 | ● | 8,437,315.01 | | 10,819,677.01 | ● | 1,891,500.00 | $ 4,230,548.12 | 200,575.00 | $ 6,322,623.12 | 4,528,087.89 | 6,322,623.12 $ - | | $ 4,497,053.89 |

F

**Conclusion:**

**Tickmark Legend:**
F- Footed
Rx- Recalculated
GL- T/A to 6/30/14 Trial Balance
FS- T/A to 6/30/14 Financial Statements

# FUCHS
# EXHIBIT 13

**From:** "Hana Fuchs"
**Subject:** RE: WonderWork - Kim Comments
**Sent:** Thu, 16 Apr 2015 15:59:39 -0400

**From:** Hana Fuchs
**Sent:** Thursday, April 16, 2015 12:00 PM
**To:** Leggette, Ryan
**Subject:** RE: WonderWork - Kim Comments

Hi,
DeLois H. Greenwood is Chief Program Officer.
Hana

**From:** Leggette, Ryan [mailto:rleggette@KPMG.com]
**Sent:** Thursday, April 16, 2015 11:49 AM
**To:** Hana Fuchs
**Subject:** RE: WonderWork - Kim Comments

Hana,

What is DeLois's title at WW?

**Ryan D. Leggette, Senior Manager**
**KPMG LLP** | 345 Park Avenue - New York, NY 10154-0101
Phone: (212) 954-6027 | Fax: (646) 417-6924
rleggette@kpmg.com

**From:** Hana Fuchs [mailto:hana@wonderwork.org]
**Sent:** Thursday, April 16, 2015 10:15 AM
**To:** Leggette, Ryan
**Subject:** RE: WonderWork - Kim Comments

> EXHIBIT *13*
> WIT: *Fuchs*
> DATE: *8-14-17*
> DEBRA STEVENS, RPR, CRR

Ryan,
Yes, that is correct. Brian spent most of his time developing the blindness program with DeLois. He traveled extensively to visit our partner hospitals to review their work and determine if they had the capacity to support our aggressive program of eliminating unnecessary blindness.
He doesn't keep time records but based on discussions with him and his travel with DeLois it can be determined.
Let me know if you need additional information.
Regards, Hana

**From:** Leggette, Ryan [mailto:rleggette@KPMG.com]
**Sent:** Wednesday, April 15, 2015 9:24 PM
**To:** Hana Fuchs
**Subject:** RE: WonderWork - Kim Comments

Hana,

I'm wrapping up the remainder of Kim's comments. I need to add additional disclosures around the loans. Interest, payment schedule, covenants, etc. I'll go through the loan documents and try and pull together and send you a draft tomorrow afternoon.

One other item, though. I was able to look into what was driving the reduction in M&G expense and M&G salary expense. It appears that Brian's allocation of salary changed from 40% program in 2013 to 80% program in 2014. Our audit testwork documents that this allocation is based on an analysis of his activities and discussion with the employee. Can you provide more insight in what exactly changed in his activities that had such a significant impact to the allocation?

Regards,

Ryan

WW_EMAILS0023602

**Ryan D. Leggette, Senior Manager**
**KPMG LLP** | 345 Park Avenue - New York, NY 10154-0101
Phone: (212) 954-6027 | Fax:  (646) 417-6924
rleggette@kpmg.com

**From:** Hana Fuchs [mailto:hana@wonderwork.org]
**Sent:** Wednesday, April 15, 2015 8:49 AM
**To:** Leggette, Ryan
**Subject:** RE: WonderWork - Kim Comments

Thanks  Ryan- I get a bit anxious around this time of year-
Hana

**From:** Leggette, Ryan [mailto:rleggette@KPMG.com]
**Sent:** Tuesday, April 14, 2015 7:40 PM
**To:** Hana Fuchs
**Subject:** RE: WonderWork - Kim Comments

Hana,

Sorry for the delay.  I was able to sit down with Kim to clarify on some additional notes today, which I will begin to process later tonight and tomorrow.  These relate to footnote disclosure, not the financial statement balances.  Some relate to loan details that we need to add.  I'll summarize if I can't identify the needed information.

Regards,

Ryan

**Ryan D. Leggette, Senior Manager**
**KPMG LLP** | 345 Park Avenue - New York, NY 10154-0101
Phone: (212) 954-6027 | Fax:  (646) 417-6924
rleggette@kpmg.com

**From:** Hana Fuchs [mailto:hana@wonderwork.org]
**Sent:** Tuesday, April 14, 2015 10:30 AM
**To:** Leggette, Ryan
**Subject:** RE: WonderWork - Kim Comments
**Importance:** High

Hi Ryan,
Is it possible to get a final draft to send to the audit committee for review?
The May 15th due date is getting closer and I would like to get JJ Coney's (Audit Committee) comments (if he has any).
Thanks Hana

**From:** Hana Fuchs
**Sent:** Monday, April 06, 2015 3:37 PM
**To:** 'Leggette, Ryan'
**Subject:** RE: WonderWork - Kim Comments

Hi Ryan,
No problems with Kim's notes. One note I have – the font for the title Contributions In-Kind on page 8 does not match the font for the other heading.
Thanks, Hana

**From:** Hana Fuchs
**Sent:** Thursday, April 02, 2015 11:41 AM
**To:** 'Leggette, Ryan'

WW_EMAILS0023602

**Subject:** RE: WonderWork - Kim Comments

Please see responses below- I will also read the edits and get back to with any changes.
Thanks Hana

**From:** Leggette, Ryan [mailto:rleggette@KPMG.com]
**Sent:** Wednesday, April 01, 2015 12:21 PM
**To:** Hana Fuchs
**Subject:** WonderWork - Kim Comments

Hana,

Below are some comments from Kim that I need you help in answering:

1) There is a $45K balance in prepaids that is the same as last year. What does this relate to? It is below our materiality, so we didn't test it this year. **This is a 3 month security deposit per lease paid to Rainforest in Sept. 2011**

2) Management and general expense decreased from $527K to 324K on the financials. This is a significant decrease year to year. What is driving this decrease? **It appears that more consulting fees and salaries were allocated to programs for FY14 thereby reducing the management and general.**

3) Maybe this is similar to #2 above, but M&G salary expense on the functional expenses went from $150k to $74K. Why? **Same as above.**

Also attached are some edits she had. She has some additional edits that I will push through once I have a chance to speak with her. Please take a look and confirm.


Regards,

Ryan



**Ryan D. Leggette, Senior Manager**
**KPMG LLP** | 345 Park Avenue - New York, NY 10154-0101
Phone: (212) 954-6027 | Fax: (646) 417-6924
rleggette@kpmg.com

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*********************************************************************

---

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
*********************************************************************

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
**********************************************************************

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this email are subject to the terms and conditions expressed in the governing KPMG client engagement letter.
**********************************************************************