**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| WONDERWORK, INC., | : | Case No.: 16-13607 (MKV) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

--------------------------------------------------------x

## AMENDED CHAPTER 11 PLAN OF
## LIQUIDATION FOR THE BANKRUPTCY ESTATE OF
## <u>WONDERWORK, INC. AS PROPOSED BY THE CHAPTER 11 TRUSTEE</u>

**TOGUT, SEGAL & SEGAL LLP**
**One Penn Plaza, Suite 3335**
**New York, New York 10119**
**(212) 594-5000**

*Counsel for Stephen S. Gray,*
*not individually but solely in*
*his capacity as Chapter 11 Trustee*

**Dated: August 8, 2018**

# TABLE OF CONTENTS

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS........................................ 1

    Section 1.1.   Definitions;  Interpretation; Application of Definitions
            and Rules of Construction.. ..................................................................... 1

ARTICLE II. TREATMENT OF NON-CLASSIFIED CLAIMS ........................................... 11

    Section 2.1.   Non-Classification...................................................................... 11

    Section 2.2.   Administrative Expense Claims. ................................................ 11

    Section 2.3.   Priority Tax Claims. ................................................................... 11

    Section 2.4.   Professional Fee Claims. ............................................................ 12

ARTICLE III. CLASSIFICATION OF CLAIMS ............................................................... 12

ARTICLE IV. TREATMENT OF CLAIMS......................................................................... 12

    Section 4.1.   Class I:  Secured Claims. ........................................................... 12

    Section 4.2.   Class II:  Other Priority Claims. ................................................ 13

    Section 4.3.   Class III:  HMS General Unsecured Claim. ....................................... 13

    Section 4.4.   Class IV:  General Unsecured Claims. ............................................. 14

ARTICLE V. IMPLEMENTATION OF THE PLAN ............................................................. 15

    Section 5.1.   Implementation of the Plan. ...................................................... 15

    Section 5.2.   Sale of Acquired Assets.............................................................. 15

    Section 5.3.   HMS Settlement Agreement....................................................... 15

    Section 5.4.   Thompson Family Foundation Settlement......................................... 15

    Section 5.5.   Plan Funding.. ........................................................................... 15

    Section 5.6.   Liquidation of Remaining Assets .............................................. 16

    Section 5.7.   Deemed Dissolution Under Applicable Nonbankruptcy Law........ 16

    Section 5.8.   Corporate Action........................................................................ 16

    Section 5.9.   Powers and Obligations of the Plan Administrator..................... 16

    Section 5.10. Resignation, Death or Removal of Plan Administrator................... 18

    Section 5.11. Litigation Trust Arrangements ................................................... 18

    Section 5.12. Preservation of Causes of Action............................................... 18

    Section 5.13. Termination of Appeals Relating to HMS. ................................. 19

ARTICLE VI. DISTRIBUTIONS AND VOTING .................................................................. 19

    Section 6.1.   Plan Distributions. .................................................................... 19

    Section 6.2.   Address for Delivery of Distributions ....................................... 19

    Section 6.3.   Distributions under Twenty-Five Dollars. ................................. 20

    Section 6.4.   Time Bar to Cash Payments....................................................... 20

Section 6.5.    Distributions to Holders as of the Confirmation Date ..................... 20

Section 6.6.    Abandoned Assets. ................................................................... 20

Section 6.7.    Windup. ................................................................................. 20

Section 6.8.    Distribution of Unclaimed Property. ................................................ 20

Section 6.9.    Saturday, Sunday, or Legal Holiday ................................................ 21

Section 6.10. Voting of Claims ....................................................................... 21

ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 21

Section 7.1.    Assumption or Rejection of Executory Contracts. ........................... 21

Section 7.2.    Approval of Assumption or Rejection of Executory Contracts. ....... 21

Section 7.3.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts
Rejected Pursuant to the Plan. ..................................................................... 21

Section 7.4.    Compensation and Benefit Programs. ................................................ 21

Section 7.5.    Insurance Policies. ..................................................................... 22

ARTICLE VIII. PROVISIONS FOR RESOLVING AND TREATING CLAIMS ............... 22

Section 8.1.    Funding of the Disputed Claims Reserve. ....................................... 22

Section 8.2.    Disputed Claims. ....................................................................... 23

Section 8.3.    Settlement of Disputed Claims. ................................................... 23

Section 8.4.    No Distributions Pending Allowance. ............................................ 24

ARTICLE IX THE LITIGATION TRUST ............................................................... 24

Section 9.1.    Establishment and Implementation of the Litigation Trust ........... 24

Section 9.2.    Transfer of Litigation Trust Assets. ................................................ 24

Section 9.3.    Purpose of the Litigation Trust ..................................................... 25

Section 9.4.    Funding Expenses of the Litigation Trust. ...................................... 25

Section 9.5.    The Litigation Trust Election. ....................................................... 25

Section 9.6.    Litigation; Responsibilities of Litigation Trustee. ........................... 26

Section 9.7.    No Liability of Litigation Trust. ..................................................... 26

Section 9.8.    Litigation Trustee. ....................................................................... 27

Section 9.9.    Oversight Committee ................................................................... 27

Section 9.10. Limitation on Liability of Litigating Trustee
and Oversight Committee ............................................................................. 27

Section 9.11. Distribution; Withholding. ............................................................ 28

Section 9.12. Non-transferability of Litigation Trust Interests. ............................. 28

Section 9.13. Termination. ............................................................................... 28

Section 9.14. Net Litigation Trust Recovery. ..................................................... 28

ii

ARTICLE X. CONDITIONS PRECEDENT ........................................................... 29

    Section 10.1.  Conditions to Confirmation ................................................. 29

    Section 10.2.  Conditions to Effective Date.: .............................................. 29

    Section 10.3.  Waiver of Conditions. ......................................................... 30

ARTICLE XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN  30

    Section 11.1.  Modification of Plan:  Generally. ........................................ 30

    Section 11.2.  Revocation or Withdrawal of Plan. ..................................... 31

ARTICLE XII. RETENTION OF JURISDICTION .................................................. 31

    Section 12.1.  Exclusive Jurisdiction of the Bankruptcy Court. ................. 31

    Section 12.2.  Failure of the Bankruptcy Court to Exercise Jurisdiction. ............. 32

ARTICLE XIII. DISCHARGE;  INJUNCTIVE PROVISIONS;  EXCULPATION AND
RELEASES ...................................................................................................... 32

    Section 13.1.  Term of Bankruptcy Injunction or Stays ............................. 32

    Section 13.2.  Discharge. ............................................................................ 32

    Section 13.3.  Injunctions ........................................................................... 32

    Section 13.4.  Exculpation. ......................................................................... 33

    Section 13.5.  Releases ................................................................................ 34

    Section 13.6.  Indemnification. ................................................................... 35

    Section 13.7.  Limitation on Exculpations, Injunctions and Release ................ 35

    Section 13.8.  Preservation and Application of Insurance. ........................ 35

ARTICLE XIV. MISCELLANEOUS PROVISIONS ............................................... 36

    Section 14.1.  Payment of Statutory Fees .................................................. 36

    Section 14.2.  Reports. ................................................................................ 36

    Section 14.3.  Governing Law ..................................................................... 36

    Section 14.4.  Withholding and Reporting Requirements .......................... 36

    Section 14.5.  Section 1146 Exemption ...................................................... 36

    Section 14.6.  Severability.. ......................................................................... 37

    Section 14.7.  Reservation of Rights ........................................................... 37

    Section 14.8.  Binding Effect;  Counterparts. ............................................. 37

    Section 14.9.  Notices. ................................................................................ 37

    Section 14.10. Computation of Time. .......................................................... 38

    Section 14.11. Plan Controls.. ...................................................................... 38

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of WonderWork, Inc. (the "Debtor"), hereby proposes the following Chapter 11 plan (the "Plan") pursuant to sections 1121(c) and 1123 of title 11 of the United States Code (the "Bankruptcy Code").  Reference is made to the Disclosure Statement filed with the Bankruptcy Court concurrently herewith for a discussion of certain transactions and other matters germane to the implementation of the Plan and the administration of the Debtor's Chapter 11 case, as well as a summary discussion of the terms and conditions of the Plan.  All holders of Claims (as defined herein) who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety and consult with an attorney.

**NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.**

### ARTICLE I.
### DEFINITIONS AND CONSTRUCTION OF TERMS

Section 1.1.    Definitions;  Interpretation; Application of Definitions and Rules of Construction.  For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction hereof.  Headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  The words "herein", "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.  Any reference in the Plan to an existing document or an exhibit filed or to be filed (in connection with the Disclosure Statement, or the Plan) means such document or exhibit as it may have been or may be amended, modified, or supplemented.  Any reference to a Person as a holder of a Claim includes that Person's successors, assigns, and affiliates.  Wherever the Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on or as soon as reasonably practicable after" such date.  Further, where appropriate, from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

*"Acquired Assets"* means Assets acquired by, and transferred to, the Purchasers in accordance with the terms and conditions of the Purchase Agreements, which for the avoidance of doubt does not include any of the Litigation Trust Assets.

1

"*Administrative Expense Claim*" means, except as otherwise set forth in this Plan, a Claim (or a portion of a Claim) for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's Estate, and all fees and charges assessed against the Debtor's Estate, as defined herein, pursuant to 28 U.S.C. § 1930.  The term Administrative Expense Claim does not include Professional Fee Claims or Priority Claims, as defined herein and which are treated separately in this Plan.

"*Allocated Restricted Funds*" means an amount of Cash equal to ten percent (10%) of the Restricted Funds held by the Debtor as of the Effective Date, as authorized by the NYSAG pursuant to New York Not-for-Profit Corporation Law section 513(b), to be allocated toward the satisfaction of Allowed Professional Fee Claims.

"*Allowed*" means, with reference to any Claim (including any Administrative Expense Claim) that portion of a Claim:  (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Plan;  or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof.  Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

"*Assets*" means (a) all remaining assets and properties of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed, including the goodwill related thereto, operated, owned, or leased by the Debtor that constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, including, without limitation, any and all Claims, Causes of Action, or rights of the Debtor or the Estate, under federal, state, or foreign law, letters of credit issued for or on behalf of the Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor; and (b) the proceeds, products, rents and/or profits of any of the foregoing.

"*Available Cash*"  means Cash of the Debtor on hand on the Effective Date, including the proceeds from the Sale and any payment from HMS pursuant to the terms and conditions of the HMS Settlement Agreement;  excluding, however, the Restricted Funds.

"*Avoidance Actions*" mean any action arising under Chapter 5 of the Bankruptcy Code, including, sections 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Avoidance Actions.

2

"*Ballot*" means the form distributed to each holder of a Claim against the Debtor that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan and, in respect of the General Unsecured Claims, the Litigation Trust Election.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.*, as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this Chapter 11 Case.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York and any court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

"*Bankruptcy Rules*" mean (i) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court, as provided under section 2075 of title 28 of the United States Code, as such Rules may be amended from time to time, and (ii) any Local Rules of the Bankruptcy Court.

"*Bar Date*" means July 31, 2017, which was the date fixed in the Bar Date Order as the deadline to file a proof of Claim in the Chapter 11 Case.

"*Bar Date Order*" means the Order Establishing July 31, 2017 as the Deadline for Filing Proofs of Claim in this Chapter 11 Case [Dkt. No. 178].

"*Business Day*" means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means cash or cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by federally insured depository institution.

"*Causes of Action*" means, without limitation, (a) all pending suits to which the Debtor is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (b) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions and D&O Claims.

"*Chapter 11 Case*" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, bearing the caption In re: WonderWork, Inc., Case No. 16-13607 and pending before the Bankruptcy Court.

"*Charitable Recipients*" means (i) MiracleFeet, and (ii) ReSurge as set forth in each respective Grant Agreement.

"*Claim*" means any claim within the meaning of section 101(5) of the Bankruptcy Code.

"*Claim No.*" means the number ascribed a proof of Claim filed in the Chapter 11 Case on the Estate's claim register maintained by the Clerk of the Bankruptcy Court.

"*Class*" means a Class of Claims described in Article III of the Plan.

"*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"*Confirmation Date*" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider the Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the Order of the Court: (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code; (ii) approving the Sale consistent with the terms of the Purchase Agreement pursuant to sections 105, 363 and/or 1129 of the Bankruptcy Code and Bankruptcy Rule 6004; (iii) approving the Grant consistent with the terms and conditions of the Grant Agreements; (iv) approving the HMS Settlement Agreement pursuant to Bankruptcy Rule 9019, and (v) granting such other relief as may be appropriate.

"*Creditor*" means any holder of a Claim against the Estate or holder of any Claim against property of the Estate.

"*D&O Claim*" means a claim or Cause of Action against any present or former director or officer of the Debtor based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case.

"*D&O Insurance Policy*" means those director and officer liability insurance policies of the Debtor that have not yet expired or lapsed as of the Effective Date.

"*Debtor*" means WonderWork, Inc., including in its former capacity as debtor in possession in the Chapter 11 Case, which ended on November 22, 2017 upon the appointment of the Trustee.

"*Disclosure Statement*" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be

4

amended, supplemented, or modified from time to time and as approved by the
Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"*Disputed*" means, with respect to any Claim, any Claim that is (a) disputed
under this Plan (including the Disputed Claims identified in the Plan Supplement) or
subject to a timely objection and/or request for estimation in accordance with section
502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or
request for estimation has not been withdrawn or determined by a Final Order,
(b) improperly asserted, by the untimely or otherwise improper filing of a Proof of
Claim as required by order of the Bankruptcy Court or (c) that is the subject of a Filed
objection or adversary proceeding seeking to disallow such Claim pursuant to section
502(d) of the Bankruptcy Code.  A Claim or Administrative Expense Claim that is
Disputed as to its amount shall not be Allowed in any amount for purposes of
Distribution until it is no longer a Disputed Claim.

"*Disputed Claims Reserve*" means the reserve to be established and maintained by
the Plan Administrator described in Section 8.1 of the Plan. For the avoidance of doubt,
the amount retained on account of a Disputed Claim shall be the lesser of the amount of
such Claim as (i) asserted by the holder of such Claim against the Debtor, or
(ii) estimated for the purposes of the Plan by Final Order of the Bankruptcy Court;
provided, however, the Trustee shall not be required to retain any amount on account
of contingent or unliquidated Claims.  Any portion of a Disputed Claim that is
disallowed by Final Order of the Bankruptcy Court, or waived by the holder of such
Claim, shall be distributed in accordance with the terms and conditions of the Plan.

"*Distribution(s)*" means the distribution or distributions on account of Allowed
Claims to be made by the Plan Administrator in accordance with the terms and
conditions of the Plan.

"*Effective Date*" means the first Business Day upon which each of the conditions
in Section 10.2 of the Plan have been satisfied or waived pursuant to Section 10.3 of the
Plan.

"*Estate*" means the Chapter 11 Estate of the Debtor created by section 541 of the
Bankruptcy Code upon the commencement of the Chapter 11 Case.

"*Excess Plan Distribution Fund*" means any Available Cash remaining in the Plan
Distribution Fund, if any, after payment in full of all Allowed Administrative Claims,
Allowed Professional Fees, Allowed Secured Claims, Allowed Priority Claims and
Allowed General Unsecured Claims as provided in the Plan.

"*Executory Contract*" means any executory contract or unexpired lease subject to
section 365 of the Bankruptcy Code, between the Debtor and any other Person.

"*Exculpated Claim*" means any claim, cause of action, obligation or liability
asserted or assertable against the Exculpated Parties, related to any act or omission in
connection with, relating to, or arising out of the Chapter 11 Case and any proceeding
therein;  including, without limitation, the Trustee's administration of the Estate, the
transfer of any Asset of the Estate, the formulation, preparation, dissemination,

negotiation and promulgation of this Plan and the accompanying Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, or the pursuit of confirmation of this Plan or the administration and implementation of this Plan; provided, however, Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud.

"*Exculpated Parties*" means the Trustee, and the Trustee's retained Professional Persons, including:  (i) Togut, Segal & Segal LLP, (ii) Garfunkel Wild, P.C., (iii) CR3 Partners, LLP, (iv) Verdolino & Lowey, P.C., and (v) Gordon Brothers Asset Advisors, LLC.

"*Final Order*" means shall mean an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket of the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (a) the time to appeal or seek review or rehearing has expired, and a notice of appeal or request for review or rehearing is not pending, or (b) any appeal that has been taken has been finally determined or dismissed on grounds that affirm the order or judgment, it being further provided that if such appeal or request for a rehearing is pending, that if such order is not stayed pending appeal or rehearing pursuant to Fed. R. Civ. P. 62 as incorporated by Bankruptcy Rule 7062, the order shall be deemed to be a Final Order.  The possibility that a motion made under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may relate to such order or judgment shall not, by itself, cause such order or judgment to not be a Final Order.

"*General Unsecured Claim*" means a Claim against the Debtor that is not an Administrative Expense Claim, Priority Tax Claim, Professional Fee Claim, Secured Claim, or Other Priority Claim.

"*Grant*" means, collectively, the grants of a portion of the Restricted Funds to the Charitable Recipients as specified in the Grant Agreements and approved by the NYSAG in accordance with applicable law governing charities.

"*Grant Agreements*" means, collectively, those certain grant agreements by and among the Trustee and Charitable Recipients, as approved by the NYSAG, and as the same may be amended or modified and filed with the Bankruptcy Court as part of a Plan Supplement

"*HMS*" means Help Me See, Inc., a  Delaware not-for-profit organization.

"*HMS Settlement Agreement*" means the settlement agreement entered into by and between the HMS, on the one hand, and the Trustee, on the other hand, dated April 4, 2018.  A copy of the HMS Settlement Agreement is attached hereto as Exhibit A.

"*HMS Settlement Restricted Funds*" means that portion of the Restricted Funds to be transferred to HMS on account of the HMS General Unsecured Claim as set forth in the HMS Settlement Agreement.

"*HMS General Unsecured Claim*" means the General Unsecured Claim of HMS (Claim No. 17) as Allowed under the Plan in the amount of $16,054,348 in accordance with the terms and conditions of the HMS Settlement Agreement.

"*HMS Substantial Contribution Claim*" means the Claim of HMS for substantial contribution pursuant to sections 503(b)(3)(D) and 503(b)(4). The HMS Substantial Contribution Claim is not Allowed under the Plan and shall be subject to allowance by the Bankruptcy Court following an application by HMS.

"*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Litigation Trust*" means the trust to be created on the Effective Date in accordance with Section 9 of the Plan and the Litigation Trust Agreement for the benefit of holders of Litigation Trust Interests.

"*Litigation Trust Agreement*" means the agreement by and between the Trustee and the Litigation Trustee establishing the terms and conditions of the Litigation Trust, substantially in the form as contained in the Plan Supplement and reasonably acceptable to HMS.

"*Litigation Trust Assets*" means the Litigation Trust Claims, the Litigation Trust Funds, any and all books and records of the Debtor relating to the Litigation Trust Claims, all attorney-client and other privileges held by the Debtor relating to the Litigation Trust Claims (other than rights of attorney-client privilege independently held by the Trustee), and any other assets acquired by the Litigation Trust after the Effective Date or pursuant to the Plan, including any Excess Plan Distribution Fund.

"*Litigation Trust Claims*" means all Avoidance Actions, all D&O Claims, and any other Causes of Action; including, without limitation, the Causes of Action to be identified in the Plan Supplement. Failure to list a Litigation Trust Claim in the Plan Supplement shall not constitute a waiver or release of such Litigation Claim.

"*Litigation Trust Election*" means the election by a General Unsecured Creditor to receive Litigation Trust Interests in exchange for such General Unsecured Creditor's agreement to contribute Litigation Trust Funds to the Litigation Trust in accordance with the terms and conditions of the Litigation Trust Agreement.

"*Litigation Trust Funds*" means the Cash contributed by HMS and other holders of the Litigation Trust Interests to fund the Litigation Trust. The initial amount of Litigation Trust Funds to be transferred on the Effective Date by HMS and any other holders of Litigation Trust Interests shall be set forth in the Confirmation Order.

"*Litigation Trust Interests*" means the beneficial interests in the Litigation Trust to be deemed distributed to holders of Allowed General Unsecured Claims on the terms and conditions as set forth in this Plan and the Litigation Trust Agreement.

"*Litigation Trustee*" means the Person, solely in his or her capacity as Litigation Trustee, to be selected by HMS in accordance with the HMS Settlement Agreement and

to be identified as part of the Plan Supplement filed in accordance with this Plan and approved prior to the Effective Date by the Bankruptcy Court to administer the Litigation Trust in accordance with the terms and provisions of Article 9 hereof and the Litigation Trust Agreement.

*"MiracleFeet"* means MiracleFeet, a North Carolina not-for-profit organization.

*"Mullaney"* means Brian Mullaney, the former Chief Executive Officer and a former director of the Debtor.

*"Mullaney Claim"* means any Claim asserted by Mullaney.

*"Net HMS Claim"* means the HMS General Unsecured Claim, plus any amounts paid by HMS to satisfy the Unsecured Claim Distribution Shortfall (as defined in the HMS Settlement Agreement) and less the HMS Settlement Restricted Funds transferred to HMS under the terms and conditions of the HMS Settlement Agreement. As set forth in Section 4.3 of the Plan, HMS shall receive Litigation Trust Interests in respect of the Net HMS Claim but shall not receive any Distribution from the Plan Distribution Fund on account thereof.

*"NYSAG"* means the Office of the Attorney General of the State of New York, Charities Bureau.

*"Other Priority Claim"* means any Claim, other than an Administrative Expense Claim, a Secured Claim, a Priority Tax Claim, or a General Unsecured Claim.

*"Oversight Committee"* means the committee that shall be appointed, and function after the Effective Date, in accordance with Section 10.7 of the Plan and the Litigation Trust Agreement, and the initial members of which shall be identified in the Confirmation Order.

*"Person"* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit (or agency or political subdivision thereof), or other entity.

*"Petition Date"* means December 29, 2016, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

*"Plan"* means this Chapter 11 plan of liquidation (including all exhibits and schedules hereto), as it may be modified, amended, or supplemented from time to time.

*"Plan Administrator"* means, Stephen S. Gray, solely in his capacity as Plan Administrator and approved by the Bankruptcy Court pursuant to the Confirmation Order, or, after the Effective Date, such other Person designated to administer the Plan in accordance with terms and conditions set forth herein.

*"Plan Distribution Fund"* means any and all Available Cash on hand as of the Effective Date and the proceeds of the liquidation or other disposition of the remaining Assets of the Debtor, excluding Litigation Trust Assets.

"*Plan Supplement*" means the compilation of documents, if any, including any exhibits to the Plan not included herewith, that the Debtor shall file with the Bankruptcy Court ten (10) days prior to the voting deadline for the Plan (or such later date as approved by the Bankruptcy Court), which documents and exhibits, to the extent they may affect the rights, claims and obigations of HMS or the Litigation Trust, shall be reasonably acceptable to HMS.

"*Priority Claim*" means a Claim that is either a Priority Tax Claim or Other Priority Claim.

"*Priority Tax Claim*" means any Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

"*Professional Fee Claims*" means Claims of Professional Persons or any other Person for compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331, 363 of the Bankruptcy Code for services rendered from Petition Date through the Confirmation Date.

"*Professional Fee Claims Bar Date*" means 4:00 p.m. (prevailing Eastern time) on the date that is thirty (30) days after the Confirmation Date.

"*Professional Persons*" means all attorneys, accountants, financial advisors, investment bankers, appraisers, consultants, and other professionals retained in the Chapter 11 Case by a Final Order and who is to be compensated by the Estate in accordance with Bankruptcy Court entered under sections 327, 328, 330, 331, 363 or 1103 of the Bankruptcy Code.

"*Pro Rata*" means, with respect to any Distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum amount of all Disputed Claims in such Class for which Cash must be set aside in the Disputed Claim Reserve to be established under the Plan.

"*Purchase Agreement*" means, collectively, those certain Purchase and Sale Agreements by and among the Trustee and Purchasers as the same may be amended or modified and filed with the Bankruptcy Court as part of a Plan Supplement.

"*Purchasers*" mean (i) MiracleFeet, and (ii) ReSurge as set forth in each respective Purchase Agreement.

"*Released Parties*" means each of the following in its capacity as such, and only in its capacity as such:  (a) the Debtor;  (b) the Trustee;  (b) the Trustee's retained Professional Persons;  (c) HMS;  and (d) the Thompson Family Foundation.

"*Restricted Funds*" means the Cash of the Debtor that is subject to any restriction on purpose or expenditure under the terms of an applicable "gift instrument" as that term is defined in the New York Prudent Management of Institutional Funds Act, New York Not-for-Profit Corporation Law section 551(c) and/or the identical provision of

the Uniform Prudent Management of Institutional Funds Act of Delaware, Delaware Code Title 12, section 4702(3).

"*Resurge*" means ReSurge International, a California not-for-profit organization.

"*Sale*" means the sales of the Acquired Assets by the Trustee or the Plan Administrator, as the case may be, to the Purchasers pursuant to the terms and conditions of the Purchase Agreement as approved and authorized by the Confirmation Order.

"*Sale Closing Date*" means the date upon which the Sale is consummated as provided for and in accordance with the terms and conditions of the Purchase Agreement.

"*Scheduled*" means, with respect to any Claim, that such Claim is listed on the Schedules.

"*Schedules*" means the Schedules of Assets and Liabilities and Statements of Financial Affairs filed with the Court in the Chapter 11 Case, as amended from time to time in accordance with Bankruptcy Rule 1009.

"*Secured Claim*" means a Claim against the Debtor to the extent such Claim is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest, that has been perfected properly as required by applicable law and is not otherwise avoidable by the Trustee on behalf of the Debtor's Estate or any other Person, but only to the extent of the value of the Debtor's interests in such property determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

"*Thompson Family Foundation*" means The William S. and Nancy E. Thompson Foundation.

"*Thompson Family Foundation Claim*" means the General Unsecured Claim (Claim No. 19) in the amount of $7,987,808 of the Thompson Family Foundation.

"*Thompson Family Foundation Settlement*" means the settlement between the Trustee and the Thompson Family Foundation as provided herein and to be approved on the terms and conditions of this Plan.  A copy of the Thompson Family Foundation Settlement shall be included as part of the Plan Supplement to filed in accordance with the terms and conditions of this Plan.

"*Trustee*" means Stephen S. Gray, not individually but solely in his capacity as Chapter 11 Trustee of the Debtor's Estate.

"*Unimpaired*" means, with respect to a Class of Claims, that such Class is not Impaired.

"*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of New York.

"*U.S. Trustee Fees*" means all fees and charges assessed against the Estate under section 1930 of Title 28 of the United States Code, and interest, if any, for delinquent quarterly fees pursuant to section 3717 of Title 31 of the United States Code.

## ARTICLE II.
### TREATMENT OF NON-CLASSIFIED CLAIMS

Section 2.1.    <u>Non-Classification</u>.  As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and Professional Fee Claims are not classified for purposes of voting on or receiving Distributions under the Plan.  All such Claims are instead treated separately in accordance with the terms and conditions set forth in this Article II.

Section 2.2.    <u>Administrative Expense Claims and Statutory Fees</u>.  Except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment (including HMS in respect of the HMS Substantial Contribution Claim), each holder of an Allowed Administrative Expense Claim (other than Administrative Expense Claims that have already been satisfied prior to the Effective Date in the ordinary course of business or prosecute to Final Order of the Bankruptcy Court) shall receive Cash from the Plan Distribution Fund in an amount equal to such holder's Allowed Administrative Expense Claim on the Effective Date, or as soon as practicable after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim;  <u>provided</u>, <u>however</u>, the Plan Administrator shall be responsible for the satisfaction of United States Trustee Fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 from the Effective Date through the entry of a final decree closing, dismissal of, or conversion of the Chapter 11 Case;  <u>provided</u>, <u>further</u>, under the HMS Settlement Agreement, HMS has agreed that any HMS Substantial Contribution Claim, to the extent allowed by the Bankruptcy Court, (i) shall not receive any payment from the Plan Distribution Fund, and (ii) shall receive a Litigation Trust Interest which will be subordinated to other holders of Litigation Trust Interests and only receive a distribution on account of such Litigation Trust Interest after all other holders of Litigation Trust Interests have been paid in full pursuant to the terms and conditions of the Litigation Trust Agreement.

Each holder of an Administrative Expense Claim is required to file a proof of Administrative Expense Claim within thirty (30) days after the Effective Date.  Nothing herein extends any Bar Date previously established by the Bankruptcy Court.  Any request for payment of an Administrative Expense Claim that is not timely filed as set forth above shall be forever barred, and holders of such Claims shall not be able to assert such Claims in any manner against the Debtor, the Estate, the Litigation Trust, the Litigation Trustee, the Trustee or the Plan Administrator or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, or representatives.

Section 2.3.    <u>Priority Tax Claims.</u>    Except    to    the    extent    that    the    Plan Administrator determines to make payments to the holder of a Priority Tax Claim in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code, or the holder of an Allowed Priority Tax Claim has been satisfied prior to the Effective Date or agrees to a different treatment, the Plan Administrator shall pay to each holder of an

Allowed Priority Tax Claim, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon as is practicable thereafter, with interest as may be required by the Bankruptcy Code and provided under applicable non-bankruptcy law.

Section 2.4.    Professional Fee Claims.    All Persons and Entities seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Confirmation Date under sections 330 or 331 of the Bankruptcy Code (a) shall, except to the extent such fees have previously been approved by a Final Order, file their respective applications for allowance of their Professional Fee Claim by not later than the Professional Fee Claims Bar Date or such other date as may be fixed by the Bankruptcy Court, and (b) to the extent granted, the Allowed Professional Fee Claim shall be paid by the Plan Administrator in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court, first from the Allocated Restricted Funds and thereafter from the Plan Distribution Fund:  (i) on the date upon which such Professional Fee Claim becomes an Allowed Claim or as soon thereafter as is practicable;  (ii) upon such terms as may be mutually agreed upon between the holder of an Allowed Professional Fee Claim and the Plan Administrator, or (iii) in accordance with the terms and conditions of any applicable order entered by the Bankruptcy Court.

## ARTICLE III.
### CLASSIFICATION OF CLAIMS

Other than Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims, Claims are classified for all purposes, including voting, Confirmation and Distributions, as set forth below:

| Class I | Allowed Secured Claims | Unimpaired/Deemed to Accept |
|---|---|---|
| Class II | Allowed Other Priority Claims | Unimpaired/Deemed to Accept |
| Class III | Allowed HMS General Unsecured Claim | Impaired/ Entitled to Vote to Accept or Reject the Plan |
| Class IV | Allowed General Unsecured Claims | Impaired/Entitled to Vote to Accept or Reject the Plan |

## ARTICLE IV.
### TREATMENT OF CLAIMS

Section 4.1.    Class I:  Secured Claims.

(a)    Classification.  Class I consists of Allowed Secured Claims.

(b)    <u>Treatment</u>.  Each holder of an Allowed Secured Claim, in full and final satisfaction, release and settlement of such Claim, shall receive one of the following alternative treatments, at the election of the Plan Administrator:  (a) payment in full in Available Cash from the Plan Distribution Fund on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date the Claim becomes an Allowed Claim;  (b) the legal, equitable and contractual rights to which such Claim entitles the holder, unaltered by the Plan;  (c) the treatment described in section 1124(2) of the Bankruptcy Code;  or (d) the possession of all collateral securing such Claim, without representation or warranty by, or recourse against the Estate.  To the extent that the value of the Collateral securing any Allowed Secured Claim is less than the amount of such Allowed Secured Claim, the undersecured portion of such Claim shall be treated for all purposes under the Plan as a General Unsecured Claim in Class IV and shall be classified as such.

(c)    <u>Voting</u>.  Class I is Unimpaired.  Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

Section 4.2.    <u>Class II:  Other Priority Claims.</u>

(a)    <u>Classification</u>.  Class II consists of Allowed Other Priority Claims.

(b)    <u>Treatment</u>.  After the payment of any Allowed Secured Claims, and except to the extent that a holder of an Allowed Other Priority Claim has been satisfied prior to the Effective Date or agrees to a different treatment, the Plan Administrator shall pay to each holder of an Allowed Other Priority Claim, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Available Cash from the Plan Distribution Fund in an amount equal to such Allowed Other Priority Claim on the later to occur of (a) the Effective Date or (b) the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as is practicable thereafter.

(c)    <u>Voting</u>.  Class II is Unimpaired.  Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

Section 4.3.    <u>Class III:  HMS General Unsecured Claim.</u>

(a)    <u>Classification</u>.  Class III consists of the Allowed HMS General Unsecured Claim.

13

(b)    Treatment. In accordance with the HMS Settlement Agreement, HMS has agreed to waive its right to any Distribution from the Plan Distribution Fund on account of the Allowed HMS General Unsecured Claim, and will accept on the Effective Date in full and final settlement of its Allowed HMS General Unsecured Claim, the HMS Settlement Restricted Funds plus Litigation Trust Interests in respect of the Net HMS Claim, provided, however, in no case shall HMS receive an amount on account of its Litigation Trust Interests in excess of the Net HMS Claim (except in respect of any separate Litigation Trust Interest to which HMS may be entitled on account of the HMS Substantial Contribution Claim).

(c)    Voting.  Class III is Impaired.  The holder of the Allowed HMS General Unsecured Claim is entitled to vote to accept or reject the Plan.

Section 4.4.    Class IV:  General Unsecured Claims.

(a)    Classification.  Class IV consists of the Allowed General Unsecured Claims against the Debtor other than the HMS General Unsecured Claim.

(b)    Treatment.  After the payment of any Allowed Administrative Expense Claims, Allowed Professional Fees, Allowed Secured Claims and Allowed Priority Claims, on the later to occur of (a) the Effective Date or (b) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon as is practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, release and settlement of such Allowed Claim, its Pro Rata share of Available Cash from the Plan Distribution Fund in an amount up to, but not to exceed, its Allowed General Unsecured Claim; provided, however, in accordance with the Thompson Family Foundation Settlement, the Thompson Family Foundation has agreed to waive its right to (i) receive any Distribution from the Plan Distribution Fund on account of the Thompson Family Foundation Claim, or (ii) acquire a Litigation Trust Interest.

In addition to receiving its Pro Rata Share of Available Cash from the Plan Distribution Fund on the Effective Date, each holder of an Allowed General Unsecured Claim shall be eligible to make the Litigation Trust Election as set forth in the Litigation Trust Agreement and described more fully in Section 9.5 of this Plan;  provided, however, holders of Disputed General Unsecured Claims shall not be eligible to make the Litigation Trust Election.  Any holder of an Allowed General Unsecured Claim that makes the Litigation Trust Election shall acquire a Litigation Trust Interest in accordance with the terms and conditions of this Plan and the Litigation Trust Agreement;  provided, however, in no case shall a holder of an Allowed General Unsecured Claim receive an amount on account of its General Unsecured Claim and Litigation Trust Interest in excess of its Allowed General Unsecured Claim.

(c)    Voting.  Class IV is Impaired.  Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

## ARTICLE V.
### IMPLEMENTATION OF THE PLAN

Section 5.1.    <u>Implementation of the Plan</u>.  Following the Effective Date, the Plan will be implemented by the Plan Administrator in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

Section 5.2.    <u>Sale of Acquired Assets</u>.  The Confirmation Order shall authorize the private Sale and transfer of the Acquired Assets to the Purchasers in accordance with the terms of the Purchase Agreement pursuant to sections 363, 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141, 1145 and 1146(a) of the Bankruptcy Code and sections 510 and 511 of the New York Not-For-Profit Corporation Law (to the extent applicable), free and clear of all liens, Claims, interests or encumbrances except as otherwise set forth in the Purchase Agreement.  Upon Confirmation, the Trustee shall be authorized to take any and all actions necessary to consummate the Sale.  The Confirmation Order shall also approve the Grant of a portion of the Restricted Funds to the Charitable Recipients in accordance with applicable law and on the terms and conditions as set forth in the Grant Agreements.

Section 5.3.    <u>HMS Settlement Agreement.</u>  The Confirmation Order shall approve the HMS Settlement Agreement that, among other things, provides for:  (a) a waiver of HMS's right to receive any Distribution from the Plan Distribution Fund under this Plan on account of its Allowed HMS General Unsecured Claim;  (b) HMS to receive on the Effective Date, as approved by the NYSAG, approximately $10 million in Restricted Funds to HMS1;  (c) a transfer by HMS of $100,000 to fund the Litigation Trust, and (d) the right of HMS to a Litigation Trust Interest in respect of the Net HMS Claim, in accordance with the Litigation Trust Agreement.  The complete terms of the compromise and settlement agreed to by, and between, the Trustee and HMS are set forth in the HMS Settlement Agreement and are fully incorporated herein by reference.

Section 5.4.    <u>Thompson Family Foundation Settlement</u>.  The Confirmation Order shall approve the Thompson Family Foundation Settlement that, among other things, provides for the waiver of the Thompson Family Foundation's right to (i) receive any Distribution under the Plan on account of the Thompson Family Foundation Claim, or (ii) make the Litigation Trust Election in accordance with the Litigation Trust Agreement.

Section 5.5.    <u>Plan Funding</u>.  On the Effective Date, the Trustee shall transfer the Litigation Trust Assets to the Litigation Trust and all remaining Assets of the Estate  to the Plan Distribution Fund.  The funds utilized to make Distributions from the Plan Distribution Fund have been or will be generated from, among other things, Available Cash on hand, including the proceeds of the Sale and any payment from HMS pursuant to the terms and conditions of the HMS Settlement Agreement, and the proceeds of the

---

[1]  In an amount to be adjusted per the HMS Settlement depending on whether there is "Unsecured Claim Distribution Shortfall" as that term is defined in the HMS Settlement Agreement.

liquidation or other disposition of the remaining Assets of the Debtor, excluding Litigation Trust Assets.

Section 5.6.    Liquidation of Remaining Assets.  From and after the Effective Date, except as otherwise expressly provided herein, the Plan Administrator may, without further approval of the Bankruptcy Court, use, sell at public or private sale, assign, transfer, or otherwise dispose of any remaining Assets and convert same to Cash to be Distributed in accordance with the terms of this Plan.

Section 5.7.    Deemed Dissolution Under Applicable Nonbankruptcy Law.  The Confirmation Order will provide that, upon the date a final decree is entered in the Chapter 11 Case, the Debtor will be deemed dissolved under applicable nonbankruptcy law without further Order of the Court or any other court.

Section 5.8.    Corporate Action.  On, and after, the Effective Date, the appointment of the Plan Administrator, and any and all other matters provided for under the Plan involving corporate action by the Debtor, the Estate, or the Trustee including, without limitation, the transfer of management responsibilities of the Debtor from the Trustee to the Plan Administrator, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable law, without any requirement of further action by the Trustee.

On the Effective Date, the Plan Administrator shall be authorized to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor and the post-Confirmation Estate, including, without limitation, the Litigation Trust Agreement. Upon the entry of a final decree in this Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Plan Administrator on behalf of the Estate may take any appropriate or necessary action to dissolve under applicable law.  From and after the Effective Date, the Plan Administrator or the Trustee, as applicable, shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business;  provided, further, upon the Confirmation Date, the Plan Administrator shall not accept any further donations made to or received by the Debtor.

Section 5.9.    Powers and Obligations of the Plan Administrator.

(a)      The Confirmation Order shall provide for the appointment of the Plan Administrator.  The compensation of the Plan Administrator shall be as set forth in the Plan Supplement.   The Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)      The Plan Administrator will act for the Debtor's Estate in a fiduciary capacity for the Estate, subject to the provisions of the Plan.  On the Effective

Date, the Plan Administrator shall succeed to all of the rights of the Trustee with respect to the Assets, other than the Litigation Trust Assets.  The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the rights or obligations:

(i)    to take such steps as may be necessary or otherwise desirable to administer and close any and all of the transactions as may be contemplated by the terms of the Purchase Agreement, the HMS Settlement Agreement or this Plan;

(ii)    to invest Cash and withdraw and make Distributions of Cash to holders of Allowed Claims and pay taxes and other obligations owed by the Estate or incurred by the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(iii)    to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(iv)    to engage attorneys, consultants, agents, employees and all professional persons, to assist with respect to the Plan Administrator's responsibilities;

(v)    to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Debtor and this Estate in accordance with the Plan;

(vi)    to satisfy any liabilities, expenses and other Claims incurred by the Plan Administrator in the ordinary course of business and without further order of the Court;

(vii)    to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's business;

(viii)    to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets in accordance with the terms provided for herein;

(ix)    to coordinate the storage and maintenance of the Debtor's books and records (other than those books and records constituting Litigation Trust Assets and transferred to the Litigation Trust);

(x)    to oversee compliance with the Estate's accounting, finance and reporting obligations;

(xi)    to prepare United States Trustee monthly reports;

(xii)    to oversee the filing of final tax returns, audits and other corporate dissolution documents if as may be required;

(xiii)   to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor;

(xiv)   except as otherwise provided for in the Plan, to object to Claims against the Debtor;

(xv)   except as otherwise provided for in the Plan, to compromise and settle Claims against the Debtor;  provided, however, the Plan Administrator shall not settle any Claim that may adversely affect the Litigation Trust Claims without the prior written consent of the Litigation Trustee.

(xvi)   to implement and/or enforce all provisions of the Plan;

(xvii)  to implement and/or enforce all agreements entered into prior to the Effective Date;

(xviii) perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, enforcing contracts, and asserting claims, defenses, offsets and privileges; and

(xix)   to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the Plan.

Section 5.10.  Resignation, Death or Removal of Plan Administrator.   In the event of the resignation, removal, death or incapacity of the Plan Administrator, the Oversight Committee shall designate another Person to become the Plan Administrator, and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor.   No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors.

Section 5.11.  Litigation Trust Arrangements.  On the Effective Date, the Trustee, Plan Administrator and the Litigation Trustee will enter into the Litigation Trust Agreement pursuant to which the Litigation Trust Assets will be transferred to the Litigation Trust and the Litigation Trust Funds will be advanced to the Litigation Trust.  The Litigation Trustee shall take such actions as may be necessary to implement the Litigation Trust and the terms of the Litigation Trust Agreement in accordance with Article IX of this Plan.  To the extent provided in section 1145 of the Bankruptcy Code and under applicable nonbankruptcy law, the issuance under the Plan of the Litigation Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and the Investment Company Act of 1940, as amended, pursuant to section 7(a) and 7(b) of that Act, and all rules and regulations promulgated under any of the foregoing.

Section 5.12.  Preservation of Causes of Action.  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Litigation Trust may pursue all reserved rights of action, including, without limitation, all Causes of Action including Avoidance

Actions and D&O Claims.  Any Distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Litigation Trustee to pursue and prosecute any and all Causes of Action .  Except as otherwise set forth in the Plan, all Causes of Action shall survive Confirmation of the Plan.

Section 5.13.  <u>Termination of Appeals Relating to HMS</u>.    Promptly following the Effective Date, the Trustee and/or Plan Administrator shall dismiss with prejudice all pending appeals relating to the HMS General Unsecured Claim.

**ARTICLE VI.**
DISTRIBUTIONS AND VOTING

Section 6.1.   <u>Plan Distributions</u>.

(a)      The Plan Administrator shall make Distributions to holders of Allowed Claims in accordance with Article IV of the Plan on, or as soon as reasonably practicable after, the Effective Date.  From time to time, the Plan Administrator shall make Pro Rata Distributions to holders of Allowed Class IV Claims in accordance with Article IV of the Plan.

(b)      Notwithstanding the foregoing Section 6.1(a), the Plan Administrator may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Estate during liquidation, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Plan Administrator and the fees, costs and expenses of all professionals retained by the Plan Administrator, and any taxes imposed in respect of the Assets), (iii) to satisfy other liabilities to which the Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve.  All Distributions to the holders of Allowed Claims shall be made in accordance with the Plan.  The Plan Administrator may withhold from amounts distributable to any Person any and all amounts determined in the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Plan Administrator to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  In the event that a holder of an Allowed Claim does not comply with the Plan Administrators requests in the preceding sentence within ninety (90) days, no Distribution shall be made on account of such Allowed Claim, such holder shall have forfeited its right to Distributions under the Plan, and the Plan Administrator shall reallocate such Distribution for the benefit of all other holders of Allowed Claims as the case maybe, in accordance with the Plan.

Section 6.2.   <u>Address for Delivery of Distributions</u>.  If any Distribution is returned to the Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Plan Administrator is notified of such holder's then current address within ninety (90) days after such Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution,

and the undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

Section 6.3.    Distributions under Twenty-Five Dollars.  The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator on or before twenty (20) days after the Effective Date.  Any such Distributions not subject to a timely request for payment shall be distributed by the Plan Administrator to the other holders of Allowed Claims in accordance with the provisions of the Plan.

Section 6.4.    Time Bar to Cash Payments.Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued within one hundred eighty (180) days of the date of issuance thereof. If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims set forth in the Plan.

Section 6.5.    Distributions to Holders as of the Confirmation Date.  As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  Neither the Trustee, the Plan Administrator, nor the Litigation Trustee, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those holders of record as of the close of business on the Confirmation Date.

Section 6.6.    Abandoned Assets.  Upon the election of the Plan Administrator, with the approval of the Oversight Committee, the Plan Administrator may abandon any Assets, which book value shall not exceed $10,000, without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate.

Section 6.7.    Windup.  After (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, and (c) all Assets not transferred to the Litigation Trust have been reduced to Cash or abandoned, the Plan Administrator shall (i) effect a final Distribution of all Cash remaining (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final Distribution) to holders of Allowed General Unsecured Claims in accordance with the Plan

Section 6.8.    Distribution of Unclaimed Property.  Any Distribution of Assets (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such Distribution shall irrevocably revert to the Estate for re-Distribution in accordance with the Plan.

Section 6.9.    <u>Saturday, Sunday, or Legal Holiday.</u>  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.,

Section 6.10.    <u>Voting of Claims</u>.  Each holder of an Allowed Claim in an Impaired Class (Class III and Class IV) which receives or retains Assets under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the voting to accept or reject the Plan.  Each holder of an Allowed Claim in Class IV shall also be afforded the opportunity to make the Litigation Trust Election, and is entitled to make the Litigation Trust Election whether or not such holder votes to accept or reject the Plan.

## ARTICLE VII.
EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 7.1.    <u>Assumption or Rejection of Executory Contracts</u>.  Effective on the Effective Date, all Executory Contracts are hereby specifically deemed rejected, except for any Executory Contract (a) that has been specifically assumed, or assumed and assigned, by the Debtor or Trustee on or before the Confirmation Date with the approval of the Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to be included as part of the Plan Supplement.

Section 7.2.    <u>Approval of Assumption or Rejection of Executory Contracts</u>. Entry of the Confirmation Order, but subject to the occurrence of the Effective Date, shall constitute (a) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption, or assumption and assignment, of the Executory Contracts assumed, or assumed and assigned, in accordance with Section 7.1 of the Plan, and (b) the approval pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the rejection of the Executory Contracts rejected in accordance with Section 7.1 of the Plan.

Section 7.3.    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Plan</u>.  Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than forty-five (45) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date.  Any such Claims not filed within such time shall be forever barred from assertion against the Estate, and any and all of the Assets of the Estate.

Section 7.4.    <u>Compensation and Benefit Programs</u>.  To the extent not previously terminated, and except as set forth in a schedule to be included in the Plan Supplement, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to its current employees or officers as in effect on the Confirmation Date, including, without

limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Confirmation Date.

Section 7.5.   Insurance Policies. The D&O Insurance Policies and any agreements, documents or instruments relating thereto shall be treated as Executory Contracts of the Debtor under the Plan and the Bankruptcy Code and shall be assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, and shall continue in full force and effect thereafter in accordance with their respective terms.  Continuing obligations of third parties to the Debtor under any D&O Insurance Policies that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties unless otherwise specifically terminated by the Litigation Trust or otherwise by order of Bankruptcy Court.

## ARTICLE VIII.
PROVISIONS FOR RESOLVING AND TREATING CLAIMS

Section 8.1.   Funding of the Disputed Claims Reserve.

(a)      As soon as practicable following the Effective Date, the Disputed Claims Reserve shall be established by the Plan Administrator.  The portion of the Available Cash attributable to Disputed Claims as determined by the Plan Administrator, shall be held by the Plan Administrator in the Disputed Claims Reserve.

(b)      The holder of a Disputed Claim, to the extent it has been determined by Final Order to be an Allowed Claim, shall receive a Distribution from the Disputed Claims Reserve on account of its Disputed Claim in an amount equal to that which it would have been entitled if the portion of its Claim so Allowed had been Allowed as of the Effective Date.  Any remaining amount in the Disputed Claims Reserve attributable to the disallowed portion of a Disputed Claim shall be paid first to HMS in return of any payment funded by HMS on account of such Disputed Claim and second shall be distributed to holders of Allowed Claims in Class IV in accordance with Section 4.4 of the Plan.

(c)      For the purposes of effectuating the Distributions to the holders of Allowed Claims, the Bankruptcy Court may estimate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so estimated shall be deemed the amounts of the Disputed Claims for purposes of Distribution under the Plan.  In lieu of estimating the amount of any Disputed Claim for purposes of allowance and Distribution, the Bankruptcy Court may also estimate the amount to be reserved in the Disputed Claim Reserve for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by agreement in writing by and between the Plan Administrator and the holder of a Disputed Claim.  The amount as determined by the Court or agreed upon by the Plan Administrator and the holder of  a Disputed Claim to be reserved in the Disputed Claim Reserve in respect of

any Disputed Claim  shall constitute a maximum limitation on such Claim under the Plan.

Section 8.2.    <u>Disputed Claims</u>.  Except as otherwise provided herein including Section 9.14, the Plan Administrator shall have the right to object to all Claims on any basis, including those Claims that:  (i) are listed in the Schedules, (ii) are listed therein as disputed, contingent, and/or unliquidated, (iii) are listed therein at a lesser amount than asserted by the respective Creditor, or (iv) are listed therein at for a different category of claim than asserted by the respective Creditor.  Subject to further extension by the Bankruptcy Court, the Plan Administrator may object to (i) the allowance of Class IV Claims up to one hundred eighty (180) days after the Effective Date, (ii) the allowance of Administrative Expense Claims, Priority Claims and Secured Claims up to the later of (A) ninety (90) days after the Effective Date or (B) the deadline for filing an objection established by order of the Bankruptcy Court; <u>provided</u>, <u>however,</u> that an objection to a Claim based on section 502(d) of the Bankruptcy Code may be made at any time in any adversary proceeding against the holder of any relevant Claim.  The filing of a motion to extend the deadline to object to any Claims shall automatically extend such deadline until a Final Order is entered on such motion.  In the event that such motion to extend the deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or thirty (30) days after the Court's entry of an order denying the motion to extend such deadline.  Except as otherwise provided herein including Section 9.14, from and after the Effective Date, the Plan Administrator shall succeed to all of the rights, defenses, offsets, and counterclaims of the Estate in respect of all Claims, and in that capacity shall have the power to prosecute, defend, compromise, settle, and otherwise deal with all such objections, subject to the terms of the Plan; <u>provided</u>, <u>further</u>, the Litigation Trust shall have the exclusive right to object to and resolve the Mullaney Claim.

Section 8.3.    <u>Settlement of Disputed Claims.</u>

(a)    Except as otherwise provided herein including Section 9.14, pursuant to Bankruptcy Rule 9019(b) the Plan Administrator, and/or Litigation Trustee, as applicable, may settle any Disputed Claim (or aggregate of Claims if held by a single Creditor) without notice, a Bankruptcy Court hearing or Bankruptcy Court approval.

(b)    The Plan Administrator shall give notice to the Oversight Committee,  the Litigation Trustee, and HMS of (i) a settlement of any Disputed Class IV Claim (or aggregate of Claims if held by a single Creditor) that results in the Disputed portion of such Disputed Class IV Claim(s) being Allowed in an amount in excess of $10,000, (ii) a settlement of any Disputed Administrative Expense Claims or Priority Claims, or (iii) settlement of any Disputed Secured Claims.  The Oversight Committee, the Litigation Trustee, and/or HMS shall have ten (10) days after service of such notice to object to such settlement.  Any such objection shall be in writing and sent to the Plan Administrator and the settling party.  If no written objection is received by the Plan Administrator and the settling party prior to the expiration of such ten (10) day period, the Plan Administrator and the settling party shall be authorized to enter into the proposed settlement without a hearing or Bankruptcy Court approval.  If a written objection is timely received, the Plan Administrator, the settling party and the objecting

party shall use good-faith efforts to resolve the objection.  If the objection is resolved, the Plan Administrator and the settling party may enter into the proposed settlement (as and to the extent modified by the resolution of the objection) without further notice of hearing or Bankruptcy Court approval;  provided, however, that the Claim of the settling party against the Estate shall not be greater under the proposed settlement than that disclosed in the notice.  Alternatively, the Plan Administrator may seek Bankruptcy Court approval of the proposed settlement upon notice and a hearing.

Section 8.4.    No Distributions Pending Allowance.  Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions shall be made by the Plan Administrator with respect to any portion of any Claim if such Claim or any portion thereof is a Disputed Claim.  In the event and to the extent that a Claim becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive a Distribution in accordance with the terms and conditions of the Plan.

**ARTICLE IX.**
THE LITIGATION TRUST

Section 9.1.    Establishment and Implementation of the Litigation Trust.  On the Effective Date, the Trustee, the Plan Administrator and the Litigation Trustee shall execute the Litigation Trust Agreement and shall take all other steps necessary to establish the Litigation Trust for the benefit of the holders of Litigation Trust Interests in accordance with the terms and conditions of the Plan and the Litigation Trust Agreement.

Section 9.2.    Transfer of Litigation Trust Assets.

(a)    On the Effective Date, the Plan Administrator shall transfer to the Litigation Trust all of the Estate's right, title, and interest in the Litigation Trust Assets, including, without limitation, the Litigation Trust Claims.  Any recoveries on account of the Litigation Trust Assets shall be distributed to holders of Litigation Trust Interests. All Persons necessary shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to and vested in the Litigation Trust in accordance with the terms and conditions of the Litigation Trust Agreement.  For purposes of section 553 of the Bankruptcy Code, the transfer of the Litigation Trust Assets to the Litigation Trust shall not affect the mutuality of obligations which otherwise may have existed prior to the effectuation of such transfer.

(b)    To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Estate and the Litigation Trustee shall be deemed to have been designated as a representative of the Estate, as applicable, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Estate. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the

24

Litigation Trust to be distributed to holders of the Litigation Trust Interests consistent with the terms of this Plan and the Litigation Trust Agreement.

(c)     The Litigation Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtor or Trustee in all pending matters involving Litigation Trust Claims without the need for filing any motion for such relief.

(d)     The Litigation Trust shall also be responsible for, and respond on behalf of the Estate to, any subpoenas and requests for production of documents in connection with Litigation Trust Claims.  To the extent necessary, the Plan Administrator shall provide reasonable cooperation in the response to any such requests for the production of documents.

(e)     Any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) together with all books and records associated with and related to the Litigation Trust Claims shall be transferred to the Litigation Trust and shall vest in the Litigation Trustee on the terms and conditions of the Litigation Trust Agreement.  The Plan Administrator and the Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges.  Privileged communications may be shared among the Litigation Trust and the Oversight Committee without compromising the privileged nature of such communications in accordance with the "common interest" doctrine.

Section 9.3.    Purpose of the Litigation Trust.  The Litigation Trust shall be established for the sole purpose of liquidating the Litigation Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Litigation Trust Agreement may be amended, with the consent of the Litigation Trustee and the Oversight Committee, as applicable, to the extent necessary to maintain the tax status of the Litigation Trust.

Section 9.4.    Funding Expenses of the Litigation Trust.  In accordance with the Litigation Trust Agreement, upon the creation of the Litigation Trust, the Litigation Trust Funds shall be transferred to the Litigation Trust to finance the operations of the Litigation Trust.  On the Effective Date, holders of Litigation Trust Interests shall be required to contribute their allocable share of Litigation Trust Funds to the Litigation Trust.  Following the Effective Date, the holders of the Litigation Trust Interests shall provide any additional Litigation Trust Funds as may be required by the Litigation Trustee to finance the operations of the Litigation Trust in accordance with the Litigation Trust Agreement.

Section 9.5.    The Litigation Trust Election.  Each holder of an Allowed Claim in Class IV shall also have the opportunity to make the Litigation Trust Election and thereby receive Litigation Trust Interests in exchange for such holder's agreement to contribute Litigation Trust Funds to the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

The Ballot provided to holders of Allowed Claims in Class IV will provide the holders of such Claims with the opportunity to make the Litigation Trust Election. All holders of Allowed Claims in Class IV are eligible to make the Litigation Trust Election and may do so whether such holder votes to accept or reject the Plan.

Under the terms of the Litigation Trust Agreement, each holder of an Allowed Claim in Class IV that makes the Litigation Trust Election shall be required to contribute (i) an initial funding amount that is equal to the same percentage of its net claim (*i.e.*, the difference between the Allowed amount of its General Unsecured Claim and any Distribution it receives or is anticipated to receive on account of such Claim under the Plan) as the percentage of the Net HMS Claim contributed by HMS to the Litigation Trust, and (ii) to the extent that the Litigation Trustee determines that the Litigation Trust requires additional Litigation Trust Funds, contribute its Pro Rata share of the amount of such additional funding, calculated based on such holder's proportionate share of Litigation Trust Interests.

**IN CONSIDERING WHETHER TO MAKE THE LITIGATION TRUST ELECTION, HOLDERS OF ALLOWED CLAIMS IN CLASS IV SHOULD BE ADVISED THAT TO THE EXTENT THAT ANY HOLDER OF A LITIGATION TRUST INTEREST FAILS TO MAKE ANY FUNDING CONTRIBUTION REQUIRED BY THE LITIGATION TRUSTEE, IT WILL FORFEIT ITS LITIGATION TRUST INTEREST IN ITS ENTIRETY.**

Section 9.6.    <u>Litigation; Responsibilities of Litigation Trustee.</u>

(a)    In accordance with the Litigation Trust Agreement, the Litigation Trustee in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the Litigation Trust Assets, make timely Distributions, and not unduly prolong the duration of the Litigation Trust. The liquidation of the Litigation Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or Litigation Trust Claims (whether or not such suits are brought in the name of the Litigation Trust), or otherwise. The Litigation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Litigation Trust Assets to Cash and shall be reimbursed in accordance with the provisions of the Litigation Trust Agreement.

(b)    The Litigation Trustee in the exercise of its reasonable business judgment shall have the power to (i) prosecute for the benefit of the Litigation Trust all Claims, rights, and Litigation Trust Claims (whether such suits are brought in the name of the Litigation Trust or otherwise) and (ii) otherwise perform the functions and take the actions provided for or permitted herein or in any other agreement executed by the Litigation Trustee pursuant to the Plan. Any and all proceeds generated from the Litigation Trust Assets shall be the property of the Litigation Trust for the benefit of holders of Litigation Trust Interests (after payment of all expenses of the Litigation Trust).

Section 9.7.    <u>No Liability of Litigation Trust</u>. The Litigation Trust shall have no liability on any Claims or other liabilities of the Debtor, the Trustee, or the Plan

Administrator.  The Litigation Trust shall not be deemed a successor-in-interest of the Debtor other than as specifically set forth in this Plan or the Litigation Trust Agreement.

Section 9.8.   Litigation Trustee.

(a)      Pursuant to this Plan and the Litigation Trust Agreement, the Litigation Trustee shall act in a fiduciary capacity on behalf of the holders of the Litigation Trust Interests.

(b)      The Litigation Trustee shall be entitled to compensation and reimbursement of expenses from the Litigation Trust.  The terms of such compensation shall be set forth in the Plan Supplement.

(c)      On and after the Effective Date, subject to the terms of the Litigation Trust Agreement, the Litigation Trustee may engage such professionals and experts as may be deemed necessary and appropriate by the Litigation Trustee to assist the Litigation Trustee in carrying out the provisions of this Plan and the Litigation Trust Agreement. Subject to the terms of the Litigation Trust Agreement, for services performed from and after the Effective Date, Professionals retained by the Litigation Trustee shall receive compensation and reimbursement of expenses from the Litigation Trust in a manner to be determined by the Litigation Trustee in consultation with the Oversight Committee.

Section 9.9.   Oversight Committee.  The terms of the appointment and authority of the Oversight Committee shall be described and defined in the Litigation Trust Agreement.  The duties and powers of the Oversight Committee shall terminate upon the liquidation of the Litigation Trust.  The Oversight Committee's role shall be to consult with, and review the actions of, the Litigation Trustee, and to perform the functions set forth in the Litigation Trust Agreement.

Section 9.10.   Limitation on Liability of Litigating Trustee and Oversight Committee.

(a)      Neither the Litigating Trustee, the Oversight Committee, their respective members, designees or professionals, nor any duly designated agent or representative of the Litigating Trustee or the Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of such Litigating Trustee or Oversight Committee, nor shall such Litigation Trustee, nor any member of the Oversight Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Litigating Trustee, or as a member of the Oversight Committee, respectively, other than for specific acts or omissions resulting from such Litigating Trustee's or such member's own willful misconduct, gross negligence, or fraud. The Litigating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee and the Oversight Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.

(b)      The Litigation Trust shall indemnify and hold harmless the Litigating Trustee, the Oversight Committee and its members, and all duly designated

agents, professionals and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigating Trust or this Plan or the discharge of their duties under the Litigating Trust Agreement; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud. Persons dealing with the Litigating Trustee shall look only to the Litigating Trust Assets to satisfy any liability incurred by the Litigating Trustee or the Oversight Committee to such person in carrying out the terms of the Litigating Trust Agreement, and neither the Litigating Trustee nor the Oversight Committee (or any member thereof) shall have any personal obligation to satisfy any such liability.

(c)      The Oversight Committee shall have the power and authority to utilize the services of its counsel, which shall be the same as the professionals retained by the Litigation Trustee, as necessary to perform the duties of the Oversight Committee and to authorize and direct such Persons to act on behalf of the Oversight Committee in connection with any matter requiring its attention or action.

Section 9.11.  Distribution; Withholding.  From time to time, in accordance with the terms and conditions of the Litigation Trust Agreement, the Litigation Trustee shall distribute to the holders of the Litigation Trust Interests, all net Cash income plus all net Cash proceeds from the liquidation of the Litigation Trust Assets and/or prosecution of the Litigation Trust Claims; provided, however, that the Litigation Trust may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable administrative expenses (including any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets), (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with the Plan or the Litigation Trust Agreement, and (iv) to fund the operations of the Litigation Trust.  The Litigation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trustee's reasonable discretion, to be required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

Section 9.12.  Non-transferability of Litigation Trust Interests.  Except as provided in the Litigation Trust Agreement, the Litigation Trust Interests may not be transferred or assigned, except by operation of law or by will or the laws of descent and Distribution.

Section 9.13.  Termination.  The Litigation Trust shall be dissolved at such time, and in accordance with the terms, as set forth in the Litigation Trust Agreement.

Section 9.14.  Net Litigation Trust Recovery.  Notwithstanding anything contained herein to the contrary, in the event that a defendant in a litigation brought by the Litigation Trustee for and on behalf of the Litigation Trust (i) is required by a Final

28

Order to make payment to the Litigation Trust and (ii) is permitted by a Final Order to assert a right of setoff under sections 553 of the Bankruptcy Code or applicable non-bankruptcy law against the judgment amount, (A) such defendant shall be obligated to pay only the excess, if any, of the amount of the judgment amount over the setoff, and (B) none of the Litigation Trust or the holders of the Litigation Trust Interests shall be entitled to assert a claim against the Estate or the Plan Administrator with respect to the setoff.

## ARTICLE X.
CONDITIONS PRECEDENT

Section 10.1.  <u>Conditions to Confirmation</u>.  The following conditions are conditions precedent to Confirmation of the Plan unless waived by the Trustee pursuant to Section 10.3 of the Plan:  (i) the Confirmation Order must be in a form and substance reasonably acceptable to the Trustee and HMS, and (ii) the Confirmation Order shall:

(a)    authorize the appointment of all parties appointed under or in accordance with the Plan, including, without limitation, the Plan Administrator, the Litigation Trustee and the Oversight Committee, and direct such parties to perform their obligations under such documents;

(b)    approve in all respects the transactions, agreements, and documents to be effected pursuant to the Plan, including, without limitation, the Litigation Trust Agreement, the Sale, the Grant, the HMS Settlement Agreement and the Thompson Family Foundation Settlement;

(c)    authorize the Plan Administrator, the Litigation Trustee and the Oversight Committee to assume the rights and responsibilities fixed in the Plan and Litigation Trust Agreement;

(d)    approve the exculpatory provisions, releases and injunctions granted and created by the Plan;

(e)    order, find, and decree that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith;

(f)    contain such findings and decrees as required by the terms of, and as set forth in the definition of "Confirmation Order" contained in, the Purchase Agreement;  and

(g)    except as otherwise specifically provided in the Plan, order that nothing herein operates as a discharge, release, exculpation, or waiver of, or establishes any defense or limitation of damages to, any Claim or Cause of Action belonging to the Estate.

Section 10.2.  <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived pursuant to Section 10.3 of the Plan:

(a)      the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with the requirements of Section 10.1 of the Plan, shall have become a Final Order;

(b)      no stay of the Confirmation Order shall then be in effect, unless the Plan shall have been substantially consummated before entry of any stay;

(c)      the Sale Closing Date shall have occurred;

(d)      the Plan Administrator shall have been appointed;

(e)      the Litigation Trust Agreement shall have been executed, the Litigation Trust Assets shall have been transferred to the Litigation Trust, and the Litigation Trustee shall have been appointed;

(f)      the NYSAG shall have approved the transactions contemplated by the Plan including the Sale and the Grant;

(g)      The Effective Date shall have occurred prior to September 30, 2018;

(h)      all actions, documents and agreements necessary to implement the provisions of the Plan, and such actions, documents, and agreements shall have been effected or executed and delivered;  and

(i)      all other actions required by the Plan to occur on or before the Effective Date shall have occurred.

Section 10.3.  <u>Waiver of Conditions</u>.  Any of the conditions set forth in this Article X may be waived by the Trustee, Plan Administrator, or HMS, as applicable, to the extent such waiver does not adversely affect the Distributions hereunder. Notwithstanding the foregoing, only the Trustee and the Purchasers (in respect to each of their Purchase Agreement and Grant Agreement) together can waive the conditions contained in sections 10.1(f) and 10.2(f) above as such conditions are applicable to the Sale and Grant.

## ARTICLE XI.
### MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

Section 11.1.  <u>Modification of Plan:  Generally</u>.  The Trustee and/or the Plan Administrator, as applicable, may alter, amend or modify the Plan pursuant to section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date; provided, however, any alteration, amendment or modification that affects the Litigation Trust or the rights, claims or obligations of HMS shall be reasonably acceptable to HMS.  After such time and prior to substantial consummation of the Plan, the Trustee may, so long as the treatment of holders of Claims under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan;

provided, however, notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or as the Bankruptcy Court shall otherwise order.

Section 11.2.  Revocation or Withdrawal of Plan.  The Trustee reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Trustee revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Estate, or any other Person, or to prejudice in any manner the rights of the Trustee or any Person in any further proceedings involving the Estate (or the Debtor).

## ARTICLE XII.
### RETENTION OF JURISDICTION

Section 12.1.  Exclusive Jurisdiction of the Bankruptcy Court.  Except as otherwise provided for in the Plan, following the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction of the Chapter 11 Case for the following purposes:

(a)     to hear and determine any pending applications for the assumption or rejection of Executory Contracts, and the resulting allowance of Claims against the Debtor;

(b)     to recover all Assets of the Estate, wherever located;

(c)     to hear and determine any issues or disputes relating to the Sale, the Grant, the HMS Settlement Agreement, and/or any other transactions contemplated thereby on or after the Effective Date;

(d)     to determine any adversary proceedings, applications, contested matters and other litigated matters pending on the Effective Date;

(e)     to hear and determine any actions commenced on or after the Effective Date by the Plan Administrator, the Litigation Trustee, or, to the extent applicable, the Oversight Committee, including, but not limited to, the Litigation Trust Claims;

(f)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(g)     to hear and determine objections to or requests for estimation of Claims against the Estate, including any objections to the classification of any Claims, and to allow, disallow and/or estimate Claims, in whole or in part;

(h)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(i)     to issue any appropriate orders in aid of execution of the Plan or to enforce the Confirmation Order;

31

(j)        to hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan or in any order of the Court, including, without limitation, the Confirmation Order;

(k)        to hear and determine all applications for compensation and reimbursement of expenses of Professional Persons;

(l)        to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(m)        to hear and determine other issues presented or arising under the Plan;

(n)        to hear and determine other issues related to the Plan to the extent not inconsistent with the Bankruptcy Code;  and

(o)        to enter a final decree closing the Case.

Section 12.2.  <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, including with respect to the matters set forth above in this Article XIII, shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

**ARTICLE XIII.**
DISCHARGE;  INJUNCTIVE PROVISIONS;  EXCULPATION AND RELEASES

Section 13.1.  <u>Term of Bankruptcy Injunction or Stays.</u>  Subject to the rights of the holders of Allowed Secured Claims under Section 4.1 of the Plan, unless otherwise provided in the Confirmation Order, any injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until this Plan has been fully performed.

Section 13.2.  <u>Discharge</u>. As the Debtor will not engage in business after the Effective Date except as otherwise provided for in the Plan, the Debtor will not obtain a discharge pursuant to section 1141(d) of the Bankruptcy Code.

Section 13.3.  <u>Injunctions</u>

(a)        <u>Injunctions Against Interference with Consummation or Implementation of Plan</u>.  **Except as provided herein, upon the Effective Date all Persons shall be enjoined from commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee that interferes with the consummation and implementation of (i) this Plan, (ii) the Sale, (iii) the Grant (iv) the Litigation Trust, the Litigation Trust Agreement or the Litigation Trust Assets, (v) the HMS Settlement Agreement, or (vi) the transfers, payments and**

32

**Distributions to be made in accordance with the Plan and the Litigation Trust Agreement.**

(b)  Cause of Action Injunction.  **On and after the Effective Date, all Persons (other than the Litigation Trustee or Plan Administrator, as applicable) shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any, Claim, debt, right or Cause of Action that the Plan Administrator, or the Litigation Trust and the Litigation Trustee retains authority to pursue in accordance with the Plan and the Litigation Trust Agreement.**

(c)  Injunction Against Prosecution.  **Except as otherwise specifically provided for by this Plan, as of the Effective Date, all holders of Claims shall be enjoined from taking any of the following actions in respect to any such Claims:**

(i)  **the commencement or continuation of any action or proceedings against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee or their respective property;**

(ii)  **the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee or their respective property;**

(iii)  **the creation, perfection or enforcement of any encumbrance of any kind against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee;  and/or**

(iv)  **the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity to the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee.**

Section 13.4.  Exculpation.  **To the extent consistent with section 1125(e) of the Bankruptcy Code,** except as otherwise specifically provided in this Plan including Section 13.7, **no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, or obligation, cause of action or liability for any Exculpated Claim, and shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  Each Exculpated Party and their respective affiliates, agents, directors, members, managers, officers, officials, employees, advisors and attorneys have, and upon the Effective Date shall be deemed to have, participated in the promulgation of this Plan and in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to this Article XIV;**

provided, however, that nothing in the Plan or the Confirmation Order shall, or shall be deemed to, release or exculpate the Trustee or his retained Professional Persons and representatives with respect to, their obligations or covenants arising from bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts.  Upon the Confirmation Date, creditors will be unable to pursue any Claims that are satisfied, enjoined or subject to exculpation under the Plan, but creditors may pursue Claims or claims that may arise in the future, or pursuant to the Plan or Confirmation Order.

Section 13.5.  Releases.

a) **Releases by the Debtor and its Estate.** Except as otherwise specifically provided in this Plan including Section 13.7, as of the Effective Date, the Trustee, on behalf of the Debtor and its Estate, and any Person or Entity seeking to exercise the rights of the Debtor's Estate, including, without limitation, the Plan Administrator, the Litigation Trust and the Litigation Trustee and any successor to the Debtor or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive and discharge the Released Parties and any of the Released Parties' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, employees, agents, advisory board members, consultants, representatives, attorneys, and financial advisors from any and all Claims, demands, Causes of Action and the like, arising from or related to this Chapter 11 Case or the Debtor and existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise;  provided, however, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Parties in respect of any express contractual obligation of any such party effective from and after the Effective Date; provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court;  provided, further, such release, waiver and discharge shall not in any way limit the rights of the holders of Claims under the terms of the Plan;  provided, further, such release, waiver and discharge shall not extend to the Debtor's current and former officers, directors, principals, employees, agents, advisory board members, consultants, representatives, attorneys, and financial advisors.

b) **Releases by Holders of Claims** Except as otherwise specifically provided in this Plan including Section 13.7, as of the Effective Date, each holder of a Claim against the Debtor, including, but not limited to HMS, shall be deemed to forever release, waive and discharge the Released Parties and any of the Released Parties' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, employees, agents, advisory board members, consultants, representatives, attorneys, and financial advisors from from any and all Claims, demands, Causes of

34

Action and the like, arising from or related to this Chapter 11 Case or the Debtor and existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise; provided, however, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Parties in respect of any express contractual obligation of any such party effective from and after the Effective Date;  provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court; provided, further, such release, waiver and discharge shall not in any way limit the rights of the holders of Claims under the terms of the Plan; provided, further, such release, waiver and discharge shall not extend to the Debtor's current and former officers, directors, principals, employees, agents, advisory board members, consultants, representatives, attorneys, and financial advisors.

Section 13.6.   Indemnification.  The Plan Administrator shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Plan Administrator may incur or sustain in the exercise and performance of any of their respective powers and duties under the Plan, to the full extent permitted by law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result solely from the Plan Administrator's member's fraud, willful misconduct, or gross negligence.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Administrator out of Cash held by the Plan Administrator in the Plan Distribution Fund.  The Plan Administrator shall not be personally liable for this indemnification obligation or the payment of any expense of administering the Plan or any other liability incurred in connection with the Plan, and no Person shall look to the Plan Administrator personally for the payment of any such expense or liability.  This indemnification shall survive the death, resignation or removal, as may be applicable, of the Plan Administrator and shall inure to the benefit of the Plan Administrator's and their respective successors, heirs and assigns, as applicable.

Section 13.7.   Limitation on Exculpations, Injunctions and Release.  Notwithstanding anything to the contrary contained herein, this Plan shall not exculpate or release, or provide injunctive protection to, any Person or Entity identified in the Plan Supplement as a potential defendant to a Cause of Action which shall include, without limitation, all of the Debtor's current and former directors, officers, principals, employees, agents, advisory board members, consultants, representatives, attorneys, financial advisors and insurers.

Section 13.8.   Preservation and Application of Insurance.  The provisions of the Plan, including, without limitation, the injunctive provisions contained in this Article XIII, shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies (and any agreements, documents, or instruments relating

35

thereto) that may cover Claims including D&O Claims, any directors, trustees or officers of the Debtor, or any other Person, other than as expressly set forth herein.

**ARTICLE XIV.**
MISCELLANEOUS PROVISIONS

Section 14.1.  <u>Payment of Statutory Fees</u>.  All outstanding fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date;  <u>provided, however, the Plan Administrator shall be responsible for the satisfaction of United States Trustee Fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 from the Effective Date through the entry of a final decree closing, dismissal of, or conversion of the Chapter 11 Case</u>.

Section 14.2.  <u>Reports</u>.  Until a final decree closing the Chapter 11 Case is entered, the Plan Administrator shall comply with any requisite reporting requirements established pursuant to the guidelines of the U.S. Trustee.

Section 14.3.  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of New York shall govern the construction and implementation of the Plan and all rights and obligations arising under the Plan.

Section 14.4.  <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all instruments issued in connection therewith and Distributions made therefrom, the Plan Administrator shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Persons entitled to receive Distributions hereunder shall, as a condition to receiving such Distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable the Plan Administrator to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  Any Person that fails to comply with any such request of the Plan Administrator within ninety (90) days of any such request, shall not be entitled to participate in any Distribution under the Plan and no such Distribution shall be made on account of any such persons Allowed Claim, and the Plan Administrator shall reallocate such Distribution for the benefit of all other holders of Allowed Claims in accordance with the Plan.

Section 14.5.  <u>Section 1146 Exemption</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan,  or the vesting, transfer, or sale of any real property of the Estate pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and

directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

Section 14.6. <u>Severability</u>. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

Section 14.7. <u>Reservation of Rights</u>. If the Plan is not confirmed for any reason, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full. Any concession reflected or provision contained herein, if any, is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced by such concession.

Section 14.8. <u>Binding Effect; Counterparts</u>. The provisions of the Plan shall bind all holders of Claims against the Estate, whether or not they have accepted the Plan. The Plan may be executed in any number of counterparts and by different parties hereto on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Plan.

Section 14.9. <u>Notices</u>. All notices, requests, and demands to or upon the Trustee, the Plan Administrator, Litigation Trust/Trustee or the Oversight Committee must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or by electronic mail, when received and telephonically confirmed, addressed as follows:

> <u>If to the Trustee, to:</u>
> Stephen S. Gray, as Chapter 11 Trustee
> c/o Togut, Segal & Segal LLP
> Scott Ratner
> One Pennsylvania Plaza, Suite 3335
> New York, New York 10119
> Tel: (212) 594 - 5000
> Fax: (212) 967 - 4258
> Email: SERatner@TeamTogut.com
>
> <u>If to the Plan Administrator, to:</u>
> Stephen S. Gray, as Plan Administrator
> c/o Togut, Segal & Segal LLP
> Scott Ratner
> One Pennsylvania Plaza, Suite 3335
> New York, New York 10119
> Tel: (212) 594 - 5000

Fax: (212) 967 - 4258
Email: SERatner@TeamTogut.com

If to the Oversight Committee, to:
As provided in the Litigation Trust Agreement

If to the Litigation Trust and/or the Litigation Trustee, to:
As provided in the Litigation Trust Agreement

Section 14.10. Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Section 14.11. Plan Controls.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

Date:  August 8, 2018
          New York, New York

By: /s/Stephen S. Gray
Stephen S. Gray,
  Not individually but solely in
  His capacity as Chapter 11 Trustee

TOGUT, SEGAL & SEGAL LLP
*Counsel for the Chapter 11 Trustee*

By: /s/Scott E. Ratner
Albert Togut
Scott E. Ratner
Members of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000