# Exhibit A

## HMS Settlement Agreement

# AGREEMENT AND TERM SHEET OF PROPOSED SETTLEMENT OF HMS CLAIM AGAINST THE ESTATE OF WONDERWORK, INC.

This agreement, dated as of April 4, 2018 (the "Agreement"), sets out the terms and conditions of the settlement (the "Settlement") of the claim of HelpMeSee, Inc ("HMS") against the estate of Wonderwork, Inc. ("Wonderwork" or "Debtor") as agreed to by and between HMS and Stephen Gray, solely in his capacity as chapter 11 trustee ("Trustee") of the estate of Wonderwork:

**Assumptions**:

a.  HMS holds an unsecured claim against the Wonderwork estate in the amount of $16,054,348 (the "HMS Unsecured Claim"). HMS asserts it is also entitled to a claim in excess of $1.5 million for substantial contribution pursuant to Section 503(b)(3)(D) of the Bankruptcy Code. Any such claim as may be allowed by the Bankruptcy Court (the "Substantial Contribution Claim")[1] shall be treated in the manner, and subject to the limitations, as hereinafter set forth.

b.  The Thompson Foundation Impact Loan unsecured claim is in the amount of $7,987,808.

c.  Total Restricted Cash is projected to be $15,860,734[2]. This assumes final approval by the NYS Attorney General Charities Bureau (the "AG") of the Trustee's calculated Restricted Cash balances by designated cause.

d.  The AG will authorize the use of 10% of Restricted Cash – or a projected amount of $1,586,073 – for the payment of the costs of administration (the "Administrative Supplement"), which amount shall be allocated on a proportionate basis to each of the designated causes. The balance of projected Restricted Cash -- $14,274,661 – broken down by designated cause is as follows: (i) Blindness - $6,629,891; (ii) General Surgery - $3,029,982; (iii) Burns - $1,720,528; (iv) Clubfoot - $2,549,696; and (v) Medical Outcome Database - $344,562.

e.  Existing projected Unrestricted Cash is $2,869,596. The sale of the remaining assets (i.e. donor lists, trademarks, intellectual property, but excluding the assets to be transferred to the Creditor Trust (as hereinafter defined) as described in paragraph 6 below) ("Remaining Assets") to charities with missions common to Wonderwork, as approved by the AG (the "Consortium Charities"), will raise another projected $1,230,390 of Unrestricted Cash. Adding to this the Administrative Supplement, total projected Unrestricted Cash will be $5,686,060.

---

[1] HMS reserves all rights to seek allowance of a Substantial Contribution Claim upon appropriate application to the Bankruptcy Court, and the Trustee retains all rights, claims and defenses in respect thereof.
[2] This amount (and the corresponding amounts reflected in paragraph (d)) could increase, the Restricted Cash balances by cause could adjust, and the amount transferred to HMS could increase as well if additional donations of Restricted Cash are collected from and after the date hereof.

1

f.   The AG will approve HMS and the Consortium Charities as appropriate recipients of the Restricted Cash, and based thereon, the Thompson Foundation agrees to waive its right to receive a distribution in respect of its claim.

**Terms of Settlement**

1.   The HMS Unsecured Claim will be allowed in the amount of $16,054,348, and, together with any Substantial Contribution Claim as may be allowed by the Court, will be treated in the manner hereinafter provided.

2.   The Trustee will cause to be transferred to HMS the Blindness, General Surgery and Medical Outcome Database Restricted Cash in the aggregate amount of $10,004,436 ("HMS Transfer"), subject to adjustment as hereinafter set forth if there is an Unsecured Claim Distribution Shortfall (as defined below) ("Adjusted HMS Transfer").

3.   The allowed amount of the HMS Unsecured Claim shall be reduced by the amount of the HMS Transfer or the Adjusted HMS Transfer, as the case may be (the "Net HMS Claim"). However, HMS will waive its right to receive any distribution from the Debtor's estate in respect of the Net HMS Claim, any Substantial Contribution Claim and any and all other claims it may have against the Debtor's estate, whether asserted or unasserted, and will accept in full and final settlement and satisfaction thereof the HMS Transfer or the Adjusted HMS Transfer, as the case may be, plus its Pro Rata Share in the Creditor Trust (each as hereinafter defined).

4.   The Clubfoot and Burns Restricted Cash, with the approval of the AG, will be granted to the Consortium Charities who will also purchase the Remaining Assets (as outlined in Assumption (e) above). The Unrestricted Cash from the sale, together with all other Unrestricted Cash as well as the Administrative Supplement, will be used first to pay allowed administrative and priority claims and thereafter other allowed unsecured claims ("Other Unsecured Claims").

5.   In the event the percentage distribution on account of Other Unsecured Claims falls below the percentage distribution to HMS based on the HMS Transfer or the Adjusted HMS Transfer (as the case may be) (the "Unsecured Claim Distribution Shortfall"), then either, at the election of HMS (i) HMS, with the consent of the Trustee, may seek the approval of the AG to increase the Administrative Supplement by an amount necessary to satisfy the Unsecured Claim Distribution Shortfall (with such increase allocated on a proportionate basis to each of the designated causes), (ii) HMS can retain the full amount of the HMS Transfer and pay the amount of the Unsecured Claim Distribution Shortfall; or (iii) the HMS Transfer shall be reduced by an amount (the "Reduction") sufficient to cause a charity approved by the AG to pay an incremental amount equal to the Unsecured Claim Distribution Shortfall for the transfer of the Remaining Assets and the grant of the amount of the Reduction (collectively, the "Adjustment Options").

6.   All potential causes of action held by the estate (other than claim objections) (collectively the "Creditor Trust Claims"), access to any and all books and records relating to the Creditor Trust Claims, all attorney-client and other privileges held by the Debtor relating to the

2

4808436v.11

Creditor Trust Claims[3], and any remaining Unrestricted Cash after payment in full of all allowed administrative, priority and Other Unsecured Claims, will be transferred to a creditor trust ("Creditor Trust"). HMS will contribute $100,000 to the Creditor Trust to fund, in part, the costs of any litigation by the Creditor Trust as well as the costs of administering the Creditor Trust. The holders of Other Unsecured Claims shall be permitted to acquire an interest in the Creditor Trust by contributing the same percentage of its net claim (i.e. the difference between the allowed amount of its claim and any distribution it receives on account of such claim under the Plan) (a "Net Claim") as the percentage of the Net HMS Claim contributed by HMS (a "Participating Creditor"). (The initial contributions of HMS and each Participating Creditor shall be referred to as the "Initial Contributions"). The percentage interest that each of HMS and any Participating Creditor shall have in the Creditor Trust shall equal the percentage each such creditor's Net Claim bears to the aggregate of the Net Claims of HMS (excluding any Substantial Contribution Claim) and the Participating Creditors ("Pro Rata Share"). In the event additional funding in excess of the Initial Contributions is required to fund the litigation of the Creditor Trust and the costs of administering the Creditor Trust, each of HMS and the Participating Creditors shall be required to contribute their Pro Rata Share, failing which they shall be deemed to have forfeited their interest in the Creditor Trust. HMS and the Participating Creditors shall share in the net proceeds realized and distributed by the Creditor Trust to the extent of their respective Pro Rata Share in the Creditor Trust. After Participating Creditors are paid the full amount of their Net Claims (inclusive of any allowable interest), any remaining proceeds shall be paid to HMS on account of its remaining Net HMS Claim and any allowed Substantial Contribution Claim. To the extent that Participating Creditors and HMS are paid in full (inclusive of any allowable interest), any remaining funds in the Creditor Trust will be donated to charities designated by the Creditor Trust oversight committee with the consent of the AG.

HMS shall have the right to select the trustee of the Creditor Trust who shall be supervised by an oversight committee. The agreement governing the Creditor Trust shall be reasonably acceptable to HMS and the Trustee. Only HMS and any Participating Creditor who holds more than a 5% Pro Rata Share in the Creditor Trust shall be eligible to be a member of the Creditor Trust oversight committee.

7.    Absent the consent of the Trustee, HMS shall have no right to file any objections to any unsecured claims against the estate; provided, however, that absent HMS' consent (which consent shall not be unreasonably withheld), the Trustee shall not settle any such objection in a manner that may adversely affect the Creditor Trust Claims. The Trustee, in fulfilling his fiduciary duty, shall in good faith analyze all claims and object to such claims as may be appropriate, provided that the right to object to the scheduled unsecured claim of Brian Mullaney shall vest in the Creditor Trust.

**Conditions and Other Agreements**

1.    The Settlement shall be incorporated into a plan of liquidation ("Plan") and accompanying disclosure statement ("Disclosure Statement") to be filed by the Trustee (the "Plan"). The terms of the Plan and Disclosure Statement, to the extent they may affect the rights, claims and obligations of HMS, shall be reasonably acceptable to HMS. Subject to

---

[3] No rights of attorney-client privilege independently held by the Trustee will be transferred to the Creditor Trust.

3

4808436v.11

approval of the Disclosure Statement, HMS agrees to vote in favor of the Plan. This Agreement is not and shall not be deemed to be a solicitation of votes for the acceptance of the Plan for the purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise. The Plan shall include customary releases and exculpations.

2. The settlement of the HMS Claim as contemplated hereby shall be conditioned upon the following:

(i) The AG approves: (x) HMS and the Consortium Charities as being appropriate recipients of the Restricted Funds; (y) the sale of the Remaining Assets and the grant of the related Restricted Cash to the Consortium Charities under the terms set forth in the letters of intent previously provided the AG by the Trustee as they may be modified by the Adjustment Options; and (z) the terms of this Settlement;

(ii) The Thompson Foundation waives its right to receive a distribution on account of its claim against the Wonderwork estate and exchanges mutual releases with HMS and the Trustee;

(iii) There are no material changes in the Assumptions underlying this settlement;

(iv) The Consortium Charities are willing to proceed with the purchase of the Related Assets and accept the transfer of the related Restricted Cash under terms outlined in their respective letters of intent;

(v) Bankruptcy Court approval of the Plan including the Settlement; and;

(vi) Consummation of the Plan.

3. This Agreement may be terminated by the Trustee or Help Me See if one of the conditions set forth in section 2 immediately above cannot be achieved or has not occurred by September 30, 2018, in each case due to no fault of such terminating party. In the event of such a termination, this Agreement shall be of no further force and effect, neither party shall have any liability or obligations under this Agreement, and the settlements, admissions and agreements set forth in this Agreement shall be null and void and shall not have any force or effect.

4. The Trustee and HMS shall cooperate in good faith and take commercially reasonable actions as may be necessary or best designed to ensure: (i) that the Assumptions and Conditions of this Settlement (including the allowed Administrative Claim amounts set forth in the "waterfall" forming the basis of this Settlement previously provided to HMS) are realized and satisfied in a timely manner, (ii) that allowed Administrative Claims are reasonably minimized through objections or settlements acceptable to the Trustee, provided that any settlement in respect of Administrative Claims which deviates from the allowed Administrative Claim amounts set forth in the "waterfall" forming the basis of this Settlement previously provided to HMS shall be subject to HMS' consent (which consent shall not be unreasonably withheld) and the Trustee's right to seek Bankruptcy Court approval of any such settlement if he believes HMS' consent to be unreasonably withheld, and (iii) that the Plan and Disclosure Statement are filed with the Bankruptcy Court as soon as reasonably possible and that the

hearing to approve the Disclosure Statement and the hearing to confirm the Plan are scheduled as soon as reasonably possible thereafter in accordance with the Bankruptcy Code and the Bankruptcy Rules and subject to the availability of the Bankruptcy Court.

5. Each signatory to this Agreement hereby states and affirms that he or she has full authority to execute this Agreement on behalf of the party for whom he or she executes the Agreement. This Agreement shall be binding upon, and inure to the benefit of, the Trustee and HMS and their respective successors and assigns.

6. This Agreement constitutes the complete agreement between the Parties with respect to the subject matter herein, and supersedes all other agreements, oral or written, with respect to the subject matter herein.

7. Any amendment or modification to this Agreement, or any waiver to any terms or provisions of this Agreement, shall require the prior written consent of the parties hereto.

8. This Agreement and all claims and causes of action (whether in contract or tort) that may be based upon, arise out of, or relate to this Agreement or the negotiation, execution, termination performance, or non-performance of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice or conflict of laws provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

9. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL ACTIONS AND PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE ON NON-PERFORMANCE THEREOF SHALL BE HEARD AND DETERMINED IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND ANY APPELLATE COURT THEREFROM (OR, IF THE BANKRUPTCY COURT DECLINES TO ACCEPT JURISDICTION OVER A PARTICULAR MATTER, ANY STATE OR FEDERAL COURT WITHIN THE STATE OF NEW YORK).

10. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION, TERMINATION, PERFORMANCE ON NON-PERFORMANCE THEREOF AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

11. This Agreement may be executed in counterparts, all of which comprise one agreement. Facsimiles, emails or like reproductions of signature pages shall be binding as original signature pages.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement, so that this Agreement shall be fully effective and legally binding and enforceable on the day and year first above written.

STEPHEN GRAY, SOLELY IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF THE ESTATE OF WONDERWORK, INC.

By: */s/ Stephen Gray/*
Name: Stephen Gray
Title: Chapter 11 Trustee of WonderWork, Inc.

HELPMESEE, INC.

By: _____
Name: James Ueltschi
Title: Chairman

6

4808436v.11

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement, so that this Agreement shall be fully effective and legally binding and enforceable on the day and year first above written.

        STEPHEN GRAY, SOLELY IN HIS CAPACITY
        AS CHAPTER 11 TRUSTEE OF THE ESTATE
        OF WONDERWORK, INC.

        By:_____
        Name: Stephen Gray
        Title: Chapter 11 Trustee of WonderWork, Inc.


        HELPMESEE, INC.

        By: *[signature]*
        Name: James Ueltschi
        Title: Chairman

6

4808436v.11