UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                    :   Chapter 11
In re:                                              :
                                                    :
         WONDERWORK, INC.,                          :   Case No.:  16-13607 (MKV)
                                                    :
                     Debtor.                        :
                                                    :
--------------------------------------------------------x

## ORDER CONFIRMING AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR THE BANKRUPTCY ESTATE OF WONDERWORK, INC. AS PROPOSED BY THE CHAPTER 11 TRUSTEE

Stephen S. Gray, not individually but solely in his capacity as the Chapter

11 trustee (the "Trustee")[1] for the estate (the "Estate") of WonderWork, Inc.

(the "Debtor"), having filed his Amended Chapter 11 Plan of Liquidation [ECF No. 435]

(the "Plan") in accordance with section 1121 of title 11 of the United States Code (the

"Bankruptcy Code"), together with the Amended Disclosure Statement [ECF No. 436]

(the "Disclosure Statement") and the Plan Supplement [ECF No. 454];  and upon the

Order Approving:   (I) the Disclosure Statement;   (II) the Form and Manner of the

Disclosure Statement Hearing Notice;  (III) Certain Key Dates Relating to Confirmation

of the Plan;   (IV) Procedures for Solicitation;   (V) Form of Notices and Ballot;

---

[1]    All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

(VI) Procedures for Tabulation of Votes;  and (VII) Form and Manner of Notice of the
Confirmation Hearing and Objections to Confirmation of the Plan [ECF No. 437]
(the "Disclosure Statement Approval Order");  and the Court having considered:  the
Declaration of Stephen S. Gray, the Chapter 11 Trustee, in Support of Confirmation of the
Plan [ECF No. 462], HelpMeSee, Inc.'s Statement in Support of the Plan [ECF No. 458] the
Joint Statement of MiracleFeet and Resurge International in Support of Confirmation of
the Plan [ECF No. 461], and the Declaration of Maximilian A. Ferullo Regarding Voting
and Tabulation of Ballots Accepting and Rejecting the Plan [ECF No. 464];  and the Court
having held a hearing on September 12, 2018 pursuant to section 1129 of the Bankruptcy
Code to consider confirmation of the Plan (the "Confirmation Hearing");  and upon the
modifications to the Plan that were addressed and agreed to at the Confirmation Hearing;
and upon the entire record of the Chapter 11 Case, including, without limitation, the
record made at the Confirmation Hearing [ECF No. 472],  and after finding that due,
sufficient and adequate notice of the Confirmation Hearing has been provided to holders
of Claims and to all other parties in interest herein [ECF Nos. 443, 444, 455 and 459];  and
after due deliberation and good and sufficient cause appearing therefor, and in
accordance with the findings and rulings made by the Court on the record of the
Confirmation Hearing, the Court hereby FINDS, DETERMINES, AND CONCLUDES
THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### I.    Jurisdiction

A.    The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157(a) and 1334(a). Venue of these proceedings and the Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and, thus, this Bankruptcy Court has jurisdiction to enter a Final Order with respect thereto.

### II.    Notice

B.    Due, timely, sufficient and adequate notice of the Plan, any modifications to the Plan, the Confirmation Hearing, and the deadlines for filing objections to the Plan has been given to all known holders of Claims and other parties in interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules for this Court (the "Local

3

<u>Bankruptcy Rules</u>") and all other applicable laws, rules and regulations [ECF Nos. 443, 444, 455 and 459].

**III.    Solicitation and Voting Certification**

C.      On August 10, 2018, the Trustee, through his counsel, caused the applicable forms of ballots in the forms approved by the Disclosure Statement Order (the "<u>Ballots</u>") and the Solicitation Packages (as defined in the Disclosure Statement Order) to be served and distributed as required by the Disclosure Statement Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Rules, and all other applicable rules, laws, and regulations applicable to such solicitation, all as set forth in the Affidavit of Service of Denise Cahir regarding service of solicitation materials filed on June 23, 2017 [ECF No. 444].  The Solicitation Packages were transmitted to all holders of Claims entitled to vote on the Plan and sufficient time was prescribed for holders of Claims to accept or reject the Plan.  The transmittal and service of the Solicitation Packages and Ballots was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

D.      Votes on the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, the Local Rules, and all other applicable rules, laws, and regulations applicable to such solicitation.

IV.    **The Plan**

E.    As modified herein, the Plan, and the transactions and agreements contemplated thereunder, are in full compliance with, and therefore satisfy, the requirements of section 1129 of the Bankruptcy Code.

F.    <u>Bankruptcy Rule 3016</u>.    The Plan is dated and identifies the persons submitting it, thereby satisfying Bankruptcy Rule 3016(a).

G.    <u>Plan Compliance with Bankruptcy Code (Bankruptcy Code section 1129(a)(1))</u>.  As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code.

> i.    <u>Proper Classification (Bankruptcy Code sections 1122 and 1123(a)(1))</u>. The classification scheme of Claims in the Plan is reasonable and complies with the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan contains four (4) separate classes of Claims (other than Claims of the type described in section 507(a)(2) of the Bankruptcy Code (Administrative Expense Claims) and section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims) that are addressed in Article II) based on factual and legal differences among the nature and treatment of the Claims. Each Class contains only Claims that are substantially similar to each other.  Thus, valid business, factual

and legal reasons exist for the classification scheme created under the Plan. Additionally, all Claims in any particular Class are sufficiently related to one another such that no "unfair discrimination" exists between the holders of Claims and no holders of Claims will receive more than they are legally entitled to receive for their respective Claims.

ii.    <u>Specified Treatment of Unimpaired Classes (Bankruptcy Code section 1123(a)(2))</u>. As required by section 1123(a)(2), Article III of the Plan specifies that Classes I and II are Unimpaired under the Plan.

iii.    <u>Specified Treatment of Impaired Classes (Bankruptcy Code section 1123(a)(3)</u>. As required by section 1123(a)(3), Article III of the Plan specifies that Classes III and IV are Impaired under the Plan.

iv.    <u>No Discrimination (Bankruptcy Code section 1123(a)(4))</u>. Consistent with section 1123(a)(4) of the Bankruptcy Code, unless a holder of Claim has agreed with the Trustee to a less favorable treatment, the Plan provides the same treatment for each Claim in a particular Class.

v.    <u>Implementation of the Plan (Bankruptcy Code section 1123(a)(5))</u>. As required by section 1123(a)(5) of the Bankruptcy Code, the Plan

provides adequate means for its implementation as required under section 1123(a)(5) through, *inter alia*:  (a) the appointment of the Plan Administrator to complete the wind down of the affairs of the Debtor, liquidate any remaining assets, and ultimately make Distributions to holders of Allowed Claims; (b) the Plan Settlements (defined below) between the Trustee, on the one hand, and, HMS and the Thompson Family Foundation, each respectively, on the other;   (c) the creation of the Litigation Trust to pursue certain Causes of Action and to distribute any funds realized by those actions to those holders of Allowed General Unsecured Claims who have made the Litigation Trust Election; (d) the Sales and Grants involving substantially all of the Debtor's remaining Assets;  and (e) the procedures governing the allowance of Claims and Distributions.

vi.    <u>Nonvoting Equity Securities (Bankruptcy Code section 1123(a)(6))</u>. As a not-for-profit corporation, the Debtor does not have the power to issue non-voting equity securities (or equity securities of any kind).  Accordingly, section 1123(a)(6) is not applicable to the Plan.

vii.    <u>Interests of Claim Holders (Bankruptcy Code section 1123(a)(7))</u>. The Plan is a plan of liquidation, and does not provide for the

appointment of officers, directors, and trustees of the Debtor. The provisions of the Plan regarding the continuing existence of the Debtor and the appointment of a Plan Administrator and Litigation Trustee are consistent with the interests of the Debtor, holders of Claims, relevant parties in interest and public policy.

viii.    <u>Personal Earnings of Individual Debtor (Bankruptcy Code section 1123(a)(8))</u>. As the Debtor is not an individual, Section 1123(a)(8) of the Bankruptcy Code is inapplicable.

ix.    <u>Additional Plan Provisions (Bankruptcy Code section 1123(b))</u>. Consistent with sections 1123(b) of the Bankruptcy Code, the Plan also provides for the:  (a) rejection or assumption of executory contracts and unexpired leases;  (b) settlement of various Claims and controversies;  (c) retention, and transfer to the Litigation Trust, of certain Causes of Action;  and (d) certain release and/or exculpation of certain parties.

H.    <u>Trustee's Compliance with the Bankruptcy Code (Bankruptcy Code section 1129(a)(2))</u>. As required by section 1129(a)(2) of the Bankruptcy Code, the Trustee has complied with the Disclosure Statement Approval Order and all of the applicable provisions of the Bankruptcy Code, including, without limitation, the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.

I.      <u>Plan Proposed in Good Faith (Bankruptcy Code section 1129(a)(3))</u>.  As required by section 1129(a)(3) of the Bankruptcy Code, the Plan has been proposed in good faith and not by any means forbidden by law.

J.      <u>Payments for Services or Costs and Expenses (Bankruptcy Code section 1129(a)(4))</u>.  As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or to be made by the Trustee on behalf of the Estate for services or for costs and expenses in connection with this Chapter 11 Case, other than those incurred in the ordinary course of business, has been approved by this Bankruptcy Court.  Each Professional who holds or asserts a Professional Fee Claim for services provided through the Confirmation Date is required to obtain final Bankruptcy Court approval prior to receiving payment on account of such Claim (to the extent such Claim was not previously approved on a final basis by the Bankruptcy Court).

K.      <u>Best Interests Test (Bankruptcy Code section 1129(a)(7))</u>.  As required by section 1129(a)(7) of the Bankruptcy Code, except to the extent a holder has agreed to different treatment, each holder of a Claim will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Estate were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

L.      <u>Acceptance by Certain Classes (Bankruptcy Code section 1129(a)(8))</u>.  Classes I and II are Unimpaired by the Plan and, therefore, under section 1126(f) of the

Bankruptcy Code, are presumed to have accepted the Plan.  Classes III and IV, the only

Impaired Classes entitled to vote on the Plan, have voted to accept the Plan.  Accordingly,

the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied.

M.    Treatment of Administrative Expense Claims and Priority Claims

(Bankruptcy Code section 1129(a)(9)).    Consistent with section 1129(a)(9) of the

Bankruptcy Code, the Plan provides for the treatment of Allowed Administrative

Expense Claims and Allowed Priority Claims pursuant to sections 507(a) of the

Bankruptcy Code.

N.    Acceptance by an Impaired Class (Bankruptcy Code section 1129(a)(10)).

Both Classes III and IV, the only Impaired Classes under the Plan, voted to accept the

Plan (determined without including any acceptances of the Plan by any "insider" as that

term is defined in section 101(31) of the Bankruptcy Code) and, therefore, section

1129(a)(10) is satisfied.

O.    Feasibility (Bankruptcy Code section 1129(a)(11)).  As required by section

1129(a)(11) of the Bankruptcy Code, it has been established that the Plan is feasible and

that confirmation of the Plan is not likely to be followed by the liquidation or the need

for further financial reorganization of the Estate other than as provided for in the Plan.

P.    Payment of Fees (Bankruptcy Code section 1129(a)(12)).  As required by

section 1129(a)(12) of the Bankruptcy Code, all fees payable pursuant to 28 U.S.C. § 1930

have been paid by the Trustee or shall be paid by the Plan Administrator after the Effective Date.

Q.    Transfers in Compliance with Applicable Non-Bankruptcy Law (Bankruptcy Code section 1129(a)(16). The proposed transfers of all or substantially all of the Debtor's assets in accordance with the provisions of the Plan satisfy the requirements set forth in sections 510 and 511, and otherwise in Article V, of the New York Not-for-Profit Corporation Law (to the extent applicable to the Debtor) and have been approved by the New York State Attorney General, Charities Bureau ("NYSAG"). Accordingly, the Plan satisfies section 1129(a)(16) of the Bankruptcy Code.

R.    Inapplicable Sections.    Sections 1129(a)(6), (13), (14), and (15) of the Bankruptcy Code are not applicable to this Chapter 11 Case.

S.    Principal Purpose of Plan (Bankruptcy Code section 1129(d)). The Court finds that the primary purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended (15 U.S.C. § 77e). No party that is a governmental unit, or any other entity, has requested that the Court decline to confirm the Plan on the ground that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

V.    **The Sales and Grants**

T.    <u>Notice of Sales and Grants.</u>  As evidenced by the affidavits of service filed

with the Court [ECF Nos. 443, 444, 455 and 454], and based on the representations of

counsel at the Confirmation Hearing, (i) proper, timely, adequate and sufficient notice of

the transactions contemplated by the Purchase Agreements and Grant Agreements

between the Trustee, on the one hand, and MiracleFeet and ReSurge International, each

respectively, on the other (collectively, the "<u>Purchasers</u>"), has been provided to such

parties in interest as having been directed by the Bankruptcy Court, the NYSAG, the

Office of the Attorney General of the State of Delaware, and such other persons as

required by the Bankruptcy Court in accordance with sections 102(1), 363, 365, 541, and

1146(c) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, and no

other or further notice of the Transactions is required.

U.    <u>Good Faith Purchasers.</u> Based on the record before the Court in this Case,

each of Purchasers exercised and acted in good faith in the negotiation, purchase and

acceptance of the Purchased Assets and Restricted Funds pursuant to the terms of (and

as defined in) the Purchase Agreements and Grant Agreements and are thus entitle to the

protections afforded by section 363(m) of the Bankruptcy Code and the release and

injunction hereinafter provided.   As the Transactions are non-collusive, fair and

reasonable, conducted in good faith, and have been bargained for and undertaken by the

Trustee and Purchasers at arms' length and without collusion, the Transactions approved

by this Order are not subject to avoidance pursuant to Section 363(n) of the Bankruptcy

Code.

V.    <u>Privacy Policies.</u>    Each of Purchaser's Privacy Policies (as defined and

reflected on Exhibit C to the Purchase Agreements contained in the Plan Supplement) are

consistent with the Debtor's privacy policy regarding the use of "personally identifiable

information" as defined in Section 101(41A) of the Bankruptcy Code**.**

**VI.    The Plan Settlements**

W.    <u>The HMS Settlement</u>.    The HMS Settlement (as defined below) is:  (i) fair

and equitable;  (ii) in the best interest of the Estate, and (iii) falls well above the lowest

point in the range of reasonableness and, thus, satisfies Bankruptcy Rule 9019 and section

1123(b)(3)(A) of the Bankruptcy Code.

X.    <u>Good Faith and Contribution of HMS</u>.  Based on the record before the Court

in this Case, HMS exercised and acted in good faith in the negotiation and settlement of

its claim pursuant to the terms of the Agreement and Term Sheet of Proposed Settlement

of HMS Claim Against the Estate of WonderWork, Inc., dated April 4, 2018, a true and

accurate copy of which is annexed to the Plan as Exhibit A, (the "<u>HMS Settlement</u>") and

the Plan, contributed significant value to the Estate in connection with the HMS

Settlement necessary to the implementation of the Plan, and is thus entitled to the

protections, release and injunction in the HMS Settlement and the Plan.  The settlement

and waivers with respect to HMS and HMS' claims as outlined in the HMS Settlement

are fair and reasonable and have been bargained for and undertaken by the Trustee and HMS at arms' length and without collusion. The terms of the HMS Settlement have been duly approved by the NYSAG.

Y.    The Thompson Family Foundation Settlement.    The Thompson Family Foundation Settlement (as defined below) (together with the HMS Settlement, the "Plan Settlements") is: (i) fair and equitable; (ii) in the best interest of the Estate, and (iii) falls well above the lowest point in the range of reasonableness and, thus, satisfies Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code.

Z.    Good Faith of the Thompson Family Foundation.    Based on the record before the Court in this Case, the Thompson Family Foundation exercised and acted in good faith in the negotiation and settlement of its claim pursuant to the terms of the Mutual Release and Settlement Agreement of the Thompson Family Foundation Claim, dated August 6, 2018 included in the Plan Supplement (the "Thompson Family Foundation Settlement"), contributed significant value to the Estate thereby and is thus entitled to the protections, releases and injunction therein and hereinafter provided. The settlement and waivers with respect to the Thomson Family Foundation Claim as outlined in the Thompson Family Foundation Settlement are fair and reasonable and have been bargained for and undertaken by the Trustee and the Thompson Family Foundation at arms' length and without collusion. The Thompson Family Foundation

Settlement approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

AA.    Finding that the information provided by the Disclosure Statement is adequate and the Plan is confirmable based upon, *inter alia*, all of the foregoing the Court HEREBY ORDERS that:

## CONFIRMATION OF PLAN

1.    The Plan, as modified herein, is hereby confirmed in accordance with section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order and the Trustee, the Plan Administrator or the Litigation Trustee, as applicable, are authorized to implement their provisions and consummate the Plan without any further authorization except as expressly required by the Plan or this Confirmation Order.

2.    The form of Notice of Entry of Confirmation Order, substantially in the form annexed hereto as **Exhibit 1**, is hereby approved.

## IMPLEMENTATION OF THE PLAN

3.    The Plan, the Sales and Grants, the Plan Settlements and all other agreements provided for under the Plan, including all actions, transactions, documents, and instruments referred to therein, contemplated thereunder or to be executed and delivered in connection therewith, and any amendments or modifications thereto in substantial conformity therewith are hereby approved as set forth herein, and the

Trustee, the Plan Administrator or the Litigation Trustee, as applicable, are authorized to enter into and to perform such agreements and transactions provided for in the Plan according to their terms.

4.    The Trustee, Plan Administrator or Litigation Trustee, as applicable, are hereby further authorized to enter into, execute, deliver, file and/or implement any documents and instruments substantially consistent with or incidental to the Plan, the Sales and Grants, the Plan Settlements and any nonmaterial amendments, supplements or modifications thereto as may be appropriate, and to take such other steps and perform such other acts as may be necessary, useful or appropriate to implement and effectuate the Plan and this Confirmation Order, including all other related instruments and documents reasonably necessary to effectuate same, and to satisfy all other conditions precedent to the implementation and effectiveness of the Plan.

5.    Pursuant to section 1141(a) of the Bankruptcy Code, from and after the Effective Date, the Plan shall be binding upon the Debtor, the Trustee, the Liquidation Trustee, the Plan Administrator, the Purchasers, all holders of Claims and any other party in interest in this Chapter 11 Case and their respective successors and assigns, regardless of whether the Claims of such holders or obligations of any party in interest have filed a Proof of Claim in the Chapter 11 Case.

6.    Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the

making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

7.      The Plan Administrator is hereby authorized to make Distributions, and other payments, and to establish, fund, and maintain reserves in accordance with the terms and conditions of the Plan and the agreements contained therein.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued on the terms and conditions of the Plan.

## APPROVAL OF THE SALES AND GRANTS

8.      <u>Sale of Purchased Assets and Grant of Restricted Funds.</u>  The terms and conditions of the Purchase Agreements and Grant Agreements and the sale and conveyance of the Purchased Assets and Grant of certain of the Restricted Funds to each of the Purchasers, free and clear of all Claims and Liens of any kind or nature to the fullest extent permissible under Section 363(f) of the Bankruptcy Code, is hereby approved pursuant to Sections 105, 363 and 1129 of the Bankruptcy Code.  The sale of the Purchased Assets and Grant of the Restricted Funds have been duly approved by the NYSAG. Pursuant to the terms and conditions of the Purchase Agreements and the Grant

Agreements, the Acquired Assets and Restricted Funds may be used by Purchasers for their respective Direct Program Costs and Program Implementation Costs (as defined in the Grant Agreements). The Trustee or the Plan Administrator, as applicable, are hereby authorized to take such actions as may be necessary to consummate the sale of the Acquired Assets and the Grant of the Restricted Funds in accordance with the terms of the Purchase Agreements and Grant Agreements.

9. <u>No Successor Liability</u>. Purchasers shall not be considered a successor to the Debtor or the Trustee by reason of any theory of law or equity, and Purchasers shall have no liability for any Claim related to the Debtor, the Purchased Assets or the Restricted Funds as a result of any application of successor liability theories. Except for the Assumed Liabilities (as defined in the Purchase Agreements), the Purchasers are not, by virtue of the consummation of the Transactions contemplated by the Purchase Agreements and Grant Agreements, assuming, nor shall they be liable or responsible, as successors or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, asserted or unasserted, fixed, contingent, liquidated, unliquidated or otherwise) in any way whatsoever relating to or arising from the Debtor or any of its predecessors or affiliates, the Acquired Assets or the Restricted Funds for periods on or prior to the Closing Date (as defined in the Purchase Agreements) or are to

be observed, paid, discharged, or performed on or prior to the Closing Date, whether the

claimant asserting any such liabilities, debts, commitments, or obligations has delivered

to the Purchasers a release thereof.

10.    Purchasers' Release.    To the greatest extent permissible by law,

except as otherwise specifically provided in this Confirmation Order, upon the closing of

the transactions under the Purchase Agreements and Grant Agreements, the Trustee, on

behalf of the Debtor and its Estate, any Person or Entity, including, without limitation,

the Plan Administrator, the Litigation Trust and the Litigation Trustee, but excluding the

NYSAG, and each holder of a Claim against the Debtor and any donor to the Debtor, shall

be deemed to forever release, waive and discharge each of the Purchasers and their

respective predecessors, successors and assigns, current officers, directors, principals,

employees, advisory board members, attorneys and financial advisors from any and all

Claims, demands, Causes of Action and the like, arising from or related to the Purchase

Agreements, the Grant Agreements, the Plan, the Acquired Assets, the Restricted Funds

or the transactions under the Purchase Agreements and Grant Agreements, existing as of

the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or

contingent, matured or unmatured, disputed or undisputed, known or unknown,

foreseen or unforeseen, at law, in equity or otherwise; provided, however, such release,

waive and discharge shall not operate as a release, waiver or discharge of any Purchasers

of any Claims of the Trustee for Purchaser's breach of its obligations under the Purchase

Agreements or Grant Agreements.

11.    <u>Injunction Against Actions Against Purchasers</u>.  Upon the closing of

the transactions under the Purchase Agreements and Grant Agreements, other than the

Plan Administrator and, to the extent applicable pursuant to the Plan and the Litigation

Trust Agreement, the Litigation Trust and the Litigation Trustee, all Persons, including

without limitation, each holder of a Claim against the Debtor and any donor to the

Debtor, will be permanently enjoined from asserting any Claim against the Purchasers

related to the Debtor, the Purchase Agreements, the Grant Agreements, the Plan, the

Purchased Assets, the Restricted Funds or the transactions under the Purchase

Agreements and Grant Agreements existing as of the Effective Date.

12.    <u>Waiver of 14-Day Stay.</u>    Notwithstanding the provisions of

Bankruptcy Rules 3020(e), 6004(h) or 7062 or any applicable provisions of the Local Rules,

this Order shall not be stayed after the entry hereof, but shall be effective and enforceable

immediately upon entry, and the 14-day stay provided in Bankruptcy Rule 3020(e),

6004(h) and 7062 is hereby expressly waived and shall not apply.

<u>**APPROVAL OF THE PLAN SETTLEMENTS**</u>

*The HMS Settlement*

13.    <u>Approval of the HMS Settlement Agreement.</u>    The terms and

conditions of the HMS Settlement Agreement, and the settlement, waivers, releases and

injunctions provided thereby are hereby approved pursuant to Sections 105, 363 and 1129 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. The Trustee or the Plan Administrator, as applicable, is hereby authorized to take such actions as may be necessary to consummate the terms of the HMS Settlement in connection with consummation of the Plan. The HMS Settlement approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

14.    <u>No Successor Liability</u>.  HMS shall not be considered a successor to the Debtor or the Trustee by reason of any theory of law or equity, and HMS shall have no liability for any Claim related to the Debtor or the Restricted Funds as a result of any application of successor liability theories.  HMS is not, by virtue of the consummation of the HMS Settlement and the receipt and acceptance of Restricted Funds, assuming, nor shall it be liable or responsible, as the successor or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, asserted or unasserted, fixed, contingent, liquidated, unliquidated or otherwise) in any way whatsoever relating to or arising from the Debtor or any of its predecessors or affiliates, the Restricted Funds for periods on or prior to the Effective Date or are to be paid, discharged, or performed on or prior to the Effective Date, whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to HMS a release thereof.

*The Thompson Family Foundation Settlement*

15.    <u>Approval of the Thompson Family Foundation Settlement.</u>    The terms and conditions of the Thompson Family Foundation Settlement, and the settlement, waivers, releases and injunctions provided thereby are hereby approved pursuant to Sections 105 and 1129 of the Bankruptcy Code, Rule 9019 of the Bankruptcy Rules, and the Local Rules.  The terms of the Thompson Family Foundation Settlement have been duly approved by the NYSAG.  The Trustee and/or the Plan Administrator is hereby authorized to take such actions as may be necessary to consummate the terms of the Thompson Family Foundation Settlement.

## PLAN ADMINISTRATOR

16.    The appointment of Stephen S. Gray, as Plan Administrator, is hereby approved.  Upon the occurrence of the Effective Date, the Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code, including those provided in Section 5.9(b) of the Plan.

17.    On the Effective Date, the Plan Administrator shall be authorized to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor and the post-

Confirmation Estate, including, without limitation, the Litigation Trust Agreement.  The

Plan Administrator on behalf of the Estate is hereby authorized take any appropriate or

necessary action to dissolve under applicable law.

## CAUSES OF ACTION

18.    In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the

Litigation Trust may pursue all reserved rights of action, including, without limitation,

all Causes of Action, including Avoidance Actions and D&O Claims and the Causes of

Action identified in the Plan Supplement.  Any Distributions provided for in the Plan and

the allowance of any Claim for the purpose of voting on the Plan is and shall be without

prejudice to the rights of the Litigation Trustee to pursue and prosecute any and all

Causes of Action.

## THE LITIGATION TRUST

19.    The formation of the Litigation Trust pursuant to Article IX of the

Plan and the Litigation Trust Agreement is approved.  The appointment of Vincent Sama,

as Litigation Trustee, is hereby approved.  The Litigation Trustee shall be deemed a

representative of the Estate for purposes necessary and proper to carry out the

enforcement and pursuit of the Litigation Trust Claims on behalf of and in the right of

the Estate.  To the extent that any Litigation Trust Assets cannot be transferred to the

Litigation Trust because of a restriction on transferability under applicable non-

bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy

Code or any other provision of the Bankruptcy Code, the Litigation Trustee shall be deemed to have been designated as a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Claims. The Litigation Trustee shall have the powers, rights, duties, protections and obligations as set forth in the Plan and the Litigation Trust Agreement.

20.    In accordance with the terms and conditions of the Plan and the Litigation Trust Agreement, HMS shall serve as the sole member of the Oversight Committee.

21.    On the Effective Date, the Trustee, the Plan Administrator and the Litigation Trustee are hereby authorized to enter into the Litigation Trust Agreement pursuant to which the Litigation Trust Assets will be transferred to the Litigation Trust and the Litigation Trust Funds will be advanced to the Litigation Trust.  The Litigation Trustee shall take such actions as may be necessary to implement the Litigation Trust and the terms of the Litigation Trust Agreement in accordance with Article IX of the Plan.

22.    To the extent provided in section 1145 of the Bankruptcy Code and under applicable non-bankruptcy law, the issuance under the Plan of the Litigation Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and the Investment Company Act of 1940, as amended, pursuant to section 7(a) and 7(b) of that Act, and all rules and regulations promulgated under any of the foregoing.

## INJUNCTIONS, EXCULPATION AND RELEASES PROVIDED IN PLAN

23.    The injunction, release and exculpation provisions as set forth in Article XIII of the Plan are consistent with section 1123(b) of the Bankruptcy Code and are hereby approved and confirmed in all respects and shall be enforceable for the benefit of the Trustee, the Released Parties (as defined in Paragraph 28 herein), the Exculpated Parties, and the Debtor and its Estate, as applicable.

*Injunctions*

24.    As set forth in Section 13.3(a) of the Plan, and as modified herein, except as specifically otherwise provided in the Plan or Confirmation Order, upon the Effective Date all Persons shall be enjoined from commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, the Oversight Committee, or the Released Parties that interferes with the consummation and implementation of (i) the Plan, (ii) the Sales, (iii) the Grants, (iv) the Litigation Trust, the Litigation Trust Agreement or the Litigation Trust Assets, (v) the HMS Settlement Agreement or the Thompson Family Foundation Settlement, or (vi) the transfers, payments and Distributions to be made in accordance with the Plan and the Litigation Trust Agreement.

25.    As set forth in Section 13.3(b) of the Plan, on and after the Effective Date, all Persons (other than the Litigation Trustee or Plan Administrator, as applicable)

shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any, Claim, debt, right or Cause of Action that the Plan Administrator, or the Litigation Trust and the Litigation Trustee retains authority to pursue in accordance with the Plan and the Litigation Trust Agreement.

26.    As set forth in Section 13.3(c) of the Plan, except as otherwise specifically provided for by the Plan, as of the Effective Date, all holders of Claims shall be enjoined from taking any of the following actions in respect to any such Claims:  (i) the commencement or continuation of any action or proceedings against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee or their respective property;  (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee or their respective property;  (iii) the creation, perfection or enforcement of any encumbrance of any kind against the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee;  and/or (iv) the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity to the Debtor, the Estate, the Trustee, the Plan Administrator, the Litigation Trust, the Litigation Trustee, or the Oversight Committee.

*Exculpation Provision*

27.     As provided in Section 13.4 of the Plan, to the extent consistent with

section 1125(e) of the Bankruptcy Code, except as otherwise specifically provided in the

Plan including Section 13.7, no Exculpated Party shall have or incur, and each Exculpated

Party is hereby released and exculpated from, any Exculpated Claim, or obligation, cause

of action or liability for any Exculpated Claim, and shall be entitled to rely reasonably on

the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

Each Exculpated Party and their respective directors, members, managers, officers,

employees, advisors and attorneys have, and upon the Effective Date shall be deemed to

have, participated in the promulgation of the Plan in good faith and in compliance with

the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law

and shall not be liable at any time for the violation of any applicable law, rule or

regulation governing the solicitation of acceptances or rejections of the Plan or

Distributions made pursuant to the Plan.  From and after the Effective Date, a copy of the

Confirmation Order and the Plan shall constitute, and may be submitted as, a complete

defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to

this Article XIV;  provided, however, that nothing in the Plan or the Confirmation Order

shall, or shall be deemed to, release or exculpate the Exculpated Parties with respect to,

their obligations or covenants arising from bad faith, willful misconduct, gross

negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized

use of confidential information that causes damages, and/or ultra vires acts.  Upon the

Confirmation Date, creditors will be unable to pursue any Claims that are satisfied,

enjoined or subject to exculpation under the Plan, but creditors may pursue Claims or

claims that may arise in the future, or pursuant to the Plan or Confirmation Order.

*Release Provisions*

28.    As set forth in Section 13.5(a) of the Plan, and as modified herein,

except as otherwise specifically provided in the Plan including Section 13.7, as of the

Effective Date, the Trustee, on behalf of the Debtor and its Estate, and any Person or Entity

seeking to exercise the rights of the Debtor's Estate, including, without limitation, the

Plan Administrator, the Litigation Trust and the Litigation Trustee and any successor to

the Debtor or any estate representative appointed or selected pursuant to section

1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive and

discharge HMS and the Thompson Family Foundation and any of their predecessors,

successors and assigns, current officers, directors, principals, employees, advisory board

members, attorneys, and financial advisors (the "Released Parties") from any and all

Claims, demands, Causes of Action and the like, arising from or related to this Chapter

11 Case or the Debtor and existing as of the Effective Date, whether direct or derivative,

liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise;

provided, however, such release, waiver and discharge shall not: (i) extend to the

28

Debtor's current and former officers, directors, principals, employees, agents, advisory board members, consultants, representatives, attorneys, and financial advisors; (ii) operate as a release, waiver or discharge of any Released Parties in respect of any express contractual obligation of any such party effective from and after the Effective Date; or (iii) in any way limit the rights of the holders of Claims under the terms of the Plan; and provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or this order shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator or the Litigation Trustee in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court.

29.     As set forth in Section 13.5(b) of the Plan and as modified herein, except as otherwise specifically provided in the Plan including Section 13.7, as of the Effective Date, each holder of a Claim against the Debtor, including, but not limited to HMS, shall be deemed to forever release, waive and discharge the Released Parties from any and all Claims, demands, Causes of Action and the like, arising from or related to this Chapter 11 Case or the Debtor and existing as of the Effective Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise; provided, however, such release, waiver and discharge shall not: (i) extend to the Debtor's current and former officers, directors, principals, employees, agents, advisory

board members, consultants, representatives, attorneys, and financial advisors; (ii) operate as a release, waiver or discharge of any Released Parties in respect of any express contractual obligation of any such party effective from and after the Effective Date; or (iii) in any way limit the rights of the holders of Claims under the terms of the Plan; and provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or this order shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator or the Litigation Trustee in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court.

*Limitations on Injunctions, Exculpation and Release Provisions*

30. As provided for in Section 13.7 of the Plan, notwithstanding anything to the contrary contained in the Plan or herein, the Plan shall not exculpate or release, or provide injunctive protection to, any Person or Entity identified in the Plan Supplement as a potential defendant to a Cause of Action which shall include, without limitation, all of the Debtor's current and former directors, officers, principals, employees, agents, advisory board members, consultants, representatives, attorneys, financial advisors and insurers.

31. As provided in Section 13.8 of the Plan, the provisions of the Plan, including, without limitation, the injunctive provisions contained in Article XIII and herein, shall not diminish or impair in any manner the enforceability and/or coverage of

any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims, including Claims against any directors, trustees or officers of the Debtor, or any other Person.

## EXECUTORY CONTRACTS

32.     In accordance with Article VIII of the Plan, effective on the Effective Date, all Executory Contracts are hereby specifically deemed rejected, except for any Executory Contract (a) that has been specifically assumed, or assumed and assigned, by the Debtor or Trustee on or before the Confirmation Date with the approval of the Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to be included as part of the Plan Supplement.

33.     Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than forty-five (45) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date.  Any such Claims not filed within such time shall be forever barred from assertion against the Estate, and any and all of the Assets of the Estate.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX
## CLAIMS, AND COMPENSATION OF PROFESSIONALS

*Administrative Expense Claims*

34.    Each holder of an Administrative Expense Claim is required to file a

proof of Administrative Expense Claim within thirty (30) days after the Effective Date.

Nothing herein extends any Bar Date previously established by the Bankruptcy Court.

Any request for payment of an Administrative Expense Claim that is not timely filed as

set forth above shall be forever barred, and holders of such Claims shall not be able to

assert such Claims in any manner against the Debtor, the Estate, the Litigation Trust, the

Litigation Trustee, the Trustee, the Plan Administrator or the Oversight Committee or

any of the foregoing parties' accountants, advisors, agents, attorneys, consultants,

directors, employees, members, officers, or representatives.

35.    The Plan Administrator shall have ninety (90) days after the Effective

Date to file objections, if any, to Administrative Expense Claims and serve such objections

upon the holder of the affected Claim.  The Trustee shall have the right to seek authority

from the Court to extend the dates for filing and serving the objections to the holders of

such Claims.

36.    Except to the extent that any entity entitled to payment of an

Allowed Administrative Expense Claim agrees to a different treatment (including HMS

in respect of the HMS Substantial Contribution Claim), each holder of an Allowed

Administrative Expense Claim (other than Administrative Expense Claims that have

32

already been satisfied prior to the Effective Date in the ordinary course of business or

pursuant to Final Order of the Bankruptcy Court) shall receive Cash from the Plan

Distribution Fund in an amount equal to such holder's Allowed Administrative Expense

Claim on or about the Effective Date, or as soon as practicable after the Administrative

Expense Claim becomes an Allowed Administrative Expense Claim; provided, however,

the Plan Administrator shall be responsible for the satisfaction of United States Trustee

Fees arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 from the Effective Date through

the entry of a final decree closing, dismissing of, or converting the Chapter 11 Case;

provided, further, under the HMS Settlement, HMS has agreed that any HMS Substantial

Contribution Claim, to the extent allowed by the Bankruptcy Court, (i) shall not receive

any payment from the Plan Distribution Fund, and (ii) shall receive a Litigation Trust

Interest which will be subordinated to other holders of Litigation Trust Interests and only

receive a Distribution on account of such Litigation Trust Interest after all other holders

of Litigation Trust Interests have been paid in full pursuant to the terms and conditions

of the Litigation Trust Agreement.

*Priority Tax Claims*

37.    Except to the extent that the Plan Administrator determines to make

payments to the holder of a Priority Tax Claim in accordance with the provisions of

section 1129(a)(9)(C) of the Bankruptcy Code, or the holder of an Allowed Priority Tax

Claim has been satisfied prior to the Effective Date or agrees to a different treatment, the

Plan Administrator shall pay to each holder of an Allowed Priority Tax Claim, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon as is practicable thereafter, with interest as may be required by the Bankruptcy Code and provided under applicable non-bankruptcy law.

*Professional Fee Claims*

38.    All Persons and Entities seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Confirmation Date under sections 330 or 331 of the Bankruptcy Code (a) shall, except to the extent such fees have previously been approved by a Final Order, file their respective applications for allowance of their Professional Fee Claim by not later than thirty (30) from after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) to the extent granted, the Allowed Professional Fee Claim shall be paid by the Plan Administrator in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court, first from the Allocated Restricted Funds and thereafter from the Plan Distribution Fund: (i) on the date upon which such Professional Fee Claim becomes an Allowed Claim or as soon thereafter as is practicable; (ii) upon such terms as may be mutually agreed upon between the holder of an Allowed Professional Fee Claim and the Plan

Administrator, or (iii) in accordance with the terms and conditions of any applicable order entered by the Bankruptcy Court.

## RETENTION OF JURISDICTION

39.     Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters set forth in Article XII of the Plan.  For avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to determine (i) the Allowed amount of the HMS Substantial Contribution Claim and (ii) in accordance with Section 8.1(c) of the Plan, to estimate the amount to be reserved in the Disputed Claim Reserve in respect of any Disputed Claims.

## GENERAL PROVISIONS

40.     The Plan is incorporated in full herein.  Failure to include or refer to particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

41.     Upon the date a final decree is entered in the Chapter 11 Case, the Debtor will be deemed dissolved under applicable non-bankruptcy law without further Order of the Court or any other court

42.     Any injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the Plan has been fully

performed.

43.    The provisions of this Confirmation Order are non-severable and

mutually dependent.

44.    To the extent of any inconsistency between the terms of the Plan and

this Confirmation Order, the terms of this Confirmation Order shall govern.


Dated:    New York, New York
          September 21, 2018

                                        *s/ Mary Kay Vyskocil*
                                        Honorable Mary Kay Vyskocil
                                        United States Bankruptcy Judge

# EXHIBIT 1

**Exhibit 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                :

In re:                                   :         Chapter 11
                                                :

WONDERWORK, INC.,                :         Case No. 16-13607 (MKV)
                                                :

                         Debtor.       :
                                                :
------------------------------------------------------------X

**NOTICE OF:  (I) ENTRY OF ORDER CONFIRMING THE TRUSTEE'S
AMENDED CHAPTER 11 PLAN;  AND (II) ESTABLISHING DEADLINES
FOR FILING (A) ADMINISTRATIVE EXPENSE CLAIMS, (B) PROFESSIONAL
FEE CLAIMS, AND (C) EXECUTORY CONTRACT REJECTION CLAIMS**

**A.**      **TRUSTEE'S CHAPTER 11 PLAN CONFIRMED**

            **PLEASE TAKE NOTICE** that, on _____ __, 2018 (the "<u>Confirmation Date</u>"), the Bankruptcy Court entered an Order [Docket No. ___] (the "<u>Confirmation Order</u>") confirming the *Amended Chapter 11 Plan of Liquidation for the Bankruptcy Estate of WonderWork, Inc. as Proposed by the Chapter 11 Trustee*, dated August 8, 2018 [Docket No. 435] (the "<u>Plan</u>").

            **PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Confirmation Order are available on the Court's website at http://www.ecf .nysb.uscourts.gov.  Further information may be obtained by calling Trustee's counsel at (212) 594-5000 (Attn:  Ms. Denise Cahir).

**B.**      **ADMINISTRATIVE CLAIMS BAR DATE**

            **PLEASE TAKE FURTHER NOTICE** that, except for Professional Fee Claims[1] and United States Trustee quarterly fees, all Persons and Entities including, but not limited to, individuals, partnerships, corporations, estates, trusts and governmental units holding Administrative Expense Claims against the Estate must file a request for allowance of such Administrative Expense Claims **within thirty (30) days after the occurrence of the Effective Date** (the "<u>Administrative Claims Bar Date</u>").  The Trustee shall provide notice of the Effective Date promptly upon its occurrence.  Requests for payment of Administrative Expense Claims, together with supporting documentation, must be filed with the Bankruptcy Court and the original delivered by first-class mail, overnight delivery or hand delivery so as to be received, no later than the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Administrative Claims Bar Date, by Trustee's counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Ms. Denise Cahir).

## C.     PROFESSIONAL FEE CLAIM BAR DATE

**PLEASE TAKE FURTHER NOTICE** that all Persons and Entities seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Confirmation Date under sections 330 or 331 of the Bankruptcy Code shall file their respective applications for allowance of their Professional Fee Claim **by not later than the date which is thirty (30) days after the occurrence of the Effective Date or such other date as may be fixed by the Bankruptcy Court for services rendered through the Confirmation Date** (the "Professional Fee Claims Bar Date"). Applications for payment of Professional Fee Claims, together with supporting documentation, must be filed with the Bankruptcy Court and the original delivered by first-class mail, overnight delivery or hand delivery so as to be received, no later than the Professional Fee Claims Bar Date, by Trustee's counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Ms. Denise Cahir).

## D.     EXECUTORY CONTRACT REJECTION BAR DATE

**PLEASE TAKE FURTHER NOTICE** that Claims against the Estate arising out of the rejection of Executory Contracts pursuant to the Plan ("Executory Contract Rejection Claims"), if any, **must be filed with the Court no later than forty-five (45) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date** (the "Executory Contract Rejection Bar Date"). Requests for payment of Executory Contract Rejection Claims, together with supporting documentation, must be filed with the Bankruptcy Court and the original delivered by first-class mail, overnight delivery or hand delivery so as to be received, no later than the Executory Contract Rejection Bar Date, by Trustee's counsel, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attn: Ms. Denise Cahir).

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND EXECUTORY CONTRACT REJECTION CLAIMS WHO FAIL TO FILE A TIMELY REQUEST FOR THE ALLOWANCE OF SUCH CLAIMS SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIMS AGAINST THE ESTATE AND SUCH CLAIMANTS SHALL NOT BE ENTITLED TO ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS UNDER THE PLAN OR OTHERWISE FROM THE ESTATE.**

**PLEASE TAKE FURTHER NOTICE THAT ALL REQUESTS OR APPLICATIONS FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, OR EXECUTORY CONTRACT REJECTION CLAIMS MUST BE SUBMITTED IN A FORM CONSISTENT WITH THE BANKRUPTCY CODE, THE BANKRUPTCY RULES AND THE LOCAL RULES OF BANKRUPTCY PROCEDURE FOR THE SOUTHERN DISTRICT OF NEW YORK.**

**PLEASE TAKE FURTHER NOTICE THAT THE PLAN AND CONFIRMATION ORDER CONTAIN OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE ENCOURAGED TO REVIEW THE PLAN AND CONFIRMATION ORDER IN THEIR ENTIRETY.**

Dated: ＿＿＿ ＿, 2018            STEPHEN S. GRAY,
      New York, New York        Not Individually But Solely in
                              His Capacity as Chapter 11 Trustee,
                            By his Counsel:


                            [DRAFT]＿＿＿＿＿＿
                            TOGUT, SEGAL & SEGAL LLP
                            Scott E. Ratner
                            One Penn Plaza, Suite 3335
                            New York, New York 10119
                            (212) 594-5000