UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

In re:                                              :

WONDERWORK, INC.,                                   :

                                        Debtor.     :

--------------------------------------------------------------- :

VINCENT A. SAMA, as Litigation Trustee of the       :
WW LITIGATION TRUST,
                                                    :

                                        Plaintiff,  :

         -against-                                  :

KPMG LLP,                                           :

                                        Defendant.  :

--------------------------------------------------------------- X

Chapter 11
Case No. 16-13607 (SMB)

**COMPLAINT**

Adv. No.

**Jury Trial Demanded**

        Plaintiff, Vincent A. Sama, as Litigation Trustee of the WW Litigation Trust (the

"Litigation Trustee"), as and for his Complaint (the "Complaint") against defendant, KPMG

LLP, by his attorneys Kaplan Landau PLLC, alleges as follows:

### Nature of the Action

        1.      This is an action for negligence, gross negligence, fraud, and breach of

contract by Plaintiff Litigation Trustee against Defendant KPMG LLP ("KPMG").  The claims

arise from KPMG's audits of the financial statements of WonderWork, Inc. ("WonderWork" or

"Debtor") and the related statements of activities, functional expenses, and cash flows for the

years ended June 30, 2012 through 2015 as well as the related notes to the financial statements

(the "Financial Statements"), and KPMG's issuance of unqualified audit reports dated April 13,

2013, February 20, 2014, May 7, 2015, and May 23, 2016 (the "Audit Reports") with respect to

the Financial Statements.

2.      In the Audit Reports, KPMG falsely stated that the Financial Statements

fairly represented, in all material respects, the financial position of WonderWork as of June 30,

2012, June 30, 2013 and June 30, 2012, June 30, 2014 and June 30, 2013, and June 30, 2015

and June 30, 2014 and changes in its net assets and cash flow for the years then ended in

accordance with standards generally accepted in the United States ("GAAP"), and that KPMG

had audited the Financial Statements in accordance with generally accepted auditing standards

("GAAS").  Contrary to KPMG's statements, the Financial Statements did not accurately reflect

the financial position of WonderWork, the changes in its net assets, and its cash flows for the

years then ended and, therefore, were not stated in accordance with GAAP, and KPMG had not

audited the Financial Statements in accordance with GAAS.  In fact, KPMG either knew or

ignored and turned a blind eye to explicit fraud warnings obvious on the face of WonderWork's

books and records, with the result that both the Financial Statements and Audit Reports were

false and misleading.

3.      WonderWork justifiably relied upon KPMG to audit the Financial

Statements to ensure that, expenses, including executive compensation, were correctly recorded

and accounted for, that proper internal accounting controls were in place, and that charitable

donations were correctly characterized as "restricted" or "not restricted", and to alert the Debtor

to any material deficiencies and misstatements in connection with its Financial Statements,

business and financial position.

4.      KPMG knew that WonderWork Chief Executive Officer Brian

Mullaney's ("Mullaney") compensation was not correctly recorded and accounted for, that

Mullaney had in fact taken compensation in the form of personal expenses, that internal

accounting controls were not in place, and were routinely circumvented by Mullaney and by the

Chief Financial Officer Hana Fuchs ("Fuchs"), at his direction, and knew or should have known, that charitable donations were not properly accounted for or categorized.

5.      KPMG also knew that in operating without internal accounting controls, without accurately accounting for Mullaney's compensation, and in failing to properly classify donations, Mullaney and Fuchs, and others acting in concert with them, had abandoned their obligations to WonderWork, and acted solely in their own interests and not in the interests of WonderWork, damaging WonderWork and its charitable mission.

### The Parties And Other Significant Persons Or Entities

6.      Plaintiff Vincent A. Sama, is the Litigation Trustee of the WW Litigation Trust (the "Litigation Trustee") with his principal place of business at Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019-9710.

7.      Defendant KPMG LLP is a Delaware limited liability partnership with its principal place of business at 345 Park Avenue, New York, New York 10154-0120.

8.      WonderWork, Inc. is a not for profit organization organized and existing under the laws of the State of Delaware.

9.      Brian Mullaney was at all relevant times the Chief Executive Officer ("CEO") of the Debtor.

10.      Hana Fuchs was at all relevant times the Chief Financial Officer ("CFO") of the Debtor.

11.      At all relevant times, WonderWork's Board of Directors consisted of Mullaney, and three independent directors, Ted Dysart, Ravi Kant and John J. Coneys, until November 2015, when Dysart resigned.

## Jurisdiction and Venue

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference.

13.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

15.     Pursuant to Section 12.1 of the Amended Chapter 11 Plan dated August 8, 2018, the Bankruptcy Court retained exclusive jurisdiction, to hear and determine any actions commenced by the Litigation Trustee.

16.     In the event that any part of this adversary proceeding is found to be "non-core", Plaintiff consents to the entry of final orders and judgments by this Court, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

## Procedural History

17.     On December 29, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

18.     On April 21, 2017, the Bankruptcy Court entered an Order Directing the Appointment of an Examiner and Establishing Temporary Bankruptcy Controls (which order was subsequently amended).

19.     On May 10, 2017, the Bankruptcy Court entered an Order approving Jason R. Lilien as Examiner (hereinafter the "Examiner"). The Examiner was appointed to investigate, among other things, the propriety of the Debtor's operations, Mullaney's

4

compensation, the actual amount of "unrestricted" funds held by the Debtor which could not be used to satisfy creditor claims, and potential estate causes of action.

20.    On June 28, 2017, the Court approved the Examiner's retention of Loeb & Loeb LLP ("Loeb") as counsel and on July 6, 2017, the Court approved the Examiner's retention of Goldin Associates LLC ("Goldin") as his financial advisor.

21.    After KPMG resigned as WonderWork's auditor in 2017, for "undisclosed reasons", on May 24, 2017, the Bankruptcy Court approved the Debtor's retention of BDO USA LLP ("BDO") to audit the Debtor's Financial Statements as of June 30, 2016 and to prepare its Form 990.

22.    On or about November 3, 2017, the Examiner filed his Final Report dated October 25, 2017.

23.    On November 22, 2017, shortly after the Examiner's Final Report was filed, the Bankruptcy Court appointed Stephen Gray as Chapter 11 Trustee.

24.    On September 21, 2018, the Bankruptcy Court entered an order (the "Confirmation Order") confirming an Amended Chapter 11 Plan of Liquidation of WonderWork, Inc. (as it may be modified and together with the Plan Supplement filed on August 8, 2018, the plan (the "Plan")). The Plan became effective on October 19, 2018.

25.    The Plan and Confirmation Order provided for the creation of a Litigation Trust and appointment of a Litigation Trustee.

26.    On or about October 19, 2018 the WW Litigation Trust was created pursuant to the terms of the WonderWork Litigation Trust and Declaration of Trust dated October 19, 2018.

27.     The WW Litigation Trust was created for the purpose, among other things, of prosecuting the Litigation Trust Claims and to file, settle, compromise, withdraw or litigate to judgment any cause of action in connection with such claims.

28.     In accordance with the Plan, Vincent A. Sama, Esq. was appointed Litigation Trustee as of October 19, 2018.

29.     Among the claims assigned to the WW Litigation Trust were any and all claims against Debtor's current and former professionals, including those asserted herein against KPMG for negligence, gross negligence, fraud and breach of contract.

### **Factual Background**

30.     WonderWork's stated purpose was to provide assistance to children and adults everywhere, including those in developing countries, suffering from disease, illness, or disability, including but not necessarily limited to blindness, clubfoot, hydrocephalus, pediatric cardiac surgery, and burns and to further support medical institutions and other charitable organizations engaged in the provision of the services supported by the Debtor.

31.     KPMG audited the financial statements of WonderWork and the related statements of activities, functional expenses, and cash flows for the years ended June 30, 2012, June 30, 2013 and June 30, 2012, June 30, 2014 and June 30, 2013, and June 30, 2015 and June 30, 2014.

32.     In connection with those audits, KPMG issued unqualified Audit Reports dated April 13, 2013, February 20, 2014, May 7, 2015, and May 23, 2016, which falsely stated that KPMG had conducted its audits in accordance with GAAS and that the Financial Statements fairly represented in all material respects, the financial position of WonderWork.

KPMG also prepared and filed Internal Revenue Service Forms 990 for the Debtor for each of the years in question based upon information which was the subject of the KPMG Audits.

33.    The Debtor relied on KPMG's unqualified Audit Reports with respect to the Financial Statements for each of the years ended June 30, 2012 through June 30, 2015, and the Forms 990 prepared by KPMG, in approving executive compensation, making regulatory and IRS filings, and in managing the Debtor and continuing its operations.

34.    Undisclosed in the Financial Statements and the Audit Reports, were the material deficiencies in internal controls within WonderWork and that the Financial Statements did not accurately set forth WonderWork's financial position, changes in net assets, or cash flows.  KPMG also failed to report that WonderWork's Forms 990 understated executive compensation, that personal, excessive and unsubstantiated expenses had been charged by the CEO to the Debtor, and that the Debtor's CEO and CFO had totally abandoned WonderWork's interests, and were acting solely for their own interests, and those of other highly compensated executives.

35.    The actions and omissions of the CEO, CFO and others acting in concert with them, which were known to or should have been known to KPMG, but were not disclosed in the Audit Reports, provided no short term or long-term benefits to the Debtor, but in fact harmed the Debtor, deprived it of funds that should have been used for Debtor's charitable purposes, deprived it of the ability to carry out its mission and saddled it with litigation expenses, and potential regulatory proceedings and fines and penalties and forced it to cease business as a not-for-profit charitable organization.

36.    KPMG utterly failed to perform its audit responsibilities in accordance with the applicable professional standards of conduct, including GAAS, and failed to report the acts and omissions by WonderWork's senior officers in its unqualified Audit Reports, Forms 990, which it prepared, or otherwise, which resulted in the demise of WonderWork.

37.    During the 4 years that it audited WonderWork's Financial Statements, and issued, prepared and filed false Forms 990, and false and misleading Audit Reports, KPMG received compensation of over $220,000, none of which has been returned or recovered.

## Material Weaknesses in WonderWork's Internal Controls

38.    Material weakness in internal controls means that a deficiency or combination of deficiencies exist such that there is a reasonable possibility that a material misstatement of the non-profit's financial statements will not be prevented, or detected or corrected on a timely basis. In this case, there were material weaknesses in WonderWork's internal controls such that KPMG knew or should have known during the course of its Audits that WonderWork's Financial Statements and its Forms 990 were materially false.

39.    These material weaknesses, which were never reported by KPMG in its Audit Reports or otherwise, but were identified by BDO, after its retention as replacement for KPMG, included deficiencies in how executive compensation was recorded and accounted for and how donations were classified and used.

40.    These were precisely the types of internal control matters that KPMG should have brought to the attention of the WonderWork's Board of Directors.  These material weaknesses, at a minimum, constituted red flag warnings to KPMG, which completely ignored them, made the WonderWork's Financial Statements unreliable, and the Audit Reports and Form 990s, false and misleading.

## The Mullaney Compensation Fraud

41.    Among the items in the "Statement of Activities", which are part of the Financial Statements, which were audited by KPMG were "Expenses", "Management and general", including executive compensation paid to Mullaney which was also falsely reported on the Form 990s prepared by KPMG.

42.    Mullaney's annual base salary was initially $275,000. However, in January 2012, Mullaney instructed Fuchs to increase his pay to $295,000. Thereafter, in June, 2012, the WonderWork Board raised Mullaney's base pay to $475,000, but again without authority, he instructed Fuchs to make the increase retroactive to January 30, 2012.

43.    The compensation paid to Mullaney from June 30, 2012 through June 30, 2015, was not recorded in WonderWork's general ledger system and in fact was part of a scheme that defrauded the Debtor.

44.    Mullaney's "approved" compensation for most of that time period was supposed to be $3.7 million ($2.75 million in salary and $950 thousand in bonuses), but of that amount only $2.65 million was reported on the CEO's form W-2 for the years June 30, 2012 through June 30, 2015. The Form 990s, prepared by KPMG, similarly, falsely reported Mullaney's compensation as $475,000 per year.

45.    The remaining $1.050 million in compensation was not recorded in WonderWork's general ledger system, but was maintained by Fuchs on an Excel Spreadsheet outside the general ledger system, at Mullaney's direction.

46.    KPMG knew that Mullaney's compensation was recorded on the separate Excel Spreadsheet and *not* in the general ledger, which was another red flag fraud warning.

47.    Of the $1.050 million not recorded on the general ledger, $250,000 related to a bonus for fiscal year 2016.  The remainder of the $1.050 million of unrecorded impacted the years June 30, 2012 through June 30, 2015.

48.    The CFO, Hana Fuchs, admitted to the successor auditor, BDO, that Mullaney, would arbitrarily determine certain travel and other expenses, supposedly incurred for business purposes, and then direct her to randomly deduct those amounts from his "bonus", so that this compensation would *not* appear on his W-2.  The "bonus" amount less than the "deductions" would then be "donated" to WonderWork by Mullaney.  These "payments" and "deductions" were maintained by Fuchs in the Excel Spreadsheet outside the general ledger system.

49.    In fact, many of the business "expenses" that were deducted from amounts supposedly due Mullaney, were not legitimate business expenses, but were personal expenses Mullaney had incurred.  Among these "expenses" during the years ended June 30, 2012 through June 30, 2015 identified by the Examiner were the following:

-- commuting expenses from Boston to New York, including stays at the Hotel Langham and meals.  These expenses totaled over $117,000.

-- other travel expenses, including airfares, lodging and meals, totaling $293,000.

-- other personal expenses in an amount believed to be in excess of $55,000, included vacation trips to Martha's Vineyard, Massachusetts, Newport, Rhode Island, and Maine; costs of a "writer" to accompany Mullaney to India to assist him in writing a book; Harvard Club dues; various subscriptions; dinners for friends; excessive staff holiday party and chauffeured cars including a limousine for his wife's birthday.

50.     In addition to the *personal* and other expenses which Mullaney had Fuchs's credit to his "compensation" account, Mullaney also received reimbursement for business expenses that were *not* treated as compensation, but were excessive or undocumented.

51.     Thus, according to the Examiner, Mullaney not only defrauded the Debtor out of money to which he was not entitled, but avoided taxes on other income.

52.     The impact of this scheme was that (1) Mullaney was paid excessive compensation; (2) Mullaney was reimbursed for personal expenses; (3) Mullaney was reimbursed for excessive and unsubstantiated business expenses; (4) expenses of the Debtor were underreported by at least $800,000; and (5) the Debtor is subject to potential liability for payroll taxes, penalties and interest on the unrecorded compensation.

53.     The Debtor received no benefit, short term, long term, or otherwise, as the result of the compensation scheme which was in fact a fraud on the Debtor.

54.     Mullaney benefitted from the compensation fraud to the detriment of the Debtor.  Mullaney received compensation to which he was not entitled and avoided taxes on other income, in an amount to be determined but believed to be not less than $1.2 million.

55.     Defendant KPMG knew that the CEO compensation was not recorded on the general ledger and knew that such compensation and purported "expenses" were recorded in a separate Excel Spreadsheet, which constituted a red flag fraud warning which KPMG ignored.

56.     KPMG knew or should have known the "expenses" were not legitimate WonderWork business expenses and that, Mullaney was evading taxes on his compensation by "deducting" the expenses from his "bonus", and then "donating" the remainder of the "bonus" to the Debtor, all to the detriment of the Debtor.

## Improper Recording, Classification, And Accounting Of Donations

57.     Separate General Ledger Accounts were used by WonderWork's senior officers to record unrestricted and temporarily restricted contributions from third party donors. Restricted donations could only be used for designated purposes; unrestricted donations could be used for more general purposes of the charity.

58.     General Ledger Account No. 4000 was used to record unrestricted contributions, and General Ledger Account Nos. 4005, 4010, 4020 and 4030 were used to record temporarily restricted contributions.

59.     Subsequent testing of restricted and unrestricted donations by BDO identified $1.046 million improperly recorded as unrestricted which should have been recorded as restricted.

60.     The Examiner, who attempted to reconstruct the WonderWork entire fundraising activity because of the unreliability of the Debtor's books and records, which was never reported by KPMG, found that there were over 600 separate solicitations, hundreds of thousands of donations, and millions of dollars misapplied and mishandled funds. The Examiner concluded that almost $3 million of contributions originally reported as unrestricted should be classified as restricted, and of $20.2 million held by the Debtor as of the Petition Date $16.25 million should be treated as restricted. KPMG's failure to provide guidance and accurate advice on these technical accounting matters harmed the Debtor by diverting contributions from their intended uses, rendered the Debtor insolvent, and made it impossible for the Debtor to continue its operations. As alleged herein, and detailed in his report, the Examiner found, among other things, that:

> -- the officers acted for their own benefit and took excessive compensation and benefits;

12

-- reporting obligations were not met and that there were false and misleading statements in Debtor's public filings; and

-- restricted assets were not applied in accordance with their intended purpose and the restricted funds accounts were not accurately maintained.

61.    In addition to the foregoing, upon discovery that CEO compensation was not recorded in the WonderWork general ledger, BDO undertook to determine if all other material liabilities has been properly recorded in the general ledger, and requested a complete list of the pre-petition claims filed by WonderWork.  BDO, however, was unable to make any such determination.

62.    KPMG utterly failed to report any of these substantial and material errors, and WonderWork was damaged by KPMG's failure to do so.  Again, the Debtor received no benefits from these deficiencies and KPMG's failure to identify, report and correct them.

63.    KPMG billed WonderWork and WonderWork paid KPMG over $220,000 in fees and expenses for its work.  In addition, the Examiner has been awarded from the Estate, $380,595.00; his financial advisor, Goldin, has been awarded $470,250, and his counsel, Loeb, has been award $1,431,391.27, for work which included review of WonderWork's financial transactions, its executive compensation, and donations and other related matters, which was necessary in order to address the issues which KPMG had failed to report and resolve in its prior audits.

64.    In addition, as a result of KPMG's precipitous resignation as auditor, in an attempt to complete the 2016 Audit and related regulatory filings, WonderWork retained BDO.  Because of the lack of internal controls at WonderWork and internal documentation, which had not been reported or remedied on the prior KPMG audits, BDO expended substantial

time and effort in attempting to reconstruct Debtor's books and records, but was still unable to complete its Audit.  BDO was awarded $210,000 by the Court for its work.

65.    Shortly after the Examiner issued his report, the Bankruptcy Court appointed a Trustee for WonderWork (the "Chapter 11 Trustee") to oversee its winding-up and liquidation.  The Chapter 11 Trustee, has sought statutory commissions in the amount of $164,882.42 and $12,291.90 in expenses for a total amount of $177,174.32; CR3 Partners, LLC, accountant for the Chapter 11 Trustee, has sought $485,982.50 in fees and $6,011.80 in expenses, for a total of $491,940.30; Garfunkel Wild, P.C. as, special counsel for the Chapter 11 Trustee, has sought $295,261.50 in fees and $89.49 in expenses, for a total amount of $259,350.99; Gordon Brothers Asset Advisors, LLC, Intellectual Property Advisor for the Chapter 11 Trustee, has sought fees in the amount of $30,000; Togut, Segal & Segal LLP, Bankruptcy counsel for the Chapter 11 Trustee, has sought fees in the amount of $899,612.50 and expenses in the amount of $13,760.69 for a total of $913,317.19 and Verdolino & Lowey P.C., Special Accountant for the Chapter 11 Trustee, has sought fees in the amount of $15,000.

66.    All of these expenditures, or a substantial portion of them, might have been unnecessary had KPMG properly performed their professional obligations during the several years they audited WonderWork's Financial Statements.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Negligence)

67.    Plaintiff Litigation Trustee repeats and realleges each and every allegation of paragraphs 1 through 66 of this Complaint, inclusive, with the same force and effect as if set forth herein at length.

68.    Defendant KPMG issued unqualified Audit Reports dated April 13, 2013, February 20, 2014, May 7, 2015, and May 23, 2016.

69.     The Audit Reports stated that the Financial Statements of WonderWork for the years ended June 30, 2012 through June 30, 2015 fairly represented, in all material respects, the financial position of WonderWork and the changes in net assets and its cash flows for the years then ended.

70.     The Audit Reports were false and misleading in that the Financial Statements did not fairly represent the financial position of WonderWork and the changes in net assets and its cash flows for the years ended June 30, 2012 through June 30, 2015.

71.     In planning and performing the audits of WonderWork's Financial Statements for the years ended June 30, 2012 through June 30, 2015, KPMG had professional duties of competence and skepticism under GAAS and other standards applicable to Certified Public Accountants and auditors.

72.     As detailed herein, KPMG's acts and omissions in connection with the Audits fell below the applicable standard of care.

73.     WonderWork justifiably relied upon the unqualified KPMG Audit Reports.

74.     As a result of the foregoing, Debtor was damaged in an amount to be determined but believed not to be less than $3 million, together with interest, costs and attorneys' fees.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Gross Negligence)

75.     Plaintiff Litigation Trustee repeats and realleges each and every allegation of paragraphs 1 through 74 of this Complaint, inclusive, with the same force and effect as if set forth herein at length.

76.    Defendant KPMG issued unqualified Audit Reports dated April 13, 2013, February 14, 2014, May 7, 2015 and May 23, 2016, with respect to the Financial Statements of WonderWork for the years ended June 30, 2012 through June 30, 2015.

77.    The Audit Reports stated that the Financial Statements of WonderWork for the years ended June 30, 2012 through June 30, 2015 fairly represented, in all material respects, the financial position of WonderWork and the changes in net assets and its cash flows for the years then ended.

78.    The Audit Reports were false and misleading in that the Financial Statements did not fairly represent the financial position of WonderWork and the changes in net assets and its cash flows for the years ended June 30, 2012 through June 30, 2015.

79.    KPMG had red flag "fraud warnings," which were obvious from the books and records maintained by WonderWork's senior management, that (a) internal accounting controls were not in place and were routinely circumvented by Mullaney, and by Fuchs at his direction; (b) Mullaney's compensation was excessive, included personal and unsubstantiated expenses, and was not properly recorded or accounted for; (c) charitable donations were not properly categorized or accounted for.

80.    KPMG was heedless and reckless when it disregarded, failed to investigate and turned a blind eye to these red flags which were obvious indications of fraud.

81.    Notwithstanding such red flag warnings, KPMG issued its unqualified Audit Reports.

82.    Debtor justifiably relied upon the unqualified KPMG Audit Reports.

83.    As a result of the foregoing, the Debtor was damaged in an amount to be determined but believed to be not less than $3 million, together with interest, costs and

attorneys' fees.

84.    Because of KPMG's willful and intentional disregard of Debtor's rights,

Plaintiff is also entitled to recover punitive damages in an amount to be determined but not less

than twice the amount of its compensatory damages.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Fraud)

85.    Plaintiff Litigation Trustee repeats and realleges each and every allegation

of paragraphs 1 through 84 of this Complaint, inclusive, with the same force and effect as if set

forth herein at length.

86.    Defendant KPMG issued unqualified Audit Reports dated April 13, 2013,

February 20, 2014, May 7, 2015, May 23, 2016.

87.    The Audit Reports stated that the Financial Statements of WonderWork

for the years ended June 30, 2012 through June 30, 2015 fairly represented, in all material

respects, the financial position of WonderWork and the changes in net assets and its cash flows

for the years then ended.

88.    The Audit Reports were false and misleading in that the Financial

Statements did not fairly represent the financial position of WonderWork and the changes in net

assets and its cash flows for the years ended June 30, 2012 through June 30, 2015.

89.    KPMG knew that the Financial Statements were false and did not

accurately set forth financial condition of WonderWork because it knew that Mullaney's

compensation was not properly recorded or accounted for on the Debtor's general ledger but

was separately maintained by the CFO on an Excel Spreadsheet, knew that the "expenses" were

charged against "bonuses" , and knew that Mullaney was avoiding taxes on his income, all to

the detriment of WonderWork, but nevertheless advised the Chair of WonderWork's Audit

17

Committee to ignore these indicia of fraud.

90.    KPMG also knew, among other things, of the material weaknesses in WonderWork's internal accounting controls, and that donations were not accurately categorized, that restricted assets were not applied in accordance with their intended purpose, and restricted funds accounts were not accurately maintained.

91.    KPMG knew and intended that WonderWork would rely on the Financial Statements and Audit Reports.

92.    WonderWork justifiably relied upon the unqualified KPMG Audit Reports.

93.    As a result of the foregoing, WonderWork was damaged in an amount to be determined but believed to be not less than at least $3 million, together with interest, costs and attorneys' fees.

94.    Because of KPMG's willful and intentional disregard of Debtor's rights and interests, Plaintiff is also entitled to recover punitive damages in an amount to be determined but not less than twice the amount of its compensatory damages.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
**(Breach of Contract)**

95.    Plaintiff WonderWork repeats and realleges each and every allegation of paragraphs 1 through 94 of this Complaint, inclusive, with the same force and effect as if set forth herein at length.

96.    Defendant KPMG issued unqualified Audit Reports dated April 13, 2013, February 20, 2014, May 7, 2015, May 12, 2016.

97.    The Audit Reports stated that the Financial Statements of WonderWork for the years ended June 30, 2012 through June 30, 2015 fairly represented, in all material

respects, the financial position of WonderWork and the changes in net assets and its cash flows for the years then ended.

98.     The Audit Reports were false and misleading in that the Financial Statements did not fairly represent the financial position of WonderWork and the changes in net assets and its cash flows for the years ended June 30, 2012 through June 30, 2015.

99.     WonderWork engaged KPMG to audit its Financial Statements and to protect its interests.

100.    KPMG breached its agreement with WonderWork by failing to perform the audits in conformity with professional standards applicable to certified public accountants and auditors and by failing to report to WonderWork the deficiencies in its internal accounting controls and records, and by issuing false and misleading Audits Reports concerning WonderWork in its Financial Statements.

101.    KPMG billed WonderWork and WonderWork paid it for its work and incurred substantial other costs and expenses, as alleged herein, as a result of KPMG's substandard work and breach of its agreement.

102.    As a result of the foregoing, WonderWork was damaged an amount to be determined but believed to be not less than $3 million, together with interest, costs, and attorneys' fees.

WHEREFORE, Litigation Trustee demands judgment against the KPMG as follows:

A.      With respect to the First Claim for Relief, judgment against KPMG and in favor or the Litigation Trustee in an amount to be determined but believed to be not less than $3 million, together with interest, costs and attorneys' fees.

19

B.      With respect to the Second Claim for Relief, judgment against KPMG and in favor of the Litigation Trustee in an amount to be determined but believed to be not less than $3 million, together with interest, costs and attorneys' fees and punitive damages in an amount to be determined but not less than twice the amount of its compensatory damages;

C.      With respect to the Third Claim for Relief, judgment against KPMG and in favor of the Litigation Trustee in an amount to be determined but believed to be not less than $3 million, together with interest, costs and attorneys' fees and punitive damages in an amount to be determined but not less than twice the amount of its compensatory damages;

D.      With respect to the Fourth Claim for Relief, judgment against KPMG and in favor of the Litigation Trustee in an amount to be determined but believed to be not less than $3 million, together with interest, costs and attorneys' fees; and

E.      Such other, further and different relief as this Court may deem just and proper.

## Jury Trial Demand

Plaintiff hereby demands a trial by jury, on all issues so triable, pursuant to Fed.

R. Bankr. P. 9015, and 5005 and Fed. R. Civ. P. Rules 38 and 39.


Dated: New York, New York
         December 20, 2018

KAPLAN LANDAU PLLC


By: _Mark Landau_
     Mark Landau
     Amanda Grannis

Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 593-1700

*Attorneys for Plaintiff*
*Vincent A. Sama, as Trustee of the*
*WW Litigation Trust*