**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                          Chapter 11

WONDERWORK, INC.,                                                 Case No. 16-13607 (DSJ)

                         Debtor.
------------------------------------------------------------x

# MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S:**

**ARNOLD & PORTER KAYE SCHOLER LLP**
*Counsel for Vincent Sama*
250 W. 55th Street
New York, New York 10019
    By:    Benjamin Mintz.
             Peta Gordon


**TOGUT, SEGAL & SEGAL LLP**
*Counsel for Stephen S. Gray, Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, NY 10019
    By:    Scott E. Ratner


**AMINI LLC**
*Counsel for Brian Mullaney*
131 West 35th Street, 12th Floor
New York, New York 10001
    By:    Bijan Amini
             Michael Igyarto

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a dispute between competing claimants to certain estate funds who disagree about their respective entitlements under a confirmed plan of liquidation. A creditor of the estate called HelpMeSee Inc. ("**HelpMeSee**" or "**HMS**") entered a settlement that, in part and by the plain terms of one portion of the confirmed plan, entitled it to receive funds that were in a disputed claims reserve if and when those funds proved unnecessary to satisfy other claims due to the post-confirmation disallowance of disputed claims. Because all parties now have reached agreement that a disputed claim that had resulted in a reserve of $384,049 is to be disallowed, the Court-appointed litigation trustee seeks an order that both disallows that claim, and also directs turnover of the now-unneeded reserve amount to HelpMeSee. The plan administrator objects that such an order would leave the estate unable to meet its obligations to pay administrative expenses including the administrator's fees and expenses, in asserted contravention of other portions of the confirmed plan. For reasons explained below, the Court concludes that the explicit terms of the plan require the release to HelpMeSee of now-available funds that have been maintained in a disputed claims reserve, notwithstanding the plan administrator's objection.

By way of a more formal framing of the parties and issues, an individual named Brian Mullaney and Vincent Sama, as litigation trustee (the "**Litigation Trustee**") of the Wonderwork litigation trust (the "**Litigation Trust**"), jointly move for entry of an order (a) disallowing and expunging Mullaney's claim against the Debtor's estate (the "**Mullaney Claim**") and (b) directing the Plan Administrator to disburse certain funds to HelpMeSee. [ECF No. 531 (the "**Motion**")]. Stephen S. Gray, in his dual capacity as both the Chapter 11 trustee and administrator of the Debtor's Chapter 11 Plan (the "**Chapter 11 Trustee**" or the "**Plan Administrator**"), agrees that the Mullaney Claim should be disallowed, but opposes the Motion to the extent it seeks to direct

2

the Plan Administrator to disburse to HelpMeSee funds that the Plan Administrator contends are required to satisfy outstanding obligations to the Plan Administrator and certain professionals that he retained, in connection with the administration of the Debtor's Chapter 11 Plan and this case. [ECF No. 534 (the "**Opposition**")]. For the following reasons, the Court grants the Motion in full.

## BACKGROUND

### A. The Bankruptcy Case

In 2011, WonderWork, Inc. *aka* Surgery for the Poor, Inc. ("**WonderWork**" or the "**Debtor**") and HelpMeSee entered into an agreement, which HelpMeSee later terminated, leading to arbitration proceedings between the two parties and eventually to arbitration awards of approximately $16 million in favor of HelpMeSee. [Opp. ¶¶ 10–11; ECF No. 2 ("**Mullaney Decl.**") ¶¶ 19–21]. The Debtor's inability to satisfy the arbitration awards led substantially to the commencement of this case. [*Id.* ¶¶ 11–12; *see* Mullaney Decl. ¶¶ 19–21].

On December 29, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [ECF No. 1]. Mullaney is the founder and former CEO of the Debtor. [Motion ¶ 1]. The Debtor's schedules stated that Mullaney held an unsecured, nonpriority claim for $641,320.07 based on "unpaid salary and bonus / unreimbursed expenses." [Motion ¶ 4; ECF No. 212 at 2]. In November 2017, the Court appointed Gray as Chapter 11 Trustee. [ECF No. 337].

### B. The Chapter 11 Plan

On September 21, 2018 (the "**Confirmation Date**"), this Court confirmed the Debtor's Chapter 11 plan, [ECF No. 435 (the "**Plan**,"], which became effective October 19, 2018. [Motion ¶ 5; ECF Nos. 475 and 490]. Among other things, the Plan incorporated a settlement agreement between HelpMeSee and the Plan Administrator (the "**HelpMeSee Settlement Agreement**"), dated April 4, 2018, which provides for, among other things, the settlement of

3

HelpMeSee's claims against the Debtor's estate in exchange for HelpMeSee making certain payments to help fund the Litigation Trust and distributions made under the Plan while reserving certain rights. [Plan Ex. A; *see also* Plan §§ 5.3 and 5.5, Reply ¶ 3 ("HMS agreed to fund the amount that was needed to reserve for the Mullaney Claim as one part of an overall settlement with the Plan Administrator, based on the Plan's promise that HMS would receive its funds back in the event that the Mullaney Claim was later disallowed")].

The Plan designated the Chapter 11 Trustee to serve also as the Plan Administrator. [Opp. ¶ 19; Plan §§ 1.1 and 5.9(a)]. The Plan also reassigned to the Litigation Trust so-called "Litigation Trust Claims" as defined in the Plan, including any claims of the Debtor or its estate against Mullaney. [Motion ¶ 5].

Section 8.1 of the Plan provides for the establishment, funding, and administration of a reserve (the "**Disputed Claims Reserve**") to fund disputed claims. These included the Mullaney Claim. [Reply ¶ 2; Plan § 8.1]. Section 8.1(a) provides:

> **As soon as practicable following the Effective Date**, the Disputed Claims Reserve shall be established by the Plan Administrator. **The portion of the Available Cash attributed to the Disputed Claims** as determined by the Plan Administrator, **shall be held by the Plan Administrator in the Disputed Claims Reserve.**

[Plan § 8.1(a) (emphasis added)]. Section 8.1(b) of the Plan sets forth how funds thus set aside for disputed claims are to be distributed. First, the funds must be paid out in satisfaction of any claim that had been disputed but became allowed. Next, any amounts remaining in the Disputed Claims Reserve must be paid first to HelpMeSee to return money that HelpMeSee contributed to fund the Disputed Claims Reserve pursuant to the settlement between HelpMeSee and the Plan Administrator. [Reply ¶ 3]. Specifically, Section 8.1(b) provides:

> The holder of a Disputed Claim, to the extent it has been determined by Final Order to be an Allowed Claim, shall receive a Distribution from the Disputed Claims Reserve on account of its Disputed Claim in an amount equal to that which it would

4

> have been entitled if the portion of its Claim so Allowed had been Allowed as of the Effective Date. **Any remaining amount in the Disputed Claims Reserve attributable to the disallowed portion of a Disputed Claim shall be paid first to HMS in return of any payment funded by HMS on account of such Disputed Claim** and second shall be distributed to holders of Allowed Claims in Class IV in accordance with Section 4.4 of the Plan.

[Plan § 8.1(b) (emphasis added)].

According to the Motion, the Disputed Claims Reserve contains $384,049 that was reserved on account of the Mullaney Claim. [Motion ¶ 7]. Further, the Litigation Trustee contends, and the Plan Administrator has not disputed, that this amount derived from funds advanced by HelpMeSee as part of its earlier settlement. [Transcript of August 12, 2021 oral argument ("**Hearing Tr.**") at 12:17–21 ("HelpMeSee, in fact, to make the plan work, funded the money in this reserve at the outset, and with the understanding that they'll ultimately get this money back, if it was—if the litigation trustee was successful as he was in disallowing the Mullaney claim.")]. And, although the movants at times questioned whether the Plan Administrator properly maintained a segregated disputed claims reserve, as of July 14, 2021 (the date the Motion was filed), the Plan Administrator held $474,624 cash in a general account. [Opp. ¶ 27; *see also* ECF No. 529 (quarterly operating report showing $475,274.80 in cash held by the Plan Administrator as of March 31, 2021)]. At the hearing on the Motion, counsel for the Plan Administrator confirmed that the Plan Administrator "h[as] been maintaining approximately $475,000 in an account for two and a half years, pending resolution of th[e] [A]dversary [P]roceeding and the Mullaney Claim." [Hearing Tr. 15:11–16:10]. Further, the Plan Administrator's Opposition acknowledges that the $384,049 amount "would have been distributable to Mr. Mullaney if his claim had been allowed in full[.]" [Opp. ¶ 28].

Meanwhile, Plan Section 6.1 provides generally for distributions made under the Plan, including payment of administrative expenses. Under Section 6.1, the Plan Administrator is

5

required to make distributions to holders of allowed claims in accordance with Article IV of the Plan,[1] but "may retain" funds "to pay reasonable administrative expenses (including the costs and expenses of the Plan Administrator and the fees, costs and expenses of all professionals retained by the Plan Administrator . . . )[.]"  [Plan § 6.1(b)].

Further, and as emphasized by the Plan Administrator during argument on the Motion, Section 6.7 of the Plan provides, in relevant part, that after the Plan has been fully administered and all disputed claims resolved, the Plan Administrator is required to effect a final distribution of all remaining cash to holders of allowed general unsecured claims "after reserving sufficient cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final Distribution[.]"  The Plan Administrator is empowered to engage professionals to assist with the administration of the Plan and to provide for their compensation and the reimbursement of their expenses.  [Plan § 5.9(b)].

### C. Litigation and Proposed Settlement of the Mullaney Claim, and the Joint Motion

On December 28, 2018, the Litigation Trustee, on the Debtor's behalf, commenced an adversary proceeding against Mullaney and other former officers and directors of the Debtor (the "**Adversary Proceeding**"), seeking a variety of relief including the disallowance of the Mullaney Claim.  *See Vincent A. Sama, as Litigation Trustee of the WW Litigation Trust v. Mullaney et al.*, Adv. P. No. 18-01873 (SMB).  On July 9, 2021 the Litigation Trustee entered into a settlement agreement (the "**Mullaney Settlement Agreement**") with Mullaney and other defendants in the Adversary Proceeding, providing for, among other things, the disallowance of the Mullaney Claim,

---

[1] Article IV of the Plan sets forth the treatment of the various classes of claims defined under Article III of the Plan.

the filing of the Motion, and Mullaney's agreement to support and not to interfere with the order sought by the Motion.[2]  [Motion ¶ 9].

On July 14, 2021, the Litigation Trustee and Mullaney jointly filed the Motion, requesting entry of an order disallowing the Mullaney Claim pursuant to Code § 502(b)(1) and directing the disbursement of $384,049 from the Disputed Claims Reserve to HelpMeSee pursuant to Section 8.1 of the Plan. [ECF No. 531].

On August 6, 2021, Stephen Gray, in his dual capacity as Chapter 11 Trustee and Plan Administrator, filed an Opposition to the Motion.  [ECF No. 534].  As already noted, the Plan Administrator does not oppose the disallowance of the Mullaney Claim, but rather objects to the Motion to the extent it seeks to require the Plan Administrator to disburse funds that had been reserved on account of the Mullaney Claim to HelpMeSee pursuant to Plan Section 8.1; the Plan Administrator contends that Plan Sections 6.1 and 6.7 control, and require the funds in question to first be used to compensate the Plan Administrator and professionals he has retained for services rendered to administer the Plan and the estate.  [Opp. ¶¶ 2, 31-36].  The Plan Administrator reports that he has not received his full statutory commission, and his counsel and accountants have not received any compensation for services rendered since the Plan's Confirmation Date.  [*Id.* ¶ 30]. As of July 14, 2021, the accrued but unpaid costs of administering the Plan and this case total $265,659, meaning that the disbursement of $384,049 to HelpMeSee requested by the Motion would leave a shortfall of $175,659, before factoring in costs related to responding to the Motion and preparing an application to close this case and for entry of a final decree.  [*Id.* ¶¶ 3, 27–28].

---

[2] Specifically, Paragraph 2 of the Mullaney Settlement Agreement provides, in part, that the Litigation Trustee "and Mullaney shall make a joint motion seeking the entry of an order disallowing the Mullaney Claim and directing the Plan Administrator to pay the $384,049 held in the Disputed Claims Reserve on account of the Mullaney Claim to HelpMeSee, Inc. (the "Order").  Mullaney will cooperate with the [Litigation Trustee] with respect to the disallowance of the Mullaney Claim and will not take any action to interfere with the entry or enforcement of the Order."  [Motion ¶ 9].

7

In reply, the Litigation Trustee emphasizes that, notwithstanding the shortfall identified by the Plan Administrator, the Motion's requested disbursement to HelpMeSee is explicitly required under the plain terms of the Plan as a whole, and in particular by Plan Section 8.1. [*See, e.g.*, ECF No. 535 (the "**Reply**") ¶¶ 1–3]. The Litigation Trustee further contends that, although the Plan Administrator had the authority to reserve funds to compensate himself and the professionals he retained to administer the Plan and this case, his failure to reserve adequate funds for this purpose does not justify overriding Plan Section 8.1's specific requirement to pay HelpMeSee out of any funds that are released from the Disputed Claims Reserve due to disallowance of the Mullaney Claim. [*See, e.g.*, *id.* ¶¶ 1–3, 13].

The Court heard argument on the Motion on August 12, 2021, and reserved judgment. Also on August 12, the Court entered an order directing the parties to meet and confer regarding a possible consensual resolution, and to report no later than August 27 whether they reached agreement. [ECF No. 537]. No such agreement was reached.

## DISCUSSION

### A. The Mullaney Claim is Disallowed

The Court grants the unopposed portion of the Motion that seeks disallowance of the Mullaney Claim. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim shall be allowed "except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" Here Brian Mullaney, the claimant, has agreed to the disallowance of his claim pursuant to the Mullaney Settlement Agreement, [Motion ¶ 11], which the Chapter 11 Trustee supports, [Opp. ¶ 1]. This consensual resolution of the estate's dispute with Mullaney and the resulting claim disallowance is approved.

8

### B. The Plan Dictates That the Disputed Claims Reserve Funds at Issue Be Disbursed to HelpMeSee

#### 1. Applicable Standards

A confirmed Chapter 11 Plan operates as a contract that binds the parties to the plan. *In re Lehman Bros. Holdings Inc.*, No. 18 CIV. 7682 (KPF), 2019 WL 3852445, at *7 (S.D.N.Y. Aug. 16, 2019), *aff'd*, 821 F. App'x 66 (2d Cir. 2020), *aff'd, order amended and superseded*, 829 F. App'x 567 (2d Cir. 2020) (citations omitted). Accordingly, courts apply principles of contract law when interpreting a confirmed plan. *In re AMR Corp. et al.*, 562 B.R. 20, 28 (Bankr. S.D.N.Y. 2016) (internal quotation marks and citations omitted).

The Plan provides that it is governed by New York law except (in substance) where federal law applies and requires otherwise. [Plan § 14.3]. Under New York law, courts interpret written contracts "so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y 2013) (citing *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)). When the contract's language is clear and unambiguous, "courts should not rewrite the term under the guise of interpretation" nor "redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *In re Dynegy Inc.*, 486 B.R. at 590 (internal quotation marks and citations omitted). When interpreting contracts, courts must consider the entire agreement, and attempt to reconcile all its parts, if possible, to avoid inconsistency. *Id.*

#### 2. Discussion

The confirmed Plan explicitly requires, "Any remaining amount in the Disputed Claims Reserve attributable to the disallowed portion of a Disputed Claim shall be paid first to [HelpMeSee] in return of any payment funded by [HelpMeSee] on account of such Disputed Claim. . . ." [Plan § 8.1(b)]. And it is undisputed that (a) HelpMeSee funded the reserve; (b) the

9

Plan Administrator is holding approximately $475,000, including $384,049 that he would have used to satisfy the Mullaney Claim if that claim was allowed; and (c) the Mullaney Claim was a Disputed Claim (as defined in the Plan), and is being disallowed by agreement of all parties as a result of the unopposed portion of the Motion now before the Court, such that funds no longer need to be reserved on account of that claim. These facts and the plain meaning of the Plan control, and are not overcome by the Plan Administrator's invocation of other, more general Plan provisions that, as is typical, direct distributions in satisfaction of allowed claims only after administrative expenses are reserved for and, ultimately, paid. *See Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 61, 64 N.Y.S.3d 180, 185 (1st Dep't 2017) ("Where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls") (citing, *inter alia*, *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956)); *TBA Glob., LLC v. Fidus Partners, LLC*, 132 A.D.3d 195, 204, 15 N.Y.S.3d 769, 776 (1st Dep't 2015) ("we follow the longstanding rule that, where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls") (internal quotation marks and citations omitted).

Among the more general provisions that the Plan Administrator invokes are Plan Sections 6.1(a) and (b). These provisions require the Plan Administrator to make distributions to holders of allowed claims in accordance with Article IV of the Plan "on, or as soon as reasonably practical after, the Effective Date," [Plan § 6.1(a)], and permit the Plan Administrator to "retain such amounts . . . to pay reasonable administrative expenses (including the costs and expenses of the Plan Administrator and the fees, costs and expenses of all professionals retained by the Plan Administrator . . . ),"[3] [*Id.* § 6.1(b)]. But these typical Plan provisions governing distributions to

---

[3] Section 5.9(b) of the Plan authorizes the Plan Administrator to, among other things, engage professionals to assist the Plan Administrator with his responsibilities and to pay the fees and expenses of such

10

be made upon the Plan's effective date do not even by their own terms govern the treatment of funds that eventually are released from the Disputed Claims Reserve, nor does Plan Section 6.1 even mention or purport to override Section 8.1, which, as discussed, provides a more specific and unambiguous requirement that funds no longer needed to be maintained in the Disputed Claims Reserve are to be released to HelpMeSee in the exact circumstances presented here.

Plan Section 6.7 likewise cannot overcome the explicit requirements of Section 8.1. Section 6.7 directs the Plan Administrator, after the Plan has been fully administered, to "effect a final Distribution of all Cash remaining (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final Distribution) to holders of Allowed General Unsecured Claims[.]" [Plan § 6.7]. The Plan Administrator is correct that the Plan's provisions governing distributions upon final administration of the Plan allow for a reserve of sufficient funds to meet unpaid administrative expenses at the time final distributions are made. [Opp. ¶ 33]. But this provision governs "final Distribution[s]" to all holders of "Allowed General Unsecured Claims" out of surplus cash—it does not purport to override the specific payment of released funds from the Disputed Claims Reserve that Section 8.1 explicitly requires be made to HelpMeSee. In fact, it does not even mention Section 8.1.

The Court appreciates the work of the Plan Administrator and his retained professionals. It is unfortunate that the Plan Administrator seemingly has not reserved enough funds to cover his and his professionals' fees and expenses if HelpMeSee is paid what it is owed under the Plan. But this unfortunate circumstance cannot overcome the Plan's explicit requirement that funds that are no longer needed to be reserved on account of the Mullaney Claim are to be paid "first to

---

professionals, and to pay all other expenses in connection with administering the Plan and winding down the affairs of the estate and the Debtor in accordance with the Plan. [Plan § 5.9(b), (iv) and (v)].

11

[HelpMeSee] in return of" payments that HelpMeSee previously advanced. [*See* Plan § 8.1; HelpMeSee Settlement Agreement at 1–3; Reply ¶¶ 1, 13]. The Court would be hard pressed to say that equity would be served by diverting funds that the Plan specifies be paid to HelpMeSee in order to cover the shortfall in administrative funds. This is especially true because the Plan Administrator had authority to avoid this situation by earlier reserving sufficient funds, he has acknowledged that if the Mullaney Claim was allowed the funds would have gone to Mullaney and the Plan Administrator would face the same administrative funding shortfall, and HelpMeSee previously supplied funding for the Disputed Claims Reserve partly in reliance on its repayment rights under Plan Section 8.1. But even if the equities did favor the Plan Administrator, which the Court does not believe they do, to rule for the Plan Administrator based on that consideration would violate the well-established law that courts construing contractual provisions "should not rewrite the term under the guise of interpretation" nor "redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *In re Dynegy Inc.*, 486 B.R. at 590.

## CONCLUSION

For the foregoing reasons, the Court grants the Motion. The Litigation Trustee shall settle an order on five business days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel. The parties are encouraged to attempt to reach agreement on the form of the proposed order.

**IT IS SO ORDERED.**

| | |
|---|---|
| Dated: New York, New York<br>November 16, 2021 | *s/ David S. Jones*<br>HONORABLE DAVID S. JONES<br>UNITED STATES BANKRUPTCY JUDGE |